# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| TQ DELTA, LLC, | § | |
| | § | |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | |
| COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC, | § § § § § § § § | **Civil Action 2:21-cv-310-JRG** **(Lead Case)** |
| NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP. | § § § § | **Civil Action No. 2:21-cv-309-JRG** **(Member Case)** |
| Defendants. | § | |

## PLAINTIFF TQ DELTA, LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF ORDER FOCUSING PATENT CLAIMS AND PRIOR ART [DKT. NO. 77]

# I.    INTRODUCTION

In their motion (Dkt No. 77), the Nokia Defendants and CommScope Defendants (collectively, "Defendants") ask the Court to order TQ Delta to reduce the number of asserted claims and prior art by entering a <u>modified</u> version of this District's Model Order Focusing Patent Claims and Prior Art to Reduce Costs[1] ("Modified Order"). Defendants describe their proposal as being "equitable to all parties," but it leans heavily in Defendants' favor.

The Court should deny the Defendants' Motion because: (1) TQ Delta intends to narrow its claims at strategically important points as this case progresses and develops, but claim narrowing based on the Defendants' Modified Order would be premature; (2) TQ Delta would suffer substantial, unfair prejudice if forced to comply with the Defendants' Modified Order; and (3) The Defendants will suffer no undue burden or prejudice if their Modified Order is not entered. For these reasons, the Defendants' Motion should be denied.

# II.    BACKGROUND

TQ Delta owns a patent portfolio relating to digital subscriber line ("DSL") technologies including, for example, very-high-bit-rate digital subscriber line ("VDSL") technology and Fast Access to Subscriber Terminals technology ("G.fast"). These patents originate from groundbreaking innovations[2] in the DSL field, including innovations that the International

---

[1] This District's "Model Order" is General Order No. 13-20, General Order Adopting Model Order Focusing Patent Claims and Prior Art to Reduce Costs (E.D. Tex. Oct. 29, 2013).

[2] The primary inventor of TQ Delta's DSL patents, Marcos Tzannes, has worked on DSL-related technologies for almost 30 years.  Mr. Tzannes was the head of the DSL technology group at Aware, Inc., and major semiconductor companies purchased Aware's chip designs. TQ Delta is the successor-in-interest in patents from Aware, Inc. ("Aware"). Aware was a world-leading innovator and provider of DSL technologies.

Telecommunication Union ("ITU") adopted in various DSL-related standards such as ADSL2/2+, VDSL2, G.bond, G.inp, G.vector, and G.fast.

Before commencing this litigation, TQ Delta attempted to license its DSL patent portfolio to the Defendants on a worldwide, non-discriminatory basis and on reasonable terms and conditions. Because of the Defendants' persistent refusal to obtain a license or cease their ongoing widespread and willful infringement of numerous TQ Delta patents, TQ Delta could no longer stand by and watch the Defendants trample its patent rights. Thus, on August 13, 2021, TQ Delta filed the above-captioned patent infringement lawsuits against the Defendants.

For several years, the Defendants have sold, offered to sell, made, and/or imported many models and different types of DSL equipment[3] such as gateways, modems, central office equipment that infringe many of TQ Delta's patents. Because of the Defendants' widespread ongoing infringement via many products and different types of DSL equipment and the breadth of TQ Delta's patent portfolio, covering multiple DSL standards, TQ Delta had to assert 128 patent claims from 22 patents (108 claims from 19 patents asserted against Nokia; 80 claims from 13 patents asserted against CommScope; 10 of the 22 patents are asserted against both defendant groups), across seven patent families, to address fully the harm caused by the Defendants.

This case is at its early stages. TQ Delta's Infringement Contentions were served on November 4, 2021. Defendants' Invalidity Contentions were served on January 13, 202. The parties recently exchanged P.R. 4-1 proposed claim terms on February 10, 2022. The P.R. 4-4

---

[3] The accused products comprise customer premise equipment ("CPE") products (including without limitation gateways, modems, and service managers) and/or (2) central office equipment ("CO") products (including without limitation DSLAMs, MSANs, and line cards) that comply with and implement one or more DSL standards, including ADSL2/2+, VDSL2, G.bond, G.inp, G.vector, and G.fast (collectively "Accused Products").

deadline to complete claim construction discovery is April 8, 2022. The deadline to substantially complete document production is April 22, 2022. The fact discovery deadline and the deadline for expert disclosures is August 15, 2022. The *Markman* hearing will be on June 3, 2022. Jury selection is set for January 2, 2023.

