

**REDACTED**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **TQ DELTA, LLC,**<br>**Plaintiff,**<br><br>v. | §<br>§<br>§<br>§<br>§ | **JURY TRIAL DEMANDED** |
| **COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action 2:21-cv-310-JRG**<br>**(Lead Case)** |
| **NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§ | **Civil Action No. 2:21-cv-309-JRG**<br>**(Member Case)** |

# PLAINTIFF TQ DELTA'S RESPONSE IN OPPOSITION TO COMMSCOPE'S MOTION TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE [DKT NO. 32]

**REDACTED**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... i

**I. INTRODUCTION** .......... 1

**II. BACKGROUND** .......... 2

**III. LEGAL STANDARD** .......... 3

**IV. ARGUMENT** .......... 3

**A. The Private Interest Factors Weigh Against Transfer** .......... 4

1. The Relative Ease of Access to Sources of Proof. .......... 4

2. The Availability of Compulsory Process to Secure the Attendance of Witnesses. .......... 6

3. The Cost of Attendance for Willing Witnesses. .......... 8

4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive. .......... 12

**B. The Public Interest Factors Weigh Against Transfer** .......... 14

1. The Administrative Difficulties Flowing from Court Congestion. .......... 14

2. The Local Interest in Having Localized Interests Decided at Home. .......... 14

3. Remaining Public Interest Factors: (3) Familiarity of the Law and (4) Conflicts of Laws. .......... 15

**V. CONCLUSION** .......... 15

REDACTED

# TABLE OF AUTHORITIES

## Cases

*Constellation Techs. LLC v. Time Warner Cable Inc.*,
2014 U.S. Dist. LEXIS 132986 (E.D. Tex. Sep. 23, 2014) ....15

*In re Acer of Am.*, 626 F.3d 1252 (Fed. Cir. 2010) ....14

*In re Dish Network L.L.C.*, No. 2021-182,
2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ....8

*In re EMC Corp.*, 501 F. App'x 973 (Fed. Cir. 2013) ....13

*In re Genentech.*, 566 F.3d 1338 (Fed. Cir. 2009) ....8, 14

*In re HP Inc.*, No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ....8

*In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) ....2

*In re Netflix, Inc.*, 2022 U.S. App. LEXIS 1390 (Fed. Cir. Jan. 19, 2022) ....5

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ....3, 9

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) ....3, 15

*In re Toyota Motor Corp.*, 747 F.3d 1338 (Fed. Cir. 2014) ....5

*Intellectual Ventures v. T-Mobile USA, Inc.*,
2018 U.S. Dist. LEXIS 231526 (E.D. Tex. June 29, 2018) .... 13-15

*Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*,
2018 U.S. Dist. LEXIS 219899 (E.D. Tex. Sept. 5, 2018) ....13

*Seagen Inc. v. Daiichi Sankyo Co.*,
2021 U.S. Dist. LEXIS 120737 (E.D. Tex. 2021) ....2, 15

*Va. Innovation Scis., Inc. v. Amazon.Com, Inc.*, Civil Action No. 4:18-cv-474,
2019 U.S. Dist. LEXIS 117004 (E.D. Tex. July 15, 2019) ....13

## Rules

Fed. R. Civ. P. 45 .... *passim*

REDACTED

**Other Authority**

28 U.S.C. § 1404(a) ....................................................................................................................3, 9

REDACTED

## I. INTRODUCTION

The Court should deny CommScope's Motion to Transfer. The location of potential witnesses and sources of proof do not favor transfer, and CommScope does not meaningfully argue otherwise. The Motion does not identify a single witness or source of proof in Delaware. And it omits that many of the witnesses (and attendant proof) are located in or near this District: one of TQ Delta's Managing Directors is located in this District (in Plano), the other Managing Director is located in Austin, [REDACTED] Former relevant CommScope employees relating to DSL reside near this District. CommScope's major customer for the Accused Products (AT&T) is in Dallas. And the balance of the evidence and witnesses overwhelmingly reside closer to this District than Delaware—the primary inventor of the Patents-in-Suit resides in California, CommScope's chip supplier (Broadcom) resides in California, and CommScope's major facilities for the Accused Products are in Texas (in Austin), California, and Georgia (outside Atlanta).

