**REDACTED**

# EXHIBIT 1

**CONFIDENTIAL - PAGE 73, LINE 4 THROUGH PAGE 74, LINE 13**
**30(b)(6) FOR COMMSCOPE HOLDING COMPANY, INC. - JAMES DANIEL SHEAD - 1/21/2022**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

TQ DELTA, LLC, Plaintiff, vs. COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,

NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP., Defendants.

JURY TRIAL DEMANDED

Civil Action 2:21-cv-310-JRG (Lead Case)

Civil Action No. 2:21-cv-309-JRG (Member Case)

CONFIDENTIAL - Page 73, Line 4 through Page 74, Line 13

ORAL AND VIDEOTAPED DEPOSITION OF
30(b)(6) FOR COMMSCOPE HOLDING COMPANY, INC.,
COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED,
ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC.,
ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY,
INC., AND ARRIS ENTERPRISES, LLC
JAMES DANIEL SHEAD
JANUARY 21, 2022
REPORTED REMOTELY

Page 1

ORAL AND VIDEOTAPED DEPOSITION OF 30(b)(6) FOR COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., AND ARRIS ENTERPRISES, LLC, JAMES DANIEL SHEAD, produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and numbered cause on Friday, January 21, 2022, from 11:06 a.m. to 2:23 p.m., before Sarah Lindsey, CSR in and for the State of Texas, reported by stenographic method via Zoom videoconference platform, pursuant to the Federal Rules of Civil Procedure and any provisions state on the record attached herein.

Page 2

A P P E A R A N C E S
ALL PARTIES APPEARED REMOTELY

FOR THE PLAINTIFF TQ DELTA, LLC:
Edward Chin
Christian Hurt
THE DAVIS FIRM, PC
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
(903) 230-9090
echin@davisfirm.com

FOR COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC:
Brett M. Schuman
GOODWIN LAW
Three Embarcadero Center, 28th Floor
San Francisco, California 94111
(415) 733-6000
bschuman@goodwinlaw.com

Also Present:
Sam Among, Videographer and Exhibit Technician
Ben Yenerall
Lori Swanson

Page 3

I N D E X

| | PAGE |
|---|---|
| Appearances | 3 |
| JAMES DANIEL SHEAD | |
| Examination by Mr. Chin | 5 |
| Signature and Changes | 128 |
| Reporter's Certificate | 130 |

E X H I B I T S

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Plaintiff TQ Delta, LLC's Amended First Rule 30(b)(6) Notice of Oral and Videotaped Deposition of the Commscope Defendants (NO BATES NUMBERS) | 7 |
| Exhibit 2 | Declaration of James D. Shead In Support of Defendants' Opposed Motion of Transfer Venue to the District of Delaware (NO BATES NUMBERS) | 43 |
| Exhibit 3 | Electronic File Exhibit Placeholder (NO BATES NUMBER) | 76 |
| Exhibit 4 | Commscope's First Supplemental Objections and Responses to Plaintiff's Venue-Related Interrogatories (NO BATES NUMBERS) | 81 |

Page 4

**CONFIDENTIAL - PAGE 73, LINE 4 THROUGH PAGE 74, LINE 13**
**30(b)(6) FOR COMMSCOPE HOLDING COMPANY, INC. - JAMES DANIEL SHEAD - 1/21/2022**

THE VIDEOGRAPHER: Today's date is January 21, 2022. The time is 11:06 a.m. We're on the record.
JAMES DANIEL SHEAD
having been first duly sworn, testified as follows:
EXAMINATION
BY MR. CHIN:
Q. Good morning. Please state your full name.
A. James Daniel Shead.
Q. And what is your present home address, sir?
A. 12620 Cricoli Drive, Austin, Texas 78739.
Q. Who is your present employer?
A. CommScope.
Q. And where do you office out of?
A. I office out of my home.
Q. Located where?
A. The address I just gave you.
Q. Okay. And do you have an office in Austin?
A. I do.
Q. Okay. And -- and where is that located?
A. That is 4516 Seton Center Parkway. The ZIP code is 78759.
Q. Okay.
A. Our offices are closed through May at this point, I believe, although it keeps shifting.
Q. It's been closed since when?

A. COVID.
Q. When did it start being -- start being closed, sir?
A. When COVID started.
Q. Back in -- can you put a month and year on that for us?
A. March 2020 until today.
Q. Okay. So that address you gave me, that office has been closed since roughly March 2020?
A. Yes.
Q. Okay. My name's Edward Chin. I'm an attorney representing Plaintiff TQ Delta, LLC, in a patent infringement lawsuit against your employer and against the Nokia defendants; do you understand that?
A. Do I understand, I'm sorry, which part of that?
Q. Do you -- do you understand all of that?
A. I -- I'm not -- I just have your representation who you represent, I just know your name.
Q. Okay. All right. Well, I represent to you I'm an attorney representing TQ Delta in a lawsuit -- patent infringement lawsuit against your employer; are you okay with that?
A. That's your representation.
Q. Okay. You have no reason to think otherwise, right?

A. No.
Q. Okay. All right. Fair enough.
Now, you are here to testify on behalf of your employer; is that right?
A. Yes.
Q. Okay. With respect to certain deposition topics, correct?
A. Yes.
Q. Okay.
MR. CHIN: Mr. Among, if you can pull up Exhibit 001. And for purposes of the deposition, Document 001 will be what -- Mr. Among, are you using letters or numbers?
EXHIBIT TECH: I am using numbers.
MR. CHIN: Okay. All right. It will be Exhibit 1 for the deposition.
(Exhibit No. 1 was marked for identification.)
BY MR. CHIN:
Q. Do you see --
A. One second, please.
Q. Okay.
A. Okay, I have it up. Go ahead.
Q. Okay. Do you see Exhibit 1 on your screen, Deposition Exhibit 1?

