# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **TQ DELTA, LLC,**<br>　　　　　*Plaintiff,*<br>　　v.<br>**COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC**<br>　　　　　*Defendants.* | CIV. A. NO.  2:21-CV-310-JRG<br>(Lead Case) |
| **TQ DELTA, LLC,**<br>　　　　　*Plaintiff,*<br>　　v.<br>**NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.,**<br>　　　　　*Defendants.* | CIV. A. NO.  2:21-CV-309-JRG<br>(Member Case) |
| **NOKIA OF AMERICA CORP.,**<br>　　　　　*Third-Party Plaintiff,*<br>　　v.<br>**BROADCOM CORP., BROADCOM INC., and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD.,**<br>　　　　　*Third-Party Defendants.* | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR ENTRY OF ORDER FOCUSING PATENT CLAIMS AND PRIOR ART [DKT. NO. 77]**

I.  **INTRODUCTION**

TQ Delta's response admits that it has no intention to try all of the Asserted Claims—but it wants to force Defendants to expend extreme resources to defend all 128 claims until some undefined future point of "strategic" value to TQ Delta. But the purpose of narrowing orders is to prevent a plaintiff from forcing a defendant to waste resources on claims the plaintiff knows it will never actually try.  That purposes rings especially loudly here.

Moreover, the timing for narrowing set forth in Defendants' Proposed Order is entirely consistent with the proposed timing for narrowing set forth in the Court's Model Order. TQ Delta ignores the long history of litigation involving these exact same patents—a history that places TQ Delta in the best possible position to elect claims efficiently in accordance with the Proposed Order. Courts in this district have regularly required patentees to reduce the number of asserted claims in accordance with this schedule, and doing so now is appropriate, would not result in prejudice to TQ Delta, and would conserve the time and resources of the Court and the parties. *Allegan, Inc. v. Teva Pharms. United States*, No. 2:15-cv-1455-WCB, 2017 U.S. Dist. LEXIS 10603, at *3 (E.D. Tex. Jan. 26, 2017). Despite Defendants' repeated attempts to come to an agreed plan for narrowing this case, TQ Delta has been unwilling to participate in the discussion and simply responded that this request is premature. For the reasons described below, Defendants respectfully request that the court enter Defendants' Proposed Order.

II.  **ARGUMENT**

    A.  **Denial of Defendants' Motion Would Prejudice Defendants, Not TQ Delta**

TQ Delta asserts that because "[p]atent litigation inherently has many unknowns," it does not yet know what claims it may assert at trial. Resp. at 10. But TQ Delta's fear that it may lose "one or more asserted patents or claims in various ways such as an adverse claim construction, via summary judgment, and via IPR" is not a proper basis to deny entry of the Proposed Order. *Id.* TQ

1

Delta has litigated extensively, including at trial, many of the same claims, patents, and patent families over the past decade, and has had ample opportunity to evaluate their weaknesses.

Indeed, the past litigations involved Accused Products that utilize the same or similar chipsets present in Defendants' Accused Products. For example, with respect to CommScope, TQ Delta has accused here many of the same Accused Products on which it has already had discovery *for years* in the Delaware litigation, including the source code for the Broadcom chips that power the DSL technology in those products. TQ Delta has had numerous opportunities to investigate the functionality of the Accused Products and bring suit on those claims where it feels it has the strongest case. Likewise, the past litigations involved the same seven families of patents asserted in this case, including six overlapping patents, and TQ Delta has had significant time to evaluate portions of the prior art that were also presented in this case. TQ Delta is in the best possible position to elect claims in an efficient and strategic manner and would not suffer prejudice in doing so. Defendants, on the other hand, are being required to litigate and defend against 128 claims and 22 patents, the vast majority of which cannot and will not ever be brought before a jury.

