# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| TQ DELTA, LLC,<br>    Plaintiff,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC, | § § § § § § § § § § § § § § | **JURY TRIAL DEMANDED**<br><br><br><br>Civil Action 2:21-cv-310-JRG<br>(Lead Case) |
| NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.<br><br>    Defendants. | § § § § § § | Civil Action No. 2:21-cv-309-JRG<br>(Member Case) |

**PLAINTIFF TQ DELTA'S SURREPLY IN OPPOSITION TO
COMMSCOPE'S MOTION TO TRANSFER VENUE
TO THE DISTRICT OF DELAWARE [DKT NO. 32]**

## I. INTRODUCTION

CommScope's Reply, like its Motion, focuses on judicial economy—largely ignoring the other seven transfer factors. But judicial economy is not the only factor and does not trump the remaining factors. Indeed, CommScope's Reply does not contest that the remaining factors do not favor transfer (they, in fact, weigh against transfer) and failed to refute the material facts presented in TQ Delta's Response. When all the factors are considered, the facts show that CommScope has not met its burden of demonstrating that the District of Delaware is a clearly more convenient venue. CommScope's Motion should be denied.

## II. JUDICIAL ECONOMY DOES NOT REQUIRE TRANSFERRING THIS CASE

Judicial economy does not require transferring this case. It is undisputed that this case differs from the *2Wire* case in significant ways. Over half (7 of 13) of the Patents-in-Suit asserted against CommScope are not asserted in the *2Wire* case. The G.Fast, G.Vector, and G.INP standards at issue here are not at issue in the *2Wire* case. Entire product lines (*e.g.*, the Arris products) and parties (*e.g.*, Arris and CommScope) are in this case and not in *2Wire*. And—even under CommScope's view—there is minimal overlap in accused products because only 5 of the 31 CommScope accused products are also in *2Wire*. Reply, Ex. 19 at 4, fn. 1.

For those five products (about 15% of the CommScope case on a product-basis), there is no substantial overlap with this case. Again, most of the patents asserted against those products (against, 7 out of 13) are not at issue in *2Wire*. And, even where there is potential overlap in patents, there is no overlap in the damages that TQ Delta seeks. The damages period in *2Wire* is only through 2016. *See, e.g.*, Ex. 19, Redacted J. Putnam expert report, at 13 fn. 8, and 26. The five products are at issue in this case to capture the post-2016 damages period.

The overlap between this case and the *2Wire* case is thus not nearly as significant as

CommScope argues. In addition to the differences above, it remains undisputed that this case will require at least one additional *Markman* hearing, whether the case proceeds here or in Delaware. CommScope (along with Nokia) has raised a significant number of claim-construction issues that were not addressed in Delaware and, for terms that have been construed in Delaware, has not agreed to that Court's construction. *Compare, e.g.*, Ex. 20, Claim Construction Order in Delaware case (construing "transceiver" as "communications device capable of transmitting and receiving data wherein the transmitter portion and receiver portion share at least some common circuitry") *with* Ex. 21, Defendants' Rule 4-2 Disclosure (proposing construction of "transceiver" as "communications device capable of transmitting and receiving data" and raising multiple terms not construed in Delaware).

It also remains undisputed that damages and willfulness issues have yet to be addressed in Delaware and will not even be addressed in the two cases scheduled in July and September 2022. The setting of the July and September 2022 infringement-only trials make it even less likely that Judge Andrews would fold this case into those cases due to the additional discovery needed regarding non-overlapping products, patents, standards, and issues. And, given the extent of non-overlapping products, patents, standards, and issues, if Judge Andrews does attempt to fold this case into those pending cases, the July and September trials would likely be delayed and make this Court's January 2, 2023 trial date a faster and more efficient path to resolving all disputed issues.

Finally, it remains undisputed that CommScope has not agreed to be bound by **any** prior Delaware rulings (e.g., claim construction, summary judgment, and jury verdicts, many of which were adverse to *2Wire*). Thus, the picture of judicial economy painted by CommScope is a mirage.

And CommScope's mirage ignores that this Court will address many of the same issues regardless of whether the CommScope case is transferred. That is because the *Nokia* case involves

many of the same patents, standards, and types of products as the *CommScope* case. And despite that overlap, CommScope ignored the *Nokia* case in both its Motion and its Reply.

These facts make this case meaningfully different than the *Tivo v. Cisco* case on which CommScope relies. Reply at 1; *TiVo Inc. v. Cisco Sys., Inc.*, No. 2:12-CV-311-JRG, 2012 U.S. Dist. LEXIS 113514 (E.D. Tex. Aug. 13, 2012). In *Tivo*, the Court considered *all* the transfer factors to *deny* Cisco's motion to transfer; it did not rely on judicial economy alone, and did not rely on that factor to *grant* a motion to transfer. *Id.* at *5–7.

