**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **TQ DELTA, LLC,** | |
| *Plaintiff,* | |
| v. | CIV. A. NO.  2:21-CV-310-JRG |
| **COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,** | (Lead Case) |
| *Defendants.* | |

| | |
|---|---|
| **TQ DELTA, LLC,** | |
| *Plaintiff,* | |
| v. | CIV. A. NO.  2:21-CV-309-JRG |
| **NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.,** | (Member Case) |
| *Defendants.* | |

| |
|---|
| **NOKIA OF AMERICA CORP.,** |
| *Third-Party Plaintiff,* |
| v. |
| **BROADCOM CORP., BROADCOM INC., and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD.,** |
| *Third-Party Defendants.* |

**NOKIA'S OPPOSITION TO TQ DELTA'S MOTION FOR LEAVE TO AMEND ITS
INFRINGEMENT CONTENTIONS [DKT. NO. 86]**

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     APPLICABLE LAW ................................................................................................... 2

III.    ARGUMENT .............................................................................................................. 3

        A.      TQ Delta Has Not Acted Diligently.................................................................. 3

        B.      Under TQ Delta's Mischaracterization of the Scope of the Amendment, It
                Is Not Important Enough to Warrant the Amendment........................................... 5

        C.      TQ Delta's Amendment Would Severely Prejudice Nokia ................................. 7

        D.      A Continuance Would Not Cure the Prejudice to Nokia ...................................... 8

IV.     CONCLUSION.......................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Adaptix, Inc. v. T-Mobile USA, Inc.*,
   No. 6:12-cv-00369, 2014 U.S. Dist. LEXIS 198820 (E.D. Tex. Nov. 12, 2014)......................4

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.*,
   No. 6:09-cv-116, 2010 U.S. Dist. LEXIS 4973 (E.D. Tex. Jan. 21, 2010) .............................2

*EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
   No. 6:10-cv-379-LED-JDL, 2012 U.S. Dist. LEXIS 200192 (E.D. Tex. Aug.
   10, 2012) ....................................................................................................................................6

*Global Sessions LP v. Travelocity.com LP*,
   No. 6:10-cv-00671, 2012 U.S. Dist. LEXIS 73153 (E.D. Tex. May 25, 2012) ...................6, 7

*GREE, Inc. v. Supercell Oy*,
   No. 2:19-cv-00311-JRG-RSP, 2020 U.S. Dist. LEXIS 242897 (E.D. Tex. Dec.
   28, 2020)....................................................................................................................................4

*Imperium IP Holdings (CAYMAN), Ltd. v. Samsung Elecs. Co.*,
   No. 4:14-cv-00371, 2016 U.S. Dist. LEXIS 41762 (E.D. Tex. Mar. 30, 2016) .......................4

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
   No. 2:13-cv-17-RWS-RSP, 2018 U.S. Dist. LEXIS 12831 (E.D. Tex. Jan. 26,
   2018) ......................................................................................................................................3, 5

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006)................................................................................................4

*Opal Run LLC v. C&A Mktg. Inc.*,
   No. 2:16-cv-24-JRG-RSP, 2017 U.S. Dist. LEXIS 126522 (E.D. Tex. May 15,
   2017) ........................................................................................................................................3

*Phenix Longhorn, LLC v. Wistron Corp.*,
   No. 2:17-CV-00711-RWS, 2019 U.S. Dist. LEXIS 218351 (E.D. Tex. Aug.
   16, 2019) ...........................................................................................................................4, 5, 8

*Realtime Data, LLC v. Packeteer, Inc.*,
   No. 6:08-cv-144, 2009 U.S. Dist. LEXIS 73217 (E.D. Tex. Aug. 18, 2009).........................8

*RevoLaze LLC v. J.C. Penney Corp.*,
   No. 2:19-cv-00043-JRG, 2020 U.S. Dist. LEXIS 80265 (E.D. Tex. May 6,
   2020) ........................................................................................................................................4

*Uniloc USA, Inc. v. Distinctive Developments Ltd.*,
   No. 6:12-cv-00462-RWS, 2016 WL 11485612 (E.D. Tex. Dec. 13, 2016) .............................3

ii

## I.    INTRODUCTION

TQ Delta's motion obfuscates its attempt to accuse an ***entirely new standard*** of infringement, which unquestionably involves a new theory of infringement. The standard at issue, G.vector, is not yet accused for any claim or patent.  Even TQ Delta acknowledges that its proposed amendment involves "compliance with what could be considered a separate standard" (G.vector) than the standard that is currently at issue for U.S. Patent No. 8,594,162 (VDSL2).  *See* Dkt. 86 (the "Motion" or "Mot.") at 2.  Thus, in reality the proposed amendment would significantly increase this already-bloated case involving 19 patents asserted against Nokia, particularly when it is clear that TQ Delta does not intend to actually try 19 patents to a jury.  *See generally* Defendants' Opposed Motion for Entry of Order Focusing Patent Claims and Prior Art (Dkt. 77, "Narrowing Motion").  TQ Delta should not be permitted to further "hide the ball" by not only refusing to meaningfully narrow the number of asserted claims in this case (*see id.*) but also seeking to expand meaningfully its infringement theories.

