# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **TQ DELTA, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| **COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,** | § § § § § § § § | **Civil Action 2:21-cv-310-JRG (Lead Case)** |
| **NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.** | § § § § | **Civil Action No. 2:21-cv-309-JRG (Member Case)** |
| **Defendants.** | § | |

## PLAINTIFF TQ DELTA, LLC'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF ORDER FOCUSING PATENT CLAIMS AND PRIOR ART [DKT. NO. 77]

## I.        INTRODUCTION

The purpose of limiting claims and prior art references is to streamline the litigation for the benefit of the Court, the parties, and ultimately the jury.  Defendants' Modified Order does not achieve those goals—it forces TQ Delta to prematurely limit its case and gives Defendants an unfair tactical advantage.

Defendants instead focus on the prejudice to *them* if their Motion is denied.  But that is not a valid factor in the analysis.  And it is incorrect.  Defendants will not suffer prejudice or lose any rights or defenses if their Motion is denied.  As TQ Delta stated in its Response, claim narrowing will happen at strategically important points as this case progresses and its development moves forward.  Entry of the Defendants' one-sided Modified Order, however, would cause TQ Delta to suffer substantial, unfair prejudice.  For these reasons, Defendants' Motion should be denied.

## II.        ARGUMENT

### A.        Denial of Defendants' Motion Would Not Prejudice the Defendants

Defendants' claim of prejudice if their Motion is denied is baseless.  In evaluating whether to reduce asserted claims, the proper focus is on the potential prejudice to the patentee, not the accused infringer, given that the patentee is limiting its property rights. *Allergan, Inc. v. Teva Pharm. USA*, No. 2:15-CV-1455WCB, 2017 U.S. Dist. LEXIS 10603, at \*5 (E.D. Tex. Jan. 26, 2017) ("A court must exercise the authority to order a reduction in the number of asserted claims with **care not to prejudice the patentee**, particularly in light of the fact that each of the claims of a patent embodies a property right.") (emphasis added); *In re Katz*, 639 F.3d 1303, 1309 (Fed. Cir. 2011) ([A] claim selection order could come too early in the discovery process, **denying the plaintiff** the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity in light of the defendants' accused products and proposed defenses.")

(emphasis added). Notably, Defendants have not cited any case holding that the potential prejudice to them bears on this question (and litigation costs, "even substantial and unrecoupable cost," is not irreparable harm as a matter of law, *FTC v. Std. Oil Co.*, 449 U.S. 232, 243–44 (U.S. 1980)).

Even if the prejudice to asserted infringers were relevant, denying Defendants' Motion would not cause them any undue prejudice.  Suppose the Court denies Defendants' Motion.  In that case, this case will still progress and develop as anticipated by the Court when it entered the Docket Control Order, *e.g.*, the parties will continue producing documents, exchanging written discovery, conducting claim construction, and shaping their respective cases as dictated by facts developed during discovery.  A denial of Defendants' Motion will not cause them to lose any rights, prohibit them from pursuing any of their pleaded defenses and counterclaims, or lose their right to file petitions for *inter partes* review.  Again, Defendants have not cited any authority that denying a motion seeking a reduction of asserted claims is unduly prejudicial to accused infringers. In contrast, TQ Delta would suffer unfair prejudice if the Defendants' Modified Order is entered.

Defendants argue that they will be prejudiced by having "to litigate and defend against 128 claims and 22 patents, the vast majority of which cannot and will not ever be brought before a jury." Reply at 2.  But there is nothing unfair or prejudicial about having to defend against 128 claims arising from 22 patents if the plaintiff has a good-faith basis to assert infringement.  If TQ Delta had held back some claims, Defendants undoubtedly would seek to prevent the assertion of those withheld claims in a future case.  And the cost to litigate this case falls roughly equally on both sides (and, in many cases, is greater to TQ Delta because it has the burden of proof).

A denial of Defendants' Motion will not cause Defendants to face 128 asserted claims at trial. TQ Delta made clear in its Response that, as this case progresses and its development moves forwards, it intends to narrow its asserted claims at strategically critical points such as after claim

construction, after all IPRs have been filed, and after expert reports.  Claim narrowing will happen, but it should not occur based on Defendants' one-sided Modified Order.

Defendants argue that TQ Delta should, even at this early stage of the case, already be made to decide which claims to pursue at trial because TQ Delta's past litigations involving "many of the same claims, patents, and patent families" have given TQ Delta "ample opportunity to evaluate their weaknesses." Reply at 2.  But the fact that TQ Delta has litigated specific claims from certain patents in other cases does not bear on TQ Delta's election of claims to assert at trial in this case because this case involves many more asserted patents and different defendants, accused products, DSL standards, prior art, and damages periods.

