# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| TQ DELTA, LLC,<br>     Plaintiff,<br><br>v.<br><br>**COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,** | § § § § § § § § § § § § § § § | **JURY TRIAL DEMANDED**<br><br><br><br>**Civil Action 2:21-cv-310-JRG**<br>**(Lead Case)** |
| **NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.**<br><br>     Defendants. | § § § § § | **Civil Action No. 2:21-cv-309-JRG**<br>**(Member Case)** |

## PLAINTIFF TQ DELTA'S REPLY IN SUPPORT OF ITS MOTION
## FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS
## AGAINST THE NOKIA DEFENDANTS

I.      INTRODUCTION

Upon learning of TQ Delta's inadvertent omission of the G.vector Standard on December 2, 2021, Nokia could have agreed to the amendment and had ample time to address the amendment in its Invalidity Contentions that were due on January 13, 2022.  It did not do that.  Nokia could have requested more time to complete its Invalidity Contentions.  It also did not do that.  And even after Nokia served its Invalidity Contentions, it could have accepted TQ Delta's offer for Nokia to amend its Invalidity Contentions.  Yet again, Nokia did not do that.

At every turn, Nokia could have chosen the path of cooperation and worked with TQ Delta to avoid any alleged potential harm arising from the amendment.  Instead, Nokia chose to make things unnecessarily difficult and forced TQ Delta to file an opposed motion.  Nokia's lack of good faith and diligence prevented the resolution of this issue in December 2021.  Nokia cannot now claim that it is prejudiced by the inherent delay resulting from its own opposition to this Motion and failure to prevent potential prejudice.  Thus, TQ Delta's Motion should be granted.

II.     TQ DELTA HAS ACTED DILIGENTLY

TQ Delta has acted diligently.  It promptly informed Nokia about its inadvertent omission of the G.vector Standard from its infringement contentions, tried to resolve the issue by agreement, and then promptly filed its Motion after exhausting the meet-and-confer process with Nokia.

Nokia argues that TQ Delta tried to "hide the ball" and is adding an "entirely new theory of infringement." Response at 1, 4.  This is false.  The G.vector Standard's importance to TQ Delta's infringement case has been in plain sight since the Complaint was filed on August 13, 2021.  In the "Nokia's Infringement of the TQ Delta's Patents" and "Infringement of the '162 Patent" sections of the Complaint, it refers to the G.vector Standard and states that the Accused

Nokia DSL Products operate according to DSL standards, including G.vector."[1] These statements gave notice to Nokia that G.vector was a material part of TQ Delta's infringement theories. One would have to be willfully blind to conclude otherwise, which Nokia was. The proposed amendment is not an "entirely new theory of infringement" as Nokia argues. Rather, it is within the bounds of the infringement theories previewed in the Complaint.

Nokia also argues that "there is no excuse for TQ Delta's not addressing the standard in its infringement contentions." Response at 3. There is a legitimate excuse – the G.vector Standard was inadvertently omitted, which TQ Delta regrets, due to a simple oversight and mistake during the process of creating the Infringement Contentions.

TQ Delta was diligent because as soon as it learned of the inadvertent omission, it notified Nokia on December 2, 2021, and provided a redline of its '162 Patent claim chart so that Nokia could understand the exact scope of the amendment and confirm that it added no new patents, claims, products, and infringement theories. The redlined claim chart provided Nokia with all the information necessary on December 2, 2021, to address the amendment in its Invalidity Contentions (due January 13, 2022), if needed, and to minimize any potential harm.

TQ Delta was diligent in trying to resolve the issue by agreement. TQ Delta offered to allow Nokia, with leave of Court, to amend its Invalidity Contentions. Nokia rejected this offer, which forced TQ Delta to file its Motion.

---

[1] *TQ Delta, LLC v. Nokia Corp.*, No. 2:21-cv-309-JRG (E.D. Tex.) ("309 Case") (Dkt. No. 1). In its Complaint**, TQ Delta accused Nokia products that comply with the G.Vector Standard:** "Nokia infringes the TQ Delta Patents. Its products comply with and implement the DSL standard, including . . . G.vector . . . ." Original Complaint at ¶ 29, 309 Case (Dkt. No. 1). As another example: "The Accused Nokia DSL Products include products that operate in accordance with VDSL2 (ITU-T G.993.2), the [sic] **including G.vector (ITU-T G.993.5) standard.**" *Id*. at ¶ 98. The preceding allegation contains a footnote with links to Nokia webpages displaying the specific products using vector technology. *Id*. at n.23.

TQ Delta was also diligent in promptly filing its Motion after exhausting the meet-and-confer process.  The parties dispute whether the amendment issue was tied to negotiations concerning the Defendants' Claim Narrowing Motion (Dkt. No. 77) or the Discovery Order.  What remains clear, however, is that the amendment issue remained unresolved.  And once Nokia rejected TQ Delta's offer for Nokia to amend its Invalidity Contentions, TQ Delta promptly filed its Motion.  Any perceived delay in TQ Delta's filing of the motion while it was diligently trying to avoid opposed motion practice should not be held against it.  *See MedioStream, Inc. v. Microsoft Corp.*, No. 2:08-CV-369-CE, 2010 U.S. Dist. LEXIS 110420, at *14-15 (E.D. Tex. Oct. 18, 2010) ("This Court will not punish Plaintiff for attempting to avoid opposed motion practice by diligently working with Microsoft to amend its infringement contentions by agreement.").

