# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| TQ DELTA, LLC,<br>    Plaintiff,<br><br>v.<br> | §<br>§<br>§<br>§<br>§ | **JURY TRIAL DEMANDED** |
| **COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action 2:21-cv-310-JRG**<br>**(Lead Case)** |
| **NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.**<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 2:21-cv-309-JRG**<br>**(Member Case)** |

# PLAINTIFF TQ DELTA'S RESPONSE IN OPPOSITION TO
# NOKIA'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS
# [DKT NO. 112]

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................i

I.   INTRODUCTION ...............................................................................................................1

II.  STATEMENT OF FACTS ..................................................................................................2

III. ARGUMENT .......................................................................................................................5

    A.   Nokia has not explained its failure to meet the deadline....................................6

    B.   The amendment Nokia seeks is not important.......................................................9

    C.   TQ Delta would be prejudiced by the untimely amendment............................9

    D.   A continuance is unnecessary ...............................................................................11

IV.  CONCLUSION ..................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Garrity Power Servs. LLC v. Samsung Elecs. Co.*,
   2021 WL 4894262 (E.D. Tex. Oct. 19, 2021) ..................................................................... 5

*Geotag, Inc. v. Frontier Communs. Corp.*,
   No. 2:10-CV-265, 2013 U.S. Dist. LEXIS 86358 (E.D. Tex. June 11, 2013) .............. 6, 10

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*,
   No. 4:14-CV-371, 2016 U.S. Dist. LEXIS 40504 (E.D. Tex. Mar. 28, 2016) .................... 6

*Innovative Display Techs. LLC v. Acer Inc.*,
   No. 2:13-cv-00522-JRG, 2014 U.S. Dist. LEXIS 83196 (E.D. Tex. June 19, 2014) ....... 10

*LML Patent Corp. v. JPMorgan Chase & Co.*,
   No. 2:08-CV-448, 2011 WL 5158285 (E.D. Tex. Aug. 11, 2011) ...................................... 9

*MacroSolve v. Antenna Software*,
   No. 6:11-cv-287, 2013 WL 3833079 (E.D. Tex. July 23, 2013) ........................................ 9

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006). ......................................................................................... 5

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## I. INTRODUCTION

Over two months after serving its Invalidity Contentions on January 13, 2022, Nokia now belatedly seeks to add four prior art references ("Additional Prior Art") that it knew or should have known about well before its original Invalidity Contentions were due. Nokia bears the burden of demonstrating good cause for its proposed amendments, but it does only the bare minimum in attempting to meet that burden. All it reveals is that its counsel was not aware of the Additional Prior Art until "beginning on February 21, 2022 through March 3, 2022." Mtn. at 2. Nokia does not explain *why* its counsel allegedly did not become aware of the Additional Prior Art sooner. Nor does Nokia explain what, if anything, it did to search for prior art to allow the Court to assess its diligence. How can the Court conclude Nokia has been diligent when all it has revealed is the approximate time frame when its counsel allegedly first became aware of the Additional Prior Art?

There is also more to this story than Nokia has revealed. There is substantial evidence that Nokia knew or should have known about the Additional Prior Art long ago. For example, information about the ITU-T Recommendation G.712 ("G.712") issued in 1996. The Alcatel A1000 ASAM ADSL ("Alcatel A1000") device was released in June 1999 and publicly available for years on Nokia's website and in its product literature and technical documents. The Müller article was co-authored in 1997 by a current Nokia employee and has been publicly available for many years (indeed, CommScope cited the reference in its Invalidity Contentions, which Nokia received on January 13, 2022). It is also the first article listed in the "Other Publications" section of U.S. Patent No. 6,781,951, which Nokia cited as prior art against the Family 4 Patent in its Invalidity Contentions.

Finally, there is the Mestdagh article, which current and former Nokia employees co-authored in 1996. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Nokia omits that fact, but still claims that it conducted a "diligent investigation." Mtn at 8, fn. 4. But how can that be true given these facts, which Nokia did not disclose to the Court?

Nokia's inadequate explanation and about when it first knew about the Additional Prior Art is an independent basis to deny its motion. These documents were publicly available for over twenty-three years, were in Nokia's files, and/or authored by Nokia's employees. Nokia has no explanation for why it could not have found these documents earlier.

Nokia's conduct confirms that the amendments Nokia seeks are unimportant. Nokia's claim that its belatedly sought amendments are important cannot be squared with Nokia's delay in seeking such amendment, particularly when the Additional Prior Art was known or should have been known to Nokia for many years before its contentions were due.

TQ Delta would be unduly burdened and prejudiced by this late insertion of the Additional Prior Art into the case when it has already formulated its claim-construction positions. Because Nokia has not demonstrated good cause for allowing its amendment, its motion should be denied.

