**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **TQ DELTA, LLC,** | |
| *Plaintiff,* | |
| v. | CIV. A. NO.  2:21-CV-310-JRG |
| **COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,** | (Lead Case) |
| *Defendants.* | |

| | |
|---|---|
| **TQ DELTA, LLC,** | |
| *Plaintiff,* | |
| v. | CIV. A. NO.  2:21-CV-309-JRG |
| **NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.,** | (Member Case) |
| *Defendants.* | |

| |
|---|
| **NOKIA OF AMERICA CORP.,** |
| *Third-Party Plaintiff,* |
| v. |
| **BROADCOM CORP., BROADCOM INC., and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD.,** |
| *Third-Party Defendants.* |

**NOKIA'S OPPOSITION TO THE**
**THIRD-PARTY DEFENDANTS' MOTION TO DISMISS**

## **TABLE OF CONTENTS**

I.      Introduction ........................................................................................................... 1

II.     Background ............................................................................................................ 2

III.    Issue To Be Decided by the Court ........................................................................ 5

IV.     Legal Standards ..................................................................................................... 6
        A.      Rule 12(b)(6) of the Federal Rules of Civil Procedure .............................. 6
        B.      Rules 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure ................. 6
        C.      Federal Arbitration Act ............................................................................... 6

V.      Argument ............................................................................................................... 7
        A.      Nokia's Right to Seek Indemnification Survives ███████ ............... 7
        B.      TQ Delta's Claims Do Not Arise Under ███████████████
                ............................................................................................................. 12
        C.      ████████████████████████ ................................. 14
        D.      Even If Nokia's Claim Invoked the Arbitration Clause, ████████
                ████████ ................................................................................. 15

VI.     Conclusion .......................................................................................................... 16

**TABLE OF AUTHORITIES**

**Page(s)**

C ASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................6

*Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
  448 F.3d 573 (2d Cir. 2006) ..................................................................................15

*Canal Ins. Co. v. Flores*,
  No. 3:06-CV-84-KC, 2009 U.S. Dist. LEXIS 37013 (W.D. Tex. Apr. 13, 2009) ..................14

*Cottman Avenue PRP Group v. AMEC Foster Wheeler Environmental Infrastructure Inc.*,
  No. 16-16613, 439 F. Supp. 3d 407 (E.D. Penn. Feb. 13, 2020) ...............................................8

*Fraco Products v. Bostonian Masonry Corp.*,
  No. 12-P-933, 955 N.E.2d 1125, 84 Mass. App. Ct. 296 (Mass. App. Ct. 2013) ...................11

*Gonzalez v. Meridian Sec. Ins. Co.*,
  No. 4:20-cv-00643, 2021 U.S. Dist. LEXIS 140302 (E.D. Tex. July 28, 2021) ....................15

*Griffin Indus., Inc. v. Foodmaker, Inc.*,
  No. 14-98-00881-CV, 22 S.W.3d 33 (Tex. Ct. App. May 11, 2000) ...............................11, 12

*Kee's Chocolates LLC v. Charles Thompson LLC*,
  CV-00176/18, 119 N.Y.S.3d 11 (Civ. Ct. of the City of N.Y. 2019) ........................................9

*Lake Imaging, LLC v. Franciscan Alliance, Inc.*,
  No. 21S-CT-478, 182 N.E.3d 203 (Ind. 2022) ........................................................................9

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ..........................................................................................................6, 7

*Litton Financial Printing Division v. NLRB*,
  501 U.S. 190 (1990) ..................................................................................................................8

*McDonnel Grp., L.L.C. v. Great Lakes Ins. Se*,
  923 F.3d 427 (5th Cir. 2019) ...................................................................................................6

*Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*,
  390 F.3d 336 (5th Cir. 2004) ............................................................................................9, 12

*Pierson v. Empire State Land Assoc., LLC*,
  No. 2008-04616, 886 N.Y.S.2d 411, 65 A.D.3d 1114 (N.Y. App. Div. 2009) ......................11

*Texaco, Inc. v. Am. Trading Transp. Co.*,
  644 F.2d 1152 (5th Cir. 1981) ................................................................................................12

