# EXHIBIT 32

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>2WIRE, INC.,<br><br>Defendant. | Civil Action No. 1:13-cv-01835-RGA |
| TQ DELTA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ZYXEL COMMUNICATIONS, INC<br>and<br>ZYXEL COMMUNICATIONS<br>CORPORATION,<br><br>Defendants. | Civil Action No. 1:13-cv-02013-RGA |
| TQ DELTA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ADTRAN, INC.,<br><br>Defendant. | Civil Action No. 1:14-cv-00954-RGA |

| ADTRAN, INC.,      |                                    |
|                    |                                    |
| Plaintiff,         |                                    |
|                    | Civil Action No. 1:15-cv-00121-RGA |
| v.                 |                                    |
|                    |                                    |
| TQ DELTA, LLC,     |                                    |
|                    |                                    |
| Defendant.         |                                    |

## MEMORANDUM OPINION

Brian E. Farnan, Esq., FARNAN LLP, Wilmington, DE; Michael J. Farnan, Esq., FARNAN LLP, Wilmington, DE; Peter J. McAndrews, Esq. (argued), MCANDREWS, HELD & MALLOY, Chicago, IL; Andrew B. Karp, Esq., MCANDREWS, HELD & MALLOY, Chicago, IL.

    Attorneys for Plaintiff

Colm F. Connolly, Esq., MORGAN LEWIS & BOCKIUS LLP, Wilmington, DE; Jody Barillare, Esq. (argued), MORGAN LEWIS & BOCKIUS LLP, Wilmington, DE; Brett M. Schuman, Esq., GOODWIN PROCTOR LLP, San Francisco, CA; Rachel M. Walsh, Esq., GOODWIN PROCTOR LLP, San Francisco, CA; David L. Simson, Esq., GOODWIN PROCTOR LLP, San Francisco, CA.

    Attorneys for Defendant 2WIRE, Inc.

Kenneth L. Dorsney, Esq., MORRIS JAMES LLP, Wilmington, DE.

    Attorney for Defendants Adtran Inc. and Zyxel Communications Inc.

Paul M. Sykes, Esq. (argued), BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, AL; Benn C. Wilson, Esq. (argued), BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, AL.

    Attorneys for Defendant Adtran Inc.

Elizabeth Rader, Esq., ALSTON & BIRD LLP, Washington, DC.

    Attorney for Defendant Zyxel Communications Inc.

January 29, 2018

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is the issue of claim construction of multiple terms in U.S. Patent Nos. 7,292,627 ("the '627 patent"), 8,073,041 ("the '041 patent"), 8,090,008 ("the '008 patent"), 8,218,610 ("the '610 patent"), and 8,355,427 ("the '427 patent"). The Court has considered the parties' joint claim construction brief. (Civ. Act. No. 13-01835-RGA, D.I. 362; Civ. Act. No. 13-02013-RGA, D.I. 348; Civ. Act. No. 14-00954-RGA, D.I. 202; Civ. Act. No. 15-00121-RGA, D.I. 204).[1] The Court heard oral argument on November 30, 2017. (D.I. 452) ("Tr.").

## I. BACKGROUND

The patents-in-suit represent "Family 4" of the patents that Plaintiff has asserted against Defendants. (D.I. 362 at 8). They all share a common specification. (*Id.* at 18). They relate to a system and method for scrambling the phase characteristics of carrier signals.

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the

---

[1] Unless otherwise noted, all references to the docket refer to Civil Action No. 13-1835-RGA.

import of the specification." *Id.* at 858. In my opinion, the specifications make clear that "phase" in the disputed limitation means "phase shift." The specifications repeatedly refer to the combining of a "phase shift" with a "phase characteristic" in order to "substantially scramble the phase characteristics of the carrier signals." (*E.g.*, '041 patent, 2:37–40, 4:31–34). As Defendants point out, there is one sentence in the Background of the Invention that suggests "phase" could refer to "phase characteristic." (*Id.* at 1:36–38 ("The DMT transmitter typically modulates the phase characteristic, or phase, and amplitude of the carrier signals. . . .")). I do not think this one sentence, however, trumps the patents' repeated references to a "phase shift" being combined with a "phase characteristic." Further, as Defendants asserted in the joint brief, construing "phase" to mean "phase characteristic" would be nonsensical, since such a construction would require a "phase" to be combined with itself. Such a construction would also render meaningless the patentee's use of two different terms, "phase" and "phase characteristic," in the same claim limitation.

Thus, I do not find this term indefinite. For the reasons stated above, I will construe it to mean, "a phase shift at the receiver for each carrier is based on . . . the previous combination, by a transmitting transceiver, of a phase shift for each carrier signal with the phase characteristic of that respective carrier signal."

9. **"computing a phase shift for each carrier signal" ('627 patent, claims 20 and 26; '008 patent, claims 1 and 14)**

   a. *Plaintiff's proposed construction*: plain and ordinary meaning

   b. *Defendants' proposed construction*: "computing an amount by which the phase of each carrier signal will be adjusted"

   c. *Court's construction*: "computing the amount by which a phase is adjusted for each carrier signal"

17

Plaintiff argues this term needs no construction because the parties have already requested that the Court construe the term "phase shift." (D.I. 362 at 97). In response, Defendants assert that their "proposed construction clarifies the term by incorporating their proposed construction for 'phase shift.'" (*Id.*). Plaintiff counters that Defendants' proposed construction for this term is inconsistent with its proposal for "phase shift." (*Id.*). Defendants respond by arguing that "the slight changes in wording from [their] stand-alone constructions of 'phase-shift,' . . . to a phrasing that specifically addresses the prospective application of the phase shift in this particular usage is entirely logical and appropriate in context." (*Id.* at 98).

I agree with Defendants that incorporating the construction for "phase shift" helps to clarify the meaning of this term. As I explained above, I believe the construction I have adopted for "phase shift" appropriately reflects the retrospective, contemporaneous, and prospective nature of phase shifts in the claims. Accordingly, in light of my construction for the term "phase shift," I will construe this term to mean, "computing the amount by which a phase is adjusted for each carrier signal."

### 10. "a phase shift for each carrier signal is [at least] based on" ('041 patent, claims 1 and 14; '610 patent, claims 7 and 31; '427 patent, claims 7 and 29)

   a. *Plaintiff's proposed construction*: plain and ordinary meaning

   b. *Defendants' proposed construction*: "a phase shift for each carrier signal is computed [at least] based on"

   c. *Court's construction*: "a phase shift for each carrier signal is computed [at least] based on"

Plaintiff argues that Defendants have provided no justification for adding the word "computed" into their proposed construction for this term. (*Id.* at 99). According to Plaintiff, Defendants are attempting to impermissibly narrow the term's scope. (*Id.* at 100). Defendants'

18