IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.,<br><br>    Defendants. | Civil Action No. 2:21-CV-00310-JRG<br>(Lead Case)<br><br>Civil Action No. 2:21-CV-00309-JRG<br>(Member Case) |
| NOKIA OF AMERICA CORP.,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>BROADCOM CORP., BROADCOM INC., and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD.,<br><br>    Third-Party Defendants. | |

**THIRD-PARTY DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 1

III. LEGAL STANDARD ............................................................................................................ 4

    A. Federal Rule of Civil Procedure 12(b)(6) ................................................................ 4

    B. Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) ......................................... 5

    C. Federal Arbitration Act ............................................................................................ 6

IV. ARGUMENT .......................................................................................................................... 7

    A. Choice of Law Analysis ........................................................................................... 8

    B. Broadcom ███████ the Agreement, and Nokia's Right to Seek Indemnification did not Survive ███████ ............................................ 9

    C. The Agreement Requires Arbitration for any Dispute Arising From, or in Connection With, the Agreement ...................................................... 11

V. CONCLUSION .................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**

*Al Rushaid v. Nat'l Oilwell Varco, Inc.*,
    814 F.3d 300 (5th Cir. 2016) .................................................................................................. 6

*Alford v. Dean Witter Reynolds, Inc.*,
    975 F.2d 1161 (5th Cir. 1992) ........................................................................................... 7, 12

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009) ................................................................................................................ 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................ 4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 4

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
    343 F.3d 719 (5th Cir. 2003) .................................................................................................. 8

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
    240 F. App'x 612 (5th Cir. 2007) ........................................................................................... 6

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) .................................................................................................. 4

*Conley v. Gibson*,
    355 U.S. 41 (1957) .................................................................................................................. 4

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
    748 F.3d 249 (5th Cir. 2014) .................................................................................................. 6

*Crow v. Am. Messaging Serv., L.L.C.*,
    No. 4:19-CV-600-SDJ, 2020 WL 5554558, at *1 (E.D. Tex. Sept. 17, 2020) ........................ 8

*DeSantis v. Wackenhut Corp.*,
    793 S.W.2d 670 (Tex. 1990) ................................................................................................... 8

*Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*,
    22 N.Y.3d 413 (App. Ct. 2013) ............................................................................................... 9

*Exxon Mobil Corp. v. Drennen*,
    452 S.W.3d 319 (Tex. 2014) ................................................................................................... 8

*Fraco Prod., Ltd. v. Bostonian Masonry Corp.*,
    84 Mass. App. Ct. 296, 995 N.E.2d 1125 (2013) ................................................................. 10

*Galderma Labs., L.P. v. Teva Pharms. USA, Inc.*,
   290 F.Supp.3d 599 (N.D. Tex. 2017) ................................................................................. 6

*Griffin Indus., Inc. v. Foodmaker, Inc.,*
   22 S.W.3d 33 (Tex. App. 2000) ........................................................................................ 10

*Johnson v. Conifer Health Sols.*,
   2021 WL 2229734, at *1 (E.D. Tex. May 7, 2021) ........................................................... 6

*Kapai v. Unified Bus. Techs., Inc.*,
   No. 4:19-CV-00749-RWS-CAN, 2020 WL 3066646, at *2 (E.D. Tex. May 8, 2020) .............. 5

*Kumar v. Frisco Indep. Sch. Dist.*,
   443 F. Supp.3d 771 (E.D. Tex. 2020) ................................................................................ 5

*Laufer v. Mann Hosp., L.L.C.*,
   No. 20-50858, 2021 WL 1657460, at *1 (5th Cir. Apr. 28, 2021) ..................................... 5

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*,
   595 F.3d 458 (2d Cir. 2010) ............................................................................................... 9

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) .............................................................................................. 4

*Madeleine L.L.C. v. Street*,
   757 F.Supp.2d 403 (S.D.N.Y. 2010) ................................................................................... 9

*Manley v. AmBase Corp.*,
   337 F.3d 237 (2d Cir. 2003) ............................................................................................... 9

*McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*,
   923 F.3d 427 (5th Cir. 2019) .............................................................................................. 5

*Novartis Pharma AG v. Amgen Inc.*,
   No. 19-CV-2993 (PKC), 2020 WL 3056490, at *7 (S.D.N.Y. June 9, 2020) .................... 11

*Pierson v. Empire State Land Assocs.*,
   65 A.D.3d 1114, 886 N.Y.S.2d 411 (A.D.2d 2009) ........................................................... 10

