# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.,<br><br>    Defendants. | Civil Action No. 2:21-CV-00310-JRG<br>(Lead Case)<br><br>Civil Action No. 2:21-CV-00309-JRG<br>(Member Case) |
| NOKIA OF AMERICA CORP.,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>BROADCOM CORP., BROADCOM INC., and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD.,<br><br>    Third-Party Defendants. | |

**THIRD-PARTY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

▬▬▬▬▬▬▬

## **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................. 1

II. ISSUES TO BE DECIDED BY THE COURT .................................................................. 1

    A.  Whether Nokia's Complaint Fails to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)? ................................................................................................. 1

    B.  Whether This Court has Subject Matter Jurisdiction over Nokia's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), and/or Whether Venue is Proper Pursuant to Fed. R. Civ. P. 12(b)(3)? .......................................... 1

III. ARGUMENT ..................................................................................................................... 2

    A.  Nokia's Right to Seek Indemnification did Not Survive ▬▬▬▬▬ ................... 2

        1.  Nokia's Caselaw is Distinguishable and Supports Broadcom's Position ........................................................................................................... 2

        2.  Nokia's Remaining Arguments are Unavailing and Based on Strained Interpretations of the Agreement .............................................. 5

        3.  The Parties' Related ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Provides Further Evidence of the Parties' Intent ................................................. 7

    B.  The Sole Agreement at Issue in the Complaint Requires Arbitration for ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ................ 8

IV. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Cottman Avenue PRP Group v. AMEC Foster Wheeler Environmental Infrastructure Inc.*, 439 F.Supp.3d 407 (E.D. Pa. Feb. 13, 2020) .......................................... 3, 4

*Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 22 N.Y.3d 413 (App. Ct. 2013) ................................................................................................. 7

*Kee's Chocolates LLC v. Charles Thompson LLC*, CV-00176/18, 119 N.Y.S.3d 11 (N.Y. Civ. Ct. Sept. 26, 2019) ........................................... 4, 5

*Lake Imaging, LLC v. Franciscan Alliance, Inc.*, No. 21S-CT-478, 182 N.E.3d 203 (Ind. 2022) ........................................................................ 4

*Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336 (5th Cir. 2004) ..................................................................................................... 4

*Nitterhouse Concrete Prods., Inc. v. Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, and Local Union 201B, AFL-CIO CLC*, 763 Fed.Appx. 164 (3d Cir. 2019) ............................................................................................. 4

*Novartis Pharma AG v. Amgen Inc.*, No. 19-CV-2993 (PKC), 2020 WL 3056490 (S.D.N.Y. June 9, 2020) ....................................... 8

*Pierson v. Empire State Land Assocs., LLC, et al.*, 65 A.D.3d 1114, 886 N.Y.S.2d 411 (A.D.2d 2009) ................................................................. 7

*Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549 (App. Ct. 2014) ................................................................................................. 8

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................ i, 1, 10

Fed. R. Civ. P. 12(b)(3) ............................................................................................................ i, 1, 10

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. i, 1

## I.  INTRODUCTION

Third-Party Defendants Broadcom Corp., Broadcom Inc., and Avago Technologies International Sales Pte. Ltd. (collectively, "Broadcom") respectfully submit this Reply in support of Broadcom's Motion to Dismiss (the "Motion") (Dkt. 114).  Third-Party Plaintiff Nokia of America Corp.'s ("Nokia") Opposition to the Third Party-Defendants' Motion to Dismiss ("Opposition") (Dkt. 127) fails to address the deficiencies in its Complaint (Dkt. 70), and instead relies on distinguishable caselaw and facts outside and irrelevant to its pleading.  As detailed in its Motion to Dismiss, Broadcom ▬▬▬▬ the contract forming the sole basis for Nokia's alleged indemnification claim ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, and Nokia's alleged right for indemnification did not survive such ▬▬▬▬.

Furthermore, the sole contract relied on by Nokia in its Complaint contains a mandatory arbitration provision for resolving disputes between the Parties.  Thus, assuming *arguendo* Nokia's arguments regarding indemnification have merit, the proper and sole forum for the Parties' dispute concerning Nokia's indemnification claim is arbitration, not this Court.

