# EXHIBIT B

Filed: 11/2/2020 5:13 PM

IN THE INDIANA COURT OF APPEALS
Case No. 20A-CT-1490

LAKE IMAGING, LLC,

Appellant/Cross-Appellee (Defendant below),

v.

FRANCISCAN ALLIANCE, INC.,

Appellee/Cross-Appellee (Plaintiff below),

and

PROASSURANCE INDEMNITY COMPANY, INC.,

Appellee/Cross-Appellant (Defendant below).

Appeal from the Johnson Superior Court

Cause No. 41D04-1810-CT-00157

Hon. Marla K. Clark, Judge

---

**BRIEF OF APPELLEE/CROSS-APPELLANT PROASSURANCE INDEMNITY COMPANY, INC.**

---

John David Hoover (7945-49)
jdhoover@hooverhullturner.com
Jason L. Fulk (24890-53)
jfulk@hooverhullturner.com
Hoover Hull Turner LLP
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989
Tel: (317) 822-4400
Fax: (317) 822-0234

Attorneys for Appellee/Cross-Appellant, ProAssurance Indemnity Company, Inc.

## TABLE OF CONTENTS

Table of Contents ........ 2
Table of Authorities ........ 3
I. Statement of Issues ........ 5
II. Statement of Case ........ 6
III. Statement of Facts ........ 9
  A. The Treatment of Joseph P. Shaughnessy ........ 9
  B. The ProAssurance Policy ........ 9
  C. The Medical Malpractice Lawsuit ........ 10
    1. The Medical Review Panel Proceeding ........ 10
    2. The Lake Superior Court Complaint ........ 11
    3. Franciscan's Summary Judgment Motions ........ 12
    4. The Collusive Settlement ........ 13
IV. Summary of Argument ........ 14
V. Argument ........ 17
  A. Standard of Review ........ 17
  B. ProAssurance has no duty to indemnify Lake Imaging ........ 18
    1. The Insuring Agreement does not cover contractual liability. ........ 18
    2. The Assumed Liability Exclusion precludes coverage. ........ 21
    3. The exception to the Assumed Liability Exclusion does not apply. ........ 22
    4. Franciscan was in the best position to protect itself from loss. ........ 30
  C. Lake Imaging is not liable to Franciscan; therefore, there is no liability for ProAssurance to cover. ........ 31
    1. Franciscan's claims against Lake Imaging are time-barred. ........ 32
    2. Franciscan has no right to be indemnified for a voluntary payment. ........ 41
VI. Conclusion ........ 43
Word Count Certificate ........ 44
Certificate of Service ........ 44

# TABLE OF AUTHORITIES

Cases

*Am. Family Ins. Co. v. Ford Motor Co.*, 857 N.E.2d 971 (Ind. 2006) .................... 6, 13
*Argonaut Great Cent. Ins. Co. v. Saint Paul United Methodist Church*, No. 3:14-CV-875 (CAR), 2017 WL 4221367 (M.D. Ala. June 26, 2017) .................................... 19
*BCS Ins. Co. v. Guy Carpenter & Co.*, 490 F.3d 597 (7th Cir. 2007) .................. 27, 28
*Booth-Kelly Lumber Co. v. Southern Pac. Co.*, 183 F.2d 902 (9th Cir. 1950) ............ 25
*Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 267 P.3d 70 (N.M. Ct. App. 2011) .................................................................................................................. 35
*Coca-Cola Bottling Co.-Goshen, Ind. v. Vendo Co.*, 455 N.E.2d 370 (Ind. Ct. App. 1983) .................................................................................................................. 42
*Columbia/CSA-HS Greater Columbia Healthcare Sys., LP v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 769 S.E.2d 847 (S.C. 2015) ............................... 34
*Columbus Reg'l Hosp. v. Amburgey*, 976 N.E.2d 709 (Ind. Ct. App. 2012) ............... 41
*Douglas by Douglas v. Hugh A. Stallings, M.D., Inc.*, 870 F.2d 1242 (7th Cir. 1989) .................................................................................................................. 38
*Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720 (5th Cir. 1999) .................................................................................................................. 22
*Fid. & Deposit Co. of Maryland v. Edward E. Gillen Co.*, 926 F.3d 318 (7th Cir. 2019) .................................................................................................................. 25
*Garner v. Kempf*, 93 N.E.3d 1091 (Ind. 2018) ........................................................ 38
*Generali - U.S. Branch v. Lachel & Assocs., Inc.*, No. 417CV00168-TWP-DML, 2019 WL 688737 (S.D. Ind. Feb. 19, 2019) ................................................................... 40
*Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co.*, 949 P.2d 337 (Utah 1997) ............... 21
*Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010) ............................................................................................ 21, 22, 23, 24
*Havens v. Ritchey*, 582 N.E.2d 792 (Ind. 1991) ................................................... 37, 38
*INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 722 P.2d 975 (Ariz. Ct. App. 1986) 25
*Indiana Ins. Co. v. Kopetsky*, 11 N.E.3d 508 (Ind. Ct. App. 2014) ............................ 21
*Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.*, 578 N.E.2d 669 (Ind. 1991) .......................................................................................................... 26, 30
*Indianapolis-Marion County Pub. Library v. Charlier Clark & Linard, PC*, 929 N.E.2d 838 (Ind. Ct. App. 2010), *trans. denied* ..................................................... 26
*J.A. St. & Assocs., Inc. v. Bitco Gen. Ins. Corp.*, No. 17-0079, 2019 WL 1949710 (W. Va. May 1, 2019) .................................................................................................. 23
*Klepper v. ACE Am. Ins. Co.*, 999 N.E.2d 86 (Ind. Ct. App. 2013) ............................ 30
*Lovewell v. Physicians Ins. Co. of Ohio*, 679 N.E.2d 1119 (Ohio 1997) ............... 19, 20
*McClish v. Niagara Mach. & Tool Works*, 266 F. Supp. 987 (S.D. Ind. 1967) ... 26, 27, 28, 29
*McNamara v. Benchmark Ins. Co.*, 261 So. 3d 213 (Ala. 2017) .......................... 36, 37
*Metz as Next Friend of Metz v. Saint Joseph Reg'l Med. Ctr.-Plymouth Campus, Inc.*, 115 N.E.3d 489 (Ind. Ct. App. 2018) ................................................................ 18, 39

*Mullen v. Cogdell*, 643 N.E.2d 390 (Ind. Ct. App. 1994), *r'hrg denied, trans. denied* ..... 27, 28
*Nw. Nat. Ins. Co. of Milwaukee, Wisconsin v. Lutz*, 71 F.3d 671 (7th Cir. 1995) ..... 25
*Otis v. Madigan*, 115 F. App'x 315 (7th Cir. 2004) ..... 11
*Perkins v. Mem'l Hosp. of S. Bend*, 141 N.E.3d 1231 (Ind. 2020) ..... 17
*Rohrabaugh v. Wagoner*, 413 N.E.2d 891 (Ind. 1980) ..... 38
*Saylor v. Reid*, 132 N.E.3d 470 (Ind. Ct. App. 2019) ..... 40
*Scottsdale Ins. Co. v. Great Am. Assur. Co.*, 610 S.E.2d 558 (Ga. Ct. App. 2005) ..... 19
*Stafford v. Szymanowski*, 13 N.E.3d 890 (Ind. Ct. App. 2014) ..... 16, 41
*Sword v. NKC Hosp., Inc.*, 714 N.E.2d 142 (Ind. 1999) ..... 28, 29, 30
*Uldrych v. VHS of Illinois, Inc.*, 942 N.E.2d 1274 (Ill. 2011) ..... 35
*Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456 (7th Cir. 2019 ..... 22
*Vernon Fire & Cas. Ins. Co. v. Graham*, 336 N.E.2d 829 (Ind. Ct. App. 1975) ..... 16, 42
*Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 30 F. Supp. 3d 792 (S.D. Ind. 2014) ..... 22
*Walker v. Knight*, 119 N.E.3d 573 (Ind. Ct. App. 2019), *on reh'g,* 120 N.E.3d 1157 (Ind. Ct. App. 2019), *trans. denied* ..... 10
*Winona Mem'l Hosp., Ltd. P'ship v. Kuester*, 737 N.E.2d 824 (Ind. Ct. App. 2000) ..... 33
*Zeller v. AAA Ins. Co.*, 40 N.E.3d 958 (Ind. Ct. App. 2015) ..... 20

Statutes

Ind. Code § 34-11-2-3 ..... 8, 14, 32, 40
Ind. Code § 34-18-7-1 ..... 14, 23, 36, 39
Ind. Code § 34-18-8-4 ..... 33

Rules

Ind. R. Evid. 201 ..... 6, 10, 11, 13
Ind. Trial R. 12(B)(1) ..... 34
Ind. Trial R. 12(B)(6) ..... 34
NMRA, Rule 12-405 ..... 35

Treatises

72 C.J.S. *Principal and Surety* § 248 (Dec. 2019 supp.) ..... 26
74 Am. Jur. 2d *Suretyship* § 122 (Nov. 2019 supp.) ..... 26

## I. STATEMENT OF ISSUES

(1) Whether ProAssurance Indemnity Company, Inc. ("ProAssurance"), a medical professional liability insurer, is entitled to a declaration that it has no duty to indemnify an insured, or a party claiming through an insured, for the insured's contractual liability to a third party?

