# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **TQ DELTA, LLC,**<br>      *Plaintiff*,<br>   v.<br><br>**COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,**<br>      *Defendants*. | CIV. A. NO. 2:21-CV-310-JRG<br>(Lead Case) |
| **TQ DELTA, LLC,**<br>      *Plaintiff*,<br>   v.<br><br>**NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.,**<br>      *Defendants*. | CIV. A. NO. 2:21-CV-309-JRG<br>(Member Case) |
| **NOKIA OF AMERICA CORP.,**<br>      *Third-Party Plaintiff*,<br>   v.<br><br>**BROADCOM CORP., BROADCOM INC., and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD.,**<br>      *Third-Party Defendants*. | |

### NOKIA'S SUR-REPLY IN OPPOSITION TO THE THIRD-PARTY DEFENDANTS' MOTION TO DISMISS

████████████████████████████████████

## TABLE OF CONTENTS

I.   Introduction ................................................................................................................... 1

II.  Issue To Be Decided by the Court ................................................................................ 2

III. Argument ....................................................................................................................... 3
     A.   Nokia's Right to Seek Indemnification Survives ██████ ............................. 3
     B.   Broadcom and Nokia's Dispute Is Not Subject to Arbitration ............................. 8

IV.  Conclusion ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cottman Ave. PRP Grp. v. AMEC Foster Wheeler Env'tl Infrastructure Inc.*,
  439 F. Supp. 3d 407 (E.D. Penn. Feb. 13, 2020) .............................................................. passim

*CP III Rincon Towers, Inc. v. Cohen*,
  666 F. App'x 46 (2d Cir. 2016) ...............................................................................................6, 7

*Kee's Chocolates LLC v. Charles Thompson LLC*,
  CV-00176/18, 119 N.Y.S.3d 11 (N.Y. Civ. Ct. Sept. 26, 2019) .................................................4

*Kellam v. Servs.*,
  No. 12-352, 2013 U.S. Dist. LEXIS 197235 (N.D. Tex. May 31, 2013), *aff'd sub nom.*, *Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ......................................10

*Lake Imaging, LLC v. Franciscan Alliance, Inc.*,
  No. 21S-CT-478, 182 N.E.3d 203 (Ind. 2022) ............................................................................4

*Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*,
  390 F.3d 336 (5th Cir. 2004) ..................................................................................................2, 4

*Nitterhouse Concrete Prods., Inc. v. Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, and Local Union 201B, AFL-CIO CLC*,
  763 F. App'x 164 (3d Cir. 2019) ............................................................................................3, 4

*Novartis Pharma AG v. Amgen Inc.*,
  No. 19-cv-2993 (PKC), 2020 U.S. Dist. LEXIS 101145 (S.D.N.Y. June 9, 2020) ....................8

*Quadrant Structured Prod. Co. v. Vertin*,
  23 N.Y.3d 549 (App. Ct. 2014) ..................................................................................................7

*United States Postal Service v. Am. Postal Workers Union*,
  922 F.2d 256 (5th Cir. 1991) .................................................................................................9, 10

**RULES**

L.R. CV-7(a)(1) .................................................................................................................................2

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## TABLE OF EXHIBITS

| Exhibit No.[1] | Description |
|---|---|
| 1 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 2 | Correspondence from ▮▮▮▮▮▮▮▮ |
| 3 | Correspondence from ▮▮▮▮▮▮▮▮ |
| 4 | Correspondence from ▮▮▮▮▮▮▮▮ |
| 5 | Email correspondence from ▮▮▮▮▮▮▮▮ |
| 6 | Correspondence from ▮▮▮▮▮▮▮▮ |
| 7 | Correspondence from ▮▮▮▮▮▮▮▮ |
| 8 | Email correspondence from ▮▮▮▮▮▮▮▮ |

---

[1] Exhibit numbering continues from Nokia's Opposition to the Third-Party Defendants' Motion to Dismiss, Dkt. 127.

## I. INTRODUCTION

Broadcom's Reply (Dkt. 133) advances irrelevant and inconsistent arguments in an attempt to avoid Nokia's legally correct, well-justified, and equitably essential impleader claim. Despite Nokia's repeated requests—spanning many years beginning long before TQ Delta initiated this litigation—that Broadcom honor its contractual indemnification obligations, Broadcom has refused,[2] necessitating impleader in this Court. Broadcom initially refused because TQ Delta had not yet filed a complaint. And today, now that TQ Delta has filed the complaint, Broadcom offers numerous excuses, including that its indemnity obligations were somehow erased ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[3] Broadcom's shifting and novel bases for denying vested indemnification obligations exceeds any legitimate, good-faith contract dispute. Broadcom has an obligation to Nokia, and that obligation cannot be avoided by an unjustified and legally deficient Motion to Dismiss.

