# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>                            *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>                            *Defendants*. | Civil Action No.: 2:21-cv-310-JRG |

# DEFENDANTS' REPLY IN SUPPORT OF
# OPPOSED MOTION FOR A PARTIAL STAY

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION. ....................................................................................................... 1
II. ARGUMENT. .............................................................................................................. 1
III. CONCLUSION............................................................................................................ 5

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Light Transformation Techs., LLC v. Light Sci. Grp. Corp.*,
    No. 2:12-CV-826-MHS-RSP, 2014 WL 11514737 (E.D. Tex. Mar. 27, 2014)........................5

*Realtime Data, LLC v. Rackspace US, Inc.*,
    No. 6:16-CV-00961 ............................................................................................................5

*Uniloc USA, Inc. v. Avaya Inc.*,
    No. 6:15-CV-01168-JRG, 2017 WL 2882725 (E.D. Tex. Apr. 19, 2017) ................................2

**I.      INTRODUCTION.**

TQ Delta's opposition is part and parcel of its strategic campaign to unduly burden CommScope—and also this Court, and a jury—with an unnecessarily complex and largely duplicative 13-patent case and trial in January 2023.  CommScope's motion sensibly proposes to break this 13-patent case into two more manageable cases, and also includes proposals that could obviate the need for a second trial.  In its opposition, TQ Delta unfairly criticizes CommScope's expressed willingness to be bound by the outcomes in the case that TQ Delta previously filed on six of the same patents it is asserting in this case against 2Wire, Inc., but it notably fails to propose *anything* additional that it believes would be necessary to warrant staying this case as to the Overlapping Patents.  TQ Delta also fails to inform this Court that it failed to respond to the proposal that CommScope made prior to filing this motion with any counteroffer.  Notwithstanding TQ Delta's tactics, CommScope is willing to broaden the scope of its offer to be bound by outcomes in the Delaware case, as described further below and conditioned on the Court granting this motion.

**II.     ARGUMENT.**

In its Opposition, TQ Delta spills much ink complaining that CommScope has only expressed a willingness to be bound by the outcome in the Delaware case with respect to four products.  *See* Dkt. No. 168 at 5, 7–8.  However, that was simply an offer that CommScope made to TQ Delta during the meet and confer prior to filing this motion, to which TQ Delta did not respond.  Now that CommScope understands TQ Delta's concerns, expressed for the first time in TQ Delta's opposition, CommScope would be willing to extend the stipulation to cover products that utilize the same Broadcom chip sets as those four products.  Under that proposal, in addition to the four products at issue in Delaware (i.e., 5031NV, 5168N, 5168NV, and 5268AC products), the stipulation would cover ten additional products: GVT V5471, NM55, NVG34x, NVG589,

1

NVG599, 4111N, GV2305, GV4305, GV5705, GV5707.  Because TQ Delta has failed to identify the accused CommScope products by product number, CommScope cannot know whether there are any other accused products not covered by this proposed stipulation.[1]  However, CommScope believes this revised stipulation to be bound would cover the majority of products accused in this case of infringing the Overlapping Patents.

TQ Delta also spills a lot of ink complaining that CommScope's proposed stipulation to be bound only covers claims actually asserted in the Delaware case against 2Wire.  *See* Dkt. No. 168 at 5–8.  TQ Delta fails to explain how CommScope is supposed to stipulate to be bound by a validity or infringement ruling in Delaware on a claim that TQ Delta is not asserting there against 2Wire.  If TQ Delta is suggesting that CommScope is just supposed to stipulate to infringement of a claim that TQ Delta is not asserting in its Delaware case but that it has chosen to assert in this case for strategic reasons, that is clearly unreasonable and not a prerequisite to this Court exercising its "broad discretion" to grant a partial stay.  *See, e.g.*, *Uniloc USA, Inc. v. Avaya Inc.*, No. 6:15-CV-01168-JRG, 2017 WL 2882725, at *1 (E.D. Tex. Apr. 19, 2017) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)).  TQ Delta is the master of its complaints.  It created this problem by its own selection of which claims to assert in the two cases.

