**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TQ Delta, LLC,<br>　　　　　*Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>　　　　　*Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br>(Lead Case)<br><br>███████████ |
| TQ Delta, LLC,<br>　　　　　*Plaintiff*,<br><br>v.<br><br>Nokia Corp., *et al.*,<br>　　　　　*Defendants*. | Civil Action No.: 2:21-CV-00309-JRG<br>(Member Case) |
| Nokia of America Corp.,<br>　　　　　*Third-Party Plaintiff*,<br><br>v.<br><br>Broadcom Corp., *et al.*,<br>　　　　　*Third-Party Defendants.* | |

**TQ DELTA, LLC'S
<u>FIRST MOTION TO COMPEL DISCOVERY FROM NOKIA</u>**

## I.      SUMMARY AND BACKGROUND FACTS

TQ Delta, LLC ("TQD") moves to compel Nokia Corp, *et al.* ("Nokia") under FED. R. CIV.

P. ("Rule") 37 to produce two categories of documents related, mainly, to damages: 1) basic

financial information (e.g., units sold, revenue, costs) for the lifetime of the accused products,

including worldwide sales; and 2) market studies (e.g., market share for the accused technologies)

Nokia has relied upon, including Nokia's 30(b)(6) witnesses.   Both categories are relevant

information for consideration during the hypothetical negotiation.  Given the August 15th expert-

report and close-of-fact-discovery deadlines (Dkt. No. 62), the Court should compel Nokia to

produce both categories of information as soon as possible.  Otherwise, Nokia will "run out the

clock" on TQD.  Nokia's failure to produce this discovery by the April 22 substantial-completion

deadline has prejudiced TQD's case by denying it evidence for depositions and further discovery.

For the first category, Nokia's position is that neither worldwide sales nor pre-2015 sales

are relevant, but the Court has held that sales information, including worldwide sales information,

is relevant and discoverable.  *See Evs Codec Techs. v. Oneplus Tech. Shenzhen Co.*, No. 2:19-CV-

57-JRG, 2020 U.S. Dist. LEXIS 204027, at *4-5 (E.D. Tex. Apr. 9, 2020) ("[F]or discovery

purposes, worldwide sales information is relevant to both reasonable royalty calculations and

commercial success").  For the second category, Nokia's position is that the reports it has are

"publicly available"—because TQD could separately buy them—so it can withhold them despite

their relevance.  Setting aside that Nokia's possession is itself relevant, "[t]he fact that information

is publicly available does not absolve a party of its discovery obligations."  *Semcon IP Inc. v.*

*Amazon.com, Inc.*, Case No. 2:18-cv-192-JRG, Dkt. No. 89 at p. 4 n.1 (E.D. Tex. July 15, 2019);

*see also GeoTag, Inc. v. Frontier Commc'ns Corp.*, No. 2:10-cv-265-JRG, 2013 WL 12141427,

*1 (E.D. Tex. June 26, 2013) (holding free publicly available material could not be withheld).

## II.     BOTH CATEGORIES WERE SPECIFICALLY REQUESTED

This Court orders the parties to automatically produce their relevant documents without a specific request.  (Dkt. No. 60, § 3(b) (Agreed Discovery Order)).  However, on March 10, 2022, TQD went beyond and served a detailed 22-page set of document requests to Nokia, specifically requesting the damages information in this Motion (emphasis added):

92. Produce electronic <u>documents sufficient to identify and show, separately for each Accused Product, and separately for the U.S. and outside the U.S. (e.g., international sales), from the date of the first sale or deployment, whichever is earlier, to the present</u>, the following:

    [listing 12 detailed categories of financial information]

93. <u>Documents sufficient to show the date each of the Accused Products was first sold or offered for sale and, if discontinued, the date it was discontinued in the United States and outside of the U.S.</u>

107. Produce <u>each market study, from any source, that contains a retrospective and/or future market breakdown of the market</u>, in whole or in part, for Defendant or for others, that includes Accused Products and/or competitive products.

112. Produce <u>all marketing studies</u>, consumer or customer (including service providers, telephone/broadband carriers, and their subscribers/customers) surveys, <u>market share studies</u>, promotional materials, <u>customer reports, analysis, and the like that relate in any way to consumer or customer preference, purchase trends, or demand</u> for any Accused Products and/or DSL functionality and for the aspects of those products that are alleged to infringe the Asserted Patents.

