# EXHIBIT 1

88.   Produce all communications engaged in during business between an employee of Defendant, in such capacity, and another person concerning one or more DSL Standards.

89.   Produce documents and things sufficient to show any alleged conception and/or reduction to practice of any alleged invention relating to the DSL Standards.

90.   Produce all documents and things relating to, referring to, and/or involving positions taken by Defendant and/or Defendant's DSL chip suppliers as to whether any of the asserted claims of any of TQ Delta Asserted Patents are essential to practice any DSL Standard.

91.   Produce all agreements (e.g., supply agreements, sales agreements, or purchase agreements) between Defendant and its customer(s) providing the terms (e.g., pricing terms, terms addressing indemnification for patent infringement, or firmware/software support terms) under which Defendant sells any of the Accused Products.

92.   Produce electronic documents sufficient to identify and show, separately for each Accused Product, and separately for the U.S. and outside the U.S. (e.g., international sales), from the date of the first sale or deployment, whichever is earlier, to the present, the following:

   a.   the number of units made by quarter;
   b.   the number of units sold/leased by quarter;
   c.   the number of units imported into the United States by quarter;
   d.   the number of units exported from the United States by quarter;
   e.   the product number, and/or any other designation or code used to identify the product;
   f.   the (gross and net) revenue realized, by quarter (where available)
   g.   the sales price;
   h.   direct and indirect costs (including but not limited to costs of goods sold, input costs, material costs, operating costs, bill of materials, research & development costs, marketing costs, manufacturing costs, sales costs, administrative expenses, royalty expenses), by quarter (where available);
   i.   profit (gross profits, operating profit, the net profit realized, net income, gross profit margins, contribution margins, operating profit margins, net profit margins), by quarter (where available);
   j.   revenue each quarter attributable to the sale/lease of each Accused Product.
   k.   an identification of each revenue and cost component; and
   l.   an identification of the methodology used to calculate the revenue, costs, and profit.

93.   Documents sufficient to show the date each of the Accused Products was first sold or offered for sale and, if discontinued, the date it was discontinued in the United States and outside of the U.S.

94.   Produce documents sufficient to ascertain for each Accused Product every name and version number of the software that has been used with each Accused Product.

105. Produce all documents relating to, referring to, and/or involving profit and/or revenue projections for each Accused Product made, used, offered for sale, imported, distributed, or sold by Defendant.

106. Produce summary documents and things sufficient to show the places of manufacture and/or sale of each of the Accused Products.

107. Produce each market study, from any source, that contains a retrospective and/or future market breakdown of the market, in whole or in part, for Defendant or for others, that includes Accused Products and/or competitive products.

108. Produce the highest-level summary documents sufficient to show, including those that best show all income, profit, loss, or any other financial benefit or detriment associated with the sale or lease of any Accused Product and/or any product constituting, comprising, or containing any Accused Product.

109. Produce all documents (including any study, analysis, and/or report) referring or regarding competition for the Accused Products or to any products or components perceived by Defendant to be competitive with the Accused Products.

110. Produce documents relating to the importance, significance, or value of any features of the Accused Products.

111. Produce all documents showing what features, functions or aspects of the Accused Products or Your competitors' products form the basis for demand by users or customers (including service providers, telephone/broadband carriers, and their subscribers/customers).

112. Produce all marketing studies, consumer or customer (including service providers, telephone/broadband carriers, and their subscribers/customers) surveys, market share studies, promotional materials, customer reports, analysis, and the like that relate in any way to consumer or customer preference, purchase trends, or demand for any Accused Products and/or DSL functionality and for the aspects of those products that are alleged to infringe the Asserted Patents.

113. Produce all documents and things relating to, referring to, and/or involving business plans, strategic plans, budget plans, marketing plans, profit plans, forecasts, and/or other planning documents relating to the creation, manufacture, use, sale, importation, distribution and/or offer for sale of each Accused Product and/or the market for DSL gateway products.

114. Produce a copy of any marketing collateral, white paper, or other document or thing for external distribution that mentions, concerns, or discusses either the pecuniary or operational benefits of technology according to the DSL Standards on their own or in comparison to