# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **TQ DELTA, LLC,**<br>      *Plaintiff*,<br>v.<br>**COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC**<br>      *Defendants*. | CIV. A. NO. 2:21-CV-310-JRG<br>(Lead Case) |
| **TQ DELTA, LLC,**<br>      *Plaintiff*,<br>v.<br>**NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.,**<br>      *Defendants*. | CIV. A. NO. 2:21-CV-309-JRG<br>(Member Case) |
| **NOKIA OF AMERICA CORP.,**<br>      *Third-Party Plaintiff*,<br>v.<br>**BROADCOM CORP., BROADCOM INC., and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD.,**<br>      *Third-Party Defendants*. | |

**NOKIA'S MOTION TO COMPEL DISCOVERY FROM BROADCOM**

**I.      INTRODUCTION**

Third-Party Plaintiff Nokia of America Corporation ("Nokia") respectfully asks this Court to compel certain discovery from Third-Party Defendants Broadcom Corp., Broadcom Inc., and Avago Technologies International Sales PTE. Ltd., (collectively, "Broadcom"). To date, Broadcom has ignored all requests from Nokia—Broadcom has not produced documents to Nokia, substantively responded to interrogatories from Nokia, or produced source code responsive to Nokia's requests.  Broadcom believes—again the clear weight of authority—that discovery does not apply to it until the Court resolves its request to amend the DCO and DO.

Specifically, Nokia asks this Court to compel the discovery of (1) license agreements related to the Broadcom DSL chipsets; (2) costs and internal cost accounting for the Broadcom chipsets that are in the Nokia Accused Products; (4) pricing of the same or similar Broadcom DSL chipsets sold to other customers or third parties; and (4) documents related to past requests for indemnification. This discovery is needed to properly evaluate Nokia's claim for indemnification against Broadcom and to allow for Nokia and Broadcom to fully evaluate and defend against TQ Delta's damages claims. Indeed, in Nokia's Third-Party Complaint against Broadcom, Nokia pled that "Broadcom has an obligation to defend or settle, at its expense, the present infringement claims asserted against Nokia in this lawsuit" and that "if Nokia is held liable to TQ Delta for patent infringement . . . then Broadcom is obligated to indemnify and hold Nokia harmless for all such amounts . . . ."  Dkt. No. 69 at 48.  Accordingly, any evidence that Broadcom holds in its possession that that will help defend or settle TQ Delta's claims of infringement against Nokia, or that will form the basis of any damages opinion, is highly relevant.

Moreover, this case presents a unique situation where the vast majority—if not the entirety—of the functionalities accused of infringement by TQ Delta resides in Broadcom's chipsets. Rather than timely produce this relevant evidence, however, Broadcom has improperly

delayed or flatly refused relevant production to Nokia. As fact discovery closes August 15, Dkt. No. 62 at 3, Nokia respectfully requests that its motion to compel be granted.

## II.   BACKGROUND

On May 4, 2022, Nokia served a letter on Broadcom requesting Broadcom to produce, among other things, the documents that are the subject of this motion. Following the 30-day-response period, on June 3, 2022, Broadcom responded with a two-paragraph letter indicating that, due to its intention to move for an amended scheduling order, Broadcom had somehow not participated in the 26(f) conference and was not yet subject to discovery. In fact, Broadcom did not provide a single substantive response. One business day after receiving Broadcom's June 3rd letter, Nokia requested a meet and confer with Broadcom on Monday, June 6, 2022. On June 9, 2022 and June 10, 2022, counsel for Nokia and Broadcom held two separate meet and confers. On June 13, 2022, Nokia followed-up with Broadcom via email. During those meet and confers, counsel for Nokia made clear its particularized concerns and expressed the specific documentation Nokia was seeking from Broadcom. In response, Broadcom indicated it would evaluate Nokia's specific requests. The following week, faced with case law demonstrating that Broadcom was in fact already subject to discovery in the present action, *see, e.g.*, *Evanston Ins. Co. v. McDonnell Coates LLLP*, No. 3:20-CV-0770-D, 2021 U.S. Dist. LEXIS 109536, *5-6 (N.D. Tex. June 11, 2021) ("A number of district courts have also held that Rule 26 does not prohibit or stay discovery served on parties added after a Rule 26(f) conference, and that Rule 26 does not require an additional conference with later-added parties."), Broadcom hastily produced documents that had been previously produced in past litigations and certain documents that are the subject of Broadcom's Motion to Dismiss. Importantly, Broadcom entirely ignored Nokia's specific requests as to past indemnification practices and license agreements, pricing information, and cost information related to the chipsets at the core of the Accused Products.

