# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| TQ DELTA, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:21-CV-00310-JRG |
| | § | (LEAD CASE) |
| COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC, | § § § § § § § § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| v. | § | |
| | § | |
| NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP., | § § § | CIVIL ACTION NO.  2:21-CV-00309-JRG (MEMBER CASE) |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| NOKIA OF AMERICA CORP. | § | |
| | § | |
| *Third-Party Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:21-CV-00309-JRG |
| | § | (MEMBER CASE) |
| BROADCOM CORP., BROADCOM INC., and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD. | § § § | |
| | § | |
| *Third-Party Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Broadcom Corp., Broadcom Inc., and Avago Technologies International Sales Pte. Ltd.'s (collectively, "Broadcom") Motion to Dismiss (the "Motion").  (Dkt. No. 114). Having considered the Motion, the related briefing, and the relevant authorities, the Court concludes that the Motion should be **DENIED**.

Additionally, before the Court are Broadcom's Opposed Motion to Enter Amended Docket Control Order (Dkt. No. 178); Broadcom's Opposed Motion to Enter Amended Discovery Over (Dkt. No. 179); Broadcom's Opposed Motion to Enter Amended Protective Order (Dkt. No. 194); Broadcom's Opposed Motion for Leave to File Second Response to Third-Party Plaintiff's New Arguments and Evidence (Dkt. No. 205); Nokia of America Corporation's ("Nokia of America") Motion to Compel Discovery from Broadcom (Dkt. No. 207); TQ Delta LLC ("TQ Delta") and Broadcom's Joint Motion to Sever Nokia of America's Indemnification Claim Against Broadcom (Dkt. No. 211); and Broadcom's Motion for Protective Order from Third-Party Plaintiff's Notice of 30(b)(6) Deposition (Dkt. No. 219) (collectively, the "Procedural Broadcom Motions").  In light of the Court's ruling on the Motion and for the further reasons discussed herein, the Court finds that the Procedural Broadcom Motions should be **DENIED-AS-MOOT**.

## I.    Background

### A.  The Instant Lawsuit

On August 13, 2021, TQ Delta LLC ("TQ Delta") filed its Complaint against Defendants Nokia Corporation, Nokia Solutions and Networks Oy, and Nokia of America in Case No. 2:21-cv-00309 (the "-309 action"), asserting infringement of 19 patents (the "Asserted Patents").  (-309 action, Dkt. No. 1).  That same day, TQ Delta filed a related lawsuit against Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS International Limited, ARRIS Global Ltd., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and

ARRIS Enterprises, LLC's (collectively, "CommScope") in Case No. 2:21-cv-00310 (the "-310 action"). (-310 action, Dkt. No. 1). On October 22, 2021, the Court consolidated the -309 and -310 actions with the -310 action designated as the lead case. (-310 action, Dkt. No. 23).

TQ Delta alleges that Defendants Nokia Corporation, Nokia Solutions and Networks Oy, and Nokia of America infringe the Asserted Patents because they make, use, sell, or offer to sell their products that comply with allegedly infringing DSL standards. (-309 action, Dkt. No. 1 at 6). On January 28, 2022, Nokia of America filed a Third-Party Complaint against Broadcom, asserting indemnification if TQ Delta is successful as to its claims for patent infringement against Defendants Nokia Corporation, Nokia Solutions and Networks Oy, and Nokia of America. (-310 action, Dkt. No. 70 at 48). Nokia of America's indemnification claim is based on the 2005 Frame Purchase Agreement (the "FPA"), under which Broadcom has agreed to defend and indemnify Nokia of America "for any loss, liability, damages, costs, and expenses arising from any claim alleging intellectual property infringement by the supplied components." (*Id.*).

On April 14, 2022, Broadcom filed its Motion asserting that (1) under Federal Rule of Civil Procedure 12(b)(6), Broadcom terminated the FPA and Nokia of America's right to seek indemnification did not survive termination; and (2) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3), even if Nokia of America is entitled to indemnification, the issue must be submitted to arbitration. (Dkt. No. 114 at 14, 17).

