# EXHIBIT C

| | |
|---|---|
| **From:** | Rudy Fink <rfink@davisfirm.com> |
| **Sent:** | Friday, July 22, 2022 6:19 PM |
| **To:** | Wroblewski, Karlee; Nokia309 |
| **Cc:** | TQDelta Listserv |
| **Subject:** | RE: TQD v. Nokia - Follow-up from meet and confer |

**EXTERNAL SENDER – Proceed with caution**

Karlee:

As we said on July 10 (below), if Nokia wants to provide a concrete proposal on what will be summarized and how, we will consider it.

As we said in our motion, we believe we will need more than 3 hours with Mr. Van Bruyssel given his decades of relevant experience and multiple areas of relevant knowledge.  We do not know how much time we will need, because we have not yet had a chance to explore his personal knowledge.  But we are not interested in taking up more of his time than necessary.  However, for the sake of avoiding burdening the Court, we will agree to complete the deposition in 5 hours (on the record), if Nokia represents that Mr. Van Bruyssel will not be coming to trial and Nokia agrees that it will not object to providing additional time for 30(b)(1) witness that Nokia designates under 30(b)(6) (otherwise we will likely be right back in the same position with no time left in discovery to move the Court for relief).

As we have moved for, the deposition would be under 30(b)(1), so we would be asking Mr. Van Bruyssel about his personal knowledge, not Nokia's corporate knowledge.  His relevant personal knowledge may, potentially, touch on areas similar to some 30(b)(6) topic, but we would only be asking him about his personal knowledge not Nokia's.

Regards,
Rudy Fink

**From:** Wroblewski, Karlee <Karlee.Wroblewski@alston.com>
**Sent:** Wednesday, July 20, 2022 7:34 PM
**To:** Rudy Fink <rfink@davisfirm.com>; Nokia309 <Nokia309@alston.com>
**Cc:** TQDelta Listserv <tqd@davisfirm.com>
**Subject:** RE: TQD v. Nokia - Follow-up from meet and confer

Rudy,

Thank you for the below email.  We would like to continue our discussion with respect to each party's motion to compel.

With respect to your comments regarding commercial success, we don't understand how detailed sales information is necessary to the inquiry about commercial success.  However, we are open to discussing providing summary information that would allow for the assessment that you seek.

With respect to TQ Delta's motion to compel a second deposition of Mr. Danny Van Bruyssel, in an effort to seek a compromise, Nokia is willing to offer Mr. Van Bruyssel for three additional hours to testify solely in response to your

1

30(b)(1) notice, so long as TQ Delta agrees not to further question Mr. Ven Bruyssel regarding the 30(b)(6) topics that he was designated for previously.  Please let us know if you agree.

Best,
Karlee

**Karlee N. Wroblewski | Alston & Bird LLP**
704.444.1299 office **|** 715.808.4562 mobile

**From:** Rudy Fink <rfink@davisfirm.com>
**Sent:** Sunday, July 10, 2022 1:20 PM
**To:** Nokia309 <Nokia309@alston.com>
**Cc:** TQDelta Listserv <tqd@davisfirm.com>
**Subject:** TQD v. Nokia - Follow-up from meet and confer

**EXTERNAL SENDER – Proceed with caution**

Scott:

We wanted to follow up on Nokia's statements today that it might be willing to produce some kind of worldwide summary information for sales/units or it might be willing to produce some kind of general stipulation on commercial success (e.g., "that there was commercial success outside the U.S.").  Given that we were still at an impasse in our conference, we filed our motion, but that does not mean we are not still open to reaching a resolution.

On the summary information, TQD simply does not have knowledge about the fields Nokia keeps on worldwide sales to allow it to state what fields could be summarized.  If Nokia wants to provide a concrete proposal, we are happy to evaluate it.

Since Nokia has not provided the specific wording of any stipulation, it makes it very difficult to evaluate.  At a high level, our main issue with a stipulation on a *Georgia-Pacific* factor, using commercial success as an example, is that it deprives TQD (and its expert) of the underlying information to allow the assessment of the details of commercial success.  The details matter and *Georgia-Pacific* requires them to be considered.  A stipulation would, effectively, remove the details of those facts from the hypothetical negotiation.  Similarly, it deprives TQD of the ability to present that detail to the jury.  Said another way, Nokia's position is that it could, potentially, avoid discovery on the *Georgia-Pacific* factors by stipulating that they exist or weigh in TQD's favor.  But TQD's problem is that such a stipulation does not give TQD the evidence to allow its expert to consider how the hypothetical negotiation would play out or to present detailed evidence to the jury (the ultimate audience) to let the jury reach its own conclusions.

Regards,

Rudy Fink
**DAVIS FIRM, P.C.**
(903) 218.0783 (office)