IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **TQ DELTA, LLC,**<br><br>     *Plaintiff*,<br>  v.<br><br>**COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,**<br><br>     *Defendants*. | CIV. A. NO. 2:21-CV-310-JRG<br>(Lead Case) |
| **TQ DELTA, LLC,**<br><br>     *Plaintiff*,<br>  v.<br><br>**NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.,**<br><br>     *Defendants*. | CIV. A. NO. 2:21-CV-309-JRG<br>(Member Case) |

**NOKIA'S OPPOSITION TO TQ DELTA, LLC'S
FIRST MOTION TO COMPEL DISCOVERY FROM NOKIA (Dkt. 198)**

███████████████████████████

# TABLE OF CONTENTS

I.     FACTUAL BACKGROUND ...................................................................................1

II.    TQD IS NOT ENTITLED TO NOKIA'S FOREIGN SALES INFORMATION ................................................................................................2
      A.     TQD Seeks Overbroad and Irrelevant Discovery ................................2
      B.     TQD's Relevance Arguments Do Not Overcome the Presumption Against Extraterritoriality ................................................3
            1.     Nokia's Worldwide Sales Are Not Relevant to the Hypothetical Negotiation ............................................................3
            2.     Worldwide Success Does Not Bear on the Validity of TQD's Patents .....................................................................5

III.   TQD IS NOT ENTITLED TO THIRD-PARTY MARKET STUDIES .........6

IV.    CONCLUSION .................................................................................................7

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Nokia opposes TQ Delta's Motion to Compel Discovery (Dkt. 198) seeking (1) financial information for sales of non-accused products occurring entirely outside the United States and (2) third-party market studies that Nokia is restricted from providing but that are available to TQD directly from the research companies that prepared the reports. The first request should be denied because TQD has not rebutted the presumption against extraterritoriality, and the discovery is not relevant. TQD's second request should be denied because the reports are available to TQD directly from the third parties, and ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.[1]

### I.   FACTUAL BACKGROUND

TQD propounded extensive and overbroad discovery requests, four of which form the basis for its motion. Opening at 2; TQD Ex. 1, Req. Nos. 92, 93, 107, 112. Nokia responded to TQD's requests and objected on the basis that they sought, in part, information that is not relevant to any claim or defense in the case. Nokia also offered to meet-and-confer with TQD about the scope of the requests. *Id*. As outlined in TQD's Local Rule CV-7(h) and (i) certificate,[2] TQD agreed to meet-and-confer. The parties continued their discussions up to and including July 8 when TQD nonetheless filed its Motion.

Nokia has continued its efforts to resolve TQD's objections through compromise, even after the Motion was filed. On July 8 the parties again met-and-conferred, and Nokia offered to provide TQD with a stipulation directed to commercial success outside of the United States and providing summary worldwide sales data. Ex. A (TQD July 22, 2022 E-mail); Stevens Decl. at ¶¶ 2-3. TQD refused. *Id*. In subsequent discussion, Nokia again offered to resolve this dispute through

---

[1] TQD also moved to compel "pre-2015 sales" for the Accused Products. Opening, 3-4. Nokia produced those very documents on May 27, 2022, and thus TQD's request should be denied as moot.

[2] TQD's certificate lists the wrong parties. Nokia disagrees with TQD's characterizations in its "summary" of the discussions.

1

a stipulation, but TQD again declined. *Id*.

## II. TQD IS NOT ENTITLED TO NOKIA'S FOREIGN SALES INFORMATION

### A. TQD Seeks Overbroad and Irrelevant Discovery

While "[i]nformation within [Rule 26's] scope of discovery need not be admissible in evidence to be discoverable," it is required to be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). TQD broadly requests extensive sales data "outside the U.S. (e.g., international sales)" regardless whether the sales are relevant to infringement. Indeed, TQD has not argued that its requested discovery relates to, or is limited to, its infringement allegations in this case; instead, it asks for foreign sales for products that are not even accused in this litigation. TQD Ex. 1, Request No. 92. Thus, TQD has not demonstrated that the discovery is relevant to any claim or defense.

TQD's request for outside-U.S. sales data runs afoul of the presumption against extraterritoriality. "The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-55, 127 S. Ct. 1746, 1758 (2007). Indeed, "[i]t is axiomatic that U.S. patent law does not operate extraterritorially to prohibit infringement abroad." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013). The Supreme Court has explained that Section 271(a)'s reach is limited to activity within the United States as "no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007); *see also Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1546 (Fed. Cir. 1987) (Fed. Cir. 1988) (affirming district court's denial of damages for foreign sales because such sales did not infringe). Indirect infringement under Section 271(b) or (c) likewise requires underlying direct infringement in the United States. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012). The presumption against extraterritoriality even applies to Section 271(f), notwithstanding its explicit reference to foreign activities. *Microsoft*, 550 U.S. at 455-56.

