# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>   *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>   *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br>(Lead Case) |
| TQ Delta, LLC,<br>   *Plaintiff*,<br><br>v.<br><br>Nokia Corp., *et al.*,<br>   *Defendants*. | Civil Action No.: 2:21-CV-00309-JRG<br>(Member Case) |

**TQ DELTA, LLC'S
RESPONSE TO DEFENDANTS' OPPOSED MOTION
TO EXPEDITE BRIEFING SCHEDULE REGARDING DEFENDANTS'
<u>SECOND MOTION FOR ENTRY OF ORDER FOCUSING PATENT CLAIMS</u>**

I.  **INTRODUCTION AND OVERVIEW**

The Court should deny Defendants' Opposed Motion to Expedite Briefing Schedule Regarding Defendants' Second Motion for Entry of Order Focusing Patent Claims (Dkt. No. 244) ("Motion to Expedite") for Defendants' Second Opposed Motion for Entry of Order Focusing Patent Claims (Dkt. No. 243) ("Motion").  Under the local rules, TQ Delta ("TQD") has 14 days to respond, which places the deadline on Tuesday, August 16.  L.R. CV-7(f) (14 days to respond), CV-5(a)(3)(C) ("documents filed electronically after 5:00 p.m. Central Time shall be deemed served on the following day").  <u>Defendants' Motion is, in another guise, truly a motion to dismiss almost all of TQD's entire case</u> (or grant summary judgment in Defendants' favor), <u>forcing TQD to drop most of its currently asserted claims and patents</u>.  Defendants' attempt to both seek this dispositive relief on an expedited basis, giving TQD <u>only three days to respond</u> (until Friday), and <u>denying TQD the chance of a sur-reply</u>, is highly prejudicial.  TQD needs the full measure of time to respond, given the complexity of the issues, the dispositive nature of the relief requested, and the schedule of events occurring in the close of discovery.

Defendants' request is highly improper for five reasons:

1. Defendants now seek dispositive relief on an exigent timetable, but Defendants could and should have brought their Motion earlier in this case.  The current Order (Dkt. No. 128) is a structure that Defendants proposed.  (*See* Dkt. No.77).  If Defendants wanted a fundamentally different narrowing structure, they should have proposed that originally or, at worst, sought that months ago, not waited until the very end of discovery and after TQD developed its case in repeated reliance on the Order's structure.  The inopportune timing of this issue is of Defendants' own creation.

2. The parties are in the last two weeks of fact discovery and virtually every hour is spoken for (e.g., depositions are occurring almost every day (often more than one each day)), making it

1

exceptionally difficult to respond on an expedited basis at this time.[1] Defendants have also filed 13 IPRs, and this Friday, which Defendants propose as the response deadline, is also the deadline for TQD's responses in two IPR proceedings. Today, the parties reached an agreement to seek an amended schedule, adding four days to discovery, but this time is already claimed to complete outstanding depositions and receive final discovery.[2]

3. Contrary to their claims, substantial and material discovery is still outstanding. Most of the documents in this case were produced recently (e.g., all of Defendants' source code was made available for inspection in the last week).[3] Most of the depositions in the case have yet to occur (and most of the depositions that have occurred were taken in the last 7 business days). In other words, Defendants have deprived TQD of the information it should have had in making its earlier narrowing decisions, and TQD does not yet have the material it needs to fully consider their current proposal.

4. As the Court can appreciate, Defendants' new narrowing proposal is a complex topic with claim-dispositive effects (essentially seeking to dismiss most of TQD's case), and it will take TQD significant time to analyze the issues (e.g., the number of technologies, products, and patents at issue and the complex legal effects of narrowing) and to prepare its response.

5. The burden, to the extent there is any, of additional work overwhelmingly falls on TQD, not Defendants. It is TQD's obligation to prove infringement and to serve opening reports on infringement. That process requires a great amount of evaluation of technical documents,

---

[1] For example, on Defendants' proposed Friday deadline, TQD is also set to depose a witness who Nokia just now (shortly after it filed its Motion) asserts it will designate as an expert.
[2] The parties have also reached an agreement for a two-week extension of the expert-report schedule. TQD sought this extension because, given the sheer volume of discovery coming in, there was no realistic way to review that information before the existing expert-report deadline.
[3] TQD is still in the early stages of inspecting this source code.

including source code. To the extent there is more work due to the number of asserted claims, that burden will fundamentally fall on TQD. Defendants do have opening validity reports, but given proceedings that have already occurred on validity—the substantial number of IPRs Defendants have filed and Defendants' reliance on art, arguments, and experts from the Delaware case—those theories have been well tested and the effort is minimal in comparison.

