IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **TQ DELTA, LLC,** <br>       *Plaintiff*, <br>   v. <br><br> **COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC** <br>       *Defendants*. | CIV. A. NO. 2:21-CV-310-JRG <br> (Lead Case) |
| **TQ DELTA, LLC,** <br>       *Plaintiff*, <br>   v. <br><br> **NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.,** <br>       *Defendants*. | CIV. A. NO. 2:21-CV-309-JRG <br> (Member Case) |

**SECOND OPPOSED MOTION FOR ENTRY OF ORDER
FOCUSING PATENT CLAIMS**

  Defendants Nokia of America Corporation, Nokia Corporation, Nokia Solutions and Networks Oy (collectively, "Nokia"), and CommScope Holding Company, Inc., CommScope Inc., ARRIS International Limited, ARRIS Global Ltd., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC (collectively, "CommScope") (together, "Defendants") respectfully move the Court to enter the attached proposed Second Order Focusing Patent Claims. Plaintiff TQ Delta, LLC ("TQ Delta") opposes. Given that opening

expert reports are currently due on August 15, 2022[1], Defendants seek expedited briefing with TQ Delta's opposition brief due Friday, August 5, 2022.[2]  If the Court grants expedited briefing, Defendants do not believe any reply or sur-reply briefs are necessary.

## INTRODUCTION

Despite the current Focusing Order (Dkt. 128), TQ Delta continues to assert an untenable number of patents: 14 against Nokia and 12 against CommScope.  Even TQ Delta acknowledges that it cannot possibly try that number of patents and will have to narrow the case.  Back in February (during briefing leading to the current Focusing Order), TQ Delta argued that it first needed a *Markman* ruling and fact discovery before it could narrow the case. Dkt. 85 at 3–4, 7–8.  Both of those have now happened.  TQ Delta now focuses on an alleged need to complete expert reports and expert discovery before it can narrow the case for trial.  There is no basis for the continued delay.  TQ Delta knows it needs to narrow the case for trial, and TQ Delta has all the information it needs to do so; it just wants to delay its decision.  But Defendants should not be forced to expend significant—very significant—resources preparing expert reports and completing expert discovery for 14 patents and 12 patents, respectively, only to learn after the fact exactly which few patents TQ Delta actually will proceed with at trial.  Whether intentional or not, that gamesmanship should not be allowed.

Moreover, there is a clear solution that avoids any real prejudice to TQ Delta.  TQ Delta's licensing model has consistently applied a per-standard approach rather than, for example, a per-patent approach.  Thus, TQ Delta can pursue the same, full damages approach by focusing this case to just one patent per standard.  TQ Delta currently accuses five standards against Nokia and

---

[1] The parties intend to file a motion imminently requesting to extend this date to August 29, 2022.

[2] Defendants are concurrently filing a motion for expedited briefing.

four against CommScope. Limiting this case to one patent per standard thus provides a clear and fair approach for narrowing this case.  There would be no prejudice to TQ Delta, the case would be focused to a more reasonable size, and the parties and the court would avoid wasting valuable resources addressing issues directed to patents that will never be part of the trial in this case.

## FACTUAL BACKGROUND

### I.     TQ Delta's Minimal Case Narrowing

TQ Delta served its P.R. 3-1 Disclosures on November 4, 2021, asserting 128 claims from 22 patents (108 claims across 19 patents against Nokia and 80 claims across 13 patents against CommScope).  In many instances, a single patent was asserted against multiple standards that are allegedly implemented in Defendants' products.

Defendants moved for a Focusing Order on February 4, 2022.  Dkt. 77.  On May 2, 2022, tracking the model order, this Court entered an Order Focusing Patent Claims and Prior Art, emphasizing the goal of promoting a "'just, speedy, and inexpensive determination' of this action, as provided by Federal Rule of Civil Procedure 1." Dkt. 128 at 2.[3]  As the Court later explained, "[t]he parties are to consider such Order as the <u>minimum</u> threshold for narrowing in these cases, and the parties shall use their best efforts to further narrow the claims, prior art references, and any defensive theories to the greatest extent possible so as to minimize the expenditure of necessary resources by both the parties and the Court." Dkt. 167 at 2 (emphasis in original).

As required by the Focusing Order, TQ Delta completed its first-round of focusing to a total of 32 claims against each Defendant on May 9, 2022, but in doing so *TQ Delta did not*

---

[3] The Court granted-in-part Defendants' Motion.  The Court did not accept the Defendants' request for the number of prior-art references being based off of the number of remaining patents.  Dkt. 128 at 3.

*withdraw any patents*.  TQ Delta continued to assert 19 patents against Nokia and 13 patents against CommScope through *Markman*.  Ex. A.

