# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>      *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>      *Defendants*. | Civil Action No.: 2:21-cv-00310-JRG |

**COMMSCOPE'S OPPOSITION TO PLAINTIFF TQ DELTA, LLC'S FIRST MOTION TO COMPEL DISCOVERY FROM COMMSCOPE**

**I.     INTRODUCTION**

Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC (collectively, "CommScope") respectfully request that the Court deny TQ Delta's first motion to compel seeking certain financial information from CommScope. *See* Dkt. No. 234. In March 2022, TQ Delta sent a letter to CommScope identifying over 151 categories of purportedly relevant documents. From that overly broad list, TQ Delta now moves to compel two categories of financial information: (1) pre-2015 financial data related to CommScope's DSL products;[1] and (2) worldwide financial data for CommScope's DSL products.

With respect to pre-2015 sales information, CommScope already has produced to TQ Delta any pre-2015 sales information that it has in its possession, custody, or control. In particular, TQ Delta already has multiple spreadsheets containing pre-2015 sales information for all of the products at issue in the *2Wire* litigation in Delaware, and CommScope has produced post-2015 sales information for the accused products as well. As TQ Delta knows from the pre-motion meet and confer, CommScope does not have pre-2015 sales information for certain accused products because ARRIS (which sold the DSL products at issue and was acquired by CommScope in April 2019) switched to a new financial accounting system in the ordinary course of business in or around 2016. In short, CommScope is not withholding any pre-2015 financial information, and there is nothing for the Court to compel.[2] The Court should deny TQ Delta's request as moot.

---

[1] TQ Delta asserts in its motion that, "[a]s best as TQD can tell, CommScope is only limiting pre-2015 discovery for its financial data (e.g., sales of the accused products)." Dkt. No. 234 at 3 n.3. To be clear, CommScope is not withholding *any* documents in this case based on the fact that such documents were created prior to 2015. CommScope already explained this to TQ Delta during the meet-and-confer process. CommScope has searched for and produced relevant documents with no regard to whether documents were created before or after 2015.

[2] While CommScope is not withholding any pre-2015 sales information, CommScope does not concede that the pre-2015 sales information is relevant to any issue in dispute in this case.

As for worldwide sales information, there is no dispute that TQ Delta cannot seek damages in this case for sales outside of the U.S. TQ Delta argues such information is nevertheless relevant to a reasonable royalty and to commercial success, but, as explained below, TQ Delta's arguments are wrong and do not overcome the presumption against extraterritoriality.

Accordingly, the Court should deny TQ Delta's motion to compel.

## II. ARGUMENT

### A. The Court Should Deny TQ Delta's Request For Pre-2015 Financial Data That TQ Delta Knew Prior To Filing This Motion Was Not Being Withheld.

The Court should deny TQ Delta's request for pre-2015 financial information relating to the CommScope accused products because CommScope already has produced to TQ Delta all existing pre-2015 financial information in its possession, custody, or control. As part of the meet-and-confer process, CommScope informed TQ Delta that it was not withholding any pre-2015 financial information. TQ Delta nevertheless filed this motion, knowing full well that there is no information for the Court to compel CommScope to produce.

With respect to the accused products that overlap between this case and the *2Wire* litigation in Delaware (specifically, the 4111N, 5031NV, 5168N, 5168NV, and 5268AC products), 2Wire (now owned by CommScope after the ARRIS acquisition) produced multiple financial spreadsheets during the course of the Delaware litigation that cover sales of the products both before and after 2015. *See, e.g.*, 2WIRE00042941 (Excel spreadsheet). And, to the extent there were any additional sales of those overlapping products, CommScope has produced additional post-2015 financial information in this case as well. *See, e.g.*, COMMSCOPE039165–66; COMMSCOPE044791–92. TQ Delta therefore has pre- and post-2015 information for many of the accused products. As for the accused products that are not also at issue in Delaware, those products were originally sold by ARRIS; CommScope had no DSL products prior to its acquisition

3

of ARRIS. As TQ Delta already knows, CommScope does not have pre-2015 financial information for those products because, during the ordinary course of business, ARRIS switched over to a new financial accounting system in or around 2016.[3]

Accordingly, there is no additional pre-2015 financial information for CommScope to produce, and TQ Delta's motion to compel such information should be denied as moot.[4]

### B. The Court Should Deny TQ Delta's Request for Worldwide Financial Data.

The Court also should deny TQ Delta's request for worldwide financial information in this case, which concerns alleged infringement of U.S. patents only.[5] There is a presumption against extraterritorial application of U.S. patent laws, and TQ Delta's arguments about the purported relevance of worldwide sales is insufficient to overcome that presumption.

