# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **TQ Delta, LLC,**<br><br>　　　　　**Plaintiff,**<br><br>**v.**<br><br>**COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC**<br><br>　　　　　**Defendants.** | **Civ. A. No. 2:21-CV-310-JRG**<br>**(Lead Case)** |
| **TQ Delta, LLC,**<br><br>　　　　　**Plaintiff,**<br><br>**v.**<br><br>**NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.,**<br><br>　　　　　**Defendants.** | **Civ. A. No. 2:21-CV-309-JRG**<br>**(Member Case)** |

**NOKIA DEFENDANTS' FRCP 26(a)(2)(C) DISCLOSURE OF PAUL SPRUYT
(AUGUST 1, 2022)**

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), Defendants Nokia Corporation, Nokia Solutions and Networks Oy, and Nokia of America Corporation (collectively, "Nokia" or "Nokia Defendants") hereby submit the following disclosure concerning Paul Spruyt.  Because some of the testimony Nokia anticipates will be provided by Paul Spruyt may fall within Fed. R. Evid. 702, 703, or 705, Nokia provides the following disclosure.[1]

Under Rule 26(a)(2)(C), the disclosure must state "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C); *see also Newton v. State Farm*, No. 4:21-cv-00322, 2022 U.S. Dist. LEXIS 76591, at *8 (E.D. Tex. Mar. 31, 2022) (explaining that a Rule 26(a)(2)(C) disclosure requires only that the party "state the subject matter on which [the expert] is expected to present evidence and a summary of the facts and opinions to which he will testify.").

This disclosure is governed by Rule 26(a)(2)(C) because Paul Spruyt is a full-time employee of Nokia and (1) he has not been specially employed or retained by Nokia to provide expert testimony in this case; and (2) his duties as an employee of Nokia do not regularly involve giving expert testimony.  *Luci Bags LLC v. Younique, LLC*, No. 4:16-CV-00377, 2017 WL

---

[1] Much of Mr. Spruyt's anticipated testimony is factual, lay person testimony based on his experience, personal knowledge and observations regarding the product, product label, and regulations at issue in this case and, therefore, is not governed by Fed. R. Evid. 702, 703, or 705 or Fed. R. Civ. P. 26(a)(2)(C)'s disclosure requirements.  Additionally, a lay witness may offer opinion testimony based on their "particularized knowledge" of a business without being qualified as an expert.  As the Drafting Committee to Rule 701 explained: "Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business."  *See* Rule 701 (Committee Notes on Rules – 2000 Amendments). Nonetheless, out of an abundance of caution, Nokia submits this disclosure to resolve any potential dispute regarding the nature of Mr. Spruyt's testimony.  By doing so Nokia does not concede that potential testimony of other witnesses, including current or former employees, is governed by the evidentiary or procedural rules regarding expert testimony.

4310123, at *5 (E.D. Tex. Sept. 28, 2017) (citing *Diamond Consortium, Inc. v. Manookian*, No. 4:16-cv-00094, 2017 U.S. Dist. LEXIS 105771, at *2 (E.D. Tex. July 10, 2017)) ("A non-retained expert's testimony under Rule 26(a)(2)(C) arises not from his enlistment as an expert, but, rather, from his ground-level involvement in the events giving rise to the litigation.").  Thus, Nokia's disclosure of Mr. Spruyt need only disclose the subject matter on which he is expected to present evidence and a summary of the facts and opinions to which he will testify. *See* Fed. R. Civ. P. 26(a)(2)(C). "The disclosure requirement for non-retained experts 'is intended to be less stringent than those requirements applicable to retained experts.'" *Stonecoat of Tex. v. ProCal Stone Design, LLC*, No. 4:17CV303, 2019 U.S. Dist. LEXIS 233045, at *15 (E.D. Tex. June 28, 2019) (quoting *McCranie v. Home Depot U.S.A., Inc.*, No. 4:15-cv-423, 2016 WL 7626597, at *6 (E.D. Tex. Aug. 25, 2016)).

## NOKIA'S RULE 26(a)(2)(C) DISCLOSURE OF PAUL SPRUYT

**Qualification and Experience:**  Paul Spruyt is a xDSL technology strategist at Nokia. His role entails product management of xDSL products. Mr. Spruyt has been employed by Nokia, or a predecessor of Nokia, for over 33 years.  During his time at Nokia, or a predecessor of Nokia, Mr. Spruyt was listed as an inventor on, or authored, upwards of fifty patents and/or publications relating to DSL. Before serving in his current position, he served in various other capacities, including as a researcher and as a product manager responsible for product development and commercialization of VDSL. He will testify regarding his experience, education, and training.

1. **Subject Matter on Which Mr. Spruyt Is Expected to Testify**

   a. xDSL technology, its implementation in the prior art, and understanding of technical terms as one skilled in the art.

   b. Prior art publications and prior art products.

c. The functionality of Nokia's DSL products.

d. The evolution of Nokia's DSL products from initial commercialization to end-of-life.

2. **Summary of Facts and Opinions**:

a. Mr. Spruyt is expected to testify regarding xDSL technology, its development, and his understanding as one skilled in the art.

b. Mr. Spruyt is expected to testify about an article he drafted—Mestdagh and Spruyt, *A Method to Reduce the Probability of Clipping in DMT-Based Transceivers*, IEEE Trans. Comm. 44(10):1234 (1996)—which has been identified in this case as prior art. He is expected to testify about what that article discloses, including how the article discloses reducing the peak-to-average-power ratio to limit the peak envelope power or the probability of clipping in a multicarrier transmission system, such as DMT communications transceivers.  He is also expected to testify regarding what was known in the art at the time that the article was published, including the use of pseudo random number generators to compute a phase shift, phase scramblers, and modulation of the same repeated bits (or symbols).

c. Mr. Spruyt is expected to testify about an article he drafted— P. Spruyt, P. Antoine, S. Schelstraete, W. De Wilde and C. Gendarme, *VDSL, from concept to chips*, Proceedings of the 26th European Solid-State Circuits Conference, 2000, pp. 389–96. He is expected to testify about what that article discloses, including how the article discloses using a triangular interleaver with two on-chip RAM blocs.

d. Mr. Spruyt is expected to testify about an article he drafted— D. Veithen, P. Spruyt, T. Pollet, M. Peeters, S. Braet, O. Van de Wiel, and H. Van De Wedhe, *A 70 Mb/s*

*variable-rate DMT-based modem for VDSL*, 1999 IEEE International Solid-State Circuits Conference. Digest of Technical Papers. ISSCC. First Edition (Cat. No.99CH36278), 1999, pp. 248-249, doi: 10.1109/ISSCC.1999.759222.  He is expected to testify about what the article discloses, including how the article discloses using a triangular interleaver with two on-chip RAM blocs.

e.  Mr. Spruyt is expected to testify about a prior art product that he has personal experience with—the Alcatel A1000 ASAM. He is expected to testify about the functionality of that prior art product, when that product was developed, and when that product was first sold.

f.  Mr. Spruyt is expected to testify about aspects of the functionality of Nokia's DSL products based on his personal experience with those products. He is expected to testify about the functionality enabled by Nokia firmware versus what functionality is enabled by Broadcom's chipsets. To the extent functionality is enabled by Nokia firmware, Mr. Spruyt is expected to testify about said functionality.

g.  Mr. Spruyt is expected to testify about the development of Nokia's DSL products. He is expected to testify regarding how Nokia developed certain products, when certain products were released, and end-of-life of certain Nokia products.