IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **TQ DELTA, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC**<br><br>*Defendants.* | CIV. A. NO.  2:21-CV-310-JRG<br>(Lead Case) |
| **TQ DELTA, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.,**<br><br>*Defendants.* | CIV. A. NO.  2:21-CV-309-JRG<br>(Member Case) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR SECOND OPPOSED
MOTION FOR ENTRY OF ORDER FOCUSING PATENT CLAIMS**

TQ Delta applauds its own narrowing of this case, stating that it "narrowed TQD's case by 4/5ths (to 24 total claims across both cases from 128 originally)" (Opp. at 5).  Yet TQ Delta ***still asserts 14 patents against Nokia and 12 patents against CommScope***.  There is no question that TQ Delta will not be able to bring 14 patents or even 12 patents to trial—a fact that TQ Delta readily admits.  And there is no reason that TQ Delta should be asserting such an inordinate number of patents at this advanced stage of the litigation.  TQ Delta's assertion of an overwhelming number

of claims and patents at the outset of the litigation does not now justify TQ Delta maintaining patents that will never be tried.

TQ Delta's vague promises that it will "continue to work to narrow its case for trial" (Opp. at 3), will "continu[e] to work to narrow this case even further" (*id.*), and "will continue to work to attempt to narrow further by trial" (*id.* at 13) are empty. The time for meaningful narrowing is now. Expert reports are underway and fact discovery concludes this week (on August 19). And while TQ Delta expresses concern over the burdens it is facing, the burdens are felt even more so by Defendants. TQ Delta has no room to complain, for it can readily narrow the case based on its years of asserting these patents in various litigations, not to mention the wealth of discovery it has secured in this case, but TQ Delta simply will not do so unless ordered by the Court. As TQ Delta itself highlights, every day of delay wastes an exorbitant amount of resources litigating patents that will never be presented to the jury. TQ Delta knows that it must narrow the case, and the only credible explanation for TQ Delta's desire to delay that narrowing is that it wants to apply the maximum burden and expense on Defendants for as long as possible.

TQ Delta's opposition is also replete with errors. TQ Delta bases the bulk of its argument on its own misconception that the Defendants proposed the limits in this Court's Focusing Order. *See* Opp. at 1 ("[t]he Focusing Order, which Defendants proposed"); *id*. at 3–4 ("Defendants proposed the Order's original structure, fully knowing the number of patents, patent claims, accused products, and standards that were asserted, . . . ."); *id*. at 4 ("Defendants . . . do not address the fact that they proposed the original limits that the Court agreed with"); *id*. at 5 ("Defendants are attempting to avoid the Focusing Order that they proposed"). But that is simply not true. Indeed, concerned that TQ Delta might violate the spirit of this Court's Model Order, Defendants proposed a limit based on the number of patents TQ Delta maintained in this case. For example,

Defendants proposed that if TQ Delta maintained 14–22 patents, the final election would require that Defendants narrow to 60 references. Dkt. 77 at 5–6. And if TQ Delta maintained 8–14 patents, Defendants proposed that the final election would require that Defendants narrow to 40 references. *Id.* Defendants agreed that 20 prior art references would be reasonable ***only if TQ Delta narrowed its case to seven or fewer patents***, a position Defendants maintain today. The Court, however, imposed no such limit on the number of asserted patents in the Focusing Order. Given that TQ Delta failed to comply with the spirit of the Focusing Order, Defendants have now requested that this Court order TQ Delta to further narrow its election of asserted patents or, alternatively, increase Defendants' limit on prior art references in line with their previous request.

TQ Delta also asserts, in underline, that the prior art Defendants "have asserted is on a per-family basis not a per-patent basis." Opp. at 2. That is false. Defendants are electing their prior art on a per-patent basis. For example, for Family 9, Nokia elected seven references for the '411 patent, and four references for the '348 and '809 patents, with only a single overlapping reference. It is highly likely that Nokia will have no overlapping grounds between those sets of patents *from the same family*. The same can be said for other families where, in the final narrowing, the breakdown of prior art references for patents in the same family will differ based on the broad scope of patents that TQ Delta still asserts.

TQ Delta makes much of the fact that there are "only" seven families of patents, but seven different families of patents is itself excessive. As Defendants explained in their opening brief, TQ Delta rejected Defendants' offer to forgo filing this motion if TQ Delta would agree to narrow to seven patents against each of Nokia and CommScope. During the meet and confers, and again in its Opposition here, TQ Delta states that it "will put forward a per-patent family per-standard model, as it did in the Delaware cases." Opp. at 1. If that is the case, why would TQ Delta not

3

have accepted Defendants' previous offer to narrow to seven patents—one patent per family? Quite simply, although these patents have been grouped into families, the patents within the families differ. Indeed, even TQ Delta would not admit that the patents in the families all share a common specification (repeatedly limiting its assertions to "*essentially*" identical specifications). Thus, any narrowing would significantly simplify the scope of the case and reduce the burden on the parties.

