IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>   *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>   *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br>(Lead Case) |
| TQ Delta, LLC,<br>   *Plaintiff*,<br><br>v.<br><br>Nokia Corp., *et al.*,<br>   *Defendants*. | Civil Action No.: 2:21-CV-00309-JRG<br>(Member Case) |

**TQ DELTA, LLC'S**
**SECOND MOTION TO COMPEL DISCOVERY FROM NOKIA**

I.      **SUMMARY AND BACKGROUND FACTS**

TQ Delta, LLC ("TQD") moves to compel Nokia Corp, *et al.* ("Nokia") under FED. R. CIV. P. ("Rule") 37 to produce technical documents, including a copy of Nokia's software for testing, and business documents. Both categories are relevant and of the kind ordinarily produced automatically under P.R. 3-4(a) and the Discovery Order. The technical information is relevant to infringement, and the business information is relevant to damages during the hypothetical negotiation. Given the August 29th expert-report deadline (Dkt. No. 249), TQD asks the Court to compel Nokia to produce both categories of information promptly. TQD expected that this material would be produced during discovery, but Nokia refused.

Nokia's production of its internal technical and business document is deficient. To put the problem plainly, Nokia has produced more public prior art documents than its own business or technical documents: about 86% of Nokia's produced documents are prior-art material or background documents relating to submissions to standards bodies (about 53% of its total pages). And, for the pages of internal documents produced, most (70%) are Nokia manuals it provides its customers (some 2,900 pages long) and datasheets from its website, including every historic version of the manuals. Nokia has, at least, produced a relative handful of technical internal documents (a few hundred): around 60 product Technical Requirements Specifications ("TRS") documents and design specifications; some roadmap presentations; some records from its internal ClearQuest system (but many are illegible); and some training materials.[1]

But Nokia has not produced the substantive internal engineering work of the teams who have created these products, and Nokia has not produced—on the business side—any substantive internal analysis of pricing, market or competitive analysis, or specific analysis of the DSL or

---

[1] But of these 60 documents, many are duplicates and alternate versions of the same documents, so the actual number of discrete document is much lower than 60.

VDSL2 markets. This lack of internal documents is not credible. Nokia claims on its website a 43% market share in VDSL2 (the central accused technology) and over 410M DSL lines shipped,[2] and LinkedIn reflects substantial engineering and business teams working on Nokia DSL. But Nokia's production does not contain documents showing the development of the accused products and relevant software (e.g., firmware) or the work of its business side, such as determining pricing, analyzing the DSL market, or the terms of its agreements with customers (or support revenue).

Nokia, apparently, has two reasons for non-production. First, it claims it produced what it has, but, as TQD explained to Nokia prior to filing this motion, Nokia's own documents, which reference other material, and witness testimony, contradict Nokia's lawyers' assertion. It is also implausible, considering the amount of engineering and business work involved in the accused products. Nokia's claimed industry-leading position in DSL, its participation in DSL standards groups, and the accused products did not simply spring into existence. Second, Nokia's counsel took the position that the alleged damages were not worth the discovery. Nokia has not produced its full damages information, making its assertion questionable. Regardless, Nokia has not sought a protective order or stipulated to infringement or representative products, meaning that Nokia must allow TQD to prove its case and produce relevant responsive documents.

II.     THE COURT SHOULD COMPEL NOKIA'S TECHNICAL AND BUSINESS DOCUMENTS

This Court orders the parties to automatically produce their relevant documents without a specific request. (Dkt. No. 60, § 3(b) (Agreed Discovery Order)). The Court also orders, by local rule, technical document production early in the case. *See* P.R. 3-4(a). The Court's P.R. 3-4(a) rule is a broad requirement to produce any and all technical documents. *See Edward D. Iola Trust,*

---

[2] https://www.nokia.com/networks/technologies/vdsl2-vectoring/. Nokia's website cites "Dell' Oro" reports for these figures, but <u>Nokia has also not produced this material</u>. (Dkt. No. 198).

*v. Avigilion Corp.*, Case No. 2:10-cv-605, Dkt. No. 279, at 4, 2012 U.S. Dist. LEXIS 164425 at *7-10 (E.D. Tex., Nov. 16, 2012) (Gilstrap, C.J.) ("P.R. 3-4(a) requires [Defendant] to produce more than the bare minimum of what it believes is sufficient, including but not limited to any and all source code, specifications, […] or other documentation in its possession."). On March 10, 2022, TQD also served a detailed 22-page set of document requests to Nokia, specifically requesting the information in this Motion.

