# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **TQ DELTA, LLC,**<br><br>     *Plaintiff*,<br><br>  v.<br><br>**COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS INTERNATIONAL LIMITED, ARRIS GLOBAL LTD., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC**<br><br>     *Defendants*. | CIV. A. NO. 2:21-CV-310-JRG<br>(Lead Case) |
| **TQ DELTA, LLC,**<br><br>     *Plaintiff*,<br><br>  v.<br><br>**NOKIA CORP., NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA OF AMERICA CORP.,**<br><br>     *Defendants*. | CIV. A. NO. 2:21-CV-309-JRG<br>(Member Case) |

## NOKIA'S RESPONSE TO TQ DELTA, LLC'S
## SECOND MOTION TO COMPEL DISCOVERY FROM NOKIA (DKT. NO. 263)

**I.      INTRODUCTION**

TQ Delta's Motion broadly and vaguely seeks to compel various, unidentified "technical" and "business" documents beyond the extensive documents and source code already produced without providing a single example of missing substantive information or a single example of why such information is needed in this case.

Patent Rule 3-4 requires the defendant to produce "Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its P. R. 3-1(c) chart." Nokia searched for and produced documentation far in excess of what is "sufficient to show" the operation of the Accused Products needed for TQ Delta's infringement theories. The relevant functionality, *i.e.*, discrete DSL functionality, allegedly occurs within chips supplied by Broadcom to Nokia. TQ Delta has Broadcom's source code. And TQ Delta also has all of Nokia's documents that prove or disprove TQ Delta's theories, including Nokia's technical requirements specifications, feature descriptions, and source code. The produced documents identify and explain the features supported in each Accused Product

More specifically, Nokia has produced extensive technical and business documents including: **complete builds** of its source code for ▓▓▓▓▓▓▓▓▓▓▓▓, design specifications, management interface specifications, compliance information and testing documents, statements of work, product information guides, software and hardware installation procedures, user guides, technical requirements documents, feature descriptions documents, operations and maintenance manuals, configuration line interface commands, data sheets, block diagrams, complete product management files for ▓▓▓▓ U.S. customers, customer release notes, customer change requests, business roadmap and forecasting presentations, ▓▓▓▓▓▓ training documents, customer feature testing reports, relevant customer documentation as to feature implementation, and third-party

2

report and forecasting documents. These productions more than allow TQ Delta to evaluate and explore its contentions against Nokia. But TQ Delta demands more without ever explaining why or identifying any need for more documents.

TQ Delta's attempts to weaponize fact discovery by seeking every possible "technical" and "business" document relating to the Accused Products without providing a single particularized need for those documents it contends are "missing." The Court should deny TQ Delta's motion.

## II. ARGUMENT

### A. Nokia Has Produced All Relevant Technical Documents It Located After a Reasonable Search.

TQ Delta's motion is notable for one glaring omission—TQ Delta cannot and has not identified a single technical question that remains unanswered regarding the Accused Products—nor could TQ Delta do so given Nokia's (and Broadcom's) voluminous productions. Nokia has produced all documents sufficient to show the Accused Functionality of Nokia's products under TQ Delta's infringement contentions, a fact that TQ Delta cannot and does not challenge. Nokia addresses each of TQ Delta's arguments in turn.

First, Nokia has searched for and produced all relevant technical documents related to the functionality of the Accused Products. Despite TQ Delta's claims to the contrary, Nokia has searched for and produced documents contained within the ▇▇▇▇▇▇▇▇▇▇▇▇ databases.[1] The development of the majority of the Accused Products occurred in the mid-2000s, and those products are now at or past their end of life. Accordingly, the relevant "development documents" were housed in Nokia's systems utilized at the time. Each of those systems has been

---

[1] To the extent TQ Delta believes that any given produced document inadvertently became illegible through the branding and production process, Nokia has and will continue to re-produce native versions of documents as requested by TQ Delta.

3

searched, and identified documents have been produced. As TQ Delta acknowledges, ▮ replaced ▮ as a system for recording RCRs. Accordingly, all relevant documentation between the two systems is entirely duplicative. Similarly, TQ Delta identifies a system called ▮, which Nokia has *recently* started to utilize to replace the ▮ database previously utilized by R&D. Again, the development information from ▮ that is in the process of being placed in ▮ is entirely duplicative. Nokia has performed searches in each of the referenced databases and produced the relevant documentation.

Second, TQ Delta's argument that Nokia has not produced numerous documents listing Paul Spruyt and Danny Van Bruyssel is without moment. As TQ Delta knows, Danny Van Bruyssel and Paul Spruyt are involved with Nokia's participation in the ITU (and Mr. Spruyt with product management)—not the day-to-day R&D for the Accused Products—and thus they would not be expected to be named on scores of R&D documents relating to the Accused Products.

