# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>       *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>       *Defendants*. | Civil Action No.: 2:21-cv-310-JRG |

**REPLY IN SUPPORT OF DEFENDANTS' OPPOSED MOTION FOR A PARTIAL STAY PENDING *INTER PARTES* REVIEW OF THE '835 PATENT**

I.      **INTRODUCTION.**

The Court should grant a partial stay of this case as to the '835 patent. TQ Delta spends much of its opposition on the red herring argument that CommScope and Nokia have somehow conspired to circumvent the statutory IPR provisions. TQ Delta, however, does not cite a shred of evidence or law to support that argument. To the contrary, in the '835 patent IPR proceedings, Nokia's lead counsel, Scott Stevens, submitted a sworn declaration, asserting that CommScope had no involvement at all in the filing of Nokia's petition. *See* Ex. 2 (Stevens IPR Decl.) ¶¶ 4–10. In that same declaration, Mr. Stevens debunks TQ Delta's assertion that it has not asserted the '835 patent against Nokia. *See* Dkt. No. 290 at 9.[1] The PTAB rejected the argument that TQ Delta is making here, finding that "neither 2Wire nor CommScope is an RPI or a privy of Petitioner [Nokia], and therefore, the Petition is not time barred under § 315(b)." Institution Decision at 8.

Setting aside TQ Delta's argument that the PTAB has already rejected, all three factors weigh in favor of a stay: (1) a stay will simplify the issues as to the '835 patent, because either claim 10 of the patent will be invalidated in the IPR, removing it from the case completely, or any future trial on claim 10 of the '835 patent (i.e., if it somehow survives the pending IPR) will be significantly streamlined as a result of CommScope's agreement to be bound by petitioner's estoppel; (2) TQ Delta will suffer no prejudice if a partial stay is granted because it does not practice the '835 patent and can be adequately compensated by money damages; and (3) CommScope and Nokia were diligent in filing their respective IPR petitions, and it is not too late in the proceedings for the parties, the Court, and the jury to benefit from a partial stay.

Accordingly, the Court should grant a partial stay with respect to the '835 patent.

---

[1] TQ Delta has sent claim charts to Nokia alleging infringement by Nokia of the '835 patent. *See* Stevens IPR Decl. ¶ 3. In the Institution Decision (at 14), the PTAB concluded that "Petitioner [Nokia] has its own interest in filing this Petition because Patent Owner has threatened Petitioner with litigation of its patents, including the '835 patent."

II.     ARGUMENT.

    A.     **Granting a Partial Stay Will Simplify the Issues in This Case.**

The most important stay factor—whether a stay will simplify the issues in this case—favors granting CommScope's motion. *See* Dkt. No. 272 at 4–6. A stay would simplify this case for at least two different reasons.

*First*, claim 10 of the '835 patent (the only Family 6 patent remaining against CommScope) could be removed from this case entirely, in light of the PTAB's institution of IPR on four separate grounds, including a ground of anticipation based on the G.992.1 standard with "compelling evidence of unpatentability." Institution Decision at 33. TQ Delta attempts to downplay the significance of the Institution Decision, asserting, with no basis, that it will somehow prevail in the IPR proceedings because claim 10 "was not separately addressed" in the Institution Decision. *See* Dkt. No. 290 at 5. TQ Delta had the opportunity to, and did, submit an expert declaration prior to the Institution Decision; in that declaration, Dr. Vijay Madisetti (the same Family 6 expert TQ Delta is using here and in Delaware) made no attempt to distinguish the additional limitations of claim 10 over the prior art of record. *See* Ex. 3 (Madisetti IPR Decl.). That is because claim 10 is certainly invalid if claim 8, from which claim 10 depends, is invalidated by the PTAB. Claim 8 covers adjusting "FIP settings," which are defined to include interleaver parameter settings and FEC coding settings. Claim 10 covers adjusting just interleaver parameter settings. The art that Nokia and CommScope are relying on clearly teach adjusting interleaver settings. *See, e.g.*, Institution Decision at 28 (noting that G.992.1 "defines a protocol that transceivers can use to ***modify their*** FEC and/or ***interleaver parameters*** during steady-state transmission (Showtime)") (emphasis added). Invalidation of claim 10 would certainly simplify the issues in this case.

*Second*, CommScope's agreement to be bound by petitioner's estoppel under § 315(e)(2) tilts this factor in favor of a stay because, even if claim 10 survives the IPR, CommScope would

not present any prior art based invalidity defenses at trial. TQ Delta fails to address CommScope's agreement to be bound anywhere in its opposition. Moreover, TQ Delta oversells the purported overlap between the '835 patent and the remaining eight asserted patents. *See* Dkt. No. 290 at 4–5. For example, to prove infringement of claim 10, TQ Delta relies upon an optional feature in the VDSL2 standard, called dynamic change of interleaver depth. TQ Delta does not rely upon that optional feature for infringement for any of the other asserted claims, so that feature would not need to be addressed by experts and other witnesses in a trial not involving the '835 patent. TQ Delta also contends that invalidity issues would not be simplified because CommScope relies upon G.992.1 as prior art for other asserted patents. However, G.992.1 is over 250 pages long, and TQ Delta does not point to any disclosures in G.992.1 relied upon by CommScope for claim 10 of the '835 patent that overlap with the disclosures for any of the other patents. CommScope's agreement to be bound by estoppel, if this motion is granted, would thus simplify the issues in this case.

