# EXHIBIT F

<pre>
                                                                    Page 1
 1              UNITED STATES DISTRICT COURT
 2                  DISTRICT OF DELAWARE
 3
 4     ----------------------------------
                                          )
 5     TQ DELTA, LLC,                     )
                                          )
 6            Plaintiff                   )
                                          )
 7     vs.                                ) C.A. No. 13-CV-1835-RGA
                                          )
 8     2WIRE, INC.,                       )
                                          )
 9            Defendant                   )
       ----------------------------------
10
11
12      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
13      VIDEOTAPED DEPOSITION OF JONATHAN D. PUTNAM
14             THURSDAY, FEBRUARY 7, 2019
15                GOODWIN PROCTER LLP
16                100 NORTHERN AVENUE
17               BOSTON, MASSACHUSETTS
18
19
20
21
22     Reported by:  Sandra A. Deschaine, CSR, RPR,
23     CLR, CRA
24     Job No. 154657
25
</pre>

Highly Confidential Attorneys' Eyes Only

Page 2

1              FEBRUARY 7, 2019

2

3                 9:33 a.m.

4

5         Videotaped deposition of Jonathan

6    D. Putnam, held at Goodwin Procter LLP, 100

7    Northern Avenue, Boston, Massachusetts,

8    pursuant to Notice, before Sandra A.

9    Deschaine, a Shorthand Reporter, Registered

10   Professional Reporter, Certified LiveNote

11   Reporter, and Notary Public in and for the

12   Commonwealth of Massachusetts.

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential Attorneys' Eyes Only

Page 3

```
 1    A P P E A R A N C E S:

 2

 3        MCANDREWS, HELD & MALLOY

 4        Attorneys for Plaintiff:

 5            500 West Madison Street

 6            Chicago, Illinois 60661

 7            BY:  THOMAS WIMBISCUS, ESQUIRE

 8                 PAUL MCANDREWS, ESQUIRE

 9

10        GOODWIN & PROCTER

11        Attorneys for Defendant:

12            Three Embarcadero Center

13            San Francisco, California 94111

14            BY:  BRETT SCHUMAN, Esquire

15

16    Also Present:  Awo Agyapong

17                   Adam Rhoten

18                   Aaron Babcock, videographer

19

20

21

22

23

24

25
```

Highly Confidential Attorneys' Eyes Only

Page 4

1       P R O O C E E D I N G S
2            THE VIDEOGRAPHER:  This the
3   start of tape labeled No. 1 of the videotaped
4   deposition of Dr. Jonathan Putman, in the
5   matter TQ Delta, Inc., versus 2Wire, Inc., in
6   the United States District Court, District of
7   Delaware, No. CA13-CV-18935-RGA.  This
8   deposition is being held at Goodwin Procter
9   LLP in Boston, Massachusetts, on 2/7/19 at
10  approximately 9:33 a.m.
11              My name is Aaron Babcock from TSG
12  Reporting, Inc., and I am the legal video
13  specialist.  The court reporter is Sandra
14  Deschaine in association with TSG Reporting.
15              Will counsel please introduce
16  yourself.
17            MR. WIMBISCUS:  Tom Wimbiscus on
18  behalf of the plaintiff TQ Delta and the
19  witness and with me is Paul McAndrews.
20            MR. SCHUMAN:  Brett Schuman from
21  Goodwin Procter on behalf of Defendant 2Wire,
22  AND with me is Adam Rhoten from Nera.
23            THE VIDEOGRAPHER:  Will the court
24  reporter please swear in the witness.
25            JONATHAN D. PUTNAM, Deponent,

Highly Confidential Attorneys' Eyes Only

Page 5

1  having first been satisfactorily identified
2  by the production of his Massachusetts
3  driver's license and duly affirmed by the
4  Notary Public, was examined and testified as
5  follows:
6           THE WITNESS:  I affirm that, yes.
7              DIRECT EXAMINATION
8  BY MR. SCHUMAN:
9       Q.   Good morning, Dr. Putnam.
10      A.   Good morning.
11      Q.   Nice to see you again.
12      A.   Likewise.
13      Q.   Are you taking any medication that
14 would prevent you from proceeding with the
15 deposition today?
16      A.   Not at the moment.  I actually
17 have a cold and I might have to take
18 something later, but I'll let you know, and I
19 don't think it's going to interfere with
20 anything.
21      Q.   Okay.  Anything that, as of now,
22 you think would impair your ability to answer
23 my questions truthfully and fully?
24      A.   No.
25      Q.   Thank you.

