# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>     *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>     *Defendants*. | Civil Action No.: 2:21-cv-00310-JRG |

**COMMSCOPE'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF JONATHAN PUTNAM AND TODOR COOKLEV UNDER FED R. EVID. 702 AND *DAUBERT***

███████████████████████████████

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | LEGAL STANDARDS | 3 |
| IV. | ARGUMENT | 4 |
| V. | CONCLUSION | 6 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Curtis v. M & S Petroleum, Inc.*,
 174 F.3d 661 (5th Cir. 1999) ................................................................................................4

*Daubert v. Merrell Dow Pharms. Inc.*,
 509 U.S. 579 (1993)..................................................................................................1, 3, 4

*Genband US LLC v. Metaswitch Networks Corp.*,
 No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 196292 (E.D. Tex. Jan. 7,
 2016) ....................................................................................................................................6

*Hathaway v. Bazany*,
 507 F.3d 312 (5th Cir. 2007) ................................................................................................6

*Johnson v. Arkema*,
 Inc., 685 F.3d 452 (5th Cir. 2012) ........................................................................................4

*Moore v. Ashland Chem., Inc.*,
 151 F.3d 269 (5th Cir. 1998) (en banc) ................................................................................4

**Other Authorities**

Fed. R. Evid. 702 ..........................................................................................................1, 3, 6

██████████████████████████████

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| Exhibit A | Excerpts of the Corrected Expert Report of Johnathan D. Putnam, including Exhibits and Schedules |
| Exhibit B | Excerpts of the Opening Expert Report of Todor Cooklev, Ph.D. |

I.  **INTRODUCTION**

Pursuant to Federal Rule of Evidence 702, CommScope respectfully moves to exclude a so-called "knockout analysis" performed by two of TQ Delta's experts, Jonathan Putnam, Ph.D. (damages expert) and Todor Cooklev, Ph.D. (technical expert). Their goal was to identify patents that create DSL value. But despite cloaking the "analysis" in search terms and math, it bears none of the requisite hallmarks of scientific procedure or reliability, and it should be excluded.

To begin, Drs. Putnam and Cooklev applied broad DSL-related search terms in an effort to narrow all issued U.S. patents down to just those that are allegedly standard-essential for DSL technologies. That narrowing yielded 14,848 U.S. patents, which they then narrowed further by applying a set of 360 "knockout words" created by Dr. Cooklev—including technical words like "address," "routing," "switch," and "voltage," as well as random words like "hygiene," "karaoke," "kitchen," and "sewing"—that he decided would never appear in a DSL standard-essential patent. If any of the "knockout words" appeared in a patent claim, the patent was afforded *less* weight and sampled *less* frequently in their sampling analysis than the other patents. What is missing, however, is a reasoned explanation as to how or why Dr. Cooklev selected the 360 "knockout words" from among the hundreds of thousands of words in the English language. The reason it's not explained is there is no reason. There is no scientific foundation for his creation and application of the "knockout words," much less any reliable basis for concluding that the words *actually* serve to identify patents that create DSL value. Yet Dr. Putnam then uses that very analysis as a core underpinning of his damages calculations. *See* CommScope's Motion to Exclude Expert Testimony of Jonathan Putnam, Ph.D. That Is Inconsistent With Legal Precedent (filed contemporaneously herewith). The experts' knockout analysis deserves this Court's gatekeeping function under *Daubert*, lest the jury be misled into believing that the methodology has reliable, scientific underpinnings. It does not.

## II.     FACTUAL BACKGROUND

On August 29, 2022, TQ Delta served an expert report by Dr. Cooklev regarding infringement of the Family 2, 3, 9A, and 9B Patents. On September 3, 2022, TQ Delta served a corrected expert report by Dr. Jonathan Putnam regarding damages. With the help of Dr. Cooklev, Dr. Putnam performs an analysis using a sampling method to calculate the purported number of essential patent families per DSL standard. Ex. A, Putnam Rpt. at ¶¶ 368–75.

