▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>       *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>       *Defendants*. | Civil Action No.: 2:21-cv-00310-JRG<br><br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆ |

**COMMSCOPE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
TO LIMIT DAMAGES BASED ON 35 U.S.C. § 286**

███████████████████████████████████████

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................................ 1

II.    LEGAL STANDARD ......................................................................................................... 1

III.   STATEMENT OF ISSUES TO BE DECIDED BY THE COURT .................................... 2

IV.    STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................... 2

V.     ARGUMENT. ..................................................................................................................... 4

   A.   TQ Delta Is Statutorily Barred From Recovering Damages for Pre-2015 Sales. ............. 4

   B.   TQ Delta Cannot Recover Damages for Pre-2015 Sales Under Its Theory of
        Induced Infringement. ....................................................................................................... 4

      1.   TQ Delta Has No Evidence of Direct Infringement During the Damages
           Period Relating to the Pre-2015 Sales. ....................................................................... 7

      2.   TQ Delta Has No Evidence of an Affirmative Act of Inducement During the
           Damages Period Relating to the Pre-2015 Sales ........................................................ 9

VI.    CONCLUSION ................................................................................................................. 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011)..................................................................................................10

*Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005)....................................................................................................6

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)..............................................................................................6, 10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011).....................................................................................................................6

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) .........................................................................................................6

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
    30 F.4th 1109 (Fed. Cir. 2022) ............................................................................................ passim

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*,
    754 F.2d 345 (Fed. Cir. 1985)...........................................................................................1, 4, 5, 9

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009)..................................................................................................10

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003)..................................................................................................10

**Statutes**

35 U.S.C. § 286........................................................................................................................1, 4, 5

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| Ex. A | Excerpts from the Corrected Expert Report of Jonathan D. Putnam, dated September 3, 2022 ("Putnam Op. Rpt.") |
| Ex. B | Excerpts from the Supplemental Expert Report of Jonathan D. Putnam, dated November 16, 2022 ("Putnam Supp. Rpt.") |
| Ex. C | Excerpts from CommScope's Sixth Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories (Nos. 1–18), dated November 14, 2022 ("CommScope Interrog. Resps.") |
| Ex. D | User guide for the 5168 Accused Product, bearing Bates numbers COMMSCOPE018563–8594 ("5168 User Guide") |
| Ex. E | User guide for the 5268 Accused Product, bearing Bates numbers COMMSCOPE026243–6274 ("5268 User Guide") |
| Ex. F | Product release notes for the NVG589 Accused Product, bearing Bates numbers COMMSCOPE070299–0312 ("NVG589 Product Release Notes") |
| Ex. G | Datasheet for the NVG599 Accused Product, bearing Bates numbers COMMSCOPE038709–8711 ("NVG599 Datasheet") |
| Ex. H | Excerpts from the transcript of the August 10, 2022 deposition of Steven Wauters ("Wauters Dep.") |
| Ex. I | Excerpts from the transcript of the January 21, 2022 deposition of James Shead ("Shead Dep.") |
| Ex. J | Excerpts from the transcript of the August 12, 2022 deposition of Jaime Salazar ("Salazar Dep.") |
| Ex. K | Excerpts from the transcript of the August 9, 2022 deposition of Paul Baker ("Baker Dep.") |
| Ex. L | Excerpts from the Opening Expert Report of Todor Cooklev, Ph.D., dated August 29, 2022 ("Cooklev Op. Rpt.") |
| Ex. M | Excerpts from the transcript of the December 9, 2022 deposition of Dr. Todor Cooklev ("Cooklev Dep.") |
| Ex. N | Excerpts from the Responsive Expert Report of Dr. Naofal Al-Dhahir Regarding Family 10, dated November 18, 2022 ("Al-Dhahir Resp. Rpt.") |

| Exhibit No. | Description |
|---|---|
| Ex. O | Excerpts from the Responsive Expert Report of Dr. Niel Ransom on Non-Infringement of the Family 2, 3, 6, 9A and 9B Patents, dated November 18, 2022 ("Ransom Resp. Rpt.") |

## I. INTRODUCTION

The law is clear: "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint." 35 U.S.C. § 286. But TQ Delta seeks over $22 million in damages for products it concedes were sold prior to August 13, 2015 (*i.e.*, more than six years prior to the Complaint). The law expressly forbids that. CommScope respectfully requests that this Court enter summary judgment precluding TQ Delta from recovering any damages arising from CommScope's sales of the Accused Products before August 13, 2015 ("Pre-2015 Sales").

