# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>    *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>    *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED |

# TQ DELTA, LLC'S
# MOTION TO STRIKE THE EXPERT TESTIMONY OF
# DR. GEORGE A. ZIMMERMAN, DR. RICHARD WESEL,
# DR. BRUCE MCNAIR, AND DR. NIEL RANSOM

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.  INTRODUCTION ............................................................................................................... 1

II. APPLICABLE LAW ........................................................................................................... 2

III. ARGUMENT ....................................................................................................................... 2

    A.  Defendants' Invalidity Expert Reports Do Not Comply With The Court's Narrowing Order And The Local Rules ................................................................. 2

        1. The Zimmerman Report (Family 2) ........................................................... 3

        2. The Wesel Report (Family 3) ..................................................................... 4

        3. The McNair Reports (Families 6 and 9) .................................................... 6

    B.  Dr. Wesel's Family 3 Report Applies The Wrong Priority Analysis ..................... 8

    C.  Defendant's Noninfringement Expert Improperly Construes The Claims And Applies The Wrong Claim Construction ................................................................. 9

        1. "Bonded Transceivers" (Family 2) ........................................................... 10

        2. "Reducing A Difference In Latency Between The Bonded Transceivers" (Family 2) ............................................................................ 11

        3. "Configurable To" (Family 6) .................................................................. 12

        4. "Between" (Family 9) ............................................................................... 13

IV. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*
   No. 2:07-CV-468, 2009 U.S. Dist. LEXIS 109147 (E.D. Tex. Sep. 15, 2009)..................10

*Amgen Inc. v. Hoechst Marion Roussel*
   314 F.3d 1313 (Fed. Cir. 2003) ......................................................................................9

*Ariad Pharm., Inc. v. Eli Lilly & Co.*
   598 F.3d 1336 (Fed. Cir. 2010) ......................................................................................8

*Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*
   541 F.3d 1115 (Fed. Cir. 2008) ......................................................................................9

*Cisco Sys. v. Cirrex Sys., LLC*
   856 F.3d 997 (Fed. Cir. 2017) ........................................................................................9

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*
   No. 2:13-CV-1112-JRG, 2015 U.S. Dist. LEXIS 109743 (E.D. Tex. Aug. 19, 2015) .......3

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods*
   291 F.3d 1317 (Fed. Cir. 2002) ...................................................................................1, 9

*Cordis Corp. v. Boston Sci. Corp.*
   561 F.3d 1319 (Fed. Cir. 2009) ....................................................................................10

*CytoLogix Corp. v. Ventara Med. Sys.*
   424 F.3d 1168 (Fed. Cir. 2005) ....................................................................................10

*Gree, Inc. v. Supercell Oy*
   No. 2:19-cv-237-JRG-RSP, Dkt. No. 216, (E.D. Tex. March 6, 2021) ..............................9

*Paragon Solutions, LLC v. Timex Corp.*
   566 F.3d 1075 (Fed. Cir. 2009) ....................................................................................10

*Perdiemco, LLC v. Industrack LLC*,
   No. 2:15-cv-727-JRG-RSP, 2016 U.S. Dist. LEXIS 135667 (E.D. Tex. Sep. 21, 2016)....9

*Realtime Data, LLC v. Packeteer, Inc.*
   No. 6:08-cv-144-LED-JDL, 2009 U.S. Dist. LEXIS 114207 (E.D. Tex. Dec. 8, 2009).....3

*Tinnus Enters., LLC v. Telebrands Corp.*
   No. 6:16-CV-00033-RWS, 2017 U.S. Dist. LEXIS 127964, E.D. Tex. Aug. 11, 2017) ....2

I. **INTRODUCTION**

The Court should exclude certain anticipated expert testimony of CommScope Holding Company, Inc., et al. (collectively "CommScope" or "Defendant")'s technical experts on Families 2, 3, 6, and 9 for the following three reasons.

