■

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>    *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>    *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED<br><br>■ |

**PLAINTIFF TQ DELTA, LLC'S MOTION TO STRIKE PORTIONS OF
THE EXPERT REPORT OF STEPHEN L. BECKER, Ph.D.**

■

■

## I. INTRODUCTION

Plaintiff TQ Delta, LLC ("TQ Delta") respectfully requests that the Court exclude Defendants CommScope Holding Company, Inc.'s, *et al.*, ("CommScope") damages expert Dr. Stephen L. Becker, Ph.D. from giving unreliable and unsupported expert testimony concerning: (1) the Smallest Saleable Patent Practicing Unit or "SSPPU" ▮▮▮▮▮▮ and (2) third-party ▮▮▮▮ ▮▮▮▮▮▮▮.

## II. BACKGROUND

This is a patent infringement lawsuit filed by TQ Delta against CommScope involving standard-essential digital subscriber line ("DSL") technology. There are 9 patents (6 patents are standard essential) from 7 patent families that are asserted against CommScope. The CommScope accused products are Customer Premises Equipment ("CPE") devices such as DSL routers and gateways.

On November 18, 2022, CommScope served a rebuttal expert report submitted by its damages expert, Stephen L. Becker, Ph.D. ("Becker Report" attached as Ex. 1). His rebuttal report addresses the damages opinions set forth by TQ Delta's damages expert, Jonathan Putnam, Ph.D., in his expert report, dated August 29, 2022 ("Putnam Report"), which Dr. Putnam served a corrected version of on September 3, 2022 ("Corrected Putnam Report.").

## III. APPLICABLE LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under the rule, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" the following four conditions are met:

███████████████████████████████████████
███████████████

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The burden is on the party offering the testimony to show that it is admissible. *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:16-CV-00033-RWS, 2017 U.S. Dist. LEXIS 127964, at *7-8 (E.D. Tex. Aug. 11, 2017) ("The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.") (quotation and citation omitted).

## IV. ARGUMENT

**A. Dr. Becker's opinions regarding the SSPPU are unsupported, incorrect, and therefore unreliable.**

The Court should exclude unreliable opinion testimony from Dr. Becker concerning the Smallest Saleable Patent Practicing Unit or "SSPPU" ███████████████████████ ██████████████████ *See e.g.,* Ex. 1 at ¶¶ 24, 89, 270. His unreliable opinions about the SSPPU are not supported by evidence or accepted scientific principles and methods.

There are no written opinions by CommScope's technical experts (Drs. Cimini, Dr. Ransom, and Dr. Al-Dhahir) that the SSPPU in this case is ████████████ These technical experts' reports in this case do not address the SSPPU or state that the SSPPU is the ███████ ████████████████████████. Because experts are bound by the opinions expressed in their reports, Drs. Cimini, Ransom, and Al-Dhahir will not be offering expert testimony at trial that the SSPPU in this case is ████████████████

███████████████████████████████████████████
███████████████

The sole basis for Dr. Becker's understanding that, for all the asserted claims of the asserted patents, the SSPPU is ██████████ ████████ the Accused Products is his discussions with CommScope's technical experts Drs. Cimini, Ransom, and Al-Dhahir.

Here are some illustrative examples from the Becker Report:

[redacted]

██████████████████████████████████████████████████████
████████████████████

Ex. 1, ¶ 270 (emphasis added).

The SSPPU is no trifle detail in the Becker Report. Rather, Dr. Becker's expert opinions, particularly his apportionment analysis and ultimately his royalty calculations, depend heavily on defining the SSPPU. *See, e.g.*, Ex. 1, at ¶ 24 ("Thus, the SSPPU associated with the accused products is ██████████████████████████████████████████████ ██████████████████████████████████████ is needed to limit the analysis to the 'footprint' of the claimed inventions.").

Given the critical importance of the SSPPU to Dr. Becker's expert opinions, one would reasonably expect that, to provide a valid and reliable opinion, Dr. Becker would have relied on the written expert opinions of CommScope's technical experts to define the technical scope of the SSPPU. But those technical experts' reports have not provided any such written expert opinion and contain no references to Dr. Becker, much less any discussions with him.

Rather, the heart of his expert opinions are grounded in his alleged discussions with three of CommScope's technical experts, one of whom (Dr. Ransom) testified under oath that he did not have any discussion with Dr. Becker. Ex. 2, Ransom Depo. Tr., at 52:19-53:2 (**Q.** Did you have any discussions with any of the experts in this case in connection with your work? So that would be either Dr. Becker, Mr. Jones, Mr. Overby, Mr. Sameni, {phonetic} any of the other technical experts that CommScope has retained? **A.** No, I haven't – let's see, that CommScope retained. I talked to one -- let me check here to be certain but – I'll have to check my notes but I did talk to Nigel Jones.").

