███████████████████████████████

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| TQ Delta, LLC,<br>　　　　　　*Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>　　　　　　*Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED<br><br>████████████████ |

**TQ DELTA, LLC'S MOTION**
**FOR SUMMARY JUDGMENT ON FAMILIES 2, 3, 6, AND 9B**

████████████████████

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................X

I.   INTRODUCTION AND SUMMARY ........................................................................1

II.  STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ..................................3

III. STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................3

IV.  LEGAL STANDARDS ............................................................................................7

    A.   Res Judicata ................................................................................................7

        1.  Collateral Estoppel – Actually Litigated Issue .................................9

        2.  Patent Specific Preclusion – Validity and Infringement..................10

V.   ARGUMENT ........................................................................................................7

    A.   Res Judicata Bars Relitigating Families 2, 3, and 6................................11

        1.  The DE Case Parties are Identical or In Privity to the Parties Here ...............12

        2.  These Identical Issues Were Actually Litigated in the DE Court to Final Judgments on the Family 2, 3, and 6 Patents....................................13

        3.  The DE Case Involved the Same Causes of Action and Adjudicated Identical Issues........................................................................................14

        4.  The DE Case Involved Other Identical Issues That Were Litigated and Necessary to the DE Court's Decision

    B.   Family 9(b) – CommScope is Barred by Its Stipulation........................23

VI   CONCLUSION....................................................................................................24

**<u>TABLE OF AUTHORITIES</u>**

<u>Cases</u>

*Allergan Sales, LLC v. Sandoz, Inc.*, 2
    211 F. Supp. 3d 907, 915 (E.D. Tex. 2016)........................................................................10

*B&B Hardware, Inc. v. Hargis Indus*
    575 U.S. 138, 147 (2015).............................................................................................8, 12

*Bierscheid v. Hamman*
    No. H-21-3751, 2022 U.S. Dist. LEXIS 111629 (S.D. Tex. June 23, 2022).....................12

*BlephEx, LLC v. Myco Indus*
    24 F.4th 1391, 1399 (Fed. Cir. 2022) ...............................................................................24

*Borrani v. Nationstar Mortg. LLC*
    820 F. App'x 20, 23 (2d Cir. 2020) ...................................................................................13

*Chavez-Mercado v. Barr*,
    946 F.3d 272 (5th Cir. 2020) ..............................................................................................8

*Crossroads Sys. (Tex.), Inc. v. Dot Hill Sys. Corp.*
    2006 U.S. Dist. LEXIS 36181 (W.D. Tex. May 31, 2006) ................................................10

*Cycles, Ltd. v. Navistar Fin. Corp.*
    37 F.3d 1088, 1090 (5th Cir. 1994) ...................................................................................14

*Dotson v. Atl. Specialty Ins. Co.*
    24 F.4th 999 (5th Cir. 2022) ...............................................................................................7

*EON Corp IP Holdings LLC v. Apple Inc.*
    No. 14-cv-05511-WHO, 2015 U.S. Dist. LEXIS 108250 (N.D. Cal. Aug. 17, 2015) ......10

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*
    721 F.3d 1330 (Fed. Cir. 2013).........................................................................................13

*Grecia Estate Holdings LLC v. Meta Platforms, Inc.*,
    No. 6:21-CV-00677-ADA, 2022 U.S. Dist. LEXIS 100260 (W.D. Tex. June 6, 2022) .....9

*Gree, Inc. v. Supercell Oy*
    No. 2:19-CV-00200, 2021 U.S. Dist. LEXIS 61948 (E.D. Tex. Feb. 9, 2021)...................9

*Gupta v. Wipro Ltd.*
    749 F. App'x 94 (3d Cir. 2018) .........................................................................................13

██████████████████████████████

*Kamilche Co. v. United States*
53 F.3d 1059 (9th Cir. 1995) .......................................................................10

*Latham v. Wells Fargo Bank*
896 F.2d 979 (5th Cir. 1990) .......................................................................12

*Little River Healthcare Holdings, L.L.C. v. Little River Healthcare Holdings, L.L.C.*
No. 21-50616, 2022 U.S. App. LEXIS 13449 5th Cir. May 18, 2022). .............9

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*
140 S. Ct. 1589 (2020) ...............................................................................7

*Lummus Co. v. Commonwealth Oil Ref. Co.*
297 F.2d 80, 89 (2d Cir. 1961) ....................................................................13

*Metromedia Co. v. Fugazy*
983 F.2d 350 (2d Cir. 1992) ........................................................................14

*Natour v. Bank of Am., N.A.*
No. 4:21-CV-00331, 2022 U.S. Dist. LEXIS 110685 (E.D. Tex. June 22, 2022) ............24

*Nolley v. Warden*
820 F. App'x 845 (11th Cir. 2020) ...............................................................13

*Ohio Willow Wood Co. v. Alps S, LLC*
735 F.3d 1333, 1342 (Fed. Cir. 2013) .........................................................10

*Orexo AB v. Actavis Elizabeth LLC*
371 F. Supp. 3d 175, 183 n.6 (D. Del. 2019) ................................................10

*Parus Holdings, Inc. v. Charles Schwab & Co., Inc.*
No. 2:21-cv-393-JRG, Dkt. No. 119 (E.D. Tex. Oct. 25, 2022) .......................7

*Phil-Insul Corp. v. Airlite Plastics Co.*
854 F.3d 1344 (Fed. Cir. 2017) ...............................................................7, 11

*Smiledirectclub v. Candid Care Co.*
No. 6:20-CV-0115-ADA, 2021 U.S. Dist. LEXIS 154206 (W.D. Tex. July 1, 2021) ........9

*Syverson v. Int'l Bus. Mach. Corp.*
472 F.3d 1072 (9th Cir. 2007) .....................................................................14

*Taylor v. Sturgell,*
553 U.S. 880 (2008) ....................................................................................8

*Test Masters Educ. Servs. v. Singh,*

███████████████████████

428 F.3d 559 (5th Cir. 2005) ................................................................................................8

*Thompson v. Dall. City Attorney's Offic*
913 F.3d 464 (5th Cir. 2019) ............................................................................13

*United Welding Supplies, Inc. v. Long (In re Long)*,
2007 Bankr. LEXIS 4391v(Bankr. S.D. Tex. Dec. 10, 2007) ...........................................13

*Yamaha Corp. of America v. United States*
961 F.2d 245, 254 (D.C. Cir. 1992); ...............................................................................10

## I. INTRODUCTION AND SUMMARY

Plaintiff TQD Delta, LLC ("TQD") hereby moves for summary judgment ("SJ") against Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC (collectively, "CommScope" or "CS"). This Motion seeks to 1) avoid duplicative and potentially conflicting judgments with the District of Delaware ("DE Court") and 2) simplify trial on validity and infringement. This Motion asks the Court to grant SJ in agreement with the DE Court's prior judgments against CommScope's predecessor-in-interest on the <u>same</u> patents and, for infringement, on the <u>same</u> products and products that are substantially similar (e.g., they employ the same source code functionality to comply with the same DSL standards). It also seeks, for one patent, to hold CS to its stipulation that it would not pursue validity if the PTAB instituted review, which the PTAB subsequently did. Overall, this Motion asks the Court to grant summary judgment on validity and infringement as follows (using the family categories assigned in Delaware):

| Patent Family / Issue | Family 1 (1 pat.) | Family 2 (1 pat.) | Family 3 (2 pats.) | Family 4 (1 pat.)[1] | Family 6 (1 pat.) | Families 9(a)/9(b) (2 pats.) | Family 10 (1 pat.) |
|---|---|---|---|---|---|---|---|
| Validity | | Decided in DE (trial and SJ) | Decided in DE (trial) | | | Stip. (one patent) | |
| Inf. | | Decided in DE (trial) | Decided in DE (trial) | | Decided in DE (SJ) | | |

Damages would be tried for all families.

