IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>　　*Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>　　*Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF TQ DELTA, LLC'S OPPOSED MOTION FOR LEAVE TO FORMALLY SERVE THE FIRST SUPPLEMENTAL EXPERT REPORT OF JONATHAN D. PUTNAM ON THE COMMSCOPE DEFENDANTS**

i

## I.   INTRODUCTION

Plaintiff TQ Delta, LLC ("TQ Delta") respectfully files this Opposed Motion for Leave to Formally Serve the First Supplemental Expert Report of TQ Delta's damages expert Jonathan D. Putnam ("Putnam"). This Motion seeks permission to allow formal service of Dr. Putnam's supplemental expert report ("First Supplemental Report" or "Report"), dated November 16, 2022, which updates Dr. Putnam's calculation of damages owed by Defendants CommScope Holding Company, Inc., *et al.* ("CommScope") for their alleged infringement of the standard-essential asserted patents involving DSL technology. TQ Delta informally served the First Supplemental Report (attached as Ex. 1) on CommScope only two days after CommScope served a supplemental interrogatory response on November 14, 2022, that identified, for the first time after repeated requests by TQ Delta for that information, certain spreadsheets as containing sales data for CommScope accused products sold before August 2015.

The pre-August 2015 sales data are necessary, relevant, and important to at least TQ Delta's existing inducement of infringement theory (and other issues such as the commercial success of the infringing products). If infringement is proven under that theory, TQ Delta could recover damages for those accused customer premises equipment ("CPE") products sold between August 2010 – August 2015 that, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, were induced by CommScope to be used by its customers in an infringing manner *after* August 2015, thereby falling within the six-year damages period (this lawsuit was filed on August 13, 2021) under 35 U.S.C. § 286. Ex. 1 at ¶ 6.

There is no prejudice to CommScope for many reasons, including CommScope's lack of diligence in objecting to the Report since it was received and refusal even now to mitigate prejudice. For roughly three weeks after receiving the Report on November 16, 2022, CommScope

did not object or seek a meet-and-confer about the Report, did not serve a rebuttal report or indicate that it wanted to submit a rebuttal, did not file a motion to strike, and did not convey any intention to file a motion to strike until after TQ Delta informed CommScope on December 8 that it intended to file this Motion. Moreover, CommScope deposed Dr. Putnam on December 6 and asked him numerous questions about the Report. And when TQ Delta deposed CommScope's damages expert, Dr. Stephen Becker, Ph.D., on December 7, he testified that he did not "see any reason" that he would need to respond by issuing a rebuttal. On December 9, CommScope's counsel said that CommScope would only serve a rebuttal report if the Court granted this Motion, which TQ Delta respectfully submits shows a refusal to mitigate prejudice. Despite the lack of prejudice, CommScope opposes the present motion. TQ Delta would respectfully show the Court as follows:

## II.     ARGUMENT

### A.     Background

On August 13, 2021, TQ Delta filed this patent infringement lawsuit involving standard-essential digital subscriber line ("DSL") technology against CommScope. There are 9 patents (6 are standard essential) from 7 patent families asserted against CommScope. The CommScope accused products are Customer Premises Equipment ("CPE") devices such as DSL routers.

**1.     CommScope had early notice that Dr. Putnam intended to supplement his report**

On the August 29, 2022, deadline to Serve Disclosures for Expert Witnesses by the Party with the Burden of Proof, TQ Delta's damages expert, Dr. Jonathan D. Putnam, Ph.D., submitted his expert report on damages concerning the CommScope Defendants ("Putnam Report"). Ex. 2, Putnam Report (August 29, 2022). In the Putnam Report, Dr. Putnam calculated damages based on post-2015 sales data, but explained that he might supplement his opinion based on pre-2015

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

sales data that was the subject of a pending motion to compel and relevant to TQ Delta's inducement of infringement theory:

> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. I further understand that data on these pre-2015 sales are the subject of a motion to compel that is pending with the Court.
>
> 387. I reserve the right to supplement my opinion should CommScope produce pre-2015 sales data.

Ex. 2, at ¶¶ 386-87. The motion to compel referenced in paragraph 386 of his report referred to TQ Delta's First Motion to Compel Discovery From CommScope (filed July 26, 2022) wherein TQ Delta requested that the Court compel CommScope to produce "discovery on, at least, pre-2015 activities related to the accused products, including, at least, pre-2015 financials." Ex. 3, TQ Delta's First Motion to Compel Discovery From CommScope (Dkt. 234), at p. 1. On September 1, 2022, the Court held a hearing during which the parties conferred and resolved TQ Delta's First Motion to Compel and in the following months, implemented their agreements.

