# EXHIBIT 9

█████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>2WIRE, INC.,<br><br>        Defendant. | Civil Action No. 1:13-cv-01835-RGA |

## MEMORANDUM OPINION

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE; Peter J. McAndrews, Thomas J. Wimbiscus, James P. Murphy, Paul W. McAndrews, Rajendra Chiplunkar, Anna M. Targowska, and Ashley M. Ratycz, MCANDREWS, HELD & MALLOY, LTD., Chicago, IL.

    Attorneys for Plaintiff.

Jody C. Barillare, MORGAN LEWIS & BOCKIUS LLP, Wilmington, DE; Brett Schuman, Rachel M. Walsh, and Monte M.F. Cooper, GOODWIN PROCTER LLP, San Francisco, CA.

    Attorneys for Defendant.

August 23, 2019

*[signature]*

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before me is Defendant's Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial for Family 3. (D.I. 1214). The Parties have fully briefed the issues. (D.I. 1215, 1226, 1230). For the reasons discussed more fully below, I will deny Defendant's motion.

## I. BACKGROUND

Plaintiff filed suit on November 4, 2013, alleging that Defendant's DSL customer premise equipment ("CPE") infringes several of its patents. (D.I. 1). I split the case into separate trials based on the asserted patents' families. (D.I. 280). On May 20-23, 2019, I held a four-day liability-only jury trial addressing the Family 3 patents. (D.I. 1234-1237 ("Tr.")). The jury found the asserted claims of the Family 3 patents-in-suit valid and infringed. (D.I. 1187).

The Family 3 patents that went to trial are U.S. Patent Nos. 7,836,381 ("'381 Patent"), 7,844,882 ("'882 Patent"), and 8,276,048 ("'048 Patent"). They relate "to memory sharing in communication systems." ('381 Patent at 1:18-19). The Accused Products are Defendant's CPE that contain certain Broadcom chipsets.

The jury found that Defendant's CPE infringes a claim from each of the three patents-in-suit. The jury found claim 5 of the '381 Patent valid and infringed:

> A non-transitory computer-readable information storage media having stored thereon instructions, that if executed by a processor, cause to be performed a method for allocating shared memory in a transceiver comprising:
>
> transmitting or receiving, by the transceiver, a message during initialization specifying a maximum number of bytes of memory that are available to be allocated to a deinterleaver;
>
> determining, at the transceiver, an amount of memory required by the deinterleaver to deinterleave a first plurality of Reed Solomon (RS) coded data bytes within a shared memory;

2

> allocating, in the transceiver, a first number of bytes of the shared memory to the deinterleaver to deinterleave a first plurality of Reed Solomon (RS) coded data bytes for reception at a first data rate, wherein the allocated memory for the deinterleaver does not exceed the maximum number of bytes specified in the message;
>
> allocating, in the transceiver, a second number of bytes of the shared memory to an interleaver to interleave a second plurality of RS coded data bytes transmitted at a second data rate; and
>
> deinterleaving the first plurality of RS coded data bytes within the shared memory allocated to the deinterleaver and interleaving the second plurality of RS coded data bytes within the shared memory allocated to the interleaver, wherein the shared memory allocated to the deinterleaver is used at the same time as the shared memory allocated to the interleaver.

('381 Patent, claim 5).

> The jury found claim 13 of the '882 Patent valid and infringed:
>
> A system that allocates shared memory comprising:
>> a transceiver that performs:
>>> transmitting or receiving a message during initialization specifying a maximum number of bytes of memory that are available to be allocated to a deinterleaver;
>>>
>>> determining an amount of memory required by the deinterleaver to deinterleave a first plurality of Reed Solomon (RS) coded data bytes within a shared memory;
>>>
>>> allocating a first number of bytes of the shared memory to the deinterleaver to deinterleave a first plurality of Reed Solomon (RS) coded data bytes for reception at a first data rate, wherein the allocated memory for the deinterleaver does not exceed the maximum number of bytes specified in the message;
>>>
>>> allocating a second number of bytes of the shared memory to an interleaver to interleave a second plurality of RS coded data bytes transmitted at a second data rate; and
>>>
>>> deinterleaving the first plurality of RS coded data bytes within the shared memory allocated to the deinterleaver and interleaving the second plurality of RS coded data bytes within the shared memory allocated to the interleaver, wherein the shared memory allocated to the deinterleaver is used at the same time as the shared memory allocated to the interleaver.

