THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>　　　*Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>　　　*Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED |

### PLAINTIFF TQ DELTA, LLC'S MOTION TO STRIKE THE INVALIDITY REPORT OF DEFENDANTS' EXPERT, MARK LANNING

Case 2:21-cv-00310-JRG   Document 361   Filed 12/21/22   Page 2 of 14 PageID #: 14270

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | STATEMENT OF ISSUES TO BE DECIDED BY THE COURT | 4 |
| II. | INTRODUCTION | 4 |
| III. | FACTUAL BACKGROUND | 5 |
| IV. | LEGAL STANDARD | 8 |
| V. | ARGUMENT | 10 |
| | A. The Report Improperly Applies the Wrong Construction of "SNR Margin" | 10 |
| | B. The Report Does Not Comply with the Court's Narrowing Order | 11 |
| VI. | CONCLUSION | 12 |

## TABLE OF AUTHORITIES

**CASES**

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*
   No. 2:13-CV-1112-JRG, 2015 U.S. Dist. LEXIS 109743 E.D. Tex. Aug. 19, 2015)................11

*Cordis Corp. v. Boston Sci. Corp.,*
   658 F.3d 1347 (Fed. Cir. 2011) .........................................................................................9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993) ..........................................................................................................8

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.,*
   292 F.3d 1363 (Fed. Cir. 2002) .........................................................................................9

*GREE, Inc. v. Supercell Oy,*
   No. 2:19-cv-00070-JRG-RSP, 2020 U.S. Dist. LEXIS 139310 (E.D. Tex., Aug. 5, 2020)........9

*Liquid-Dynamics Corp. v. Vaughan Co.,*
   449 F.3d 1209 n.2 (Fed. Cir. 2006) ...................................................................................9

*Realtime Data, LLC v. Packeteer, Inc.*
   No. 6:08-cv-144-LED-JDL, 2009 U.S. Dist. LEXIS 114207 (E.D. Tex. Dec. 8, 2009............11

*Treehouse Avatar LLC v. Valve Corp.,*
   No. 2022-1171, 2022 U.S. App. LEXIS 32993 (Fed. Cir. Nov. 30, 2022)..............................9

*United States v. Kuhrt,*
   788 F.3d 403 (5th Cir. 2015) .............................................................................................8

**STATUTES**

35 U.S.C. § 102 ..................................................................................................................4, 6, 8
35 U.S.C. § 103 ..................................................................................................................4, 6, 8
35 U.S.C. § 112 ..................................................................................................................4, 6, 8

**RULES**

Fed. R. Evid. 702 ......................................................................................................................4, 8

I.     **STATEMENT OF ISSUES TO BE DECIDED BY THE COURT**

Pursuant to Fed. R. Evid. 702, and the Court's First Amended Docket Control Order (FADCO), Doc. No. 249, Plaintiff TQ Delta, LLC ("TQ Delta") moves to strike in its entirety the "Opening Expert Report Of Mark R. Lanning On The Invalidity Of The Asserted Claims Of The Family 10 Patents (U.S. Patent Nos. 9,154,354; 8,937,988)" (the "Report") served by Defendants on TQ Delta on August 29, 2022 and to preclude Mr. Lanning from testifying at trial. Alternatively, TQ Delta moves to strike all opinions that rely on, and reference to, prior art not identified in Defendants' Final Election of Prior Art.

II.     **INTRODUCTION**

TQ Delta asserts claim 10 of U.S. Patent No. 9,154,354 (the "354 Patent") and claim 16 of U.S. Patent No. 8,937,988 (the "988 Patent")[1] against Defendants. In the Report, Defendants' expert, Mr. Lanning, opines that claim 10 of the 354 Patent and claim 16 of the 988 Patent are invalid under 35 U.S.C. § 102, 35 U.S.C. § 103, and 35 U.S.C. § 112. In support of his invalidity opinions, Mr. Lanning relies on and applies a construction of the claim term "SNR margin" that differs from the Court's construction of that term. Therefore, TQ Delta respectfully requests that the Court strike the Report and preclude Mr. Lanning from testifying on the issue of invalidity at trial. Because Mr. Lanning's Report provides only invalidity opinions, and any invalidity opinion necessarily starts with the Court's claim construction, the entirety of the Report should be stricken.

