# EXHIBIT B

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TQ DELTA, LLC,<br>        Plaintiff,<br>   v.<br>2WIRE, INC.,<br>        Defendant. | Civil Action No. 13-cv-1835-RGA |
| TQ DELTA, LLC,<br>        Plaintiff,<br>   v.<br>ZHONE TECHNOLOGIES, INC.,<br>        Defendant. | Civil Action No. 13-cv-1836-RGA |
| TQ DELTA, LLC,<br>        Plaintiff,<br>   v.<br>ZYXEL COMMUNICATIONS, INC., and ZYXEL COMMUNICATIONS CORPORATION,<br>        Defendants. | Civil Action No. 13-cv-2013-RGA |
| TQ DELTA, LLC,<br>        Plaintiff,<br>   v.<br>ADTRAN, INC.,<br>        Defendant. | Civil Action No. 14-cv-954-RGA |
| ADTRAN, INC.,<br>        Plaintiff,<br>   v.<br>TQ DELTA, LLC,<br>        Defendant. | Civil Action No. 15-cv-121-RGA |

**DEFENDANTS' ANSWERING CLAIM CONSTRUCTION
BRIEF FOR THE FAMILY 6 PATENTS**

flag signal to two illustrative examples and also would have been unclear and confusing to a person of ordinary skill in the art because "inverted sync symbol" and "sync flag": a) are not defined in the Family 6 patents or G.992.3 standard; b) were not terms of art at the time of the alleged invention and would not have had a definite meaning to one of ordinary skill in the art; and c) would not have enabled a person of ordinary skill in the art to understand how to avoid infringement of the asserted claims.  A_ (Jacobsen Decl.) at ¶ 60.  Because it would have been difficult for one of ordinary skill in the art to interpret Plaintiff's proposed construction, a lay jury will find it hopelessly confusing and unhelpful.  *Id*.

Accordingly, the Court should construe the term "flag signal" for the '162 patent as the specification and drawings do and how one of ordinary skill in the art would have understood it as a "signal indicating when an updated interleaver parameter value is to be used." *Id*. at ¶ 58.

**D.** **"interleaver parameter value" ('835 patent, claims 8 and 10; '162 patent, claims 8 and 9)**

| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
|---|---|
| *"numerical value of an interleaver depth parameter"* | *"the numerical value of the interleaver depth in number of codewords"*[6] |

For the term "interleaver parameter value," the parties disagree on (1) whether the interleaver parameter value refers to an interleaver depth, and (2) whether that interleaver depth is expressed in a number of codewords.  Defendants' proposed construction reflects both of these key concepts, and should be adopted.

### 1. Defendants' Proposal Is Based on the Specification

"Interleaver parameter value" was not a term of art at the time of the alleged invention and did not have a generally-understood meaning.  A_ (Jacobsen Decl.) at ¶ 62.  However, based

---

[6] In its Opening Brief, Plaintiff's quote for Defendants' proposed construction is incorrect. Defendants' actual proposed construction from the Family 6 Patents Joint Claim Construction Chart filed on August 23, 2017 is reflected above.

13

directly on the Family 6 patent specification, one of ordinary skill in the art at the time of the alleged invention would have understood "interleaver parameter value" to mean the numerical value, in codewords, of the interleaver depth. *Id*. at ¶ 61.

Plaintiff does not dispute the fact that the Family 6 patents themselves state that "D is the interleaver depth in number of codewords." A10 ('835 patent) at 2:13-14; A_ (Jacobsen Decl.) at ¶¶ 32, 63. That statement from the specification is not simply illustrative. It defines the interleaver depth parameter in this context of the Family 6 patents.

### 2. Plaintiff's Proposal Is Not Based on the Specification

Defendants' proposed construction is correct because it indicates that an interleaver depth is expressed in codewords. In arguing the contrary, Plaintiff abandons the intrinsic record and relies solely on what one of ordinary skill in the art could potentially have gleaned from the 228-page version of the G.993.1 VDSL standard dated June 2004. A_ (Chrissan Decl.) at ¶ 19; (Opening Br.) at 1 ("systems described by . . . the VDSL series of ITU G.993.x standards (*e.g.*, . . . ITU-T Recommendations G.993.1 (06/2004) (hereinafter 'G.993.1')), which are incorporated into the Family 6 Patents by reference, use a multicarrier communication scheme").