### III.    LEGAL STANDARDS

"A court must exercise the authority to order a reduction in the number of asserted claims with care not to prejudice the patentee, particularly in light of the fact that each of the claims of a patent embodies a property right." *Allergan, Inc. v. Teva Pharm. USA*, No. 2:15-CV-1455WCB, 2017 U.S. Dist. LEXIS 10603, at *5 (E.D. Tex. Jan. 26, 2017). Claim narrowing is not required by the Federal Rules of Civil Procedure, the Patent Local Rules, or the Rules of this Court.

The courts in this District have routinely denied requests to narrow the number of asserted claims before claim construction and before an accused infringer produces discovery sufficient to show the structure and operation of the accused products. *See, e.g., Thomas Swan & Co. Ltd. v. Finisar Corp.*, 2:13-cv-00178-JRG, Dkt. No. 125, slip op. at 2 (E.D. Tex. Apr. 11, 2014) ("[R]equests to limit claims and/or prior art references are generally more appropriate during or following the submission of the Parties' claims construction briefing."); *Realtime Data, LLC v. MetroPCS Tex., LLC*, No. 6:10cv-493-LED-JDL, Dkt. No. 188, slip op. at 1 (E.D. Tex. Dec. 13, 2011) ("[I]t is inappropriate to micro-manage the number of asserted claims, particularly prior to the Markman hearing."); *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-00144-LED-JDL, Dkt. No. 248, slip op. at 6 (E.D. Tex. Mar. 16, 2009) (holding that limiting the number of asserted claims "long before discovery has closed—will result in prejudice to Plaintiff"); *Fractus, SA v. Samsung Elecs. Co., LTD.*, No. 6:09-cv-00203-LED-JDL, Dkt. No. 332, slip op. at 3 (E.D. Tex.

Mar. 8, 2010) (holding that it was too early "to arbitrarily limit the number of asserted claims" before claim construction and the completion of discovery).

## IV.    ARGUMENT

**A.    TQ Delta Intends to Narrow Claims at Strategically Important Points as This Case Progresses, but Claim Narrowing Based on the Modified Order Significantly Prejudices TQ Delta.**

As this case progresses and its development moves forwards, TQ Delta intends to narrow its asserted claims at strategically critical points such as after claim construction, after all *inter partes* reviews have been filed, and after expert reports. But it would be premature to require claim narrowing based on the Defendants' Modified Order.

This case and discovery are still in the early stages, and no claim narrowing should occur until the case has further developed. The parties are still in the process of locating, gathering, and producing documents and have until April 22, 2022, to substantially complete their document productions. Except for two venue transfer-related depositions, there have been no other depositions. Nokia has served a few interrogatories directed to prior licenses, and CommScope has only served venue transfer-related interrogatories. On February 9, 2022, TQ Delta served interrogatories on Defendants. The Defendants have served a few third-party subpoenas, but none of the third parties have yet been deposed or produced documents. On January 28, 2022, Nokia filed a third-party complaint against a chip supplier, which has yet to answer. Dkt. No. 70.

TQ Delta is still evaluating the Defendants' Invalidity Contentions, served January 13, 2022, comprising approximately 300 invalidity charts comprising 19,214 pages (Nokia – 13,947 pages; CommScope – 5,167 pages) and lengthy cover pleadings (Nokia – 581 pages; CommScope – 105 pages). That evaluation must be completed before any decision is made to drop claims. *See Allergan, Inc. v. Teva Pharm. USA*, No. 2:15-CV-1455-WCB, 2017 U.S. Dist. LEXIS 10603, at

*5 (E.D. Tex. Jan. 26, 2017) ("The Federal Circuit . . . has emphasized that claim reduction should not be ordered 'too early in the discovery process' because doing so would deny the patentee 'the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity in light of the defendants' accused products and proposed defenses.'").