The events that gave rise to this case also happened in Texas. Before CommScope acquired Arris in 2019, Arris had a team of around 30 people working in Austin on the Accused Products as well as Jim Shead, Arris's then Lead Counsel. TQ Delta engaged in licensing discussions with Arris (and later CommScope) personnel located out of Austin and met in-person in Austin. Those discussions gave rise (in part) to TQ Delta's claims of willful infringement. And they gave rise to TQ Delta's claims (including under Texas law) that CommScope repudiated and waived whatever rights it had to license TQ Delta's patents on reasonable terms on a non-discriminatory basis (some, but not all, of the Asserted Patents are standard-essential patents).

The Motion omits these facts. It instead hinges on two arguments: (1) that both TQ Delta and CommScope are Delaware corporations (although neither are headquartered there); and (2)

[redacted] REDACTED

that judicial economy requires transfer because TQ Delta filed a case in Delaware in 2013 against 2Wire (who CommScope later acquired) involving some of the same patents.

The first argument is legally incorrect. It is established law that a company's state of incorporation "is entitled to little weight (if any)" in the transfer analysis.[1]

The second argument is also flawed. The Delaware case does not have substantial overlap with this case—this case involves different parties, different patents, different product lines, and different standards. CommScope has not agreed to be bound by *any* prior Delaware rulings (*e.g.*, claim construction, summary judgment, and jury verdicts, many of which were adverse to 2Wire). There is thus no realistic chance that this case could or would be consolidated with the Delaware case, which has been pending since 2013. The Delaware Court would therefore address the CommScope case from scratch while this Court—regardless of transfer—would address in parallel many of the same issues in the co-pending Nokia case (in which nine patents overlap with the CommScope case). Transfer will not further judicial economy. And judicial economy alone does not require transfer, especially when balanced against the remaining factors—each of which weighs against transfer or is neutral. CommScope's Motion should be denied.

## II. BACKGROUND

TQ Delta filed these actions against CommScope and Nokia in August 2021, asserting patents relating to digital subscriber line ("DSL") technologies. *See, e.g.*, Dkt. 1. TQ Delta is headquartered in Austin, Texas, and one of its two Managing Directors lives and works in this District (in Plano, Texas). For its DSL products, CommScope's major facilities are primarily located in Texas (in Austin), Georgia, and California. CommScope employs 272 employees in

[1] *Seagen Inc. v. Daiichi Sankyo Co.*, 2021 U.S. Dist. LEXIS 120737, at *37 (E.D. Tex. 2021) (citing *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223–24 (Fed. Cir. 2011)).

REDACTED

Richardson, Texas (Dkt. 1, at ¶¶ 22–24), [REDACTED] CommScope's Motion did not identify any evidence or witnesses in Delaware.

## III. LEGAL STANDARD

This Court is familiar with the Fifth Circuit's Section 1404(a) framework. In evaluating a motion to transfer under 35 U.S.C. § 1404(a), the Court considers the Fifth Circuit's list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The four private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The four public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. *Id.* The movant must "clearly demonstrate" that the transferee forum would be "clearly more convenient" than the transferor forum given the eight factors. *Id.* at 314-15.

## IV. ARGUMENT

CommScope's Motion does not show that it would be clearly more convenient for this case to proceed to trial in Delaware. CommScope instead attacks this case as a "textbook example of forum shopping." Mot. at 1. But a cursory review of the record shows that CommScope is wrong. Each of the *Volkswagen* factors either weigh against transfer or are neutral.

**REDACTED**

| ***Volkswagen* Factor** | **Weight** |
|---|---|
| the relative ease of access to sources of proof | Against transfer |
| the availability of compulsory process to secure the attendance of witnesses | Against transfer |
| the cost of attendance for willing witnesses | Against transfer |
| all other practical problems that make trial of case easy, expeditious, and inexpensive | At most, neutral |
| the administrative difficulties flowing from court congestion | Against transfer |
| the local interest in having localized interests decided at home | Against transfer |
| the familiarity of the forum with the law that will govern the case | Against transfer |
| avoidance of unnecessary problems of conflict of laws of the application of foreign law | Neutral |

Simply put, it is not clearly more convenient to litigate and try this case in Delaware.