A. It's just labeled "01.PDF."
Q. Okay. Do you see on the top left below the green bar it says "Exhibit 1"?
A. I'm sorry, it's referencing the local copy.
Q. Oh.
A. I'll look back. Okay. I do see a computer screen with a yellow "Exhibit 01" on it, yes.
Q. Okay. Thank you. This is the deposition notice pertaining to your deposition today.
Have you had a chance to review the deposition topics in this notice? I assume you've seen them before.
A. Can you repeat that? Somebody was --
Q. Okay. Let's start over. Do you --
MR. SCHUMAN: Your microphone must be really good because when you're shuffling papers, we can't hear you talk. I think that was a problem last time too.
MR. CHIN: Oh, okay, sorry about that.
BY MR. CHIN:
Q. Do you see the -- you can look at, starting on -- starting on page 10 of Exhibit 1, a list of deposition topics.
Do you want me to scroll for you or do you want to look at your local copy? It's up to you,

Page 3 (Pages 9-12)

**CONFIDENTIAL - PAGE 73, LINE 4 THROUGH PAGE 74, LINE 13**
**30(b)(6) FOR COMMSCOPE HOLDING COMPANY, INC. - JAMES DANIEL SHEAD - 1/21/2022**

however you want to --

A. I'm sorry, you asked me if I see it and we're there. What would you like for me to do with it?

Q. Oh, okay. Have you reviewed -- have you reviewed these topics before, 1 through 10?

A. Yes.

Q. Okay. And are you prepared today to testify on behalf of your employer with respect to these topics?

MR. SCHUMAN: Subject to the objections we served counsel, there were a number of objections, but witness can answer.

THE WITNESS: My understanding is in addition to the objections, there was also some being conferred back and forth about the scope.

So subject to the objections, as well as the scope clarifications, I am prepared to testify.

BY MR. CHIN:

Q. Okay. Since -- since CommScope served its objections, has it changed the scope of what it intends to have you testify about?

MR. SCHUMAN: Objection, compound.

Counsel, I believe you were personally the one on the meet and confer with my partner Andy Ong. So I think if you want to take the topics one by one, whatever you and Mr. Ong agreed to is what Mr. Shead is

Page 9

here to testify today.

MR. CHIN: Well, in fact, I wish you were on that meet and confer, because on the meet and confer, what happened was he said he would take my concern back to your client, but he had -- he never got back to me about whether the scope of the intended testimony has changed, so that's why I'm asking. I assume, Mr. Shead, having been presumably prepared, would know that that's why I'm asking.

MR. SCHUMAN: Look, Counsel, I don't want to argue with you. I'm fully up to speed on what Mr. Ong and you discussed. Mr. Shead is here to testify as to the topics subject to the objections and clarifications in the meet and confer. Why don't you just proceed with the questions?

MR. CHIN: Well, I'm trying to figure out what he's prepared to testify about. My question to you or Mr. Shead is in light of that -- having had that meet and confer, having Mr. Ong not commit one way or another about whether the scope of the deposition would change from CommScope's perspective, I'm asking is Mr. Shead going to testify in a way that's different from as represented on the written objections?

THE WITNESS: Is that a question for me or Mr. Schuman?

Page 10

MR. CHIN: Either one of you who knows the answer because Mr. Ong never got back to me.

MR. SCHUMAN: Mr. Chin, first of all, I'm not answering questions here, I'm an attorney as you know, Mr. Shead is the witness, so if you have a question you can put it to Mr. Shead, I make an objection.

I'm simply noting for the record that we served objections. Your question was are you prepared to testify today on these 10 topics. I noted that we served objections. You acknowledged we served objections. You and Mr. Shead had some -- you and Mr. Ong had some meet-and-confer conversations.

So if you have questions for the witness, they're subject to our objections and your discussions with Mr. Ong. Proceed with your deposition.

MR. CHIN: I'm trying to proceed. I'm trying to get on the same page with you about the intended scope of what Mr. Shead is going to testify about.

It sounds like you don't have that knowledge, so I'll -- I'll move on, but I want to state for the record, Mr. Ong never got back to me.

BY MR. CHIN:

Q. Now, Mr. Shead, have you testified in a

Page 11

deposition before?

A. Yes.

Q. How many times?

A. I believe four times.

Q. Okay. And were they all as an employee of -- of CommScope or any of its predecessor entities?

A. Yes.

Q. Okay. Did they all occur in the context of a patent infringement lawsuit?

A. Yes.

Q. Okay. When was the last time you were deposed?

A. It was summer or fall of 2020.

Q. Okay. And what case was that?

A. That was the -- the plaintiff was Barkan, I believe it's Barkan Holdings, I don't know their official title. It was a -- it was a patent suit. Barkan was the plaintiff, B-A-R-K-A-N.

Q. Okay. And what was the general subject matter of what you testified about; was it about venue-related issues, something else?

A. It was something else.

Q. Okay. And generally, what was that something else?

A. I believe it was -- it was a 30(b)(6) over a number of topics, but I don't believe that venue was one

Page 12

**HANNA & HANNA, INC.**
**713.840.8484**

DSL products?
A. No.
Q. Okay. In that deposition, did you testify about sources of proof that Arris had?
A. I don't recall.
Q. Okay. And tell me about the first instance you were deposed. What kind of case was that? When was that?
A. I think that's it, those three.
Q. Oh, those three, okay.
A. I said three or four. Those are the only ones I can recall as I sit here, though.
Q. Okay. In this case, you submitted a sworn declaration, right?
A. Right.
Q. Okay. And you -- you've done sworn declarations before, and you've submitted those before to -- to courts or other judicial bodies or administrative bodies?
A. Yes.
Q. Okay. You've done that with -- you've submitted declarations in the context of inter partes reviews; is that right?
A. Yes.
Q. Okay. How about submitting declarations to the