TQ Delta also alludes to their belief that the number of asserted patents and claims are necessary to address the alleged infringing activity by the Defendants. Resp. at 3. While Defendants disagree that any of the Accused Products infringe any Asserted Patent or that the Asserted Patents are valid (indeed, many claims have already been invalidated through IPRs and other litigations), many of TQ Delta's infringement allegations implicate the same Accused Products. For example, TQ Delta asserts that Nokia infringes fourteen claims of U.S. Patent No. 8,595,557, all of which implicate the exact same products and, therefore, the exact same damages base. Accordingly, TQ Delta would not be prejudiced by electing a subset of those claims.

Further, TQ Delta raises the existence of potential *inter partes* reviews as a reason to deny

Defendants' motion. This argument should be disregarded for at least two reasons. First, to the extent TQ Delta feels claim reduction would lessen the targets for an IPR, Defendants are prejudiced in being forced to evaluate, draft, and file IPRs on claims that may ultimately be dropped in the litigation. This would also needlessly multiply proceedings at the USPTO. Allowing TQ Delta to wait until after the IPR bar date to choose which claims to elect would disproportionately allow TQ Delta to make its decision whilst knowing what claims are subject to an IPR and prevent Defendants from the same courtesy of having that information in determining which IPRs to file.

Second, TQ Delta's statement that "Defendants' invalidity case is preserved through their pending and potential future IPRs" is legally incorrect. On February 4, 2022, in a decision that dramatically reduces Defendants' ability to pursue invalidity theories separately through an IPR, the Federal Circuit adopted a pro-patentee interpretation of the IPR estoppel provision found in 35 U.S.C. § 315(e)(2). The Court held that the scope of estoppel is not tied only to the grounds in the IPR but extends to any ground that "reasonably could have been asserted against the claims included." *California Institute of Technology v. Broadcom Ltd. and Apple Inc.*, No. 2020-2222, 2021-1527, D.I. 63 at 23-24 (Fed. Cir. Feb. 4, 2022, Feb. 22, 2022 Errata).*Id.* Accordingly, the prejudice to Defendants due to limiting time to file IPRs would be far greater than any purported prejudice to TQ Delta.

**B.     The Proposed Order Is Consistent with the Model Order and Appropriate**

TQ Delta repeatedly asserts that because it plans to narrow claims later in the case, entry of the proposed narrowing order is unnecessary and premature. But TQ Delta's arguments are inconsistent with the practices of this Court and based on a mischaracterization of Defendants' Proposed Order. Indeed, the Proposed Order does not seek to "narrow the number of claims before claim construction and before an accused infringer produces discovery sufficient to show the

3

structure and operation of the accused products." Resp. at 4. Instead the Proposed Order, *in a manner identical to the Model Order*, sets forth a phased schedule for limiting claims. The first phase is at the completion of claim construction discovery. And the second phase is 28 days before the service of expert reports. This phased schedule efficiently allows TQ Delta to determine the most appropriate claims and Defendants to determine the most appropriate prior art references, thereby conserving the resources of the parties and the Court as the case moves forward.

TQ Delta also asserts that because "TQ Delta intends to narrow its asserted claims at strategically critical points such as after claim construction, after all *inter partes* reviews have been filed, and after expert reports," it would be premature to enter the Proposed Order at this time. Resp. at 5. But that position shows the very problem. TQ Delta tacitly admits that it knows now that it does not intend to try all 22 patents—of course it does not. TQ Delta should not be allowed to force Defendants to expend extreme resources to defend 128 claims across 22 patents, knowing all along that it realistically will only take a very small number to trial. TQ Delta's admission lays bare the exact reason why the Model Order exists and why it is especially germane to this case.

In making its statement, TQ Delta also ignores the purpose of a narrowing order, which is to "set guideposts at the outset of litigation in reducing claims as a case develops." *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2017 U.S. Dist. LEXIS 211376, at *6 (E.D. Tex. Dec. 22, 2017). Indeed, precedent tells us that now, before claim construction and expert discovery, is the correct time to enter an order to narrow the scope of the case. *Id.*[1] This is especially true in a case that involves 128 asserted claims. TQ Delta has already propounded

---

[1] *Intellectual Ventures* indicates that the proper timing for such a motion is at the time of filing the docket control and discovery orders. *Id.* at *5. Indeed, Defendants approached TQ Delta about coming to an agreement at that time, but TQ Delta again indicated they wanted to wait to have the conversation at a later time. Ex. A (Dec. 7, 2021 Email from B. Davis to Counsel) at 1.