The facts of *Tivo* also do not support CommScope. In *Tivo*, the Court denied Cisco's motion to transfer to the Northern District of California (NDCA) in favor of Cisco's first-filed declaratory judgment action in the NDCA. *Tivo*, 2012 U.S. Dist. LEXIS 113514, at *2–3. Recognizing the lack of substantial overlap, CommScope did not invoke the first-to-file rule in this case. The *Tivo* Court also found, in denying transfer, that "both Tivo and Cisco maintained a significant presence in Texas." *Cisco,* 2012 U.S. Dist. LEXIS 113514, at 6. That is the case here: TQ Delta and CommScope maintain a presence in this District but not in Delaware. Finally, the *Tivo* Court's determination of judicial economy relied heavily on the fact that the NDCA Court had transferred Cisco's NDCA action to this District.[1] *Id*. at *7. Here, there is no similarly determinative fact. And, like *Tivo*, there is a co-pending case (*Nokia*) that involves overlapping patents and standards. *See id.* at *2 (discussing two related cases against Verizon and Motorola that involved overlapping patents and products). Because of the lack of substantial overlap between these two cases, transfer is not required under this factor.

---

[1] "The significant economy of trying all these overlapping cases (**especially in light of the Cisco case having been transferred to this District from the NDCA**) in one forum unquestionably achieves judicial economy." (emphasis added).

### III. THE REMAINING TRANSFER FACTORS DO NOT FAVOR TRANSFER

Despite CommScope's false accusations of venue manipulation, the facts show that Delaware is not a clearly more convenient venue. It is undisputed that no witnesses or sources of proof are in Delaware; many of the witnesses (and attendant proof), such as TQ Delta's Managing Director and CommScope's CEO, are located in or near this District; current and former relevant CommScope employees relating to DSL reside near this District, in Austin, and elsewhere in Texas; CommScope's major customer for the Accused Products (AT&T) is in Dallas; and the balance of the evidence and witnesses overwhelmingly reside closer to this District than Delaware.

CommScope argues that the Court can ignore this proof because "TQ Delta has never deposed or called any of the witnesses identified in its opposition" in the prior Delaware trials. Reply at 5. But that proves the point that the cases do not have substantial overlap. CommScope and ARRIS were not parties in the Delaware cases, and it is thus unsurprising that their witnesses were not deposed or called to trial (the Arris products were not issue).

Moreover, CommScope has not identified any witnesses subject to the compulsory process of the Delaware court, so it is no surprise if certain third-party witnesses had not been called to testify in the Delaware trials. In contrast, this Court has subpoena power over AT&T, 29 prior artists, and several former CommScope employees, making it more likely that they could be called to trial if this case proceeds here. On these facts—no identified witnesses in Delaware and a substantial number in Texas—this factor weighs against transfer. *Cf. In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (explaining that this factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue").

The connections to this District are not "manufactured." TQ Delta's Managing Director, Mark Roche, has lived in this District since March 2020, where he maintains sources of proof. AT&T's presence in Dallas is not manufactured. Nor is the fact that several former CommScope

employees and 29 named inventors of CommScope's asserted prior art live in Texas.

CommScope claims that the Court can ignore these prior artists because they have not testified in Delaware. Reply at 5. But whether certain witnesses testify in Delaware has no bearing on whether they might testify in this case. And none of the 29 prior artists were subject to compulsory process by the District of Delaware. A party cannot categorically ignore prior art witnesses, *In re Netflix, Inc.*, 2022 U.S. App. LEXIS 1390, at *11 (Fed. Cir. Jan. 19, 2022), and there is reason to believe the Texas-based prior artists could be relevant. First, 15 of the 29 Texas-based prior artists are "directly related to prior art that was specifically mentioned in the asserted patents, heightening their potential relevance." Chin. Decl., ¶ 5; Ex. 22-25; *In re Hulu,* 2021 U.S. App. LEXIS 22723, at *8-9 (Fed. Cir. Aug. 2, 2021) ("Here, certain of Hulu's proposed prior art witnesses directly related to prior art that was specifically mentioned in the asserted patents themselves, heightening their potential relevance."). Second, 18 (62%) of the 29 Texas-based prior artists were not identified in the *2Wire* case, so there would be no reason to call them to trial in Delaware. Chin. Decl., ¶ 10; Ex. 26, 2Wire's Invalidity Contentions, at 8, 9, 26, 28, 41, 68, 69.

Last, CommScope claims, without support, that its CEO is "obviously is not a witness in this technical patent case." Reply at 5. But that is not true. Patent cases involve more than bits-and-bytes. They also involve damages-related issues, including the valuation of the accused products through the upcoming spin-off of the business division that includes accused products. Mr. Treadway's public statements reflect his uniquely instrumental role in that decision, which makes his potential testimony relevant to this case. That TQ Delta can (and will) seek discovery through less-intrusive means does not make Mr. Treadway an irrelevant witness.

## IV. CONCLUSION

For the reasons set forth above and in its Response brief, TQ Delta respectfully requests the Court deny CommScope's Motion.

Dated: March 4, 2022

Respectfully submitted,

By: /s/ *William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

**The Davis Firm PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

**ATTORNEYS FOR PLAINTIFF
TQ DELTA, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this March 4, 2022, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/ William E. Davis, III*
William E. Davis, III