While briefly acknowledging the implications of its proposed amendment to the infringement contentions, served in November of last year, TQ Delta mostly tries to undersell it. For example, TQ Delta initially characterizes the amendment as adding a "single citation" to a claim chart for one patent asserted against Nokia.  Mot. at 1.  TQ Delta also suggests that the amendment would add "no new infringement theories."  *Id*. at 2.[1]  But in fact, TQ Delta's amendment reflects a major shift in its infringement case, where the currently accused feature of VDSL2 is ***optional***, while the feature sought to be newly accused in G.vector is allegedly

---

[1] While TQ Delta represents to the Court that the amendment adds "no new products" *id.*—a representation Nokia relies on—TQ Delta fails to explain that its damages theory is likely to be tied to the ***number*** of standards allegedly being practiced by the accused products. Thus, despite TQ Delta's representation of no additional accused products, the addition of G.vector will add significant additional complexity to the damages theory.

*mandatory*.  *See* Mot. at 3.

TQ Delta acknowledges that it has known about the G.vector standard since the outset of this case (Mot. at 3), but contends that it "inadvertently omitted" the accusations of infringement of the '162 Patent based on G.vector.  Mot. at 4.  That alone is not good cause, and it certainly does equate to diligence.  The amendment would cause significant prejudice to Nokia, particularly since infringement and invalidity contentions have already been exchanged and claim construction is underway.  If TQ Delta's amendment were permitted, Nokia would be forced to conduct new noninfringement analyses, and reevaluate and potentially amend its invalidity contentions, all in the midst of the ongoing claim construction process.  Briefing on this Motion will not even close until after the parties have submitted their expert declarations on claim construction pursuant to P.R. 4-3.  *See* Dkt. 62 (Docket Control Order).  When this prejudice is coupled with TQ Delta's severe lack of diligence—including a delay of ***nearly four months***—it is clear that TQ Delta's Motion should be denied.

## II.    APPLICABLE LAW

This Court requires a party claiming infringement to serve proper infringement contentions that provide a defendant with notice of a plaintiff's infringement theories.  *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09-cv-116, 2010 U.S. Dist. LEXIS 4973, at *8 (E.D. Tex. Jan. 21, 2010).  A party must "be as specific as possible" in its contentions. P.R. 3-1(b).

The local patent rules permit two types of amendments to infringement contentions: (1) amendments as of right and (2) amendments by order of the Court.  *See* P.R. 3-6.  Amendments as of right are appropriate only when the patentee "believes in good faith that the Court's Claim Construction Ruling so requires."  P.R. 3-6(a)(a).[2]  A "good cause" standard attaches to leave by

---

[2] This case has not yet reached a claim construction ruling, and thus neither party argues that P.R.

2

order of the Court. P.R. 3-6(b).  In determining good cause, courts consider "(1) the explanation for failure to meet the deadline, i.e., diligence; (2) the importance of the thing that would be excluded; (3) the prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Keranos, LLC v. Silicon Storage Tech., Inc.*, No. 2:13-cv-17-RWS-RSP, 2018 U.S. Dist. LEXIS 12831, at *6-7 (E.D. Tex. Jan. 26, 2018).

"The lack of diligence alone, however, may support denial of leave to amend infringement contentions." *Id.* at *8; *see also Uniloc USA, Inc. v. Distinctive Developments Ltd.*, No. 6:12-cv-00462-RWS, 2016 WL 11485612, at *1 (E.D. Tex. Dec. 13, 2016) ("The good cause standard requires the movant to show diligence in seeking relief—in this instance, amendment.").

## III.   ARGUMENT

TQ Delta's proposed amendment, which would add an entirely new standard to the case in the midst of claim construction proceedings, is improper and would prejudice Nokia.  Further, TQ Delta's delay of nearly ***four months*** in seeking the amendment demonstrates a lack of diligence required in this Court.  Neither party seeks a continuance, which would not cure the prejudice.