The overlap between this case and TQ Delta's past cases is also not nearly as substantial as Defendants argue.  The past cases involved different defendants, which Defendants rely on to argue why they "need time to investigate the asserted claims and the accused products." Motion at 7; at fn. 1 ("CommScope is a different company than 2Wire and **requires adequate time to evaluate TQ Delta's contentions, the accused products, and relevant fact witnesses** for the instant lawsuit.") (emphasis added).  Here, this rationale also applies to TQ Delta, which needs adequate time to evaluate Defendants' different accused products and invalidity contentions (approximately 300 invalidity charts comprising 19,214 pages) and to conduct discovery before deciding which claims to drop.  Thus, Defendants' argument that prior discovery into certain accused products and the Broadcom source code would somehow inform or accelerate TQ Delta's evaluation in this case regarding which claims to assert at trial is wrong.

This case involves 22 patents, 16 of which were not asserted in past cases.  And, even where there is potential overlap in patents, there is no overlap in the damages that TQ Delta seeks. The G.Fast, G.Vector, and G.INP standards at issue here were not at issue in past cases.  None of the Nokia accused products have been at issue in the past cases.  Only 5 of the 31 CommScope

accused products (about 15% of the CommScope case on a product-basis) have been accused in past cases. The damages period in the *2Wire* case pending in the District of Delaware is only through 2016. *See, e.g.*, Ex. 1, Redacted J. Putnam expert report, at 13 fn. 8, and 26. The five CommScope accused products are at issue in this case to capture the post-2016 damages period.

In addition to the differences above, damages issues have not been addressed yet in past cases. Also, this case raises numerous claim-construction issues that were not addressed in past cases and, for terms that have been construed before, Defendants have not agreed to the prior construction.[1] In addition, dropping claims and patents at this stage will not reduce the claim-construction workload (many terms are common across claims, patents, and patent families).

The Court's Claim Construction Order will impact TQ Delta's evaluation regarding which claims to assert at trial. Defendants argue that TQ Delta would not be prejudiced by electing a subset of the multiple asserted claims that implicate the same products and damages base. But that could only be true after the Claim Construction Order issues, fact discovery closes, and expert reports are served when TQ Delta can make a decision regarding claim narrowing as informed by the better-developed record on infringement, validity, and damages issues.

If, as Defendants argue, TQ Delta already knows which claims it will assert at trial based on what happened in past cases (which TQ Delta disputes), then Defendants too can determine which claims are likely to be asserted at trial by looking in the past cases' court records to see which claims were asserted before. Defendants' claim of prejudice rings hollow given the public

---

[1] *Compare, e.g.*, Ex. 2, Claim Construction Order in Delaware case (construing "transceiver" as "communications device capable of transmitting and receiving data wherein the transmitter portion and receiver portion share at least some common circuitry") *with* Ex. 3, Defendants' Rule 4-2 Disclosure (proposing construction of "transceiver" as "communications device capable of transmitting and receiving data" and raising multiple terms not construed in Delaware).

information available that they can use now to prepare for trial, without requiring entry of its Modified Order, and to cure any alleged prejudice if their Motion is denied.

Finally, regarding *inter partes* reviews, Defendants are not "prejudiced in being forced to evaluate, draft, and file IPRs on claims that may ultimately be dropped in litigation." Reply at 3. If that were true, every accused infringer facing multiple asserted claims would argue that they were prejudiced because some asserted claims could later drop out of the case.  IPRs are optional; no one is forcing Defendants to file IPRs.  Defendants have raised numerous defenses in this case. They could decide that they do not need to file any IPRs, which could be motivated purely by a desire to reduce litigation costs or to avoid estoppel issues presented by filing IPRs.

**B.    Defendants' Modified Order Heavily Favors Defendants**

The Defendants argue that their Modified Order is only a "*slightly* 'modified' version of the Model Order" that "does not favor Defendants." Reply at 5.  Given the disparate impact to TQ Delta, Defendants' characterization of the Modified Order as merely a "slightly modified" version rings hollow.  It remains undisputed that their Modified Order provides for <u>double</u> the number of asserted prior art in the first phase and then <u>triple</u> the number of asserted prior art in the second phase, while the number of asserted claims is not increased at all despite there being twenty-two patents at issue.  Inexplicably, Defendants argue, "[h]ypothetically, Plaintiff could elect claims in a way that all twenty-two patents remain in the case." Reply at 5.  This is false.  Under phase two of their Modified Order, TQ Delta is limited to asserting "no more than a total of 16 claims."  There is no way for TQ Delta to keep all 22 patents in the case while asserting no more than a total of 16 claims.  Defendants' false hypothetical is mathematically impossible and emblematic of their attempt to gain a tactical advantage over TQ Delta via their Motion.

### III.    CONCLUSION

For these reasons, the Defendants' Motion should be denied in its entirety.

Dated: March 7, 2022

Respectfully submitted,

By: */s/ William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

**The Davis Firm PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

**ATTORNEYS FOR PLAINTIFF**
**TQ DELTA, LLC**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this March 7, 2022, on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

*/s/ William E. Davis, III*
William E. Davis, III