### III.   THE PROPOSED AMENDMENT IS IMPORTANT

The proposed amendment is important because it indicates that dynamic interleaver depth change is now mandatory in the ITU Standards, which directly bears on infringement and damages issues.  The references to G.vector in the "Nokia's Infringement of the TQ Delta's Patents" and "Infringement of the '162 Patent" sections of the Complaint show that G.vector is a material part of TQ Delta's infringement theories. Nokia's efforts to cast the amendment as an "entirely new infringement read" is belied by the fact that G.vector was referenced at the onset of this case in the Complaint and importantly, within the sections of the Complaint that expressly address Nokia's infringement, including infringement of the '162 Patent.

### IV.   NOKIA'S CLAIM OF PREJUDICE IS BASELESS

Nokia argues that it would be severely prejudiced if the amendment is allowed.  Nokia's claim of prejudice is baseless and should be rejected because any potential prejudice was ***entirely***

*preventable* if only Nokia had acted in good faith.  Instead, Nokia purposefully rejected multiple early opportunities to avoid potential harm.  Any prejudice suffered by Nokia is its own doing.

When TQ Delta notified Nokia about the inadvertent omission on December 2, 2021, it was no surprise to Nokia that the G.vector Standard was an important part of TQ Delta's infringement case.  Because even *before* December 2, 2021, Nokia was put on notice that the G.vector Standard was a material part of TQ Delta's infringement theories via the multiple references to the standard in the "Nokia's Infringement of the TQ Delta's Patents" and "Infringement of the '162 Patent" sections of the Complaint.  Moreover, the cover pleading to TQ Delta's Infringement Contentions (served November 4, 2021) included multiple "Vectoring" products within the list of accused Nokia products, e.g., "ISAM 48 ports VDSL2 POTS Line Termination Board with System-level Vectoring (NDLT-G)," which again put Nokia on notice.  The proposed amendment is a reasonably foreseeable result of TQ Delta's prior disclosures.

As of December 2, 2021, Nokia still had forty-two (42) days until it had to serve its Invalidity Contentions on January 13, 2022.  Nokia could have agreed to the amendment and had ample time to address the G.vector Standard in its Invalidity Contentions and avoid any potential prejudice.  Nokia could have asked TQ Delta for more time to complete its Invalidity Contentions, which TQ Delta would not have opposed.  But Nokia did not ask for more time, which speaks volumes about whether Nokia had a good-faith interest in avoiding any potential prejudice.

And during the meet-and-confer process, TQ Delta offered to let Nokia amend its Invalidity Contentions, which had already been served.  Nokia rejected that opportunity as well, which forced TQ Delta to file an opposed motion.  Nokia has not denied that it identified no prejudice during the meet-and-confer except to state that TQ Delta has asserted too many claims in this lawsuit.  Time and time again, the power to avoid any alleged prejudice, and avoid using the Court's

4

resources to resolve this narrow issue, rested in Nokia's hands. Nokia threw away each opportunity to avoid prejudice and now tries to blame TQ Delta for creating the prejudice that Nokia could have completely avoided.

Regarding Nokia's argument that the proposed amendment would affect its claim construction analysis, that argument should not be given any weight given that claim construction is decided based on the intrinsic evidence, not based on infringement positions.[2]

As shown above, by December 2, 2021, Nokia had adequate notice and information about G.vector being a material part of TQ Delta's infringement case with which to litigate its case. But Nokia chose to bury its head in the sand rather than taking steps to avoid potential prejudice. In being willfully blind to G.vector, Nokia should bear the consequences for any potential harm if the amendment is permitted.

## V.   A CONTINUANCE IS UNNECESSARY

The parties agree that a continuance is unnecessary. If the amendment is allowed, there is sufficient time for G.vector to be incorporated into the case given that TQ Delta's Opening Claim Construction Brief is not due until April 26, claim construction briefing does not conclude until May 20, the *Markman* hearing is not until June 3, fact discovery does not close until August 15, opening expert reports are not due until August 15, and the jury trial is not until January 2, 2023.

## VI.   CONCLUSION

For the reasons stated above and, in its Motion, the Court should grant TQ Delta's Motion.

---

[2] *See Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 U.S. Dist. LEXIS 48376, at *15 (E.D. Tex. May 5, 2011) ("TPV's argument that it is prejudiced because its claim construction positions would have been different is not convincing. . . claim construction is intended to be decided based on the intrinsic evidence and to a lesser extent the extrinsic evidence—neither of which depend on the infringement positions or infringing products.").

Dated: March 14, 2022

Respectfully submitted,

By: */s/ William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

**The Davis Firm PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

**ATTORNEYS FOR PLAINTIFF
TQ DELTA, LLC**

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this March 14, 2022, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/ William E. Davis, III*
William E. Davis, III