## II.   STATEMENT OF FACTS

The Additional Prior Art, and the facts showing that Nokia knew of or could have easily become aware of them at least several years before its contentions were due, are discussed below.

**Denis J. G. Mestdagh & Paul M. P. Spruyt, "A Method to Reduce the Probability of Clipping in DMT-Based Transceivers," IEEE TRANSACTIONS ON COMMUNICATIONS, VOL. 44, NO. 10 (1996) ("Mestdagh")** – The Mestdagh article is one of the two "Family 4 Art" that Nokia untimely seeks to add as a primary reference. Exh. A, Mestdagh article. Denis Mestdagh co-wrote the article while working for Alcatel-Lucent (acquired by Nokia in 2016). Exh. B, Mestdagh LinkedIn profile, at 2. His co-author, Paul Spruyt, also worked for Alcatel and still works for Nokia today. Exh. C, Spruyt LinkedIn profile.

[REDACTED]

Nokia told the Court that its counsel was not aware of Mestdagh until between February 21, 2022, through March 3, 2022. But Nokia did not inform the Court that, [REDACTED]

The Mestdagh article also is listed as prior art in CommScope's Invalidity Contentions, which was also served on Nokia on January 13, 2022. Thus, Nokia's assertion that its counsel was unaware of Mestdagh until after February 21, 2022 is not true.

**Stefan H. Müller & Johannes B. Huber, "A Comparison of Peak Power Reduction Schemes for OFDM," GLOBECOM 97. IEEE GLOBAL TELECOMMUNICATIONS CONFERENCE (1997) ("Müller")** – The Müller article is one of the two "Family 4 Art" that

Nokia untimely seeks to add as a primary reference.  Exh. H, Müller article.  It was written in November 1997 and co-authored by Nokia employee Stefan H. Müller, the current head of WSE Comms at Nokia. Exh. I, Müller LinkedIn profile.  The Müller article has been available on the Internet.[1]  Also, the Müller article is the first article listed in the "Other Publications" section of U.S. Patent No. 6,781,951 (Exh. J), which Nokia cited as prior art against the Family 4 Patent in its original Invalidity Contentions:



The Müller article is listed as prior art in CommScope's Invalidity Contentions, which was also served on Nokia on January 13, 2022.  Yet, despite these facts, Nokia asserts that it was unaware of the Müller article until after February 21, 2022.  That assertion is false.

**ITU-T Recommendation G.712 (11/96) ("G.712")** – The ITU Recommendation G.712 (11/96) is the "Family 1 Art" that Nokia untimely seeks to add as a secondary reference. Exh. K, G.712.  Issued publicly in November 1996, it is freely available on the Internet.[2]  G.712 is also found on Nokia's website and implemented in Nokia products, as shown by its product literature.[3]

---

[1] Exh. H, downloaded from https://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.67.8333&rep=rep1&type=pdf, (accessed April 13, 2022).
[2] Exh. L, screenshot of https://www.itu.int/rec/T-REC-G.712-199611-S/en (accessed April 14, 2022)
[3] Exh. M, screenshot from https://infocenter.nokia.com/public/7705SAR70R4A/index.jsp?topic=%2Fcom.sar.services%2Fhtml%2Fstandards.html; Exh. N,  Nokia 7705 data sheet at 6 ("ITU-T G.712 transmission

**Alcatel A1000 ASAM ADSL ("Alcatel A1000")** – The Alcatel A1000 device, released in January 1999, is the "Family 2 Art" that Nokia untimely seeks to add as a secondary reference. It is a Nokia product (Nokia acquired Alcatel-Lucent in 2016), and there is information about it on the Internet.[4] On March 23, 2022, Nokia produced three internal Alcatel A1000 documents which Nokia cites in its proposed amended invalidity charts. Exh. Q, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at NOK00280509; Exh. R, ▮▮▮▮▮▮▮ at NOK00280505; Exh. S, ▮▮▮▮▮▮▮▮▮▮ at NOK00280486. These internal documents could have been included or cited in Nokia's original Invalidity Contentions, and Nokia has not contended otherwise.

Despite the Additional Prior Art being publicly available or known by Nokia for years, including in Nokia's own files, Nokia told the Court that it did not become aware of the Additional Prior Art until after February 21, 2022. It then did not file this Motion until April 1, 2022.

### III.   ARGUMENT

Under the Patent Local Rules, leave to amend invalidity contentions "may be made only by order of the court, which shall be entered only upon a showing of good cause." P.R. 3-6(b). "Good cause," according to the Federal Circuit, "requires a showing of diligence." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1366 (Fed. Cir. 2006). To assess good cause, courts consider "(1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a continuance to cure such prejudice." *Garrity Power Servs. LLC v. Samsung Elecs. Co.*, 2021 WL 4894262, at *1 (E.D. Tex. Oct. 19, 2021).