*Thompson v. City of Waco*,
  764 F.3d 500 (5th Cir. 2014) ....................................................................................................6

*Tracer Rsch Corp. v. Nat'l Envtl. Servs. Co.*,
  42 F.3d 1292 (9th Cir. 1994) ..................................................................................................13

**RULES**

Fed. R. Civ. P. 12(b)(1) ...................................................................................................................6

Fed. R. Civ. P. 12(b)(3) ...................................................................................................................6

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................6

Fed. R. Civ. P. 14(a)(1) ...................................................................................................................1

**STATUTES**

Federal Arbitration Act ....................................................................................................................6

Federal Declaratory Act .................................................................................................................14

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|:---:|:---|
| 1 |  |
| 2 | Correspondence from Howard Shatz to Ryan D. Phillips, dated Aug. 26, 2021 |
| 3 | Correspondence from Ryan D. Phillips to Howard Shatz, dated Oct. 7, 2021 |
| 4 | Correspondence from Howard Shatz to Ryan D. Phillips, dated Nov. 17, 2021 |
| 5 | Email correspondence from Howard Shatz to Ryan D. Phillips, dated November 29, 2021 |
| 6 | Correspondence from Ryan D. Phillips to Howard Shatz, dated Dec. 6, 2021 |
| 7 | Correspondence from Howard Shatz to Ryan D. Phillips, dated Dec. 16, 2021 |

████████████████████████████████████████

## I.   INTRODUCTION

TQ Delta alleges Nokia's products infringe based on their use of Broadcom's DSL chipsets, the vast majority of which were purchased during the pendency of Nokia's agreement with Broadcom.  Nokia's agreement with Broadcom includes an indemnification provision that undisputedly covers these products and these claims.  Rule 14(a)(1) provides that Nokia "may, as third-party plaintiff, serve a summons and complaint on a nonparty who ***is or may be liable*** to it for all or part of the claim against it" (emphasis added).  Fed. R. Civ. P. 14(a)(1).  Nokia's indemnification claim falls squarely within the ambit of that Rule; thus, Broadcom's motion should be denied.

████████████████████████████████████████

████████████████████████████████  But Broadcom ignores the fact that rights that accrue under a contract survive ████████████████  Specifically, absent language to the contrary, an agreement's warranty or indemnification provision generally survives ████████  with respect to products purchased during the contract's pendency.  Applying this principle here confirms that Broadcom's indemnification obligations continue on for products ordered and delivered prior to ███████████████████

Knowing the fragility of its position, Broadcom suggests that if the indemnification provision survives, then this dispute ███████████████████████ ████████  Broadcom is wrong for three reasons.  First,  the parties do not dispute the applicability or terms of the relevant agreements, and thus this is not a dispute arising out of the Nokia/Broadcom agreement.  ███████████████████ ████████████████████████  and Nokia's claim for indemnification seeks equitable relief.  ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████ As a result,

the Court should deny Broadcom's motion to dismiss.

## II.   BACKGROUND

██████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████ ████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

*See* Ex. C to Broadcom's Mot. at 1-2.

        As relevant here, t█████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

---

[1] Alcatel-Lucent was later acquired by Nokia, and Alcatel-Lucent USA Inc. changed its name to Nokia of America Corporation, a defendant and third-party plaintiff in this action.



[REDACTED]

Ex. 1 at 6-7.

[REDACTED]

[REDACTED]

TQ Delta filed the Complaint in this case against Nokia on August 13, 2021.  Dkt. 1.  [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

4



Nokia filed its third-party Complaint on January 28, 2022 with one count: indemnification.  Dkt.

70 at 47.  Nokia's claim seeks, *inter alia*, equitable relief in the form of a declaration that Nokia is

entitled to indemnity from Broadcom.

### III.    ISSUE TO BE DECIDED BY THE COURT[2]

(1) Whether Nokia's impleader claim is facially plausible.