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
   23 N.Y.3d 549 (App. Ct. 2014) .......................................................................................... 10

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) .............................................................................................. 5

*RectorSeal, LLC v. FireBlok IP Holdings, LLC*,
   No. 4:19-CV-504, 2020 WL 10618213, at *3 (E.D. Tex. Aug. 28, 2020) ........................ 9

*Rieder v. Woods*, 603 S.W.3d 86 (Tex. 2020) .......................................................................... 8

*Rogers v. Boatright*,
   709 F.3d 403 (5th Cir. 2013) ............................................................................................... 5

*SGC Health Grp., Inc. v. Eclinicalworks, LLC*,
   No. 3:15-CV-4022-M, 2016 WL 2595109, at *2 (N.D. Tex. May 4, 2016) .............................. 7

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) ............................................................................................... 4

*The Shipman Agency, Inc. v. TheBlaze Inc.*,
   315 F.Supp.3d 967 (S.D. Tex. 2018) ............................................................................. 7, 12

*Truman v. United States*,
   26 F.3d 592 (5th Cir. 1994) ................................................................................................. 5

*White v. SoftLayer Techs., Inc.*,
   No. 3:15-CV-527-M, 2015 WL 5052365, at *6 (N.D. Tex. Aug. 27, 2015) .............................. 7

**Statutes**

9 U.S.C. § 1 *et seq.* ................................................................................................................. 6

9 U.S.C. § 2 ............................................................................................................................. 6

9 U.S.C. §§ 3, 4 ....................................................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................................. passim

Fed. R. Civ. P. 12(b)(3) .................................................................................................. passim

Fed. R. Civ. P. 12(b)(6) .................................................................................... i, 1, 4, 7, 11

**Other Authorities**

Restatement (Second) of Conflict of Laws § 187 (1971) .......................................................... 10

## I. INTRODUCTION

Third-Party Defendants Broadcom Corp., Broadcom Inc., and Avago Technologies International Sales Pte. Ltd. (collectively, "Broadcom") respectfully request that the Court dismiss Third-Party Plaintiff Nokia of America Corp.'s ("Nokia") (collectively, the "Parties") Complaint (Dkt. 70), pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(3), and Fed. R. Civ. P. 12(b)(6). As detailed below, Broadcom ▇▇▇▇ the contract forming the sole basis for Nokia's alleged indemnification claim ▇▇▇▇▇▇▇▇ to the pleaded circumstances giving rise to Nokia's alleged claim, and Nokia's alleged right for indemnification did not survive such ▇▇▇▇ Furthermore, the contract relied on by Nokia contains a mandatory arbitration provision for resolving disputes between the Parties under the contract. As a result, even assuming *arguendo* that Nokia still has a claim for indemnification under the contract, which it does not, the proper forum for the Parties' dispute concerning Nokia's indemnification claim is arbitration, and not this Court. Nokia neither possesses the right for indemnification under the contract nor the right to file an alleged claim arising under the contract in this Court. Therefore, for both these independent and distinct reasons, Broadcom respectfully requests that the Court grant this motion to dismiss.

## II. BACKGROUND

Broadcom is an American fabless semiconductor company that makes products for the wireless and broadband communication industry. Avago Technologies International Sales Pte. Ltd. acquired Broadcom Corporation in 2016 and currently operates Broadcom Corporation as a wholly-owned subsidiary of the merged entity Broadcom Inc. Upon information and belief, Alcatel-Lucent International was a French American global telecommunications equipment company that was acquired by Nokia, a Finnish telecommunications company, in 2016. Upon

1

██████████████

further information and belief, Third-Party Plaintiff Nokia of America Corp. is an affiliated entity of Nokia.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████ The Agreement includes an indemnification provision in ████████ which is Nokia's *sole basis in its pleading* for indemnification by Broadcom. ████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████[1]

███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████████████

---

[1] ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████



As set forth above, the following facts are clear: (1) Nokia's sole basis for claiming indemnification from Broadcom is pursuant to the terms of the Agreement; (2) Broadcom ▮▮▮ the Agreement well before both Nokia's request for indemnification and the events giving rise to such request for indemnification; (3) the Agreement does not contain ▮▮▮

3

███ and (4) to the extent Nokia has a valid claim for indemnification, the Agreement mandates that the Parties resolve this dispute in arbitration.