Accordingly, Broadcom again respectfully requests that the Court grant its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(3), and Fed. R. Civ. P. 12(b)(6).

## II.  ISSUES TO BE DECIDED BY THE COURT

   A.   **Whether Nokia's Complaint Fails to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)?**

   B.   **Whether This Court has Subject Matter Jurisdiction over Nokia's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), and/or Whether Venue is Proper Pursuant to Fed. R. Civ. P. 12(b)(3)?**

### III. ARGUMENT

#### A. Nokia's Right to Seek Indemnification did Not Survive ▮

Nokia errantly attempts to rewrite the indemnification provision at issue in the parties' ▮ ▮ Application of the indemnification provision is triggered ▮

▮

▮

▮ ▮

▮ As noted by the clear language of the Agreement, however, ▮

▮ ▮

▮

▮ Nokia attempts to disregard this clear language in its Opposition in a strained attempt to create indemnification where none exists. Indeed, as discussed further below: (i) Nokia's cited caselaw fails to support its position; (ii) Nokia's remaining arguments are unavailing and based on a strained interpretation of the Agreement; and (iii) the parties' r▮ provides further evidence that the parties did not intend the indemnification provision at issue in the Agreement to survive.

##### 1. Nokia's Caselaw is Distinguishable and Supports Broadcom's Position

At the outset, it is important to note that ▮

▮

▮ Opposition at 13 ("[n]otably, there is no dispute between Nokia and Broadcom regarding breach of contract"). As such, and as discussed further below, the indemnification clause in the Agreement is distinguishable from provisions in the cases cited by Nokia where the duty to

2

indemnify covered breaches of the representations and warranties underlying the agreement. Thus, the caselaw cited by Nokia supports Broadcom's position because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Nokia relies heavily on the non-binding decision in *Cottman Avenue PRP Group v. AMEC Foster Wheeler Environmental Infrastructure Inc.* Opposition at 8. In *Cottman*, the indemnification provision covered claims "to the extent arising out of, resulting from or in connection with any unlawful, negligent or willful misconduct or omission by the Consultant, its agents, employees or subcontractors, in the performance of this Agreement." Exhibit A at ¶ 9, § 15.1. Furthermore, the indemnifying party agreed to "conduct its activities in a safe and professional manner in compliance with all applicable statutes, ordinances, orders, rules, and regulations of the federal, state and local governments . . . [and] in accordance with accepted professional standards for engineering and scientific practices." *Id.* at ¶ 9, § 12. Based on this, the Court found that the indemnification provision was "more akin to a forum selection clause or other structural provision relating to remedies and dispute resolution" because it was directly tied to the indemnifying party's breach of the warranties underlying the agreement. *Cottman,* 439 F.Supp.3d 407, 436 (E.D. Pa. Feb. 13, 2020).

With respect to the Agreement, the indemnification provision is not structural as i▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Thus, the indemnification provision

3

here is more akin to the indemnification provision at issue in *Nitterhouse Concrete Prods., Inc. v. Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, and Local Union 201B, AFL-CIO CLC*, which was analyzed in the *Cottman* case that was cited by Nokia. As seen in the *Nitterhouse* decision, the Court determined that the subject indemnification provision terminated with the agreement, explaining that "*Nitterhouse's withdrawal liability did not accrue over time while the CBA controlled, but was assessed only after the contract expired.* Thus, the indemnification agreement here is not of the nature of provisions that *de facto* survive expiration." 763 Fed.Appx. 164, 168 (3d Cir. 2019) (emphasis added).

Nokia also cites to *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336 (5th Cir. 2004); *Lake Imaging, LLC v. Franciscan Alliance, Inc.*, No. 21S-CT-478, 182 N.E.3d 203 (Ind. 2022); and *Kee's Chocolates LLC v. Charles Thompson LLC*, CV-00176/18, 119 N.Y.S.3d 11 (N.Y. Civ. Ct. Sept. 26, 2019), but these cases are similarly distinguishable. In *Millennium*, the court held that the termination of the underlying agreement did not extinguish the indemnitor's indemnity obligations because the "injuries at issue here may have occurred prior to the termination of the Contract." 390 F.3d at 341 (5th Cir. 2004). In that case, the injuries that led to the indemnification claim were again directly tied to warranties underlying the agreement, and the injuries were due to the breach of the agreement and occurred pre-termination of the agreement. *Id*. at 338, 341.