(2) Whether ProAssurance's insured, Lake Imaging, LLC ("Lake Imaging"), was entitled to summary judgment on Franciscan Alliance, Inc.'s ("Franciscan") breach of contract claims due to expiration of statute(s) of limitations?

(3) Whether the Indiana Medical Malpractice Act (the "MMA") governs Franciscan's contractual indemnity claim against Lake Imaging?

(4) Whether a trial court lacking subject matter jurisdiction should dismiss a claim under Trial Rule 12(B)(6) when the pleadings clearly show the claim to be time-barred?

(5) Whether a health care provider can be held vicariously liable to a patient for the alleged negligence of its agent-physician when the physician's conduct was never reviewed by a medical review panel and, if not, whether the physician may properly reject the health care provider's demand to be indemnified for a payment it made to settle the vicarious liability claim?

## II. STATEMENT OF CASE

A predecessor of Franciscan Alliance, Inc.,[1] a hospital system, and Lake Imaging, a radiology group, entered into a Physician Agreement in which Lake Imaging agreed to provide radiology services at certain Franciscan facilities. [L.I.App.Vol.2 at 75 ¶ 6 and 79].[2] Under the Physician Agreement, Lake Imaging was an independent contractor. [*Id.* at 81-82 ¶ 1.5]. The Physician Agreement provides in relevant part,

> The Corporation [Lake Imaging] agrees to indemnify and hold the Hospital [Franciscan] harmless from any liability claimed as a result of the Corporation's negligence in the provision of services under this agreement.

[*Id.* at 93 ¶ 5.5]. Lake Imaging also agreed that "all medical services shall be performed and rendered in a competent, efficient, and satisfactory manner[.]" [*Id.* at 86 ¶ 1.15].

Joseph P. Shaughnessy sought treatment from Franciscan between April 19, 2011 and April 25, 2011, and died on the latter date. [*Id.* at 21 ¶¶ 2-3]. Mr. Shaughnessy's sons (the "Shaughnessy Sons") sued Franciscan and others for negligence. [P.App.Vol.2 at 167]. Years later, Franciscan settled the suit "solely on

---

[1] The Physician Agreement was between Lake Imaging and St. Margaret Mercy Healthcare Centers, Inc., which merged into Sisters of St. Francis Health Services, Inc. [P.App.Vol.2 at 86], which changed its name to Franciscan Alliance, Inc. [*id.* at 93]. Courts may take judicial notice of information present in public filings with state agencies. Ind. R. Evid. 201; *Am. Family Ins. Co. v. Ford Motor Co.*, 857 N.E.2d 971, 972 (Ind. 2006). ProAssurance requested the trial court and requests the Court to take judicial notice of these facts.

[2] "L.I.App." refers to Lake Imaging's appendix, while "P.App." refers to ProAssurance's.

the basis of its vicarious liability for the unnamed Lake Imaging radiologists who misinterpreted the CTs[.]" [L.I.App.Vol.2 at 76 ¶ 14].

On July 17, 2018, Franciscan sued Lake Imaging and its liability insurer, ProAssurance, in the Lake Superior Court.[3] [*Id.* at 74]. Franciscan alleged that Lake Imaging breached the Physician Agreement by "failing to provide competent medical care to [Mr. Shaughnessy]" (the "Competent Care Claim") and "failing to indemnify Franciscan for the Settlement Payment" (the "Indemnity Claim"). [*Id.* at 76 ¶ 17]. Franciscan also sought a declaratory judgment that ProAssurance is "responsible for paying any judgment issued" against Lake Imaging. [*Id.* at 77]. ProAssurance counterclaimed for a declaratory judgment that it has no duty to defend or indemnify Lake Imaging in this case. [P.App.Vol.2 at 10-14].

In November 2019, the parties filed motions for summary judgment. ProAssurance argued, *inter alia*, that it had no coverage obligation and that, in any event, Franciscan's claims against Lake Imaging are barred by statutes of limitations and fail because Franciscan is not entitled to indemnity for voluntarily settling a claim for which it had no legal liability. [*Id.* at 52-53]. Lake Imaging made the same arguments. [L.I.App.Vol.2 at 51-69]. Franciscan argued the opposite. [*Id.* at 13-24]. The trial court held a hearing on the motions and took them under advisement. [*Id.* at 13].

[3] The parties agreed to transfer the case to the Johnson Superior Court.

In an *Order on Motions for Summary Judgment* dated May 7, 2020 (the "Summary Judgment Order"), the trial court entered judgment on Franciscan's Competent Care Claim, holding that the claim is barred by Indiana Code § 34-11-2-3, the physician professional liability statute of limitations. [L.I.App.Vol.2 at 39-40 ¶ 9]. The trial court also entered judgment on Franciscan's Indemnity Claim, holding that it lacked subject matter jurisdiction over the claim because it was governed by the MMA and was not first presented to a medical review panel as required by the MMA. [*Id.* at 44-45 ¶ 22]. Finally, the trial court determined that Franciscan's and ProAssurance's declaratory judgment claims against each other were moot and entered final judgment. [*Id.* at 46].

On June 8, 2020, Franciscan filed a *Motion to Correct Error*. [L.I.App.Vol.4 at 12]. Franciscan did not challenge judgment on the Competent Care Claim but instead contended that a trial court lacking subject matter jurisdiction properly could not enter summary judgment on the Indemnity Claim, but must dismiss the claim. [*Id.* at 15-19]. The motion was fully briefed. [*Id.* at 15-51]. ProAssurance requested a substantive ruling on its motion for summary judgment if the trial court granted Franciscan's motion. [*Id.* at 27]. The trial court held a hearing on the motion on July 21, 2020, and took it under advisement. [L.I.App.Vol.2 at 16].

In an *Order on Motion to Correct Error* dated July 30, 2020, the trial court granted Franciscan's motion and vacated the Summary Judgment Order. [*Id.* at 19-32]. It confirmed the entry of judgment in favor of Lake Imaging on the Competent Care Claim based on application of Indiana Code § 34-11-2-3 [*id.* at 23-25] and

dismissed without prejudice the Indemnity Claim for lack of subject matter jurisdiction [*id.* at 25-31]. Finally, the trial court again determined that Franciscan's and ProAssurance's declaratory judgment claims against each other were moot and entered final judgment. [*Id.* at 31]. Lake Imaging and ProAssurance each appealed.

## III. STATEMENT OF FACTS

### A. The Treatment of Joseph P. Shaughnessy

Joseph P. Shaughnessy sought treatment from Franciscan between April 19, 2011 and April 25, 2011. [L.I.App.Vol.2 at 21 ¶ 2]. On each of April 19 and April 23, a CT scan of Mr. Shaughnessy's head was taken and allegedly misread by Lake Imaging. [*Id.* at 21 ¶ 3]. Mr. Shaughnessy was treated by several other physicians, including Edward Fara, M.D., another independent contractor of Franciscan. [P.App.Vol.3 at 87]. Mr. Shaughnessy died on April 25, 2011. [L.I.App.Vol.2 at 21 ¶ 3]. Franciscan did not provide notice to Mr. Shaughnessy at any time between April 19, 2011, and his death that his care would or might be provided by an independent contractor radiologist. [*Id.* at 21 ¶ 4; P.App.Vol.3 at 90-93].

### B. The ProAssurance Policy

Lake Imaging was administratively dissolved on September 29, 2011. [L.I.App.Vol.2 at 21 ¶ 6; P.App.Vol.2 at 96].[4] Lake Imaging purchased from ProAssurance a reporting endorsement relating to Health Care Professional

[4] ProAssurance requested the trial court and requests the Court to take judicial notice of these facts. See note 1 above.