Broadcom's core theory is that  . Broadcom's unsound view would effectively render many of the ▮▮▮▮ provisions a nullity. Under the applicable law, and common sense, the ▮▮▮▮ indemnification provision must "survive in order to enforce duties arising under the contract." *See Cottman Ave. PRP Grp. v. AMEC Foster Wheeler Env'tl Infrastructure Inc.*, 439 F. Supp. 3d 407, 437 (E.D. Penn. Feb. 13, 2020); *see also, e.g.*,

---

[2] This is not the first time that Broadcom has refused to acknowledge its indemnity obligations and participate in the defense of its products. Nokia has sought indemnification from Broadcom in connection with other litigations filed against Nokia, and Broadcom similarly refused to accept indemnity or participate in the defense. Here, Nokia impleaded Broadcom to ensure that Broadcom cannot avoid honoring its obligations yet again.

[3] For purposes of Broadcom's Motion, Nokia does not dispute that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

██████████████████████████████████

*Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 340 (5th Cir. 2004) ("[W]e are aware of no Texas authority that provides that termination of agreements automatically applies retroactively to extinguish vested rights. . . . The parties have not cited, nor has our research revealed, any cases from other circuits which hold otherwise."). That is particularly true where, as here, the indemnification clause is "broadly written to apply to 'any legal dispute' and the dispute involves facts and occurrences that arose before expiration of the contract." *Cottman*, 439 F. Supp. 3d at 435. Here, the ███ broadly obligates Broadcom to indemnify Nokia against ███ ████████████████████████████████████████████ Ex. C to Broadcom's Mot. at 1-2 (emphasis added). Nokia's complaint against Broadcom pleads a plausible (indeed correct) claim for indemnification that warrants resolution by this Court.

Next, regarding arbitration, ████████████████████████████ ██████████████████████████████, and Broadcom's Reply does not dispute that showing. Broadcom's Reply also does not dispute Nokia's showing that Broadcom waived ████████████████████████████████████████████ ████. Broadcom's only argument that arbitration is required is that the ███████████ ████████████████████████████████████████████ ████. Broadcom is wrong for the reasons described in Nokia's Opposition (Dkt. 127, "Opp.") and below, including that the ████████████████████████████████████ ████████████████████████ that Nokia pleaded in its third-party complaint.

## II.   ISSUE TO BE DECIDED BY THE COURT[4]

Nokia maintains that the proper issue to be decided by the Court is as follows:

---

[4] Broadcom's Motion did not include issues to be decided by the court as required by the local rules. L.R. CV-7(a)(1). Nokia responds here to the issues that Broadcom presented in its Reply.

(1) Whether Nokia's impleader claim is facially plausible.

### III. ARGUMENT

#### A. Nokia's Right to Seek Indemnification Survives ▇▇▇▇▇▇

Regarding the survivability of indemnification provisions, Broadcom's arguments fail for several reasons: (1) Nokia's case law is not distinguishable as Broadcom argues; (2) Broadcom's argument regarding the "triggering event" ▇▇▇▇▇▇▇▇▇▇ is both factually incorrect and duplicitous; and (3) Broadcom's arguments regarding another agreement, the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ are irrelevant.

#### 1. Broadcom's Attempts to Distinguish the Case Law Fail

As explained in Nokia's Opposition, "[c]ourts have repeatedly held that" structural provisions such as indemnification clauses, survival of arbitration, and forum selection clauses "can survive termination of the agreement where they are broadly written to apply to 'any legal dispute' and the dispute involves facts and occurrences that arose before expiration of the contract." *Cottman*, 439 F. Supp. 3d at 435. "This remains true despite the absence of language expressly providing for the survival of these provisions." *Id.* at 435-36.

Broadcom attempts to cabin the case law that Nokia cited in its Opposition to cases where "the duty to indemnify covered breaches of the representations and warranties underlying the agreement." Reply at 2-3. But that is not at all what Nokia's cases stated, and it is contrary both to the cases' reasoning and to their holdings that broad indemnification provisions survive termination.