Notwithstanding TQ Delta's complaints, it cannot and does not dispute that there is total overlap with respect to the '008 patent, as only claim 14 is at issue in both Delaware and Texas.  Indeed, TQ Delta is basically silent with respect to that patent in its opposition.  There also is near total overlap with respect to the '835 patent.  In the Delaware case, TQ Delta is asserting claims 8

---

[1] TQ Delta alleges that CommScope's products infringe the asserted patents for utilizing a number of different standards, but TQ Delta only charts the patents against the standard.  TQ Delta does not specify which products purportedly use which standards, and instead just provides a laundry list of accused products.  *See* Dkt. No. 168-2 (infringement contentions cover pleading) at 4 n.1.

and 10.  Here, TQ Delta has chosen to assert claims 8 and 10 again, against the same products it is accusing in the Delaware case, and also claim 26.  But claim 26 is very similar to claim 10,[2] so it is very hard to understand how TQ Delta would be prejudiced by a stay with respect to claim 26 too:

|  | Transmitting Claim Set (8, 10) | Receiving Claim Set (24, 26) |
|---|---|---|
| Independent Claim | 8. An apparatus configurable to adapt forward error correction and interleaver parameter (FIP) settings during steady-state communication or initialization comprising:<br><br>a transceiver, including a processor, configurable to:<br><br>*transmit* a signal using a first FIP setting,<br>*transmit* a flag signal,<br>and switch to using for *transmission*, a second FIP setting following *transmission* of the flag signal,<br><br>wherein:<br>the first FIP setting comprises at least one first FIP value,<br>the second FIP setting comprises at least one second FIP value, different than the first FIP value, and<br>the switching occurs on a pre-defined forward error correction codeword boundary following the flag signal. | 24. An apparatus configurable to adapt forward error correction and interleaver parameter (FIP) settings during steady-state communication or initialization comprising:<br><br>a transceiver, including a processor, configurable to:<br><br>*receive* a signal using a first FIP setting,<br>*receive* a flag signal,<br>and switch to using for *reception*, a second FIP setting following *reception* of the flag signal,<br><br>wherein:<br>the first FIP setting comprises at least one first FIP value,<br>the second FIP setting comprises at least one second FIP value, different than the first FIP value, and<br>the switching occurs on a pre-defined forward error correction codeword boundary following the flag signal. |
| Dependent Claim | 10. The apparatus of claim 8, wherein a first interleaver parameter value of the first FIP setting is different than a second | 26. The apparatus of claim 24, wherein a first interleaver parameter value of the first FIP setting is different than a second |

---

[2] Claim 26 just focuses on the transceiver on the receiving end of a flag signal whereas claim 10 looks at the transmitting end.

|  | interleaver parameter value of the second FIP setting. | interleaver parameter value of the second FIP setting. |
|---|---|---|

Therefore, as TQ Delta basically acknowledges through its silence, there is no reason to not stay the case with respect to at least these two Overlapping Patents. While CommScope maintains that the Court should stay this case with respect to all six Overlapping Patents, even a partial stay with respect to these two patents would simplify this case by removing two entire patent families (Family 4 and Family 6) from the case to be tried in January 2023.

TQ Delta dramatically overstates the purported prejudice to it from a partial stay focused on just the Overlapping Patents. Dkt. No. 168 at 8–10. Of course, TQ Delta has had its "day in court" in Delaware with respect to all of those patents and all of the products it chose to accuse of infringing those patents. TQ Delta complains that an appeal of the Delaware judgment would not conclude until 15–20 months after the last liability trial in November,[3] and potentially a damages trial, but this case is on a similar timeline. An appeal of a judgment in this case will likely not conclude until 15–20 months after the trial in January. Therefore, TQ Delta's assertion that it will get "final resolution" on the Overlapping Patents long before it will on the other seven patents is not well-founded.