(Ex. 1).  On April 11, Nokia responded and, for any of the 145 requests without a specific date, objected that the requests were for discovery beyond six years.  Otherwise, for the 4 requests, Nokia provided boiler-plate objections, but <u>Nokia did not object to the requested worldwide scope</u>.

## III.   THE COURT SHOULD COMPEL NOKIA'S FINANCIAL INFORMATION

### A.   The Information Is Relevant and Nokia Has Provided No Basis Other Than Relevance for Nonproduction

Nokia has, across the board, not produced financial information (e.g., units of products sold, costs, revenue) for either its worldwide sales or sales prior to 2015.  Nokia does not contend it does not have this information or that it is burdensome to produce.  After all, this is information Nokia readily maintains in the ordinary course.  Instead of producing its records as they are

ordinarily kept, Nokia has gone to more work to create altered versions of documents that remove

worldwide and pre-2015 information (discussed below).  Relatedly, for records kept in database

systems, Nokia appears to have restricted its searches to pre-2015 and U.S.-only records.



For example, Nokia ███████████████████████████████

████████████████████████████████████████████████

███████████████████.  June 16, 2022 30(b)(6) Deposition of Patrick Neirynck ("Neirynck

Depo.") at 44:22-45:25 (Ex. 2).  Mr. Neirynck testified these █████████████████

████████████████████████████████████████████████

███████████  *Id.* at 46:1-47:15.  ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████

As this Court has explained, worldwide information is relevant.  "[F]or discovery purposes,

worldwide sales information is relevant to both reasonable royalty calculations and commercial

success. In terms of reasonable royalty calculations, the worldwide sales information could be

indicative of a 'ceiling amount for a reasonable royalty.'" *Evs*, 2020 U.S. Dist. LEXIS 204027, at

*5. "Further, this information could be indicative of the overall financial health of a company,

which may weigh in the hypothetical negotiation." *Id.*  "The Court also finds that the worldwide

sales information could be relevant to commercial success as a defense to obviousness." *Id.*

Pre-2015 financial information for the accused product is also relevant for at least the same

reasons.  It represents the very information that the Court, in *Evs*, described that the parties might

consider at the time of the hypothetical negotiation.  Nokia has also raised its own products as

prior art to the asserted patents, which, generally, have priority dates around the year 2000, making

historic information additionally relevant.  As another example, this financial information is useful

for guiding discovery and providing the backstory for later events.  As a concrete example, Nokia appears to provide ongoing support services, apparently as a part of paid service contracts, for its products.  Knowing how many units Nokia has sold informs how many units Nokia supports.

Nokia has produced financial information, including the selectively edited documents described above, from mid-2015 forward for the U.S. and Puerto Rico.  Nokia's only position for not producing its earlier information is that 35 U.S.C. § 286 imposes a six-year limit on the recovery of damages.  But § 286 limits "recovery" not discovery.  *See, e.g.*, *RCA Corp. v. Data Gen. Corp.*, Civil Action No. 84-270-JJF, 1985 U.S. Dist. LEXIS 24217, at *4 (D. Del. Oct. 28, 1985) ("Although [plaintiff] cannot recover damages for infringement for the period 1970 to 1978, [defendant]'s profits in this period are in fact relevant to the computation of a reasonable royalty that RCA would be entitled to recover for the period after 1978").  Nokia has also effectively admitted that § 286 does not bar discovery by producing documents, including technical discovery, prior to 2015.  TQD is aware of no principled distinction for financial information.

The Court should compel Nokia to produce its financial information for worldwide (e.g., per-country) and pre-2015 sales related to the accused DSL products, including the "████████" (above) and fully respond to document request nos. 92 and 93 (above).  This information is directly relevant to *Georgia-Pacific* factors, such as commercial success.  Otherwise, TQD will be deprived of material facts relevant to its "book of wisdom" understanding of the hypothetical negotiation.

## IV.     The Court Should Compel the Production of Nokia's Market Studies

### A.     Nokia's Market Studies Are Relevant and Are Relied Upon by Nokia

Nokia has not produced any of its market reports, which provide information such as market share and competitor data.  Nokia's refusal is shocking.  <u>Both of Nokia 30(b)(6) witnesses on market share and analysis (quoted below) testified</u> ████████████████████



*See, e.g.*, NOK00287908 ███ NOK00288220 ███

███. These studies are relevant to, at least, the hypothetical negotiation, both for the

information they contain and for Nokia's reference and reliance on them.