On June 24th, counsel for Nokia sent another letter to Broadcom detailing those same deficiencies. On June 30th and July 5th, counsel for Nokia and Broadcom participated in additional meet and confers related to these requests. Following the June 30th meet and confer—where Broadcom maintained its position that it would not produce such documents—Nokia provided narrowed production requests to Broadcom in a good faith attempt to eliminate the parties' disputes and requested a lead and local meet and confer pursuant to the Discovery Order. Ex. A at 1. At the lead and local July 5th meet and confer, Broadcom once again flatly refused the production of such documents as irrelevant. Notably, Broadcom provided its written response refusing Nokia's request mere minutes after the conclusion of that meet and confer—demonstrating that Broadcom did not meet and confer in good faith as the response was drafted before the call ever took place.

Broadcom's refusal to provide discovery to Nokia seems to stem from its consternation that Nokia asserted a claim indemnity against it. Tellingly, while Broadcom has already responded to TQ Delta's discovery requests and produced certain, but not all, technical documentation, pricing information, and source code, Broadcom refuses to respond to Nokia's requests for other technical information, licensing information, or pricing information. But dismay as to Broadcom's contractual obligations cannot form the basis for a refusal to produce relevant, necessary information in the present action. In addition to the obvious relevance of Nokia's requests related to its indemnification claim, information related to Broadcom's chipsets are necessary to Nokia's request that Broadcom help to *defend* Nokia in the present litigation. Now, after over two months of waiting for Broadcom to produce a particularized set of documents, Nokia is forced to ask the Court to intervene and compel Broadcom to produce information essential to the issues of this case.

### III. ARGUMENT

#### A. License Agreements Related to the Broadcom Chipsets (Request Nos. 1 and 14) [1]

Broadcom has refused to produce license agreements related to Broadcom's chipsets because "the most relevant agreements for a comparable license analysis would be TQ Delta's and/or Nokia's own agreements, including agreements TQ Delta has entered into with respect to the Asserted Patents, and the fact that TQ Delta and Nokia are in possession of license agreements produced in the Prior Litigations, Nokia has not shown how the relevancy of these additional documents outweighs the burden imposed on Broadcom." Ex. B at 2. Broadcom ignores the fact that the Broadcom chipsets are the core component underlying the functionalities of the products TQ Delta has accused of infringement in this case. In fact, TQ Delta has licensed Broadcom's primary competitor for DSL chipsets, namely Intel/Lantiq/MaxLinear. Defendant ADTRAN, Inc.'s Licensing Proffer at *2–3, *TQ Delta, LLC v. ADTRAN*, No. 1:15-cv-00121 (D. Del. Oct. 3, 2019), ECF No. 864. Therefore, any license agreements between Broadcom and other third parties regarding these DSL chipsets are highly relevant to the appropriate damages calculation in this case. Accordingly, Nokia respectfully asks that the Court compel Broadcom to produce all third-party license agreements and related royalty or sales reports related to its DSL chipsets necessary to perform a damages or comparable license analysis as it relates to the present action.

#### B. Costs of Production of Broadcom Chipsets (Request Nos. 1 and 11)

Broadcom has refused to produce documents related to the costs of production and internal cost accounting for the Broadcom chipsets because "Nokia has not explained how these additional documents are relevant to its damages calculation in connection with defending its claim of

---

[1] The Request Numbers that are the subject of this motion reference Nokia's original document production request letter to Broadcom.

infringement" and "Nokia is in possession of the price it pays to incorporate Broadcom chips into its products." Ex. B at 2-3. While Nokia does not dispute that it is in possession of the prices *Nokia* pays for its own chipsets, that does not resolve the issue. Importantly, the accused functionalities do not necessarily encompass the entirety of any one Broadcom chipset; rather, the accused functionalities may be limited to sub-components of any given chipset. Accordingly, cost information of the chipset sub-components is highly relevant to an apportionment analysis for purposes of damages in the present action. Additionally, Nokia thus respectfully asks that the Court compel Broadcom to produce all documents and information concerning Broadcom's costs for production of the chipsets at issue in this case.

### C. Pricing of the Broadcom Chipsets Sold to Other Customers or Third Parties (Request No. 7)

Broadcom has refused to produce documents related to the pricing of Broadcom's DSL chipsets that are sold to other customers or third parties because "[a]s the infringement claim is directed to Nokia's products and Nokia is in possession of the price it pays to incorporate Broadcom chips into its products, Nokia has not shown how the relevancy of these documents outweighs the burden imposed on Broadcom, especially when considering the fact that TQ Delta and Nokia are in possession of related information from the Prior Litigations." Ex. B at 4. Again, because of the importance of the chipsets in the present action, it is essential that Nokia is able to evaluate the accurate market price for the chipsets at issue. Such an analysis is essential to Nokia's evaluation and defense of Nokia's damages claim. These documents are routinely maintained in the course of business and such a production does not impose a burden on Broadcom. Indeed, Nokia believes Broadcom has likely produced this information as it pertains to other relevant players in the industry during the course of the TQ Delta litigations in Delaware. Notably, despite Broadcom's empty claims to the contrary, Nokia does not yet have access to pricing information

of the parties to the prior litigations. Accordingly, Nokia respectfully asks that the Court compel Broadcom to produce documents sufficient to show pricing of the BCM chipsets, including, purchase agreements, purchase orders, and BOMs sold to customers or third parties other than Nokia.