### B. Broadcom and Nokia of America's License Agreements

Broadcom is a semiconductor company and makes products for the wireless and broadband industry. (*Id.* at 6). "Alcatel-Lucent International [("Alcatel")] was a French American global telecommunications equipment company that was acquired by Nokia [of America] . . . in 2016." (*Id.*; Dkt. No. 114-2 at 3). Effective January 1, 2005, Broadcom Corp. and Alcatel (Nokia's

3

predecessor-in-interest) entered into the FPA. (Dkt. No. 114-2 at 3). The FPA contains an indemnity provision, which is the basis for Nokia of America's Third-Party Complaint against Broadcom. (Dkt. No. 70 at 48; Dkt. No. 114-2 at 3). The FPA does not contain an express survivability clause. (Dkt. No. 114-2). The FPA permits the parties to terminate it with 90 days written notice. (*Id.* at 4). The FPA also includes a choice-of-law and arbitration provision. (*Id.* at 14). In an amendment on September 21, 2011, the parties replaced the original choice-of-law and arbitration provisions with the following:

> This Agreement shall be governed by the laws of the state of New York without regard to any conflict-of-laws rules, and the United Nations Convention on Contracts for the International Sale of Goods is hereby excluded. *All disputes arising from, or in connection with, the Agreement which could not be settled amicably, shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce in New York* by one of more arbitrators appointed in accordance with the said rules; rules which the Parties recognize. The language of the arbitration shall be the English language.

(Dkt. No. 114-3 at 2 (emphasis added)).

> On December 1, 2012, the parties revised the indemnification to state the following:

> *Seller shall:* (i) defend or settle at its option and expense, any infringement claim against Buyer made by a third party (not including Alcatel or any other Buyer) alleging that any Product, standing alone or any part thereof furnished under this Agreement constitutes an infringement of any patent, copyright or trademark of said third party, *(ii) reimburse Buyer for any costs incurred relating to such allegation and pay all damages and costs in or settlement against Buyer. Buyer agrees to provide Seller with written notice of any such claim or suit as soon as reasonably practicable by the most expeditious reasonable means and in no event later than ten (10) business days after learning of the assertion of the claim against Buyer (whether or not litigation or other proceeding has been filed or served). Buyer further agrees that Seller shall have the sole right to control the defence and/or settlement or all such claims, in litigation or otherwise, and Buyer shall provide Seller with all cooperation, information and assistance for the defence of such claim or suit at Seller's sole expense.*

> In connection with defending or settling an indemnified infringement claim, Supplier shall not make any binding stipulation or enter into any settlement without Buyer's consent if such stipulation admits liability on Buyer's part in excess of Supplier's indemnification obligation or if such settlement would impose on Buyer

> an obligation to undertake or refrain from taking any actions in the marketplace, or
> to make any payments in excess of Supplier's indemnification obligations.

(Dkt. No. 114-4 at 2-3 (emphasis added)).  The FPA also provides, "This article states the exclusive liability of the Parties for intellectual property infringement."  (Dkt. No. 114-2 at 11).  On September 17, 2020, Broadcom provided Nokia of America with 90-day written notice of termination, which was effective January 1, 2021.  (Dkt. No. 114-5 at 2).