United States patent law allows for "damages adequate to compensate for the infringement." 35 U.S.C. § 284. TQD seeks reasonable-royalty damages determined via a hypothetical negotiation. Opening, 2-3. As Section 284 makes clear, buttressed by the presumption against extraterritoriality, U.S. patent laws do not "provide compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all." *Power Integrations*, 711 F.3d at 1371. The Federal Circuit has confirmed it is unaware of "any case law that supports an award of damages for sales consummated in foreign markets, regardless of any connection to infringing activity in the United States." *Id*. at 1371.

### B.     TQD's Relevance Arguments Do Not Overcome the Presumption Against Extraterritoriality

TQD argues that Nokia's international sales data should be compelled as relevant to a reasonable royalty and to commercial success. Neither is sufficiently relevant to overcome the presumption against extraterritoriality.

#### 1.     Nokia's Worldwide Sales Are Not Relevant to the Hypothetical Negotiation

TQD argues that extraterritorial sales data may be relevant to the determination of a reasonable royalty for damages because it could be considered in the hypothetical negotiation. Opening, 3. But as explained below, the hypothetical-negotiation exercise is not so sweeping that it encompasses international sales that Nokia is legally allowed to make. And, in any event, Nokia has offered to provide a stipulation that obviates the justifications that TQD has provided regarding the alleged relevance of the worldwide sales to the hypothetical negotiation.

A hypothetical negotiation involves the well-established factors delineated in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970), but none of the factors support a conclusion that a party (Nokia) would agree to pay, at a negotiation involving U.S. patents, for the right to engage in foreign sales that have no bearing on those U.S. patents.

3

*See Enpat, Inc. v. Microsoft Corp.*, 6 F. Supp. 2d 537, 539-40 (E.D. Va. 1998). This makes sense because "patent damages are limited to those 'adequate to compensate for the infringement'"; therefore, the "[t]he royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) (quoting 35 U.S.C. § 284). Extraterritorial sales, like those TQD seeks in its Motion, do not pertain to alleged patent infringement in the U.S. and therefore are not relevant to the analysis.

Many courts agree that a defendant's foreign sales information is not relevant to the hypothetical negotiation. *Kajeet, Inc. v. Qustodio, LLC*, 2019 U.S. Dist. LEXIS 227979, at *39-40 (C.D. Cal. Oct. 22, 2019) ("[I]information regarding defendant's foreign sales is not relevant to the hypothetical negotiation of the reasonable royalty amount because defendant would not be liable for foreign sales that do not violate U.S. patent laws."); *Enpat*, 6 F. Supp. 2d at 539-40 ("Microsoft's foreign sales may not be taken into account in any determination of a reasonable royalty."); *France Telecom S.A. v. Marvell Semi. Inc.*, 39 F. Supp. 3d 1080, 1098-101 (N.D. Cal. 2014) (foreign sales not appropriate in determining reasonable royalty).

TQD argues that Nokia's worldwide sales could bear on "a ceiling amount" for a reasonable royalty or on Nokia's financial health. Opening, 3 (quoting *Evs Codec Techs. v. Oneplus Tech. Shenzhen Co.*, No. 2:19-CV-00057-JRG, 2020 U.S. Dist. LEXIS 204027, at *5 (E.D. Tex. Apr. 9, 2020)). But Nokia has offered to stipulate to summary worldwide composite sales data for products actually accused in this litigation, which would satisfy both justifications without subjecting Nokia to burdensome discovery into inadmissible detailed sales data for products that have no bearing whatsoever on this litigation. TQD nevertheless has refused to date. Ex. A; Stevens Decl. at ¶¶ 2-3. TQD's refusal of Nokia's offers suggests that its requests are not really about alleged relevance to a "ceiling amount" for a reasonable royalty, nor the "overall

4

financial health of a company," but rather there is no legitimate basis for its requests. Opening, 3.

### 2. Worldwide Success Does Not Bear on the Validity of TQD's Patents

TQD next urges that outside-U.S. sales could theoretically relate to alleged commercial success of the patents, although TQD does not explain how. Opening, 1-3. The objective indicia of commercial success must bear a nexus to the claimed inventions. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006). While Nokia recognizes that the *Evs* court held that worldwide sales information could be discoverable even if it does not meet the "nexus" requirement, that holding was in the context of a narrow relevance objection that the party did "not market the accused features." *Evs*, 2020 U.S. Dist. LEXIS 204027, at *5. Here, Nokia's objection is different. The alleged commercial success is relevant only if that success is for a product falling within the scope of the patent claims. That logic breaks down when considering outside-U.S. sales.