## II.    ARGUMENT

Defendants delayed in filing their Motion, and they should not be allowed to benefit from their delay, especially given the stakes of their Motion. Defendants could (and should) have made this proposal earlier in the case, including in their original motion back in February. Instead, they waited to spring this issue at the end of the case (before the close of discovery). Defendants also waited until after TQD had completed its final narrowing under the Court's Order, receiving the full benefit of TQD's compliance. If Defendants had raised this issue earlier in the case, such as well in advance of TQD's claim narrowing, there would have been time to address the issue and, at least some, time to plan the case around its effects. Respectfully, Defendants should not be allowed to delay and then expect TQD to respond on an expedited basis.

TQD's evaluation process is complicated because substantial discovery is ongoing. Defendants each <u>produced more documents in the month of July than they did in the entire case prior to that point</u> (despite the April substantial-completion deadline and the January P. R. 3-4(a) technical-document deadline). Depositions are also now occurring. CommScope, for example, only provided dates for its depositions in the last 12 days of discovery. The Defendants have also only just now made source code available for inspection, despite the January deadline for its production under P.R. 3-4(a). In other words, Defendants have denied TQD the discovery it could have used to understand this issue (and discovery they should have provided under the Court's

3

orders before TQD's prior narrowing deadlines). Asking TQD to respond on an expedited basis while material discovery is still forthcoming is additionally prejudicial.

TQD's position in responding is further complicated because it relied on the Court's order in developing its case. As the Court is aware, Defendants' proposal is the third time Defendants have moved to narrow the case.[4] The Court's existing narrowing order, which has a structure Defendants' requested, sets forth both per-patent and total claim limits. (Dkt. No. 128). TQD has twice followed that order and planned its case accordingly, already dropping around 4/5ths of the originally asserted claims (down to 24 total claims across both cases from 128 originally) and several of the originally asserted patents. Defendants point to the number of patents (not claims), but they do not explain that the patents are grouped into related families (many with identical or virtually identical specifications) reducing any trial impact. Now, at a critical moment, Defendants are proposing an entirely different structure—based on standards not counts of patents and claims—that upends the existing procedure. It is unclear how Defendants' proposal would even work, and it will take TQD considerable time to evaluate the factual and legal effects Defendants' Motion would have on TQD's case.[5]

Finally, there is no reason to expedite briefing because the Court's existing Order is working as intended and the parties have relied on its structure. TQD has twice narrowed its case according to the Court's order, and TQD is continuing to evaluate narrowing its case further. Defendants' failure to timely produce documents, including source code, despite the Court's orders

---

[4] The first time Defendants moved for a procedural narrowing order (Dkt. No. 77) was back in February. On May 2, the Court entered its model narrowing order in both cases. (Dkt. No. 128). Next, Defendants argued the Court's per-case narrowing order applied across both cases, essentially cutting the number of claims TQD could assert in half and ignoring the different per-case issues. The Court denied this request. (Dkt. No. 167).

[5] Defendants do not appear to be giving up anything in return.

has made this process hard for TQD. Responding to Defendants' numerous IPRs, which have institution decision dates prior to trial, has further complicated this process.[6] While Defendants make much of the total number of patents, it is critical to remember that these are patents grouped into similar families. In other words, many share identical or virtually identical specifications, meaning their impact at trial would be akin to claims from a single patent.

TQD understands and appreciates the Court's statement that "[t]his Order contemplates that the parties and the Court may further narrow the issues during pretrial proceedings in order to present a manageable case at trial." (Dkt. No. 128, p. 3 n.3). TQD understands that the Court's order anticipates that the case "may further narrow … during pretrial proceedings" following expert discovery, and that the Order did not intend to force a final trial narrowing before even expert discovery was completed. TQD is actively working to narrow its case and will continue to do so. Defendants are still producing significant discovery and most depositions have yet to occur.

## III.     CONCLUSION

TQD, respectfully, asks the Court to deny Defendants Motion to Expedite. The timing of the Motion could almost not be worse given all of the activity and last-minute discovery that is occurring. Defendants took their time to file their Motion, waiting until the end of the case to raise the issue. Defendants have also delayed in providing the discovery that TQD would rely on in responding on this issue (and should have had for its earlier narrowing). Defendants have benefitted from their delay. Defendants should not be allowed to use their delay to further prejudice TQD's response or its entire case (given the sweeping effects proposed in Defendants' Motion). As discussed above, the Court's Order is working as intended.

---

[6] While the Court's Order required the Defendants to pick a finite set of prior art, Defendants have, essentially, circumvented this limit using the IPRs.

Dated: August 2, 2022

/s/ Rudolph Fink IV

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

*Counsel for TQ Delta, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this August 2, 2022 on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

**/s/ Rudolph Fink IV**
Rudolph Fink IV