The Focusing Order further required TQ Delta to focus the case to 16 asserted claims by July 18, 2022.  On July 19, TQ Delta again narrowed the number of asserted claims, but continued to assert an untenable number of patents.  Ex. B.  TQ Delta currently asserts *14 patents* involving 16 claims against Nokia and *12 patents* involving 16 claims against CommScope, as follows:

| Patents and Claims Asserted Against Nokia ||
|---|---|
| **Asserted Patent** | **Asserted Claim(s)** |
| 7,570,686 | 36 |
| 7,844,882 | 9 |
| 8,090,008 | 14 |
| 8,468,411 | 10, 18 |
| 8,495,473 | 28 |
| 8,594,162 | 9 |
| 8,937,988 | 16 |
| 9,094,348 | 1 |
| 9,154,354 | 10 |
| 9,300,601 | 8 |
| 9,485,055 | 17 |
| 9,547,608 | 2 |
| 9,894,014 | 1 |
| 10,833,809 | 4, 6 |

| Patents and Claims Asserted Against CommScope ||
|---|---|
| **Asserted Patent** | **Asserted Claim(s)** |
| 7,453,881 | 17, 23 |
| 7,570,686 | 36 |
| 7,844,882 | 13 |
| 8,090,008 | 14 |
| 8,276,048 | 5 |
| 8,462,835 | 10 |
| 8,468,411 | 10, 18 |
| 8,937,988 | 16 |
| 9,094,348 | 9, 10 |
| 9,154,354 | 10 |
| 9,485,055 | 17 |
| 10,833,809 | 11, 13 |

## II.     TQ Delta's Per-Standard Licensing Model

TQ Delta's licenses are generally based on a "rate card" under which TQ Delta charges a different rate for each DSL standard.  *See* Ex. C at 5 (TQ Delta's public licensing page explaining that TQ Delta will license based on "[t]he mix of standards implemented by licensee"). ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ The rate does not depend on the number of patents implicated.  ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

TQ Delta's case against Nokia involves five different standards: VDSL2, G.bond, G.inp, G.fast[4], and G.vector.  And TQ Delta's case against CommScope involves four different standards: VDSL2, G.bond, G.inp, and G.fast.  Under TQ Delta's per-standard licensing model, TQ Delta will be able to pursue its full damages model at trial so long as the case involves at least one patent per standard.  Although Defendants disagree with this model, there can be no dispute that additional patents will not enhance or increase the amount of those damages under that model.

## III.    The Parties' Meet and Confer Process

The parties met several times over the week of July 25, 2022 to discuss this motion.  TQ Delta offered to narrow its accusations against Nokia to 12 patents and 13 claims at the close of discovery, with the possibility of further narrowing.  Defendants rejected that offer because it does

---

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Pursuing four G.fast patents in the hope of recovery—at best—is a waste of the parties' and the Court's resources.

little to focus the case and requires the parties and the Court to continue to litigate numerous patents that will never be part of the trial in this matter.

In response to Defendants' suggestion of one patent per standard, TQ Delta asserts that its damages model in this case—in contrast to each and every actual agreement it has entered into—will be a rate per patent family (as it has argued for in the Delaware litigations), and thus it needs to keep at least seven patents in order to reach its full damages theory. Defendants offered to forego filing this motion now in the event TQ Delta would agree to narrow to seven patents each against Nokia and CommScope by the close of discovery. TQ Delta rejected that offer.

## LEGAL BACKGROUND

Courts in the Eastern District of Texas have required plaintiffs to limit the number of asserted patents and patent claims when the number "is so large as to make the case inefficient and unmanageable." *Oasis Research, LLC v. Adrive, LLC*, Case No. 4:10-cv-00435, 2011 U.S. Dist. LEXIS 153466 (E.D. Tex. Sept. 13, 2011) (quoting *Realtime Data, LLC v. Packeteer*, No. 6:08-CV-144, 2009 U.S. Dist. LEXIS 131805 (E.D. Tex. March 16, 2009)); *see also, e.g.*, *Negotiated Data Solutions, LLC v. Dell, Inc.*, No. 2:06-CV-528 (E.D. Tex. July 31, 2008); *Hearing Components, Inc. v. Shure, Inc.*, No. 9:07-CV-104, 2008 U.S. Dist. LEXIS 109230, 2008 WL 2485426, at *1 (E.D. Tex. June 13, 2008). As part of the analysis, district courts consider "(1) the number of patents and claims at issue; (2) the feasibility of trying the claims to a jury; (3) whether the patents at issue have common genealogy; (4) whether the patents contain terminal disclaimers; and (5) whether the asserted claims are duplicative." *Sandbox Logistics LLC v. Proppant Express Invs. LLC*, 2018 U.D. Dis LEXIS 156670 (S.D. Tex. Sept. 14, 2018) (citing *Thought, Inc. v. Oracle Corp.*, No. 12-CV-5601, 2013 U.S. Dist. LEXIS 147561, 2013 WL 5587559, at *2 (N.D. Cal. Oct. 10, 2013) (citing *In re Katz*, 639 F.3d at 1311)).