#### 1. TQ Delta's Request for Worldwide Financial Data Violates the Presumption Against Extraterritoriality.

The Court should deny TQ Delta's request for worldwide sales information because it violates the presumption against extraterritoriality. "The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454–55 (2007). Indeed, "[i]t is axiomatic that U.S.

---

[3] TQ Delta asserts in a footnote that "there may, later, be a spoliation issue, especially given this information has been relevant to ongoing litigation for over a decade." Dkt. No. 234 at 1 n.2. CommScope disagrees that there is any spoliation issue, at least because the products at issue were not accused of infringement by TQ Delta until after ARRIS switched financial systems. To the extent TQ Delta actually raises a spoliation issue later, CommScope will be prepared to respond.

[4] TQ Delta cannot recover damages for any alleged infringement that occurred more than six years before the filing of the complaint on August 13, 2021. See 35 U.S.C. § 286 (providing that "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint . . . in the action"). For this reason alone, TQ Delta does not need, and should not be permitted to discover, information relating to sales that CommScope made prior to August 13, 2015.

[5] TQ Delta has a non-US patent portfolio that it has asserted against other companies in certain foreign jurisdictions. *See, e.g.*, *TQ Delta, LLC v Zyxel Communications UK Ltd & Anor*, pending in the United Kingdom.

patent law does not operate extraterritorially to prohibit infringement abroad." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013) (citation omitted). As the Supreme Court has explained, § 271(a)'s reach is generally limited to activity within the United States as "no infringement occurs when a patented product is made and sold in another country." *Microsoft*, 550 U.S. at 441; *see also Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1546 (Fed. Cir. 1987) (Fed. Cir. 1988) (affirming district court's denial of damages for foreign sales because such sales did not infringe). Indirect infringement under § 271(b) or (c) likewise requires underlying direct infringement in the United States. *See Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302–03 (Fed. Cir. 2012). The presumption against extraterritoriality even applies to § 271(f), notwithstanding its explicit reference to foreign activities. *See Microsoft*, 550 U.S. at 455–56.

United States patent law allows for "damages adequate to compensate for the infringement." 35 U.S.C. § 284. TQ Delta seeks a reasonable royalty determined via a hypothetical negotiation. As § 284 makes clear, buttressed by the presumption against extraterritoriality, U.S. patent laws do not "provide compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all." *Power Integrations*, 711 F.3d at 1371. Indeed, the Federal Circuit has confirmed it is unaware of "any case law that supports an award of damages for sales consummated in foreign markets, regardless of any connection to infringing activity in the United States." *Id.* at 1371.

### 2. TQ Delta's Arguments Do Not Overcome the Presumption Against Extraterritoriality.

TQ Delta argues, with no real explanation, that CommScope's worldwide sales data should be compelled as relevant to a reasonable royalty and to commercial success. However, neither of TQ Delta's arguments is sufficient to overcome the presumption against extraterritoriality.

*First*, information regarding CommScope's worldwide sales is not relevant to a reasonable-royalty analysis for damages.  A hypothetical negotiation in this case involves consideration of the well-established factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1119–20 (S.D.N.Y. 1970), but none of the factors support a conclusion that a party (like CommScope) would agree to pay, at a negotiation involving U.S. patents, for the right to engage in foreign sales that have no bearing on those U.S. patents.  *See Enpat, Inc. v. Microsoft Corp.*, 6 F. Supp. 2d 537, 539–40 (E.D. Va. 1998).  This makes sense because "patent damages are limited to those 'adequate to compensate for the infringement'"; therefore, the "[t]he royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) (quoting 35 U.S.C. § 284). Extraterritorial sales, like those TQ Delta seeks in its motion, do not pertain to alleged patent infringement in the United States and, thus, are not relevant to the reasonable-royalty analysis.