At the same time, as explained in Defendants' motion, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Accordingly, although Defendants do not agree with this model, there can be no dispute that the additional patents TQ Delta is keeping in the case will not enhance or increase the amount of damages under that model.

TQ Delta's current stance is that, before it can narrow the case further, it needs time to complete not only all fact discovery and expert discovery, but also to see the results of institution decisions on related IPRs (some of which will not occur until December, after the pre-trial conference) and the dispositive briefing Defendants will likely file. But that timing would obligate Defendants to complete ***all*** of their expert reports, ***all*** dispositive briefing, and even trial preparations on a slew of patents that have no chance of ever being presented to the jury. TQ Delta posits that it bears a greater burden than Defendants, but *TQ Delta* has been litigating these patents for *eight years*, including in many instances accusing the exact same products and the same underlying source code base it now complains about having to review, so it should know by now what patents it actually wants to bring to trial.

TQ Delta also seems to conflate PTO proceedings with this Court's proceedings, stating that Defendants "are already bypassing the Court's Focusing Order on prior art by asserting

4

different combinations in 11 IPR proceedings." Opp. at 2.  Yet, as TQ Delta admits, at least Nokia has filed IPRs against patents that, while not currently asserted against Nokia, TQ Delta has threatened to litigate.  Thus, in addition to engaging in delay tactics in this Court, TQ Delta continues to threaten further litigation against Defendants, thus necessitating the IPRs it is now facing.

To be sure, Defendants have been diligent in seeking further narrowing of the case since TQ Delta belatedly provided its most recent narrowing, as required by the existing Focusing Order, on July 19.  Defendants promptly reached out to TQ Delta, and the parties have met and conferred several times (both telephonically and via email) to discuss a further narrowing, but TQ Delta has refused to meaningfully narrow its assertions—justifying this follow-on motion seeking further narrowing.  This Court has previously indicated that "the parties and the Court may further narrow the issues during pretrial proceedings in order to present a manageable case at trial." Dkt. 128 at 3; *see also* Dkt. 230 at 7 n.2.  Through this motion, Defendants seek to do  precisely that.

Importantly, **TQ Delta itself recognizes that it must further narrow the case for trial**.  TQ Delta just says "not now" and "not yet."  That rings hollow.  It has time; it just does not want to take this important step, and it will not do so unless ordered by the Court.  Without question, the requested relief will immediately and significantly reduce the scope of work faced by both TQ Delta and Defendants alike.  Respectfully, this Court should grant the motion for a further narrowing order.

Dated: August 18, 2022                                    Respectfully submitted,

                                                          /s/ M. Scott Stevens
                                                          M. Scott Stevens (NC Bar # 37828)
                                                          Kirk T. Bradley (NC Bar # 26490)
                                                          Karlee Wroblewski (NC Bar # 55043)
                                                          Nic Marais (NC Bar # 53533)

ALSTON & BIRD LLP
One South at the Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Tel:  704.444.1000
Fax:  704.444.1111
Email: scott.stevens@alston.com
Email: kirk.bradley@alston.com
Email: karlee.wroblewski@alston.com
Email: nic.marais@alston.com

John D. Haynes (GA Bar # 340599)
Michael Deane (GA Bar # 498195 )
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
Email: michael.deane@alston.com
Tel:  404.881.7737
Fax:  704.444.1111
Email: john.haynes@alston.com
Email: michael.deane@alston.com

Adam Ahnhut (TX Bar # 24106983)
ALSTON & BIRD LLP
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Email: adam.ahnhut@alston.com
Tel: 214-922-3400
Fax: 214-922-3899

*Counsel for Defendants*
*Nokia Corporation, Nokia Solutions*
*and Networks Oy, and Nokia*
*of America Corporation*


By: */s/ Andrew Ong*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
102 N. College Ave, Ste. 900

6

Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Christie Larochelle
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
P:  (617) 570-1000
F:  (617) 523-1231
dkline@goodwinlaw.com
clarochelle@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P:  (415) 733-6000
F:  (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

*Attorney for Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS International Limited, ARRIS Global Ltd., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., ARRIS Enterprises, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on August 18, 2022.

/s/ *M. Scott Stevens*
M. Scott Stevens

**CERTIFICATE OF AUTHORIZATIONTO FILE UNDER SEAL**

I hereby certify the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/ *M. Scott Stevens*
M. Scott Stevens

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on August 19, 2022, on all counsel who have consented to electronic service via ECF.

                                                      /s/ *M. Scott Stevens*
                                                      M. Scott Stevens