### A. The Court Should Compel Nokia to Produce Technical Documents

For only some of the accused products, Nokia has produced some high-level planning documents describing the features to be included in their construction. Nokia has also produced some documents describing particular DSL feature sets. Starting in July, six months after the P.R. 3-4(a) deadline, Nokia made source code available for inspection. But Nokia has not produced the engineering documents that explain the development of the accused products or their related source code, which would provide key "how and why" details. These "next layer down" documents from the product-requirement-planning documents, provide critical information for understanding how a relevant feature was developed, works, and was tested.

These documents exist, but Nokia has not searched and provided documents from the sources used by its engineers. Nokia uses a system called JIRA to manage its project requirements and development status. *See* June 16, 2022 Deposition of Patrick Moris at 192:12-25.

---

[3] Nokia appears to have exported some select entries from ClearQuest, though only some are legible, Nokia does not appear to have searched ClearQuest for all relevant entries.

3

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬          ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Nokia also uses a system called Confluence, produced by the same company that makes JIRA, to store relevant engineering documentation information. *See* NOK00716325 (▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬).[4]  Well over 100 Nokia job postings request familiarity with these tools.  *See* https://careers.nokia.com/jobs/search/34784096#.  From counsel's experience, both tools are built to easily export files in readily navigable native forms.

The absence of documents is evident at a cursory level.  Using the Nokia witnesses TQD has had to move to compel—Van Bruyssel (Dkt. No. 199) and Spruyt (Dkt. No. 255)—as examples, Nokia has only produced 9 documents total mentioning either man.  Mr. Spruyt, an "xDSL technology strategist at Nokia," has a LinkedIn page stating he has been involved in DSL at Nokia for over 30 years.  But Nokia has only produced 8 internal documents bearing his name, including multiple versions of the same document.  Mr. Van Bruyssel, a "DSL PHY Architect at Nokia, Bell Labs Fellow," has a LinkedIn page stating he has been involved in DSL at Nokia over 25 years.  But Nokia has only produced one internal document bearing his name and that was created for this litigation.  It is not credible that these engineers produced only 9 documents related to the accused DSL products or their standards in a combined 55 years of working with this technology.  In contrast, Nokia has produced around 2,000 public documents mentioning these men, either in standards groups or on patents, that it apparently intends to use at trial for its benefit.

Nokia has also not produced the compiled "binary" images of the software that run on the accused products for TQD's testing for its infringement case.  TQD needs, at least, the compiled image of its Nokia's FGN software (version 4.4.01).  This compiled binary of the software should

---

[4] TQD only knows these links because some presentations did not print and were produced in native form.  TQD requested native versions of other presentations to be able to view their links, but Nokia refused.  TQD also has been unable to open some Nokia presentations produced in native form, and has requested versions it can open.  Nokia has not produced these documents.

have also been produced in January as part of Nokia's 3-4(a) production. On August 10, 2022, five days before the close of discovery, Nokia identified 16 additionally relevant software versions in response to TQD's Interrogatory No. 19. TQD also asks the Court to compel production of these other software versions as well.

Nokia has also not produced its relevant training material for the accused products. Nokia has an entire training division (called NokiaEDU) that educates customers on its products, including the accused products. Nokia's school offered, for example, a 7-course sequence on DSL and other courses explaining the accused products. This has not been produced.[5] Nokia appears to have produced a few educational modules on DSL technology, including one entitled "VDSL2 Expert workshop." But Nokia has not produced training modules on the accused products and has other unproduced modules on the accused technology.[6] This training material is relevant and should be produced. It provides information explaining the accused technology and products (e.g., showing screenshots and explaining the products and technology).

TQD asks the Court to compel Nokia to promptly search for and produce its relevant technical documents, including, at least, the high-level planning documents for accused products, including accused products where no such documents have been produced; Nokia's firmware images for the versions listed in its response to TQD's Rog. 19; to search its engineering document repositories, including JIRA / Confluence / ClearQuest and produce its documents relevant to the accused products and standards in native form; and to search for and produce its customer training

---

[5] *See* https://web.archive.org/web/20150205082316/http://www3.alcatel-lucent.com:80/university/Catalog/wireline/Fixed_Access_WBT.html; *see also* NOK00717290 (course catalog listing unproduced courses on the accused products and DSL).
[6] Nokia has, at least, current classes on the accused products (e.g., ISAMs, DSLAMs), and technology (e.g., "VDSL2 ARQ and Vectoring Expert," "FAST Expert Workshop," "DSL Technology Modulation").

material on the accused products (and any supporting ISAM / DSLAM products) and accused standards, including historic courses in their native form (and to reproduce existing PDF'd training documents in native form).