Third, in response to TQ Delta's requests for source code, Nokia produced complete builds of ▮ of its source code present in the Accused Products. Despite TQ Delta's claims to the contrary, all relevant software versions were produced in connection with Nokia's source code production well before August 10, 2022. Because Nokia already produced this information, the Court need not compel its production. Further, Nokia's source code production satisfies TQ Delta's request for "the compiled image of Nokia's ▮ software ▮." Mot. at 4. The Court's Protective Order (Dkt. No. 061) provides the mechanism for production of software. Less than a week before the close of fact discovery, TQ Delta first requested, and now seeks to compel, production of software in an entirely different format. That runs contrary to the software protections in the Protective Order, and even TQ Delta admits that the source code for the software version it seeks has already been produced.

Fourth, TQ Delta is simply wrong in stating that Nokia has not produced "its relevant training information for the accused products." Mot. at 5. Nokia searched for and produced all referenced ▮▮▮▮▮ training materials, resulting in 1,062 additional documents on July 28, 2022. This production includes documents related to the specific training classes TQ Delta requests. TQ Delta apparently filed this motion without actually reviewing all that Nokia has produced, which is telling.

Despite that Nokia asked during meet and confers with TQ Delta, Nokia is still unable to discern, and TQ Delta's motion does not identify, any particular documents or information that TQ Delta believes are missing from Nokia's production that are necessary to prove or disprove TQ Delta's theory of infringement. Instead, because the scope of this case is already unreasonable, TQ Delta's motion is an attempt to distract the parties from expert discovery and seeks to send Nokia on a fishing expedition to find information that does not exist, information that is not relevant to any aspect of this case, or information that is duplicative over the voluminous productions already made. The Court should deny TQ Delta's demand for additional, unnecessary, and unidentified "technical" documents.

### B. Nokia Has Produced All Relevant Business Documents It Located After a Reasonable Search.

As with the "technical" documents, TQ Delta similarly has not identified a single reason why additional "business" documents are relevant or necessary in this litigation. Nokia has searched for, compiled, and produced: sales records, costs of goods sold, bills of material, shipment information for all U.S. and ex-U.S. products that temporarily pass through a U.S. warehouse,[2]

---

[2] Despite TQ Delta's claims to the contrary, Nokia produced the information related to "products [] later sold elsewhere." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and documents have been produced relating to those products—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—and their shipments.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ complete product management files for ▇▇▇ U.S. customers, customer release notes, customer change requests, business roadmap and forecasting presentations, ▇▇▇▇ training documents, customer feature testing reports, customer documentation as to feature implementation, and third-party reports and forecasting documents.

TQ Delta fails to address the extensive business information that Nokia has in fact produced in this litigation, and TQ Delta fails to explain how that vast amount of information is insufficient to assess the relevant issues at hand. The Court should deny TQ Delta's demand for additional, unnecessary "business" documents.

### III.   CONCLUSION

For at least these reasons, Nokia respectfully requests that the Court deny TQ Delta's second motion to compel against Nokia.

[REDACTED]

Dated: August 28, 2022

Respectfully submitted,

*/s/ M. Scott Stevens*
M. Scott Stevens (NC Bar # 37828)
Kirk T. Bradley (NC Bar # 26490)
Karlee Wroblewski (NC Bar # 55043)
Nic Marais (NC Bar # 53533)
ALSTON & BIRD LLP
One South at the Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Tel:  704.444.1000
Fax:  704.444.1111
Email: scott.stevens@alston.com
Email: kirk.bradley@alston.com
Email: karlee.wroblewski@alston.com
Email: nic.marais@alston.com

John D. Haynes (GA Bar # 340599)
Michael Deane (GA Bar # 498195 )
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
Email: michael.deane@alston.com
Tel:  404.881.7737
Fax:  704.444.1111
Email: john.haynes@alston.com
Email: michael.deane@alston.com

Adam Ahnhut (TX Bar # 24106983)
ALSTON & BIRD LLP
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Email: adam.ahnhut@alston.com
Tel: 214-922-3400
Fax: 214-922-3899

Deron R. Dacus (TX Bar No. 00790553)
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430

███████████████████████
███████████████████████████████

        Tyler, Texas 75701 903-705-1117
        Tel: 903-581-2543 (fax)
        E-mail: ddacus@dacusfirm.com

        *Counsel for Defendants*
        *Nokia Corporation, Nokia Solutions*
        *and Networks Oy, and Nokia*
        *of America Corporation*

LEGAL02\42100396.v1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on August 28, 2022.

/s/ *M. Scott Stevens*
M. Scott Stevens

CERTIFICATE OF SERVICE

    I hereby certify that the foregoing document was served electronically on August 30, 2022, on all counsel who have consented to electronic service via ECF.

                                                                 /s/ *M. Scott Stevens*
                                                                 M. Scott Stevens