TQ Delta argues that a partial stay would allegedly complicate the case by requiring "another round of expert testimony and testimony by the same inventor as the prior trial." Dkt. No. 290 at 5. The Court should reject this self-serving argument. As the Court is aware, TQ Delta already had a lawsuit against 2Wire, now owned by CommScope, pending in Delaware before it filed this case. Despite this, TQ Delta chose to bring this lawsuit against CommScope in a completely different forum, asserting many of the same patents against many of the same accused products already at issue in the Delaware case. TQ Delta therefore should not be heard to complain about having to participate in multiple trials—it already willingly chose to do so by filing this separate lawsuit, strategically designed to force CommScope to expend additional time and money litigating in two different districts.

Accordingly, this factor weighs in favor of granting a stay.

### B.     Granting a Partial Stay Will Not Unduly Prejudice TQ Delta.

A partial stay as to the '835 patent will not unduly prejudice TQ Delta. *See* Dkt. No. 272 at 6–7. TQ Delta does not dispute anywhere in its opposition that it does not make or sell any products, does not practice any of the patents-in-suit (including the '835 patent), and does not seek injunctive relief. Under such circumstances, where TQ Delta can be adequately compensated by money damages if it prevails at trial, courts routinely hold that there is no undue prejudice in granting a stay. *See id.* at 4.

In its opposition, TQ Delta argues that it will "suffer prejudice from significant additional expenses in proceedings related to two trials instead of one; the loss of time for its witnesses to testify twice on, essentially, the same grounds; and the general delay that results." Dkt. No. 290 at 6. But, again, TQ Delta already made the tactical decision to create additional trials by filing this case on patents that it is already asserting in Delaware. And while a another trial may be a theoretical possibility if this motion is granted, such a scenario is unlikely given the language and number of grounds discussed in the PTAB's Institution Decision.

Here, TQ Delta shamelessly references—yet again—the tragic passing of CommScope's former in-house counsel, Troy Van Aacken, asserting that there will be evidentiary loss given the passage of time. *See* Dkt. No. 290 at 8. TQ Delta, however, knows full well that James Shead, in-house counsel for CommScope (and ARRIS and Pace prior to the CommScope acquisition), was and remains involved in all licensing discussions with TQ Delta, including those where Mr. Van Aacken was not present. Indeed, Mr. Shead was CommScope's Rule 30(b)(6) designee on the parties' licensing discussions. TQ Delta never claimed that Mr. Shead was unprepared or unable to testify at his deposition about CommScope's discussions with TQ Delta. TQ Delta's argument regarding supposed evidentiary loss based on Mr. Van Aacken's passing should thus be ignored.

4

### C. CommScope Was Diligent in Seeking Review of the '835 Patent and the Stage of the Case Is Not Too Advanced for a Stay.

The final stay factor favors a stay because CommScope was diligent in seeking review and because the stage of the case is not too advanced for a stay. *See* Dkt. No. 272 at 7–8.

Regarding CommScope's diligence, TQ Delta accuses CommScope of failing to file an IPR petition against the '835 patent based on the lawsuit against 2Wire filed in 2013. As TQ Delta knows, CommScope did not acquire 2Wire (through the ARRIS acquisition) until December 2019; until that point, CommScope had no DSL CPE business and, thus, no reason to challenge the '835 patent. The fact that the PTAB ultimately found CommScope's petition to be time-barred by way of the ARRIS acquisition in no way changes the fact that CommScope diligently filed its petition early on in this case soon after it received TQ Delta's infringement contentions, and it also diligently filed this motion soon after the PTAB's Institution Decision was filed.

TQ Delta also makes the baseless accusation that CommScope is secretly working with Nokia on Nokia's IPR petitions to circumvent the statutory IPR provisions. *See* Dkt. No. 290 at 8. TQ Delta's argument is belied by the undisputed facts, sworn to by Nokia's lead counsel, that "Nokia's decision to file its petition was independently made and not at the behest or request of 2Wire or CommScope" and that "Nokia has not engaged in any type of agreement or arrangement with 2Wire and/or CommScope regarding the substance of any petition, divvying up patents, or making decisions regarding the filed IPRs." Stevens IPR Decl. ¶¶ 4–5. In light of this evidence, the PTAB already rejected TQ Delta's argument, finding that CommScope is not an RPI to Nokia's IPR petition and is not in privity with Nokia. *See* Institution Decision at 12–18.

### III. CONCLUSION.

For the reasons stated above and in its opening brief, CommScope respectfully requests that the Court exercise its inherent power to stay the portion of the case related to the '835 patent.

| | |
|---|---|
| Dated this 19th day of September, 2022 | Respectfully submitted,<br><br>By: */s/ Eric H. Findlay*<br>Eric H. Findlay<br>State Bar No. 00789886<br>Brian Craft<br>State Bar No. 04972020<br>FINDLAY CRAFT, P.C.<br>102 N. College Ave, Ste. 900<br>Tyler, TX 75702<br>903-534-1100 (t)<br>903-534-1137 (f)<br>efindlay@findlaycraft.com<br>bcraft@findlaycraft.com<br><br>Douglas J. Kline<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA  02210<br>P:  (617) 570-1000<br>F:  (617) 523-1231<br>dkline@goodwinlaw.com<br>clarochelle@goodwinlaw.com<br><br>Brett Schuman<br>Rachel M. Walsh<br>GOODWIN PROCTER LLP<br>Three Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>P:  (415) 733-6000<br>F:  (415) 677-9041<br>bschuman@goodwinlaw.com<br>rwalsh@goodwinlaw.com<br><br>Andrew Ong<br>GOODWIN PROCTER LLP<br>601 Marshall St.<br>Redwood City, CA 94063<br>P: (650) 752-3100<br>F: (650) 853-1038<br>aong@goodwinlaw.com<br><br>***Attorney for Defendants*** |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 19th day of September, 2022.

*/s/ Eric H. Findlay*
Eric H. Findlay