Highly Confidential Attorneys' Eyes Only

Page 52

```
1    price that the parties agree to is consistent
2    with the division of the value that I've
3    arrived at, then I would say the contract
4    supports the division.  But the contract is
5    not going to, itself, illustrate that
6    division because that's not what contracts
7    do.
8         Q.   So I think I understand what
9    you're saying.  And let me try and ask you.
10             Because it's your opinion that the
11   fair sharing would be 50/50, is that why you
12   think the ███████████████████████████████
13   ████████ agreements necessarily reflect that
14   50/50 sharing, even though they don't say
15   that on the face, because that's what you
16   think would be fair and now you've got three
17   agreements?
18             MR. WIMBISCUS:  Objection to form
19   and to the extent it mischaracterizes the
20   testimony.
21             THE WITNESS:  I'm sorry.  Could
22   you read that back?
23             THE REPORTER:  "Because it's your
24   opinion that the fair sharing would be 50/50,
25   is that why you think the████████████████
```

Page 53

1    ████████████████████████ agreement necessarily
2    reflect that 50/50 sharing, even though they
3    don't say that on the face, because that's
4    what you think would be fair and now you've
5    got three agreements?"
6           THE WITNESS:  It's actually a
7    little hard to parse that question.
8    BY MR. SCHUMAN:
9         Q.   Let me try it a different way
10   then.  I'm trying to really just understand
11   your -- we would agree -- we can agree,
12   right, that neither the ████████████████████
13   ████████████ agreement say, anywhere on
14   them, that they're sharing the value of the
15   licensed technology 50/50?
16        A.   Sure.
17        Q.   Right?  You agree?
18        A.   Yes.
19        Q.   And as you testified earlier,
20   those are the only agreements that you've
21   looked at in this case with respect to
22   licenses for relevant -- DSL technology?
23           MR. WIMBISCUS:  I'll object to the
24   extent that mischaracterizes his testimony.
25        A.   Those are the licenses that have

Page 54

1  been produced in this case; they're not the
2  only ones I looked at, but yes.
3  BY MR. SCHUMAN:
4      Q.  Right.  So -- sorry.  So going
5  back a little bit further.  What I'm trying
6  to understand is all the bases for your 50/50
7  sharing opinion.
8          Well, first of all, all the basis
9  for your 50/50 sharing opinion are set forth
10 in your report and it's paragraphs 218
11 through 222 of your report, right?
12         MR. WIMBISCUS:  I'll object to the
13 extent you left out a paragraph.
14     A.  Yeah, I would guess I would add
15 223.
16 BY MR. SCHUMAN:
17     Q.  I was going to get to that
18 one bec- -- sorry to interrupt you.
19         I was going to get to that one
20 because that was is the 45/55, and I want to
21 just focus for the moment for the 50/50.
22     A.  Right.  Okay.  Fair enough.
23     Q.  So 218 through to 222 is the basis
24 for a your opinion that implementers and
25 innovators would share the gains that you

Highly Confidential Attorneys' Eyes Only

Page 55

1  calculated form DSL technology using your
2  methodology 50/50, right?
3       A.   Yes, that's the basis.
4       Q.   And you would also agree with me
5  that, within those paragraphs, there's no
6  reference to the ███████████████████████████
7  ██████████████████████ agreement, right?
8       A.   Of course not, because this is
9  about the system-wide division of the gains,
10 not the bargaining between individual
11 parties, that's right.
12      Q.   So I've seen -- so the answer is
13 no, right?
14      A.   That's right.
15      Q.   Now I want to come back to the
16 question that I perhaps asked inarticulately.
17           It sounds to me like what you're
18 saying is the ████████████████████████████
19 agreements support, they're not the basis for
20 your opinion but they support the opinion
21 you've stated here in paragraphs 218 to 222;
22 is that right, in your view?
23      A.   I would say they are -- the result
24 that you get -- I think I would focus on the
25 results.  The result that you get when you

Highly Confidential Attorneys' Eyes Only

Page 56

1  apply this assumption and the other
2  assumptions that I've made together, is a
3  price that is consistent with the price
4  observed in the actual license agreements.
5        Q.   All right.  So what I'm really
6  trying to understand is how you think that
7  the prices in those agreements, which don't
8  mention 50/50 sharing anywhere, is consistent
9  with your opinion that implementers and
10 innovators would share the gains from DSL
11 technology 50/50.
12       A.   Well, because -- because the
13 system-wide division of the gains is
14 completely unrelated to the bargaining
15 between individual parties.  It's an
16 assumption that's made well upstream.
17            So it's like saying if I was
18 trying to predict the price of a car, I would
19 look at the price of steel and the price of
20 plastics and the price of labor, and
21 everything like that.  And I might say, I
22 predict the price of a Chevrolet is $30,000.
23 And then I look at how much people pay for a
24 Chevrolet and it's 31,000.  So I would say I
25 did a pretty good job of predicting the price

Page 178

```
1    COMMONWEALTH OF MASSACHUSETTS
2    SUFFOLK, SS.
3         I, Sandra A. Deschaine, Registered
4    Professional Reporter and Notary Public
5    within and for the Commonwealth of
6    Massachusetts at large, do hereby certify:
7         That JONATHAN D. PUTNAM, the witness
8    whose deposition is hereinbefore set forth,
9    was duly sworn by me and that such deposition
10   is a true record of the testimony given by
11   such witness.
12        That the witness is hereby reading and
13   signing the deposition transcript.
14        I further certify that I am not related
15   to any of the parties to this action by blood
16   or marriage and that I am in no way
17   interested in the outcome of this matter.
18        IN WITNESS WHEREOF, I have hereunto set
19   my hand this 20th day of February, 2019.
20
21   _____
22        Sandra A. Deschaine, CSR, RPR
23
24   My Commission Expires
25   July 5, 2024
```