Dr. Putnam began by attempting to identify all U.S. patents that refer to DSL-related technology. *Id.* at 368–75. To do so, Dr. Putnam performed a keyword-search for text strings containing variations of the phrases "DSL" or "digital subscriber line" within the patents. *Id.* at p. 187 n. 464. Dr. Putnam then identified a subset of these patents owned by patentees that had made a licensing commitment at the ITU, and he similarly compiled a list of patents that had been named specifically in an essentiality-disclosure statement at the ITU. *Id.* at ¶¶ 369-70. From this list, Dr. Putnam removed patents that expired before 1999, leaving "around 14,848 potentially-essential patents, within 11,166 patent families." *Id.* at ¶ 370.

Dr. Putnam then conducted a "patent sampling and technical analysis." Using a list of 360 "knockout" words identified by Dr. Cooklev as "unlikely" to be found in the claims of any essential DSL patent, Dr. Putnam narrowed the list of 14,848 patents to just those that, according to Dr. Putnam, an economist, are "the most relevant patents." *Id.* at ¶ 371. Dr. Cooklev's list of "knockout words" is Exhibit 11, Schedule D to Dr. Putnam's report. *See* Ex. A, Putnam Rpt. at Ex. 11, Schedule D. Dr. Putnam then grouped all patents whose independent claims contained at least one of the knockout words for purposes of his sampling analysis in Bucket 3, and included patents from Bucket 3 at a significantly lower rate because of their deemed non-essentiality. Ex. A, Putnam Rpt. at 189 n.472. Claims without a knockout word were grouped separately, leaving two groups of patents. Dr. Putnam then further divided each group of patents into nine sub-

2

categories based on Derwent World Patents Index ("DWPI") classifications that Dr. Cooklev recommended were "more or less likely to contain a DSL-essential patent." *Id.* at ¶ 372. The resulting set comprised 1,100 patents spanning 826 patent families. *Id.* at ¶ 374. Dr. Cooklev then purportedly analyzed—one by one—the independent claims of each of the 1,100 patents in order to narrow the list to 33 essential patents across 25 patent families. Ex. A, Putnam Rpt. at Ex. 11; Ex. B, Cooklev Rpt. at ¶ 1362. Dr. Putnam then uses these patents to calculate the number of alleged patent families across all DSL standards, which he determines to be 71. Ex. A, Putnam Rpt. at ¶ 375.

### III. LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under the rule, "[a] witness who is qualified as an expert by knowledge, skill, experience, training and education may testify in the form of an opinion or otherwise" if the following four conditions are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993).

3

"The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson v. Arkema*, Inc., 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593-94. "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).

**IV.   ARGUMENT**

Drs. Putnam and Cooklev's "knockout analysis" is not based on valid methodology or sufficient facts or data, rendering it flawed and unreliable. The Fifth Circuit has made clear that an expert's opinion must "be grounded in the methods and procedures of science and . . . be more than supported by mere speculation or subjective belief." *Johnson*, 685 F.3d at 459. But the knockout analysis performed here, including Dr. Cookev's underlying decision that the "knockout" words are unlikely to appear in the claims of a DSL standard-essential patent, is speculative at best, and rests entirely on Dr. Cooklev's own subjective belief—not any established methods or procedures of science. The analysis should thus be excluded.

*First*, Dr. Cooklev does not explain how he generated the list of knockout terms used in Dr. Putnam's standard-essential patent analysis. While Dr. Cooklev purports to have taken some of the terms from the DWPI classifications, he fails to sufficiently explain how these specific 360

4

"knockout" words, but not others, from the descriptions of DWPI classifications were chosen for his list. Nor does Dr. Putnam specifically tie any of the 360 keywords to the DWPI classifications. Ex. B, Cooklev Rpt. at ¶ 1340. Dr. Cooklev simply cherry-picked words out of the DWPI classifications to arrive at his list of "knockout" words. Without a clear road map explaining his processes, one is left only to guess why some words, but not others, are included on the list.