TQ Delta's attempt to circumvent § 286 via alleged induced infringement fails as a matter of law and fact.[1] First, for CommScope's products sold pre-2015, TQ Delta presents no evidence of direct infringement post-2015, *i.e.*, during the statutory damages period. TQ Delta must show evidence of *actual use* of each DSL CPE product, for DSL, *post*-2015 by either the service providers or the end user. But TQ Delta cannot show any use, let alone use for DSL. Second, the record is bereft of any evidence from which TQ Delta could prove that CommScope committed any act post-2015 to induce infringement of Pre-2015 Sales by an end user.

## II. LEGAL STANDARD

Under 35 U.S.C. § 286, a patent owner may only recover damages for any infringement committed during the six years prior to the filing of the complaint. *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 348 (Fed. Cir. 1985).

Liability for induced infringement arises "*as of the time the [inducing] acts were committed, not at some future date determined by the acts of others.*" *Roche Diagnostics Corp. v. Meso Scale*

---

[1] Not surprisingly, TQ Delta has never obtained royalties for sales occurring more than six years prior to the date that a complaint was filed. TQ Delta did not seek such damages in the case pending in Delaware against 2Wire. The recent Nokia license expressly states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And the prior licenses to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1

*Diagnostics, LLC*, 30 F.4th 1109, 1120 (Fed. Cir. 2022) (quoting *Standard Oil*, 754 F.2d at 348).[2]

### III. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

Whether TQ Delta can recover damages for Pre-2015 Sales that were sold prior to the damages period where there is no evidence of direct or induced infringement during the statutory damages period.

### IV. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. TQ Delta filed its Complaint in this matter on August 13, 2021. D.I. 1.

2. TQ Delta's damages expert, Dr. Jonathan Putnam, admits that TQ Delta may not recover for alleged infringement occurring before August 13, 2015. *See* Ex. A, Putnam Op. Rpt. ¶ 24, n.13.[3]

3. CommScope sold certain of the Accused Products before August 13, 2015. *See* Ex. B, Putnam Supp. Rpt., ¶ 6; Ex. C, CommScope Interrog. Resps., at 58 (Fourth Supp. Resp. to Interrogatory No. 7).

4. TQ Delta contends that it is entitled to damages for five of the Accused Products that were sold prior to August 13, 2015. The products at issue are: 5031; 5168; 5268; NVG589; and NVG599. *See* Ex. B, Putnam Supp. Rpt., Ex. 5, Schedule A.2.

5. CommScope sold ▮ units of the model 5031 before August 13, 2015. *Id.*, Ex. 5, Schedules A.1., A.2. TQ Delta contends that it is entitled to a unit royalty rate of ▮ for the ▮ units sold before August 13, 2015, amounting to ▮ in claimed pre-August 13, 2015 damages. *Id.*

6. CommScope sold ▮ units of the model 5168 before August 13, 2015. *Id.* TQ

---

[2] All emphases added unless otherwise noted.

[3] All exhibits are attached to the Declaration of Lana Shiferman submitted herewith.

2

Delta contends that it is entitled to a unit royalty rate of ▇ for the ▇ units sold before August 13, 2015, amounting to ▇ in claimed pre-August 13, 2015 damages. *Id.* The 5168 box has Ethernet WAN functionality, allowing it to be used as a Wi-Fi router without ever using the DSL port. *See* Ex. D, 5168 User Guide.

7.  CommScope sold ▇ units of the model 5268 before August 13, 2015. *See* Ex. B, Putnam Supp. Rpt., Ex. 5, Schedules A.1., A.2. TQ Delta contends that it is entitled to a royalty rate of ▇ for the ▇ units sold before August 13, 2015, amounting to ▇ in claimed pre-August 13, 2015 damages. *Id.* The 5268 box has Ethernet WAN functionality, allowing it to be used as a Wi-Fi router without ever using the DSL port. *See* Ex. E, 5268 User Guide.