<u>First</u>, Defendant's invalidity experts (Drs. Zimmerman, Wesel, and McNair) each rely on over a dozen additional alleged prior art references that Defendant did not include in its Final Election of Prior Art per the Court's Narrowing Orders (Dkts. 128 & 307).[1] In many cases, these references were not even disclosed in Defendant's invalidity contentions. It is thus improper to rely on those references at the expert-report stage.

<u>Second</u>, one of Defendant's invalidity experts, Dr. Wesel, applies a written-description legal test that the Federal Circuit has expressly declined to endorse (the "essential element" test[2]). Because Dr. Wesel did not apply the right legal test, his resulting opinions (which relate to priority of invention) are unreliable and should not be before the jury.

<u>Third</u>, Defendant's noninfringement expert, Dr. Ransom, did not follow the Court's claim construction of a number of claim terms, instead reconstruing those terms and resurrecting positions that Defendant raised at the *Markman* stage of the case—and lost. An infringement expert cannot opine on claim construction or raise claim-construction opinions that contradict the Court's constructions. For these reasons and those below, TQ Delta respectfully requests that the Court grant this Motion.

---

[1] TQ Delta understands that only the CommScope-specific portions of these experts' reports remain at issue after the Nokia settlement and the Nokia-specific portions have been withdrawn.

[2] *See, e.g.*, *Cooper Cameron Corp. v. Kvaerner Oilfield Prods.*, 291 F.3d 1317, 1322–23 (Fed. Cir. 2002) (explaining that the Federal Circuit "did not announce a new 'essential element' test" for written description and explaining that there is no "legally recognizable or protected 'essential' element, 'gist' or 'heart' of the invention in a combination patent") (citation omitted).

## II. APPLICABLE LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under the rule, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" the following four conditions are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The burden is on the party offering the testimony to show that it is admissible. *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:16-CV-00033-RWS, 2017 U.S. Dist. LEXIS 127964, at *7-8 (E.D. Tex. Aug. 11, 2017) ("The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.") (quotation and citation omitted).

## III. ARGUMENT

### A. Defendants' Invalidity Expert Reports Do Not Comply With The Court's Narrowing Order And The Local Rules

The Court's Narrowing Order required Defendant to provide a Final Election of Prior Art identifying "no more than six asserted prior art references per patent . . . and no more than a total of 20 references." Dkt. 128 at 3. After Defendant did not comply with that Order, the Court ordered Defendant to comply with the Order. Dkt. 307 at 3. Defendant served a Final Election of Prior Art on November 9, 2022. Exh. 1. As detailed below, however, Defendant's experts include

prior art references above and beyond Defendant's Final Election. In many cases, these prior art references were not even included in Defendant's invalidity contentions (attached as Exh. 2). And including these prior art references would greatly exceed the twenty total references under the Narrowing Order. Because the reports do not follow the Narrowing Orders and the Local Rules, TQ Delta requests that the Court strike the paragraphs referring to or relying on references not in the Final Election of Prior Art. *See, e.g.*, *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-CV-1112-JRG, 2015 U.S. Dist. LEXIS 109743, at *10 (E.D. Tex. Aug. 19, 2015) (striking undisclosed prior art reference); *see also Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144-LED-JDL, 2009 U.S. Dist. LEXIS 114207, at *20 (E.D. Tex. Dec. 8, 2009) (holding if defendant "intended to rely upon these references at trial, it should have moved for leave to amend its invalidity contentions as soon as the need for these references arose.").