Given the great weight and importance attributed to the SSPPU in the Becker Report, more must be expected to meet the bar set by Rule 26(a)(2) and Federal Rule of Evidence 702. Otherwise, experts could regularly sidestep the requirements of those rules by repeatedly citing to

██████████████████████████████████████████████████████
████████████████

"discussions with Expert X," on the most critical aspects of their anticipated expert testimony, thereby denying an opposing party the opportunity to scrutinize and test the basis for the expert's opinions. As the importance of the anticipated expert testimony increases, so should the level of disclosure about the basis for that testimony. But here, the Becker Report provides no details other than those discussions occurred.

Dr. Becker's discussions with CommScope's technical experts are a black box that is devoid of 'sufficient facts or data' and 'reliable principles and methods' required under Federal Rule of Evidence 702. The Becker Report provides no information about when he spoke with them, whether any of these other experts employed any methodology to determine that the SSPPU is ████████████ or if they employed any methodology at all. And even if these other experts employed a methodology, his report does not state whether each expert employed the same or different methodologies to arrive at a common answer across nine patents from seven different patent families. Their methodologies, if any, cannot be assessed, compared, or tested because there is no information provided in the Becker Report about that and their own reports say nothing about the SSPPU.

Given the black box of uncertainty surrounding Dr. Becker's alleged discussions with Drs. Cimini, Ransom, and Al-Dhahir, and Dr. Ransom's denial that any such discussions took place, Dr. Becker has effectively provided no support for his assertion that ████████████████ is the appropriate SSPPU in this case.

As the proponent of Dr. Becker's opinion testimony, CommScope has the burden of proving that his opinions meet the reliability requirements of Federal Rule of Evidence 702 and *Daubert*. The burden is on the party offering the testimony to show that it is admissible. *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:16-CV-00033-RWS, 2017 U.S. Dist. LEXIS 127964, at

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*7-8 (E.D. Tex. Aug. 11, 2017) ("The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.") (quotation and citation omitted). Under the circumstances, Dr. Becker lacks good grounds for his conclusions regarding ▮▮▮▮▮▮▮▮▮▮▮▮ as the SSPPU. Therefore, CommScope cannot meet its burden.

Accordingly, Dr. Becker's anticipated expert testimony concerning the SSPPU are unreliable and should be excluded. Specifically, TQ Delta respectfully requests that the Court exclude Dr. Becker's opinions in the parts of the Becker Report (Ex. 1) pertaining to the SSPPU ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, including at least paragraphs (including corresponding footnotes and exhibits) 17(c)-(d), 23-25, 89, 94, 106, 107, 219-220, 227, 230, 270, 276, 282, 284, 285, 291, 299, 302, 307-312, 326, 332-338 and Exhibits SLB-1A, SLB-1B, SLB-8, SLB-8.1.

> **B.  Dr. Becker's opinions regarding the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ agreements are unsupported and therefore unreliable**

The Court should exclude unreliable opinion testimony from Dr. Becker concerning various ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ agreements discussed, primarily in paragraphs 199-205, of the Becker Report. Ex. 1 at ¶¶ 199-205.

In his report, Dr. Becker claims to have reviewed the ▮▮▮▮▮▮▮▮ and relies on quotes from ▮▮▮▮ website concerning various DSL technologies and discusses ▮▮▮▮ "rate card" of royalty rates pertaining to its alleged DSL patent portfolio. *Id*. at ¶¶ 201-203.



*Id.* at ¶ 203 ( "rate card")

And, most importantly, Dr. Becker concludes the following:



*Id.* at ¶ 205.

Although the ▮ agreements involve third parties and different patents than the Asserted Patents in this case, Dr. Becker nonetheless concluded that they were, as he stated in his deposition, "relevant enough and comparable enough to at least serve as a reasonableness check." Ex. 3, Becker Depo. Tr. 196:1-13 ("**Q.** Do you consider that a comparable license in whole or in part or it's -- in some way? **A.** I consider that it is -- I think it's relevant to -- relevant enough and comparable enough to at least serve as a reasonableness check on -- on the rates or royalties that Dr. Putnam has come up with, and I also think that it's a -- provides a reasonableness check on the rates that I have come up with in my affirmative opinion. **Q.** Now, ▮ is neither the patentee

██████████████████████████████████████████████
████████████████

nor licensee in the hypothetical negotiation in this case, right **A.** That's correct, they're not.") (emphasis added).