This Motion arises from the overlap, in issues, parties, and patents, including the facts of infringement, between this case and proceedings in Delaware in *TQ Delta, LLC v. 2Wire, Inc.*, No. 1:13-cv-1835-RGA (D. Del. filed Nov. 4, 2013) ("DE Case"). This overlap would lead to CommScope effectively re-arguing, using the same counsel, the same theories of validity (using

---

[1] Trial on Family 4 is scheduled for Feb. 13, 2022, in Delaware and will address validity and infringement of the claim 14 of the '008 Patent—the only Family 4 patent claim in this case.

identical art) and of non-infringement that CommScope has already lost in Delaware, including in two jury trials. This summarizes the overlap in Families 2, 3, and 6 between this case and the DE Case discussed in this Motion:

- The DE Case concerns infringing products from 2Wire, Inc., which CommScope acquired during the litigation (years after it began but before the relevant rulings): first defendant ARRIS acquired 2Wire in 2017 and then CommScope acquired ARRIS in 2019. CommScope uses the same counsel, including the same lead counsel, in both cases.  The DE case is, similarly, directed to the infringement of DSL equipment and related standards.

- For Families 2, 3, and 6, the same patents were also asserted in the DE Case, and the asserted claims are either identical or not substantially different.

- CommScope's noninfringement defenses for the 2Wire products in the DE Case turned on the operation of source code in specific Broadcom chip models. Now, having completed expert discovery in this case, it is clear that the Broadcom source code that will define infringement in this case is identical or otherwise substantially identical to the source code that defined infringement in the DE Court's trials on F2 and F3 and its SJ ruling of infringement on F6. CS has not identified any material differences in the source code.

- While this case concerns some of the same DE Case 2Wire products (though at a later point in time for damages for a subset of patents), it also includes ARRIS-originating products that were never at issue in Delaware. These additional ARRIS products have either identical Broadcom chips to the 2Wire products in the DE Case or Broadcom chips based on source code that is not substantially different than that adjudicated in the DE Case.

- For validity, CommScope elected identical art for trial in this case for Families 2 and 3 as it raised in the Delaware trials.  In other words, CommScope elected the same references here that its Delaware experts raised.

CommScope, through its subsidiary 2Wire, has, over the last nine years, had its day in court, including in two trials and attendant post-trial briefs. It has already lost on the issues in this motion and is legally precluded from a second bite at the apple, consuming the time and resources of another trial on the same issues, including the same validity art and infringement facts.  TQD asks the Court to grant SJ here and uphold the DE Courts judgments.

## II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. That CS, based on its trial-loss in Delaware, cannot contest, for the only asserted Family 2 patent, validity or infringement of the same and substantially similar products.

2. That TQD is entitled to SJ on the Family 2 issues CommScope cannot contest.

3. That CS, based on its trial-loss in Delaware, cannot contest, for the only two asserted Family 3 patents, validity or infringement of the same and substantially similar products.

4. That TQD is entitled to SJ on the Family 3 issues CommScope cannot contest.

5. That CS, based on its summary-judgment-loss in Delaware, cannot contest, for the asserted Family 6 patent, validity or infringement of the same and substantially similar products.

6. That TQD is entitled to SJ on the Family 6 issues CommScope cannot contest.

7. That CS, based on its stipulation to this Court, cannot contest, for the asserted Family 9(b) patent, validity under 35 U.S.C. §§ 102 and 103.

8. That TQD is entitled to SJ on the Family 9b issues CommScope cannot contest.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1. CommScope agrees the DE Cases were "brought by TQ Delta against CommScope's predecessor-in-interest in the District of Delaware." (Dkt. No. 152, p. 1 (CS Defendants' Opp. Mtn. for a Partial Stay)). CS also admitted it "acquired the successor-in-interest of

██████████████████████████████

2Wire." (*Id.* p. 2); *see also* DE Case, Dkt. Nos. 296, 1125 (CS's Corp. Disc. Stmts.), Exhs. 01, 02. CS completed it is acquisition of the immediate predecessor—ARRIS[2]—on April 3, 2019. Exh. 02. CS announced that it had agreed to acquire ARRIS on November 8, 2018. Exh. 03. On August 19, 2022, the PTAB found CS was barred from filing due to its privity relationship with 2Wire. *See CommScope, Inc. v. TQ Delta, LLC*, IPR-2022-352, Paper 13, pp. 8-14. Exh. 17 ("we are persuaded that 2Wire and CommScope are in privity").

2. Since 2014, in the DE Case, 2Wire has been represented by the same counsel who represent CS here.   *See, e.g.*, DE Case, Dkt. Nos. 17 (Jan. 2014 app. of B. Schuman, CS's lead counsel in this case), 91 (April 2015 app. of R. Walsh), (457 (Jan. 2018 app. of D. Kline), 1044 (April 2019 app. of A. Ong).

3. 2Wire's corporate representative at the Family 2 and 3 trials was Mr. Jim Shead.  He was also CS's 30(b)(6) representative in this case.

4. Pursuant to the Court's narrowing order, TQD's currently asserts 11 claims from 9 patents against CS: <u>Family 1</u>, U.S. Patent No. 7,570,686 ("'686 Patent") claim 36; <u>Family 2</u>, U.S. Patent No. 7,453,881 ("'881 Patent") claims 17 and 23; <u>Family 3</u>, U.S. Patent Nos. 7,844,882 ("'882 Patent") claim 13 and 8,276,048 ("'048 Patent") claim 5; <u>Family 4</u>, U.S. Patent No. 8,090,008 ("'008 Patent") claim 14; <u>Family 6</u>, U.S. Patent No. 8,462,835 ("'835 Patent") claim 10; <u>Family 9a</u>, U.S. Patent No. 8,468,411 ("'411 Patent") claims 10 and 18; <u>Family 9b</u>, U.S. Patent No. 10,833,809 ("'809 Patent") claim 13; and <u>Family 10</u>, U.S. Patent No. 9,154,354 ("'354 Patent") claim 10.