On September 3, 2022, Dr. Putnam submitted a corrected version of the Putnam Report ("Corrected Putnam Report"). This Motion concerns Dr. Putnam's First Supplemental Report, discussed below.

**2. Dr. Putnam's First Supplemental Report.**

On November 16, 2022, Dr. Putnam submitted a First Supplemental Report, which TQ Delta promptly served on CommScope. Ex. 1. Dr. Putnam submitted the Report for three reasons: (a) Two days earlier, on November 14, 2022, CommScope served a fourth supplemental interrogatory response to TQ Delta's Interrogatory No. 7 (requesting sales information for Accused Products since the date of their first commercialization) that identified for the first time, after repeated requests by TQ Delta, certain spreadsheets as containing sales data for CommScope

accused products sold before August 2015. Ex. 4, CommScope's Sixth Suppl. Obj. and Resp. to TQ Delta's Interrogatories at pp. 55-58. This supplemental response allowed Dr. Putnam to understand which of the many spreadsheets produced by CommScope represented what CommScope understood to be accurate sales data for the pre-2015 period and to update his damages calculation accordingly. As explained below in Section II(C)(4), the pre-August 2015 sales data are relevant and important to TQ Delta's existing inducement of infringement theory. (b) Dr. Putnam updated his damages calculation and exhibits related thereto based on new data pertaining to accused product sales sold between 2015 and 2022 that CommScope produced after he submitted his Corrected Putnam Report. Ex. 1 at ¶ 3. (c) In paragraphs 9-10 of his First Supplemental Report, Dr. Putnam corrected his damages calculation arising from removing the '988 patent as an asserted patent. Ex. 1 at ¶¶ 9-10.

Based on the parties' meet-and-confer, TQ Delta understands that CommScope (i) does not object to allowing formal service of First Supplemental Report as to the corrections in paragraph 9, (ii) but objects to the parts of paragraph 10 to the extent that it relates to damages for the accused products sold before August 2015, and (iii) objects to paragraphs 6, 7, 8 and any other part of the Report and exhibits regarding damages for accused products sold before August 2015.

On November 18, 2022, the deadline to Serve Disclosures for Rebuttal Expert Witnesses, CommScope's damages expert, Dr. Stephen Becker, Ph.D., submitted a rebuttal expert report on damages ("Becker Report"). The Becker Report did not address the First Supplemental Report.

3. **CommScope delayed objecting to the First Supplemental Report, deposed Dr. Putnam about the Report, and turned down the opportunity to issue a rebuttal.**

After receiving the First Supplemental Report, CommScope did not object or convey any intention to file a motion to strike until after TQ Delta informed CommScope on December 8 that it intended to file this Motion. At no point before December 8 did CommScope object or seek a

meet-and-confer about the Report, serve a rebuttal report or indicate that it wanted to submit a rebuttal, file a motion to strike, and or convey any intention to file a motion to strike.

On December 6, 2022, CommScope deposed Dr. Putnam about all his reports in this case, including the First Supplemental Report. In fact, CommScope's counsel introduced the Report as an exhibit (Depo. Exhibit 3) and asked him numerous questions about it, spanning 16 pages of the deposition transcript. Ex. 5, J. Putnam Depo. Tr. (12/6/22), at 183:16-199:24. And on December 7, 2022, TQ Delta deposed CommScope's damages expert, Dr. Stephen Becker, Ph.D. He testified that he received First Supplemental Report on November 17, reviewed it, believed that "there was nothing new in terms of methodology that I needed to respond to that I hadn't already responded to,", and that "I don't see any reason that I would need to respond . . ." by issuing a rebuttal. Ex. 6, S. Becker Depo Tr. (12/7/22), at 93:1-16; 94:2-10; 95:24-96:18; 97:23-100:7; 116:16-117:2, 118:12-24. On December 8, 2022, TQ Delta informed CommScope that it intended to file this Motion. Ex. 7, 12/8/22 email to CommScope counsel. On December 9, 2022, the parties conferred and reached an impasse.

### B. Legal Standards

Courts use four factors to determine whether to permit a party to supplement an expert report after the close of expert discovery: "(1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony." *Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:20-cv-00050-JRG-RSP, 2020 U.S. Dist. LEXIS 83006, at *5 (E.D. Tex. May 12, 2020).

### C. Analysis

Good cause exists to grant this Motion.