('882 Patent, claim 13).

3

And the jury found claim 1 of the '048 Patent valid and infringed:

> A system that allocates shared memory comprising:
>> a transceiver that is capable of:
>>> transmitting or receiving a message during initialization specifying a maximum number of bytes of memory that are available to be allocated to an interleaver;
>>>
>>> determining an amount of memory required by the interleaver to interleave a first plurality of Reed Solomon (RS) coded data bytes within the shared memory;
>>>
>>> allocating a first number of bytes of the shared memory to the interleaver to interleave the first plurality of Reed Solomon (RS) coded data bytes for transmission at a first data rate, wherein the allocated memory for the interleaver does not exceed the maximum number of bytes specified in the message;
>>>
>>> allocating a second number of bytes of the shared memory to a deinterleaver to deinterleave a second plurality of RS coded data bytes received at a second data rate; and
>>>
>>> interleaving the first plurality of RS coded data bytes within the shared memory allocated to the interleaver and deinterleaving the second plurality of RS coded data bytes within the shared memory allocated to the deinterleaver, wherein the shared memory allocated to the interleaver is used at the same time as the shared memory allocated to the deinterleaver.

('048 Patent, claim 1).

## II. LEGAL STANDARD

### A. Judgment as a Matter of Law

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. Fed. R. Civ. P. 50(a)(1). "Entry of judgment as a matter of law is a 'sparingly' invoked remedy, 'granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted).

4

"To prevail on a renewed motion for JMOL following a jury trial, a party must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (alterations in original). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).

In assessing the sufficiency of the evidence, the court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991). The court may "not determine the credibility of the witnesses [nor] substitute its choice for that of the jury between conflicting elements in the evidence." *Perkin-Elmer*, 732 F.2d at 893. Rather, the court must determine whether the evidence supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); *Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could properly have found its verdict"); 9B *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party.").

Where the moving party bears the burden of proof, the Third Circuit applies a different standard. This standard "requires the judge to test the body of evidence not for its insufficiency

to support a finding, but rather for its overwhelming effect." *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976) (quoting *Mihalchak v. Am. Dredging Co.*, 266 F.2d 875, 877 (3d Cir. 1959)). The court "must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding." *Id.* at 1171 (quoting *Mihalchak*, 266 F.2d at 877).

*B. New Trial*

Federal Rule of Civil Procedure 59(a)(1)(A) provides, in pertinent part: "The court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent. *See Zarow-Smith v. N.J. Transit Rail Operations, Inc.*, 953 F. Supp. 581, 584-85 (D.N.J. 1997).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993) (reviewing district court's grant or denial of new trial motion under the "abuse of discretion" standard). Although the standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law— in that the court need not view the evidence in the light most favorable to the verdict winner—a new trial should only be granted where "a miscarriage of justice would result if the verdict were

to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352-53.

### III. ANALYSIS

#### A. *Defendant's Motion for Judgment as a Matter of Law*

##### 1. Infringement

A patent is infringed when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent . . . ." 35 U.S.C. § 271(a). A two-step analysis is employed in making an infringement determination. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). First, the court must construe the asserted claims to ascertain their meaning and scope. *See id.* The trier of fact must then compare the properly construed claims with the accused infringing product. *See id.* at 976. This second step is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

"Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

When an accused infringer moves for JMOL of noninfringement, such relief may be granted only if at least one limitation of the claim in question does not read on an element of the accused product. *Bayer*, 212 F.3d at 1247. I must give deference to the jury's factual findings and view the record in the light most favorable to the non-moving party, Plaintiff. *Williamson*, 926 F.3d at 1348.