In addition, in his Report, Mr. Lanning relies on several alleged prior art references that Defendants did not include in their Final Election of Prior Art per the Court's Narrowing Orders

---

[1] The 354 Patent is a continuation of, and shares the same specification as, the 988 Patent. The 354 Patent and the 988 Patent will collectively be referred to herein as the "Family 10 Patents."

(Dkts. 128 & 307).[2]  It is improper to rely on those references at the expert-report stage. Therefore, to the extent the Court does not strike Mr. Lanning's Report in its entirety, TQ Delta respectfully requests that the Court strike the portions of his Report that refer to or rely on unelected prior art references.

### III. FACTUAL BACKGROUND

The Family 10 Patents relate to multicarrier modulation systems and methods that assigns different signal-to-noise ("SNR") margins to different pluralities of carriers to address the tradeoff between channel robustness and the available data rate. Asserted claims 10 and 16 recite use of a first SNR margin for a first plurality of carriers and a second, different SNR margin for a second plurality of carriers. *See* Ex. A (354 Patent, claim 10) at 10:36-49; Ex. B (988 Patent, claim 16) at 11:18-12:7.

On June 8, 2022, the Court construed the claim term "SNR margin" as follows:

> a parameter used in determining the number of bits allocated to each of a plurality of carriers, where the value of the parameter specifies an extra SNR requirement assigned per carrier in addition to the SNR required to maintain a specified bit error rate (BER) for the communication link at a specified bit allocation.

Dkt. No. 169 at 116. This was the construction proposed by Defendants. *Id.* at 113.[3] The Court adopted Defendants' proposed construction because, as Defendants argued to the Court, (i) TQ Delta agreed to that construction in the District of Delaware with respect to United States Patent

---

[2] TQ Delta understands that only the portions of Defendants' expert reports directed to prior art elected by CommScope remain at issue after the Nokia settlement and that the Nokia-specific portions and Nokia-elected prior art have been withdrawn.

[3] TQ Delta proposed a "plain meaning" construction but noted that "[i]t is unclear if there is a claim-scope dispute between the parties for [the 'SNR margin'] terms," while, like the Defendants, citing to the description of "SNR margin" in the Background of the 354 Patent. *See* Dkt. No. 169 at 114-15 and Dkt. No. 124 at 35 (quoting 354 Patent at 2:4–9).

5

No. 8,625,660, which is a "grandparent" of the 354 Patent, and (ii) the construction "is consistent with" the following disclosure in the 354 Patent specification at column 2, lines 4-9:

> In many DMT [(Discrete Multitone Modulation)] systems, an additional parameter is used to determine the number of bits allocated to each subchannel. This parameter is called the SNR "margin," or simply the "margin." The margin specifies an extra SNR per subchannel, in addition to what is required to maintain the specified BER [(Bit Error Rate)] requirement.

*Id.* at 114-116. Thus, the Court's construction of "SNR margin" is based on the disclosure at column 2, lines 4-9 in the Background of the 354 Patent.

On August 29, 2022, Defendants served Mr. Lanning's Report on the invalidity of the asserted claims of the Family 10 Patents. *See* Ex. C (Lanning Report). In his Report, Mr. Lanning recited the Court's construction of SNR Margin in a "Claim Construction" section and subsequently provided his opinions as to why the asserted claims of the Family 10 Patents are invalid under 35 U.S.C. § 112 for failing to meet the written description and enablement requirements and under 35 U.S.C. §§ 102 and 103 in view of a variety of prior art references. *See id.* at ¶¶ 117, 119-1062.