It is established that "incorporation by reference has a home in patent cases provided that any reference made is to that which is available to the public." *General Elec. Co. v. Brenner*, 407 F.2d 1258, 1262 (D.C. Cir. 1968). The June 2004 version of the G.993.1 Recommendation was merely *approved* in June of 2004. A_ (Jacobsen Decl.) at ¶ 19. However, it was not *released to the public* until October 24, 2005, well after the filing date of the '842 parent application and also after the publication date of the '842 parent application. *Id*. Accordingly, the June 2004 version of G.993.1 would not have been available to a person of ordinary skill in the art as of the filing date of the '842 parent application and was, consequently, not incorporated by reference in the '842 application. *Id*. at ¶ 20. As the applications that matured into the '835

14

and '162 patents were continuation applications claiming priority to the '842 parent application, and continuation applications cannot add new matter, the June 2004 version of G.993.1 was also not incorporated by reference in either of the asserted Family 6 patents. *Id*. Accordingly, Plaintiff's reliance on the June 2004 version of G.993.1 to contradict the explicit disclosures of the Family 6 patents is inappropriate. A_ (Jacobsen Decl.) at ¶ 20, 64. Nevertheless, even the June 2004 version of G.993.1 states that the interleaver depth has units of number of codewords: "The interleave depth shall be programmable with a maximum interleave depth of 64 codewords." A_ (G.993.1 VDSL Standard) at § 8.4.1; A_ (Jacobsen Decl.) at ¶¶ 32 and 64.

Moreover, Plaintiff argues that "interleaver depth is simply a number that defines, per the DSL standards, how the byte position of the input blocks will be delayed (and therefore, spaced apart) in the interleaved output." This argument is without basis as Plaintiff does not appear to contend that the asserted claims are limited to just DSL, and the claims themselves are not so limited. A_ (Jacobsen Decl.) at ¶ 66.

### 3. The Family 6 Patents Do Not Disclose Convolutional Interleavers and Deinterleavers

Plaintiff's wholly extrinsic explanation of a convolutional interleaver cannot overcome the specification's plain statement that an interleaver depth is a number of codewords. Plaintiff's only basis for disputing the point is its expert's explanation of a convolutional interleaver, but contrary to Plaintiff's assertion, a person of ordinary skill in the art would not conclude that the Family 6 patents necessarily contemplate a convolutional interleaver and deinterleaver, as the term "convolutional" does not appear in the specification. A_ (Jacobsen Decl.) at ¶ 66. Furthermore, the Family 6 patents do not even mention one of the two (and only two) parameters that Plaintiff's expert contends define the operation of a convolutional interleaver. A_ (Jacobsen Decl.) at ¶ 31. Plaintiff's argument that the Family 6 patents are somehow limited to ADSL or

A_ (Jacobsen Decl.) at ¶ 93. Therefore, the claims do not require any protocol at all, much less "the same protocol" in the transmitter and receiver. *Id*.

The phrase "pre-defined FEC codeword boundary" appears only once in entire the written description, in a sentence that, to one of ordinary skill, describes only a desired result, but not a way to achieve it in embodiments using flag signals. A_ ('835 patent) at 12:8-11; A_ (Jacobsen Decl.) at ¶ 94.

One of ordinary skill in the art would not understand the scope of the invention because he or she would not have been able to identify the "pre-defined forward error correction codeword boundary" with any certainty and therefore he or she would not have understood the term "the switching occurs on a pre-defined forward error correction codeword boundary." *Id*. at ¶ 95. Accordingly, this term and asserted claims 8 and 9 of the '162 patent are indefinite.

## VI. CONCLUSION

For the foregoing reasons, the Court should adopt Defendants' proposed constructions.

Dated: October 18, 2017                Respectfully submitted,

/s/ *Colm F. Connolly*
Colm F. Connolly (DSBA 3151)
Jody C. Barillare (DSBA 5107)
**MORGAN LEWIS & BOCKIUS LLP**
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, Delaware 19801
Telephone: 302.574.3000
Facsimile: 302.574.3001
*cconnolly@morganlewis.com*
*jbarillare@morganlewis.com*
Attorneys for Defendant 2Wire, Inc.

/s/ *James S. Green*
James S. Green (DSBA 0481)
**SEITZ, VAN OGTROP & GREEN, P.A.**
222 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone:  302.888.0600
Facsimile:  302.888.0606
*jgreen@svglaw.com*
Attorneys for Defendant Zhone Technologies, Inc.


/s/ *Kenneth L. Dorsney*
Kenneth L. Dorsney (DSBA 3726)
**MORRIS JAMES LLP**
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone:  302.888.6800
Facsimile:  302.571.1750
*kdorsney@morrisjames.com*
Attorneys for Defendants ZyXEL Communications Inc.
and ZyXEL Communications Corporation
Attorneys for Defendant and Plaintiff Adtran, Inc.

31