TQ Delta will be in a position to narrow claims after the Court issues its Claim Construction Order, after the close of fact discovery and the disclosure of expert reports.  TQ Delta is mindful that the Court expects parties to narrow issues when possible and not to unnecessarily maintain claims for improper purposes.  TQ Delta represents to the Court that will not maintain claims unnecessarily and will drop claims when doing so will not put it at a strategic disadvantage or prejudice its substantive rights.

Another critical point when claim narrowing would be appropriate is after all *inter partes* review (IPR) petitions have been filed. Thus far, the Defendants have filed three IPR petitions (two on the '835 Patent and one on the '112 Patent), and they have until August, 2022 to file additional IPRs. CommScope's IPR petition regarding the '835 Patent challenges every claim that TQ Delta has asserted against it in this case. During the meet-and-confer process, TQ Delta conveyed to Defendants the prejudice they would suffer should it be required to limit the asserted claims prematurely and arbitrarily as Defendants would be presented with fewer claims to collaterally challenge through an IPR proceeding.  Defendants' one-year bar date to file IPR's does not run until August, 2022.  Defendants refused to discuss any proposal for completing its collateral IPR attacks on TQ Delta's patents at any earlier juncture.  Without knowing the full extent and the bases upon which Defendants intend to challenge the asserted claims through an IPR proceeding, arbitrarily dropping asserted claim puts TQ Delta at a significant tactical disadvantage.  The Modified Order's limit on Defendants' prior art references is illusory because Defendants'

invalidity case is preserved through their pending and potential future IPRs. *See VirnetX Inc. v. Apple, Inc*., Case No. 6:12-CV-855-LD, 2014 U.S. Dist. LEXIS 196993, at *10 (E.D. Tex., Aug. 4, 2014) ("In light of the *Cisco* appeal and IPRs that are currently pending, Apple's Motion to Focus Patent Claims and Prior Art (Docket No. 124) is DENIED WITHOUT PREJUDICE.").

Finally, the period leading up and subsequent to the disclosure of expert reports is another critical point in any decision to narrow claims.  Forcing TQ Delta to artificially reduce the number of claims prior to allowing both its technical and damages expert sufficient time to review the discovery in this case and Defendants' positions, puts TQ Delta at a disadvantage in all phases of this case: infringement, damages and validity.  Until TQ Delta's experts have had an opportunity to formulate their opinions and review the opinions of Defendants' experts, reducing the number of asserted patents and/or claims would unreasonably prejudice TQ Delta's patent rights as the infringement, damages and validity evidence is primarily introduced through expert testimony.

TQ Delta understands the need to reduce the number of asserted claims prior to trial and can commit to doing so when it can be reasonably sure that doing so will not unfairly or unreasonably abrogate its patent rights.

## B.    Defendants' Modified Order Favors Defendants

TQ Delta would suffer unfair prejudice if forced to comply with the Defendants' Modified Order.  Given the early stage of this case, as described above in Section IV(A), it would be highly prejudicial to TQ Delta if it was forced to reduce its asserted claims by 75%—from a total of 128 claims to 32 claims by April 8, 2022, according to the Modified Order. Being forced to narrow claims so drastically while discovery is still in the early stages, before having the Court's Claim Construction Order (the *Markman* hearing is not until June), and without knowing the full extent

of the IPRs to be filed would be unfairly prejudicial to TQ Delta and put it at a severe tactical disadvantage.

It appears to be the Defendants' goal to put TQ Delta at a severe tactical disadvantage. They claim that the limits proposed in their Modified Order are "equitable to all parties," but they were modified to favor the Defendants.  Motion at 6.  This District's Model Order advises that **"[i]n cases involving several patent families**, . . . the court will consider flexibly whether circumstances warrant **expanding the limits on asserted claims or prior art references**."* See* Model Order at fn. 1 (emphasis added).  Following this guidance and given that TQ Delta asserted a total of 22 patents across 7 patent families, one would reasonably expect that the Model Order's default limits on asserted claims <u>and</u> prior art references would be expanded. But in the first claim narrowing phase (¶ 2) in their Modified Order, the Defendants <u>doubled</u> the Model Order's default limits for asserting prior art references and did not expand the default limit for asserted claims. Under their Modified Order, assuming 22 asserted patents, the Defendants could assert up to 80 prior art references (the Model Order's default limit is a total of 40 references).  But TQ Delta could still only assert 32 claims across its 22 asserted patents, which is only 1.45 claims per asserted patent. But that's not all.