**A. The Private Interest Factors Weigh Against Transfer**

**1. Relative Ease of Access to Sources of Proof Weighs Against Transfer**

CommScope identifies no sources of proof in Delaware, yet somehow argues that this factor still "weighs in favor of transfer." Mot. at 10. That is simply wrong under the law. And the facts show that this factor weighs against transfer: both TQ Delta and CommScope have sources of proof in Texas, including in this District, which CommScope omits from its Motion.

**TQ Delta**. TQ Delta has kept evidence in this District at the home office of TQ Delta's Managing Director, Mark Roche, who has worked and resided in Plano since March 2020. Ex. 2, Roche Decl. at ¶¶ 2-4, 6-8. The balance of TQ Delta's evidence is in Austin. Ex. 3, Divine Decl. at ¶¶ 6-9.

**CommScope.** The Motion does not identify any CommScope proof in Delaware.

**REDACTED**

CommScope instead focuses on proof that resides outside Delaware, most of which is closer to this District—in Georgia, Pennsylvania, California, and Austin. Mot. at 9. Geographically scattered proof does not bear on this factor (let alone "weigh[] in favor of transfer," as CommScope alleges). *See, e.g., In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of other . . . documents in places outside both forums."). And CommScope provides only vague and unsupported statements regarding the "relevant documents and physical evidence" allegedly located with witnesses in other locations. Dkt. 32-1, Shead Decl. at ¶ 5. The Court can discard CommScope's argument on that basis alone. *In re Netflix, Inc.*, 2022 U.S. App. LEXIS 1390, at *9 (Fed. Cir. Jan. 19, 2022) ("To be sure, we have explained that it is within the district court's discretion to reject vague and unsupported statements regarding the location of sources of proof.") (non-precedential).

CommScope also appears to have relevant sources of proof in this District, despite its contrary assertion. CommScope's Richardson office employs almost 300 employees, [REDACTED] Dkt. 32-1 at ¶ 3; Ex. 1 at 74:25-78:6; Ex. 4, CommScope's First Suppl. Interrogatory Responses, at 7. [REDACTED] at least because CommScope announced in April 2021 that it will spin off the Home Networks business unit (which includes the Accused Products). Ex. 1 at 35:11-36:5; Ex. 5, CommScope press release, at 1-2; Ex. 6, CommScope Earnings Call Transcript, at 7; Ex. 7, CommScope NEXT Update call slides. That decision would have involved a financial valuation of the Accused Products. Documents about these and very likely other matters are present or accessible [REDACTED]

Given the sources of proof located in this District—and none in Delaware—this factor

[redacted] **REDACTED**

weighs against transfer.

**2. Availability of Compulsory Process to Secure the Attendance of Witnesses Weighs Against Transfer.**

CommScope's Motion does not identify any third-party witnesses within the Delaware Court's subpoena power but claims "this factor favors transfer." Mot. at 10. Again, that claim is legally wrong. On the contrary, multiple third-party witnesses reside within this Court's subpoena power (all of whom CommScope ignored in its Motion). This factor weighs against transfer.

There are non-party potential witnesses in this District and elsewhere in Texas—all of whom are subject to this Court's absolute subpoena power under Rule 45. Within this District, there are at least five (5) prior artists CommScope identified in its Invalidity Contentions: (1) Song Wu (Plano, TX – U.S. Patent Nos. 6,219,378 and 6,549,512), (2) Xiaolin Lu (Plano, TX – U.S. Patent No. 5,910,970), (3) Kim Chang (Plano, TX – U.S. Patent No. 6,233,247), (4) William D. McCoy (Wylie, TX – U.S. Patent No. 5,392,299), and (5) Ray G. Sadler (Plano, TX – U.S. Patent No. 5,608,643). Ex. 8, Prior Artists in Texas, at 7, 23, 24, 33, 34, 47.; Ex. 9, TQ Delta's Second Amended Initial Disclosures at 8-10; Ex. 10, CommScope's Invalidity Contentions at 27, 28, 30, 32, 75, 89.