federal -- federal district courts, have you done that? Other than this case.
A. I -- I don't recall where the specific declarations went.
Q. Okay. Well, do you have a recollection of having submitted or signed that declaration that you understood would be submitted with a court filing in a federal district court, other than the one you -- you did in this case?
MR. SCHUMAN: Ever?
MR. CHIN: Yeah, let's start with ever.
MR. SCHUMAN: Overbroad, vague as to time.
THE WITNESS: I may have. I know I've submitted some declarations specifically with regards to IPRs, as you stated before. I may have submitted some in federal court, I'm not entirely certain as I sit here.
BY MR. CHIN:
Q. Okay. What's the last one that you recall submitting to a federal district court?
A. For this motion?
Q. No, other than this case.
A. The IPR was later in time, simple.
Q. Yeah, other than this case, what's the -- what's the most recent instance you recall of submitting

or signing a declaration that you understood would be filed in federal district court?
A. I can't recall specific instances.
Q. Okay. You -- you believe that you -- you've done so, you just can't recall; is that what I -- what your testimony is or do you want to clarify that?
A. That's right.
Q. Okay. Do you recall ever -- other than in this case, do you recall ever submitting a declaration, discussing sources of proof? By that I mean documents and/or potential witnesses?
A. I -- it's possible, I don't recall specifically, though.
Q. You report to the general counsel of CommScope?
A. Yes.
Q. Okay. Do you have anybody report to you?
A. No.
Q. Okay. Do you have any people at the same level as you within the CommScope legal department that does roughly the same things you do?
MR. SCHUMAN: Objection, vague.
THE WITNESS: I'm the only one who -- who handles litigation.
BY MR. CHIN:
Q. Okay. And how long has that been -- been the

case, that you're the only one handling litigation?
A. Since July of last year, actually.
Q. Okay. And before July of last year, who was primarily involved in handling litigation for CommScope?
A. His name was Troy Van Aacken and he passed, so -- sorry, he -- he passed in July of last year.
Q. Okay. I'm sorry to hear that.
Could you spell that name for us, please?
A. V-A-N, A-A-C-K-E-N, two words, first name Troy, T-R-O-Y.
Q. Okay. And when you -- you joined CommScope as a result of CommScope's acquisition of Arris; is that right?
A. Yes.
Q. Okay. And so when you were at Arris, you were inhouse counsel there?
A. Yes.
Q. And did you handle litigation for Arris when you worked there?
A. Yes.
Q. Were you the only one handling litigation for Arris when you worked there?
A. No.
Q. Who else handled litigation besides you?
A. So the entire time I was there, who worked on

Page 6 (Pages 21-24)

CONFIDENTIAL - PAGE 73, LINE 4 THROUGH PAGE 74, LINE 13
30(b)(6) FOR COMMSCOPE HOLDING COMPANY, INC. - JAMES DANIEL SHEAD - 1/21/2022

litigation? I can name a few names. I'm not sure of an exhaustive list, though.
Q. Well, roughly, how many other people were there?
A. I know for the team I worked on, there were, gosh, five of us, yes.
Q. Okay. Did all of those people come to CommScope when CommScope acquired Arris?
A. No.
Q. I'm sorry?
A. No.
Q. Okay. Did any of them other than you?
A. Yes.
Q. Okay. Who else -- who else came to CommScope after the acquisition?
A. Troy Van Aacken and Carol Ansley, A-N-S-L-E-Y.
Q. Ms. Ansley, is she still with CommScope?
A. No.
Q. When did she leave CommScope?
A. I believe it was June of 2020. It was shortly before Troy's passing.
Q. Do you know where she works now?
A. No.
Q. And before Arris, you worked at Pace Americas; is that right?

Page 21

A. Yes.
Q. Did you handle litigation there?
A. Partially, yes.
Q. When you worked at Pace Americas, did you have any -- did you perform any duties that were related to the plaintiff TQ Delta or any of its predecessor entities?
MR. SCHUMAN: Objection, vague.
Also, I'm going to instruct you, Mr. Shead, not to reveal the substance of any attorney/client-privileged communications. If you can answer counsel's questions without revealing privileged communications, you can do so.
THE WITNESS: I do have a question about "predecessor entities." What do you mean when you say that?
BY MR. CHIN:
Q. Well, any entity that you believe currently or believed then was an entity that later became TQ Delta. I'm wanting to get your understanding. I'm not trying to impose a particular understanding on you.
A. Well, I've worked on this case since -- since I started with Pace. And so duties related to the Delaware litigation. I don't know TQ Delta's corporate history, I don't know their full legal name, but, I

Page 22

mean, just in connection with the existing Delaware litigation.
Q. Okay. So that began when you were at Pace, correct, the Delaware litigation in terms of your involvement?
A. I'm sorry, the Delaware litigation was already ongoing, but my involvement began at -- when I worked with Pace, yes.
Q. And that continued when you worked at Arris, you were involved in the Delaware litigation?
A. Yes.
Q. Okay. Now, in terms of the -- and I don't -- and I don't want you to tell me the actual -- any actual communications you've had with -- any privileged communications, the substance of any such privileged communications, but in terms of that's -- that's for all my questions in this deposition. Okay?
In terms of the -- the -- the legal files pertaining to the Delaware litigation or any legal files pertaining to TQ Delta, is it your understanding that those files got passed with each acquisition?
And by that I mean when Arris acquired Pace that those -- those files all got passed to Arris and then when CommScope acquired Arris, all those files got passed to CommScope?