4

multiple interrogatories requesting responses on a claim-by-claim basis; this is clearly prejudicial to Defendants given that TQ Delta will never try many of these claims. Further, depending on TQ Delta's claim elections, narrowing could significantly reduce the disputes at play during claim construction. And such a narrowing will certainly reduce the time and resources required for expert discovery. Now is the appropriate time to enter a path to narrow the disputes in this case.

### C.     The Proposed Order Reflects the Needs of the Case

Despite TQ Delta's claims to the contrary, Defendants' Proposed Order does not favor Defendants. As TQ Delta notes, and as described in Defendants' opening motion, Defendants have proposed a *slightly* "modified" version of the Model Order to reflect the twenty-two Asserted Patents. Specifically, Defendants have attempted to set limits for prior art references that correspond to the number of patents that remain after narrowing. *See* Mot. Proposed Order at 2-3. Hypothetically, Plaintiff could elect claims in a way that all twenty-two patents remain in the case. Because of the varying subject matter of the 19 Patents, this would necessitate that Defendants be able to elect an appropriate number of prior art references to cover the scope of the subject matter.

Further, as part of the meet and confer process, Defendants provided a draft of the Proposed Order to TQ Delta in hopes of facilitating discussion as to an agreed-upon process for narrowing. Instead of taking issue with Defendants' Proposed Order and proposing alternative language, TQ Delta indicated that entry of a narrowing order was premature. Had TQ Delta provided a proposal for narrowing the case in a timely manner, Defendants were willing to have that conversation.

### III.    CONCLUSION

For these reasons, Defendants ask that the Court enter Defendants' Proposed Order Focusing Patent Claims and Prior Art.

Dated: February 28, 2022	Respectfully submitted,

/s/ M. Scott Stevens
M. Scott Stevens (NC Bar # 37828)
Karlee Wroblewski (NC Bar # 55043)
Nic Marais (NC Bar # 53533)
ALSTON & BIRD LLP
One South at the Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Tel:  704.444.1000
Fax:  704.444.1111
Email: scott.stevens@alston.com
Email: karlee.wroblewski@alston.com
Email: nic.marais@alston.com

John D. Haynes (GA Bar # 340599)
Michael Deane (GA Bar # 498195)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
Tel:  404.881.7737
Fax:  404.881.7777
Email: john.haynes@alston.com
Email: michael.deane@alston.com

Adam Ahnhut (TX Bar # 24106983)
ALSTON & BIRD LLP
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Email: adam.ahnhut@alston.com
Tel: 214.922.3400
Fax: 214.922.3899

*Counsel for Defendants
Nokia Corporation, Nokia Solutions
and Networks Oy, and Nokia
 of America Corporation and Third-
Party Plaintiff, Nokia of America
Corporation*


By: /s/ Andrew Ong

6

Eric H. Findlay (TX Bar No. 00789886)
Brian Craft (TX Bar No. 04972020)
FINDLAY CRAFT, P.C.
102 N. College Ave, Ste. 900
Tyler, TX 75702
Tel: 903.534.1100
Fax: 903.534.1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

Douglas J. Kline
Christie Larochelle
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
Tel: 617.570.1000
Fax: 617.523.1231
Email: dkline@goodwinlaw.com
Email: clarochelle@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel: 415.733.6000
Fax: 415.677.9041
Email: bschuman@goodwinlaw.com
Email: rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
Tel: 650.752.3100
Fax: 650.853.1038
Email: aong@goodwinlaw.com

*Attorney for Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS International Limited, ARRIS Global Ltd., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on February 28, 2022. Counsel for Broadcom was served via traditional mail.

/s/ *M. Scott Stevens*
M. Scott Stevens