### A.    TQ Delta Has Not Acted Diligently

TQ Delta has no justification for its lack of diligence.  It concedes its own error in preparing its contentions and offers no justification for waiting months to seek leave to amend its contentions. The failure to include G.vector in the original contentions is particularly troubling since the proposed amendment relies on public information available to TQ Delta before filing.  TQ Delta even ***admits*** that it was aware of the G.vector standard when it filed the Complaint, Mot. at 3, but nevertheless omitted any allegations as to G.vector in its infringement contentions.  Thus, there is no excuse for TQ Delta's not addressing the standard in its infringement contentions.  *See Opal*

---

3-6(a) is applicable to the Motion.

*Run LLC v. C&A Mktg. Inc.*, No. 2:16-cv-24-JRG-RSP, 2017 U.S. Dist. LEXIS 126522, at *2-3 (E.D. Tex. May 15, 2017) (striking newly introduced infringement theories when plaintiffs could have identified them in their infringement contentions based on publicly available information).

Moreover, TQ Delta did not timely raise the omission and seek leave for amendment.  TQ Delta did not identify its new theory until a month ***after*** it had already served its infringement contentions, and then TQ Delta waited ***nearly three additional months*** to seek leave to add this entirely new theory of infringement.  Mot. at 5-6.  This Court has rejected amendments for delays shorter than TQ Delta's delay here.[3]  *See also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1367 (Fed. Cir. 2006) (affirming denial of amendment after over three-month delay from the time plaintiff received discovery to the time of plaintiff's motion); *Imperium IP Holdings (CAYMAN), Ltd. v. Samsung Elecs. Co.*, No. 4:14-cv-00371, 2016 U.S. Dist. LEXIS 41762, at *5 (E.D. Tex. Mar. 30, 2016) (denying amendment following delay of two-and-a-half months from the time plaintiff received discovery to the time of plaintiff's motion); *Adaptix, Inc. v. T-Mobile USA, Inc.*, No. 6:12-cv-00369, 2014 U.S. Dist. LEXIS 198820, at *22-23 (E.D. Tex. Nov. 12, 2014) (denying amendment where plaintiff had no explanation for two-month delay following entry of order that plaintiff alleged precipitated amendment).  TQ Delta's combined delay of ***nearly four months*** in both identifying and seeking an amendment to add its new theory is unjustified

---

[3] TQ Delta's Motion is nearly devoid of case law.  TQ Delta cites two cases for general propositions of law: *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00311-JRG-RSP, 2020 U.S. Dist. LEXIS 242897, at *5 (E.D. Tex. Dec. 28, 2020) ("A party may amend its infringement contentions after the deadline for good cause.") (Mot. at 4-5); and *RevoLaze LLC v. J.C. Penney Corp.*, No. 2:19-cv-00043-JRG, 2020 U.S. Dist. LEXIS 80265, at *8 (E.D. Tex. May 6, 2020) ("The purpose of P.R. 3-1 infringement contentions is to provide reasonable notice to an accused infringer of the accused products.") (Mot. at 5).  TQ Delta cites one case in the body of its brief where this Court ***denied*** leave to amend: *Phenix Longhorn, LLC v. Wistron Corp.*, No. 2:17-CV-00711-RWS, 2019 U.S. Dist. LEXIS 218351, at *13 (E.D. Tex. Aug. 16, 2019) (finding a lack of diligence "sufficient grounds for denial" of a motion to amend and that the remaining factors were consistent with that outcome) (Mot. at 7).

and demonstrates lack of diligence.

TQ Delta argues that its own lack of diligence is somehow Nokia's fault because Nokia has separately emphasized TQ Delta's already-overbroad accusations.  Mot. at 5-6; *see generally* Dkt. 77 (Narrowing Motion).  Not so.  Specifically, TQ Delta argues that Nokia responded to TQ Delta's request to amend its infringement contentions by stating that "it would like to consider the request and discuss it in the context of" the Narrowing Motion.  Mot. at 5-6.  TQ Delta's assertion is a mischaracterization of the meet-and-confer process.  In fact, a week and a half after Nokia had been repeatedly requesting TQ Delta's position on the Narrowing Motion, TQ Delta suddenly re-raised its proposed amendment and asserted that it understood Nokia to consider the two issues to be tied together.  Nokia promptly corrected TQ Delta and informed TQ Delta that the two issues are separate.  TQ Delta's delay is of its own making alone; nothing prevented TQ Delta from filing its motion months ago.