---

performance"; copyrighted 2020; downloaded from https://lightriver.com/wp-content/uploads/2020/09/nokia_7705_sar_adapter_cards_rel20_data_sheet_en.pdf).

[4] Exh. O, Alcatel 100 ADSL User Guide, https://www.manualslib.com/manual/3860/Alcatel-1000-Adsl.html (accessed April 13, 2022); Ex. P, "End-to-End protocol stacks in the Alcatel 100 ADSL access network," https://ieeexplore.ieee.org/document/741250 (accessed April 13, 2022).

### A. Nokia has not explained its failure to meet the deadline

Despite its burden to show good cause, Nokia does not explain *why* it failed to include the Additional Prior Art in its invalidity contentions. Instead, the only relevant fact that Nokia discloses is that its counsel was not aware of the Additional Prior Art until "beginning on February 21, 2022 through March 3, 2022." Mtn at 2. That is insufficient to show good cause.

A date range is not evidence of diligence. It does not explain why a reasonably diligent search would not have yielded the new references. How did Nokia's counsel come to learn of each reference? Who informed Nokia's counsel about the existence of each reference? Did Nokia employees who are not attorneys know about each reference *before* February 21, 2022, and, if so, how long have they known about them? How thorough was Nokia's prior art search of public sources and Nokia's files? What did Nokia *do* to demonstrate reasonable diligence in its prior art search? Nokia's motion does not answer any of these questions. *See Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*, No. 4:14-CV-371, 2016 U.S. Dist. LEXIS 40504, at *5 (E.D. Tex. Mar. 28, 2016) (denying motion to amend invalidity contentions; "It is more relevant that Defendants have not explained why, with reasonable diligence, they could not have discovered the proposed references prior to the deadline for filing invalidity contentions.").

This Court has denied untimely amendments to invalidity contentions based on inadequate explanations about how counsel learned about new prior art references. *See, e.g., Geotag, Inc. v. Frontier Communs. Corp.*, No. 2:10-CV-265, 2013 U.S. Dist. LEXIS 86358, at *162 (E.D. Tex. June 11, 2013) ("Ultimately, Defendants' only explanation for its untimely invalidity contentions is that counsel happened upon a reference while cleaning out his garage. Such happenstance discovery in these circumstances does not demonstrate the diligence necessary to support the late supplementation now requested. In the Court's view, to hold otherwise would render 'the

explanation for the party's failure to meet the deadline' a non-factor."). Here, it is worse because Nokia has not provided *any* explanation as to *how* its counsel learned about the prior art.

Moreover, Nokia's assertion about when its counsel first learned of the Additional Prior Art is false. As explained above, the evidence shows that Nokia knew or should have known of the Additional Prior Art at least several *years* before Invalidity Contentions deadline and certainly could have included them in its original Invalidity Contentions.

**Mestdagh** – Nokia cannot dispute its pre-suit familiarity with the Mestdagh article, which Nokia employees wrote. Nokia told the Court that its counsel was not aware of Mestdagh until after February 21, 2022. This was not true because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Nokia argues that identifying the art authored by Nokia employees was difficult because "a simple assignee search for Nokia patents results in tens of thousands of hits." Mtn at 8, fn. 4. But that's irrelevant because the Additional Prior Art does not involve Nokia patents. Finding the Mestdagh article should have been easy. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▇▇▇ Nokia either did not take either of those basic steps (which would show an inexcusable lack of diligence) or Nokia did take those basic steps—but chose to exclude the Mestdagh article from its Invalidity Contentions. This allowed Nokia to first get a preview of TQ Delta's claim construction positions and obtain a potential tactical advantage. Either way, the facts do not support a showing of good cause. Nokia's failure to explain how it conducted its prior art search creates a reasonable inference that if the underlying facts were known, they would not support a showing of good cause.

▇▇▇ So why did Nokia not include Mestdagh? Nokia did not explain that fact in its Motion and should not be allowed to introduce that explanation for the first time in its Reply.

**Müller, G.712, Alcatel A1000** – As explained above in the Statement of Facts, the Müller article, G.712, and Alcatel A1000 references were known by or should have been known by Nokia well before the original Invalidity Contentions deadline. Publicly available information about them has been around for many years. Nokia employees even authored some of them. And some were cited in CommScope's Invalidity Contentions that Nokia received on January 13, 2022.