---

[2] Broadcom's Motion under Rules 12(b)(6), 12(b)(1), and 12(b)(3) is a case-dispositive motion under L.R. CV-7(a)(1), however, Broadcom does not provide a statement of the issues to be decided by the court.  *See, e.g.*, L.R. CV-7(a)(2) ("Non-dispositive motions include, among others, motions to transfer venue, motions for partial summary judgment, and motions for new trial pursuant to Fed. R. Civ. P. 59."); L.R. CV-7(a)(1) ("Case dispositive motions shall contain a statement of the issues to be decided by the court.").

## IV.   LEGAL STANDARDS

### A.   Rule 12(b)(6) of the Federal Rules of Civil Procedure

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ P. 8(a)(2).   A Court can dismiss a complaint that fails to meet this standard.  Fed. R. Civ. P. 12(b)(6).  To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff, but is not required to accept the plaintiff's legal conclusions as true.  *Id.*

### B.   Rules 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure

A motion to dismiss pursuant to an arbitration clause may invoke either Rule 12(b)(1) as a motion to dismiss for lack of subject-matter jurisdiction or Rule 12(b)(3) as a motion to dismiss for improper venue.  The Fifth Circuit has not definitively held which provision of the Rules is the proper rule for a motion to dismiss based on an arbitration clause, but it has "accepted Rule 12(b)(3) as a proper method for seeking dismissal in favor of arbitration."  *See McDonnel Grp., L.L.C. v. Great Lakes Ins. Se*, 923 F.3d 427, 430 n.5 (5th Cir. 2019).

### C.   Federal Arbitration Act

"The FAA requires courts to 'enforce arbitration agreements according to their terms.'" *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019).  "'[T]he first principle that underscores all . . . arbitration decisions' is that '[a]rbitration is strictly a matter of consent.'"  *Id.*  The Supreme Court has "emphasized that 'foundational FAA principle' many times."  *Id.* (citing cases).

█████████████████████████████████████

"Consent is essential under the FAA because arbitrators wield only the authority they are given. That is, they derive their 'powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.'" *Id.* "Parties may generally shape such agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes." *Id.* "Whatever they settle on, the task for courts and arbitrators at bottom remains the same: 'to give effect to the intent of the parties.'" *Id.*

## V.   ARGUMENT

Even assuming that ████████████████████████████████ the indemnification provision of that agreement survives ███████ as a matter of law—the ████ indemnity provisions apply and entitle Nokia to the relief sought through its impleader claim. Broadcom also cannot avoid that claim by attempting to ██████████████████████ ██████████████████████████████ Because the parties do not dispute the applicability or terms of any of the ████████ contractual provisions, Nokia's indemnification claim does not ██████████████████████████ Even if there were a dispute under the terms of the ████ Nokia's equitable claim for indemnity here would be ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████ For these reasons, Nokia respectfully submits that Broadcom's Motion should be denied.

### A.   Nokia's Right to Seek Indemnification Survives ████████

Broadcom argues that it should not be held to its agreed responsibilities with respect to products undisputedly purchased under the ████ because it ██████████████████████ ████ *See* Mot. at 7.  Broadcom's position is not only legally incorrect, but it is also illogical

considering the intent of the contract and the settled expectations of the parties.

The Supreme Court held in *Litton Financial Printing Division v. NLRB* that "contractual obligations will cease, in the ordinary course, upon termination of the" contract.  501 U.S. 190 (1990).  But the Court went on to hold that there are exceptions to this rule, which "are determined by contract interpretation."  *Id.* at 207.  Specifically, rights "***which accrued or vested under the agreement will, as a general rule, survive termination of the agreement***."  *Id.* (emphasis added).  Further, "structural provisions relating to remedies and dispute resolution . . . may in some cases survive in order to enforce duties arising under the contract."  *Id.* at 208.