### III. LEGAL STANDARD

#### A. Federal Rule of Civil Procedure 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipses in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 545, 555. In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Courts accept the plaintiff's well-pleaded allegations as true; however, courts need not accept mere legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). Although the pleading standard is a liberal one, a Court, however, should not "strain to find inferences favorable to the plaintiff[ ]" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (citations omitted). Dismissal is warranted if it is clear that no relief can be granted under

4

any set of facts that plaintiff can prove consistent with the allegations in the complaint. *See Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

      **B.**      **Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3)**

This motion further implicates both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(3) as the Fifth Circuit has not definitively held which provision of the Federal Rules of Civil Procedure is the proper rule for a motion to dismiss based on an arbitration clause. *See McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 n.5 (5th Cir. 2019) ("Our court has not decided whether Rule 12(b)(1) or 12(b)(3) is the proper vehicle for a motion to dismiss based on an arbitration provision."); *Kapai v. Unified Bus. Techs., Inc.*, No. 4:19-CV-00749-RWS-CAN, 2020 WL 3066646, at *2 (E.D. Tex. May 8, 2020) ("Defendants move to dismiss under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) as the Fifth Circuit has not definitively decided which provision is the proper rule for a motion to dismiss based on an arbitration clause[.]") (citations omitted).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) allows a party to challenge the exercise of the Court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Court generally will accept as true all "well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff." *Kumar v. Frisco Indep. Sch. Dist.*, 443 F. Supp.3d 771, 777-78 (E.D. Tex. 2020) (citing *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction[.]" *Laufer v. Mann Hosp., L.L.C.*, No. 20-50858, 2021 WL 1657460, at *1 (5th Cir. Apr. 28, 2021) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

Fed. R. Civ. P. 12(b)(3) allows a party to move for dismissal based on improper venue. Fed. R. Civ. P. 12(b)(3). "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (citations omitted).  And, while the Fifth Circuit has not ruled on which party bears the burden on a Rule 12(b)(3) motion, "most district courts within this circuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum." *Johnson v. Conifer Health Sols.*, 2021 WL 2229734, at *1 (E.D. Tex. May 7, 2021); *see Galderma Labs., L.P. v. Teva Pharms. USA, Inc.*, 290 F.Supp.3d 599, 605 (N.D. Tex. 2017) (collecting cases).

   C. **Federal Arbitration Act**

Congress enacted the Federal Arbitration Act ("FAA") to reverse longstanding judicial hostility to arbitration agreements, and "to place [arbitration] agreements upon the same footing as other contracts."  *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)).  The FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

By enacting the FAA, Congress intended "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 814 F.3d 300, 303 (5th Cir. 2016) (citations omitted).  To effectuate this purpose, Congress specifically authorized enforcement of arbitration agreements through court orders dismissing litigation and requiring that parties engage in the arbitration process.  9 U.S.C. §§ 3, 4.

The FAA, 9 U.S.C. § 1 *et seq.*, governs the impact of litigation pending arbitration. Section 3 of the Act "provides for a stay of legal proceedings whenever the issues in a case are

6

within the reach of an arbitration agreement." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (citing *Midwest Mech. Contractors, Inc. v. Commw. Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986)).  "**This provision is mandatory**: 'If the issues in a case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay.'"  *Hornbeck Offshore (1984) Corp.*, 981 F.2d at 754 (emphasis added) (quoting *Midwest Mech. Contractors*, 801 F.2d at 751).

However, under the FAA, "a district court may dismiss, with prejudice, rather than stay, an action where all the issues are properly subject to arbitration." *SGC Health Grp., Inc. v. Eclinicalworks, LLC*, No. 3:15-CV-4022-M, 2016 WL 2595109, at *2 (N.D. Tex. May 4, 2016); *White v. SoftLayer Techs., Inc.*, No. 3:15-CV-527-M, 2015 WL 5052365, at *6 (N.D. Tex. Aug. 27, 2015).  Dismissal, rather than a stay, is appropriate when "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).  Stated differently, if "retaining jurisdiction and staying the action will serve no purpose[,]" the case should be dismissed rather than stayed.  *The Shipman Agency, Inc. v. TheBlaze Inc.*, 315 F.Supp.3d 967, 976 (S.D. Tex. 2018) (quotations in original) (citations omitted); *see also Alford*, 975 F.2d at 1164 (holding that dismissal of an action may be proper "when *all* of the issues raised in the district court must be submitted to arbitration.") (emphasis in original) (citations omitted).