Likewise, in *Lake Imaging*, the indemnification provision was triggered based on claims related to the indemnitor's negligence in providing the services and the indemnitor warranted that "all medical services shall be performed and rendered in a competent, efficient, and satisfactory manner." *See* Exhibit B at 6 (citations omitted). As such, while the court maintained the indemnitor's continued obligation to indemnify post termination, it was again due to the fact that

4

the indemnification obligations were tied to the underlying contractual warranties, and the breach of the warranties occurred pre-termination.

Lastly, with respect to *Kee's Chocolates*, this case also involved an indemnity action involving claims of a breach of the underlying "covenant or condition" of the real estate lease, where the breach occurred prior to termination of the lease. *Kee's Chocolates*, 119 N.Y.S.3d 11 (N.Y. Civ. Ct. Sept. 26, 2019). The ruling in *Kee's Chocolates* is informative, however, as it reiterates the importance of strict construction of indemnification clauses under New York law, which Nokia does not dispute is the proper law for analysis of the Agreement. As the court in *Kee's Chocolates* noted:

> Indemnification clauses must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed. The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances. The intent to indemnify and the scope of the indemnification must be clear and unmistakable. . . . The strict standard for interpreting indemnification clauses set forth in *Hooper* requires more than a mere rational interpretation — the intent and scope of indemnification must be unmistakably clear.

*Id.* at *4 (internal citations and quotations omitted). As discussed above, Nokia's claim for indemnification is not based on ▮

### 2. Nokia's Remaining Arguments are Unavailing and Based on Strained Interpretations of the Agreement

Nokia incorrectly argues that the ▮ demonstrate that the parties

5

▇▇▇▇▇▇▇▇▇▇▇▇

intended the indemnification provision to survive ▇▇▇▇▇ (Opposition at 10-11), but this is a twisted interpretation of the Agreement.

As a threshold matter, Nokia's first argument is flawed because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

With this in mind, Nokia's argument regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is inapposite. Rather, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Compare* Opposition at 10-11, *with* Dkt. 114-2 at § 17.

Nokia also argues that because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ it is evidence of Broadcom's intent to have its intellectual property indemnification obligations survive post ▇▇▇▇▇▇ *See* Opposition at 10 (emphasis omitted). Nokia fails to address, however, the fact that this ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Thus, the very presence of this ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See*

6

*Pierson v. Empire State Land Assocs., LLC, et al.,* 65 A.D.3d 1114, 1115, 886 N.Y.S.2d 411 (A.D.2d 2009) (termination of agreement extinguished indemnification provision where parties agreed that other specific obligations survived but did not include indemnification obligation).

Therefore, Nokia's arguments regarding the parties' intent based on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ are unavailing, and the court should grant the Motion to Dismiss because it was the parties' clear intent that the indemnification provision did not survive ▇▇▇▇▇▇▇▇ of the Agreement. *See Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 22 N.Y.3d 413, 424 (App. Ct. 2013) ("Courts will give effect to the contract's language and the parties must live with the consequences of their agreement. If they are dissatisfied, the time to say so is at the bargaining table.") (quotation marks, citations, and alterations omitted).

### 3. The Parties' Related ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Provides Further Evidence of the Parties' Intent

Although it is not a basis for indemnification, because Nokia's Opposition raises the parties' intent into dispute, it is instructive to review ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ As seen in Exhibit C to the Motion to Dismiss (Dkt. 114-4), ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Exhibit C, §§ 6, 9. However, in the case of the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In other

words, ███████████████████████████████████████████████████

███████████████████████████████████████

Clearly the parties did not intend to have the indemnification provision of the Agreement survive ██████████ because they ████████████████████████████████████████