Liability Policy Number MP53621 (the "Policy"). [P.App.Vol.3 at 96 ¶¶ 8-9]. The reporting endorsement provides coverage to Lake Imaging "for liability arising from any **professional incident** that occurs on or after [January 9, 2004] and prior to [January 2, 2012], but which is first reported on or after [January 2, 2012,]" subject to the terms and conditions of the Policy [*id.* at 127], including the Policy's Insuring Agreement [*id.* at 101 (Professional Liability Coverage Part § I)] and applicable coverage exclusions [*id.* at 102-03 (Professional Liability Coverage Part § III)].[5] Exclusion C of the Policy (the "Assumed Liability Exclusion") provides,

> **We** will not pay **damages** because of any of the following, and **we** have no obligation to provide a defense for any claim or suit alleging any of the following: . . . C. Liability assumed by an **insured** under any contract or agreement, whether oral, written or implied, except that this exclusion does not apply to liability that would be imposed on the **insured** by law in the absence of the contract or agreement[.]

[*Id.* at 102 (Professional Liability Coverage Part § III(C))].

### C. <u>The Medical Malpractice Lawsuit</u> [6]

#### *1. The Medical Review Panel Proceeding*

On April 10, 2013, the Shaughnessy Sons filed with the Indiana Department of Insurance a *Proposed Complaint for Medical Malpractice* against Franciscan, Dr. Fara, and others (the "Medical Malpractice Lawsuit"). [P.App.Vol.2 at 167]. The

[5] The Reporting Endorsement simply allows Lake Imaging to extend the date by which it must report a professional incident to obtain coverage, if provided under the terms and conditions of the Policy. [P.App.Vol.3 at 96 ¶ 10].

[6] The Court may, and is requested to, take judicial notice of "the existence of records of a court of this state," including the Medical Malpractice Lawsuit. Ind. R. Evid. 201(a)(2); *Walker v. Knight*, 119 N.E.3d 573, 576 n.4 (Ind. Ct. App. 2019).

Shaughnessy Sons did not name as defendants either Lake Imaging or any radiologist affiliated with Lake Imaging in their *Amended Proposed Complaint for Medical Malpractice*. [*Id.* at 173]. No proposed complaint against Lake Imaging relating to Mr. Shaughnessy's treatment was ever filed with the Indiana Department of Insurance. [P.App.Vol.3 at 230-33].

On or about November 30, 2015, the medical review panel (the "Panel") rendered a 3-0 opinion that the evidence did not support the conclusion that Franciscan failed to meet the standard of care. [*Id.* at 134-44]. One panelist, Garland Byron, M.D., found that Dr. Fara's conduct "denied the patient an approximate 10% chance of survival." [*Id.* at 141]. The Panel did not opine on whether Lake Imaging met the standard of care.[7] [*Id.* at 134-44]. Franciscan's counsel had previously convinced the Panel that "it would be inappropriate for the panel to issue an opinion regarding whether the independent radiologists failed to comply with the standard of care" because "the independent radiologists are not defendants." [*Id.* at 128].

***2. The Lake Superior Court Complaint***

On April 12, 2013, the Shaughnessy Sons filed suit in the Lake Superior Court. [P.App.Vol.2 at 119]. In their *Second Amended Complaint for Medical Malpractice*, they alleged claims against Franciscan, Dr. Fara, and others. [*Id.* at 145]. The

[7] The panel opinion in *Shaughnessy v. Franciscan et al.* and other records of that proceeding are judicially-noticeable and available at www.indianapcf.com by searching with Claim No. 1013712. Ind. Rule Evid. 201; *see also* Otis v. Madigan, 115 F. App'x 315, 316 (7th Cir. 2004) (taking judicial notice of public records of administrative proceedings). ProAssurance requested the trial court and requests the Court to take judicial notice of these facts.

claims against Franciscan were based upon the alleged conduct of numerous persons, including Dr. Fara, unidentified Lake Imaging radiologists, and other Franciscan agents. [*Id.* at 152-53]. The Shaughnessy Sons did not name as defendants either Lake Imaging or any radiologist affiliated with Lake Imaging. [*Id.* at 145].

On or about January 29, 2014, counsel for Franciscan sent a letter to Himanshu Doshi, M.D. "as the registered agent of Lake Imaging," therein acknowledging that "[t]he statute of limitations has run for Plaintiffs [the Shaughnessy Sons] to name the radiologists and/or the Lake Imaging, LLC [sic]." [*Id.* at 98].

### *3. Franciscan's Summary Judgment Motions*

ProAssurance was not notified of the existence of the Medical Malpractice Lawsuit until July 25, 2016, more than three years after it was filed. [P.App.Vol.3 at 95, 129-30]. Before then, Franciscan had already filed two summary judgment motions. On June 23, 2016, Franciscan filed a *Motion for Partial Summary Judgment* "on all of Plaintiffs' allegations against St. Margaret [Franciscan], other than its potential vicarious liability for the unnamed radiologists and/or Dr. Fara." [P.App.Vol.2 at 156, 163 n.1].

On July 20, 2016, Franciscan[8] filed another *Motion for Summary Judgment*, this one together with Dr. Fara, directed to all claims based on his alleged conduct. [*Id.*

[8] Franciscan filed this motion in the name of "Franciscan Medical Specialists," which is one of Franciscan's assumed names. [P.App.Vol.2 at 97]. ProAssurance

at 201]. The motion acknowledged that "there is no genuine issue of material fact as to any alleged negligence of Dr. Fara or Franciscan Medical Specialists *other than an alleged failure to investigate the cause of respiratory compromise after it occurred*, and that nothing Dr. Fara or Franciscan Medical Specialists, [sic] did or failed to do was a factor in any damages alleged by plaintiff *other than loss of an approximate 10% chance of survival*." [*Id.* (emphasis added)].

Franciscan and Dr. Fara supported their motion with an affidavit from Dr. Byron, the Panel member who opined that Dr. Fara's conduct fell *below* the standard of care. Dr. Byron affirmed: "My only concern as to Dr. Fara's care pertains to the question of whether he could or should have investigated the cause of Mr. Shaughnessy's change in respiratory condition after his respiratory arrest." [P.App.Vol.3 at 23 ¶ 6]. Dr. Byron "estimated that Mr. Shaughnessy lost at most a 10% chance of survival [due to Dr. Fara's conduct]." [*Id.* at 23 ¶ 8].

***4. The Collusive Settlement***

On August 23, 2016, the Shaughnessy Sons filed a *Notice to Court* indicating that "Plaintiffs have no objection to an entry of a final judgment order, without further hearing, in St. Margaret's [Franciscan's] favor on all claims in Plaintiffs' Second Amended Complaint . . . , except St. Margaret's potential vicarious liability for unnamed radiologists who interpreted Plaintiffs' decedent's head CT scans." [P.App.Vol.3 at 31]. On September 26, 2016, the Court entered partial summary

requests the Court to take judicial notice of this fact. Ind. R. Evid. 201; *Am. Family*, 857 N.E.2d at 972.

judgment in favor of Franciscan on that basis, extinguishing Franciscan's liability for the conduct of Dr. Fara and all employees and agents of Franciscan *except* Lake Imaging. [*Id.* at 40-41].

Franciscan paid $187,001 to "settle the [Medical Malpractice] Lawsuit solely on the basis of its vicarious liability for the unnamed Lake Imaging radiologists who misinterpreted the CTs[.]" [L.I.App.Vol.2 at 76 ¶ 14]. Franciscan filed this case on July 17, 2018, almost two years after the collusive settlement and more than *seven years* after Mr. Shaughnessy's treatment.

## IV. SUMMARY OF ARGUMENT

Medical professional liability insurers like ProAssurance base an insured Indiana physician's premium on a number of factors, one of which is the risk that the physician will be sued *by a patient for negligent health care* within two years after the date of the negligent act or omission, after which any claim based on the physician's treatment, whether in contract or tort, is barred. Ind. Code § 34-18-7-1; Ind. Code § 34-11-2-3. The bargain ProAssurance struck with Lake Imaging in the Policy confirmed that ProAssurance's risk would be so limited.

While the Policy may have covered a tort claim filed by the Shaughnessy Sons against Lake Imaging (assuming Lake Imaging complied with all Policy terms and conditions), no such claim was ever filed and the two-year limitations period expired. The Policy does not require ProAssurance to cover the contract claims filed by Franciscan against Lake Imaging *seven years after* Mr. Shaughnessy's treatment. The Insuring Agreement does not cover Lake Imaging's contractual liability to

Franciscan, if any, because any such liability would not be "because of injury" (and thus does not constitute "damages" as defined by the Policy) or "because of" the "provision of medical or dental services to a patient of an insured" (and thus did not arise out of a "professional incident" as required by the Policy). Rather, any such liability would be because Lake Imaging signed a contract that reignited liability which the statute of limitations had extinguished.