For example, in *Cottman*, the court distinguished indemnification language from that in *Nitterhouse* (cited by Broadcom) not because of any underlying warranty provision but rather because the provision in *Cottman* did "not limit the indemnification to losses, damages, or liability arising only during the course of the Contracts." In *Cottman* the contractual language was directed

3

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

more broadly to "any and all" claims, and thus the indemnification provision qualified as a structural provision that survives termination. *Cottman*, 439 F. Supp. 3d at 436-37 (distinguishing *Nitterhouse Concrete Prods., Inc. v. Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, and Local Union 201B, AFL-CIO CLC*, 763 F. App'x 164 (3d Cir. 2019)). Nokia's other cases similarly held that indemnification provisions generally survive where the indemnification obligation arose prior to termination of the contract. *See Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 341 (5th Cir. 2004) ("Because at least some of the alleged underlying asbestos injuries at issue here may have occurred prior to the termination of the Contract . . . we hold that the district court erred in ruling that the 1995 termination of the Contract extinguished all of Brown & Root's indemnity obligations."); *Lake Imaging, LLC v. Franciscan Alliance, Inc.*, No. 21S-CT-478, 182 N.E.3d 203, 211 (Ind. 2022) ("Nothing in the Agreement indicates that the obligation to indemnify for past services would end when the contract terminated."); *Kee's Chocolates LLC v. Charles Thompson LLC*, CV-00176/18, 119 N.Y.S.3d 11, at *33-34 (N.Y. Civ. Ct. Sept. 26, 2019) (rejecting argument that indemnification obligation expired with contract).

The same is true here. The parties clearly intended Broadcom's indemnification obligation to survive, particularly in view of the breadth of that obligation, requiring Broadcom to ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ Ex. C to Broadcom's Mot. at 1-2 (emphasis added); *Cottman*, 439 F. Supp. 3d at 435.

2. **Broadcom's Indemnification Obligations Were Timely "Triggered"**

Broadcom next argues that the ▇▇▇▇ indemnification obligation is "▇▇▇▇▇▇▇▇▇▇▇▇

4

███████████████████████████████████████████████

███████████████████████████████████" Reply at 5. Broadcom goes on to argue that

"[████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." *Id.* Broadcom is not only factually wrong, but has duplicitously tried to create a "heads I win, tails you lose" theory of the contract.

The "████████████████████████" did not occur "████████████████ ███████" as Broadcom asserts. *Id.* Nokia first received communications from TQ Delta regarding alleged infringement of the Asserted Patents ██████, and TQ Delta's communications continued through the years leading to TQ Delta's lawsuit against Nokia filed in 2021. During those years, Nokia repeatedly approached Broadcom regarding indemnification. When Nokia approached Broadcom in ████████████████ regarding TQ Delta's claims of infringement, Broadcom refused to acknowledge Nokia's indemnification claim ***because*** ████████████ ██████ Ex. 8 at 1 █████████████████████████████████████████████ ████████████████████████

Broadcom then █████████████████ ██ █████████████████████ █████████████████████████████████████████████ ██, including its clear indemnification obligation. *See* Mot. at 3. TQ Delta filed suit several months later. Dkt. 1. After TQ Delta filed suit, Nokia again contacted Broadcom regarding its indemnification obligations, ███████████████████████████████████ Opp. at 4. Broadcom again rejected Nokia's indemnification claim, now suggesting for the first time (erroneously) that a different agreement should govern—a position that Broadcom has since abandoned. *Id.* at 4. In yet another sleight of hand, Broadcom now attempts to shift its theory yet again by arguing that it is not bound by its indemnity obligations because ██████████████████████████████████████████████████

5

██████████████████████████████████████████████████

██████████████████████████████████████

Broadcom cannot avoid the clear language of the ██ by simultaneously asserting that Nokia sought indemnification ***too early*** (████████████████████████████) and also that Nokia sought indemnification ***too late*** (████████████████████████████████████████████████████). Broadcom owes indemnity for products sold under the agreement, and none of Broadcom's ever-shifting theories change that. At the very least, Nokia has pleaded a plausible claim for indemnification under the ██, and therefore TQ Delta's Motion should be denied.