TQ Delta also has no real response to CommScope's assertion that thirteen patents is too many for one trial and would be prejudicial to CommScope. Instead, TQ Delta claims that any prejudice was addressed by this Court's Order Focusing Patent Claims and Prior Art. *See* Dkt. No. 168 at 8. But TQ Delta does not explain how it plans to present 13 patents to a jury during a one-week trial in January 2023, or how it is fair to CommScope, the Court, or a jury to present that many patents in a single trial.

---

[3] TQ Delta is just speculating that 2Wire will appeal a final judgment in the Delaware case. Further, given that TQ Delta has sustained numerous adverse rulings in the Delaware case, TQ Delta may appeal. TQ Delta cannot complain about prejudice from any delay attendant to its own appeal.

Finally, TQ Delta argues that CommScope delayed too long in bringing the motion. *See* Dkt. 168, at 10-11. However, as TQ Delta knows, CommScope first moved to transfer this case to Delaware largely because of the Overlapping Patents. Therefore, it was reasonable for CommScope to await this Court's ruling on its motion to transfer before moving to stay the Overlapping Patents for potential future litigation in this Court. The Court denied CommScope's motion to transfer venue on March 28, 2022. After meeting and conferring with TQ Delta prior to filing it, CommScope filed this motion on May 24, 2022—less than two months after the Court's order denying transfer, and while also doing claim construction briefing and dealing with discovery issues in the case too. TQ Delta cannot and does not argue that less than two months is undue delay justifying denial of the motion for that reason.

The cases cited by TQ Delta with respect to the stage of the proceedings are inapposite. Both *Realtime Data* and *Light Transformation* involved a motion to stay the case pending petitions for *inter partes* review. In declining to stay the case, the *Realtime Data* court explained that, "given the current complexity and varied timing of the proceedings before the PTAB, simplification of the issues remains highly speculative." *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-CV-00961 RWS-JDL, 2017 WL 3149142, at *2 (E.D. Tex. July 25, 2017). Similarly, *Light Transformation* explained that "Defendants['] Motion is a prime example of the reality that there is no guarantee that *inter partes* proceedings will simplify a case—only the possibility that they might." *Light Transformation Techs., LLC v. Light Sci. Grp. Corp.*, No. 2:12-CV-826-MHS-RSP, 2014 WL 11514737, at *3 (E.D. Tex. Mar. 27, 2014).

### III.   CONCLUSION.

For the foregoing reasons, CommScope respectfully requests that the Court grant its motion for a partial stay.

| | |
|---|---|
| Dated this 14th day of June, 2022 | Respectfully submitted, |
| | By: */s/ Eric H. Findlay*<br>Eric H. Findlay<br>State Bar No. 00789886<br>Brian Craft<br>State Bar No. 04972020<br>FINDLAY CRAFT, P.C.<br>102 N. College Ave, Ste. 900<br>Tyler, TX 75702<br>903-534-1100 (t)<br>903-534-1137 (f)<br>efindlay@findlaycraft.com<br>bcraft@findlaycraft.com<br><br>Douglas J. Kline<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA  02210<br>P:  (617) 570-1000<br>F:  (617) 523-1231<br>dkline@goodwinlaw.com<br><br>Brett Schuman<br>Rachel M. Walsh<br>GOODWIN PROCTER LLP<br>Three Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>P:  (415) 733-6000<br>F:  (415) 677-9041<br>bschuman@goodwinlaw.com<br>rwalsh@goodwinlaw.com<br><br>Andrew Ong<br>GOODWIN PROCTER LLP<br>601 Marshall St.<br>Redwood City, CA 94063<br>P: (650) 752-3100<br>F: (650) 853-1038<br>aong@goodwinlaw.com<br><br>***Attorney for Defendants*** |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on June 14, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

*/s/ Eric H. Findlay*
Eric H. Findlay