| June 16, 2022 30(b)(6) Deposition of Patrick Moris, designated on TQD 30(b)(6) Topic No. 22 | June 16, 2022 30(b)(6) Deposition of Patrick Neirynck, designated on TQD 30(b)(6) Topic No. 22 |
|---|---|
| 40:23–41:17, 42:19–43:13 | 107:1–108:14, 108:21-25, 109:14-16, 110:11-25 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                    FILED UNDER SEAL



## B.   Nokia Provides No Factual or Legal Basis for Its Failure to Produce

Nokia has provided no legal or factual basis for not producing these reports.  Nokia has not

contested their relevance or disagreed they are in Nokia's possession, custody, or control.  *See,*

*e.g.*, Rules 26, 34(a).  Nokia's only explanation—that the reports are "publicly available"—does

████████████████████████████████        ████████████████

not stand up to legal or factual scrutiny.  First, "even if a document is publicly available or in the opposing party's possession, a party must still disclose it." *Martino v. Kiewit N.M. Corp.*, 600 F. App'x 908, 911 (5th Cir. 2015) (affirming sanctions based on a party's failure to produce publicly-available contract); *see also Jostens, Inc. v. Hammons*, No. 4:20-cv-225, 2021 U.S. Dist. LEXIS 14924, at *21 (E.D. Tex. Jan. 27, 2021) (J. Mazzant) (overruling defendant's RFP objection that documents were "publicly available"); *Phillips v. Hanover Ins. Co.*, No. 14-871, 2015 U.S. Dist. LEXIS 51301, 2015 WL 1781873, at *2 n.1 (W.D. Okla. Apr. 20, 2015) ("Courts consistently hold that parties have an obligation to produce even publicly available information.") (collecting cases).

Second, the reports are not "publicly available" in the common sense that they are available for free to the general public.  They are, apparently, only obtainable with an agreement with third parties.  For example, the Dell'Oro reports appear to require a negotiated purchase agreement.  *See* https://www.delloro.com/how-to-buy/.  ████████████████████████████████████████

████████████████████████████ Forcing TQD to purchase documents Nokia already has violates Nokia's obligation to produce all relevant documents and increases TQ Delta's litigation expenses. If there are any concerns about disclosure of third-party documents, there is a protective order. *See also Allergan, Inc. v. Teva Pharm., USA, Inc.*, No. 2:15-cv-1455-WCB, 2017 U.S. Dist. LEXIS 4543, at *11 (E.D. Tex. Jan. 12, 2017) ("case law is clear that no [third party] agreement can bind a court and bar the court from ordering production").

The Court should compel Nokia to produce its market studies and analysis responsive to document categories 107 and 112 (above), including the ████████████ reports in its possession, custody, or control.

## V.    CONCLUSION

TQD asks the Court to compel Nokia as described above.  Nokia's failure to produce has already prejudiced TQD, and TQD also asks the Court for any additional relief it considers proper.

Dated: July 8, 2022

/s/ William E. Davis, III

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

*Counsel for TQ Delta, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this July 8, 2022 on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

/s/ William E. Davis, III
William E. Davis, III

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel have complied with the meet-and-confer requirements of Local Rule CV-7(h) and (i) and that discussion between Plaintiff Mobile Equity Corp. and Defendant Walmart, Inc. have reached an impasse and that this motion is opposed, as summarized below:

- On March 10, 2022, TQD served a 22-page list of requested document categories on Nokia.
- On April 11, Nokia provided a response.
- On May 20, TQD served a 15-page letter describing Nokia's production deficiencies.
- On June 24, having heard no response to its May 20 letter, TQD requested a meet and confer.
- On June 28, TQD emailed Nokia addressing its failure to produce worldwide information.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                     FILED UNDER SEAL

- On June 30, counsel for Nokia—Karlee Wroblewski—and counsel for TQD—Bo Davis, Christian Hurt, Rudy Fink, and Ty Wilson—met and conferred, including on the topics in this Motion.  Based on the conference, TQD requested a lead and local meet and confer.

- On July 6, counsel for Nokia—Scott Stevens, Adam Ahnhut, Karlee Wrobleski, and Katherine Donald—and counsel for TQD—Bo Davis, Christian Hurt, Rudy Fink, Ed Chin, and Ty Wilson—met and conferred, including on the topics in this Motion.  The parties reached an impasse on the topics in this Motion.

- On July 8, counsel for Nokia— Scott Stevens and Karlee Wrobleski-and counsel for TQD—Bo Davis and Rudy Fink—met and conferred, including on the topics in this Motion.  The parties did not resolve their impasse on the topics in this Motion.


/s/ William E. Davis, III
William E. Davis, III