### D. Documents Relating to Past Requests for Indemnification (Request Nos. 1 and 14).

Broadcom has failed to produce documents related to its past requests for indemnification and any (non-privileged) indemnification policies relating to patent-infringement allegations. Such requests are highly relevant to and would allow for further evaluation of Nokia's claim for indemnification against Broadcom. Specifically, such agreements speak to Broadcom's past practices in responding to indemnification requests based upon similar agreements as those at issue in the present litigation. Broadcom has—at various different times—alleged that it maintains certain indemnification policies, including assessment of indemnification either when a pre-litigation claim is made or only after an actual complaint is filed. This discovery would help answer that direct contested question.

Nokia stands behind its statement that "[t]he pertinent language [of the contract at issue in this case] is unambiguous, and thus there is no ambiguity that justifies turning to parol evidence," Ex. B at 2, but Broadcom's repeated assertion that Nokia's indemnification claim is deficient necessitates Nokia's request for discovery into Broadcom's related contracts and past practices involving such claims. At the very least, an inquiry into whether the same or similar language has been used by Broadcom in the past, and how Broadcom interpreted that language, is relevant to the inquiry here. Accordingly, Nokia respectfully asks that the Court compel Broadcom to produce all documents and communications relating to Broadcom's past indemnification requests to its suppliers and all documents and communications relating to requests for indemnification made to Broadcom from any third parties and Broadcom's response regarding the same.

### E. Depositions.

While this issue is not yet ripe, Broadcom's response to Nokia's notice of corporate deposition per Rule 30(b)(6) is due on July 18.  Nokia has concerns that Broadcom's conduct of being a complete non-participant of party discovery will continue, and Broadcom may refuse to provide any witness(es) for deposition.  In the event that were to happen, Nokia may need to approach the Court in the near future with a second motion to compel against Broadcom.

### IV. CONCLUSION

To date, Broadcom has refused to produce relevant documents in response to Nokia's requests and routinely fails to commit to producing material in a timely fashion.  Because the discovery identified in this motion is critical to Nokia's ongoing expert work for its damages reports and forms the factual basis for its indemnity claim, Nokia respectfully asks the Court to order Broadcom to produce the categories of documents identified in this motion no later than seven (7) days after the Court enters an order compelling their production.

Dated: July 12, 2022                                              Respectfully submitted,

By: */s/ M. Scott Stevens*
M. Scott Stevens (NC Bar # 37828)
Kirk T. Bradley (NC Bar # 26490)
Karlee Wroblewski (NC Bar # 55043)
Nic Marais (NC Bar # 53533)
ALSTON & BIRD LLP
One South at the Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Tel: 704.444.1000
Fax: 704.444.1111
Email: scott.stevens@alston.com
Email: kirk.bradley@alston.com
Email: karlee.wroblewski@alston.com
Email: nic.marais@alston.com

        John D. Haynes (GA Bar # 340599)
        Michael Deane (GA Bar # 498195)
        Katherine M. Donald (GA Bar # 753449)
        ALSTON & BIRD LLP
        One Atlantic Center
        1201 West Peachtree Street
        Suite 4900
        Atlanta, GA 30309
        Tel: 404.881.7737
        Fax: 404.881.7777
        Email: john.haynes@alston.com
        Email: michael.deane@alston.com
        Email: katie.donald@alston.com

        Darlena Subashi (NY Bar # 5780747)
        ALSTON & BIRD LLP
        90 Park Avenue
        New York, NY 10016
        Tel: 212-210-9400
        Fax: 212-210-9444
        Email: darlena.subashi@alston.com

        Adam Ahnhut (TX Bar # 24106983)
        ALSTON & BIRD LLP
        Chase Tower
        2200 Ross Avenue, Suite 2300
        Dallas, TX 75201
        Email: adam.ahnhut@alston.com
        Tel: 214.922.3400
        Fax: 214.922.3899

        *Counsel for Third-Party Plaintiff Nokia of*
        *America Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on July 12, 2022.

*/s/ M. Scott Stevens*

M. Scott Stevens

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7(i), I hereby certify that counsel for Nokia and Broadcom participated in a lead and local meet and confer to discuss the issues presented in this motion on multiple occasions, including on Thursday, June 9, Friday, June 10, Wednesday, June 29, and Tuesday, July 5. Beyond conveying its particularized concerns orally on Thursday, June 9 and Friday, June 10, Nokia also served a letter on June 24, 2022. Broadcom provided its formal, written response immediately following the July 5th meet and confer.

*/s/ M. Scott Stevens*

M. Scott Stevens