Effective May 1, 2017, Broadcom and Nokia of America entered into the 2017 Technology Partnership Agreement (the "TPA") "to expand their long-term collaboration in broadband access technologies as set forth in this Agreement."  (Dkt. No. 127-2 at 2).  The TPA "includes specific contractual provisions regarding Nokia of America's purchase of DSL chipsets from Broadcom under the FPA."  (Dkt. No. 127 at 8).  The TPA provides, "The Parties acknowledge and agree that the purchase by Nokia [of America] of any products from Broadcom shall be subject to the [FPA] between Broadcom Corporation and Alcatel-Lucent International dated 1st January 2005."  (Dkt. No. 127-2 at 3).  The TPA does not contain an indemnification clause.  (*See id.*).  The TPA contains an arbitration provision for all issues arising out of it:

> The Parties will use reasonable efforts to resolve any dispute arising out of the Agreement through a meeting of appropriate managers from each Party.  If the Parties are unable to resolve the dispute, either Party may escalate the dispute to its executives.  If an executive level meeting fails to resolve the dispute within thirty (30) days after escalation, *the dispute shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce in London by one or more arbitrators appointed in accordance with said rules*.  This provision will not affect either Party's right to seek injunctive or other equitable relief at any time.  The language to be used in all proceedings shall be English.  The governing law of the contract shall be the substantive law of England and Wales without application of conflict of law principles.  The Parties specifically disclaim the application of the United Nations Convention on Contracts for the International Sale of Goods of April 11, 1980.

(Dkt. No. 127-2 at 7–8 (emphasis added)).  For any conflicts between the TPA and FPA, the TPA states:

5

The terms and conditions contained herein together with the appendices attached hereto constitute the entire agreement and understanding between the Parties and supersedes all former and previous agreements arrangements, proposals, representations or statements (whether oral, written or implied from the conduct of the Parties), discussions, correspondence and negotiations between the Parties in relation to the subject matter of this Agreement. *In case of any conflict or inconsistency between the [FPA] and the sections C., D. and E. of this Agreement, the terms of this Agreement shall prevail*.

(*Id.* at 8 (emphasis added)).

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint if it "fails to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6); *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 826 (E.D. Tex. 2019). In evaluating a motion to dismiss, the Court must "accept all well-pleaded facts in the complaint as true and view the facts in the light most favorable to the plaintiff." *Motiva Patents*, 408 F. Supp. at 827 (quoting *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 304 (5th Cir. 2019)). The "plaintiff is generally required to provide 'only a plausible "short and plain" statement of the plaintiff's claim . . .'" *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 936 (E.D. Tex. 2016) (Bryson, J.) (quoting *Sinner v. Switzer*, 562 U.S. 521, 530 (2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

### B.  Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3)

Broadcom moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3). (Dkt. No. 114 at 10). The Fifth Circuit "has not decided whether Rule 12(b)(1) or 12(b)(3) is the proper vehicle for a motion to dismiss based on an arbitration provision." *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 n.5 (5th Cir. 2019). However, the court has

"accepted Rule 12(b)(3) as a proper method for seeking dismissal in favor of arbitration." *Id.* at 430.

### 1.   Rule 12(b)(1)

A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the Court's subject-matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  The Court generally will accept all "well-pleaded allegations in the complaint as true" and "construe those allegations in a light most favorable to Plaintiff."  *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).  The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "The court may consider disputed facts as well as undisputed facts in the record and make findings of fact related to the jurisdictional issue."  *Ramirez v. Lone Star Pediatrics, P.A.*, No. 3:13-CV-2035-L, 2014 WL 1281510, at *2 (N.D. Tex. Mar. 31, 2014) (citing *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986)); *see also Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (noting that when a motion and evidence brings the court's jurisdiction into question "no presumptive truthfulness attaches to plaintiff's allegations").

### 2.   Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to move for dismissal based on improper venue.  FED. R. CIV. P. 12(b)(3).  When an objection to venue is raised, the burden is on the plaintiff to establish that the chosen district is a proper venue.  *Knapper v. Safety Kleen Systems, Inc.*, No. 9:08-CV-84-TH, 2009 WL 909479, at *3 (E.D. Tex. Apr. 3, 2009).