Under U.S. patent law, companies already have the right to sell products abroad despite any U.S. patents, and that right remains throughout the life of the U.S. patents. Thus, a product's international success does not indicate whether a U.S. patent was or was not obvious. U.S. patents have no bearing on whether international products may be sold.

In addition to not meeting the "nexus" requirement for admissibility, such information is not discoverable for the additional reason that it is not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Therefore, TQD's generalized "commercial success" explanation is insufficient to establish relevance, particularly in view of the presumption of extraterritoriality. The Court should therefore deny TQD's motion seeking to compel Nokia to produce its worldwide sales information.

Irrespective, as noted above, Nokia has offered to stipulate that its products have enjoyed overseas commercial success. *See* Stevens Decl. at ¶¶ 2-3; Ex. A. Assessing the relevance (Nokia maintains there is none) of such commercial success on the question of non-obviousness of TQD's

patents would be mooted by Nokia's proposed stipulation. *Id.*

### III. TQD IS NOT ENTITLED TO THIRD-PARTY MARKET STUDIES

TQD seeks annual third-party market research reports from two research companies, specifically Dell'Oro and Ovum, which it could readily itself go and obtain. Dell'Oro and Ovum make their studies available for purchase and download by anyone, including TQD—which itself has purchased these reports in the past.

During a meet-and-confer, Nokia explained that *See* Ex. B. Nokia also explained that the reports are publicly available if TQD really wants them, but that the reports are purely hearsay and thus not probative of any issue in any event. TQD's allegation that "Nokia's only explanation" is "that the reports are 'publicly available'" is therefore not accurate.

TQD stretches the holdings of its cited cases, and none of cases bears on the scenario raised by TQD's Motion. Opening, 7. For instance, *Martino v. Kiewit N.M. Corp.* considered a Rule 37 exclusionary order for a non-produced contract that, critically, the **non-movant** relied on for purposes of the litigation (in support of a summary-judgment opposition brief). 600 Fed. Appx. 908, 911 (5th Cir. 2015). The non-movant was obligated "under Rule 26(a)(1)(A) to provide notice of evidence central to ***its claims or defenses***," thus warranting production of the contract in question. Here, Nokia is not relying on the market studies for any purpose in this litigation.

Similarly, *Geotag, Inc. v. Frontier Commc'ns Corp.* concerned the production of certain "code" that was required to be produced under the local patent rules. Case No. 2:10-cv-265-JRG, 2013 WL 12141427, *2 (E.D. Tex. June 26, 2013). Here, by comparison, the Discovery Order says

6

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ nothing about third-party hearsay documents that TQD could obtain on its own, and for which Nokia is subject to dissemination restrictions. Nokia therefore respectfully requests that the Court deny TQD's motion seeking the production of these two third-party market studies. The market studies are equally available to TQD directly from the research companies. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## IV.  CONCLUSION

For the foregoing reasons, Nokia respectfully requests that the Court deny TQD's First Motion to Compel Discovery from Nokia.

Dated: July 25, 2022

Respectfully submitted,

By: /s/ M. Scott Stevens
M. Scott Stevens (NC Bar # 37828)
Kirk T. Bradley (NC Bar # 26490)
Karlee Wroblewski (NC Bar # 55043)
Nic Marais (NC Bar # 53533)
ALSTON & BIRD LLP
One South at the Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Tel: 704.444.1000
Fax: 704.444.1111
Email: scott.stevens@alston.com
Email: kirk.bradley@alston.com
Email: karlee.wroblewski@alston.com
Email: nic.marais@alston.com

John D. Haynes (GA Bar # 340599)
Michael Deane (GA Bar # 498195)
Katherine M. Donald (GA Bar # 753449)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
Tel: 404.881.7737
Fax: 404.881.7777

Email: john.haynes@alston.com
Email: michael.deane@alston.com
Email: katie.donald@alston.com

Darlena Subashi (NY Bar # 5780747)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Tel: 212-210-9400
Fax: 212-210-9444
Email: darlena.subashi@alston.com

Adam Ahnhut (TX Bar # 24106983)
ALSTON & BIRD LLP
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Email: adam.ahnhut@alston.com
Tel: 214.922.3400
Fax: 214.922.3899

*Counsel for Defendants*
*Nokia Corporation, Nokia Solutions*
*and Networks Oy, and*
*Nokia of America Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on July 25, 2022, on all counsel who have consented to electronic service via ECF.

                                                  /s/ *M. Scott Stevens*
                                                  M. Scott Stevens
                                                    M. Scott Stevens

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

                                                  */s/ M. Scott Stevens*
                                                  M. Scott Stevens

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on July 27, 2022, on all counsel who have consented to electronic service via ECF.

                                                          /s/ *M. Scott Stevens*
                                                          M. Scott Stevens