## ARGUMENT

This Court entered a Focusing Order on May 5, 2022. Dkt. 128. But TQ Delta's narrowing pursuant to that Order has hardly narrowed the case at all. The Order permitted TQ Delta to assert 16 claims per Defendant, and so TQ Delta has kept the case as broad and unmanageable as possible by asserting as many patents as possible—14 patents against Nokia, and 12 patents against CommScope. The Focusing Order provided a path for further narrowing based on good cause, *id*. at 3, and here, there is good cause for further narrowing the number of asserted patents.

In TQ Delta's briefing relating to the current Focusing Order, TQ Delta stated—back in February—that it "intends to narrow its claims at strategically important points as this case progresses and develops" but that doing so at that time (February) "would be premature." Dkt. 85 at 2. Additionally, TQ Delta emphasized that the narrowing should be deferred until after claim construction and after the defendants have produced "discovery sufficient to show the structure and operation of the accused products." *Id*. at 4 (citing cases).

Both of those events have now occurred. This Court issued its claim construction order on June 8, 2022 (Dkt. 169), and the Defendants have provided discovery (including corporate depositions) regarding the accused products. In fact, the corporate depositions are scheduled to conclude over the next week and a half. There is no basis for delaying meaningful narrowing in this case to an appropriate size, namely, a size that begins to resemble what TQ Delta might actually present to a jury.

Opening expert reports are due on August 15 (although the parties have agreed to a 2-week extension of that date), with expert depositions occurring shortly thereafter. Continuing to proceed with 14 patents (Nokia) and 12 patents (CommScope) at the expert stage is a waste of the parties'

resources, and it is unmanageable. And perhaps most notably, continuing with so many patents is entirely unnecessary. TQ Delta will never present this many patents to a jury.

In fact, TQ Delta's own licensing practices do not turn on the number of patents infringed.

In particular, TQ Delta should be required to immediately narrow its case to ***one patent*** of its choosing ***per standard*** that it accuses for each of Nokia and CommScope. TQ Delta asserts that Nokia's products practice (and thus infringe under) five standards and asserts that CommScope's products practice (and thus infringe under) four standards. This Court should therefore order TQ Delta to limit its cases to five patents against Nokia and four against CommScope.

TQ Delta is likely to protest, saying that its damages theory may ask for a rate per patent family. Just because TQ Delta might pursue a particular damages theory does not justify a case of abnormal proportion; indeed, regardless of the damages theory it ultimately pursues, TQ Delta cannot reasonably try a seven-patent case in accordance with the typical trial settings of this Court. As noted above, TQ Delta knows this already, yet it refused to narrow the number of asserted patents even at this late stage in the case. Accordingly, TQ Delta should not be permitted to further waste the parties' and the Court's resources in an aim simply to keep its pre-trial damages theory intact as long as possible.

There are additional reasons why good cause supports this further narrowing. First, fact discovery is closing soon, and opening expert reports are due within a month. TQ Delta thus already has the information it needs to narrow the case since it has this Court's claim construction, the fact discovery it needs for the accused products, and full access to its own experts and their assessments of infringement. But TQ Delta refuses to narrow the number of asserted patents despite recognizing that it will eventually do so. TQ Delta simply says "not yet," professing that it wants to complete expert discovery. There is no reason for further delay. Importantly, TQ Delta has hardly narrowed the case at all even under the existing Focusing Order, since it still asserts an unwieldy 14 patents against Nokia and 12 patents against CommScope.

Second, under the current Focusing Order, the Defendants are obligated to provide—by the rapidly approaching date for the service of expert reports—an election of prior art identifying "no more than a total of 20 references." Dkt. 128 at 3. Because TQ Delta continues to assert so many patents, the Defendants cannot reasonably limit their prior art to just 20 references total. The 20-reference limit would not even permit the Defendants to assert a single obviousness combination against all of the patents. Defendants believe at least 40 references each would be necessary to appropriately defend against the number of currently asserted patents. Accordingly, to the extent this Court does not grant this motion, Defendants respectfully request that this Court increase the total number of prior art references available to the Defendants to 40 references each. The existing Order likely did not contemplate that TQ Delta would continue to assert so many patents, and thus a further Order is needed to account for the current circumstances. This, too, demonstrates good cause for a further narrowing.

Still further, TQ Delta would not be prejudiced by further narrowing the case. TQ Delta already knows that it will, indeed must, narrow the scope of its case for presentation to the jury.