Many courts agree that a defendant's foreign sales information is not relevant to the hypothetical negotiation.  *See, e.g.*, *Kajeet, Inc. v. Qustodio, LLC*, No. SA CV 18-1519-JAK (PLAx), 2019 WL 8060078, at *13 (C.D. Cal. Oct. 22, 2019) ("[I]nformation regarding defendant's foreign sales is not relevant to the hypothetical negotiation of the reasonable royalty amount because defendant would not be liable for foreign sales that do not violate U.S. patent laws.") (citation omitted); *Enpat*, 6 F. Supp. 2d at 539–40 ("Microsoft's foreign sales may not be taken into account in any determination of a reasonable royalty."); *France Telecom S.A. v. Marvell Semiconductor Inc.*, 39 F. Supp. 3d 1080, 1099–1101 (N.D. Cal. 2014) (concluding that foreign sales are not appropriate to consider in determining reasonable royalty).

*Second*, TQ Delta contends that worldwide sales information could theoretically relate to alleged commercial success of the patents, although it does not explain how.  Importantly, any

purported objective indicia of commercial success must bear a nexus to the claimed inventions. *See, e.g.*, *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311–12 (Fed. Cir. 2006). While CommScope recognizes that the Court in *EVS Codec Techs., LLC v. OnePlus Tech. (Shenzhen) Co.* previously held that worldwide sales information could be discoverable even if it does not meet the "nexus" requirement, that holding was in the context of a narrow relevance objection that the party did "not market the accused features." No. 2:19-CV-00057-JRG, 2020 WL 6365514, at *2 (E.D. Tex. Apr. 9, 2020). CommScope's objection is different. Any alleged commercial success is relevant only if that success is for a product falling within the scope of the patent claims. That logic breaks down here when considering outside-U.S. sales, as such sales cannot constitute patent infringement under U.S. patent law.

Under U.S. patent law, a company already has the right to sell products abroad despite the existence of any U.S. patents, and that right remains throughout the life of the U.S. patents. U.S. patents thus have no bearing on whether international products may be sold. Stated differently, a product's international success has no bearing on whether a U.S. patent was or was not obvious. TQ Delta's arguments about commercial success are therefore irrelevant, and TQ Delta is not entitled to discovery of CommScope's worldwide sales information. *See* Fed. R. Civ. P. 26(b)(1).

Accordingly, the Court should deny TQ Delta's request for CommScope's worldwide sales information.

### III.   CONCLUSION

For the reasons set forth above, CommScope respectfully requests that the Court deny TQ Delta's first motion to compel against CommScope.

| | |
|---|---|
| Dated this 9th day of August, 2022 | Respectfully submitted,<br><br>By: */s/ Eric H. Findlay*<br>Eric H. Findlay<br>State Bar No. 00789886<br>Brian Craft<br>State Bar No. 04972020<br>FINDLAY CRAFT, P.C.<br>102 N. College Ave, Ste. 900<br>Tyler, TX 75702<br>903-534-1100 (t)<br>903-534-1137 (f)<br>efindlay@findlaycraft.com<br>bcraft@findlaycraft.com<br><br>Douglas J. Kline<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA  02210<br>P:  (617) 570-1000<br>F:  (617) 523-1231<br>dkline@goodwinlaw.com<br><br>Brett Schuman<br>Rachel M. Walsh<br>GOODWIN PROCTER LLP<br>Three Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>P:  (415) 733-6000<br>F:  (415) 677-9041<br>bschuman@goodwinlaw.com<br>rwalsh@goodwinlaw.com<br><br>Andrew Ong<br>GOODWIN PROCTER LLP<br>601 Marshall St.<br>Redwood City, CA 94063<br>P: (650) 752-3100<br>F: (650) 853-1038<br>aong@goodwinlaw.com<br><br>***Counsel for Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC*** |

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel on August 9, 2022.

/s/ Eric H. Findlay
Eric H. Findlay