### B. The Court Should Compel Nokia to Produce Business Documents

Nokia has produced very few business or sales documents relating to the accused products or the DSL market, including no market analysis or forecasts; competitor analysis; product or feature planning; standards committee analysis; pricing analysis; revenue forecasts; or customer agreements and support material. Given the size of Nokia's DSL business, including its claim as the industry leader in VDSL2, it is not credible that these documents do not exist. Nokia does not contend that these documents do not exist; rather its position is that is has performed a reasonable search and produced what it found. This is not credible.

TQD has confirmed to Nokia, using its own documents and witnesses, that these documents do exist. For example, Nokia has not produced documents confirmed during the deposition of Mr. MacLean (Nokia's Rule 30(b)(6) witness), including ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Nokia also has a sales organization that determines pricing, from which it has not produced documents, and whose corporate witness (Mr. Maclean) lacked direct knowledge of. These materials are relevant to infringement, including inducing infringement, and damages.

Nokia also has not produced all of its relevant sales figures. Nokia appears to have taken the position that it can only infringe TQD's patents through sales of its product in the U.S. This ignores that Nokia may also infringe through, at least, inducing, importing (even if products are later sold elsewhere), and making in the U.S. Nokia has not produced financial data relevant to that alleged infringement. Nokia has not produced documents going to its induced infringement,

6

including its customer support activities (e.g., embedding engineers) and training (e.g., the records of the courses it has provided related to the accused products and technologies).

Nokia also uses a document management system called SharePoint to store documents, ███████████████████████████████████████.

███████████████████████████████████████████████████████████████████

███████████████████████████████████████

Those documents have not been collected or produced.

TQD asks the Court to compel Nokia to promptly search for and produce its relevant business documents related to the accused products and DSL standards, including, at least, market analysis or forecasts (including feature analysis); competitor analysis; product or feature planning; standards committee analysis (or participation notes); pricing analysis; revenue forecasts; customer agreements and support material (including revenue); sales figures, including import figures for the accused products; and to search its SharePoint sites related to business activities, including competitive analysis for the accused products and standards.

### III.   CONCLUSION

TQD asks the Court to compel Nokia as described above.  Nokia's failure to produce has already prejudiced TQD, and TQD also asks the Court for any additional relief it considers proper.

Dated: August 19, 2022

/s/ Rudolph Fink IV

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(*Pro hac vice*)
pmcandrews@mcandrews-ip.com
Rajendra A. Chiplunkar
(*Pro hac vice*)
rchiplunkar@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

*Counsel for TQ Delta, LLC*

8

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this August 19, 2022 on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ Rudolph Fink IV
Rudolph Fink IV

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel have complied with the meet-and-confer requirements of Local Rule CV-7(h) and (i) and that discussion between Plaintiff and Defendant have reached an impasse and that this motion is opposed, as summarized below:

- On March 10, 2022, TQD served a 22-page list of requested document categories on Nokia.
- On April 11, Nokia provided a response.
- On May 20, TQD served a 15-page letter describing Nokia's production deficiencies.
- On June 24, having heard no response to its May 20 letter, TQD requested a meet and confer.

ATTORNEY'S EYES ONLY          FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

- On June 30, counsel for Nokia—Karlee Wroblewski—and counsel for TQD—Bo Davis, Christian Hurt, Rudy Fink, and Ty Wilson—met and conferred, including on the topics in this Motion. Based on the conference, TQD requested a lead and local meet and confer.

- On July 6, counsel for Nokia—Scott Stevens, Adam Ahnhut, Karlee Wrobleski, and Katherine Donald—and counsel for TQD—Bo Davis, Christian Hurt, Rudy Fink, Ed Chin, and Ty Wilson—met and conferred, including on the topics in this Motion. Following the conference, TQD sent an email confirming its request that Nokia produce related technical documentation along with its source code.

- On July 20, TQD sent Nokia an email on document production deficiencies.

- On July 25, counsel for Nokia—Scott Stevens, Adam Ahnhut, Karlee Wrobleski, and Katherine Donald—and counsel for TQD—Bo Davis, Christian Hurt, Rudy Fink, Ed Chin, and Ty Wilson—met and conferred, including on the topics in this Motion. The parties reached an impasse on the topics in this Motion.

- On July 28, TQD sent an email following-up on CommScope's positions from the meet and confer.

- On July 30 and August 3, TQD sent additional emails to Nokia on its requests following deposition testimony.

- On August 10 (TQD), 15 (TQD), 16 (TQD, Nokia), and 17 (TQD, Nokia), counsel exchanged emails regarding TQD interrogatory no. 19 and a copy of Nokia's software for testing purposes.

- On August 18, counsel for Nokia—Scott Stevens—and counsel for TQD—Bo Davis and Ed Chin—met and conferred, including on the topics in this Motion. The parties reached an impasse on the topics in this Motion

**ATTORNEY'S EYES ONLY**          **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

/s/William E. Davis, III_____
William E. Davis, III