*Second*, Dr. Cooklev's questionable keyword list is then used to whittle down the list of potentially DSL standard-essential patents based on Dr. Cooklev's unsupported belief and conclusory opinion that the knockout terms are less likely to appear in the claims of an essential DSL patent. Ex. B, Cooklev Rpt. at ¶ 1340. Dr. Cooklev does not provide any basis for his opinion that the terms are unlikely to appear in an essential patent. Rather, Dr. Cooklev simply assumes that the list of keywords can be used to determine whether a patent is unlikely to be standard essential. And even a comparison of the 360 "knockout words" to DSL standards demonstrates that Dr. Cooklev's approach lacks the necessary precision and rigor. For example, each of the following terms appears in the ITU's Recommendation G.993.1 (VDSL) of June 2004, but was nonetheless identified by Dr. Cooklev as a term that is *unlikely* to be related to a DSL standard-essential patent: address, addressed, broadcast, cell, compression, echo, ISDN, machine, node, passive, POTS, routing, solid, switch, switched, switches, vehicle, voice, and voltage.[1] Dr. Cooklev's exclusion of terms *that actually appear in the standard* illustrates the unreliability of this proposed methodology. Moreover, Dr. Cooklev's "knockout terms" even encompass terms that appear in the claims of the Asserted Patents. For instance, the knockout terms "switch" and "switching" both appear in the claims of the 8,462,835 Patent. The fact that Dr. Cooklev's

---

[1] ITU's Recommendation G.993.1 (VDSL) of June 2004, *available at* https://www.itu.int/rec/T-REC-G.993.1-200406-I/en.

"knockout words" would exclude the '835 Patent from Dr. Putnam's analysis illustrates the failings of the methodology.

In sum, Dr. Cooklev's list of "knockout" words rests entirely on his own subjective view as to keywords that might be unlikely to appear in the claims of a DSL standard-essential patent. Dr. Cooklev fails to explain the rationale or basis behind his methodology and opinions, rendering his "knockout" analysis conclusory and unreliable. When an expert offers unsupported and unreliable opinions, it is this Court's role as a gatekeeper to exclude such opinions. *See, e.g., Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (upholding exclusion of expert testimony when the expert merely "relie[d] on a host of unsupported conjectures that falls far short of a methodology"); *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 196292, at *6 (E.D. Tex. Jan. 7, 2016) (holding that "conclusory opinions unsupported by 'facts or data' and based on no discernable 'principles and methods' are not admissible under Fed. R. Evid. 702").

Because of its unreliable nature and lack of any scientific underpinnings, this Court should exclude the knockout analysis and associated opinions by Drs. Cooklev and Putnam. The exclusion should specifically encompass Paragraphs 371–398, Figure 5, and Exhibit 11 (Schedule B & Schedule D) of the Putnam Report (Ex. A), and Paragraphs 1340–1342 of the Cooklev Report (Ex. B).

### V.  CONCLUSION

For the foregoing reasons, CommScope respectfully requests that the Court strike Dr. Cooklev's knockout analysis, and the corresponding analysis by Dr. Putnam (relying on Dr. Cooklev's "knockout" analysis) and preclude both experts from presenting or relying on the analysis at trial. The exclusion should include Paragraphs 371–398, Figure 5, and Exhibit 11

(Schedule B & Schedule D) of the Putnam Report (Ex. A), and Paragraphs 1340–1342 of the Cooklev Report (Ex. B).

Dated: December 14, 2022

Respectfully submitted,

By: /s/ Eric H. Findlay
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Ste. B
Tyler, TX 75703
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
P: (617) 570-1000
F: (617) 523-1231
dkline@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P: (415) 733-6000
F: (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Ross R. Barton (NC Bar No. 37179)

7

M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Email: *ross.barton@alston.com*
*scott.stevens@alston.com*
*kirk.bradley@alston.com*
*stephen.lareau@alston.com*
*karlee.wroblewski@alston.com*
*nic.marais@alston.com*
*erin.beaton@alston.com*
*mary.riolo@alston.com*
Telephone: 704-444-1000
Facsimile: 704-444-1111

Katherine G. Rubschlager
(Cal. Bar No. 328100)
ALSTON & BIRD LLP
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
Email: *katherine.rubschlager @alston.com*
Telephone: 650-838-2004
Facsimile: 650-838-2001

***Counsel for Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on December 14, 2022, to all counsel of record via electronic mail.

          */s/ Eric H. Findlay*
          Eric H. Findlay

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7(i), I hereby certify that counsel for CommScope and TQ Delta participated in a lead and local meet and confer to discuss the issues presented in this motion on Tuesday, December 13, 2022. TQ Delta indicated it opposes this motion.

          */s/ Eric H. Findlay*
          Eric H. Findlay



9