8.  CommScope sold ▇ units of the model NVG589 before August 13, 2015. *See* Ex. B, Putnam Supp. Rpt., Ex. 5, Schedules A.1., A.2. TQ Delta contends that it is entitled to a royalty rate of ▇ for the ▇ units sold before August 13, 2015, amounting to ▇ in claimed pre-August 13, 2015 damages. *Id.* The NVG589 box has Ethernet WAN functionality, allowing it to be used as a Wi-Fi router without ever using the DSL port. *See* Ex. F, NVG589 Product Release Notes.

9.  CommScope sold ▇ units of the NVG599 before August 13, 2015. *See* Ex. B, Putnam Supp. Rpt., Ex. 5, Schedules A.1., A.2. TQ Delta contends that it is entitled to a royalty rate of ▇ for the ▇ units sold before August 13, 2015, amounting to ▇ in claimed pre-August 13, 2015 damages. *Id.* The NVG599 box has Ethernet WAN functionality, allowing it to be used as a Wi-Fi router without ever using the DSL port. *See* Ex. G, NVG599 Datasheet.

10. CommScope sells the Accused Products to service providers such as AT&T. CommScope does not sell the Accused Products directly to end users. *See* Ex. H, Wauters Dep., at 6:8–15, 95:6-25; Ex. I, Shead Dep., at 64:16–25; Ex. J, Salazar Dep., at 7:1–9; Ex. K, Baker Dep., at 20:7–21:22.

11.     Steve Wauters, senior Vice President of key account management at CommScope, testified that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ex. H, Wauters Dep., at 22:7–23:11; *see also id.* at 101:6–24.

## V.     ARGUMENT

### A.     TQ Delta Is Statutorily Barred From Recovering Damages for Pre-2015 Sales.

TQ Delta is barred from recovering damages for Pre-2015 Sales under 35 U.S.C. § 286, which prevents recovery for any alleged infringement committed more than six years prior to the filing of the complaint. Because this suit was filed on August 13, 2021, TQ Delta cannot recover damages for any alleged acts of infringement before August 13, 2015. *See* 35 U.S.C. § 286; *Standard Oil*, 754 F.2d at 348. Indeed, TQ Delta and its expert, Dr. Putnam, admit that TQ Delta cannot recover for CommScope's alleged infringement prior to August 13, 2015. *See* Ex. A, Putnam Op. Rpt., ¶ 24, n.14. TQ Delta also admits that CommScope's sale of the Pre-2015 Sales occurred prior to the damages period. *See* Ex. B, Putnam Supp. Rpt., Ex. 5, Schedules A.1., A.2.

### B.     TQ Delta Cannot Recover Damages for Pre-2015 Sales Under Its Theory of Induced Infringement.

To try to circumvent the six-year statutory bar, TQ Delta argues that CommScope is liable for Pre-2015 Sales through a theory of induced infringement that relies on conjecture that acts alleged to constitute direct infringement continued after 2015. This kind of statutory evasion has been rejected by the Federal Circuit. In *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, the patent owner argued that the defendants' sales of an accused product prior to the damages period could support a finding of inducement if they "continue[d] to have an impact and cause[d] third parties to use the products-at-issue outside of the licensed patient-diagnostics field after [the damages period began]." 30 F.4th 1109, 1117 (Fed. Cir. 2022) (internal quotations omitted). The Federal Circuit reversed the district court's finding of induced infringement, holding that there was no

4

authority for this "continuing impact" standard, and noting that "sales [of an allegedly infringing product] are not acts of inducement where . . . the products have both non-infringing and infringing applications." *Id.* Similarly, in *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, the Federal Circuit rejected the patent owner's allegations of induced infringement based on sales occurring prior to the damages period. *See* 754 F.2d at 348 (finding no induced infringement where defendant sold accused product prior to the damages period).

As in *Roche*, TQ Delta does not "provide evidence of causation between" actions occurring before the damages period and actions occurring during the damages period. *See Roche*, 30 F.4th at 1121. Specifically, TQ Delta does not provide any evidence that CommScope induced its service provider customers (*e.g.*, AT&T) or those customers' end users to infringe the Asserted Patents *during* the damages period based on the Pre-2015 Sales that occurred *before* the damages period. The simple fact that CommScope's Pre-2015 Sales resulted in CommScope's customers having access to Accused Products during the damages period cannot support an award of damages to TQ Delta for Pre-2015 Sales of Accused Products. *Id.* Accordingly, under 35 U.S.C § 286, TQ Delta is barred from recovering damages for Pre-2015 Sales, and summary judgment is warranted. *See A. Stucki*, 963 F.2d at 363–64.