### 1. The Zimmerman Report (Family 2)

TQ Delta asserts infringement of the '881 Patent from Family 2 against Defendant. For that patent, Defendant elected two references: Counterman and Djokovic. Exh. 1. Dr. Zimmerman's report, however, discusses numerous references other than Counterman and Djokovic that allegedly disclose aspects related to the asserted claims. Zimmerman Report (excerpts attached at Exh. 3) at ¶¶ 60–130.[3] And these references are not mere "background" references: Dr. Zimmerman relies on many unelected references as part of his element-by-element opinions that the '881 Patent claims are invalid. *See, e.g.*, *id.* at ¶ 233 ("The concept of changing settings in order to change delay was known prior to the '881 patent. See, e.g., U.S. Patent No. 6,870,888, at 3:4-60."); *id.* at ¶ 234 (relying on "[t]he existing specifications for ADSL predating

---

[3] TQ Delta has attached excerpts of the relevant expert reports to this Motion and is happy to provide the full reports to the Court.

3

the alleged time of the invention . . . ."); *id.* at ¶ 235 (relying on RFC 990 to claim that "[u]sing inverse multiplexing over communications links supporting different bit rates was well known as of the '881 patent's priority date"); *id.* at ¶¶ 285–86 (relying on ITU-T G.992.1 for proposition that Counterman discloses a "transceiver" as claimed); *id.* at ¶ 287 (relying on transceivers by PairGain technologies as disclosing a "transceiver" as claimed); *id.* at ¶¶ 297–299, 308 (relying on ITU-T G.992.1 and TI.413-1995 for disclosing use of FEC parameters relating to the claims). In addition to not electing these references, CommScope also failed to disclose many of these references in its invalidity contentions for the Family 2 Patents (Exh. 2 at 45–55), including the references above (*e.g.*, the '888 Patent, RFC 990, and PairGain). TQ Delta thus respectfully requests that the Court strike the testimony from Dr. Zimmerman relating to references besides Counterman and Djokovic. *See, e.g.*, *id.* at ¶¶ 60–130, 233–235, 285–87, 297–299, 308.

      **2.**      **The Wesel Report (Family 3)**

TQ Delta asserts infringement of two patents for Family 3, the '882 and '048 Patents. For those patents, CommScope elected three references: Mazzoni in view of G.993.1 (also known as "VDSL1"); Mazzoni in view of LB-031; and Fadavi-Ardekani in view of G.993.1. Exh. 1. Dr. Wesel's report, however, includes a 180-plus paragraph discussion of over a dozen unelected references to assert that elements in the claims, such as "shared memory" and a "message during initialization specifying a maximum number of bytes of memory that are available to be allocated to an [interleaver/deinterleaver]," were known by persons of ordinary skill in the art before the invention. *See, e.g.*, Wesel Report (excerpts attached at Exh. 4) at ¶¶ 40–223.

And, like Dr. Zimmerman's report, Dr. Wesel's "background" section is not innocuous. Dr. Wesel relies on that section (and its accompanying references) multiple times for his element-by-element invalidity opinions. *See, e.g.*, *id.* at ¶ 321 (relying on ETSI version of VDSL1); *id.* at ¶ 449 (referencing Technology Background section to assert that "configuration messages are

4

used, as a general practice, by communications systems to exchange capabilities and resource limitations and to agree on parameters . . . ."); *id.* at ¶¶ 451, 577–78, 678, 1050, 1117 (similar); ¶ 511 (relying on PR web press release); *id.* at ¶¶ 332, 539, 562, 624, 1029, 1384 (relying on Technology Background Section for disclosure of "transceiver" claim elements). Dr. Wesel confirmed at his deposition that these background references were "extremely relevant" to his invalidity opinions, even if they were not the supposed "official grounds" he presented. Wesel Depo. (excerpts attached as Exh. 5) at 31:15–32:24 (testifying relating to "Technology Background" references allegedly disclosing "shared memory"); *id.* at 35:1–36:15 (testifying that references discussed in the Technology Background section show that transmission of initialization messages would have been necessary for Mazzoni reference to operate). The reason for these "background" references is thus obvious: Defendant uses them to fill in the holes in the elected references, *e.g.*, none of elected references disclose a "shared memory" as claimed and construed or the "message during initialization." But because Defendant did not elect to use these references or provide notice of these combinations, Dr. Wesel's reliance on these references is improper.