The major problem with Dr. Becker's opinions about the ████ agreements and rate card, particularly his opinion that ██████ published rate card can inform a reasonableness check on the royalty rates" (Ex. 1, ¶ 205) is that he did not obtain a technological comparability opinion from a technical expert about the patents underlying the ████ agreements, rate card, and patents that inform the rate card. As shown by the deposition excerpt above, he made that technological comparability determination on his own without the input of a technical expert.

As a non-technical expert, Dr Becker is not qualified role to perform a technological comparability analysis. He cannot perform that role by merely reviewing the ████ agreements or perusing the ████ website. That crucial role must be performed by a technical expert and no technical expert for CommScope has performed such an analysis concerning the patents in the ████ agreements and ████ patent portfolio that relate to the ████ rate card. The relevant portions of the Becker Report do not cite any of CommScope's technical experts' written expert reports or any discussions with CommScope's experts concerning ████ or a technological comparability analysis of the ████ patents.

Dr. Becker's use of the ████ "rate card" (which is based on ████ DSL patent portfolio) to serve as an alleged "reasonableness check" on the royalty rates that he calculated in this case cannot be the basis of a reliable opinion because he does not have technical expert's opinion that the ████ patents are technologically comparable to the Asserted Patents upon which he relies. His 'reasonableness check' is not a reasonable, valid, or reliable (i.e., 'apples-to-apples') tool for comparison given the absence of a technological comparability opinion. Without a technological comparability opinion to serve as a foundation for a 'reasonableness check' on his royalty rate

███████████████████████████████████████
█████████████

calculation, Dr. Becker cannot be said to have applied a legally sound methodology. The ███ agreements and rate card involve different patents and parties than this case and are not relevant to the hypothetical negotiation in this case; thus, Dr. Becker's "reasonable check" concerning ███ could well mislead or confuse a jury. Ex. 3, S. Becker Depo. Tr., at 197 ("I do not put ███ at the hypothetical negotiation. I don't think that a – that the ███ agreements that have been produced are themselves informative of the outcome of the hypothetical negotiation back in 2008.").

Because Dr. Becker's opinion testimony about the ███ agreements, rate card, and ███ patents and patent portfolio is unsupported by any technological comparability analysis that only a technical expert could provide, his opinion is unreliable and should be excluded. Specifically, TQ Delta respectfully requests that the Court exclude Dr. Becker's opinions in the parts of the Becker Report (Ex. 1) pertaining to the ███ agreements, rate card, patents, and patent portfolio, including at least paragraphs (including corresponding footnotes and exhibits) 199-205, 233, 315-317 and Exhibit SLB-12.

## V. CONCLUSION

For the foregoing reasons, the Court should preclude Dr. Becker from testifying about any opinions reflected in his Rebuttal Expert Report that (1) rest on the assertion that the appropriate SSPPU is ███████████████████ of the Accused Products and (2) that pertain to the ███ agreements, rate card, and ███ patents and patent portfolio.

A proposed order is attached.

/s/ *William E. Davis, III*

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

<div style="margin-left:50%">

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(*Pro hac vice*)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(*Pro hac vice*)
rchiplunkar@mcandrews-ip.com

Ashley Ratycz
(*Pro hac vice*)
aratycz@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

*Counsel for TQ Delta, LLC*

</div>

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

The undersigned certifies that, pursuant to Local Rule CV-5(a)(7), the foregoing instrument designated as confidential in accordance with the previously signed Protective Order is authorized by the Court to be filed under seal.

<div style="text-align:right">

*/s/ William E. Davis, III*
William E. Davis, III

</div>

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this December 14, 2022, on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

<div style="text-align:right">

*/s/ William E. Davis, III*
William E. Davis, III

</div>

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel have complied with the meet-and-confer requirements of Local Rule CV-7(h) and (i) and that discussion between Plaintiff TQ Delta and Defendant CommScope have reached an impasse and that this motion is opposed, as summarized below:

On December 13, 2022, counsel for TQD—Bo Davis, Christian Hurt, Ed Chin, Ty Wilson, Raj Chiplunkar—met and conferred with counsel for CommScope—Andrew Ong, Lana Shiferman, Karlee Wroblewski, Brian Craft—regarding the subject matter of this motion.  Counsel reached an impasse.

<div style="text-align:right">

*/s/ William E. Davis, III*
William E. Davis, III

</div>