5. On January 16, 2020, for Family 2, following a four-day trial, the jury in Delaware found that claims 17 and 18 of the '881 Patent were infringed and that those claims were not invalid over U.S. Patent No. 6,222,858 ("Counterman"). *See* DE Case, Dkt. No. 1271, Exh. 04. The 5168N, 5168NV, and 5268AC products were found to infringe. *Id.* The following day, court entered Judgment in TQD's favor on the Family 2 patent on all counts, including against CS's defenses and counterclaims. DE Case, Dkt. No. 1276, Exh. 06. CS admits the DE Court "held a jury trial on infringement and invalidity of claims 17 and 18 of the '881 Overlapping Patent, entering judgment in TQ Delta's favor after the jury returned its verdict." (Dkt. No. 152, p. 3). On Sept. 15, 2020, the DE Court resolved post-trial motions, found the verdict was supported, and denied a new trial.  *See* DE Case, Dkt. No. 1354, Exh. 05. Previously, on April 10, 2019, the DE Court granted SJ of no invalidity under 35 U.S.C. § 101, indefiniteness, and enablement.  *See* DE Case, Dkt. No. 1059. Exh. 07.

6. In the Family 2 trial, 2Wire CPE products with, among others, Broadcom 63x68 chips were found to infringe (*e.g.*, the 6368 and 63168 chips).  CS CPE products with those same Broadcom chips are accused of infringement in this case.  CS CPE products using the same or substantially identical Broadcom source code are accused of infringement in this case.

7. In this case, CS has elected two art references against the only asserted Family 2 patent— the '881 Patent: Counterman and Counterman in view of Djokovic.  Identical combinations were asserted in Delaware.  The Counterman reference is the same reference considered

---

[2] ARRIS and 2Wire merged together on January 1, 2017. Exh. 02.

by the jury in the Delaware.  CS's Family 2 expert in Delaware also provided a report that discussed Counterman and Counterman in view of Djokovic.

8. On May 23, 2019, for Family 3, following a four-day trial, the Delaware jury found claim 5 of the '381 Patent, claim 13 of the '882 Patent, and claim 1 of the '048 Patent were infringed and the '381, '882, and '048 Patents were valid over references LB-031 and LB-031 in combination with Mazzoni. *See* DE Case, Dkt. No. 11871, Exh. 08.  The trial addressed the "5031 NV, 5168NV, 5168N, and 5268AC (BCM6368/BCM63168 chipsets)" products and the "i3812V and 3801HGV (BCM6091 chipset)." *Id.*  That day, the Court entered Judgment in TQD's favor on the Family 3 patents on all counts, including against 2Wire's defenses and counterclaims. DE Case, Dkt. No. 1188, Exh. 10. CS admits the DE Court "held a jury trial on infringement and invalidity of the asserted claims of the Family 3 patents, including claim 1 of the '048 Overlapping Patent and claim 13 of the '882 Overlapping Patent … entering judgment in TQ Delta's favor after the jury returned its verdict." (Dkt. No. 152, p. 3). On August 23, 2019, the DE Court resolved post-trial motions, found the verdict was supported, and denied a new trial.  *See* DE Case, Dkt. No. 1239, Exh. 09. Previously, the DE Court addressed SJ issues on F3. Exh. 11.

9. In the Family 3 trial, 2Wire CPE products with, among others, Broadcom 6328, 6368, and 63168 chips were found to infringe.  CS CPE products with those same Broadcom chips are accused of infringement in this case. CS CPE products using the same or substantially identical Broadcom source code are accused of infringement in this case.

10. In this case, CommScope has elected the same three art references against both asserted Family 3 patents: Mazzoni in view of G.993.1; Mazzoni in view of LB-031; and Fadavi-Ardekani in view of G.993.1.  These identical combinations were asserted in Delaware.  The LB-031 and Mazzoni references, including the combination of those references, considered by the jury in the Delaware Family 2 trial.  CommScope's Family 3 expert in Delaware also provided a report that discussed Mazzoni in view of G.993.1 and Fadavi-Ardekani in view of G.993.1, but the combinations were not elected at trial.

11. On June 28, 2021, for Family 6, the DE Court granted SJ of infringement on claims 8 and 10 of the '835 Patent, but it did not grant SJ of validity, reserving that issue for a to-be-scheduled trial. DE Case, Dkt. Nos. 1567, 1580 (addressing, respectively, infringement and validity), Exhs. 12, 13.

12. On July 7, 2022, regarding Family 9, CommScope filed "Defendants' Stipulation Regarding Invalidity Contentions." (Dkt. No. 197). CS stipulated that "if the Board institutes IPR in … IPR2022-01012 [it] will not pursue in this case the specific grounds identified above … or any other ground for a given patent for which the Board institutes that was raised or reasonably could have been raised in an IPR." (*Id.* at p. 3).

13. On November 28, 2022, the PTAB granted institution of review directed to the '809 Patent. *CommScope Inc. v. TQ Delta, LLC*, IPR2022-01012, Paper 9 (Exh. 14). The PTAB relied on CS's stipulation in granting institution. *See id.* at p. 8 (addressing stipulation).

14. The relevant Family 9 IPR—IPR2022-01012—was filed in May 2022.  Four months before its filing, on January 13, 2022, CommScope served its invalidity contentions. Exh. 15. CS's contentions disclose the G.993.1, BI-089, and Fukushima references in relation to the '809 Patents. *See id*, pp. 5-6 (listing references). CS was aware of these references well before the time it filed its IPRs.

15. CommScope's validity expert on Family 9—Dr. McNair—does not offer an opinion that a Family 9 patent is invalid other than under 35 U.S.C. §§ 102 or 103.  For example, he does not opine a Family 9 patent is ineligible under 35 U.S.C. § 101 or fails under 35 U.S.C. § 112. *See* Exh. 16 (showing table of contents of expert's report).

16. TQD's Family 9 validity expert—Dr. Todor Cooklev—has provided opinions that the claims of the Family 9 patents are valid over the art CommScope alleges.

17. For Families 2, 3, and 6, the DE Case related to 2Wire products that comply with the G.bond standard (Family 2) and the VDSL2 standard (Family 3 and Family 6).

18. In this case, TQ Delta alleges that all ARRIS and CommScope products that comply with certain DSL standards (*e.g.*, VDSL2 and G.bond) infringe patents in Family 2 (the '881 Patent), Family 3 (the '882 and '048 Patents), and Family 6 (the '835 Patent).  Those products include the following 2Wire products in the DE Case: the 5268AC, 5168N/V, and 5031N/V.  The accused products also include products that were not at-issue in the DE Case: the BGW-210, NVG44x, NVG589, and NVG599.

19. All of the accused products in this case comply with the G.bond standard and the VDSL2 standard.

20. CommScope contends that all of the functionality accused of infringement in this case resides in the DSL chipsets provided by Broadcom.

21. The 5268AC and 5168N/V accused products contain the Broadcom BCM63168 chip.  The 5031N/V products contains a Broadcom BCM6368 chip.

22. The NVG589 and NVG599 accused products contain a Broadcom BCM63168 chip.

23. For the BCM61368 and BCM638 chips, Broadcom produced the same source code in this case that it produced in the DE Case.