### 1. Factor 1: Explanation for supplementing after the disclosure deadline

TQ Delta was diligent because it served the First Supplemental Report (dated 11/16/22) on CommScope only two days after CommScope served its fourth supplemental interrogatory response to TQ Delta's Interrogatory No. 7 (requesting sales information for Accused Products since the date of their first commercialization) on November 14, 2022. Ex. 4, at pp. 55-58. That supplemental response identified for the first time, after repeated requests by TQ Delta, which of the many spreadsheets produced by CommScope represented what CommScope believed to be accurate sales data for CommScope accused products sold before August 2015. *Id*; Ex. 5, Putnam Depo. Tr. at 267:16-276:13. It enabled Dr. Putnam to calculate damages for the accused products sold before August 2015 that, under TQ Delta's inducement of infringement theory, are induced by CommScope to be used in an infringing manner after August 2015.

Dr. Putnam would likely have been able to submit his First Supplemental Report earlier, perhaps as early as mid-September 2022, if CommScope had provided the supplemental interrogatory response sooner. TQ Delta was diligent in seeking that information. On September 2, 2022, TQ Delta's counsel emailed CommScope's counsel to memorialize the parties' agreements reached at the September 1 hearing and confirm, regarding pre-2015 documents, CommScope's representation that, "CommScope has produced what sales information it has pre-2015, and CommScope represents it is not withholding any pre-2015 sales information for the accused products, including any reports or other documents discussing pre-2015 sales." Ex. 8, 9/2/22 – 11/11/22 Emails between counsel for TQ Delta and CommScope, at pp. 13-14. On September 6, CommScope provided confirmation, but did not identify which of the many spreadsheets it had produced accurately represented the pre-2015 sales. *Id*. at pp. 12-14.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

On September 14, TQ Delta requested that CommScope supplement its interrogatory responses to identify the specific spreadsheets. *Id*. at pp. 10-11. Getting this clarification from CommScope was necessary because it was not clear which spreadsheets contained accurate pre-2015 sales data. For example, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ which raised doubts about whether the data was accurate until CommScope cited to that document in its supplemental interrogatory response. Ex. 5, Putnam Depo. Tr. at 225:11-23, 231:6-9, 233:3-6, 233:17-21, 237:21-238:7, 240:4-11, 274:3-275:6. Later that day, CommScope's counsel asked for TQ Delta to identify the spreadsheets that TQ wanted to rely on. Ex. 8, at pp. 9-10.

On September 16, TQ Delta reiterated its request "that CommScope supplement its interrogatory responses to identify the spreadsheets that CommScope believes contain the most accurate pre-August 2015 sales information that TQ Delta can rely on" and provided file names of some spreadsheets that, based on TQ Delta's review, appeared to contain sales information covering the pre-August 2015 period and that, until then, had not been identified in CommScope's interrogatory responses. Ex. 8 at pp. 7-8.

TQ Delta's counsel again followed up on this request on October 6, October 20, and October 31. Ex. 8 at pp. 3-5. On October 31, CommScope's counsel responded and confirmed that CommScope would supplement its "response to Interrogatory No. 7 to address the sales spreadsheets we recently produced along with any of the ones Rudy identified that are covered by the interrogatory" but only after the "worldwide sales stipulation" that the parties had been negotiating was in place. *Id.* at p. 3. The parties finalized and executed that stipulation on November 11. *Id*. at 1.

Finally, on November 14, CommScope served its supplemental response to Interrogatory No. 7. Ex. 4 at pp. 55-58. Two days later, on November 16, Dr. Putnam issued his First Supplemental Report, which TQ Delta promptly served on CommScope. Ex. 1.

This factor weighs in TQ Delta's favor because, as shown above, TQ Delta was diligent and made multiple attempts since mid-September to get CommScope to supplement its interrogatory response to identify which of the many spreadsheets produced by CommScope represented accurate pre-2015 sales, which CommScope had not disclosed before November 14, 2022.

### 2. Factor 2: Prejudice to the opposing party

CommScope cannot show any prejudice from TQ Delta's service of Dr. Putnam's First Supplemental Report. As explained above, Dr. Becker gave notice in his original report (dated August 29, 2022) that he anticipated supplementing his report based on the pre-2015 sales data.

After receiving the First Supplemental Report on November 16, CommScope did not convey any objection or intention to file a motion to strike until after TQ Delta informed CommScope on December 8 that it intended to file this Motion. At no point before December 8 did CommScope object or seek a meet-and-confer about the Report, serve a rebuttal report or indicate that it wanted to submit a rebuttal, file a motion to strike, and or convey any intention to file a motion to strike.