Defendant argues that JMOL of noninfringement is appropriate because (1) there is insufficient evidence to support a finding that the Accused Products satisfy the "transmitting or

7

receiving a message" limitations, (2) there is insufficient evidence to support a finding that the Accused Products satisfy the "determining" limitations, and (3) there is insufficient evidence to support a finding that the Accused Products satisfy the first "allocating" limitation. (D.I. 1215 at 1-2). Plaintiff asserts that it presented substantial evidence supporting the jury's infringement verdict. (D.I. 1226 at 1). I agree with Plaintiff.

### i. The "Transmitting or Receiving a Message" Limitations

Substantial evidence supports the jury's verdict that Defendant's CPE infringes the "transmitting or receiving a message during initialization specifying a maximum number of bytes of memory that are available to be allocated [to an interleaver or a deinterleaver]" limitations of the asserted claims. Defendant argues that Plaintiff failed to carry its burden because (1) max_delay_octet in the VDSL2 standard refers to delay rather than memory, (2) max_delay_octet refers to a minimum amount of memory if it refers to memory at all, and (3) Plaintiff's expert improperly focused on the amount of memory actually being used, rather than the amount "available to be allocated." (D.I. 1215 at 5-8).

First, substantial evidence supports a finding that max_delay_octet in the VDSL2 standard specifies an amount of memory. Defendant argues, "Under the VDSL2 standard itself, max_delay_octet does not specify 'a maximum number of bytes of memory that are available to be allocated' to an interleaver or a deinterleaver. Rather, max_delay_octet specifies the maximum end-to-end delay on a particular latency path." (*Id.* at 5). Plaintiff's expert, Dr. Cooklev, testified that the max_delay_octet field specifies memory, not "delay." (Tr. at 300:7-25). He supported this opinion by explaining that the max_delay_octet field is an amount of memory in bytes. (*Id.*). Bytes are a unit of memory, not delay. (*Id.*). Dr. Cooklev's conclusion was corroborated by the testimony of Dr. Almeroth, Plaintiff's source code expert, who also

8

explained that max_delay_octet is expressed in bytes. (Tr. at 466:18-25). Plaintiff's experts' testimony on the character of the information communicated in the max_delay_octet field is sufficient evidence to support a jury finding that max_delay_octet specifies an amount of memory.

Second, substantial evidence supports a finding that max_delay_octet refers to a maximum amount of memory. Defendant argues that max_delay_octet relates to the minimum, rather than the maximum, amount of memory that a transceiver must provide. (D.I. 1215 at 6). Plaintiff responds that Dr. Cooklev testified that max_delay_octet is a maximum amount of available memory based on (1) his understanding of the VDSL2 standard, (2) his testing of the Accused Products, and (3) the opinion of Dr. Almeroth. (D.I. 1226 at 7). Based on his understanding of the VDSL2 standard, Dr. Cooklev explained, "[I]t's critically important that [the amount of memory used by the central office transceiver to deinterleave] is exactly the same as the amount of interleaver memory at the CPE transceiver actually being used." (Tr. at 270:2-4). He explained that, if the CPE uses more memory for interleaving than the central office has available for deinterleaving, "communication fails." (Tr. at 270:14-272:10). Dr. Cooklev also explained how his testing, which captured the O-PMS[1] and R-PMS[2] messages, confirmed that the amount of memory allocated was never greater than the amount dictated by the max_delay_octet field. (Tr. at 301:21-306:3 (explanation of testing and results)). As a final piece of support, Plaintiff notes that Dr. Almeroth testified that the O-PMS message constrains the amount of memory allocated to deinterleaving in the Accused Products. (Tr. at 439:22-

---

[1] The O-PMS message is sent from the central office to the CPE during initialization. (Tr. at 196:20-23).
[2] The CPE transits the R-PMS message to the central office in response to the O-PMS message. (Tr. at 279:1-8).