On December 2, 2022, TQ Delta deposed Mr. Lanning. During the course of the deposition, Mr. Lanning was walked through the portion of the Background of the 354 Patent that explains the term "SNR margin," including the language at column 2, lines 4-9. *See* Ex. D (Lanning Tr.) at 101:15-103:5. This portion of the Background explains how the term "SNR margin" would be understood in the art using language that tracks closely to the Court's claim construction and provides an example of the use of a 6 dB SNR margin for clarity:

> In many DMT systems, an additional parameter is used to determine the number of bits allocated to each subchannel. This parameter is called the SNR "margin," or simply the "margin." The margin specifies an extra SNR per subchannel, in addition to what is required to maintain the specified BER requirement. As an example, a DMT system with a 6 dB margin would require a 21.5+6=27.5 dB SNR on a sub channel in order to transmit 4 bits on that subchannel with a $1 \times 10^{-7}$

> BER. This is 6 dB more than required by the example in the previous paragraph because now a 6 dB margin is added to the system. Another way of looking at this is that in the example of the previous paragraph, where 4 bits were allocated to a subchannel with 21.5 dB SNR, the margin was 0 dB.

Ex. A (354 Patent) at 2:4-16.

Mr. Lanning conceded that the language at column 2, lines 4-9 "is very similar language [to] what [the] court construed." Ex. D at 103:3-4. Mr. Lanning, however, went on to say that "[i]t's my opinion [that] column 2 starting in line 4 through line 17 that [the] word SNR margins that are described in that portion of the patent are <u>not as the court has construed SNR margin</u>." *Id.* at 106:2-5 (emphasis added). In describing how he had interpreted "SNR margin" for purposes of his Report, Mr. Lanning actually coined a new term, "bit error rate margin," for the "SNR margin" described in column 2 of the 354 Patent in order to contrast that with his own interpretation and application of "SNR margin."[4] When asked to confirm that he did not provide an opinion in his Report that the prior art discloses the type of SNR margin described in columns 1 and 2 of the 354 patent, Mr. Lanning stated "I understand what those columns say [and] that those columns <u>aren't clearly the same as [the] court's construction</u> so I followed the court's construction for my analysis." *Id.* at 121:10-17 (emphasis added).

Thus, Mr. Lanning testified that, in his Report, he applied an understanding of the Court's construction of "SNR margin" that does not cover the "SNR margin" described in the 354 Patent

---

[4] Ex. D at 61:10-62:8 ("**Q.** But 6 db is the [] SNR margin because it is use[d] in arriving at [] the bit[s] on each carrier? **A.** You keep using that word and every time you use the word that's been construed by court, I go to construction. So we must use a different term or I can't answer your question. I believe you're asking me is it the margin established for the specified bit error or what I referred as bit error rate margin. Just to make sure I contrast or distinguish it from the SNR margin which is added in addition to that. **Q.** So in my hypothetical with four carriers where the SNR [on] each carrier is 30 db measured what is the 6 db in your mind that you are providing? **A.** The bit error rate margin and that's what the court [--] see the court has said in addition to the SNR required to maintain [the] specif[ied] bit error [rate] for the link. So that's why I'm calling it the bit error margin. **Q.** So you're calling you're calling the 6 db [a] bit error rate margin? **A.** Yes.").

7

specification that served as the basis for the Court's construction. Accordingly, Mr. Lanning could not have – and did not – apply the correct construction, *i.e.*, the Court's construction, of "SNR margin" in his invalidity Report. As all invalidity opinions in his Report (under 35 U.S.C. §§ 102, 103, and 112) rely on his impermissible construction of "SNR margin," his Report should be stricken in its entirety and he should be precluded from testifying on the issue of invalidity at trial.

Moreover, on November 9, 2022, Defendants served their Final Election of Prior Art on TQ Delta in which Defendants narrowed the prior art on which they are relying with respect to the Family 10 Patents to U.S. Patent No. 6,516,027 ("Kapoor") and the Chow reference. *See* Ex. E. Mr. Lanning, however, relies on several other prior art references in his Report to support his invalidity opinions.