It gets worse for TQ Delta. In the second claim narrowing phase (¶ 3) of the Modified Order, the Defendants <u>tripled</u> the Model Order's default limits for asserting prior art references and, yet again, did not expand the default limit for asserted claims. Under their Modified Order, assuming 22 asserted patents, the Defendants can assert up to 60 prior art references (the Model Order's default limit is a total of 20 references). But TQ Delta can only assert 16 claims across its 22 asserted patents, which is only 0.72 claims per asserted patent, effectively forcing TQ Delta to drop 6 patents entirely. This is the Defendants' idea of being "equitable."

As shown here, the Defendants' Modified Order was designed to be unfair to TQ Delta, which would suffer substantial unfair prejudice if forced to comply with that order.

## C.       Denying the Motion Will Not Unduly Burden or Prejudice the Defendants

The Defendants will not suffer any undue burden or prejudice if their Modified Order is not entered. Their complaint about the burden of defending against the asserted claims is hardly unique; every accused infringer would find it less burdensome if the plaintiff asserted fewer claims. But that does not justify claim narrowing at this early stage of the case, particularly given TQ Delta's good faith belief and detailed claim charts showing that Defendants infringe each of the asserted claims.

The Defendants also complain about this case being on a "compressed trial schedule." Motion at 6. The trial schedule is normal for this Court. The sooner this case goes to trial, the sooner TQ Delta will prove to a jury how the Defendants have willfully infringed the asserted patents. If the Defendants are eager to prove that they do not infringe or that the asserted patents are valid, they should also embrace the trial date. This Court's willingness to move this case promptly to resolution is not a reason to enter the Modified Order.

The Defendants also complain about the burden of having to defend against an "extraordinary number of claims." Motion at 2. TQ Delta asserted many claims against the Defendants for a straightforward reason – because they infringed each of those claims. The number of claims asserted against the Defendants is solely due to their widespread infringement of TQ Delta's many patents. Any prejudice to Defendants in defending against the asserted claims is no greater than the prejudice to TQ Delta of Defendants' infringement.

The Defendants speculate that TQ Delta "likely already knows which claims it plans to proceed with at trial and, so, is asserting a large number of claims simply to impose a greater

burden on Defendants." *Id*. at 5.  That is not true.  Patent litigation inherently has many unknowns.  TQ Delta faces losing one or more asserted patents or claims in various ways such as an adverse claim construction, via summary judgment, and via IPR.  The information learned during discovery may also impact TQ Delta's assessment of the viability of certain patents and claims.  With this case at its early stages, and no claim construction order yet issued, TQ Delta does not yet know which claims it plans to proceed with at trial.  Any suggestion to the contrary is pure speculation.

## V.    CONCLUSION

For the reasons set forth above, TQ Delta respectfully submits that Defendants' motion be denied in its entirety.

Dated: February 18, 2022                          Respectfully submitted,

                                                  By:  /s/ William E. Davis, III
                                                  William E. Davis, III
                                                  Texas State Bar No. 24047416
                                                  bdavis@davisfirm.com

                                                  Christian J. Hurt
                                                  Texas State Bar No. 24059987
                                                  churt@davisfirm.com

                                                  Edward Chin
                                                  Texas State Bar No. 50511688
                                                  echin@davisfirm.com

                                                  Rudolph "Rudy" Fink IV
                                                  Texas State Bar No. 24082997
                                                  rfink@davisfirm.com

**The Davis Firm PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

**ATTORNEYS FOR PLAINTIFF**
**TQ DELTA, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this February 18, 2022, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ William E. Davis, III
William E. Davis, III