Outside of this District, but still within Texas, are at least twenty-four (24) prior artists (asserted in CommScope's Invalidity Contentions) who live in Texas.[2] And TQ Delta has

---

[2] (1) John G. Bartkowiak (Austin, TX – U.S. Patent No. 5,694,466), (2) Roger Bjork (Round Rock, TX – U.S. Patent No. 5,128,619), (3) James Carlo (Dallas, TX – U.S. Patent No. 6,829,307), (4) Yaqi Cheng (Rowlett, TX – U.S. Patent No. 6,549,512), (5) Harry L. Cochrane (Liberty Hill, TX – U.S. Patent No. 5,128,619), (6) Terry L. Cole (Austin, TX – U.S. Patent No. 6,424,674), (7) Douglas E. Duschatko (Austin, TX – U.S. Patent No. 6,983,414), (8) George Hoekstra (Austin, TX – U.S. Patent No. 5,751,741), (9) Alfredo Linz (Austin, TX – U.S. Patent No. 6,424,674), (10) John F. McHale (Austin, TX – U.S. Patent No. 6,366,644), (11) Celite Milbrandt (Austin, TX – U.S. Patent Nos. 6,631,120; 6,633,545; 6,636,603), (12) Vijayakumaran V. Nair (Austin, TX – U.S. Patent No. 6,424,674), (13) Matthew A. Pendleton (Cedar Park, TX – U.S. Patent Nos. 5,521,906 and 5,533,088), (14) Tom R. Pohrte (The Colony, TX – U.S. Patent No. 5,608,643),

[redacted] **REDACTED**

identified two (2) former CommScope employees—Joseph Yu (in Austin),[3] a DSL engineer, and Bryce Garrett (in Carrollton),[4] who managed Arris's DSL relationship with AT&T—who may have information relevant and material to infringement and damages issues.

Also in Texas is non-party AT&T, based in Dallas, which is a major customer of CommScope's Accused Products. Dkt. 1, at ¶¶ 26, 35; Dkt. 17, at ¶ 26 ("CommScope admits that AT&T is a customer and that AT&T has locations in Texas and this District"); Ex. 9, at 7, 12; Ex. 11, at 11-13, 46; Ex. 12, AT&T web page showing accused product, at 1-2. AT&T's Texas-resident employees will be within the statewide subpoena power of this Court (or potentially within 100 miles of the courthouse). FED. R. CIV. P. 45(c)(1)(B)(ii). Given that AT&T is Arris's (now CommScope's) major client, AT&T has knowledge relevant to infringement (including CommScope's inducement of infringement by AT&T) and damages issues, including

---

(15) Don S. Rhines (Richardson, TX – U.S. Patent No. 5,392,299), (16) Jack A. Ross (The Colony, TX – U.S. Patent No. 5,608,643), (17) Mathew A. Rybicki (Austin, TX – U.S. Patent Nos. 5,521,906 and 5,533,088), (18) Donald P. Shaver (Dallas, TX – U.S. Patent No. 6,549,512), (19) James R. Sisk (Cedar Park, TX – U.S. Patent No. 6,366,644), (20) Andrew J. Thurston (Liberty Hill, TX – U.S. Patent No. 6,983,414), (21) Raymond Paul Voith (Austin, TX – U.S. Patent No. 5,751,741), (22) Martin Wichter (Arlington, TX – U.S. Patent No. 5,608,643), (23) Timothy L. Wilson (Austin, TX – U.S. Patent No. 5,128,619), (24) Zheng-yi Xie (Richardson, TX – U.S. Patent No. 5,694,466). Ex. 8 at 1, 2, 5, 7-9, 15, 17, 19, 25, 27, 30, 32-35, 37, 41, 42, 45, 46; Ex. 9, at 7-11; Ex. 10, at 27, 28, 31-33, 57, 60, 88, 89.