Page 23

A. I -- I guess I'm unclear what you mean by -- by "passed."
Q. Well, transferred to, take -- got taken over by the acquiring entity, those -- those legal files.
A. I -- I don't know.
Q. Okay. Well, did -- did you have some files pertaining to the Delaware litigation when you worked at Pace?
A. Yes.
Q. Okay. Did those carry over when you moved on to Arris?
A. I -- I kept those files, yes.
Q. Okay. And is it your understanding that the -- to the extent any of your colleagues in the inhouse department at Pace had legal files, that those got carried over when they moved on to Arris, assuming they -- they moved on to Arris?
MR. SCHUMAN: Objection, compound, outside the scope, speculation.
THE WITNESS: I don't know. I think I'm the only one who made it over, but I don't know that for sure, and I don't know the contents of anyone's files.
BY MR. CHIN:
Q. Okay. Were you responsible for gathering any files to make sure that they got transferred over to the

Page 24

HANNA & HANNA, INC.
713.840.8484

CONFIDENTIAL - PAGE 73, LINE 4 THROUGH PAGE 74, LINE 13

30(b)(6) FOR COMMSCOPE HOLDING COMPANY, INC. - JAMES DANIEL SHEAD - 1/21/2022

acquiring entity, besides --

MR. SCHUMAN: You can answer yes or no, Mr. Shead. I think we're getting close to privileged territory, but if -- if you have an answer to that question, you can answer "yes," "no," or if you don't have an answer, "I don't know."

THE WITNESS: Repeat what the question was again, I'm sorry.

BY MR. CHIN:

Q. Well, did -- did you do anything -- other than transferring your own files over as part of the job transition, were you responsible for ensuring that certain other files that the legal department had pertaining to the Delaware litigation would move on to the acquiring entity in this case from Pace to Arris?

A. No.

Q. Okay. Now, how about when CommScope acquired Arris, I assume your own -- your own files about the Delaware litigation got moved on to -- got transferred to CommScope, right?

A. I just kept them. They weren't really transferred to anything.

Q. Okay. They got transferred because you transferred, basically; that's what you're getting at?

A. I just kept them. I don't know if they got

transferred to anything.

Q. Okay. Now, when you were at Arris, as part of the acquisition by CommScope, were you involved in transferring or gathering any files that the legal department had about the Delaware litigation or any litigation involving TQ Delta and moving that to -- making sure that got moved on to CommScope?

MR. SCHUMAN: Same privilege objection, outside the scope.

Mr. Shead if you can answer that "yes" or "no," you can, but if you can't answer it, then --

THE WITNESS: I just kept my own files. I don't know anything beyond that.

BY MR. CHIN:

Q. Okay. And your own files pertaining to TQ Delta or the Delaware litigation, that's -- that's located where, at your home?

A. I'm sorry, what, the location of my --

Q. Your files. Your files pertaining to TQ Delta and/or the Delaware litigation or this litigation, Eastern District, where are they located?

A. They -- I mean, I -- I have access to them on my computer.

Q. Okay. You have them locally? What do you use, first of all, a laptop or desktop or both?

A. Both.

Q. Both, okay. And the laptop and desktop are both at your home presently?

A. Yes.

Q. Okay. And at the office that's currently closed, but the office in Austin, what kind of computer, if any, do you have over there?

A. Just a laptop.

Q. Okay. It's the same laptop that you currently have, you just move it with you?

A. I -- this is -- this is a new laptop since the office has been closed for COVID. So ostensibly, I would bring it back to the office with me when the office ever opens again and invite us into its warm embrace. But, yeah, I just have the desktop and the laptop.

Q. Okay.

A. The laptop is new issue.

Q. Okay. Generally, which -- which of the two computers do you use the most?

A. It's about equal.

Q. Okay. Do they have the same files on there? Are they duplicates of each other, effectively, or -- or do you store certain files on one versus the other?

A. They do not have the same files on there.

Q. Okay. How are they split up?

MR. SCHUMAN: So Counsel, I'm gonna let you ask a couple more questions here, this is outside the scope. I think you're veering into Mr. Shead's personal work product. He's an attorney, as you know, a litigation attorney.

Questions about what files are on his desktop versus what files are on his laptop, pretty far afield from his 30(b)(6) deposition notice. I do understand you're in a background of your deposition, but you're getting pretty close to improper questions.

MR. CHIN: Okay. Well, I don't want to get to specific identities of documents, but I think it's within the scope to talk about where our sources of proof are and general categories of documents, whether it's license agreements or notes and so on, and to have the Court understand where they're located, you know, on a desktop or a laptop or somewhere else in the cloud or -- or a mix of that.

MR. SCHUMAN: Your question to him was what files are different on his home -- on his desktop versus his laptop. As I said, I'm gonna let him answer that question, but I don't think this is in your 30(b)(6) notice, and I think you're getting close to privileged information and work product information from a

litigation attorney.
So Mr. Shead can answer the question, but, you know, I'm just kind of giving you a heads up that you're going down a path, this is not about sources of proof in this case, this is about a litigation attorney's files and whether they're on his laptop or desktop computer.
It's not relevant to anything in this case what computer Mr. Shead has what files on. They're both in his house, he's already testified to that.
BY MR. CHIN:
Q. Mr. Shead, go ahead and answer the question.
A. So they're -- they're different operating systems, so there are different files on each.
Q. Okay. In terms of the work product files, how are they different generally? I don't want you to tell me specifics of -- just categories of documents.
A. I'm -- I'm not comfortable testifying about the location of my work product. I -- I don't -- it --
Q. About the location of your work product you're not --
A. You just asked where my work product, what types of work product is stored on each one. I'm not going to testify to that.
Q. All right. You -- you've met with

representatives of TQ Delta before, right?
A. Yes.
Q. Okay. And where did you meet them?
A. Over the years, I've met them in several different locations.
Q. Such as?
A. Delaware.
Q. Okay.
A. First time was in Delaware. I believe we've hosted them at our office in Austin, and then a number of videoconferences, teleconferences in -- and some of that was just with outside counsel, some of that included Ms. Divine.
Q. Ms. Abha Divine?
A. Yes.
Q. Okay. And how many times did you meet with representatives of TQ Delta in Austin?
A. One time.
Q. Okay. And did you ever have -- you've had other phone calls with TQ Delta's representatives?
MR. SCHUMAN: Objection, vague.
THE WITNESS: Yes.
BY MR. CHIN:
Q. Okay. Zoom calls?
A. I don't recall the particular platform that was