TQ Delta's lack of diligence alone is a sufficient basis to deny the Motion.  *See Keranos*, 2018 U.S. Dist. LEXIS 12831, at *2-3; *see also Phenix*, 2019 U.S. Dist. LEXIS 218351, at *10-11 (finding a lack of diligence "sufficient grounds for denial" of a motion to amend and that the remaining factors were consistent with that outcome).  TQ Delta's proposed amendment would serve only to expand and complicate this case instead of narrowing and clarifying the issues in dispute.

### B.   Under TQ Delta's Mischaracterization of the Scope of the Amendment, It Is Not Important Enough to Warrant the Amendment

TQ Delta's only argument that the amendment is important is that it "bears on issues related to infringement and damages."  Mot. at 6.  Of course, **all** proposed amendments to infringement contentions at least "bear on issues related to infringement," so the argument carries no meaningful weight.  TQ Delta also contends that the amendment involves merely adding "a single citation" to

its claim chart for the '162 Patent.  If that were so—if the amendment truly involved nothing more than adding a "single citation" that "provides additional evidence of [alleged] infringement" (*id.* at 1), as TQ Delta posits[4]—then unquestionably the amendment is not important, warranting denial of the Motion.

The reality is that TQ Delta seeks to interject an entirely new infringement read based on a different standard (G.vector) than the one that is currently at issue for the '162 Patent.  As this Court has noted, there should be a direct relationship between diligence of a party in seeking to amend and the actual importance of the amendment to that party.  *Global Sessions LP v. Travelocity.com LP*, No. 6:10-cv-00671, 2012 U.S. Dist. LEXIS 73153, at *23-24 (E.D. Tex. May 25, 2012).  TQ Delta "could have charted [the G.vector standard] at the initial outset of the litigation," and any alleged importance "should have generated a commensurate amount of diligence."  *Id.*; *see also EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-cv-379-LED-JDL, 2012 U.S. Dist. LEXIS 200192, at *6 (E.D. Tex. Aug. 10, 2012) ("EON waited over three months before seeking leave from the Court to amend its infringement contentions.  This further delay weakens EON's arguments regarding the importance of the amendments.").  Here, TQ Delta's delays and lack of diligence demonstrate that the proposed amendment is not sufficiently important.  Had TQ Delta considered the G.vector standard to be critically important to its infringement theory for the '162 Patent, TQ Delta would have acted (and was obligated to act) promptly to ensure its infringement contentions contained the theory.  TQ Delta did not do so, thus confirming that the proposed amendment is not sufficiently important, particularly when viewed under the lens of TQ Delta's four-month delay in pursuing the amendment.

---

[4] TQ Delta likewise states that it "could argue that compliance with the G.vector Standard is merely additional evidence of infringement of the VDSL2 Standard."  Mot. at 6.  If that were so, then the amendment unquestionably would be unimportant, warranting denial of the Motion.

### C.     TQ Delta's Amendment Would Severely Prejudice Nokia

Nokia would be severely prejudiced if this Court were to allow TQ Delta to amend its contentions to include the G.vector standard.  TQ Delta's proposed amendment would affect many aspects of the case that the parties have already substantively addressed: noninfringement, invalidity, and claim construction.  Contentions for both infringement and invalidity have already been exchanged, and claim construction is well underway.  None of the contentions exchanged thus far rely on the G.vector standard—not for any claim, not for any asserted patent, and not for any involved patent family.

Should the amendment be permitted, Nokia would be forced to conduct new noninfringement analyses, and reevaluate and potentially amend its invalidity contentions, all in the midst of the ongoing claim construction process.  Briefing on this Motion will not even close until after the parties have submitted their joint claim construction chart and expert declarations under Local Patent Rule 4-3.  *See* Dkt. 62 (Docket Control Order).  Nokia would be deprived of taking into consideration the parties' complete theories of validity/invalidity and infringement/noninfringement during the claim construction process, which affects every aspect of this case.  This Court has routinely rejected such a belated change in the scope of the case.  *See, e.g.*, *Global Sessions*, 2012 U.S. Dist. LEXIS 73153, at *23-24 (prejudice where "the claim construction hearing is one month away," leaving the accused infringer "little time to conduct new prior art searches or reassess its invalidity theories").

TQ Delta argues that Nokia will not suffer any prejudice because Nokia has been on notice of the proposed amendment since December 2, 2021 and because the Complaint included a statement regarding G.vector.  *See* Mot. at 6 & n.4.  At the time of the invalidity contentions and the start of the claim construction process, however, TQ Delta had not sought leave to amend its infringement contentions, and thus Nokia appropriately evaluated invalidity with respect to the

*operative* infringement contentions, which "***frame the scope of the case***," and which did not

include any contention premised on G.vector.  *See Phenix*, 2019 U.S. Dist. LEXIS 218351, at *11-

12 (emphasis added) ("Phenix's argument ignores the purpose of infringement contentions and the

related local rules: 'to frame the scope of the case in order to provide for full, timely discovery and

to provide parties with adequate notice and information with which to litigate their case.'")