Nokia's assertion that it was unaware of these references until after February 21, 2022, simply does not hold up. It is undeniable that Nokia could have charted the Additional Prior Art by January 13, 2022, using reasonable efforts. Nokia's motion should therefore be denied because Nokia had the full opportunity to explain its delay and failed to do so. TQ Delta respectfully

submits that the Court should not consider any explanation raised for the first time in its Reply.

### B. The amendment Nokia seeks is not important.

Nokia's conduct confirms that the amendments Nokia seeks are unimportant, failing the second "good cause" factor. As noted above, Nokia was familiar with the Additional Prior Art for years. Notwithstanding Nokia's early familiarity with these references, Nokia did not include them in its original Invalidity Contentions. Nokia's claim that its belatedly sought amendments are important cannot be squared with Nokia's delay in seeking such amendment, particularly given that the Additional Prior Art was known to it years before its contentions were due.

Further, in its original Invalidity Contentions, Nokia purports to address every element of the asserted claims of the Asserted Patents. Even if Nokia's motion is denied, Nokia's contentions still identify many prior art references. Specifically, Nokia has identified 14 primary and 11 secondary prior art references against the Family 4 Patent, the 11 primary and 11 secondary prior art references against the Family 1 Patent, and the 6 primary and 6 secondary prior art references against the Family 2 Patent. Exh. T, Nokia's Invalidity Contentions at pp. 10-13, 117-120; 222-223. Thus, Nokia's new invalidity theories based on the Additional Prior Art are merely duplicative of other prior art and are not important. *See, e.g., MacroSolve v. Antenna Software*, No. 6:11-cv-287, 2013 WL 3833079, *3 (E.D. Tex. July 23, 2013) (untimely obviousness references not important relative to 102 references already provided). Given the number references Nokia has already identified, Nokia will not be prejudiced if its motion is denied.

### C. TQ Delta would be prejudiced by the untimely amendment.

TQ Delta would face a significant burden and be unduly prejudiced by the tardy insertion of the new invalidity theories based on the Additional Prior Art. *See, e.g., LML Patent Corp. v. JPMorgan Chase & Co.*, No. 2:08-CV-448, 2011 WL 5158285, *4 (E.D. Tex. Aug. 11, 2011)

("requiring the Plaintiff to respond to [] new combinations" would impose "a significant, unexpected burden"). Nokia sought leave to amend the invalidity contentions on April 1, 2022, over two weeks after the parties submitted their Joint Claim Construction and Prehearing Statement on March 14, 2022, and about two months before the Claim Construction Hearing scheduled for June 3, 2022. TQ Delta has formulated its claim-construction positions and, if the amendment is allowed, would have to spend more time and resources in evaluating the new theories and modifying its existing constructions. This Court has denied untimely amendments to Invalidity Contentions based on undue burden arising from nearly identical claim construction-related timeframes. *See, e.g., Innovative Display Techs. LLC v. Acer Inc.,* No. 2:13-cv-00522-JRG, 2014 U.S. Dist. LEXIS 83196, at *6-7 (E.D. Tex. June 19, 2014):

> Defendants sought leave to amend the invalidity contentions . . . **about two months before the scheduled Claim Construction Hearing** . . . and **after the parties have submitted their Joint Claim Construction and Prehearing Statement**. Although the Court does not base its claim construction on invalidity contentions, the parties' claim construction positions as a practical matter would be influenced by the scope and combination of the specific prior arts disclosed in invalidity contentions. Allowing Defendants to amend the invalidity contentions so close to the Claim Construction Hearing, and after the parties have largely formulated their respective positions, would force Plaintiff to spend more time and resources in modifying its existing construction. (emphasis added)

Nokia argues that the Additional Prior Art is important to address TQ Delta's claim construction positions (Mtn at 7). But that highlights the unfairness and prejudice to TQ Delta if the amendment is allowed because Nokia will obtain a tactical advantage by previewing TQ Delta's positions and bringing in new art that it has known about for many years.

Also, the undue burden on TQ Delta is particularly acute when Nokia failed to explain *why* it could not find or disclose the newly asserted prior art in its original Invalidity Contentions. *Geotag, Inc.*, 2013 U.S. Dist. LEXIS 86358, at *162 (denying leave to supplement invalidity contentions to add 36 new prior art references when the accused infringers failed to show diligence

in finding the references).

### D. A continuance is not necessary.

The parties agree that a continuance is unnecessary if the proposed amendment is allowed.

## IV. CONCLUSION

For the reasons stated above, the Court should deny Nokia's Motion.

Dated: April 15, 2022

Respectfully submitted,

By: /s/ *William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

**The Davis Firm PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

**ATTORNEYS FOR PLAINTIFF
TQ DELTA, LLC**

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this April 15, 2022, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

                                                           */s/ William E. Davis, III*
                                                           William E. Davis, III