Following *Litton*, the court in *Cottman Avenue PRP Group v. AMEC Foster Wheeler Environmental Infrastructure Inc.* held that an indemnification provision survived termination of the contract in view of the Supreme Court's guidance that "structural provisions" of contracts survive.  439 F. Supp. 3d 407, 434-37 (E.D. Penn. Feb. 13, 2020).  In *Cottman*, the court acknowledged that "[a]lthough precedent addressing the survival of indemnification clauses is sparse," other cases such as those "addressing the survival of arbitration and forum selection clauses provide some guidance," where "[c]ourts have repeatedly held that such clauses can survive termination of the agreement where they are broadly written to apply to 'any legal dispute' and the dispute involves facts and occurrences that arose before expiration of the contract."  *Id.* at 435.  The court in *Cottman* went on to hold that "[t]his remains true despite the absence of language expressly providing for the survival of these provisions."  *Id.* at 435-36.  The court held that the relevant indemnification provision survived because it was written such that it "extends to 'any and all' claims, losses, damages, liability, costs or actions arising out of 'or resulting from' Defendants' negligence 'in the performance' of the work under the Contracts."  *Id.* at 436-37.  As stated by the *Cottman* court, "[s]uch language unambiguously indicates that the provision was

intended to be remedial in nature and survive contractual expiration so long as . . . the underlying negligence giving rise to the claim, . . . had its source in the work completed under the Contracts and during the contractual period." *Id.*

Other courts have held the same—that indemnification obligations survive the expiration of the contract. *See, e.g.*, *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 341, 346 (5th Cir. 2004) (holding that an indemnification provision survived termination of the contract for claims based on facts that occurred during contract); *Lake Imaging, LLC v. Franciscan Alliance, Inc.*, No. 21S-CT-478, 182 N.E.3d 203, 211 (Ind. 2022) ("Nothing in the Agreement indicates that the obligation to indemnify for past services would end when the contract terminated."); *Kee's Chocolates LLC v. Charles Thompson LLC*, CV-00176/18, 119 N.Y.S.3d 11, at *33-34 (Civ. Ct. of the City of N.Y. 2019) (rejecting argument that indemnification obligation expired with expiration of contract). For example, in *Millennium Petrochemicals*, the Fifth Circuit explained: "[W]e are aware of no Texas authority that provides that the termination of agreements automatically applies retroactively to extinguish vested rights. . . . Other circuits have also held that rights that have vested or accrued under a contract prior to the termination of the contract, are not automatically extinguished upon termination. . . . The parties have not cited, nor has our research revealed, any cases from other circuits which hold otherwise." 390 F.3d at 340.

Similarly, here the indemnification provision of the ▌▌ provides ▌▌▌▌▌▌▌



▌▌▌▌▌▌▌ Ex. C to Broadcom's Mot. at 1-2 (emphasis added). The language of the ▌ is clear that the parties intended for the indemnification provision to survive where it

████████████████████████████████████████████

is "broadly written to apply to '[any infringement claim]' and the dispute involves facts and occurrences that arose before expiration of the contract." *See Cottman*, 439 F. Supp. 3d at 435. Therefore, the parties' clear intent under the ████ is for Broadcom's obligations to survive termination.

Broadcom and Nokia's intent for remedies to survive termination is further evidenced by

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████. Ex. A to Broadcom's Mot. at 11.  Not only does the ████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████

As further evidence that Broadcom and Nokia intended for Broadcom's obligations to survive the ████████████████████████████████████████████

████. *See* Ex. A to Broadcom's Mot. at 4.  Broadcom's argument that its ████████████

████ unilaterally cut off all of its obligations thus "would effectively render the ████████

████████████████████████████████ a nullity." *See Cottman*, 439 F. Supp. 3d at 437.  As the *Cottman* court stated, "[i]t would be illogical to limit the indemnification language to claims brought solely during the time period during which Defendant was actually doing the work . . . . The indemnification provision, like a 'structural provision relating to remedies and dispute

10

resolution,' must 'survive in order to enforce duties arising under the contract." *See Cottman*, 439 F. Supp. 3d at 437.