### IV.   ARGUMENT

The Agreement is the sole basis for Nokia's alleged claim for indemnification against Broadcom.  However, Broadcom ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ any alleged facts giving rise to Nokia's indemnification claim and, as a result, Nokia's third-party Complaint against Broadcom should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Moreover, should Nokia dispute the effect of Broadcom's ▮▮▮▮▮ of the Agreement, then that issue, and any other issues in dispute related to the Agreement, are subject to arbitration and the provisions of the FAA and, as a result, the Court should also dismiss Nokia's third-party Complaint against Broadcom for lack of subject matter jurisdiction and improper venue pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(3), respectively.

### A. Choice of Law Analysis

As noted above, the interpretation of the Agreement is governed by New York law. *See* Ex. B. Under Texas law, choice-of-law provisions in contracts are typically enforced. *See*, *e.g.*, *Rieder v. Woods*, 603 S.W.3d 86, 90 (Tex. 2020); *Crow v. Am. Messaging Serv., L.L.C.*, No. 4:19-CV-600-SDJ, 2020 WL 5554558, at *1 (E.D. Tex. Sept. 17, 2020). Texas law applies Section 187 of the Restatement (Second) of Conflict of Laws to determine whether such a provision is enforceable. *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990); Restatement (Second) of Conflict of Laws § 187 (1971) ("Restatement")).  Under the Restatement, contracting parties' choice-of-law provision will be given effect, unless (1) the chosen state has "no substantial relationship" to the case, or (2) the chosen state's law is "contrary to a fundamental policy" of the forum state and the forum state has a "materially greater interest" in the case than the chosen state. *Id.* (quoting Restatement § 187).

Here, Broadcom has an office in Melville, New York, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and New York has a relationship to the case. *See* Ex. F. Furthermore, this Court has previously enforced choice of law provisions with New York law with similar narrow provisions, when the issue at hand is the construction of the contract. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (effectuating a provision stating that "[it] shall be governed by, and construed in accordance with the internal laws

8

of the State of New York") (quotations in original); *RectorSeal, LLC v. FireBlok IP Holdings, LLC*, No. 4:19-CV-504, 2020 WL 10618213, at *3 (E.D. Tex. Aug. 28, 2020). Thus, New York law applies to the construction of the Agreement.

### B. Broadcom Terminated the Agreement, and Nokia's Right to Seek Indemnification did not Survive Termination

The Court should dismiss Nokia's third-party Complaint against Broadcom because Nokia is attempting to enforce a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In accordance with New York law,[2] it is well settled that "the objective of contract interpretation is to give effect to the *expressed* intentions of the parties; the best evidence of what parties to a written agreement intend is what they say in their writing." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (emphasis in original) (citations omitted). Indeed, if and when a contract is written plainly and unambiguously, "that is, only susceptible to one reasonable interpretation, the court must give effect to the contract as written." *Madeleine L.L.C. v. Street*, 757 F.Supp.2d 403, 405 (S.D.N.Y. 2010) (internal quotations omitted) (citation omitted). Courts must not interpret the terms of a contract in a way that renders its terms either "meaningless or superfluous." *See Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003). "Courts will give effect to the contract's language and the parties must live with the consequences of their agreement. If they are dissatisfied, the time to say so is at the bargaining table." *Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 22 N.Y.3d 413, 424 (App. Ct. 2013) (quotation marks and alterations omitted) (citations omitted). "[I]f parties to a contract omit terms – particularly, terms that are readily found in other, similar contracts – the inescapable conclusion is that the parties intended the omission." *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 560 (App. Ct.

---

[2] As shown in the caselaw cited below, the result of this issue would not be different under Texas law.

9

2014); *see also Pierson v. Empire State Land Assocs.*, 65 A.D.3d 1114, 1115, 886 N.Y.S.2d 411 (A.D.2d 2009) (termination of agreement extinguished indemnification provision where parties agreed that other specific obligations survived, but did not include indemnification obligation); *Griffin Indus., Inc. v. Foodmaker, Inc.,* 22 S.W.3d 33, 36 (Tex. App. 2000) ("We hold that Griffin's indemnity obligation terminated on March 22, 1994. This suit was not filed until January 21, 1997. Unlike the mythical Phoenix, contracts that terminate by their express terms do not rise again. There is no evidence that Foodmaker tried to renew or revive its indemnity agreement"); *Fraco Prod., Ltd. v. Bostonian Masonry Corp.,* 84 Mass. App. Ct. 296, 307, 995 N.E.2d 1125, 1133 (2013) (holding that one indemnification provision was not applicable as the contract had been terminated around a year prior and the indemnification provision did not have a related survivability clause).