██████████████████████████ *See Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 560 (App. Ct. 2014) ("[I]f parties to a contract omit terms – particularly, terms that are readily found in other, similar contracts – the inescapable conclusion is that the parties intended the omission."); *see also Novartis Pharma AG v. Amgen Inc.*, No. 19-CV-2993 (PKC), 2020 WL 3056490, at *7 (S.D.N.Y. June 9, 2020) ("The contracts at issue were negotiated at arm's length by well-resourced parties represented by sophisticated counsel. The text of the 2017 Agreement reflects their familiarity with the intricacies of the 2015 Agreement. The parties could have drafted a 'Distracting Program' provision specifically for the 2017 Agreement or incorporated section 7.2 by reference, as they did with many other provisions of the 2015 Agreement. They elected not to do so. Amgen's interpretation requires a strained reading of the contracts, one that is not supported by their express terms.").

    **B.**    **The Sole Agreement at Issue in the Complaint Requires Arbitration for ███**
███████████████████████████████████████████████

Even if Nokia can allege a legal dispute concerning whether the Agreement (and any indemnification obligation that Broadcom may have to Nokia under the Agreement) has been ██████████ Nokia's Complaint must still be dismissed pursuant to the Agreement's arbitration provision as stated in the Motion. While Nokia argues against arbitration in its Opposition, these arguments fail because they focus on the wrong agreement and contain factual inaccuracies.

With respect to the proper agreement at issue, Nokia's Complaint pled that Nokia's sole basis for indemnity arises from ████████████████████████████ (the "Agreement" as defined

8

▮▮▮▮▮▮▮▮▮▮

and used herein), and in its Opposition, Nokia admits its indemnification claim is governed by the Agreement. *See* Complaint at ¶¶ 18-20; Opposition at 2.  Paradoxically, however, Nokia raises ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opposition at 12-16.  But the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Furthermore, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Thus, as Nokia's sole basis for indemnity is the Agreement, and as the parties' dispute solely involves the applicability and interpretation of the terms of the Agreement, the arbitration provision from the Agreement controls and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not relevant to the present dispute.  Therefore, Nokia's arguments in its Opposition regarding the arbitration provision of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are irrelevant and misleading, as they do not address Broadcom's claims that this Court must dismiss the complaint based on the arbitration provision of the Agreement.

With respect to factual inaccuracies, Nokia's counsel argues that the parties could have used ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9



Opposition at 12. But the arbitration provision of the Agreement in dispute says just that: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Nokia also attempts to argue that the parties "do not dispute the applicability or terms of the ▇▇▇ . . . and thus there is no contractual dispute to resolve." Opposition at 12. However, Nokia's statement comes after 11 pages of argument disputing the effects of the ▇▇▇▇▇▇ and the specific terms, of the Agreement. While Nokia does not dispute that Broadcom has ▇▇▇▇▇▇ the Agreement, it takes issue with the effects of that ▇▇▇▇▇▇ which inarguably is a dispute ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Compare* Dkt. 114-2 at § 21, *with* Opposition at 13 ("Nokia's claim does not invoke the arbitration clause because neither party has identified any dispute regarding the terms of the agreement.").

Thus, as Nokia has raised a legal dispute concerning the interpretation of the Agreement and whether any indemnification obligation that Broadcom may have to Nokia under the Agreement has been ▇▇▇▇▇▇ the Complaint still must be dismissed for lack of subject matter jurisdiction and/or improper venue pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(3).

### IV. CONCLUSION

For all the reasons set forth above, Broadcom respectfully requests that this Court grant its Motion to Dismiss (Dkt. 114) and dismiss Nokia's Third-Party Complaint (Dkt. 70) with prejudice.

Dated: May 5, 2022

Respectfully submitted:

**GILLAM & SMITH, LLP**

<u>/s/Melissa R. Smith</u>
Melissa Richards Smith (State Bar No. 24001351)
303 S. Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

*Counsel for Third-Party Defendants*
*BROADCOM CORP., BROADCOM INC., AND*
*AVAGO TECHNOLOGIES INTERNATIONAL*
*SALES PTE. LTD.*

11



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 5, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3):

                        */s/ Melissa R. Smith*
                        Melissa R. Smith