Even if the Insuring Agreement covered the risk of contractual liability to Franciscan, the Assumed Liability Exclusion would exclude such risk from coverage. Franciscan cannot meet its burden to establish the applicability of the sole exception to the Assumed Liability Exclusion for "liability that would be imposed on [Lake Imaging] by law in the absence of the [Physician Agreement]." The exception does not apply because tort liability cannot be imposed on Lake Imaging as a result of its treatment of Mr. Shaughnessy. Statutes of limitations bar any claim that could have been pursued by or on behalf of Mr. Shaughnessy.

Further, Lake Imaging could not have been liable to Franciscan under its novel common law indemnity theory for three reasons. First, Franciscan's written indemnity agreement with Lake Imaging defeats any claim for common law indemnity it could have asserted in the absence of such agreement. Second, Franciscan's purported liability to the Shaughnessy Sons was not "solely derivative" of Lake Imaging's liability (Lake Imaging could have none due to the expiration of the statute of limitations) or "solely derivative" of Lake Imaging's conduct (Franciscan tendered an expert affidavit establishing the contributory negligence of

its agent Dr. Fara and failed to avail itself of an affirmative defense to vicarious liability, which would have been available had it simply informed Mr. Shaughnessy that his care might be provided by an independent contractor radiologist). And, third, Franciscan was not "free of fault" for those same reasons. Accordingly, the trial court should have declared that ProAssurance has no duty cover any liability Lake Imaging has to Franciscan.

Separately, as discussed on pages 16 through 28 of Lake Imaging's *Appellant's Brief*, which are incorporated by reference herein, Lake Imaging is not liable to Franciscan. The trial court correctly held that Franciscan's Competent Care Claim is barred by the statute of limitations. [L.I.App.Vol.2 at 25 ¶ 9]. Whether the trial court had subject matter jurisdiction over Franciscan's Indemnity Claim or not, it should have held that this claim was also time-barred. And, if the trial court had jurisdiction, it also should have held that Lake Imaging has no duty to indemnify Franciscan for voluntarily paying a claim for which it was not liable. *Vernon Fire & Cas. Ins. Co. v. Graham*, 336 N.E.2d 829, 830 (Ind. Ct. App. 1975). Franciscan could not have been held vicariously liable for Lake Imaging's conduct because the Panel never reviewed it. *See Stafford v. Szymanowski*, 13 N.E.3d 890, 896-97 (Ind. Ct. App. 2014), *trans. granted, opinion vacated,* 25 N.E.3d 746 (Ind. 2015), and *aff'd in part, vacated in part,* 31 N.E.3d 959 (Ind. 2015). Because Lake Imaging is not liable, ProAssurance has no liability to cover.

## V. ARGUMENT

### A. Standard of Review

The trial court entered summary judgment on one of Franciscan's claims against Lake Imaging and dismissed the other for lack of subject matter jurisdiction pursuant to Trial Rule 12(B)(1). It declined to rule on ProAssurance's arguments.

This Court is to "review summary judgment de novo, applying the same standard as the trial court: Drawing all reasonable inferences in favor of ... the non-moving parties, summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Perkins v. Mem'l Hosp. of S. Bend*, 141 N.E.3d 1231, 1234 (Ind. 2020) (internal quotation marks omitted). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* at 1234-35 (internal quotation marks omitted). "The burden rests initially on the summary-judgment movant to demonstrate the absence of any genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with contrary evidence showing an issue for the trier of fact." *Id.* at 1235 (internal quotation marks omitted).

"The standard of review for a trial court's grant or denial of a 12(B)(1) motion to dismiss for lack of subject matter jurisdiction is a function of what occurred in the trial court." *Metz as Next Friend of Metz v. Saint Joseph Reg'l Med. Ctr.-Plymouth*

*Campus, Inc.*, 115 N.E.3d 489, 493-94 (Ind. Ct. App. 2018) (quoting *Berry v. Crawford*, 990 N.E.2d 410, 414 (Ind. 2013)) (internal quotation marks omitted). "Where the facts before the trial court are not in dispute, the question of subject matter jurisdiction is one of law" and the trial court's ruling is reviewed de novo. *Id.*

**B. <u>ProAssurance has no duty to indemnify Lake Imaging.</u>**

The trial court did not reach the issue of whether ProAssurance has a duty to cover Lake Imaging for any contractual liability to Franciscan. The trial should have entered summary judgment in favor of ProAssurance. No such duty exists because any such contractual liability (1) would fall outside the Policy's Insuring Agreement and (2) would be expressly excluded by the Assumed Liability Exclusion.

***1. The Insuring Agreement does not cover contractual liability.***

The Policy's Insuring Agreement does not cover Lake Imaging's alleged breaches of the Physician Agreement. The Insuring Agreement provides in relevant part,

> Subject to the applicable limit of liability, **we** agree to pay on behalf of [Lake Imaging] all sums (in excess of any applicable deductible) that [Lake Imaging] shall become legally obligated to pay as **damages** because of any **professional incident** . . . .

[P.App.Vol.3 at 101 (Professional Liability Coverage Part § I)].

First, if Lake Imaging is liable to Franciscan, it will not become obligated to pay "damages." The Policy defines "damages" as all amounts of money payable "because of injury, including death." [*Id.* at 100]. If Lake Imaging was negligent (as discussed below, this issue has never been adjudicated), it could have been sued in tort by the Shaughnessy Sons and held liable "because of" patient injury. This hypothetical payment obligation would be "damages," which ProAssurance would have an

obligation to pay under the Policy (assuming Lake Imaging complied with all other Policy terms and conditions). But the Shaughnessy Sons never pursued that now-time-barred claim.

The recovery Franciscan seeks against Lake Imaging is not in tort "because of" patient injury, but instead "because of" Lake Imaging's alleged breach of contract. The phrase "because of injury" does not encompass contract liability, even if the underlying event giving rise to liability is personal injury caused by the breaching party. *Scottsdale Ins. Co. v. Great Am. Assur. Co.*, 610 S.E.2d 558, 560 (Ga. Ct. App. 2005) (affirming summary judgment in favor of insurer; although underlying event giving rise to claim was personal injury, "Great American did not insure against [its insured's] failure to abide by the terms of its lease [indemnity] agreement with [indemnitee]"); *Argonaut Great Cent. Ins. Co. v. Saint Paul United Methodist Church*, No. 3:14-CV-875 (CAR), 2017 WL 4221367, at *7 (M.D. Ala. June 26, 2017) (granting summary judgment in favor of insurer; "Regardless of any 'claim,' allegation, or argument of negligence, St. Paul's indemnity obligation is solely based on the Rental Agreement's unambiguous language in the indemnification provision."); *see also Lovewell v. Physicians Ins. Co. of Ohio*, 679 N.E.2d 1119, 1122 (Ohio 1997) (holding that medical liability insurer properly denied coverage for patient's award of prejudgment interest against negligent physician; although the underlying medical incident was a "but for" cause of the interest award, the interest was awarded not "because of" a medical incident, but "because of" the insured's separate act of failing to make a good faith effort to settle). If ProAssurance

intended to cover breach of contract liability, it would have defined "damages" to include money payable "related to injury, including money payable under an agreement," instead of limiting its obligation to damages payable "because of" injury (and, as explained below, expressly excluding coverage for assumed contractual liability).

Second, even if "damages" included contract liability, any amount Lake Imaging becomes obligated to pay to Franciscan would not be "because of" any "professional incident"—i.e., an act or omission arising out "professional services," which includes "the provision of medical or dental services to a patient of an **insured**, including treatment, making diagnoses and rendering opinions or advice[.]" [P.App.Vol.3 at 100-01]. The payment obligation would be solely "because of" contractual commitments that Lake Imaging assumed in the Physician Agreement and then breached.

Franciscan argued to the trial court that Lake Imaging's breach is covered by the Insuring Agreement because it is "related to" a "professional incident." This argument fails. If ProAssurance intended such expansive coverage, it would have agreed to pay all sums that Lake Imaging became "legally obligated to pay as **damages** *relating to* any **professional incident**." The Insuring Agreement does not say that and thus does not give rise to coverage. *See Lovewell*, 679 N.E.2d at 1122. Courts may not rewrite insurance policies but must enforce the terms agreed upon by the parties. *Zeller v. AAA Ins. Co.*, 40 N.E.3d 958, 961-62 (Ind. Ct. App. 2015).

### 2. *The Assumed Liability Exclusion precludes coverage.*

Even if coverage were available under the Insuring Agreement, the Assumed Liability Exclusion would exclude from coverage any "[l]iability assumed by an **insured** under any contract . . . ." [P.App.Vol.3 at 102 (Professional Liability Coverage Part § III(C))]. Lake Imaging's alleged breaches of the Physician Agreement fall within this exclusion.