### 3. Broadcom's Last-Ditch Arguments Regarding the ██████ ████████████████████ Are Irrelevant

Perhaps recognizing the weakness of its position under the ██ and the guiding case law, Broadcom's Reply (but not its original Motion) turns to an entirely unrelated agreement between the parties, the ████. Broadcom uses the language of the ████ in an attempt to show the parties' intent as to the ████. Broadcom is wrong, and its arguments regarding the ████ are irrelevant.

The ████ is an entirely separate agreement from the relevant ████████ agreements. The ████ is directed to Nokia's licensing of ████████████████ from Broadcom, whether those are ██████████████████████ or ██████████████████████████ ████████████████████████ between the parties, neither of which is governed by the ██ or the ██, and neither of which is related to the Accused Products in this litigation. Ex. C to Reply at 1. Broadcom admits as much. Reply at 7 ("Although it is not a basis for indemnification, because Nokia's Opposition raises the parties' intent into dispute, it is instructive to review ████████████████████████████████████████████████████████████").

It is hornbook law that, when interpretating the language of a contract, the Court should not "resort to extrinsic evidence unless the contract's language itself is ambiguous." *CP III Rincon*

6

███████████████████████████████████████████

*Towers, Inc. v. Cohen*, 666 F. App'x 46, 51 (2d Cir. 2016). Rather, "if, in the context of the entire agreement, the plain meaning of the text is clear, [the] inquiry ends there." *Id.* As explained above and in Nokia's Opposition, it is clear that the parties intended Broadcom's indemnification obligations to survive ███████. The pertinent language is unambiguous, and thus there is no ambiguity that justifies turning to parol evidence, particularly on a motion to dismiss where Nokia need only demonstrate that its claim is facially plausible.

Broadcom's cited cases are inapposite. Broadcom cites *Quadrant Structured Products* for the proposition that "if parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission." *Quadrant Structured Prod. Co. v. Vertin*, 23 N.Y.3d 549, 560 (App. Ct. 2014). That case analyzed whether a no-action clause was limited to the types of claims expressly mentioned in the contract or, instead, extended to other claims not expressly listed. *See id.* at 558-60. The court held that the no-action clause did not preclude enforcement of claims not expressly mentioned in the contract. *Id.* at 559. Thus, the case involved strictly construing a contractual clause that expressly limited certain rights. *See id.* at 560 ("Applying these well established principles of contract interpretation, and with the understanding that ***no-action clauses are to be construed strictly and thus read narrowly***, . . . . [t]he clear and unambiguous text of this no-action clause . . . on its face limits the clause to the contract rights recognized by the indenture agreement itself." (emphasis added)). That scenario is entirely different from the question involved here, on which there is clear law contrary to Broadcom's position: whether a structural obligation under the contract (Broadcom's indemnification obligation) survives ███████ where the contract employs broad language reflecting the parties' intent that the obligation survive. *See Cottman*, 439 F. Supp. 3d at 435 (indemnification clause survives where it is "broadly written to apply to 'any legal dispute'

███████████████████████████████████████████████

and the dispute involves facts and occurrences that arose before expiration of the contract").

Broadcom's reliance on *Novartis Pharma* is similarly inapposite. Broadcom relies on *Novartis Pharma* to suggest that "[t]he parties could have drafted a [particular] provision specifically for the [] Agreement," but "[t]hey elected not to do so." *Novartis Pharma AG v. Amgen Inc.*, No. 19-cv-2993 (PKC), 2020 U.S. Dist. LEXIS 101145, at *20-21 (S.D.N.Y. June 9, 2020); *see* Reply at 8. In *Novartis Pharma*, the court analyzed whether a provision from an earlier agreement should be read into the text of a later agreement. *See Novartis Pharma*, 2020 U.S. Dist. LEXIS 101145, at *20-21. That question is again entirely different from whether a party's structural obligation under a contract survives in view of broad language reflecting the parties' intent that the obligation survive. Here again, Nokia has at least pleaded a plausible claim for indemnification, as the language and the context of the ███ indicate that the parties intended Broadcom's indemnification obligations ████████████████████.

### B. Broadcom and Nokia's Dispute Is Not Subject to Arbitration

Broadcom's arguments that the Court should dismiss Nokia's claim in favor of arbitration fail for at least two reasons: (1) the relevant arbitration clause is contained in the ███, not the ███; and (2) Broadcom fails to address or directly respond to Nokia's arguments under the ███ regarding equitable remedies and waiver.