## III.   DISCUSSION

### A.   Nokia of America asserts a valid claim for indemnification against Broadcom.

Broadcom argues that Nokia of America's Third-Party Complaint should be dismissed because "Nokia [of America] is attempting to enforce a terminated agreement without a

survivability clause." (Dkt. No. 114 at 14).  Broadcom contends that the indemnification provision terminated with the FPA because the indemnification provision did not contain a survivability clause.  (*Id.* at 15).  In response, Nokia of America contends that "the indemnification provision of the FPA survives termination as a matter of law" and "the FPA's indemnity provisions apply and entitle [it] to the relief sought through its impleader claim." (Dkt. No. 127 at 12).  The Court concludes that Nokia of America asserts a live claim for indemnification in its Third-Party Complaint against Broadcom because the TPA expressly incorporates the FPA.

The Court's primary concern in construing a written contract is to "ascertain the true intentions of the parties as expressed in the instrument." *In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App.—Corpus Christi, pet. denied).  As such, "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.*  To incorporate a document into a contract, "the referring language in the original document must demonstrate the parties intended to incorporate all or part of the referenced document." *Bob Montgomery Chevrolet, Inc. v. Dent Zone Companies*, 409 S.W.3d 181, 190 (Tex. App.—Dallas 2013, pet. denied).

Here, the TPA expressly incorporates the FPA by reference—"The Parties acknowledge and agree that the purchase by Nokia [of America] of any products from Broadcom shall be subject to the Frame Purchase Agreement Number 7011573 between Broadcom Corporation and Alcatel-Lucent International dated 1st January 2005." (Dkt. No. 127-2 at 3).  Further giving rise to the parties' intent to incorporate the FPA into the TPA is the TPA-merger provision, which states in relevant part—"In case of any conflict or inconsistency between the [FPA] and the sections C., D. and E. of this Agreement, the terms of this Agreement shall prevail." (Dkt. No. 127-2 at 8).  The parties do not dispute that Broadcom terminated the FPA effective January 1, 2021 (Dkt. No. 114

at 8; Dkt. No. 139 at 5 n.3); however, the Court notes that the parties do not dispute the validity of the TPA and neither party asserts that the TPA was terminated. *See Sierra Frac Sand, L.L.C. v. CDE Global Limited*, 960 F.3d 200, 204 (5th Cir. 2020) (quoting *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008) ("A party who signs an agreement is presumed to know its contents. That includes documents specifically incorporated by reference.")).  The TPA incorporates the FPA, and to the extent necessary to give meaning to such incorporation, it revives the FPA as part of the TPA.  Such includes the FPA's indemnification provision.  Accordingly, the Court finds that Nokia of America asserts a cognizable claim for indemnification in its Third-Party Complaint.

### B.  An arbiter must decide the question of arbitrability.

Finding that Nokia of America asserts indemnification against Broadcom, the parties dispute whether Nokia of America's claim is subject to arbitration.  (Dkt. No. 114 at 16–17; Dkt. No. 127 at 19).  In determining whether a matter is subject to arbitration, the Fifth Circuit provides a two-step inquiry:  (1) "whether the parties entered into any arbitration agreement at all"; and (2) whether the claim before a court "is covered by the arbitration agreement."  *Archer and White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 278 (5th Cir. 2019), *cert. dismissed as improvidently granted*, 141 S. Ct. 656 (2021) (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)).  Parties may enter into an arbitration agreement that delegates the foregoing gateway questions of arbitrability to an arbiter.  *Id.* at 278–79.

The question now before the Court is whether the parties delegated the decision of arbitrability to an arbiter.  A court must first decide whether "the parties entered into a valid agreement," and if so, the court must then determine "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated."  *Id.* at 279 (citation omitted).  There must be "clear and unmistakable"

9

evidence that the parties intended to agree to arbitrate arbitrability.  *Id.* (citation omitted).  "A contract need not contain an express delegation clause to meet this standard."  *Id.*  For example, the Fifth Circuit has held that "an arbitration agreement that incorporates the [American Arbitration Association] Rules 'presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'"  *Id.* (quoting *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012)).