TQ Delta has all the information it needs to narrow the case, since both claim construction and discovery for the accused products—two things TQ Delta said in February that it needed in order to narrow the case—have now occurred.  And as described earlier, the narrowing would still afford TQ Delta access to its full damages model according to its licensing practices.  In comparison to the lack of prejudice to TQ Delta, its refusal to narrow the case to a reasonable number of patents is and has been extremely prejudicial to the Defendants.  That prejudice is reflected in TQ Delta's narrowing thus far, which meets the ***letter*** of the existing Focusing Order but comes nowhere near meeting its ***spirit***.  As expressed in the Focusing Order, the spirit was to "streamline[] the issues" in order "to promote a 'just, speedy, and inexpensive determination' of this action, as provided by Federal Rule of Civil Procedure 1."  Dkt. 128 at 2; *see also* Dkt. 167 at 2 (noting that the Focusing Order was "the <u>minimum</u> threshold for narrowing in these cases").  The issues have not been streamlined, and unquestionably an inexpensive determination has not been promoted.  Further narrowing by TQ Delta is needed to accomplish those goals.

   The further narrowing proposed herein—limiting TQ Delta to one patent per standard, consistent with its own licensing practices—would meet all of the goals sought by the existing Focusing Order, and would do so without prejudice to TQ Delta.  Respectfully, the Court should issue an Order requiring TQ Delta to limit the number of asserted patents to one-per-standard, with the narrowing to occur by August 15, before opening expert reports (and Defendants would limit their prior art in accordance with the current Focusing Order by the opening expert reports).

   Because of the urgency, particularly given the deadline for opening expert reports on August 15 (or August 29 if the parties' motion is granted), the Defendants further request an expedited briefing schedule for this Motion.  The Court should order that TQ Delta's opposition brief be due Friday, August 5, 2022, with no further briefing required thereafter.

Dated: August 1, 2022                                       Respectfully submitted,

/s/ M. Scott Stevens
M. Scott Stevens (NC Bar # 37828)
Kirk T. Bradley (NC Bar # 26490)
Karlee Wroblewski (NC Bar # 55043)
Nic Marais (NC Bar # 53533)
ALSTON & BIRD LLP
One South at the Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Tel:  704.444.1000
Fax:  704.444.1111
Email: scott.stevens@alston.com
Email: kirk.bradley@alston.com
Email: karlee.wroblewski@alston.com
Email: nic.marais@alston.com

John D. Haynes (GA Bar # 340599)
Michael Deane (GA Bar # 498195 )
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
Email: michael.deane@alston.com
Tel:  404.881.7737
Fax:  704.444.1111
Email: john.haynes@alston.com
Email: michael.deane@alston.com

Adam Ahnhut (TX Bar # 24106983)
ALSTON & BIRD LLP
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Email: adam.ahnhut@alston.com
Tel: 214-922-3400
Fax: 214-922-3899

*Counsel for Defendants
Nokia Corporation, Nokia Solutions
and Networks Oy, and Nokia
 of America Corporation*

| Dated: August 1, 2022 | Respectfully submitted, |
|---|---|
| | By: */s/ Andrew Ong*<br>Eric H. Findlay<br>State Bar No. 00789886<br>Brian Craft<br>State Bar No. 04972020<br>FINDLAY CRAFT, P.C.<br>102 N. College Ave, Ste. 900<br>Tyler, TX 75702<br>903-534-1100 (t)<br>903-534-1137 (f)<br>efindlay@findlaycraft.com<br>bcraft@findlaycraft.com<br><br>Douglas J. Kline<br>Christie Larochelle<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA  02210<br>P:  (617) 570-1000<br>F:  (617) 523-1231<br>dkline@goodwinlaw.com<br>clarochelle@goodwinlaw.com<br><br>Brett Schuman<br>Rachel M. Walsh<br>GOODWIN PROCTER LLP<br>Three Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>P:  (415) 733-6000<br>F:  (415) 677-9041<br>bschuman@goodwinlaw.com<br>rwalsh@goodwinlaw.com<br><br>Andrew Ong<br>GOODWIN PROCTER LLP<br>601 Marshall St.<br>Redwood City, CA 94063<br>P: (650) 752-3100<br>F: (650) 853-1038<br>aong@goodwinlaw.com |

*Attorney for Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS International Limited, ARRIS Global Ltd., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., ARRIS Enterprises, LLC*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on August 1, 2022.

/s/ *M. Scott Stevens*
M. Scott Stevens

### CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), counsel for all parties met and conferred regarding the relief requested above. The parties are agreed that relief was warranted but could not agree on the scope or timing of said relief. The parties met and conferred over telephone and email to resolve their dispute but were unable to do so.

/s/ *M. Scott Stevens*
M. Scott Stevens

### CERTIFICATE OF AUTHORIZATIONTO FILE UNDER SEAL

I hereby certify the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/ *M. Scott Stevens*
M. Scott Stevens

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on August 3, 2022, on all counsel who have consented to electronic service via ECF.

                                                          /s/ *M. Scott Stevens*
                                                          M. Scott Stevens