Dr. Putnam states that "accused products sold between August 13, 2010 and August 12, 2015 would have been expected to be ***used*** (and thus infringing) as of August 13, 2015 or later (*i.e.,* the beginning of the damages period determined by the statute of limitations . . . ), and that CommScope's ***ongoing support*** of such ***use*** constitutes indirect infringement." Ex. B, Putnam Supp. Rpt., ¶ 6. Dr. Putnam relies on two (of the 1,390) paragraphs in Dr. Cooklev's voluminous Opening Report to support this unusual theory of infringement—*paragraph 628* in which Dr. Cooklev opines that he ▮, and *paragraph 1263* in which Dr. Cooklev describes ▮

5

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Putnam Op. Rpt., ¶ 7, nn. 11, 12; Ex. L, Cooklev Op. Rpt., ¶¶ 628, 1263. Notably, TQ Delta's infringement expert, Dr. Cooklev, does not himself provide any opinion that CommScope indirectly infringes the Asserted Patents based on the Pre-2015 Sales.[4] Moreover, everything TQ Delta relies on is circumstantial evidence. Nowhere does TQ Delta present any evidence of *actual infringing use* of the Pre-2015 Sales during the post-2015 damages period or that any "ongoing support" by CommScope is directed to end users (as opposed to service providers). Indeed, TQ Delta ignores undisputed evidence that four of the five Accused Products have Ethernet WAN functionality and thus can be configured as Wi-Fi routers that never use the DSL port. *See* Exs. D–G (product documentation for 5168, 5268, NV589, and NVG599 products). TQ Delta also ignores that several of the Asserted Patents cover optional DSL functionality, such as, the '881 patent and the '835 patent. *See* Ex. L, Cooklev Op. Rpt., ¶¶ 515, 1274; Ex. N, Al-Dhahir Resp. Rpt., ¶¶ 103, 107; Ex. O, Ransom Resp. Rpt., ¶ 185.

To be entitled to collect damages for Pre-2015 Sales, TQ Delta must demonstrate that: (i) direct infringement, i.e., use, occurred ***during*** the damages period; and (ii) ***affirmative acts*** committed by CommScope post-2015 induced that direct infringement. *Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011).[5] TQ Delta does not and cannot come close to meeting its burden.

---

[4] Moreover, TQ Delta failed to disclose its novel theory for the recovery of damages for Pre-2015 Sales based on CommScope's alleged induced infringement during the damages period in any interrogatory response or in its infringement contentions. CommScope intends to oppose TQ Delta's motion to file the Supplement Expert Report of Dr. Putnam, which contains this theory.

[5] Here, because TQ Delta's infringement theory for the Pre-2015 Sales involves the *use* of the Accused Products in an infringing manner, case law involving method of use claims is informative.

6

### 1. TQ Delta Has No Evidence of Direct Infringement During the Damages Period Relating to the Pre-2015 Sales.

"Liability for . . . active inducement of infringement . . . is dependent upon the existence of direct infringement." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993). Here, TQ Delta must demonstrate direct infringement of Accused Products sold prior to August 2015 during the statutory damages period. TQ Delta, relying on nothing more than the shelf life of DSL CPE products as a proxy for use of products in an infringing way, fails to meet its burden as a matter of law. At best, TQ Delta's allegation amounts to *potential* use. But the Federal Circuit has held that "it is not enough to simply show that a product is capable of infringement [*i.e.*, that the product may be used to infringe]; the patent owner must show evidence of **specific instances of direct infringement** [*i.e.*, use of the DSL CPE product for DSL]." *Fujitsu*, 620 F.3d at 1328–29; *see also ACCO Brands*, 501 F.3d at 1313. TQ Delta must, therefore, show not only that the Pre-2015 Sales were *actually* used during the damages period by either service provides or end users, but also that the products that can be used in a non-infringing non-DSL configuration were actually used for DSL (and not just for Wi-Fi through the Ethernet WAN port) during the damages period. TQ Delta does not provide evidence from which a reasonable jury could reach these conclusions.

**Service Providers:** TQ Delta puts forth no evidence that any of the DSL CPE products sold prior to 2015 were used in an infringing manner by CommScope's service provider customers post-2015. Even assuming that DSL CPE products have a shelf life of ███████, that is not evidence of actual use of any Accused Product in a way that infringes any of the Asserted Patents. At most, it is evidence that a product sold pre-2015 *could* be used post-2015. But the law is clear; the fact that a product *could* be in use during the damages period is insufficient as matter of law. *See Fujitsu*, 620 F.3d at 1328–29 (holding that evidence that a product was merely capable of infringement was insufficient to survive summary judgment). TQ Delta must show that the Pre-2015

Sales were actually used by the service providers during the damages period, and that they were used in an infringing manner. *Id.* This TQ Delta does not and cannot do so. TQ Delta has no evidence from which it can show that the service providers themselves used the DSL CPE products sold *prior* to 2015 during the *post*-2015 damages period.

**End Users:** TQ Delta has no evidence from which it can establish that the DSL CPE products sold prior to 2015 were ever provided to end users, let alone that any end users ever used the DSL functionality of those products post-2015 in a way that infringed any of the Asserted Patents. First, TQ Delta has no evidence that the service providers, to whom CommScope sold the Pre-2015 Sales, ever leased, sold, or provided those DSL CPE products to end users. Again, shelf life is irrelevant; it is not enough to rest on speculation that a product could potentially be used—there must be evidence that it is, indeed, in used during the damages period. *See Fujitsu*, 620 F.3d at 1328–29; *see also ACCO Brands*, 501 F.3d 1313 (finding no direct infringement where the patent owner "failed to point to specific instances of direct infringement" and the record "contain[e]d no evidence of actual users having operated the [accused product] in an infringing manner"). The shelf life of a product does not answer the question of whether a product is sitting in a warehouse or truck or in an end user's home, unused in a box.

More importantly, for those DSL CPE products that have Wi-Fi capability, TQ Delta has no evidence that those products were used by end users in an infringing manner post-2015. CommScope's Mr. Wauters confirmed that the Accused Products can be, and in many cases are, used in non-DSL configurations. *See* Ex. H, Wauters Dep., at 22:7–23:11; 101:6–24. TQ Delta has no evidence to the contrary. Thus, much like the accused products in *ACCO* and *Fujistu*, here it is undisputed that the Accused Products sold prior to August 2015 may be used in at least two different ways, only one of which allegedly infringes the Asserted Patents. Despite this, TQ Delta provides no evidence of *how* the Pre-2015 Sales were actually used (if they were used at all) during the

8

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

damages period. In fact, Dr. Cooklev admits that he did not even consider the possibility that the accused DSL CPE products could be used in a non-DSL configuration. *See* Ex. M, Cooklev Dep., at 215:7–220:20. This is fatal to TQ Delta's attempt to recover damages for Pre-2015 Sales. *See ACCO*, 501 F.3d at 1313 (when accused product could be used in both infringing and non-infringing manner, finding of no direct infringement where patent owner had no evidence that a single end user operated the accused product in an infringing manner).

Accordingly, the Court should enter summary judgment that the Asserted Patents are not directly infringed by Pre-2015 Sales.

### 2. TQ Delta Has No Evidence of an Affirmative Act of Inducement During the Damages Period Relating to the Pre-2015 Sales.

TQ Delta also fails in the second essential element of its theory; TQ Delta provides no evidence that CommScope committed affirmative acts of inducement during the damages period. TQ Delta must provide evidence of "affirmative acts" by CommScope that induced direct infringement, here use of the Pre-2015 Sales *after* August 13, 2015, as well as CommScope's intent to cause such infringement. *Standard Oil Co*, 754 F.2d at 348 ("[If] acts ever gave rise to a liability, the liability arose *as of the time the acts were committed*, not at some future date determined by the acts of others." (emphasis in original)); *see also Roche Diagnostics*, 30 F.4th at 1120.

The only evidence of "affirmative acts" that TQ Delta can point to is "ongoing support" ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Ex. B, Putnam Supp. Rpt., ¶ 6; Ex. L, Cooklev Op. Rpt., ¶¶ 628, 1263. First, any ongoing support and training is provided to CommScope's service provider customers and not the end users (*i.e.*, the customers of CommScope's customers). TQ Delta fails to tie the alleged affirmative act to the direct infringement at issue here—use of the Pre-2015 Sales by end users post-2015. Second, TQ Delta's experts do not cite to any evidence regarding the kind of ▓▓▓▓▓▓▓

9

▓▓▓▓▓▓▓▓▓▓ that were provided for the Pre-2015 Sales during the post-2015 damages period. There is simply no evidence that CommScope's allegedly inducing actions have anything to do with the infringing functionality at all or how the allegedly inducing action would have induced end users to use the product during the damages period.[6] *See Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003) (for an inducement allegation to succeed, "a plaintiff must prove that the defendants' actions induced infringing acts and that . . . [their] actions would induce *actual infringement*"); *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1287 (Fed. Cir. 2011) (holding that providing "software and technical assistance" does not support a finding of liability for infringement when a defendant "in no way directs its customers to perform nor do its customers act as agents" and "it is entirely the decision of the customer whether to install and operate th[e] software").

Mere knowledge that *some* users *may* use the product in an infringing manner is not enough. When "[i]t is undisputedly possible to use the accused device as directed without ever practicing the claimed method," *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1329 (Fed. Cir. 2009), and "[e]specially where"—as here—"a product has substantial non-infringing uses, intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent." *Warner-Lambert*, 316 F.3d at 1365 (affirming summary judgment of no inducement because patent owner's evidence that product instructions teach both an infringing and non-infringing use was insufficient to establish intent). TQ Delta provides no evidence that through these activities, CommScope intended for consumers to use the DSL capabilities of the Pre-2015 Sales in an infringing manner—as a DSL modem as opposed to a Wi-Fi router. Because

---

[6] At most the alleged use by end users of the Pre-2015 Sales during the damages period is simply continuing use for which recovery is barred. *See Roche*, 30 F.4th at 1117.

TQ Delta has no evidence of specific intent to perform affirmative acts of inducement during the damages period for Pre-2015 Sales, it cannot show that CommScope induced infringement. *See DSU*, 471 F.3d at 1305 ("[S]pecific intent and action to induce infringement must be proven.").

Because TQ Delta's generic allegations regarding CommScope's technical support and software upgrades fail to establish intent to induce as a matter of law, and because TQ Delta is unable to show that any consumer actually used the Pre-2015 Sales in an allegedly infringing manner, there is no issue of material fact as to whether CommScope induces infringement.

Accordingly, the Court should enter summary judgment that CommScope did not induce infringement of the Pre-2015 Sales.

## VI.   CONCLUSION

For the reasons set forth above, CommScope respectfully requests that the Court enter judgment precluding TQ Delta from recovering any damages arising from CommScope's Pre-2015 Sales.

Dated this 14th day of December, 2022

Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Ste. B
Tyler, TX 75703
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Lana Shiferman
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
P:  (617) 570-1000

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

F:  (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P:  (415) 733-6000
F:  (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Email: *ross.barton@alston.com*
*scott.stevens@alston.com*
*kirk.bradley@alston.com*
*stephen.lareau@alston.com*
*karlee.wroblewski@alston.com*
*nic.marais@alston.com*
*erin.beaton@alston.com*
*mary.riolo@alston.com*
Telephone: 704-444-1000
Facsimile: 704-444-1111

Katherine G. Rubschlager (Cal. Bar No. 328100)
ALSTON & BIRD LLP

12

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

        1950 University Avenue, Suite 430
East Palo Alto, CA 94303
Email: *katherine.rubschlager @alston.com*
Telephone: 650-838-2004
Facsimile: 650-838-2001

*Attorneys for Defendants CommScope Holding Company, Inc, CommScope Inc., ARRIS International Limited, ARRIS Global Ltd., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC*



## CERTIFICATE OF SERVICE

Pursuant to Local Rule CV-5(c), the undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on December 14, 2022.

                */s/ Eric H. Findlay*_____
                Eric H. Findlay