      Indeed, few, if any, of these unelected references were even disclosed in Defendant's invalidity contentions. For example, Dr. Wesel's report relies on at least <u>ten</u> unelected references to allege that "shared memory" (a claim term) was known prior to the invention of the Family 3 Patents: a 1978 book "The C Programming Language"; three articles by J.R. Bodie in (1981, 1986, and 1995); a Texas Instruments book from 1994; a 2001 Texas Instruments product bulletin; an undated Qualcomm product brochure on a baseband processor; a 2004 Zyray processor press release; U.S. Patent No. 7,027,782 to Moon; and U.S. Patent App. No. 2004/0165658 to Van Hoogenbemt. Wesel Report (Exh. 4) at ¶¶ 148–191. But Defendant did not identify <u>any</u> of those

references in its invalidity contentions for the Family 3 Patents. *See* Exh. 2 at 57–71. The same is largely true for the balance of the unelected references discussed in Dr. Wesel's report.

For these reasons, TQ Delta respectfully requests that the Court strike the testimony from Dr. Wesel relating to references besides Mazzoni, Fadavi-Ardekani, LB-031, and ITU-T 993.1. *See, e.g.*, Wesel Report (Exh. 4) at ¶¶ 40–223, 321, 332, 449, 451, 539, 562, 577–78, 624, 678, 1029, 1050, 1117, 1384.

### 3. The McNair Reports (Families 6 And 9)

Dr. McNair's reports (for Families 6 and 9) suffer from similar flaws as Drs. Zimmerman's and Wesel's reports. For Family 6, TQ Delta asserts infringement of the '835 Patent. For that patent, Defendant elected four references: G.992.1; G.992.1 in view of SC-060; SC-060; and G.992.1 in view of Wunsch. Dr. McNair's Family 6 report, however, includes a 180-plus paragraph technology background section that relies on over a dozen unelected references as allegedly disclosing various features of the Family 6 Patents. *See, e.g.*, McNair Family 6 Report (excerpts attached as Exh. 6) at ¶¶ 40–220.

Dr. McNair, like Drs. Zimmerman and Wesel, then cites many unelected references as supporting his ultimate element-by-element invalidity opinions for Family 6. *See, e.g.*, *id.* at ¶ 349 (relying on TI.413 Issue 2); *id.* at ¶¶ 363, 566 (relying on *ADSL Standards, Implementation, and Architecture* textbook for the disclosure of a "processor"); *id.* at ¶ 391 (relying on CI-051for use of inverted synchronization symbol); *id.* at ¶ 432 (citing TI.413 Issue 1 and Technology Background section to claim that "ATU-Cs and ATU-Rs have always been capable of transmitting signals using both FEC and interleaving"); *id.* at ¶ 451 (similar); *id.* at ¶ 571 (similar); *id.* at ¶ 589 (similar); *id.* at ¶¶ 444, 450, 453 (citing G.993.1 to claim that skilled artisans would have understood that "PMS-TC parameters include FEC and interleaving parameters"); *id.* at ¶¶ 461– 464, 468 (citing seven other references to assert claim limitations disclosed by SC-060); *id.* at ¶¶

6

531, 615 (relying on BI-063); *id.* at ¶ 532 (relying on G.992.3); *id.* at ¶¶ 564, 605 (relying on SC-060 for Wunch + G.992.1 combination). In addition, like the reports served for Drs. Zimmerman and Wesel, Dr. McNair's report relies on unelected references that Defendant did not identify in its invalidity contentions for Family 6 (*e.g.*, TI.413 Issues 1 and 2, the *ADSL Standards* textbook, CI-051, G.993.1, and BI-063). *See, e.g.*, Exh. 2 at 86–101.

Given Defendant's lack of disclosure or identification of these references in their Final Election of Prior Art, TQ Delta respectfully requests that the Court strike the testimony from Dr. McNair for Family 6 relating to references besides the elected references identified above. *See, e.g.*, McNair Family 6 Report (Exh. 6) at ¶¶ 40–220, 349, 363, 391, 432, 444, 450–451, 453, 461–464, 468, 531–532, 564, 566, 571, 589, 605, 615.

Dr. McNair's Family 9 Report similarly relies on unelected references. For Family 9, TQ Delta asserts the '411 and '809 Patents. For those Patents, Defendant elected three references in its Final Election: G.992.1 (also known as "ADSL1") in view of BI-089; G.993.1 in view of BI-089; and G.993.1 in view of Fukushima. Exh. 1. But Dr. McNair's Family 9 Report contains a lengthy technology background section that relies on over a dozen unelected references. McNair Family 9 Report (excerpts attached as Exh. 7) at ¶¶ 41–239. And Dr. McNair's Family 9 Report then relies on a number of unelected references in his element-by-element invalidity analysis. *Id.* at ¶ 566 (citing to PF-042 and BI-066 for motivation to combine G.993.1 and BI-089); *id.* at ¶ 575 (citing six unelected references for disclosure that "impulse noise is frequency-dependent, and therefore affects some frequencies more than others"); *id.* at ¶ 578 (citing Lin and RFC 3366 to claim that "ARQ was known in the art, and its effectiveness in mitigating burst errors was well known . . . ."); *id.* at ¶¶ 630–61 (relying on Ayre and Jacobsen references for disclosure of a "processor"). Finally, as with the other reports, many of unelected references were never disclosed

7

in CommScope's invalidity contentions for Family 9 (*e.g.*, PF-042, BI-066, Lin, RFC 3366, Ayre, and Jacobsen). Exh. 2 at 5–15.

Given Defendant's lack of disclosure or identification of these references in their Final Election of Prior Art, TQ Delta respectfully requests that the Court strike the testimony from Dr. McNair for Family 9 relating to references besides the elected references identified above. *See, e.g.*, McNair Family 9 Report (Exh. 7) at ¶¶ 41–239, 566, 575, 578, 630–631.

**B.    Dr. Wesel's Family 3 Report Applies The Wrong Priority Analysis**

Dr. Wesel, in determining that the Family 3 Patents are entitled to the priority date of the October 2004 provisional application, applies an "essential" / "necessary" aspect test for written description. Wesel Report (Exh. 4) at ¶¶ 224–232. Dr. Wesel does not assert that the provisional application fails to adequately disclose any of the elements of the asserted claims of the Family 3 Patents. *See id.* Instead, Dr. Wesel asserts that the provisional application discloses an "essential" and "necessary" aspect of the invention and that the asserted claims of the Family 3 Patents do not limit the claims to those "essential" and "necessary" aspects. *Id.* at ¶ 232.[4]

This analysis was legally incorrect under Federal Circuit law. Under the Federal Circuit's en banc *Ariad* decision, the written description test looks to if the disclosure "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Dr. Wesel's report does not conduct that analysis—and his report does not dispute that the

---

[4] While Dr. Wesel's report contains this opinion, he still assumes for the purposes of invalidity that the Family 3 Patents are entitled to the October, 2004 date of the provisional application. Wesel Report (Exh. 4) at ¶ 23. Given that Dr. Wesel asserts that the four elected prior art references—Mazzoni, Fadavi-Ardekani, G.993.1, and LB-031—predate the October, 2004 date of the provisional application, it is unclear what, if any, impact Dr. Wesel's priority date opinion have on his ultimate invalidity opinions.

8

provisional application discloses each of the claim elements in the asserted claims of the Family 3 Patents. And the Federal Circuit has explained (pre- and post-*Ariad*) that its cases have not "announce[d] a new 'essential element' test mandating an inquiry into what an inventor considers to be essential to his invention and requiring that the claims incorporate those elements." *Cooper*, 291 F.3d at1323; *Amgen Inc. v. Hoechst Marion Roussel*, 314 F.3d 1313, 1333 (Fed. Cir. 2003) (same); *Cisco Sys. v. Cirrex Sys., LLC*, 856 F.3d 997, 1007 (Fed. Cir. 2017) (same); *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1127 (Fed. Cir. 2008) (reciting same analysis and holding that "the district court erred by invalidating the claims of the '270 patent by applying the essential element test"); *see also Perdiemco, LLC v. Industrack LLC*, No. 2:15-cv-727-JRG-RSP, 2016 U.S. Dist. LEXIS 135667, at *25 (E.D. Tex. Sep. 21, 2016) ("Even if the claims do not recite every 'essential' technological feature discussed in the specification, this does not render them invalid as a matter of law.") (quoting *Cooper*, 291 F.3d at 1323).

Dr. Wesel's Family 3 Report thus does not apply the correct legal test to determine written description (in the context of priority). For that reason, his opinions are not the product of reliable principles and methods and would not assist the jury in determining a disputed fact. TQ Delta thus respectfully requests that the Court exclude Dr. Wesel's priority opinions in paragraphs 224–232 of Dr. Wesel's Family 3 Report.

  **C. Defendant's Noninfringement Expert Improperly Construes The Claims And Applies The Wrong Claim Construction**

Defendant's noninfringement expert for Families 2, 3, 6, and 9, Dr. Ransom, construes a number of claim terms in his expert report. This is improper expert testimony on the scope of the claims and, respectfully, should be struck. *See Gree, Inc. v. Supercell Oy*, No. 2:19-cv-237-JRG-RSP, Dkt. No. 216, *9-10 (E.D. Tex. March 6, 2021) (striking expert "opinions that cross[ed] the line into improper claim construction"). "While such a claim construction argument may have

9

been made at the claim construction hearing, it is just that: a claim construction argument." *Id.* "Such opinions are opinions on questions of law—claim construction—and are not proper expert testimony." *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-CV-468, 2009 U.S. Dist. LEXIS 109147, at *21 (E.D. Tex. Sep. 15, 2009). Expert testimony regarding claim construction is not admissible. *CytoLogix Corp. v. Ventara Med. Sys.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005), and counsel may not argue claim construction to the jury, *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009). Below are each of the specific instances in Dr. Ransom's report.

### 1. "Bonded Transceivers" (Family 2)

The Court's Claim Construction Order (Dkt. 169) rejected Defendant's proposed construction—requiring that the transceivers are actively bonding—because it would "improperly 'inject[] a use limitation into a claim written in structural terms.'" Dkt. 169, at 37 (quoting *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1090 (Fed. Cir. 2009)). The Court instead construed the term as "two or more transceivers located on the same side of two or more physical links where each transceiver is configurable to transmit or receive a different portion of the same bit stream via a different one of the physical links, wherein 'configurable to' precludes rebuilding, recoding, or redesigning any of the components in a 'plurality of bonded transceivers.'" *Id.* at 38. The Court, in turn, construed the term "configurable to" as "able to be configured" in the context of claims that expressly recite "configurable to." *Id.* at 23. The Court did not require—and, in fact, expressly rejected—that the "bonded transceivers" must be actively bonding.

Dr. Ransom's Report did not follow the Court's construction. His Report instead opines that Defendant does not infringe on the basis that it was not shown that the accused products "█████████████████████████." Ransom Report (excerpts attached as Exh. 8) at ¶ 211. Dr. Ransom explained at his deposition that his use of the term ████████ in that paragraph referred to ████████████████████████████████████████. Ransom Depo.

(excerpts attached as Exh. 9) at 65:9–67:10. Dr. Ransom thus re-injects a use limitation for the Family 2 Patents, opining that showing infringement requires showing actual use. TQ Delta respectfully requests that the Court strike the paragraphs that rely on this incorrect construction, including paragraph 211, in Dr. Ransom's Report.

### 2. "Reducing A Difference In Latency Between the Bonded Transceivers" (Family 2)

The Court expressly held that "the claims can be understood without comparing actual latency values or actual data rates, instead requiring reducing 'a difference in latency' (such that the difference is less than it would have otherwise been)." Dkt. 169 at 43. The Court rejected Defendant's argument that "'a difference in latency' is unclear because the actual latencies cannot be known until the transceivers are in operation[.]" *Id.*

Despite this holding, Dr. Ransom's report concludes that "reducing a difference in latency" <u>requires</u> ▮▮▮▮▮▮▮▮▮▮ (Ransom Report (Exh. 8) at ¶ 144)



Based on that construction of the claims, Dr. Ransom concludes that Defendant does not infringe the asserted claims of the Family 2 Patent (the '881 Patent) because TQ Delta allegedly does not show a ▮▮▮▮▮▮▮▮▮▮. Ransom Report (Exh. 8) at ¶¶ 142–146, 214, 217. The requirement for a ▮▮▮▮▮▮▮▮▮▮ is precisely the position the Court rejected during claim construction. Because those opinions are based on an incorrect view of the claims—requiring comparing a ▮▮▮▮▮▮▮▮▮▮—TQ Delta respectfully requests that the

Court strike any testimony reflecting the opinions in paragraphs 142–146, 214, and 217 of Dr. Ransom's report.

### 3. "Configurable To" (Family 6)

The asserted claim of the Family 6 Patents (claim 10 of the '835 Patent) recites an apparatus that is "configurable to" perform a certain operations. *See, e.g.*, Ransom Report (Exh. 8) at ¶ 264, 277 (reciting claim language). The Court construed the term "configurable to" across various TQ Delta patents as "able to be configured."[5] Dkt. 169 at 23.

Dr. Ransom's report does not apply this construction. The Report first ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Ransom Report (Exh. 8) at ¶¶ 85–96, 173–178, 262, 264–66, 277–278. That type of claim-construction analysis has no place in an expert report on the factual issue of infringement. The Report then replaces the claim language "configurable to"—which the Court construed as "able to be configured"—with ████████████████████████████████ ████████████████████████████████████████████ (Ransom Report (Exh. 8) at ¶ 265 (emphasis added)):



Dr. Ransom similarly opines that Defendant does not infringe on the basis that TQ Delta's expert's tests ████████████████████████████████████████████

---

[5] The parties did not identify the '835 Patent as containing this term, *see* Dkt. 169 at 16, but the term is in contained in that claim. *See also id.* at 18–19 (discussing Delaware Court ruling on "configurable to" in context of '835 Patent).

█████████████████████████████ again improperly injecting a use requirement into the claims. *Id.* at ¶ 267; *see also* ¶ 275 (similar); *id.* at ¶ 279 (similar); ¶ 282 (similar); ¶ 288 (similar); ¶ 290 (similar). Dr. Ransom confirmed at his deposition that, in his opinion, to infringe the '835 Patent ████████████████████████████████████████████████████████████." Ransom Depo. (Exh. 9) at 88:25–90:12; *see also id.* at 92:18–93:2 (testifying that ████████ █ is required to show infringement).

These opinions did not follow the Court's construction of "configurable to." They improperly import a use limitation that Defendants assured the Court at the *Markman* hearing that they would not argue. Dkt. 169 at 17 ("Defendants stated that they will not argue that Plaintiff must prove that the accused devices are taken out of their packaging, plugged in, and turned on, but Defendants explained that they are arguing that the functionality must actually be built into the device."). TQ Delta thus respectfully requests that the Court strike Dr. Ransom's opinions for the Family 6 Patents that rely on this improper construction, including in paragraphs 85–96, 173–178, 262, 264–67, 275, 277–279, 282, 288, and 290.

### 4. "Between" (Family 9)

Two claims of the Family 9 Patents (claims 10 and 18 of the '411 Patent) recite "allocating a memory <u>between</u> a retransmission function and an interleaving and/or deinterleaving function" and "the memory has been allocated <u>between</u> the retransmission function and the interleaving and/or deinterleaving function" (claim 10) or "the memory is allocated <u>between</u> the retransmission function and the interleaving function and/or the deinterleaving function" (claim 18). *See* Ransom Report (Exh. 8) at ¶¶ 118–119 (reciting claim language) (emphases added). The Court did not construe the "between" terms, and Defendant did not request that the Court construe those terms.

Dr. Ransom's report, however, narrows the term "between," concluding that ████████ ████████████████████████████████████████████████████████████████████████████████

13

███████████████████████ Ransom Report (Exh. 8) at ¶ 349.  Based on this construction, Dr. Ransom's report concludes that Defendant does not infringe claims 10 and 18 of the '411 Patent because TQ Delta's expert allegedly ████████████████████████████████████████ ████████████████████████████████████████ *See, e.g.*, *id.* at ¶¶ 348–352, 373–378.

This was improper claim construction and, respectfully, should be stricken.  Defendant did not timely raise this claim-construction issue to the Court during the *Markman* process and forfeited the right to raise it in expert reports.

Even if Defendant's new construction were timely, Dr. Ransom's construction—narrowing the term "between" as to "exclusively between" or "only between" two functions—does not find support in the intrinsic record.  The claims themselves use the term "and/or" between three functions, which shows the construction in Dr. Ransom's report is incorrect.  The specification also repeatedly discloses the sharing "between retransmission functions and other transceiver functions," not the just two functions that Dr. Ransom's report limits the claims to.  '411 Patent (Dkt. 1-7) at 1:27–29; *see also id.* at 1:35–36 ("Exemplary aspects relate to sharing of resources between retransmitted packets and other transceiver functions."); *id.* at 2:7–9 (similar); *id.* at 2:43–46 ("Still further aspects of the invention relate to sharing memory between a retransmission function and one or more of an interleaver, deinterleaver, coder, decoder and other transceiver functionalities."); *id.* at 2:47–50 (similar); *id.* at 17:36–20:43 (disclosing two embodiments, one relating to "Sharing of Memory Between the Retransmission Function and One or More of the Interleaving/Deinterleaving/RS Coding/RS Decoding Functions" and one relating to "Sharing of Memory Between a Retransmission Function with Identification of Low-PER and/or Low-Latency Packets and One or More of Interleaving/Deinterleaving/RS Coding/RS Decoding Functions").

For these reasons, TQ Delta respectfully requests that the Court strike Dr. Ransom's opinions based on the improper construction of the "between" terms, including those opinions reflected in paragraphs 348–352, 373–378 of Dr. Ransom's Report.

## IV. CONCLUSION

For the foregoing reasons, TQ Delta requests that the Court grant this Motion.


Dated: December 14, 2022

Respectfully Submitted,

/s/ Christian J. Hurt

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(Pro hac vice)
pmcandrews@mcandrews-ip.com

> Rajendra A. Chiplunkar
> (Pro hac vice)
> rchiplunkar@mcandrews-ip.com
>
> **MCANDREWS, HELD & MALLOY, LTD.**
> 500 West Madison St., 34th Floor
> Chicago, IL 60661
> Telephone: (312) 775-8000
> Facsimile: (312) 775-8100
>
> **ATTORNEYS FOR PLAINTIFF**
> **TQ DELTA, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this December 14, 2022 on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

> /s/ Christian Hurt
> Christian Hurt

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel have complied with the meet-and-confer requirements of Local Rule CV-7(h) and (i). The CommScope Defendants are opposed.

> /s/ William E. Davis, III
> William E. Davis, III

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

The undersigned certifies that, pursuant to Local Rule CV-5(a)(7), the foregoing instrument designated as confidential in accordance with the previously signed Protective Order is authorized by the Court to be filed under seal.

/s/ Christian Hurt
Christian Hurt