24. The BGW210 and NVG44x accused products contain a Broadcom BCM63148 chip.  The BCM63148 is a newer version of the BCM63168.  In general, the difference between the BCM63168 and BCM63148, from CommScope's perspective, is that the BCM63168 has more limited general purpose computing power while the BCM63148 has faster general processing, faster PCIe busses, more capable outputs for Ethernet, and utilized newer DRAM standards as compared to the BCM63168.  Exh. 18 at ¶ 640 (citing Baker Depo).

25. There are no substantial differences between the BCM63168 and BCM63148 in terms of how the chipsets are utilized in connection with implementing DSL functionality, including the functionality TQ Delta alleges infringes the asserted claims. Exh. 18 at ¶ 641.

██████████████████████████████████████████

26. The relevant source code for the BCM63168 and BCM63148 is substantially identical as it relates to the implementing DSL functionality, including the functionality TQ Delta alleges infringes the asserted claims.

27. CommScope's technical experts have common noninfringement opinions across all accused products and do not have separate opinions for the accused products in the DE Case (*e.g.*, the 5268AC, 5168N/V, and 5031N/V), products that contain the BCM63168 chip that were not at-issue in Delaware (*e.g.*, the NVG589 and NVG599), and products that contain the BCM63148 chip (*e.g.*, the BGW-210 and NVG44x).

28. TQD's expert opines that there are no material differences between the accused products, including the Broadcom chipset.  Exh. 18 at ¶¶ 72, 641, 643, 1142, 1170, 1198. ████

████████████████████████████████████████

███████████████████████. Exh. 18 at ¶¶ 718–749 (Family 3); *id.* at 856–884 (Family 2).

29. CommScope's technical experts do not identify any material differences between the accused products.

30. CommScope's technical experts do not identify any material differences between the BCM63168 and BCM63148 chips.

## IV.   LEGAL STANDARDS

TQD recognizes the Court's familiarity with summary-judgment standards (e.g., *Parus Holdings, Inc. v. Charles Schwab & Co., Inc.*, No. 2:21-cv-393-JRG, Dkt. No. 119 at * 3-5 (E.D. Tex. Oct. 25, 2022) and will focus on legal issues specific to this brief.

### A.   Res Judicata

"The res judicata effect of a prior judgment is a question of law that [the Fifth Circuit] review[s] de novo." *Dotson v. Atl. Specialty Ins. Co.*, 24 F.4th 999, 1002 (5th Cir. 2022). "Because the application of general collateral estoppel principles is not within the exclusive jurisdiction of this court, [the Federal Circuit] appl[ies] the law of the circuit in which the district court sits." *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1353 (Fed. Cir. 2017)

"The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Dotson*, 24 F.4th at 1002; *see also Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589,

1594-95 (2020) (discussing issue and claim preclusion).  In claim preclusion, "final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). This "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).  "The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Id*; *see also Chavez-Mercado v. Barr*, 946 F.3d 272, 275 (5th Cir. 2020) (citing *Test Masters*).

"Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Sturgell*, 553 U.S. at 892. In other words, "the determination of a question directly involved in one action is conclusive as to that question in a second suit." *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 147 (2015) (citation omitted). "The idea is straightforward: Once a court has decided an issue, it is 'forever settled as between the parties,'… thereby 'protect[ing]' against 'the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent verdicts.'" *Id.* (internal citations omitted). "In short, 'a losing litigant deserves no rematch after a defeat fairly suffered.'" *Id.* (citation omitted).

The Supreme Court "regularly turns to the Restatement (Second) of Judgments for a statement of the ordinary elements of issue preclusion":

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*B&B Hardware*, 575 U.S. at 157 (2015) (quoting Restatement (Second) of Judgments, § 27).  An "'issue' must be understood broadly enough to 'prevent repetitious litigation of what is essentially the same dispute.'" *Id.* (citing Restatement (Second) of Judgments, § 27, comment c).

In the Fifth Circuit, issue preclusion applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Little River Healthcare Holdings, L.L.C. v. Little River Healthcare Holdings, L.L.C.*, No. 21-50616, 2022 U.S. App. LEXIS 13449, at *10 (5th Cir. May 18, 2022). The Fifth Circuit, occasionally, recognizes a fourth element: "(4) there are no special circumstances that would render estoppel inappropriate or unfair" that applies only to offensive (non-mutual) estoppel, which is inapplicable here.  *Gree, Inc. v. Supercell Oy*, No. 2:19-CV-00200, 2021 U.S. Dist. LEXIS 61948, at *6 (E.D. Tex. Feb. 9, 2021). Issue preclusion can be applied against "parties who have had a prior full and fair opportunity to litigate their claims," though both parties need not be identical. *Hardy v. Johns-Manville Sales Corp.*, 681 F. 2d 334, 338 (5th Cir. 1982).

### 1.       Collateral Estoppel – Actually Litigated Issue

"Under Fifth Circuit precedent, an issue is 'actually litigated' for collateral estoppel purposes when 'the issue is raised, contested by the parties, submitted for determination by the court, and determined.'" *Grecia Estate Holdings LLC v. Meta Platforms, Inc.*, No. 6:21-CV-00677-ADA, 2022 U.S. Dist. LEXIS 100260, at *13-14 (W.D. Tex. June 6, 2022) (quoting *In re Keaty*, 397 F.3d 264, 273 (5th Cir. 2005)).  For example, where "[t]he parties fully briefed the § 101 issue … in the Delaware Action, and the Delaware court held a hearing for the briefing and then issued a written opinion based on the briefing and oral arguments …. this Court finds that the § 101 issue … was actually litigated." *Smiledirectclub v. Candid Care Co.*, No. 6:20-CV-0115-ADA, 2021 U.S. Dist. LEXIS 154206, at *11 (W.D. Tex. July 1, 2021).

"Although issue preclusion does not preclude litigation of separate issues that might have been raised in a prior proceeding, it does preclude litigation of separate theories that might have been raised but were not." *EON Corp IP Holdings LLC v. Apple Inc.*, No. 14-cv-05511-WHO, 2015 U.S. Dist. LEXIS 108250, at *23 (N.D. Cal. Aug. 17, 2015). "[O]nce an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." *Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992); *Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995) (same); *Jayasundera v. Garcia*, 684 F. App'x 254, 256 (3d Cir. 2017) (same).

### 2. Patent Specific Preclusion – Validity and Infringement

For validity, "the 'issue' that is to be given issue-preclusive to a judgment in the patent context is the ultimate determination on patent validity itself, not the sub-issues or the individual pieces of evidence and arguments that may have been necessary to support the validity determination." *Crossroads Sys. (Tex.), Inc. v. Dot Hill Sys. Corp.*, 2006 U.S. Dist. LEXIS 36181, at *16 (W.D. Tex. May 31, 2006); *see also Orexo AB v. Actavis Elizabeth LLC*, 371 F. Supp. 3d 175, 183 n.6 (D. Del. 2019) (collecting cases on validity as a single issue). "Whether patent validity is a single issue for purposes of issue preclusion is an issue 'particular to patent law,' and thus Federal Circuit precedent is binding." *Allergan Sales, LLC v. Sandoz, Inc.*, 211 F. Supp. 3d 907, 915 (E.D. Tex. 2016) (addressing but not determining whether invalidity is a single issue).

Federal Circuit "precedent does not limit collateral estoppel to patent claims that are identical." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). Collateral estoppel applies "[i]f the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity." *Id.* For example, in *Willow Wood*, the CAFC found claims from two different patents were substantially similar but "use[d] slightly different language to describe substantially the same invention." *Id.*

████████████████████████████

"Under [Federal Circuit] precedent, an infringement claim in a second suit is the same claim as in an earlier infringement suit if the accused products in the two suits are essentially the same." *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1353 (Fed. Cir. 2017) (internal quotation marks omitted). "Accused products are 'essentially the same' where the differences between them are merely colorable or unrelated to the limitations in the claim of the patent." *Id.* For example, a different drug formulation is still bound by an earlier infringement ruling if it is "essentially the same" and "any differences are unrelated to the claims." *See Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1380 (Fed. Cir. 2008).

## V.    ARGUMENT

### A.    Res Judicata Bars Relitigating Families 2, 3, and 6

Res judicata, specifically issue preclusion,[3] bars CommScope from litigating infringement of Families 2, 3, and 6 and from litigating validity on Families 2 and 3.[4]  Identical validity issues to what CommScope raises and identical issues of infringement were already decided in Delaware in adverse verdicts and judgments on many of the same claims and products that are at issue in this case.  For the patent claims that were not at-issue in Delaware, there is no material difference between those claims and the adjudicated claims for the purpose of validity and infringement— and CommScope has not argued otherwise.  Similarly, for the products that were not at-issue in Delaware, there is no material difference between those products and those adjudicated in Delaware—the products are accused of infringement based on practicing the same DSL standards as the products adjudicated in Delaware and the source code within the DSL chips in those products operates in materially the same way as the source code for the adjudicated products.  And, again,

---

[3] As TQD understands the CAFC's caselaw, this matter is a different "claim" as it, for example, addresses products never before the Delaware Court.

[4] CommScope is further barred from arguing validity in this case through claim preclusion, as it sought a declaratory judgment of validity on that issue and lost.

CommScope has not alleged otherwise.  Res judicata thus bars relitigating those issues in this Court.  Each element is addressed below.

### 1. The DE Case Parties are Identical or In Privity to the Parties Here

It is beyond reasonable dispute that the CommScope in this case is identical to the defendant in the DE Case. *See B&B Hardware*, 575 U.S. at 157 (2015) (explaining, for collateral estoppel, that a "determination is conclusive in a subsequent action between the parties, whether on the same or a different claim") (emphasis added). The Fifth Circuit has explained that "res judicata does not mean formal, paper parties only, but also includes parties in interest, that is, that persons whose interests are properly placed before the court by someone with standing to represent them are bound by the matters determined in the proceeding." *Latham v. Wells Fargo Bank*, 896 F.2d 979, 983 (5th Cir. 1990). "A person is in privity if he: (a) could control the prior action even if not a party; (b) could have been represented by a party in the prior action; or (c) is a successor in interest to a party." *Bierscheid v. Hamman*, No. H-21-3751, 2022 U.S. Dist. LEXIS 111629, at *12 (S.D. Tex. June 23, 2022) (discussing privity in the context of collateral estoppel).

CommScope is bound by determinations against 2Wire, who CommScope owns and controls. *See B&B Hardware*, 575 U.S. at 157 (a "determination is conclusive in a subsequent action between the parties"). Prior to the relevant verdicts and court decisions, CommScope acquired 2Wire (through an acquisition of defendant ARRIS).  2Wire was acquired by defendant ARRIS in 2017, and defendant CommScope completed its acquisition of ARRIS in April 2019. *See* § III.1. CS has admitted it is the successor-in-interest to 2Wire. *Id.* The PTAB was also "persuaded that 2Wire and CommScope are in privity" when it denied institution of CommScope's Petition on the '835 Patent because 2Wire was sued for infringement of that patent.  *Id.*

██████████████████████████

### 2.    These Identical Issues Were Actually Litigated in the DE Court to Final Judgments on the Family 2, 3, and 6 Patents

It should be undisputed, as discussed in more detail below, that these identical issues were actually adjudicated in Delaware and that the DE Court's judgments (e.g., Exhs. 06 (F2 Judgment), 10 (F3 judgment), or 12 (F6 SJ)) are "final judgments" for res judicata purposes. "For the purposes of issue preclusion ... 'final judgment' includes any prior adjudication of an issue … that is determined to be sufficiently firm to be accorded conclusive effect." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013) (internal citations omitted).

A jury verdict is a final judgment on the merits. *N5ZX Aviation, Inc. v. Bell (In re Bell)*, No. 19-5039, 2019 U.S. App. LEXIS 18511, at *7 (6th Cir. June 19, 2019). Similarly, "[a] grant of summary judgment is also a final judgment on the merits for purposes of res judicata." *Nolley v. Warden*, 820 F. App'x 845, 854 (11th Cir. 2020); *see also Thompson v. Dall. City Attorney's Office*, 913 F.3d 464, 470 (5th Cir. 2019) (discussing, in the context of a state court judgment, that summary judgment has a preclusive effect in Federal courts); *Gupta v. Wipro Ltd.*, 749 F. App'x 94, 96 (3d Cir. 2018) ("summary judgment is a final judgment on the merits for res judicata purposes"); *see also Borrani v. Nationstar Mortg. LLC*, 820 F. App'x 20, 23 (2d Cir. 2020) ("the grant of summary judgment was a final judgment on the merits").

"[T]he law of judgments does not use ['final'] in relation to conclusiveness, as 28 U.S.C. § 1291 does, to mean only a judgment which ends the litigation and leaves nothing for the court to do but execute the judgment." *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961) (J. Friendly) (internal quotation marks omitted). "[T]he Fifth Circuit ha[s] established that, for purposes of collateral estoppel, a judgment may be final even though an appeal is pending or a lower court has yet to fully dispose of the matter from which the issue arises." *United Welding Supplies, Inc. v. Long (In re Long)*, 2007 Bankr. LEXIS 4391, at *10 (Bankr. S.D. Tex. Dec. 10,

██████████████████████████████

2007); *see also Cycles, Ltd. v. Navistar Fin. Corp.*, 37 F.3d 1088, 1090 (5th Cir. 1994) ("Judgments are final for purposes of issue preclusion when fully litigated, even if not yet appealable"); *Metromedia Co. v. Fugazy*, 983 F.2d 350, 366 (2d Cir. 1992) ("collateral estoppel, unlike appealability under 28 U.S.C. § 1291 … does not require a judgment which ends the litigation"); *Syverson v. Int'l Bus. Mach. Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007) (decision need not be final under 28 U.S.C. § 1291).

### 3. The DE Case Involved the Same Causes of Action and Adjudicated Identical Issues

The DE Case involved the same causes of action as this case for the Family 2, Family 3, and Family 6 Patents, including some of the same products (though those products are accused for infringement of a different time-period here).  Thus, res judicata applies and bars relitigating of the issues of the same infringing patent claims here.  Each of those families is addressed below.

Family 2.  The DE Case resulted in a verdict and a Judgment on infringement and no invalidity of claim 17 of the '881 Patent, and the DE Court's Judgment including judgment against CommScope on its counterclaim of validity.  § III.5.  TQ Delta asserts claim 17 of the '881 Patent here, and CS cannot relitigate the invalidity that claim in this Court.  Indeed, as detailed below, the same references that CS raises here—Counterman and Djokovic—were raised in Delaware. § III.7.  On infringement, the jury found that the 5268AC, 5168N, and 5168NV products infringed claim 17 of the '881 Patent, resulting in a final judgment (upheld through post-trial motions). § III.5.  Those same products are also accused of infringement of claim 17 in this case.  Thus, CS cannot relitigate the already-decided validity and infringement issues of claim 17 in this case.

Family 3.  The DE case resulted in a verdict and Judgment of infringement and no invalidity of claim 13 of the '882 Patent.  § III.8.  TQD asserts claim 13 of the '882 Patent here, and CS cannot relitigate invalidity in this Court.  Indeed, as detailed below, the same references that CS

raises here—Mazzoni, Fadavi-Ardekani, LB-031, and VDSL1—were raised in Delaware.  § III.10.

The jury also found that the 5031NV, 5168NV, 5168N, and 5268AC infringed claim 13 of the

'882 Patent.  § III.8.  The DE Court entered a final Judgment on the verdict (and upheld the verdict

on post-trial motions), including judgment against CS on its counterclaim on validity. § III.8. CS

thus is barred under res judicata from relitigating validity and infringement of claim 13 in this case.

  Family 6.   The DE Case resulted in a grant of summary judgment that the 5031NV,

5168NV, 5168N, and 5268AC infringe claim 10 of the '835 Patent.  § III.11.  TQ Delta has alleged

in this case that the same products—the 5031NV, 5168NV, 5168N, and 5268AC—infringe claim

10 of the '835 Patent.  CommScope thus is barred under res judicata from relitigating infringement

of claim 10 of the '835 Patent in this case.

   **4.**  **The DE Case Involved Other Identical Issues That Were Litigated and Necessary to the DE Court's Decision**

  In addition to the same causes of action for infringement of the same patents and products

(though for different time periods), this case involves identical issues that were litigated in

Delaware and were necessary to the Delaware Court's judgment.  Thus, even for the products and

claims that were not at-issue in Delaware (e.g., ARRIS products), CommScope is still barred from

relitigating infringement and validity in this Court.  TQ Delta addresses each family below.

   i)  Family 2

  CommScope is barred from relitigating validity and infringement of claims 17 and 23 of

the '881 Patent here.  For validity, in addition to claim 17 resulting in a final Judgment of no

invalidity, the DE case involved the same issues as this case—invalidity under Counterman,

validity under 35 U.S.C. §§ 101 and 112 (indefiniteness and enablement)—that were resolved in

TQ Delta's favor at summary judgment and with 2Wire dropping written description and

Counterman in view of Djokovic prior to trial.  Addressing these issues was necessary to the

Court's judgment (*e.g.*, Counterman was the only reference presented at trial and the remaining dispositions of validity issues were incorporated into the final judgment).  CommScope raises those identical references against claim 17 and 23 of the '881 Patent here.

For the validity issues, there is no material difference between claim 23 (which was not tried in Delaware) and the claims tried in Delaware (claims 17 and 18).  Claim 23 depends from (and is thus narrower than) claim 17, meaning that a decision of validity based on prior art for claim 17 would equally apply to claim 23.  Claim 23 is materially similar to (and, in fact, narrower than) claim 18, which was tried in Delaware.  Claim 18 recites that "wherein the at least one transmission parameter value is a Reed Solomon Coding parameter value, <u>an interleaving parameter value</u>, a coding parameter value, a codeword size value or a framing parameter value."  Claim 23 similarly recites "wherein the at least one transmission parameter value for the first transceiver is a <u>first interleaving parameter value that is different than a second interleaving parameter value for the second transceiver</u>."  Indeed, CS is asserting the identical references (Counterman and the combination of Counterman and Djokovic) against claim 23 as it did against claims 17 and 18 in Delaware.

Preclusion also applies to the infringement issues as well.  Infringement of claim 17 and 18 of the '881 Patent by the 5268AC, 5168N, and 5168NV products was actually decided in Delaware.  Those products are also accused in this case.  The additional products in this case (*e.g.*, the BGW210, NVG44x, NVG589, and NVG599) and claim 23 raise the same issues litigated and decided in Delaware and require a finding of preclusion for the following reasons.

<u>First</u>, the products in this case involve compliance with the same standards (G.bond) as the products adjudicated in Delaware.  In Delaware, 2Wire's noninfringement expert raised the same standards-based argument that CommScope's expert raises here for all of the products: that the

bonding standards sections on latency are "recommended" but not "required," that the standards do not disclose the "reducing a difference in latency" claim element because they discuss "controlling" latency, and compliance with the standard does not show infringement. *Compare* Jacobsen Family 2 Report, Exh. 23 at ¶¶ 42–55 *with* Ransom Report, Exh. 20 at ¶¶ 139–149.  Dr. Ransom also relies on that argument to argue noninfringement of claim 23—that configuration latency can be "controlled" while not being "reduced"—reflecting that there is no material difference between claim 23 from the claims found to infringe in Delaware as it relates to infringement.  As the Court can appreciate from its trial experience, CS's argument was necessarily decided against 2Wire in the Judgment.  And it equally precludes a finding of noninfringement for all of the products in this case for both asserted claims of the '881 Patent.

Second, the products in this case implement the bonding standard in the same way as the products adjudicated in Delaware.  CommScope alleges that all of the accused functionality resides within the DSL chipset within CommScope's products.  The products adjudicated in Delaware contained the BCM63168 and BCM6368 chipsets (part of the BCM63x68 family).  The NVG589 and NVG599 products in this case contain the same BCM63168 chipset that was adjudicated in Delaware—indeed, Broadcom produced the same source code for the BCM63168 in this case that it did in the Delaware case.  There is thus no material difference in how the NVG599 and NVG589 implement bonding versus the adjudicated products.  And CommScope has not identified such as difference: CommScope's expert in this case does not separate out the NVG589 and NVG599 from the adjudicated products in his noninfringement analysis—all of the products are lumped together and argued to not infringe for the same reasons, primarily based on the standards.

The remainder of the products that were not at-issue in Delaware (the BGW-210 and the NVG44x) use the BCM63148, which is a newer version of the BCM63168 from Broadcom.  The

██████████████████████████████████

BCM63148 operates materially identical to the BCM63168 in how it implements bonding.  ██

████████████████████████████████████████████████████████

██████████████████████████████████████████████.  There is thus no

material difference in how the BGW-210 and NVG44x implement bonding versus the adjudicated

products.  Again, CommScope's expert in this case does not separate out the BGW-210 and

NVG44x from the adjudicated products in his noninfringement analysis.  All of the products are

lumped together and argued to not infringe for the same reasons.

Issue preclusion is proper on the Family 2 claims, as these issues have already been

identically decided between the parties. Both validity and infringement were adjudicated in the DE

Case, including being actually litigated through trial and affirmed in post-trial briefing. § III.5.  As

the Court can appreciate from its experience, these issues and their surrounding facts were central

claims of the case and their determination was necessary to the decision.

ii)     Family 3

CommScope is barred from relitigating validity and infringement of claim 5 of the '048

Patent and claim 13 of the '882 Patent, which are the only two asserted patents from Family 3.

Claim 13 of the '882 Patent was tried on validity and infringement in Delaware as was claim 1 of

the '048 Patent and both claims were found to be valid and infringed, the DE Court addressed post-

trial briefing (upholding the verdict), and Judgment was entered.  § III.8.

On invalidity, CommScope is raising the identical issues here that were raised in the

Delaware court—invalidity based on Mazzoni, Fadavi-Ardekani, LB-031, and VDSL1.[5]  The DE

Court granted SJ of no invalidity under Fadavi-Ardekani and a jury rejected the invalidity

challenged based on Mazzoni and LB-031, which the Court upheld, entering Judgment and

---

[5] The VDSL1 reference was dropped before trial.

affirming that Judgment following post-trial briefing.  The issues were actually litigated and the Court's decisions were necessary to the judgment of no invalidity.

The preclusive effect of the validity judgments applies to claim 5 of the '048 Patent. Collateral estoppel applies "[i]f the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity." *Willow Wood*, 735 F.3d at 1342. For example, the fact that the prior art combinations asserted by CommScope against claim 5 are identical to combinations it asserted against claim 1 of the '048 Patent and claim 13 of the '882 Patent in Delaware makes the similarity clear. § III.11.  Indeed, CommScope's invalidity expert in this case (Dr. Wesel) lumped claim 5 of the '048 Patent along with claim 13 of the '882 Patent into a single invalidity analysis because "[t]hese claims have almost identical elements[.]" Wesel Report, Exh. 22 at ¶ 522.  This is reflected in a side-by-side comparison of claim 5 of the '048 Patent and claim 13 of the '882 Patent (differences highlighted).

| Claim 13 of the '882 Patent | Claim 5 of the '048 Patent |
| --- | --- |
| A system that allocates shared memory comprising: | A system that allocates shared memory comprising: |
| a transceiver that performs: | a transceiver that is capable of: |
| transmitting or receiving a message during initialization specifying a maximum number of bytes of memory that are available to be allocated to a deinterleaver; | transmitting or receiving a message during initialization specifying a maximum number of bytes of memory that are available to be allocated to a deinterleaver; |
| determining an amount of memory required by the deinterleaver to deinterleave a first plurality of Reed Solomon (RS) coded data bytes within a shared memory; | determining an amount of memory required by the deinterleaver to deinterleave a first plurality of Reed Solomon (RS) coded data bytes within the shared memory; |
| allocating a first number of bytes of the shared memory to the deinterleaver to deinterleave a first plurality of Reed Solomon (RS) coded data bytes for reception at a first data rate, wherein the allocated memory for the | allocating a first number of bytes of the shared memory to the deinterleaver to deinterleave a first plurality of Reed Solomon (RS) coded data bytes for transmission at a first data rate, wherein the allocated memory for the |

| **Claim 13 of the '882 Patent** | **Claim 5 of the '048 Patent** |
|---|---|
| deinterleaver does not exceed the maximum number of bytes specified in the message; | deinterleaver does not exceed the maximum number of bytes specified in the message; |
| allocating a second number of bytes of the shared memory to an interleaver to interleave a second plurality of RS coded data bytes <mark>transmitted</mark> at a second data rate; and | allocating a second number of bytes of the shared memory to an interleaver to interleave a second plurality of RS coded data bytes <mark>received</mark> at a second data rate; and |
| deinterleaving the first plurality of RS coded data bytes within the shared memory allocated to the deinterleaver and interleaving the second plurality of RS coded data bytes within the shared memory allocated to the interleaver, wherein the shared memory allocated to the deinterleaver is used at the same time as the shared memory allocated to the interleaver. | deinterleaving the first plurality of RS coded data bytes within the shared memory allocated to the deinterleaver and interleaving the second plurality of RS coded data bytes within the shared memory allocated to the interleaver, wherein the shared memory allocated to the deinterleaver is used at the same time as the shared memory allocated to the interleaver. |

There is no allegation that the highlighted language impacts the validity analysis in this case in any way.  And, again, to the contrary, CS's expert conducts one invalidity analysis for both claim 13 of the '882 Patent and claim 5 of the '048 Patent.  Issue preclusion thus applies and CommScope is barred from relitigating validity here after losing those issues in Delaware.

CommScope is also precluded from arguing noninfringement.  For Family 3, the 5031NV, 5168N, 5168NV, and 5268AC products were adjudicated to infringe claim 13 of the '882 Patent (among others).  The additional products in this case (*e.g.*, the BGW210, NVG44x, NVG589, and NVG599) and claim 5 of the '048 Patent raise the same issues litigated and decided in Delaware and require a finding of preclusion for the following reasons.

First, like the Family 2 Patents, the products in this case all comply with VDSL2 standard. The noninfringement defenses raised in Delaware focused on the VDSL2 standard: that the messages in the standard specified delay, not bytes of memory; and that the messages specified a minimum amount of memory, not a maximum amount.  *See, e.g.*, Jacobsen Family 3 Report, Exh. 24 at ¶¶ 51–66.  Those are the same primary defenses raised by CS's expert in this case, including

████████████████████████████████████████

for claim 5 of the '048 Patent.  *See, e.g.*, Ransom Report, Exh. 20 at ¶¶ 150–165.[6]  CS's argument was necessarily decided against 2Wire in the judgment.  And it equally precludes a finding of noninfringement for <u>all</u> of the products in this case for both claims of the Family 3 Patents.

_Second_, also like the Family 2 Patents, the products in this case implement the accused aspect of the VDSL2 standard in the same way as the products adjudicated in Delaware. CommScope alleges that all of the accused functionality resides within the DSL chipset within CS's products.  The products adjudicated in Delaware contained the BCM63168 and BCM6368 chipsets.  The NVG589 and NVG599 products in this case contain the same BCM63168 chipset that was adjudicated in Delaware.  There is thus no material difference in how the NVG599 and NVG589 implement the accused functionality within VDSL2 versus the adjudicated products. And CS has not identified such as difference: like Family 2, CS's Family 3 expert in this case does not separate out the NVG589 and NVG599 from the adjudicated products in his noninfringement analysis—all of the products are lumped together and argued to not infringe for the same reasons.

The remainder of the products that were not at-issue in Delaware (the BGW-210 and the NVG44x) use the BCM63148.  The BCM63148 operates materially identical to the BCM63168 in how it shares memory between an interleaver and deinterleaver.  ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████.  There is no material difference in how they implement bonding versus the adjudicated products.  Again, CS's expert does not separate out the BGW-210 and NVG44x from the adjudicated products in his noninfringement analysis.  All of the products are lumped together and argued to not infringe for the same reasons.

---

[6] Reinforcing that, for infringement, there is no material difference between claim 5 of the '048 Patent and claim 13 of the '882 Patent, Dr. Ransom's noninfringement opinions for claim 5 rely on "the same reasons as claim 13 of the '882 Patent."  Ransom Report, Exh. 20 at ¶¶ 249–260.

Issue preclusion is proper on the Family 3 claims. As discussed above, both validity and infringement were adjudicated in the DE Case, including being actually litigated through trial and affirmed in post-trial briefing. § III.8.  As identical issues of validity and infringement were central claims of the DE Case, their determination was necessary to the decision.

iii)     Family 6

CommScope is barred from relitigating claim 10 of the '835 Patent, which is the only asserted patent from Family 6.  On July 26, 2021, the DE Court granted summary judgment of infringement of both claims 8 and 10 of the '835 Patent. § III.11.

In granting SJ, the DE Court recited, in relevant part, the following statement of facts:

> The allegedly infringing functionality in the Accused Products is implemented by a Broadcom DSL chipset, found in each of the Accused Products. The 5031NV contains the BCM6368 DSL chipset, and the 5168NV, 5168N, and 5268AC each contain the same BCM63168 DSL chipset. Both Broadcom chips support "dynamic change of interleaver depth functionality"-this is referred to as Dynamic D. The Accused Products are held out to be compliant with the ITU-T's G.993.2, or VDSL2 ("very high speed digital subscriber line 2"), standard, which provides a variety of information regarding standard functionalities of telecommunication devices like the Accused Products.

*Id.*, Exh. F6-01, p. 3 (internal citations omitted).  The DE Court noted that "both parties' experts agree that enabling Dynamic D activates functionality that is already present in the source code of the Broadcom chips in the Accused Products." *Id.* at 11-12. The court held that "There is no genuine dispute that the source code of the Accused Products encodes Dynamic D functionality. Activation of Dynamic D does not require modification of the source code. I therefore find that the Accused Products are 'configurable to' perform Dynamic D functionality." *Id.*, p. 13.

The DE Court then considered and rejected each of CommScope's arguments regarding non-infringement of the '835 Patent: the DE Court considered TQD's standards-based theory, found that it applied to the source code at issue, and rejected CS's arguments to the contrary, again, addressing the source code, and found no genuine issue of material fact.

████████████████████████████████████████

TQ Delta is asserting the same theory here: that all of the products infringe via compliance with VDSL2.  Each of the accused products, whether containing a BCM63x68 or a BCM63148 chipset, implements DynamicD, the same functionality subject to the summary judgment order in Delaware.  Madisetti Report, Exh. 19 at 263–264, 321, 322, 331–333, 342–344, 347–349 (discussing BCM63148 and BCM63x68 source code). Unlike in Delaware, CS has provided no expert on the source code in Family 6, leaving TQD's evidence unrebutted.  CS's only F6 expert in this case—Dr. Neil Ransom—did not examine the source code.  Ransom Depo., Exh. 21 at 93:10–95:14 ("Q. Okay. Did you review any of the Broadcom source code in connection with the Family 6 patent? A. No. The only source code I reviewed were the snippets that were in the various expert reports. . . . Do you, Dr. Ransom, in general have an opinion about how the Broadcom source code operates? A. No. I guess I don't have any particular opinion about their source code.").

Given the DE Court's summary judgment of infringement of the '835 Patent, TQD asks the Court to grant equivalent summary judgment.  CS raised the same challenges in Delaware, the issue was litigated to judgment, and CS lost. It has had its day in court on this issue.

### B.    Family 9(b) – CommScope is Barred by Its Stipulation

TQD moves for SJ of validity on the sole asserted patent from Family 9(b)—the '809 Patent, claim 13—based on CommScope's lack of any argument for invalidity.  CS stipulated to the Court that it "will not pursue in this case … any other ground for a given patent for which the Board institutes that was raised or reasonably could have been raised in an IPR."  (Dkt. No. 197). CS's stipulation included the '809 Patent.  § III.12.  CS made this stipulation to address the PTAB's *Fintiv* factors, and the PTAB relied on CS's stipulation in granting institution on the '809 Patent. *Id.*  CS must be held to its stipulation.

Based on its stipulation, CommScope can present no evidence on the invalidity of the '809 Patent.  The art that CommScope asserts against the '809 Patent was disclosed in its invalidity

contentions in this case before it filed its IPR petition. § III.13. Therefore, the art is something that "could have been raised in an IPR." *Id.*  And, neither of CommScope's Family 9 experts on validity presents any argument that the '809 Patent is invalid on grounds other than the 35 U.S.C. §§ 102 and 103 arguments CommScope cannot pursue. § III.14.

The '809 Patent is presumed to be valid. 35 U.S.C. § 282(a). "Absent an invalidity defense, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *BlephEx, LLC v. Myco Indus.*, 24 F.4th 1391, 1399 (Fed. Cir. 2022) (internal quotation marks omitted). TQD has provided uncontested evidence that the asserted claims of the '809 Patent are valid. § III.16. As the challenger, CommScope bears the "ultimate burden of persuasion to prove invalidity by clear and convincing evidence." *Id.* It cannot meet this burden.

Given the presumption of validity, TQD's unrebutted evidence the asserted claim is valid, CommScope's failure to pursue any claim of validity on the '809 Patent and the corresponding lack of any evidence, TQD asks the Court to grant summary judgment on CommScope's claim the '809 Patent is invalid.  *See Natour v. Bank of Am., N.A.*, No. 4:21-CV-00331, 2022 U.S. Dist. LEXIS 110685, at *11-12 (E.D. Tex. June 22, 2022) (discussing and granting no evidence summary judgment).  TQD has spent considerable effort developing its testimony for trial on this question only to have CS commit to not presenting any evidence.

Summary judgment on this claim will also simplify issues for trial. Otherwise, the jury would be presented with a question on validity that it will have heard no evidence on.

## VI.    CONCLUSION

For the reasons discussed above, TQ Delta asks the Court to grant summary judgment of validity on the asserted Family 2, 3, and 9b patents and of infringement on the Family 2, 3, and 6 asserted patents. These issues have already been decided in Delaware, following extensive

litigation to judgment, and that determination is conclusive here. *See B&B Hardware*, 575 U.S. at 157 ("When an issue of fact or law … is actually litigated … the determination is conclusive in a subsequent action between the parties"). Therefore, these issues are "forever settled as between the parties … foster[ing] reliance on judicial action by minimizing the possibility of inconsistent verdicts." *Id.* (internal quotation marks omitted).  If CS had won, it would certainly be requesting judgment the other way. TQD also requests any other relief the Court considers just and proper.

Dated: December 14, 2022

Respectfully Submitted,

/s/  Rudolph Fink IV

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(Pro hac vice)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(Pro hac vice)
rchiplunkar@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

**ATTORNEYS FOR PLAINTIFF
TQ DELTA, LLC**

26

███████████████████████████████

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this December 14, 2022 on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

/s/ Rudolph Fink IV
Rudolph Fink IV