CommScope has suffered no prejudice because it deposed Dr. Putnam about the Report on December 6, introduced the Report as an exhibit (Depo. Exhibit 3), and asked him numerous questions about it, spanning 16 pages of the deposition transcript. Ex. 5, J. Putnam Depo. Tr. (12/6/22), at 183:16-199:24. Also, CommScope had a full opportunity to submit a rebuttal report, but has thus far chosen not to serve one. Dr. Becker testified that he did not see "any reason that

I would need to respond . . ." by issuing a rebuttal. Ex. 6, S. Becker Depo Tr. (12/7/22), at 93:1-16; 94:2-10; 95:24-96:18; 97:23-100:7; 116:16-117:2; 118:12-24. Nevertheless, to minimize potential prejudice to CommScope, TQ Delta offered during the meet-and-confer process to consent to CommScope's service of a rebuttal. Ex. 7. But CommScope's counsel turned down that offer and said that CommScope would only serve a rebuttal report if the Court granted this Motion. TQ Delta also offered to stipulate that, if CommScope consented to formal service, CommScope would not be waiving its right to move separately to strike the substantive opinions in the Report. But CommScope would not agree.

This factor weighs in TQ Delta's favor because, as shown above, CommScope has not suffered prejudice, did not timely object upon receiving the Report, and has failed to mitigate prejudice by, for example, submitting a rebuttal report within a reasonable time rather than waiting for the Court to rule on this Motion.

### 3. Factor 3: Continuance availability

As discussed above in Factor 2, CommScope has suffered no prejudice, and thus, no continuance is necessary to cure prejudice. After receiving the Report, CommScope had several weeks to submit a rebuttal report or state its intention to do so. CommScope's failure to timely object upon receiving the Report and failure to mitigate prejudice should also weigh against any argument by CommScope that it would need a continuance to cure any alleged prejudice. Without the necessity of a continuance to cure prejudice, this factor weighs in favor of TQ Delta.

### 4. Factor 4: Importance of testimony

TQ Delta will suffer undue prejudice if the Court does not permit formal service of Dr. Putnam's First Supplemental Report. In that Report, Dr. Putnam calculates the damages owed by CommScope based on pre-August 2015 sales data that are necessary, relevant, and important to

**RESTRICTED-ATTORNEYS' EYES ONLY – SUBJECT TO PROTECTIVE ORDER
FILED UNDER SEAL**

TQ Delta's existing inducement of infringement theory.[1] If infringement is proven under that theory, TQ Delta could recover damages for those accused customer premises equipment ("CPE") products sold between August 2010 – August 2015 that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were induced by CommScope to be used by its customers in an infringing manner *after* August 2015, thereby falling within the six-year damages period (this lawsuit was filed on August 13, 2021) under 35 U.S.C. § 286. To the extent infringement is proven, TQ Delta would be entitled to all damages allowable under the law for infringing acts occurring during the post-August 2015 period. A denial of this Motion could mean that TQ Delta is unable to recover ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ damages under its inducement of infringement theory. Accordingly, this factor weighs in favor of TQ Delta.

### III. CONCLUSION

For the foregoing reasons, TQ Delta respectfully requests that the Court grant this Motion for Leave to Formally Serve the First Supplemental Expert Report of Jonathan D. Putnam, Ph.D.

/s/ *William E. Davis III*

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987

---

[1] TQ Delta expects CommScope to argue in response that this is a "new theory." Seeking damages for infringing activity occurring within the six-year damages period can hardly be said to be a new theory. CommScope cannot be surprised that TQ Delta would seek all the damages that it is allowed under the law for infringement occurring during the six-year damages period. TQ Delta pleaded inducement of infringement since the filing of its Original Complaint. *See* Original Complaint (Dkt. 1), at ¶¶ 54, 65, 75, 85, 95, 105, 115, 151, 152, 186, 187. TQ Delta's inducement of infringement theory has been referenced in and discovery relevant to that theory has been sought by TQ Delta via its TQ's Infringement Contentions, First Amended Initial Disclosures, TQ Delta's Response to CommScope's Motion to Transfer (Dkt., 89 at pp. 7, 11), TQ Delta's document requests, interrogatory responses, and in depositions throughout the discovery period.

churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(*Pro hac vice*)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(*Pro hac vice*)
rchiplunkar@mcandrews-ip.com

Ashley Ratycz
(*Pro hac vice*)
aratycz@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

*Counsel for TQ Delta, LLC*

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this December 14, 2022, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/ William E. Davis III*
William E. Davis, III

# CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel have complied with the meet-and-confer requirements of Local Rule CV-7(h) and (i) and that discussion between Plaintiff TQ Delta and Defendant CommScope have reached an impasse and that this motion is opposed, as summarized below:

On December 9, 2022, counsel for TQD—Rudy Fink and Ed Chin—met and conferred with counsel for CommScope—Andrew Ong and Brian Craft—regarding the subject matter of this motion. Counsel reached an impasse.

*/s/ Edward Chin*
Edward Chin