9

440:2). The combination of Dr. Cooklev's testimony on the operation of the Accused Products and Dr. Almeroth's testimony on the functionality of the code in the products provides substantial evidence to support a finding that the max_delay_octet specifies a maximum amount of memory.

Third, Dr. Cooklev's testimony provides substantial evidence that the "transmitting or receiving a message" claim limitation is met in the Accused Products. In its reply brief, Defendant's primary contention is that Plaintiff failed to prove that the Accused Products meet the "available to be allocated" portion of the limitation. (D.I. 1230 at 2-5). Specifically, it argues the Dr. Cooklev improperly focused his analysis on the memory "actually being used" by the Accused Products. (*Id.*). That is, Defendant argues that Dr. Cooklev proved not how much memory is "available to be allocated," but, rather, how much memory the Accused Products use during operation. Defendant proposes that the claim term "available to be allocated" must mean something different than "actually being used." (*Id.*). "Available to be allocated," under Defendant's understanding, necessarily refers to the amount of memory present in the Accused Products, rather than some subset of that memory. (*See id.*).

Defendant's argument comes too late. "[L]itigants waive their right to present new claim construction disputes if they are raised for the first time after trial." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006). Defendant did not propose a construction for "available to be allocated" at or before trial on these patents. I will not now construe the term. I note, however, that a "message" communicating to the Accused Products a "maximum number of bytes of memory that are available to be allocated" is not, by the plain language of the claim, necessarily referring to the total amount of memory actually available in the Accused Product. The term may well be referring to an instruction, given to the Accused

10

Product by the central office, telling the Accused Product how much of the its memory may be used for interleaving or deinterleaving at that time. By way of analogy, let's say that I bake two dozen cookies and I tell my daughter, "You may have two cookies today." Although there are more cookies available in the house that *could* have been allocated to my daughter, the maximum number she has available to allocate over the course of the day is two. I see no reason why such an understanding of "available to be allocated" is inconsistent with the language of the claim.

Thus, I find that Plaintiff provided substantial evidence on which a jury could rely to find that the Accused Products meet the "transmitting or receiving a message during initialization specifying a maximum number of bytes of memory that are available to be allocated [to an interleaver or a deinterleaver]" limitations of the asserted claims.

ii. The "Determining" Limitations

Substantial evidence supports the jury's verdict that Defendant's CPE meets the "determining an amount of memory required by the [deinterleaver to deinterleave or interleaver to interleave] a first plurality of Reed Solomon (RS) coded data bytes within a shared memory" limitations of the claims. The Parties do not dispute that the accused devices determine an amount of memory. (*See* D.I. 1230 at 7 (arguing that the way the Accused Products "determine" the amount of memory required is different than Plaintiff's theory)). They merely dispute whether the products determine an amount of memory according to the theory proposed by Plaintiff.

Plaintiff provided substantial evidence from which a jury could find that the Accused Products meet the "determining" limitations. Dr. Cooklev testified that Defendant's CPE determines an amount of memory via the formula $(I-1)*(D-1)/2$.[3] (Tr. at 313:3-320:8). His

---

[3] $I$ refers to the interleaver memory block size and $D$ refers to the interleaver memory depth.

11

testimony was based on the VDSL2 standard, his testing, and Dr. Almeroth's source code analysis. (Tr. at 313:8-12). Dr. Cooklev's testimony on the VDSL2 standard, with which the Parties agree the Accused Products comply, was that the standard specifies that the amount of interleaver or deinterleaver memory is calculated using the $(I-1)*(D-1)/2$ formula. (Tr. at 240:6-12). His testimony on the results of his testing was that the R-PMS message contains the interleaver block size and depth parameters. (D.I. 314:9-315:3). This, he explained, "indicat[es] that the modem actually determined these parameters and determined an amount of memory required by the deinterleaver." (Tr. at 315:1-3). Together, this testimony provides substantial evidence to support the jury's finding that the Accused Products meet the "determining" claim element.

Defendant makes much of the testimony of Broadcom employee, Dr. Gong-San Yu. (D.I. 1215 at 9-11). Dr. Yu's testimony was that the Broadcom chips at issue in this case use a lengthier equation to determine the amount of memory required. (*See* Tr. at 717:17-23 (Dr. Yu stating, as to the BCM6091 chip, "The formula is . . . two times L (times K plus (I minus one) times (D minus one).")). As an initial matter, the jury was not obligated to credit the testimony of Dr. Yu. Further, Dr. Cooklev and Dr. Almeroth testified that the formula described by Dr. Yu factors in "peripheral memory" that is not interleaver or deinterleaver memory. (Tr. at 399:20-401:9; 472:4-11). There was significant testimony during trial directed to establishing that "peripheral memory" is distinct from interleaver or deinterlever memory. (*See, e.g.*, Tr. at 306:4-307:25; 683:1-684:22). That testimony, from multiple witnesses, provides substantial evidence

12

for a jury finding that the extra variables described by Dr. Yu are not relevant to the "determining" limitation.[4]

I find that Plaintiff presented substantial evidence on which the jury could base its finding that the Accused Products meet the claims' "determining" limitations.

### iii. The First "Allocating" Limitations

Defendant's final argument for JMOL of noninfringement is that Plaintiff failed to provide substantial evidence that the Accused Products meet the "the allocated memory for the deinterleaver [or interleaver] does not exceed the maximum number of bytes specified in the message" limitations. (D.I. 1215 at 11-14)

Defendant's argument is, once again, a too late claim construction position. It is the moving party's burden to show "that it has the only reasonable view of the claim element as long as it is un-construed." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1048 (Fed. Cir. 2016). Defendant argues, "the asserted claims require looking to the allocated 'memory,' not just 'interleaver memory' or 'deinterleaver memory'—terms that the asserted claims do not even use." (D.I. 1215 at 13). Plaintiff responds, "2Wire's argument is rooted in the incorrect assumption that the memory referred to in the asserted claims is all memory rather than the interleaver/deinterleaver memory itself." (D.I. 1226 at 15). While I express no opinion on whether Defendant's assumption is incorrect, I agree that Defendant's assumption is not clearly the only correct understanding of the claim term.

---

[4] I also note that it is not clear from the briefing *why* it makes a difference whether Plaintiff's or Defendant's proposed formula for the determining step is correct. It seems to me that, regardless, Plaintiff established that the accused products determine the amount of memory required by the interleaver or deinterleaver for interleaving or deinterleaving. As there is no briefing on the implications of Plaintiff proving the wrong theory while Defendant proved the right one, I do not see how I could grant JMOL based on this theory in any case.

13

Dr. Cooklev's understanding of the plain and ordinary meaning of the term is, apparently, that "allocated memory" refers only to the memory used to store Reed-Solomon coded information. (*Id.* at 16). His understanding is not unreasonable in view of the claims' plain language. Thus, as I am not persuaded that Defendant has the only reasonable understanding of the claims, Plaintiff's evidence that any "extra" memory is merely "peripheral" and not to be considered part of the interleaver/deinterleaver memory is sufficient to support the verdict.

### 2. Obviousness

A party must prove obviousness by clear and convincing evidence. *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009). Because obviousness, "like any other ground of invalidity, must be established by clear and convincing evidence," Defendant's burden on a JMOL motion is "doubly high: it must show that no reasonable jury could have failed to conclude that [Defendant's] case had been established by clear and convincing evidence." *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1353 (Fed. Cir. 2003) (internal citation omitted).

Defendant has not shown that "no reasonable jury could have failed to conclude that [obviousness] had been established by clear and convincing evidence." *Id.* "Obviousness is a question of law based on underlying questions of fact." *Green Edge Enterprises, LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1298 (Fed. Cir. 2010). On JMOL, I must defer to the jury's underlying factual determinations, *Williamson*, 926 F.3d at 1348, but review the legal question de novo. *Pannu*, 155 F.3d at 1348.

#### i. LB-031 as Understood by a POSITA

A reasonable jury could have failed to conclude that Defendant established obviousness by clear and convincing evidence via the combination of LB-031 with the knowledge of a POSA.

14

There is no real dispute that LB-031 contains all the elements of the claims except shared memory. (*See* Tr. at 741:5-742:2). The Parties agree that LB-031 is silent on memory type. (D.I. 1215 at 15; D.I. 1226 at 17). There is also no dispute that prior to the date of invention there were two types of memory: shared and dedicated. (*See* Tr. at 760:4-11).

The Parties presented competing testimony on the compatibility of LB-031 with shared memory. Dr. Jacobsen, Defendant's technical expert, testified that, as there were only two memory options, "a person having ordinary skill reading [LB-031] would have understood it to apply to either kind of implementation." (Tr. at 630:8-10). She further testified to discussions at the International Telecommunications Union about using LB-031 with shared memory. (Tr. at 630:11-18). Dr. Cooklev rebutted Dr. Jacobsen's conclusion, explaining that LB-031's messaging scheme isn't compatible with shared memory. (Tr. at 742:8-744:17).

As the jury was not obligated to credit Dr. Jacobsen's conclusions and there was competing testimony explaining why LB-031 is incompatible with shared memory, a jury could have reasonably failed to conclude that Defendant established obviousness. There was a basis for a jury to conclude a POSA did not have a motivation to combine LB-031 with shared memory. I will not grant JMOL of obviousness based on this combination.

    ii.    LB-031 and Mazzoni

A reasonable jury could have failed to conclude that Defendant established obviousness by clear and convincing evidence via the combination of LB-031 with Mazzoni. The Parties agree that the Mazzoni reference discloses shared memory.

Dr. Jacobsen testified that a POSA would have had a motivation to combine Mazzoni with LB-031 because both were "aimed at solving the exact same problem in the exact same type of environment." (Tr. at 647:4-5). The problem she says they were trying to solve was managing

15

the size and complexity of the interleaver. (Tr. at 646:19-647:5). She admitted, however, that the combination would not work if just "bolted" together. (Tr. at 646:4-12). Rather, for a combination of LB-031 and Mazzoni to work, a POSA would have to add more memory. (Tr. at 676:12-24). Adding more memory is a solution Dr. Jacobsen agreed was contrary to her proposed motivation to combine. (Tr. at 677:13-22). Dr. Cooklev, on the other hand, expressed the opinion that a combination of LB-031 and Mazzoni would be inoperable due to the memory capability problem. (Tr. at 745:12-747:6).

As the jury was not obligated to credit Dr. Jacobsen's conclusions and there was competing testimony suggesting that a POSA would not have been motivated to combine LB-031 with Mazzoni, a jury could have reasonably failed to conclude that Defendant established obviousness. There was a basis for a jury to conclude a POSA did not have a motivation to combine the references. Thus, I will not grant JMOL of obviousness based on this combination.

### B. Defendant's Request for a New Trial

Defendant dedicates less than two pages of its opening brief to its request for new trial. (D.I. 19-20). Its arguments are identical to those made in its request for JMOL. (*Id.*). Even without being required to evaluate the evidence in the light most favorable to Plaintiff, I find that the jury's infringement and invalidity verdicts were not against the clear weight of the evidence for the same reasons stated above. Thus, I will deny Defendant's request for a new trial.

### IV. CONCLUSION

For the foregoing reasons, I deny Defendant's Motion for JMOL or a new trial as to infringement and invalidity. An accompanying order will be entered.