## IV. LEGAL STANDARD

The requirements for the admission of expert testimony in light of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702 are well known. Federal Rule of Evidence 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the proponent shows by a preponderance that the testimony (1) "will help the trier of fact to understand the evidence or to determine a fact in issue," (2) "the testimony is based on sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. A trial judge "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *United States v. Kuhrt*, 788 F.3d 403, 419-20 (5th Cir. 2015).

Expert opinion in a patent case that is based on an impermissible claim construction is irrelevant and unreliable. *See Liquid-Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (expert opinion is irrelevant if "based on an impermissible claim construction"); *Treehouse Avatar LLC v. Valve Corp.*, No. 2022-1171, 2022 U.S. App. LEXIS 32993, at *11-12 (Fed. Cir. Nov. 30, 2022) (affirming decision striking portions of expert report that did not apply the court's construction and noting that "[w]hen the court has adopted a construction that the parties requested and agreed upon, any expert theory that does not rely upon that agreed upon construction is suspect"); *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1375-76 (Fed. Cir. 2002) (finding no evidence that a limitation was satisfied after noting that contrary testimony was based on an incorrect interpretation of a claim term).

A court "must disregard" expert testimony that is "based on an incorrect understanding of the claim construction," *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011), and the proper remedy is to strike such testimony. *See, e.g., Treehouse*, 2022 U.S. App. LEXIS 32993, at *11 ("We affirm that the grant of a motion to strike expert testimony is not improper when such testimony is based on a claim construction that is materially different from the construction adopted by the parties and the court."); *Liquid-Dynamics*, 449 F.3d at 1224 n.2 (approving the district court's exclusion of expert testimony based on an impermissible construction); *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00070-JRG-RSP, 2020 U.S. Dist. LEXIS 139310, at *7-8 (E.D. Tex., Aug. 5, 2020) ("The Court finds Dr. Friedman's opinions that require an order of 'Select, Remove, Update, Subtract, and Add' for infringement are contradictory to the Court's construction and they shall be struck.").

9

## V. ARGUMENT

### A. The Report Improperly Applies the Wrong Construction of "SNR Margin"

Mr. Lanning's Report should be stricken because it relies on and applies an incorrect interpretation of the Court's construction of the claim term "SNR margin," one that explicitly rejects the Court's construction and the example from the specification that the Court's construction relies on. The Court's construction of "SNR margin" is based on and closely tracks the explanation of the meaning of the term "SNR margin" at column 2, lines 4-9 of the 354 Patent. Dkt. No. 169 at 114-115. Indeed, as Mr. Lanning observed, the language in that disclosure is "very similar" to the Court's construction. Ex. D at 103:3-4. Yet, during his deposition, Mr. Lanning stated that the "SNR margin" described at column 2, lines 4-17 of the 354 Patent "are not as the court has construed SNR margin" (*id.* at 106:2-5), re-named the "SNR margin" described in the 354 Patent the "bit error rate margin" to contrast it with his interpretation and application of "SNR margin," (*id.* at 61:10-62:8) and asserted that "those columns [1 and 2 of the specification] aren't clearly the same as [the] court's construction so I followed the court's construction for my analysis" (*id.* at 121:10-17). Thus, in his Report, while claiming to have applied the Court's construction, Mr. Lanning admitted to applying an interpretation of the Court's construction of "SNR margin" that is not consistent with the very SNR margin disclosed in the specification of the 354 Patent that served as the exclusive basis for the Court's construction. As any correct understanding of the Court's construction of "SNR margin" must be consistent with and cover the SNR margin as that term is described and explained in the 354 Patent specification, Mr. Lanning necessarily applied the wrong claim construction in his report.

The invalidity opinions in Mr. Lanning's Report are based on an impermissible claim construction and, therefore, are irrelevant and unreliable.[5] Accordingly, under *Daubert* and Federal Circuit precedent, the Court should strike Mr. Lanning's Report on invalidity in its entirety and preclude Mr. Lanning from testifying at trial.

**B.  The Report Does Not Comply with the Court's Narrowing Order**

The Court's Narrowing Order required Defendants to provide a Final Election of Prior Art identifying "no more than six asserted prior art references per patent . . . and no more than a total of 20 references." Dkt. 128 at 3. After Defendants did not comply with that Order, the Court ordered Defendants to comply with the Order. Dkt. 243 at 3. Defendants served a Final Election of Prior Art on November 9, 2022. *See* Ex. E. Mr. Lanning's Report, however, includes prior art references not found in Defendants' Final Election: Cai, Peeters, and the TNETD8000 User Guide. Including those prior art references would exceed the twenty total references allowed under the Narrowing Order. Because the Report does not follow the Court's Narrowing Orders and the Local Rules, TQ Delta respectfully requests that the Court strike the paragraphs in the Report referring to or relying on references not in the Defendants' Final Election of Prior Art. *See, e.g., ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-CV-1112-JRG, 2015 U.S. Dist. LEXIS 109743, at *10 (E.D. Tex. Aug. 19, 2015) (striking undisclosed prior art reference); *see also Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-

---

[5] There are other indicia of unreliability in Mr. Lanning's Report relating to his application of the "SNR margin" construction. His opinion that claim 10 of the 354 Patent is invalidated by the Chow reference does not discuss, refer to, or apply the Court's construction of "SNR margin." *See* Ex. C at ¶¶ 349-359. When asked about that omission at his deposition, Mr. Lanning did not point to anything in his analysis of Chow that referred to the Court's construction – instead, he pointed to a conclusory and self-serving "global" statement in the claim construction section of his Report that "[i]n my analysis, I have applied the Court's constructions." Ex. D at 111:5-113:4; Ex. C at ¶ 118. Accordingly, there is no evidence that Mr. Lanning applied even his incorrect understanding of the Court's construction of "SNR margin" in his analysis of Chow.

11

144-LED-JDL, 2009 U.S. Dist. LEXIS 114207, at *20 (E.D. Tex. Dec. 8, 2009) (holding if Defendant "intended to rely upon these references at trial, it should have moved for leave to amend its invalidity contentions as soon as the need for these references arose.").

In that regard, for the Family 10 Patents, Defendants elected two references: Kapoor and Chow. *See* Exh. E. Mr. Lanning's Report, however, discusses and relies on the Cai, Peeters, and TNETD8000 references. *See* Ex. C at ¶¶ 23, 72, 80, 89, 138, 141-316; 478-698, 957-1062 and 1068. Those unelected references are not mere "background" references: Mr. Lanning relies on them as part of his element-by-element opinions that the asserted claims of the Family 10 Patents are invalid under 35 U.S.C. §§ 102 and 103. *See id.* at, *e.g.*, ¶¶ 23, 141-316; 478-698, 957-1062 and 1068). Thus, TQ Delta respectfully requests that the Court strike the portions of Mr. Lanning's Report that relate to or discuss references besides Kapoor and Chow, including at least the following portions:

- the portions of ¶ 23 that refer to Peeters, Cai, and the TNETD8000 User Guide;
- the first sentence of ¶ 72;
- the citations to Peeters and Cai in ¶ 80;
- all but the first sentence of ¶ 89;
- the first sentence of, and the reference to Peeters in, ¶ 138;
- all of ¶¶ 141-316, 478-698, and 957-1062; and
- the references to Cai, Peeters, and the TNETD8000 User Guide in ¶ 1068.

## VI. CONCLUSION

For the foregoing reasons, the Court should strike Mr. Lanning's Report on invalidity and preclude Mr. Lanning from testifying at trial on the issue of invalidity, or, failing that, strike the portions of the Report that refer to unelected references.

Dated: December 14, 2022

Respectfully submitted,

/s/ William E. Davis, III

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(*Pro hac vice*)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(*Pro hac vice*)
rchiplunkar@mcandrews-ip.com

Ashley Ratycz
(*Pro hac vice*)
aratycz@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**

500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

**Counsel for TQ Delta, LLC**

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this December 14, 2022, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ William E. Davis, III
William E. Davis, III

### CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel have complied with the meet-and-confer requirements of Local Rule CV-7(h) and (i). The CommScope Defendants are opposed.

/s/ William E. Davis, III
William E. Davis, III