[3] Joseph Yu lives in Austin and worked for CommScope as a Principal Software Engineer from 2016 to 2021 and "developed firmware for premium DSL home routers (integrated 2.4 & 5G WiFi, VOIP, firewall and other feature)" which are among the Accused Products. Ex. 9 at 6; Ex. 11 Current and Former CommScope Employees, at 48.

[4] Bryce Garrett lives in Carrollton and worked for ARRIS from 2005 to 2016. As Director of Sales, he "[m]anaged the AT&T Account with responsibility for deployment of all ARRIS Residential Gateways (RGs)," and his LinkedIn profile indicates that the "ARRIS CPE portfolio includes DSL, VDSL, VDSL2, Bonded VDSL, G.fast and GigaPower Fiber gateways." Mr. Garrett likely has knowledge relevant to infringement (including CommScope's inducement of infringement by AT&T) and damages issues, including CommScope's relationship with AT&T. Ex. 9 at 6; Ex. 11 at 11, 15.

**REDACTED**

CommScope's relationship with AT&T, how the Accused Products are deployed, and what features customers believe are important.

The non-party potential witnesses discussed above may need a court order to testify. They are presumed to be unwilling. *In re Dish Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (citing *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)) ("when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor").

The only third-party CommScope identifies is Broadcom, which does not have an office in Delaware.  The Broadcom witness CommScope identified is located in California, not Delaware. Ex. 4 at 9. Thus, the Delaware Court does not have relevant subpoena power.  CommScope also points out that Broadcom's witness appeared *voluntarily* in Delaware, which means that Broadcom does not count as an *unwilling* witness under this factor.  There is also reason to believe this Court has more control of Broadcom because Nokia has added Broadcom as a third-party Defendant.

Because there are numerous relevant non-party potential witnesses subject to this Court's subpoena power, and CommScope has not identified any non-party witnesses subject to the Delaware Court's subpoena power, this factor weighs against transfer. *See, e.g., In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("The fact that the … venue is a venue with usable subpoena power here weighs in favor …, and not only slightly").

### 3.    The Cost of Attendance for Willing Witnesses

CommScope has not identified any witnesses in Delaware.  But it again claims—without any legal basis—that this factor "favors transfer." Mot. at 11.  The facts show the opposite.  There are relevant witnesses in this District.  And almost all of the witnesses are closer to this Court than Delaware such that, under a straightforward application of the Fifth Circuit's 100-mile rule, it

**REDACTED**

would be more convenient for those witnesses to testify here. *See, e.g.*, *Volkswagen I*, 371 F.3d at 204-05 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.").

**TQ Delta**. TQ Delta's Managing Director, Mark Roche, lives in this District. Abha Divine lives in Austin, Texas. Together, they oversee all aspects of TQ Delta's business and have relevant knowledge concerning at least the Patents-in-Suit, TQ Delta's licensing activities, and TQ Delta's pre-suit efforts to license its patent portfolio to CommScope, which would be relevant to infringement (e.g., CommScope's willful infringement) and damages. Ex. 2, ¶ 4; Ex. 3, ¶ 4. The lead inventor of all but one of the Patents-in-Suit, Marcos Tzannes, lives in Petaluma, California, making trial here more convenient for him than Delaware. Ex. 13, Tzannes Decl. ¶¶ 2-4. Trial here will be more convenient for TQ Delta.

**CommScope**. Trial here will also be more convenient for CommScope. CommScope's Richardson office, which is within this District. Ex. 17, Collin Co. property tax search record. However, CommScope's corporate witness refuses to admit that it is in this District. Ex. 1, Shead Tr., at 52:1-15 ("Q. And that facility is located within the Eastern of District of Texas, correct? A: No, it is not."). CommScope cannot seem to get its story straight. Ex. 18, CommScope's Motion to Transfer to the Sherman Division, *Barkan Wireless IP Holdings, L.P. v. Sprint, et al.*, Civ. No. 2:19-cv-336-JRG, Dkt. 82 (E.D. Tex. April 13, 2020) at 2 ("CommScope also maintains an office in Richardson, Texas, within the Sherman Division."), at 13 ("The local interest factor favors the Sherman Division because (1) CommScope's Richardson office is in the Sherman Division."). CommScope also has a significant engineering group in Austin. Ex. 1 at 36:13- 37:21. CommScope has at least six Austin-based employees (Jaime

[redacted] **REDACTED**

Salazar, James Shead, Chitralekha Joshi, Courtney Rosenthal, Steve Cochran, Khurram Qureshi) with relevant knowledge about CommScope's pre-suit knowledge of the Patents-in-Suit or about the design, development, and implementation of the Accused Products and applicable software, firmware, and DSL standards.[5] And in San Antonio, CommScope has an executive (Steve

---

[5] (a) **Jaime Salazar** (Sr. Mgr. – SW Engineering CPE/Residential Gateway) has worked for CommScope since 2018 and formerly Arris (2015-2018). His LinkedIn profile states that he is the "Residential Gateway SW Development Manager." Ex. 11 at 38. CommScope admits that he is "likely to have knowledge of the design and development of DSL products." Dkt. 32-1, Shead Decl. at ¶ 4.

(b) **James Shead** (Lead Counsel) has worked for CommScope since 2019 and formerly Arris (2016-2019) and Pace Americas (2015-2016). Ex. 11 at 40-41. He has relevant knowledge concerning CommScope's and Arris's pre-suit knowledge of the Patents-in-Suit, which is relevant to TQ Delta's willful infringement claim in this case. *Id.*; Ex. 1, Shead Tr., at 21:4-24:12; 25:17-27:4; 29:25-32:1, 33:13-25.

(c) **Chitralekha Joshi** (Principal Engineer) has worked for CommScope and/or Arris since 2008. His LinkedIn profile states, "**I worked on the residential gateway** and core networking products **for the last 20 years**. Witnessing the greatest evolution of access technologies from **DSL** to 5G NR Fixed wireless, from the first generation of Wi-Fi products (802.11b) to Wi-Fi 6, and from TR069 management protocols to USP, I have experienced a vast range of technologies in the Telecom space." (emphasis added) Ex. 11 at 25-26.

(d) **Courtney Rosenthal** (Principal Software Engineer) has worked for CommScope since 2019 and formerly Arris (2016-2019) and Pace (2013-2016). Her LinkedIn profile states, "I work on products that manage and provide intelligence for **residential broadband devices (CPE)** and associated managed devices." Ex. 11 at 35.

(e) **Steve Cochran** (Sr. Software Engineering Manager) has worked for CommScope since 2018 and formerly Arris (2016-2018), Pace (2011-2016), and 2Wire (2010). His LinkedIn profile states, "Currently I oversee a team of software developers who are responsible for designing, building, developing and supporting a large-scale management and data collection platform focused on **CPE (home routers**, set top boxes and access points) . . . Before this I managed a distributed team of software developers who were responsible for developing and delivering the software that runs on a DSL gateway (router) that is deployed by many service providers, including AT&T."; at Arris, he "led a distributed team of software engineers continuing the development and support of the **Pace DSL residential gateway product. These routers are deployed by AT&T** and other service providers to millions of subscriber homes. My team was responsible for the development and support of the software running on the gateway. The gateway was based upon a **Broadcom hardware platform** and used a Linux-based software distribution that included support for data, voice and video among other features."; and "At Pace, I built and led a team of as many as 15 software engineers developing and supporting the Linux-based system software for

REDACTED

Wauters) with relevant knowledge about sales of the Accused Products, CommScope's relationship with AT&T, and CommScope's inducement of infringement by AT&T.[6]

Trial here will also be more convenient for CommScope's Atlanta-area witnesses that may have knowledge about the Accused Products (such as Joe Chow, Charles Cheevers, and German Iaryczower – Suwanee; Keith Mendel – Alpharetta). Ex. 11 at 1, 4, 22, 29; Ex. 14, Maps showing the distance between cities. There are daily direct flights from Atlanta to Shreveport, approximately a 42-mile drive from Marshall. Ex. 14, at 9; Ex. 15, Google search results showing multiple daily flights between Atlanta and Shreveport. Trial in this District will also be more convenient for the California-based employees that CommScope identified because those witnesses live closer to here than Delaware. Ex. 14. Indeed, except for one CommScope witness in Philadelphia (who is in the finance group, not in the engineering or business groups), trial here would be more convenient than Delaware. And even CommScope's narrow view of the relevant witnesses does not support transfer because it does not identify any fact witnesses in Delaware. *See, e.g.*, *Toyota*, 747 F.3d at 1340 ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses . . . in places outside both forums.").[7]

---

the **Pace Telco residential gateway products**. These gateway products provide broadband services (data, IPTV, voice) over **DSL** and fiber to customer homes." (emphasis added) Ex. 11 at 6-8.

(f) **Khurram Qureshi** (VP of Software Engineering) has worked for CommScope since November 2021. His LinkedIn profile states, "Leading Home Networks video and broadband devices software org." Ex. 11 at 31.

[6] **Steve Wauters** (SVP – North America Key Account Sales) has worked for CommScope since 2011. His LinkedIn profile states that he was Vice President of "AT&T Sales" from May 2011 to May 2021. Ex. 11 at 46.

[7]

[redacted] REDACTED

**Third Parties**. CommScope does not address any third parties. As detailed above regarding compulsory process, there are many potential third-party witnesses in this District and closer to this District than Delaware (*e.g.*, prior art witnesses and Broadcom). To the extent those witnesses are willing to attend trial (*e.g.*, the Broadcom witness), it would be more convenient for them to attend the trial in this Court than in Delaware for the reasons above.

Given the significant number of witnesses in or near this District and that CommScope has identified only <u>one</u> party-witness closer to Delaware, this factor weighs against transfer.

#### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

Judicial economy does not require transferring this case. CommScope ignores that this case involves patents, standards (*e.g.*, G.Fast, G.Vector, and G.INP standards), products (*e.g.*, products designed and developed by Motorola, eventually acquired by Arris and then CommScope, as opposed to products exclusive designed by 2Wire), and parties (*e.g.*, CommScope and Arris) that are not at issue in the *2Wire* case. Over half (7 out of 13) of the Patents-in-Suit in this case are not asserted in the *2Wire* case, and even the patents that were asserted in the *2Wire* case here do not have the same asserted claims.

This case also involves damages and willfulness issues yet to be addressed in Delaware. Even though *2Wire* was filed in 2013, the Delaware Court has not tried these issues because it bifurcated liability and damages into multiple trials and has not completed the liability phases.

Transfer will not streamline discovery because the CommScope-related discovery would need to proceed in either forum. That includes damages and willfulness discovery. It also includes

[redacted]

[redacted] **REDACTED**

discovery relating to additional standards, product families, and versions of Broadcom chips. And the lag between *2Wire* (filed in 2013) and this case—as well as CommScope's failure to agree to be bound by any prior Delaware finding—make it unlikely that the Delaware Court would consolidate this case with the *2Wire* case in any meaningful way (for either pretrial or trial).

Transfer is also unlikely to simplify the *Markman* proceedings. This case will require at least one additional *Markman* hearing, whether the case proceeds here or in Delaware. CommScope (and Nokia) have not agreed to be bound to any prior *Markman* rulings. And if *Markman* issues arise here that the Delaware Court has already addressed, this Court "can take appropriate action to minimize the risk of judicial inefficiency and inconsistent claim construction" by consulting the prior orders. *Va. Innovation Scis., Inc. v. Amazon.Com, Inc.*, Civil Action No. 4:18-cv-474, 2019 U.S. Dist. LEXIS 117004, at *73 (E.D. Tex. July 15, 2019) (quotation omitted).

Ultimately, because of the differences between the two cases (and the presence of Nokia here), "any court which handles this case will traverse many paths not yet trod by any jurist." *Intellectual Ventures v. T-Mobile USA, Inc.*, 2018 U.S. Dist. LEXIS 231526, at *29 (E.D. Tex. June 29, 2018); *see also*, *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (non-precedential) (explaining that a "district court [may] properly consider the benefits to judicial economy arising from having the same judge handle both [of plaintiff]'s suits against the [defendants] and [plaintiff]'s suits against other parties involving the same patents and technology as to which there was no issue of transfer"); *Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*, 2018 U.S. Dist. LEXIS 219899, at *19 (E.D. Tex. Sept. 5, 2018) (finding that judicial economy weighed against transfer based on "hearing both cases together, as it did in consolidating the two cases" and the co-defendant did not move to transfer). Transfer would not allow for coordinated discovery, pretrial consolidation, or a single *Markman* hearing. CommScope does not

[redacted] REDACTED

allege otherwise. And that reality does not favor transfer. If anything, transferring this case to Delaware would be less efficient than having a single court litigate the consolidated actions here. This factor is, at most, neutral.

### B. The Public Interest Factors Weigh Strongly Against Transfer.

#### 1. The Administrative Difficulties Flowing from Court Congestion

This factor focuses on "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). This Court is substantially faster than Delaware in time to trial (by approximately over nine months). Ex. 16, U.S. District Courts – National Judicial Caseload Profile data, at 2-3.

| Court | Time to Trial (mo) | Cases Over 3 Years Old | Weighted Filings Per Judge |
|---|---|---|---|
| E.D. Tex. | 19.5 | 245 (7.4%) | 626 |
| D. Del | 28.7 | 291 (12.4%) | 919 |

These statistics do not account for more recent time-to-trial statistics in which this Court has been setting cases for trial within 11–14 months of filing. Nor do they account for the likely fate of this case should it get transferred to Delaware. The *2Wire* case has been pending for nearly nine years, and the case has not reached a final resolution because a number of liability trials (as well as a willfulness and damages trial) have yet to be conducted.

Given the significant time-to-trial differences between this Court and Delaware, this factor weighs against transfer. *See, e.g.*, *Intellectual Ventures*, 2018 U.S. Dist. LEXIS 231526, at *29–*30 (finding that factor "clearly weighs against transfer" where median time-to-trial for patent cases in Delaware lagged the Eastern District of Texas by over a year).

#### 2. The Local Interest in Having Localized Interests Decided at Home

"This factor most notably regards . . . the 'significant connections between a particular venue and the events that gave rise to a suit.'" *In re Acer of Am.*, 626 F.3d 1252, 1256 (Fed. Cir.

REDACTED

2010). This District has a local interest given that Mr. Roche resides in this District, [REDACTED] AT&T is in Dallas, and TQ Delta is located nearby in Austin. In addition, the negotiations that led up to this case occurred in Austin.

Delaware does not have a similar interest. While both CommScope and TQ Delta are organized under Delaware law, this fact does not provide a local interest. *Constellation Techs. LLC v. Time Warner Cable Inc.*, 2014 U.S. Dist. LEXIS 132986, at *11 (E.D. Tex. Sep. 23, 2014) (holding that parties' incorporation in Delaware did not provide a local interest because it was "not a connection to 'the events that gave rise to this suit'") (quoting *Volkswagen II*, 545 F.3d at 318); *Seagen*, 2021 U.S. Dist. LEXIS 120737, at *37 (holding that a company's state of incorporation "is entitled to little weight (if any)" in the transfer analysis). This factor, therefore, weighs against transfer. *See, e.g.*, *Intellectual Ventures*, 2018 U.S. Dist. LEXIS 231526, at *29–*32 (finding local interest weighed against transfer where no party had a principal place of business in Delaware and one defendant had its principal place of business in the Eastern District).

**3. Familiarity With Governing Law**

This factor weighs against transfer. TQ Delta asserts that CommScope has relinquished its right to reasonable and non-discriminatory terms, including under Texas state law, based on its conduct. These Texas state-law claims—based on what happened in Texas—weigh against transferring this case to another state that is not as familiar with Texas state law.

**4. Conflicts of Foreign Laws**

TQ Delta agrees that this factor is neutral.

## V. CONCLUSION

For the foregoing reasons, TQ Delta respectfully requests that the Court deny CommScope's Motion to Transfer Venue.

**REDACTED**

Dated: February 22, 2022

Respectfully submitted,

By: /s/ William E. Davis, III
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

**The Davis Firm PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

**ATTORNEYS FOR PLAINTIFF**
**TQ DELTA, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this February 22, 2022, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/ William E. Davis, III*
William E. Davis, III

**REDACTED**