used.
Q. Okay.
A. There have been, I believe, just audio calls. And there may have been a slide show presented, I don't know.
Q. Okay. And to the extent that you have files pertaining to those discussions, notes or whatnot, where are they located?
A. I'm sorry, where is -- you're asking location for my work product as a result of the settlement discussions that we had?
Q. Well, you've had -- we've established you've had prior contacts with TQ Delta's representatives. I'm asking about the location of any documents you have pertaining to those discussions.
A. So those discussions were settlement discussions. And you want to know the location of my notes from our settlement discussions?
Q. Yes, I'm not asking what the notes say. Okay? I'm asking to the extent you have notes, where are they located?
A. I -- I -- I mean, I have access to them from my computer.
Q. Okay. Are they stored locally on your laptop and/or desktop in Austin?

A. I don't know.
Q. How would you confirm that?
A. I don't know.
Q. Are you on that laptop right now?
MR. SCHUMAN: He's not gonna -- he's not gonna search his laptop to answer your question, Mr. Chin. It's outside the scope of your 30(b)(6) notice, it's work product.
MR. CHIN: I don't think it's work -- we've already established he's had presuit contact with the -- with the representatives of my client and it's important to the extent that he has notes where -- for the Court to understand where those might be.
We can argue about the discoverability of that later, but right now if he has --
MR. SCHUMAN: There's no argument about the discoverability of an attorney's notes with a settlement discussion from your client, Mr. Chin, you know that. It's not a source of proof in this case, you know that.
I suggest you move on. I've made my objection.
MR. CHIN: Well, I disagree. I think he's a potential witness in this case, our willfulness and -- and other aspects of the case, but at least for willfulness. Knowledge of the -- the patent's,

**CONFIDENTIAL - PAGE 73, LINE 4 THROUGH PAGE 74, LINE 13**

**30(b)(6) FOR COMMSCOPE HOLDING COMPANY, INC. - JAMES DANIEL SHEAD - 1/21/2022**

knowledge of the plaintiff?

MR. SCHUMAN: You've -- you've -- you've asked him about settlement discussions. He's given you the name of the TQ Delta people, the number of times and where those discussions took place, either in person or on Zoom or on phone calls.

You're now well beyond the scope of your deposition notice. His attorney notes from a settlement discussion with your client are not admissible or discoverable in any sense, so move on.

MR. CHIN: So you're not gonna --

BY MR. CHIN:

Q. Just to confirm, Mr. Shead, you're not going to tell us the location of any documents you have pertaining to any of those discussions, whether it's notes or any other documents, whether it was documents that were received from my client?

MR. SCHUMAN: That wasn't your question.

MR. CHIN: Well, I'm asking that now.

BY MR. CHIN:

Q. Are you able to tell us the location, whether it's one location or multiple locations, what are the locations of those documents?

A. I'm gonna follow my attorney's instructions and not answer.

Q. Do you have any in your office in Austin?

MR. SCHUMAN: Vague.

BY MR. CHIN:

Q. Do you have any documents pertaining to your prior discussions with TQ Delta in your office in Austin?

A. I don't -- I don't know.

Q. Where do you -- how do you access files pertaining to -- to your work at the -- at CommScope; do y'all use a cloud service or network service?

A. There's -- there's a number of storage systems, e-mail and OneDrive.

Q. What e-mail system do y'all use?

A. I don't know.

Q. What e-mail client do you use?

A. I use Outlook.

Q. Okay. Has the company standardized on using Outlook for e-mails?

A. I don't know.

Q. Well, what's your -- do you have any understanding of whether any of your CommScope colleagues are -- are using other e-mail systems?

MR. SCHUMAN: Objection, outside the scope.

THE WITNESS: It's possible. I don't know if we've standardized Outlook.

BY MR. CHIN:

Q. And where are those e-mails hosted?

MR. SCHUMAN: Objection, outside the scope, vague.

THE WITNESS: I don't know.

BY MR. CHIN:

Q. Are you on a different e-mail system than the people in the Home Networks Business Unit?

A. I mean, I already said I don't know what system I'm on, so I don't know the answer to that question.

Q. Okay. So let's talk about the Home Networks Business Unit. The DSL products at the -- at the -- that are at issue in this case, those are used by -- used -- well, those are sold through that unit, business unit?

A. I'm sorry, you're asking if the DSL products are sold by the Home Networks Business Unit?

Q. Yes.

A. I believe so, yes.

Q. Okay. Do you know if the DSL products involved in this case are sold through any other business units of CommScope other than the Home Networks Unit -- Business Unit?

A. I don't believe they are.

Q. Okay. Is that something you've looked into?

A. Yes.

Q. Okay. And how did you go about confirming whether -- whether that was the case?

A. I spoke with some members of the Home Networks Business Unit.

Q. Okay. Did you speak with any members outside that unit to find out if they sold or -- or otherwise used any of the DSL products involved in this case?

A. Otherwise used?

Q. Yes.

A. I did not contact employees outside of Home Networks to see if they used the DSL.

Q. And the -- the home business -- the Home Networks Business Unit, where is it -- where does it have employees located in the United States?

A. They're distributed across the U.S.

Q. Okay. Are there certain cities that more of them are located than -- than in others?

A. Yes.

Q. Okay. Which cities are those?

A. Suwanee, Georgia, that's S-U-W-A-N-E-E. Horsham, Pennsylvania, H-O-R-S-H-A-M. And Santa Clara, California.

Q. How about Austin?

A. Austin does have a Home Networks present. It's

a relatively small office, though. I think everyone in there is Home Networks except for me.
Q. In Austin?
A. Yes.
Q. And roughly -- roughly how many people -- how many employees are there in Austin that are in the Home Business Unit?
A. Most of them are.
Q. Right. Roughly, what -- what number?
A. There have been layoffs since the last time I've been in the office. I don't -- I would say in the order of -- of maybe 30. I don't know the direct answer to that, though. It's a relatively small office.
Q. And roughly how many people are in the home business -- excuse me, Home Networks Business Unit in Suwanee, if you know?
A. I don't know.
Q. How about in Horsham, Pennsylvania?
A. I don't know.
Q. How about in Santa Clara, California?
A. I don't know.
Q. Okay. Is that something you tried to determine in preparation for this deposition?
A. No.
Q. Why not?

MR. SCHUMAN: That's outside the scope.
MR. CHIN: I'm sorry, are you -- are you testifying on his behalf? Are you trying to --
MR. SCHUMAN: I'm making an objection that it's outside the scope, it's outside the scope, objection.
THE WITNESS: So you're asking why I didn't investigate those questions you just came up with?
BY MR. CHIN:
Q. Yes.
A. I -- I didn't think to.
Q. When you were with Arris, were you at the same office that CommScope uses as an office now in Austin?
A. Yes.
Q. Is it your understanding that when you were at Arris, the people who -- who worked on the DSL products that Arris had, that most of them transferred over to go work for CommScope?
A. I'm sorry, can you ask that again?
Q. Okay. Yeah, let me back up.
When you were at Arris -- well, let's start even further back. When you were at Pace Americas, were you officing at the same office that CommScope now uses as an office in Austin?
A. Yes.

Q. Okay. And at the time you worked for Pace Americas, were the other people working at that office involved in working on the DSL products that some of which are at issue in this case?
A. I don't know.
Q. Okay. When you were working at Pace Americas, were the other -- some of the other people in the office working on DSL products in general?
A. I don't know.
Q. Okay. And when you were at Arris, were some of the people -- other people in that office working on any of the DSL products that are now at issue in this case?
A. When I was at Arris, were some of the people in the Austin office working on DSL products now at issue; is that your question?
Q. Yes.
A. I don't know which products they were working on.
Q. Okay. Was it your -- when you were at Arris, was it your understanding that some of the other people in the office were working on DSL products in general?
A. Yes.
Q. Okay. But whether some of those DSL products are in fact the actual products that are at issue in this case, you don't know that; is that -- is that

correct?
A. I don't know which specific products they were working on.
Q. Okay. Now, when CommScope took over Arris, did -- did the people who -- who worked on DSL products in general also move over to CommScope?
A. Okay. Did all of the Arris DSL people or are you talking about the Austin people?
Q. The ones in Austin.
A. So did the Austin people continue to work on DSL?
Q. For CommScope, yes.
A. I think only one did continue.
Q. Who was that?
A. Jaime Salazar.
Q. Do you know if he's still with CommScope?
A. He is.
Q. In what capacity?
A. He works on DSL stuff.
Q. Is he an engineer?
A. I don't know.
Q. The people currently in the CommScope Austin office, is it your understanding that some of them do work relating to the DSL products involved in this case?
A. Just the one.

A. He's in California.
Q. When he worked for Arris, was he in California as well or was he somewhere else?
A. He's -- he's in California.
Q. Has he ever been a full-time employee of CommScope or a part-time employee, have an employee status at CommScope?
A. I don't know.
Q. And Mr. Baker, what is his first name?
A. Paul.
Q. Is he one of the people that's unnamed in Paragraph 4 of your declaration?
A. I'm sure he's named here. I know we provided his name in an interrogatory response.
Q. Okay. If you look at Paragraph 4 of your declaration, if you could tell us the -- to the extent that you know, tell us the names of the people that you've described there. Starting with the senior VP of Home Networks, who -- who is that?
A. That's Joe Chow.
Q. What about the VP of product management, who is that?
A. I think that might be Ken Haase, H-A-A-S-E.
Q. I'm sorry, could you spell that name again?
A. H-A-A-S-E.

Q. I apologize, I spoke over you, could -- one more time?
A. H-A-A-S-E.
Q. Thank you. Who is the senior director of software engineering referenced in Paragraph 4?
A. I can't -- without reference to other documents, I don't think I can place that one or the next one.
Q. Who is the director of software engineering that's further down after the reference to Mr. Hagarty?
A. Oh, that is -- that's Raj, has a very difficult to spell first and last name, I believe we disclosed him in the interrogatory response.
Q. Is it -- I'm going to try to pronounce it, but we'll provide a spelling.
A. Just spell it out, it's easier.
Q. Is it Rajagopalan Ramanujam?
A. I think that's right.
Q. Okay.
A. I'll just cross-reference the interrogatory response, that's the person.
Q. I hope you won't be offended, we'll just call him Raj for this deposition; how about that?
A. I'll stick with Mr. Raj because I think he outranks everybody.

Q. Okay. Mr. Raj, that's fine. Okay. So we'll -- we'll do that.
And then the -- at the end of paragraph 4, the senior manager of software engineering residing in Austin -- Austin Texas, who is that?
A. That's Mr. Salazar.
Q. Is a gentleman named Craig, Craig Herro one of those people you -- you intended to reference in Paragraph 4?
A. It's possible he's in California. He wouldn't be in Georgia. It's possible it's him, I -- I don't recall. This was true when I wrote it, but I can't recall what those last two were.
Q. So why didn't you put the names in -- in this declaration for the Court?
MR. SCHUMAN: Objection, privileged. Don't answer.
THE WITNESS: I'll follow that instruction.
BY MR. CHIN:
Q. Now, in Paragraph 3 of your declaration, you reference CommScope having a facility in Richardson, Texas; do you see that?
A. I don't.
Q. Is that the loca- -- is that the --
A. I don't see it. Can you scroll up? Okay.

Q. Do you see that in the first sentence of Paragraph 3, "CommScope has a facility in Richardson, Texas"?
A. I see it now, yes.
Q. Is that the one located at 2601 Telecom Parkway?
A. Yes.
Q. How long has CommScope had that facility at that address?
A. I don't know. It predates my tenure at CommScope.
Q. And that facility is located within the Eastern District of Texas, correct?
MR. SCHUMAN: Objection, vague.
THE WITNESS: No, it is not.
BY MR. CHIN:
Q. It is not in the Eastern District of Texas?
A. The line goes through the middle of the building. It's not contained in the Eastern District. It's really frustrating.
Q. Why is it frustrating?
A. Because there's no clear answer to your question.
Q. Hasn't CommScope represented in -- to the Eastern District of Texas in the past that that

Page 14 (Pages 53-56)

CONFIDENTIAL - PAGE 73, LINE 4 THROUGH PAGE 74, LINE 13
30(b)(6) FOR COMMSCOPE HOLDING COMPANY, INC. - JAMES DANIEL SHEAD - 1/21/2022

Richardson facility is within the district?
MR. SCHUMAN: Objection, outside the scope, vague.
THE WITNESS: I don't recall if they did. I just know that the district line goes through the middle of the building.
BY MR. CHIN:
Q. And if it goes through the middle of the building, in your mind, it's not within the district?
A. The entire building is not within the district.
Q. Okay.
A. I don't know the legal meaning of what it counts. I remember it being a very difficult question, but it's just an odd duck. I've never encountered a situation like this before.
Q. Is part of the building within the Eastern District of Texas?
A. Yes.
Q. Okay. CommScope pays property taxes in Collin County which resides in the Eastern District of Texas, right, with respect to that building?
A. Partly. I believe -- I believe they pay two different counties. I am not entirely sure.
Q. Okay. But you do agree they pay property taxes with respect to that building that resides in Collin

Page 53

County, and Collin County resides in the Eastern District of Texas, right?
A. I don't think it's exclusively to Collin County, I think it's the two different counties for the same building. I haven't looked at it in a while, so I'm not sure.
Q. Okay. And they pay some taxes in Dallas County, right, with respect to that building?
A. I don't know what the second county would be, but I believe they pay in two different counties, I believe. I don't know --
Q. Okay. Just so I'm clear, from -- from CommScope's point of view, and you're speaking as the corporate representative, that because the building is split, that facility is not within the Eastern District of Texas, right?
MR. SCHUMAN: Mischaracterizes the witness's testimony.
THE WITNESS: So you'd asked if it was encompassed by or within, I just don't know the answer -- if that's a legal question, right, as to whether or not it's subject to jurisdiction, complicated answer, right?
All I can tell you is the line goes through and as we talked about, I believe it pays taxes in two

Page 54

different counties. I don't know the legal ramifications for that, nor am I prepared to testify about that. So just know -- know that as well, I believe I recall those facts there.
BY MR. CHIN:
Q. It can be both in the Eastern Dist- -- District of Texas and in the -- the -- whatever the other county is, right?
MR. SCHUMAN: Objection, argumentive, legal conclusion, outside the scope.
THE WITNESS: As I said, I just don't know. I mean, I just know the -- the facts as I told you. I don't know what that -- what that means in the larger scheme of things, so.
BY MR. CHIN:
Q. Well, you understand that CommScope has filed a motion to transfer the -- the venue of this case to Delaware, right? I mean, that's why you submitted the declaration, right?
A. The question is has CommScope filed a motion to transfer from Eastern District of Texas to Delaware?
Q. Right.
A. Yes, they have.
Q. Right. And that's why you submitted your declaration, right?

Page 55

A. I submitted a declaration in support of that motion, yes.
Q. Okay. And so you had an understanding that the issue of what -- what facilities, if any, that CommScope has within the Eastern District of Texas or -- or if outside its proximity to the Eastern District of Texas would be a relevant consideration for the Court, right?
MR. SCHUMAN: Objection, work product, attorney/client privilege.
Do not answer the question.
THE WITNESS: I'm going to follow that instruction.
BY MR. CHIN:
Q. In Paragraph 3 you state, "None of the employees or independent contractors at the Richardson facility are involved in the design or development of the DSL products, including in particular the accused products in this -- in this case"; do you see that?
A. Yes.
Q. Okay. What, if anything, did you do to -- to confirm that that statement is true?
A. I -- I spoke to the attorney who I mentioned before. And then I spoke to the various individuals we disclosed in response to Interrogatory Number 1 to see if they worked with anybody in -- in Richardson.

Page 56

HANNA & HANNA, INC.
713.840.8484

**CONFIDENTIAL - PAGE 73, LINE 4 THROUGH PAGE 74, LINE 13**

**30(b)(6) FOR COMMSCOPE HOLDING COMPANY, INC. - JAMES DANIEL SHEAD - 1/21/2022**

head the other business units, but Home Networks was untouched.

BY MR. CHIN:

Q. Okay.

MR. CHIN: Why don't we do the bathroom break now. Okay?

THE WITNESS: I'm sorry, can you say that again?

MR. CHIN: Why don't we do the bio-break

Page 79

now.

THE VIDEOGRAPHER: We're off record. Time is 12:50 p.m.

(A break was taken.)

THE VIDEOGRAPHER: We are back on record. Time is 12:57 p.m.

BY MR. CHIN:

Q. Mr. Shead, in your declaration, earlier when I asked you about your declaration in Paragraph 4, you had various people's positions listed, but not their names.

And one of the ones earlier that you weren't able to tell me the name to was a senior director of software engineering. Have we since referenced that name to -- enough to refresh your memory on who that is?

A. I don't recall. It's possible. The Interrogatory 1 Response had their locations and if -- I could probably correlate that if I had those side by side, but I haven't --

Q. Okay. I do want to pin down who you think their name is since it's in your declaration, I don't want there to be confusion later about who -- who you were referencing.

MR. CHIN: So Mr. Among, if you could pull up Document 004A.

Page 80

**CONFIDENTIAL - PAGE 73, LINE 4 THROUGH PAGE 74, LINE 13**
**30(b)(6) FOR COMMSCOPE HOLDING COMPANY, INC. - JAMES DANIEL SHEAD - 1/21/2022**

Q. Okay. Okay. I think -- hold on, I'm sorry, one -- couple more questions.
There's a -- do you know who Michael Lund is, L-U-N-D?
A. The name sounds familiar, but I cannot place it.
Q. And Robert Pizzano, P-I-Z-Z-A-N-O?
A. Name sounds familiar, but I cannot place it.
Q. I believe that CommScope views those two gentlemen, Mr. Lund and Mr. Pizzano, as prior artists.
Are those gentlemen anybody that you're aware of that has been reached out to concerning whether or not testifying in Texas as opposed to -- in the Eastern District of Texas as opposed to Delaware would be a greater burden to them?
MR. SCHUMAN: Objection, lacks foundation, vague, outside the scope.
THE WITNESS: I don't know.
BY MR. CHIN:
Q. Okay. You have no information to share about that, right?
A. Like I said, I don't know.
Q. When you -- when you worked at Arris and then CommScope, were there any people in the Austin office that you were aware of that worked on what you now know

Page 125

are the accused products and -- and then left the company?
MR. SCHUMAN: Objection, outside the scope, vague.
THE WITNESS: I don't know.
BY MR. CHIN:
Q. Okay. In preparing for this deposition and in preparing for your declaration, did you try to determine whether there were any former Austin employees who did work pertaining to the accused products?
MR. SCHUMAN: Objection, vague, outside the scope.
THE WITNESS: No.
MR. CHIN: I'll -- I'll pass the witness.
MR. SCHUMAN: I have no questions for this witness. I think that concludes Mr. Shead's deposition.
THE COURT REPORTER: Before we go off the record, can y'all tell me whether or not you'd like to get a copy?
MR. CHIN: I'll have to get back to you off the record on that.
MR. SCHUMAN: We would like a copy, please.
THE VIDEOGRAPHER: And Mr. Schuman, do you also need a copy of the video?
MR. SCHUMAN: Not at this time, just the

Page 126

written transcript.
THE VIDEOGRAPHER: Okay, got it.
Sarah, do you have anything else?
THE COURT REPORTER: I'm good.
THE VIDEOGRAPHER: All right. This conclude's today's deposition. We're off record. Time is 2:23 p.m.
(The deposition ended at 2:23 p.m.)

Page 127

CORRECTION PAGE

WITNESS NAME: JAMES DANIEL SHEAD DATE: 01/21/2022

PAGE LINE CHANGE REASON

JOB NO: 23939

Page 128

Page 33 (Pages 129-131)

CONFIDENTIAL - PAGE 73, LINE 4 THROUGH PAGE 74, LINE 13
30(b)(6) FOR COMMSCOPE HOLDING COMPANY, INC. - JAMES DANIEL SHEAD - 1/21/2022

SIGNATURE PAGE

I, JAMES DANIEL SHEAD, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

____________________________
JAMES DANIEL SHEAD

THE STATE OF __________ )
COUNTY OF _____________ )

Before me ____________________ on this day personally appeared JAMES DANIEL SHEAD known to me [or proved to me on the oath of ___________________ or through ______________________ (description of identity card or other document)] to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ______ day of _______________,______.

__________________________________
NOTARY PUBLIC IN AND FOR
THE STATE OF ____________

My Commission Expires:
_______________________

JOB NO: 23939

Page 129

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

TQ DELTA, LLC, )
Plaintiff, )
)
VS. )
)
COMMSCOPE HOLDING ) Civil Action
COMPANY, INC., COMMSCOPE ) 2:21-cv-310-JRG
INC., ARRIS INTERNATIONAL ) (Lead Case)
LIMITED, ARRIS GLOBAL )
LTD., ARRIS US HOLDINGS, )
INC., ARRIS SOLUTIONS, )
INC., ARRIS TECHNOLOGY, )
INC., and ARRIS )
ENTERPRISES, LLC, )
)
)
NOKIA CORP., NOKIA ) Civil Action No.
SOLUTIONS AND NETWORKS ) 2:21-cv-309-JRG
OY, and NOKIA OF AMERICA ) (Member Case)
CORP., )
)
Defendants. )

REPORTER'S CERTIFICATION
DEPOSITION OF JIM SHEAD
TAKEN JANUARY 21, 2022
REPORTED REMOTELY

I, Sarah Lindsey, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, JIM SHEAD, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the original deposition was delivered to

Page 130

Mr. Edward Chin.

That a copy of this certificate was served on all parties and/or the witness shown herein on ________________________________________.

I further certify that pursuant to FRCP No. 30 (f)(i) that the signature of the deponent was requested by the deponent or a party before the completion of the deposition and that the signature is to be returned within 30 days from date of receipt of the transcript. If returned, the attached Changes and Signature Page contains any changes and the reasons therefor.

I further certify that I am neither counsel for, nor related to, nor employed by any of the parties in the action in which this proceeding was taken, and further, I am not financially or otherwise interested in the outcome of the action.

Certified to by me on this 1st day of February, 2022.

________________________________________
Sarah Lindsey, CSR, CSR NO. 9256
Expiration Date: 2/28/23

Hanna & Hanna, Inc.
CRF - 10434 - Expiration: 10-31-2022
8582 Katy Freeway, Suite 105
Houston, Texas 77024
713-840-8484 - 713-583-2442
www.hannareporting.com

Page 131

HANNA & HANNA, INC.
713.840.8484