(quoting *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 U.S. Dist. LEXIS 73217,

at *5 (E.D. Tex. Aug. 18, 2009)).  TQ Delta also argues that its actual infringement allegations

(which are based on the VDSL2 standard) involve functionality that is similar to functionality in

the G.vector standard.  *See* Mot. at 5.  But infringement contentions must "be as specific as

possible," and there is no justification for TQ Delta to try to interject the entirely new G.vector

standard based on alleged similarities to the asserted VDSL2 standard.  *See* P.R. 3-1(b).  Nokia

has properly litigated this case under the infringement contentions as issued—which did not accuse

the G.vector standard.

      Nokia is already prejudiced by having to defend against 19 asserted patents when it is clear

that TQ Delta does not actually intend to try 19 patents to a jury.  *See generally* Dkt. 77 (Narrowing

Motion).  In contrast to the clear prejudice that would befall Nokia, there will be no prejudice to

TQ Delta by denying this Motion.  TQ Delta currently has an infringement theory for the '162

Patent premised on VDSL2, and so TQ Delta cannot demonstrate prejudice.

### D.     A Continuance Would Not Cure the Prejudice to Nokia

      Neither party seeks a continuance.  In any event, a continuance would not mitigate the harm

that would be inflicted by TQ Delta's proposed amendment.  TQ Delta's belated identification of

G.vector infects every aspect of this case, from discovery to invalidity to noninfringement, and

there is no way to wind back the clock that has been counting—for nearly four months—the harm

that TQ Delta's belated Motion would impose.  Although TQ Delta has offered that it would not

oppose Nokia's seeking leave to amend its invalidity contentions to address the amendment, Mot. at 6, that is no cure. An amendment of yet more contentions while claim construction is underway, or perhaps fully addressed by the parties at that point, would not solve the problems presented by TQ Delta's Motion but rather would merely contribute to an ever-expanding case at TQ Delta's request. *See* Dkt. 77 (Narrowing Motion). Nor would it account for the prejudice in Nokia being forced to simultaneously conduct new investigations and evaluations of noninfringement and invalidity, all while the case marches forward.

## IV.    CONCLUSION

For the reasons shown, this Court should deny TQ Delta's Motion.

Dated: March 7, 2022                    Respectfully submitted,

                                        */s/ M. Scott Stevens*
                                        M. Scott Stevens (NC Bar # 37828)
                                        Karlee Wroblewski (NC Bar # 55043)
                                        Nic Marais (NC Bar # 53533)
                                        ALSTON & BIRD LLP
                                        One South at the Plaza
                                        101 South Tryon Street, Suite 4000
                                        Charlotte, North Carolina 28280
                                        Tel:  704.444.1000
                                        Fax:  704.444.1111
                                        Email: scott.stevens@alston.com
                                        Email: karlee.wroblewski@alston.com
                                        Email: nic.marais@alston.com

                                        John D. Haynes (GA Bar # 340599)
                                        Michael Deane (GA Bar # 498195)
                                        ALSTON & BIRD LLP
                                        One Atlantic Center
                                        1201 West Peachtree Street
                                        Suite 4900
                                        Atlanta, GA 30309
                                        Tel:  404.881.7737
                                        Fax:  404.881.7777
                                        Email: john.haynes@alston.com
                                        Email: michael.deane@alston.com

                                        Darlena Subashi (NY Bar # 5780747)
                                        ALSTON & BIRD LLP
                                        90 Park Avenue
                                        New York, NY 10016
                                        Tel: 212-210-9400
                                        Fax: 212-210-9444
                                        Email: darlena.subashi@alston.com

                                        Adam Ahnhut (TX Bar # 24106983)
                                        ALSTON & BIRD LLP
                                        Chase Tower
                                        2200 Ross Avenue, Suite 2300
                                        Dallas, TX 75201
                                        Email: adam.ahnhut@alston.com
                                        Tel: 214.922.3400
                                        Fax: 214.922.3899

                                        *Counsel for Defendants*

                                        10

*Nokia Corporation, Nokia Solutions and Networks Oy, and Nokia of America Corporation and Third-Party Plaintiff, Nokia of America Corporation*

11

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on March 7, 2022.

                                        /s/ *M. Scott Stevens*
                                        M. Scott Stevens