Broadcom's cases are inapposite.  Broadcom cites only one case from New York,[3] and in that case, the Court held that the indemnification obligation terminated where the agreement included ***explicit survival provisions*** in other portions of the agreement but such a provision was noticeably absent from the indemnification provision.  *Pierson v. Empire State Land Assoc., LLC*, No. 2008-04616, 886 N.Y.S.2d 411, 65 A.D.3d 1114, 1115 (N.Y. App. Div. 2009).  Similarly, in *Fraco Products v. Bostonian Masonry Corp.* the "Transfer of Risks and Insurance" provision did not survive because other portions of the contract included explicit survival provisions.  No. 12-P-933, 955 N.E.2d 1125, 84 Mass. App. Ct. 296, 307 (Mass. App. Ct. 2013).  This is not a case where the parties included ███████████████████████████████████████ which could indicate an affirmative intent for an indemnification obligation to not survive ████████ Instead, the clear language ███████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████ *See* Ex. C to Broadcom's Mot. at 1-2; Ex. A to Broadcom's Mot. at 4.

Broadcom's final case is similarly inapposite.  In *Griffin*, the relevant injury occurred two years ***after*** the agreement terminated, and thus even if the indemnification obligation survived, it would not have governed the claim.  *See Griffin Indus., Inc. v. Foodmaker, Inc.*, No. 14-98-00881-CV, 22 S.W.3d 33, 36 (Tex. Ct. App. May 11, 2000).  Further, *Griffin* was a personal-injury case that did not present the same ongoing obligations that apply to ████████████████████████

---

[3] ██████████████████████████████████████████████████

*See* Mot. at 8.

███████████████████████████████████

█████████████ *See id.*; *see also Millennium Petrochemicals*, 390 F.3d at 341 (distinguishing *Griffin*, stating that "[i]n *Griffin Indus.*, unlike here, the indemnitee's employee was injured (and suit was filed) after the expiration of the contract that contained the indemnity provision").

Broadcom's position that it is able to unilaterally cut off all its own duties and obligations under the ████ is illogical at best. ████████████████████████ it is clear from the language and context of the contract that the parties intended for the indemnification provision to survive, at least as to products purchased prior to ████████████ Under these facts, Nokia has plausibly stated a claim for indemnification under the ████ and the Court should deny Broadcom's Motion.

**B.     TQ Delta's Claims Do Not Arise Under the ████ Between Broadcom and Nokia**

To the extent that Broadcom argues that the Nokia's indemnification claim should be resolved by arbitration separate from the ████████ issue, Broadcom is wrong.  Nokia's indemnification claim does not ███████████████ *See* Ex. 1 at 6.  The parties do not dispute the applicability or terms of the ██████████ and thus there is no contractual dispute to resolve.  Nokia's indemnification claim is properly before this Court.

There is no disagreement ████████████████ to be arbitrated because the parties do not dispute the contractual terms of the ████ ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████ *See, e.g.*, *Texaco, Inc. v. Am. Trading Transp. Co.*, 644 F.2d 1152, 1154 (5th Cir. 1981) (holding that an arbitration clause was not applicable in a claim related to an agreed-upon contract because "the parties chose the more restrictive language limiting arbitration to disputes or differences arising out of the" contract, rather than all disputes between

████████████████████████████████████████████████████

the parties); *see also, e.g.*, *Tracer Rsch Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (recognizing that a clause requiring arbitration relating to disputes "arising out of the Agreement" to be narrow compared to use of the language "arising out of or in relation to").

███████████████████████████████████████████████████████████

█████████████████████████████████ Notably, there is no dispute between Nokia and Broadcom regarding breach of contract; rather, Nokia has simply exercised its statutory right to implead Broadcom for indemnification where Broadcom "***may be liable***" for the damages sought by TQ Delta.   Broadcom's argument that Nokia's indemnification demand should be arbitrated amounts to alleging that all disputes "relating to" the ████ should be arbitrated, but such argument is inconsistent ████████████████████████████████████████ ████████████████████████████████████████████████

Broadcom appears to admit as much.  *See* Mtn. at 8 (██████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████████) (emphasis added).  Because Nokia does not dispute that Broadcom █████████ the Agreement for purposes of this Motion, by Broadcom's own admission, Nokia's claim does not invoke the arbitration clause because neither party has identified any dispute regarding the terms of the agreement. Nokia's claim for indemnification is therefore properly before this Court, and Nokia respectfully submits that the Court should deny Broadcom's Motion.

---

4 ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████

13

████████████████████████████████████████

**C.**   ████████████████████████████████████

Even had either party identified a dispute, the specific relief sought by Nokia in this case

would still not be subject to arbitration.  ████████████████████████████████████

████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Ex. 1 at 6-7.  In particular, the ██████████████████████████████████

████████████████████████████████████████████████████

In its Third-Party Complaint, Nokia pled a sole count for indemnification (not breach) and

Nokia seeks equitable relief in the form of a declaration that "Nokia is entitled to indemnity from

Broadcom for all amounts for which Nokia may be held liable."  Dkt. 70 at 48.   Through the

Court's judgment, Nokia seeks a declaration that Broadcom owes an indemnity obligation to Nokia

with respect to TQ Delta's claims, which is a request for equitable relief.  *See, e.g.*, *Canal Ins. Co.*

*v. Flores*, No. 3:06-CV-84-KC, 2009 U.S. Dist. LEXIS 37013, at *50-51 (W.D. Tex. Apr. 13,

2009) ("By its very nature, the Federal Declaratory Act is a form of equitable relief, which states

that a court with jurisdiction '*may* declare the rights and other legal relations of any interested

party seeking such declaration, whether or not further relief is or could be sought.'").  Therefore,

even if Nokia's claim were to ██████████████████████████████████████

████████████████████████████████████████████████  and for this additional

14

███████████████████████████████

reason, Broadcom's Motion should be denied.

**D.      Even If Nokia's Claim Invoked the Arbitration Clause, ███████████**
███████████████

To the extent that Nokia's claim were to invoke the ███████████████
█████████████████████████████████████████████

███████████████      A party may "waive a legal right through intentional conduct
inconsistent with that right," and "[w]hether a party implicitly waived a legal right turns on the
party's intent." *Gonzalez v. Meridian Sec. Ins. Co.*, No. 4:20-cv-00643, 2021 U.S. Dist. LEXIS
140302, at *10 (E.D. Tex. July 28, 2021).  A party's intent "must be clearly demonstrated by the
surrounding facts and circumstances," and conduct to establish waiver "must be unequivocally
inconsistent with claiming a known right." *See id.*  Whether the party's conduct was inconsistent
with their legal rights is a question of fact for the jury.  *See id.*; *see also Beth Isr. Med. Ctr. v.
Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) ("[W]aiver of a
contract right 'is the voluntary abandonment or relinquishment of a known [contract] right.  It is
essentially a matter of intent which must be proved.'").

████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████
████████████████████████████████████

15



and for these additional reasons, the Court should deny Broadcom's Motion.

**VI.    CONCLUSION**

For the reasons shown, Nokia respectfully submits that this Court should deny Broadcom's Motion.

16

Dated: April 28, 2022

Respectfully submitted,

*/s/ M. Scott Stevens*
M. Scott Stevens (NC Bar # 37828)
Karlee Wroblewski (NC Bar # 55043)
Nic Marais (NC Bar # 53533)
ALSTON & BIRD LLP
One South at the Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Tel:  704.444.1000
Fax:  704.444.1111
Email: scott.stevens@alston.com
Email: karlee.wroblewski@alston.com
Email: nic.marais@alston.com

John D. Haynes (GA Bar # 340599)
Michael Deane (GA Bar # 498195)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
Tel:  404.881.7737
Fax:  404.881.7777
Email: john.haynes@alston.com
Email: michael.deane@alston.com

Darlena Subashi (NY Bar # 5780747)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Tel: 212-210-9400
Fax: 212-210-9444
Email: darlena.subashi@alston.com

Adam Ahnhut (TX Bar # 24106983)
ALSTON & BIRD LLP
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Email: adam.ahnhut@alston.com
Tel: 214.922.3400
Fax: 214.922.3899

*Counsel for Defendants*

17

███████████████████████████████

*Nokia Corporation, Nokia Solutions and Networks Oy, and Nokia of America Corporation and Third-Party Plaintiff, Nokia of America Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served on counsel of record for Broadcom via e-mail on April 28, 2022.


/s/ *M. Scott Stevens*
M. Scott Stevens

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on May 2, 2022, on all counsel who have consented to electronic service via ECF.

/s/ *M. Scott Stevens*
M. Scott Stevens