As discussed above, the Agreement provides for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ In its Complaint, however, Nokia fails to address ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Pursuant to a plain reading of the Agreement, the Agreement's indemnification provision did not survive ▓▓▓▓▓▓▓▓ and, therefore, Nokia's indemnification claim is invalid as any other interpretation would not give full effect to the Agreement and would render the ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ meaningless. *See* Ex. A, § 2. The Agreement and its subsequent amendments at issue were negotiated at arm's length by well-resourced Parties represented by sophisticated counsel, and the number of amendments and subsequent agreements between the Parties demonstrate both willingness and ability to change the terms of the Agreement as needed. If desired, the Parties could have included ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ But over the course of ▓▓▓▓▓▓▓▓

10

███████████

███████ The Court should not now allow Nokia to improperly amend the express terms of the parties' ████████ Agreement, nor read ██████████████████████████████ *See Novartis Pharma AG v. Amgen Inc.*, No. 19-CV-2993 (PKC), 2020 WL 3056490, at *7 (S.D.N.Y. June 9, 2020) ("The contracts at issue were negotiated at arm's length by well-resourced parties represented by sophisticated counsel. The text of the 2017 Agreement reflects their familiarity with the intricacies of the 2015 Agreement. The parties could have drafted a "Distracting Program" provision specifically for the 2017 Agreement or incorporated section 7.2 by reference, as they did with many other provisions of the 2015 Agreement. They elected not to do so. Amgen's interpretation requires a strained reading of the contracts, one that is not supported by their express terms.").

Broadcom properly ████████████████████████████████████████ and Nokia's claim for indemnification ████████████████ lacks any factual basis. As such, Broadcom respectfully requests that the Court dismiss Nokia's Complaint as it fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### C. The Agreement Requires Arbitration for any Dispute Arising From, or in Connection With, the Agreement

Even if Nokia can allege a legal dispute concerning whether the Agreement (and any indemnification obligation that Broadcom may have to Nokia under the Agreement) has been terminated, the Complaint must still be dismissed for lack of subject matter jurisdiction and/or improper venue pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(3).

As noted above, the Agreement contained an arbitration provision with the following language:

███████████████████████████████████████████████████████████

██████████████

██████████████████████████████████████████

*See* Ex. B.

Thus, ████████████████████████████████████████ including this present dispute, are subject to mandatory arbitration. Furthermore, "the district court has no discretion under Section 3 [of the FAA]" to deny a motion to stay or dismiss based on arbitration." *Hornbeck Offshore (1984) Corp.*, 981 F.2d at 754 (emphasis added) (quoting *Midwest Mech. Contractors*, 801 F.2d at 751). In ruling on a motion under Section 3 of the FAA, "pursuant to the plain wording of that section, a court must . . . 'determine whether there is a written agreement to arbitrate' [and] 'whether any of the issues raised are within the reach of that agreement.'" *Hornbeck Offshore (1984) Corp.*, 981 F.2d at 754 (quoting *Midwest Mech. Contractors*, 801 F.2d at 750).

Here, assuming *arguendo* that the Agreement was still in effect when Nokia sought indemnification from Broadcom under the Agreement (which it is not for the reasons stated above), the Agreement mandates that the Parties' disputes be resolved in arbitration – not this Court. Furthermore, the primary allegation asserted by Nokia – specifically whether TQ Delta's claims against Nokia fall within the scope of the indemnification provision of the Agreement – is a dispute that falls squarely within the four corners of the Agreement. Finally, since this is the sole allegation raised by Nokia in its Complaint against Broadcom, dismissal is appropriate because "retaining jurisdiction and staying the action will serve no purpose." *The Shipman Agency*, 315 F.Supp.3d at 976; *see also Alford*, 975 F.2d at 1164 (holding that dismissal of an action may be proper "when all of the issues raised in the district court must be submitted to arbitration").

Accordingly, Broadcom respectfully requests that the Court dismiss Nokia's Complaint for lack of subject matter jurisdiction and improper venue pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(3).

12

## V. CONCLUSION

For all the reasons set forth above, Broadcom respectfully requests that this Court dismiss Nokia's Third-Party Complaint (Dkt. 70) with prejudice.

Dated: April 14, 2022

Respectfully submitted:

**GILLAM & SMITH, LLP**

*/s/ Melissa R. Smith*
Melissa Richards Smith (State Bar No. 24001351)
303 S. Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

*Counsel for Third-Party Defendants BROADCOM CORP., BROADCOM INC., AND AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD.*



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 14, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3):

*/s/ Melissa R. Smith*
Melissa R. Smith

14