"Assumed" liability is "liability originally incurred by a third party but then taken on by another." *Indiana Ins. Co. v. Kopetsky*, 11 N.E.3d 508, 524 (Ind. Ct. App. 2014) (citing Black's Law Dictionary 123 (6th ed. 1990)), *opinion corrected in immaterial part on reh'g,* 14 N.E.3d 850 (Ind. Ct. App. 2014), *trans. granted, opinion vacated,* 26 N.E.3d 612 (Ind. 2015), *trans. vacated,* 27 N.E.3d 1068 (Ind. 2015). Policy exclusions like this are intended to bar coverage for liability incurred by a third party that an insured agrees to assume in a contract, such as when an insured agrees to indemnify a third party. *Id.* at 523; *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010). Indeed, "'liability assumed by the insured under a contract or agreement presents an uncertain risk' which cannot be determined in advance for the purpose of fixing premiums." *Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co.*, 949 P.2d 337, 342 (Utah 1997) (quoting 1 Rowland H. Long, *Law of Liability Insurance* § 107[2], at 1-42.1 (1997)).

Here, Lake Imaging's only potential liability to Franciscan derives from liability incurred by Franciscan due to Lake Imaging's alleged breach of contractual obligations in the Physician Agreement. [L.I.App.Vol.2 at 3 ¶¶ 14-17]. The Assumed

Liability Exclusion precludes coverage of such liability. *E.g., Gilbert*, 327 S.W.3d at 127.

***3. The exception to the Assumed Liability Exclusion does not apply.***

Franciscan contends that it meets the sole exception to the Assumed Liability Exclusion for "liability that would be imposed on [Lake Imaging] by law in the absence of the [Physician Agreement]" (hereafter, the "Exception"). [P.App.Vol.3 at 102 (Professional Liability Coverage Part § III(C))]. It has the burden to prove the Exception applies. *See, e.g., Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 460 n.2 (7th Cir. 2019) (applying Illinois or New York law); *Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 30 F. Supp. 3d 792, 796 (S.D. Ind. 2014) (applying Michigan law), *aff'd sub nom.*, 777 F.3d 415 (7th Cir. 2015); *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999) (applying Texas law; "Once the insurer proves that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion."). This Exception means that an assumed liability exclusion does not apply in "situations in which the insured's liability for damages does not depend solely on obligations assumed in the contract." *Gilbert*, 327 S.W.3d at 128.

Franciscan failed to meet this burden. The Exception does not apply because (a) statutes of limitations bar any tort claim that could have been pursued against Lake Imaging by or on behalf of Mr. Shaughnessy, and (b) common law indemnity liability could not be imposed on Lake Imaging.

a. *Lake Imaging could not have been held liable to the Shaughnessy Sons.*

The Policy was intended to cover Lake Imaging for liability for unintentional breaches of the common law duty of care (negligence) owed to patients like Mr. Shaughnessy. The undisputed evidence establishes that Lake Imaging was never—and never could have been—obligated to pay damages to the Shaughnessy Sons because:

- neither the Panel nor any court ever found that Lake Imaging negligently treated Mr. Shaughnessy [*see* Part III(C) above];
- the Shaughnessy Sons never filed a negligence claim against Lake Imaging or its radiologists [*see id.*]; and
- the statute of limitations applicable to any negligence claim that could have been filed against Lake Imaging expired two years after Mr. Shaughnessy's treatment on April 25, 2011, long before Franciscan settled with the Shaughnessy Sons. Ind. Code § 34-18-7-1.

The Exception does not apply when an insured has an absolute defense to a tort claim of the kind that the insurance policy was intended to cover (medical negligence). *J.A. St. & Assocs., Inc. v. Bitco Gen. Ins. Corp.*, No. 17-0079, 2019 WL 1949710, at *14 (W. Va. May 1, 2019) (holding that exception did not apply, and insurer had no duty to indemnify insured, where only breach of contract was alleged against insured and statute of limitations for tort claims had expired before insured was named as defendant); *Gilbert*, 327 S.W.3d at 135 (holding that exception did not apply where insured had governmental immunity from tort liability and its liability was based solely in contract). Lake Imaging's undisputed statute of limitations defense under Ind. Code § 34-18-7-1 renders the Exception inapplicable.

Whether Lake Imaging *could have* been found to have a breached a duty of care to Mr. Shaughnessy had the Shaughnessy Sons timely sued is irrelevant. "Indemnity under a liability policy depends on the actual facts and adjudicated liability, not possible scenarios that did not occur." *Gilbert*, 327 S.W.3d at 135. The fact that Lake Imaging was never found to have been negligent thus also defeats the Exception. Indeed, liability "would [not] be imposed on [Lake Imaging] by law in the absence of the [Physician Agreement.]" [*See* P.App.Vol.3 at 102 (Professional Liability Coverage Part § III(C))].

*b. Franciscan is not entitled to common law indemnity.*

Franciscan's novel theory that the Exception applies—i.e., that Lake Imaging could have been liable to Franciscan under a common law indemnity theory—fails for at least three independent reasons. First, Franciscan's written indemnity agreement with Lake Imaging defeats any claim for common law indemnity it could have asserted in the absence of such agreement. Second, Franciscan's purported liability[9] to the Shaughnessy Sons was not "solely derivative" of Lake Imaging's liability (again, Lake Imaging could have none due to the expiration of the statute of limitations) or "solely derivative" of Lake Imaging's conduct (Franciscan tendered an expert affidavit establishing the contributory negligence of its agent Dr. Fara and failed to avail itself of an affirmative defense to vicarious liability, which would have been available had it simply informed Mr. Shaughnessy that his care might be

[9] As discussed in Part V(C)(2) below, Franciscan had a meritorious defense to liability in the Medical Malpractice Suit, but failed to raise it.

provided by an independent contractor radiologist). And, third, Franciscan was not "free of fault" for those same reasons.

(1) <u>The indemnity agreement precludes common law indemnity</u>.

First, the indemnity agreement Franciscan bargained for defeats any claim for common law indemnity. *Fid. & Deposit Co. of Maryland v. Edward E. Gillen Co.*, 926 F.3d 318, 326-27 (7th Cir. 2019) (applying Illinois law). "The existence of the indemnity agreement 'precludes inquiry into potential rights and liabilities under implied indemnity and a recovery by the indemnitee, if any, must stem from the contract.'" *Id.; see also, e.g., Nw. Nat. Ins. Co. of Milwaukee, Wisconsin v. Lutz*, 71 F.3d 671, 677 (7th Cir. 1995) ("the existence of a separate indemnification agreement dictates that the rights of the parties will be determined according to that document," not common law principles); *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 722 P.2d 975, 979 (Ariz. Ct. App. 1986) ("Recovery under a contract providing for indemnity obviates any right to recover under the common law theory of implied indemnity since by such an express contract the parties have already themselves determined how and under what circumstances losses shall be allocated."); *Booth-Kelly Lumber Co. v. Southern Pac. Co.*, 183 F.2d 902, 906-07 (9th Cir. 1950) ("the question of liability is not to be determined under any common law obligation apart from the contract. . . . [S]ince the parties have themselves dealt with the question of indemnity in their written contract, we think it is fair to say that they intended it, rather than some general common law rule, to govern their rights and liabilities in this situation."); 72 C.J.S. *Principal and Surety* § 248 (Dec.

2019 supp.) ("Where there is an express indemnification agreement, resort to implied indemnity principles ordinarily will be precluded."); 74 Am. Jur. 2d *Suretyship* § 122 (Nov. 2019 supp.) ("When there is an express contract for indemnity, the rights of the surety are not to be determined by general indemnity principles but by the letter of the contract for indemnity[.]").

(2) Franciscan's liability to the Shaughnessy Sons was not "solely derivative," but arose due to its own operational failures and another agent's contributory negligence.

Second, Franciscan cannot meet the "solely derivative or constructive" liability element of a common law indemnity claim. A tort defendant is entitled to common law indemnity only if its "liability to a third person is *solely derivative or constructive*, and only as against one who has by his wrongful act caused such derivative or constructive liability to be imposed upon the indemnitee." *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.*, 578 N.E.2d 669, 671 (Ind. 1991) (emphasis added).

Derivative liability occurs where a principal has been held negligent under the doctrine of *respondeat superior* only because of some act of his agent. *McClish v. Niagara Mach. & Tool Works*, 266 F. Supp. 987, 989-990 (S.D. Ind. 1967) (applying Indiana law). "Constructive liability arises when a statute or rule of law imposes a nondelegable duty on a party, rendering him liable when he is otherwise without fault." *Indianapolis-Marion County Pub. Library v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 850 n.10 (Ind. Ct. App. 2010) (citing *McClish*, 266 F. Supp. at 990).

Liability is not "solely derivative or constructive" when it arises because of something other than the conduct of the alleged common law indemnitor. For example, the negligence of the party claiming a right to indemnity (the indemnitee) bars the indemnitee from recovering under a common law indemnity theory. *Mullen v. Cogdell*, 643 N.E.2d 390, 400 (Ind. Ct. App. 1994) (reversing denial of summary judgment in favor of defendant on plaintiff's common law indemnity claim); *McClish*, 266 F. Supp. at 991 ("Where the negligent acts of parties concur in producing an injury, . . . they would be joint tort-feasors, in pari delicto, and no right to indemnity would exist."). Further, factors other than the indemnitee's negligence that caused or contributed to liability may defeat common law indemnity liability. *See BCS Ins. Co. v. Guy Carpenter & Co.*, 490 F.3d 597, 603-04 (7th Cir. 2007) ("The liability must be wholly derivative, resulting solely out of the agent's actions."; affirming, under Illinois law, dismissal of implied indemnity claim where insurer's alleged losses did not result "solely" due to reinsurance intermediary's failure to properly procure reinsurance, but due to the poor performance of insurer's warranty programs).

Franciscan's common law indemnity theory is premised on its alleged "vicarious liability" for Lake Imaging's purported negligence. [L.I.App.Vol.2 at 76 ¶ 14]. Lake Imaging was an independent contractor. [*Id.* at 81-82 ¶ 1.5]. A hospital is generally vicariously liable for harm caused by the negligence of independent contractor physicians, but not if it "gives notice to the patient that it is not the provider of care and that the care is provided by a physician who is an independent contractor and

not subject to the control and supervision of the hospital." *Sword v. NKC Hosp., Inc.*, 714 N.E.2d 142, 152 (Ind. 1999).

The trial court found that Franciscan did not provide notice to Mr. Shaughnessy at any time between April 19, 2011 (the date on which Mr. Shaughnessy originally sought treatment), and the date of his death that his care would or might be provided by a radiologist who was an independent contractor of Franciscan. [L.I.App.Vol.2 at 21 ¶ 4, 31 ¶ 24; P.App.Vol.3 at 90-93]. Such notice would have shielded Franciscan from vicarious liability for Lake Imaging's alleged negligence. *Sword,* 714 N.E.2d at 152. Thus, Franciscan's purported liability was not "solely derivative" of Lake Imaging's liability or conduct. Rather, its own operational failure to provide a *Sword* notice was the cause of its liability and precludes it from establishing a right to common law indemnity. *Mullen*, 643 N.E.2d at 400; *McClish*, 266 F. Supp. at 991; *BCS Ins. Co.*, 490 F.3d at 603-04.

A second set of undisputed facts also defeats the common law indemnity theory. Franciscan's own summary judgment evidence in the Medical Malpractice Lawsuit proves that its purported liability to the Shaughnessy Sons was not "solely derivative" of Lake Imaging's alleged conduct.

Dr. Fara was an independent contractor of Franciscan who treated Mr. Shaughnessy. [P.App.Vol.3 at 87]. Franciscan and Dr. Fara filed a *Motion for Summary Judgment* directed to all claims alleged by the Shaughnessy Sons based on his alleged conduct. [P.App.Vol.2 at 201]. Therein, they acknowledged that "there is no genuine issue of material fact as to any alleged negligence of Dr. Fara or

Franciscan Medical Specialists *other than an alleged failure to investigate the cause of respiratory compromise after it occurred*, and that nothing Dr. Fara or Franciscan Medical Specialists, [sic] did or failed to do was a factor in any damages alleged by plaintiff *other than loss of an approximate 10% chance of survival*." [*Id.* (emphasis added)]. They supported this admission with an affidavit from Dr. Byron, a Panel member who opined that Dr. Fara's conduct fell below the standard of care. Dr. Byron affirmed: "My only concern as to Dr. Fara's care pertains to the question of whether he could or should have investigated the cause of Mr. Shaughnessy's change in respiratory condition after his respiratory arrest." [P.App.Vol.3 at 23 ¶ 6]. He "estimated that Mr. Shaughnessy lost at most a 10% chance of survival [due to Dr. Fara's conduct], as is stated in my panel opinion." [*Id.* at 23 ¶ 8].

Franciscan was vicariously liable for Dr. Fara's negligence. *Sword,* 714 N.E.2d at 152. Based on its own evidence, Franciscan faced liability that was partly derivative of Dr. Fara's conduct. Thus, such liability was not "solely derivative" of Lake Imaging's conduct. Franciscan was a joint tortfeasor not entitled to common law indemnity. *McClish*, 266 F. Supp. at 991. The fact that Franciscan spearheaded a collusive summary judgment to eliminate the liability of everyone but Lake Imaging and thereafter settled with the Shaughnessy Sons (*see* Parts III(C)(3) and (4) above) does not erase its own summary judgment evidence of Dr. Fara's negligence or entitle it to pin common law indemnity liability on Lake Imaging.

(3) Franciscan was not "without fault" in Mr. Shaughnessy's death.

Third, the foregoing evidence established that Franciscan was *not* "free of fault." "Absent an adequate express contract, a party seeking indemnification from another must be free of fault." *Indianapolis Power & Light Co.*, 578 N.E.2d at 671. Dr. Fara's negligence was imputed to Franciscan. *Sword,* 714 N.E.2d at 152. And Franciscan's admitted failure to use a simple prophylactic—notice to Mr. Shaughnessy that Lake Imaging was an independent contractor—infected it with vicarious liability. *Id.*

* * * *

For the foregoing reasons, the Assumed Liability Exclusion applies and defeats coverage. Thus, the trial court should have granted summary judgment in favor of ProAssurance.

***4. Franciscan was in the best position to protect itself from loss.***

While Franciscan has contended that it is unfair for it to bear financial responsibility for Mr. Shaughnessy's death, "[a]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability, and [courts] may not extend insurance coverage beyond that provided by the unambiguous language in the contract." *Klepper v. ACE Am. Ins. Co.*, 999 N.E.2d 86, 90 (Ind. Ct. App. 2013), *trans. denied*. "[I]nsurers have the right to limit their coverage of risks and, therefore, their liability by imposing exceptions, conditions, and exclusions." *Id.*

Just as ProAssurance and Lake Imaging were the masters of their own bargain, Franciscan had the ability to bargain for a variety of protections against Lake Imaging's negligence and subsequent insolvency.[10] That Franciscan failed to do so has nothing to do with ProAssurance; the two are not in privity of contract. Franciscan alone apparently chose not to procure its own insurance, withhold "retainage" from payments due Lake Imaging as security, take a security interest in Lake Imaging's assets, or take other steps to protect against that risk. As the trial court observed, one foolproof protection Franciscan failed to secure was simply notifying Mr. Shaughnessy that he would be treated by an independent contractor radiologist. [L.I.App.Vol.2 at 31 ¶ 24]. In equity, ProAssurance cannot be held responsible for Franciscan's operational failures. At law, the Policy does not allow it.

### C. Lake Imaging is not liable to Franciscan; therefore, there is no liability for ProAssurance to cover.

Franciscan is not entitled to recover from Lake Imaging because (1) its claims are barred by statutes of limitations and (2) it was not liable to the Shaughnessy Sons but voluntarily paid them anyway. Thus, there is no liability for ProAssurance to cover.

[10] Lake Imaging was administratively dissolved in September 2011. [L.I.App.Vol.2 at 21 ¶ 6; P.App.Vol.2 at 96].

### *1. Franciscan's claims against Lake Imaging are time-barred.*

The trial court correctly held that Franciscan's Competent Care Claim is barred by the statute of limitations,[11] but erred by not applying the same analysis to the Indemnity Claim. Instead, the trial court held that it lacked subject matter jurisdiction over the Indemnity Claim because the claim is governed by the MMA and was not presented to a medical review panel, and dismissed the claim solely on that basis. Whether or not the trial court had subject matter jurisdiction, it should have disposed of the Indemnity Claim.

#### *a. The trial court correctly held that the Competent Care Claim is time-barred.*

The trial court correctly found that the Competent Care Claim is premised on Franciscan's "belief that Lake Imaging committed professional malpractice" and held that it is barred by the professional liability statute of limitations. [L.I.App.Vol.2 at 25 ¶ 9]. This statute provides,

> An action of any kind for damages, whether brought in contract or tort, based upon professional services rendered or which should have been rendered, may not be brought, commenced, or maintained, in any of the courts of Indiana against physicians, dentists, surgeons, hospitals, sanitariums, or others, unless the action is filed within two (2) years from the date of the act, omission, or neglect complained of.

Ind. Code § 34-11-2-3.

The latest date on which Lake Imaging could have committed negligence in connection with its treatment of Mr. Shaughnessy was April 25, 2011, the date he

[11] Franciscan did not challenge this ruling in its *Motion to Correct Error*. [*See* L.I.App.Vol.4 at 15-19, 40-51].

died. [L.I.App.Vol.2 at 21 ¶ 3]. Thus, the time for Franciscan to sue Lake Imaging in contract based on its treatment of Mr. Shaughnessy expired no later than April 25, 2013. Franciscan sued on July 17, 2018. [*Id.* at 74]. This was five years too late. Accordingly, the trial court correctly entered summary judgment in favor of Lake Imaging. [*Id.* at 25 ¶ 9].

b. *The trial court erred by failing to hold that the Indemnity Claim is time-barred.*

The trial court undertook no statute of limitations analysis with respect to the Indemnity Claim.[12] It held that the claim was governed by the MMA and that it lacked subject matter jurisdiction over the Indemnity Claim because a medical review panel never reviewed Lake Imaging's conduct.[13] [L.I.App.Vol.2 at 29-30 ¶¶ 19-22]. The trial court acknowledged that whether an indemnity claim based on alleged medical malpractice must be submitted to a review panel is a novel issue in Indiana and sided with courts in several other jurisdictions which answered the question in the affirmative. [*Id.* at 27-30 ¶¶ 14-22]. Accordingly, the trial court

[12] The trial court initially analyzed whether the Indemnity Claim was barred by the MMA statute of limitations in its Summary Judgment Order. [L.I.App.Vol.2 at 40-41]. However, the court vacated this Order in its Motion to Correct Error Order. [*Id.* at 19].

[13] The MMA provides in relevant part, "[A]n action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel . . . ; and (2) an opinion is given by the panel." Ind. Code § 34-18-8-4; *Winona Mem'l Hosp., Ltd. P'ship v. Kuester*, 737 N.E.2d 824, 827 (Ind. Ct. App. 2000) ("Submission of a proposed complaint to a medical review panel is a condition precedent to filing a medical malpractice claim in Indiana."). It is undisputed that Franciscan did not present a proposed complaint against Lake Imaging to a review panel.

dismissed the Indemnity Claim pursuant to Trial Rule 12(B)(1). The trial court should have held that the Indemnity Claim was time-barred whether subject matter jurisdiction existed or not.

If the trial court correctly held that it lacks subject matter jurisdiction over the Indemnity Claim, then dismissal under Trial Rule 12(B)(1) was proper.[14] However, to further judicial economy and prevent the needless waste of party and public resources, it should have gone further to prevent Franciscan from making good on its threat to further elongate this case by filing a proposed complaint with a medical review panel nearly a decade after Mr. Shaughnessy's treatment. [L.I.App.Vol.4 at 46 n.5 ("Franciscan intends to follow the Court's directive and obtain a formal opinion from a medical review panel before proceeding to seek indemnification from Lake Imaging.")]. It should have dismissed the Indemnity Claim pursuant to Trial Rule 12(B)(6) too.

Indeed, the trial court's finding that the Indemnity Claim is subject to the MMA panel review process necessarily means that the claim also is subject to the two-year MMA statute of limitations. *E.g.*, *Columbia/CSA-HS Greater Columbia Healthcare Sys., LP v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 769 S.E.2d 847 (S.C. 2015) (affirming summary judgment in favor of independent

[14] Lack of subject matter jurisdiction cannot be a basis for summary judgment, and a judgment entered by a court without jurisdiction is void. *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994). When a defect in subject matter jurisdiction over a claim is identified in a summary judgment proceeding, the trial court should treat the pending motion as a Rule 12(B)(1) motion to dismiss insofar as that claim is concerned. *See id.* at 1287.

contractor physician and his medical malpractice insurer because hospital's equitable indemnification claim was barred by South Carolina's medical malpractice statute of repose); *Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 267 P.3d 70 (N.M. Ct. App. 2011), *cert. granted*, 289 P.3d 1254 (N.M. 2011)[15] (holding that hospital's third-party indemnity actions against two physicians were barred by the New Mexico medical malpractice statute of limitations where gravamen of actions was allegation that physicians caused the patient's injury; "In effect, Medical Center's equitable indemnification claim exposes Doctors to the identical liability to which they were subject under Martinez's claims. Martinez's claims were properly dismissed as untimely. To permit Medical Center's claim to proceed where [patient] Martinez's claim could not, would, in our view, elevate form over substance and frustrate the underlying concerns which motivated our Legislature to enact the MMA and Section 41-5-13—that is, relieving insurers and health care providers from the uncertainty posed by stale malpractice claims."); *Uldrych v. VHS of Illinois, Inc.*, 942 N.E.2d 1274 (Ill. 2011) (affirming dismissal of hospital's counterclaim for indemnity against physicians under the Illinois medical malpractice statute of repose; "We find the legislature's intent clear and unmistakable: it meant for *all* actions for damages 'arising out of patient care' to be

[15] In New Mexico, a Supreme Court order granting a petition for a writ of certiorari "does not affect the precedential value of an opinion of the Court of Appeals, unless otherwise ordered by the Supreme Court." NMRA, Rule 12-405. No such order was entered in *Christus*. The writ was quashed. 294 P.3d 447 (N.M. 2012).

subject to the limitations of section 13-212, including contribution and indemnity claims[.]"); *see also McNamara v. Benchmark Ins. Co.*, 261 So. 3d 213, 219 (Ala. 2017) (holding that the Alabama Medical Liability Act's statute of repose applied to indemnity action by pharmacy's liability insurer against pharmacist to recover amounts paid to settle medical malpractice action).

The MMA statute of limitations bars the Indemnity Claim. It provides in relevant part,

> A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect . . . .

Ind. Code § 34-18-7-1. By its terms, the statute expressly bars *any* contract claim against a health care provider based on professional services provided unless filed within two years after that act. It does not limit the class of plaintiffs or the class of contract claims to which it applies.

Franciscan sued on July 17, 2018. [L.I.App.Vol.2 at 74]. Franciscan alleged that Lake Imaging committed an act of medical negligence in 2011. [*Id.* at 75 ¶ 12]. Thus, the trial court found that the two-year limitations period could have expired no later than December 31, 2013. [*See id.* at 25 ¶ 9]. A proposed complaint against Lake Imaging relating to Mr. Shaughnessy's treatment was never filed with the Indiana Department of Insurance. [P.App.Vol.3 at 230-33]. These facts and Franciscan's allegations confirm that the trial court should have held that the Indemnity Claim is time-barred.

Franciscan argued that, even if the MMA statute of limitations applies, it timely brought the Indemnity Claim within two years after "the date of the alleged act, omission, or neglect"—which Franciscan contends is the date of Lake Imaging's breach of contract. This statutory construction has been roundly rejected. "[T]he phrase 'act, omission, or failure complained of' refers to the act or omission of the health-care provider that resulted in a medical injury to the patient"—not to the provider's refusal to indemnify. *McNamara*, 261 So. 3d at 219 (holding that Alabama statute began to run from date of physician's alleged negligence).

Further, the public policy underlying the MMA confirms that Franciscan's interpretation is wrong. "The general purpose of a statute of limitation is to encourage the prompt presentation of claims." *Havens v. Ritchey*, 582 N.E.2d 792, 794 (Ind. 1991). "Statutes of limitation find their justification in necessity and convenience rather than in logic." *Id.* "They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." *Id.*

The Indiana Supreme Court "has accepted the legislature's decision that these reasons are even stronger in the medical malpractice context." *Id.* "In addition to addressing the concerns of stale claims and loss of evidence over time common to all litigation, this modified statute of limitations reflects the relatively greater need for a shorter period in which malpractice claims could be commenced." *Douglas by Douglas v. Hugh A. Stallings, M.D., Inc.*, 870

F.2d 1242, 1247-48 (7th Cir. 1989). Indeed, the MMA drafters intentionally departed from exceptions applicable to other statutes of limitations. For example, they "established a shorter period of limitations by reducing the age of majority to six years, *beginning the limitations period with the occurrence of the injury rather than its discovery*, and abandoning the tolling period for unsound mind and absence from the country." *Id.* (emphasis added).

These legislative decisions were intended to protect physicians from increased malpractice claims and encourage them to increase the availability of their services. *Havens*, 582 N.E.2d at 794-95. "The ability to commence an action at an indefinite time in the future would no doubt prevent insurance companies from accurately computing the actuarial risk of future claims and compound the escalation of medical costs." *Douglas*, 870 F.2d at 1248. Thus, "the statute of limitations serves to limit the number of potential claims outstanding." *Id.*

"There can be no doubt that [the MMA statute of limitations] will have harsh application in individual cases. However, a court has no authority to annul a statute because of that fact." *Rohrabaugh v. Wagoner*, 413 N.E.2d 891, 895 (Ind. 1980) (affirming enforcement of statute to defeat claim of minor). "If the legislature writes a statute imposing an onerous outcome, it is not [the judiciary's] job to soften the blow." *Garner v. Kempf*, 93 N.E.3d 1091, 1098 (Ind. 2018).

The MMA does not allow for the inefficiencies that Franciscan seeks to cause in this case—i.e., relitigation of whether all of Franciscan's treating physicians and nurses met the standard of care almost a decade after treatment. The statute forces the issue of a physician's negligence—the central issue in both medical malpractice and most related indemnity claims—to be litigated once before a single judge and jury and efficiently resolved. Thus all claims seeking recovery for such negligence must be filed within two years.

Franciscan had a chance to preserve its indemnity claim against Lake Imaging. As the trial court observed, it could have joined Lake Imaging as a defendant in the underlying Medical Malpractice Lawsuit. [L.I.App.Vol.2 at 31 ¶ 24]. It could have timely filed a third-party claim in the Medical Malpractice Lawsuit. Or, it could have entered an agreement with Lake Imaging to toll the accrual of the limitations period. But it did none of these. Instead, it filed the Indemnity Claim seven years after Lake Imaging's alleged negligence, and five years too late. The claim is time-barred by Indiana Code § 34-18-7-1.

When, as in this case, a court can determine on the pleadings that a claim based on medical negligence was not first presented to a medical review panel within two years after the date of treatment, it may simultaneously dismiss the claim pursuant to Trial Rule 12(B)(1) for lack of subject matter jurisdiction *and* Trial Rule 12(B)(6) for failure to state a claim on which relief may be granted. *Metz as Next Friend of Metz v. Saint Joseph Reg'l Med. Ctr.-Plymouth Campus, Inc.*, 115 N.E.3d 489, 498 (Ind. Ct. App. 2018) (affirming trial court's dismissal under both T.R. 12(B)(1) and

(6); "Because Metz failed to present the claim to a medical review panel and failed to file the claim in a timely manner, the trial court properly dismissed Metz's complaint against Medical Providers."). Thus, even if the trial court lacked jurisdiction, it also should have dismissed the Indemnity Claim pursuant to Trial Rule 12(B)(6). *Id.* at 498. Because repleading would be futile,[16] this Court should remand with instructions to dismiss the Indemnity Claim *with* prejudice to avoid further needless litigation. *See Saylor v. Reid*, 132 N.E.3d 470, 474 (Ind. Ct. App. 2019), *trans. denied*.

On the other hand, if the trial court has subject matter jurisdiction over the Indemnity Claim, then it erred by failing to enter summary judgment in favor of Lake Imaging. Indiana Code § 34-11-2-3 bars the Indemnity Claim. *See Generali - U.S. Branch v. Lachel & Assocs., Inc.*, No. 417CV00168-TWP-DML, 2019 WL 688737, at *6 (S.D. Ind. Feb. 19, 2019) (dismissing indemnity claim based on a professional services agreement; "The Court concludes that a two-year limitation period is appropriate in this case involving claims for injury to personal property arising from the provision of professional services. Indiana Code § 34-11-2-3 set a two-year limitation for bringing an action in contract or tort based on professional services rendered . . . .").

[16] Although Franciscan may contend that it may replead as of right, *see* Ind. T.R. 12(B), it cannot change the date of Mr. Shaughnessy's death or the date it filed this action.

### 2. *Franciscan has no right to be indemnified for a voluntary payment.*

If the trial court has subject matter jurisdiction over the Indemnity Claim, then summary judgment on that claim also is proper because the undisputed facts show that Franciscan voluntarily settled with the Shaughnessy Sons instead of asserting a meritorious defense. [L.I.App.Vol.2 at 76 ¶ 14]. As explained on pages 22 through 28 of Lake Imaging's Appellant's Brief, "a health care provider [cannot] be held vicariously liable for the perceived acts of medical malpractice committed by its agent-physician when the physician's conduct was never reviewed by the medical review panel." *See Stafford v. Szymanowski*, 13 N.E.3d 890, 896-97 (Ind. Ct. App. 2014), *trans. granted, opinion vacated,* 25 N.E.3d 746 (Ind. 2015), and *aff'd in part, vacated in part,* 31 N.E.3d 959 (Ind. 2015).

This Court's opinion in *Stafford* was vacated when the Supreme Court granted transfer. The Supreme Court affirmed summary judgment in favor of the hospital on a ground not reached by this Court (lack of evidence of an agency relationship between the hospital and physician). 31 N.E.3d at 964. Importantly, the Supreme Court did not reject this Court's reasoning regarding the consequences of the plaintiff's failure to bring the physician's conduct before a review panel. *Id.* Thus, this Court's opinion in *Stafford* is persuasive authority that should be followed in this case.[17]

---

[17] In *Columbus Reg'l Hosp. v. Amburgey*, 976 N.E.2d 709, 716 (Ind. Ct. App. 2012), *trans. denied*, this Court held that "the running of a statute of limitations with respect to a physician does not preclude a complaint against a hospital on a

Here, Franciscan's counsel convinced the Panel that "it would be inappropriate for the panel to issue an opinion regarding whether the independent radiologists failed to comply with the standard of care" because "the independent radiologists are not defendants." [P.App.Vol.3 at 128]. Accordingly, the Panel did not opine on whether Lake Imaging's conduct met the standard of care. [*Id.* at 134-44].

Franciscan had a meritorious *Stafford* defense to the Shaughnessy Sons' claim based on the lack of such opinion. Instead of asserting that defense, Franciscan settled. [L.I.App.Vol.2 at 76 ¶ 14]. The indemnity clause in the Physician Agreement requires Lake Imaging to indemnify Franciscan only "from any liability" [*id.* at 93 ¶ 5.5)], not from voluntary settlement payments. Because Franciscan was not liable to the Shaughnessy Sons, it is not entitled to indemnity. *Coca-Cola Bottling Co.-Goshen, Ind. v. Vendo Co.*, 455 N.E.2d 370, 374 (Ind. Ct. App. 1983) ("If the indemnity claimant is not liable to the original plaintiff, *a fortiori* he has no claim for indemnity."); *Vernon Fire & Cas. Ins. Co. v. Graham*, 336 N.E.2d 829, 830 (Ind. Ct. App. 1975) ("If Lessor were not legally responsible for the injuries and nonetheless paid for them, the Lessor would not be entitled to indemnification. Indemnity does not cover losses for which the indemnitee is not liable, but which he voluntarily pays."). Therefore, if the trial court had subject matter jurisdiction, Lake Imaging was entitled to summary judgment.

---

theory of vicarious liability and apparent authority." It did not address whether a hospital can be held vicariously liable for a physician's conduct when a panel has never reviewed it.

## VI. CONCLUSION

This Court should reverse the trial court's denial of ProAssurance's motion for summary judgment as moot and enter summary judgment in favor of ProAssurance. It also should affirm summary judgment in favor of Lake Imaging on the Competent Care Claim and either dismiss or enter summary judgment on the Indemnity Claim based on the expiration of the statute of limitations.

Respectfully submitted,

*/s/ Jason L. Fulk*
John David Hoover (7945-49)
jdhoover@hooverhullturner.com
Jason L. Fulk (24890-53)
jfulk@hooverhullturner.com
Hoover Hull Turner LLP
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989
Tel: (317) 822-4400
Fax: (317) 822-0234

Attorneys for Appellee/Cross-Appellant,
ProAssurance Indemnity Company, Inc.

## WORD COUNT CERTIFICATE

I verify that this brief contains no more than 14,000 words as computed by Microsoft Word.

*/s/ Jason L. Fulk*
Jason L. Fulk

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed with the Indiana Court of Appeals via the IEFS on November 2, 2020, and thereby served on the following through E-Service using the IEFS on the same date:

Shannon L. Noder
Julie A. Rosenwinkel
KRIEG DEVAULT LLP
snoder@kdlegal.com
jrosenwinkel@kdlegal.com

Libby Y. Goodknight
KRIEG DEVAULT LLP
lgoodknight@kdlegal.com

Robert J. Palmer
MAY OBERFELL LORBER
rpalmer@maylorber.com

*/s/ Jason L. Fulk*
Jason L. Fulk

HHT 1148619_1.148-711