#### 1. The Relevant Arbitration Clause Is Contained in the ███

Broadcom's main argument regarding arbitration concerns an arbitration clause from the ███, which is allegedly broader than the arbitration clause in the ███. *See* Reply at 8-10. Broadcom is wrong for multiple reasons. First, there is no relevant arbitration clause for the reasons described in Nokia's Opposition. Opp. at 12-16. In any event, the relevant agreement is the ███. While ████████████████████████████████████████████████████████████████████

8

███████████████████████████████████████████

███████████████████████████████████████████, and therefore, according to "well-established principles of construction," the specific provisions of the ███ trump the general provisions of the ███. *United States Postal Service v. Am. Postal Workers Union*, 922 F.2d 256, 260 (5th Cir. 1991).

The language of the ███ is clear that the ███ governs the parties' relationship as to the ███████████. For example, ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████ Ex. 1 at 1. Further, the ███ provides that

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████ Ex. 1 at 7.[5]

The ███ also provides that ███████████████████████████████

███████████████████████████████████████████ *Id.* Broadcom argues that this language indicates that, because the dispute-resolution procedure is included in

███████████████████████████████████████████

██████████████████████ Reply at 8-9. But Broadcom's argument is based on faulty logic. Simply because ███████████████████ between the ███████████ does not mean that all provisions in the ███ otherwise govern. Instead, "[w]hen a specific and a general provision of an agreement conflict, well-established principles of construction require that the specific trump

---

[5] ███████████████████████████████████████████
███████████████████ *See* Ex. 1 at 2 ("███████████████████████
████████████



the general provision." *United States Postal Service*, 922 F.2d at260. Because the ▮ represents ▮▮▮▮, to the extent that any arbitration clause is relevant, ▮▮▮▮.

For the reasons explained in Nokia's Opposition, the arbitration clause of the ▮ does not cover the indemnification dispute that Nokia pleaded in its third-party complaint. Opp. at 12-16.

### 2. Broadcom Does Not Address Nokia's Equitable Remedies or Waiver Arguments

Broadcom fails to directly address Nokia's arguments that (1) ▮▮▮▮



, and that (2) Broadcom waived any right to arbitration by ▮▮▮▮. Opp. at 14-16. Accordingly, for purposes of its Motion, Broadcom has waived any disagreement with Nokia's equitable-remedies and waiver arguments. *See Kellam v. Servs.*, No. 12-352, 2013 U.S. Dist. LEXIS 197235, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."), *aff'd sub nom.*, *Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014).

### IV. CONCLUSION

Nokia respectfully requests that the Court deny Broadcom's Motion to Dismiss. The contractual terms warrant it, principles of fairness reinforces it, and the law demands it since Nokia has pleaded a plausible claim for indemnification.

███████████████████████

Dated: May 12, 2022                                    Respectfully submitted,

                                                       */s/ M. Scott Stevens*
M. Scott Stevens (NC Bar # 37828)
Karlee Wroblewski (NC Bar # 55043)
Nic Marais (NC Bar # 53533)
ALSTON & BIRD LLP
One South at the Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Tel:  704.444.1000
Fax:  704.444.1111
Email: scott.stevens@alston.com
Email: karlee.wroblewski@alston.com
Email: nic.marais@alston.com

John D. Haynes (GA Bar # 340599)
Michael Deane (GA Bar # 498195)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
Tel:  404.881.7737
Fax:  404.881.7777
Email: john.haynes@alston.com
Email: michael.deane@alston.com

Darlena Subashi (NY Bar # 5780747)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Tel: 212-210-9400
Fax: 212-210-9444
Email: darlena.subashi@alston.com

Adam Ahnhut (TX Bar # 24106983)
ALSTON & BIRD LLP
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Email: adam.ahnhut@alston.com
Tel: 214.922.3400
Fax: 214.922.3899

*Counsel for Defendants*

11

███████████████████████████████

*Nokia Corporation, Nokia Solutions and Networks Oy, and Nokia of America Corporation and Third-Party Plaintiff, Nokia of America Corporation*

████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on counsel of record via e-mail on May 12, 2022.

/s/ *M. Scott Stevens*
M. Scott Stevens

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that Nokia is authorized to file this document under seal pursuant to Paragraph 16 of the Protective Order and Local Rule CV-5(a)(7) because it contains confidential material.

/s/ *M. Scott Stevens*
M. Scott Stevens

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on May 16, 2022, on all counsel who have consented to electronic service via ECF.

                                                /s/ *M. Scott Stevens*
                                                M. Scott Stevens