The Court finds that, in this case, the parties delegated the decision as to arbitrability to an arbiter.  In the arbitration provisions of the TPA and FPA, the parties subject all arbitration disputes to the Rules of Conciliation and Arbitration of the International Chamber of Commerce (the "Rules").  (Dkt. No. 114-3 at 2; Dkt. No. 127-2 at 7–8).  Article 6(3) of the Rules provides:

> If any party against which a claim has been made does not submit an Answer, or if any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, *the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitral tribunal*, unless the Secretary General refers the matter to the Court for its decision pursuant to Article 6(4).

Arbitration Rules, INTERNATIONAL CHAMBER OF COMMERCE, art. 6(3) (January 1, 2021) (emphasis added).  Accordingly, the parties' incorporation of the Rules in the TPA and FPA "present[] clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *See, e.g.*, *Cooper v. WestEnd Cap. Mgmt., LLC*, 832 F.3d 534, 546 (5th Cir. 2016) (holding that express adoption of the JAMS Rules delegated arbitrability to arbiter); *see also, e.g.*, *Petrofac*, 687 F.3d at 675 (holding that the parties delegated arbitrability to the arbiter when they expressly incorporated the AAA Rules, which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.").

### C.  The question of arbitrability warrants severing and staying Nokia of America's indemnification claim.

Broadcom asserts that assuming the FPA mandates that the parties' disputes be resolved in arbitration, dismissing Nokia of America's sole allegation against Broadcom is appropriate because "retaining jurisdiction and staying the action will serve no purpose."  (Dkt. No. 114 at 17 (citing *The Shipman Agency, Inc. v. TheBlaze Inc.*, 315 F. Supp. 3d 967, 976 (S.D. Tex. 2018); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).

In determine whether to stay a case pending arbitration, the Federal Arbitration Act provides that "any issue referable to arbitration under an agreement in writing . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  The Fifth Circuit has directed that "if the issues in a case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay."  *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (quoting *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986)).  The Fifth Circuit provided a two-step framework such that "a court must 'first determine whether there is a written agreement to arbitrate'; then, 'whether any of the issues raised are within the reach of that agreement.'"  *Id.* (quoting *Midwest Mech. Contractors*, 801 F.2d at 750).

The Court has already determined that there is a written agreement (i.e., the TPA and FPA) to arbitrate.  Turning to the second prong, the presence of the arbitration clause is clear, but the issue of arbitrability remains unanswered.  Taken as a whole, the scope of the arbitration clause under these facts favors a stay.  *See Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985) ("[W]henever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration.").  As a result,

11

the Court concludes that it should sever and stay Nokia of America's claim for indemnification pending an arbiter's decision of arbitrability and pending the establishment of an underlying obligation to be indemnified.

## IV.     CONCLUSION

Having considered the Motion, the Court finds that it should be and hereby is **DENIED**. Further, the Court finds that the Procedural Broadcom Motions are **DENIED-AS-MOOT**.

## V.     ORDER

The Court finds that Nokia of America asserted a cognizable claim for indemnification against Broadcom.  (*See* Dkt. No. 70 at 48).  Accordingly, Nokia of America and Broadcom are **ORDERED** to seek from an arbiter a determination as to whether Nokia of America's claim for indemnification is arbitrable pursuant to the TPA and FPA, and if determined to be arbitrable, until arbitration is completed.  The parties shall promptly notify the Court by notice filed on the docket within **ten (10) days** as to the arbiter's decision on arbitrability, and again if found arbitrable, when the arbitration process has been completed.  To facilitate such, it is **ORDERED** that Nokia of America's claim for indemnification against Broadcom is **SEVERED** from Lead Case 2:21-cv-00310, and once severed as a new case on the Court's docket, it is **STAYED** pending the arbiter's decisions described above.

So ORDERED and SIGNED this 21st day of July, 2022.

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE