# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>       *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>       *Defendants*. | Civil Action No.: 2:21-cv-310-JRG<br><br>JURY TRIAL DEMANDED |

**COMMSCOPE'S OPPOSITION TO TQ DELTA, LLC'S MOTION TO STRIKE
THE INVALIDITY REPORT OF MARK LANNING (DKT. 338)**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. APPLICABLE LAW ........................................................................................................ 1

   A. Allowable Expert Opinions ................................................................................... 1

   B. The Use of Prior Art for Background Purposes .................................................... 2

III. ARGUMENT ................................................................................................................... 3

   A. Mr. Lanning's Opinions in His Report Are Based on the Court's Construction of the Claim Term "SNR Margin" ............................................................................. 3

   B. Mr. Lanning's Reliance on the Cited References .................................................. 5

      1. The Background References ...................................................................... 6

      2. The Nokia-Elected Prior Art ...................................................................... 7

IV. CONCLUSION ................................................................................................................ 8

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allergan Inc. v. Teva Pharms. USA, Inc.*,
  No. 2:15-cv-1455, 2017 U.S. Dist. LEXIS 225041 (E.D. Tex. Aug. 13, 2017) ..................... 2, 3

*Arthrex, Inc. v. Smith & Nephew*,
  No. 2:15-cv-01047-RSP, 2016 U.S. Dist. LEXIS 203781 (E.D. Tex. Nov. 30, 2016) ............. 6

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................................................ 2

*Eiland v. Westinghouse Elec. Corp*,
  58 F.3d 176 (5th Cir. 1995) .................................................................................................... 1

*Powers v. Union Pac. RR*,
  No. 07-cv-212, 2009 U.S. Dist. LEXIS 22131 (E.D. Tex. Mar. 19, 2008) .............................. 2

*United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*,
  80 F.3d 1074 (5th Cir. 1996) .................................................................................................. 2

**RULES**

Local Patent Rule 3-3 ................................................................................................................ 3, 7

Local Patent Rule 3-3(a) ................................................................................................................ 2

Federal Rule of Evidence 702 ................................................................................................... 1, 2

## TABLE OF EXHIBITS[1]

| Exhibit No. | Description |
|---|---|
| Ex. F | Excerpt of Deposition Transcript of Mark R. Lanning, dated December 2, 2022 ("Lanning Deposition"). |
| Ex. G | Excerpt of Appendix B to Opening Expert Report of Mark R. Lanning on the Invalidity of the Asserted Claims of the Family 10 Patents (U.S. Patent Nos. 9,154,354; 8,937,988). |
| Ex. H | Excerpt of CommScope's Preliminary Invalidity Contentions. |
| Ex. I | Exhibit F10-354D Invalidity of U.S. Patent based on Peeters. |
| Ex. J | Exhibit F-04 to Defendants' Invalidity Contentions: Comparison of U.S. Patent No. 9,154,354 and Cai. |
| Ex. K | Excerpt of Expert Rebuttal Report of Arthur Brody, Ph.D., Regarding Validity of the Family 10 Patent. |

---

[1] For simplicity, Exhibits A–E reference those cited in and attached to TQ Delta's opening motion (Dkt. No. 338).

I.   INTRODUCTION

TQ Delta attempts to strike the entirety of one of CommScope's technical expert reports based on a self-serving (and incorrect) understanding of that expert's *deposition testimony*—not the opinions actually expressed in his report. Specifically, TQ Delta alleges that Mr. Lanning used an improper claim construction of the term "SNR margin" *in his deposition* in response to questions from **TQ Delta's counsel**. To be clear, TQ Delta does not identify any specific misinterpretation or misapplication of the term in his report, yet now asks this Court to strike the entirety of that report. Regardless, TQ Delta's interpretation of Mr. Lanning's deposition testimony is itself incorrect, as Mr. Lanning made clear repeatedly that, "I want to be very clear, I have taken the Court's construction and used it in all of my analysis. . . . I've used it word for word." Ex. F (Lanning Deposition) at 86:2–12. TQ Delta has not identified any basis for striking Mr. Lanning's testimony based on the claim constructions used in his analysis and opinions.

TQ Delta also seeks to strike hundreds of paragraphs of Mr. Lanning's report based on a misapprehension of Mr. Lanning's use of certain references in his report. Mr. Lanning identifies several references as background and indicative of the state of the art, not as grounds for invalidating the asserted claims. Accordingly, CommScope respectfully requests that TQ Delta's Motion to Strike Mr. Lanning's opinions should be denied.

II.   APPLICABLE LAW

A.   **Allowable Expert Opinions**

A court has wide latitude in determining the admissibility of expert testimony. *See, e.g., Eiland v. Westinghouse Elec. Corp*, 58 F.3d 176, 180 (5th Cir. 1995). Rules 702–704 of the Federal Rules of Evidence govern the admissibility of such testimony. Rule 702 states that an expert witness may provide opinion testimony if:

> (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is

1

based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  When codifying the *Daubert* standard in Rule 702, the drafters recognized that "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule":

> *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). . . . As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

2000 Advisory Comm. Notes to Fed. R. Evid. 702 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)).  This Court has routinely cited this principle in rejecting attempts, like TQ Delta's, that seek to invoke the "exception rather than the rule" on expert testimony.  *See, e.g.*, *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996) (citing "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" as the "traditional and appropriate means of attacking" expert testimony and emphasizing "proper deference to the jury's role as the arbiter of disputes between conflicting opinions") (quoting *Daubert*, 509 U.S. at 596); *Powers v. Union Pac. RR*, No. 07-cv-212, 2009 U.S. Dist. LEXIS 22131, at *3 n.3 (E.D. Tex. Mar. 19, 2008) (same).

### B. The Use of Prior Art for Background Purposes

Pursuant to Local Patent Rule 3-3(a), a party's invalidity contentions must contain "[t]he identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious." "[T]he language of the Rule makes clear that only the reference or references that are anticipatory are required to be disclosed.  The Rule plainly does not require the disclosure of other references that may provide evidentiary support for the anticipation defense." *Allergan Inc. v. Teva Pharms. USA,*

2

*Inc.*, No. 2:15-cv-1455, 2017 U.S. Dist. LEXIS 225041, at *12 (E.D. Tex. Aug. 13, 2017). Moreover, the portion of Local Patent Rule 3-3 pertaining to obviousness "does not expressly, or by implication, require the production of all evidence that may be relevant in any way to the issue of obviousness, such as background evidence going to the state of the art at the time of the invention or evidence bearing on any secondary considerations that the patentee may invoke to help rebut the defendant's obviousness case." *Id.* at *12–13. In the *Allergan* case, Judge Bryson analyzed this Court's long-standing and consistent approach to this issue and, relying on that approach, rejected the plaintiff's attempt to strike all mentions of background references. *Id.* at *15–17, *28–29.

## III.   ARGUMENT

### A.   Mr. Lanning's Opinions in His Report Are Based on the Court's Construction of the Claim Term "SNR Margin"

Mr. Lanning relies on and applies the Court's construction of the term "SNR margin" in developing the opinions in his Report. Mr. Lanning reviewed the parties' claim construction briefing and the Court's Claim Construction Order in developing the opinions within the Report. Ex. C ¶ 18 ("In developing my opinions, I have considered . . . the parties' claim construction briefing and the Court's claim construction order . . . ."); *id.* ¶ 30 ("My opinions are based on the Court's constructions . . . ."); *id.* ¶ 117 ("I have reviewed the Court's Claim Construction Memorandum and Order, issued on June 8, 2022."); *see also* Ex. G. Specifically, Mr. Lanning relied on and recited the Court's construction of the claim term "SNR margin":

> a parameter used in determining the number of bits allocated to each of a plurality of carriers, where the value of the parameter specifies an extra SNR requirement assigned per carrier in addition to the SNR required to maintain a specified bit error rate (BER) for the communication link at a specified bit allocation.

Ex. C ¶ 117; *see also* Claim Construction Memorandum and Order, Dkt. No. 169 at 116. Mr. Lanning repeatedly and consistently applied the Court's claim construction of "SNR margin" to the prior art references in the Report. *See, e.g.*, Ex. C ¶¶ 282–83, 436–37, 638–39 (opining that

3

Kapoor prior art references meet the Court's definition for SNR margin). Notably, TQ Delta fails to point to any opinion in Mr. Lanning's Report that is *based on* any improper interpretation of the claim term "SNR margin." And for good reason—Mr. Lanning consistently and properly applied this Court's construction.

Rather, TQ Delta takes Mr. Lanning's deposition testimony out of context to contend that he impermissibly interpreted "SNR margin." Specifically, TQ Delta asserts that, because Mr. Lanning would not agree that certain columns in the specification were the same as the Court's construction, he thus could not have applied the proper construction. Dkt. No. 338 at 10. Such an assertion is contrary to the law. TQ Delta essentially suggests that Mr. Lanning should have interpreted the claim himself based on the specification rather than rely on the Court's construction. But Mr. Lanning properly explained that the columns of the patent specification identified by TQ Delta's questioning counsel "aren't clearly the same as the Court's construction," "[s]o [he] followed the Court's construction for [his] analysis." Ex. F at 139:22–25.

The questions posed to Mr. Lanning during his deposition did not focus on the Court's claim construction. Instead, TQ Delta's questioning counsel attempted to manufacture this claim construction dispute by repeatedly asking Mr. Lanning to apply a claim construction of "SNR margin" based on certain language in the patent, and not this Court's construction. *See id.* at 124:8–10 ("Q: So sitting here today, you don't have an opinion if the prior art discloses the type of SNR margin described in Columns 1 and 2 of our patent?"); *id.* at 139:16–19 ("Q: But sitting here today, you haven't provided an opinion that the product discloses the type of SNR margin described in Column 1 and 2 of the patent, correct?"). Despite this, Mr. Lanning was consistent in his use and application of the Court's construction. When Mr. Lanning was first asked about "SNR margin" in his deposition, he stated: "[T]he Court has given us a specific construction for that. So I would say the SNR margin is what the Court has construed it to be." *Id.* at 55:15–17. In fact, TQ Delta itself

4

quotes Mr. Lanning's deposition transcript where he stated, "I followed the court's construction for my analysis," in support of its illogical position that Mr. Lanning did not properly use the Court's claim construction. Dkt. No. 338 ("Motion") at 10; *see also* Ex. F at 139:24–25. Further, Mr. Lanning emphasized the point on his own: "I want to be very clear, I have taken the Court's construction and used it in all of my analysis. . . . I've used it word for word." Ex. F at 86:2–12. TQ Delta thus attempts to manufacture a claim construction dispute based entirely on its own, self-serving *interpretation* of Mr. Lanning's deposition testimony, set up by questions from TQ Delta's counsel focused not on this Court's construction, but on columns of the patent specification.

In sum, Mr. Lanning properly relied on and applied the Court's claim construction of the claim term "SNR margin" in developing the opinions in his report—and his trial testimony will similarly apply the Court's construction. As a result, Mr. Lanning did not engage in impermissible claim interpretation. Because the opinions in Mr. Lanning's Report are not based on impermissible claim construction, the Court should deny TQ Delta's motion to strike.

### B. Mr. Lanning's Reliance on the Cited References

TQ Delta also requests that this Court strike portions of Mr. Lanning's report where he allegedly relied on unelected art to demonstrate that the claims of the asserted patents are invalid. In fact, Mr. Lanning fairly relies on the art (the Peeters and Cai references) in his invalidity report. The hundreds of paragraphs that TQ Delta seeks to be stricken can be broken into two categories: (1) those used as background references to show the state of the art (the first sentence of ¶ 72; the citations to Peeters and Cai in ¶ 80; all but the first sentence of ¶ 89; and the first sentence of, and the reference to Peeters in, ¶ 138 (collectively the "Background Paragraphs")); and (2) those addressing invalidity opinions on behalf of former-defendant Nokia (the portions of ¶ 23 that refer to Cai and Peeters, ¶¶ 141–316, ¶¶ 478–698, ¶¶ 957–1062, and the references to Cai and Peeters in ¶ 1068 (collectively the "Nokia Invalidity Paragraphs")). Mr. Lanning is permitted to rely on Peeters and Cai as

5

background references, and TQ Delta is not prejudiced should CommScope rely on Peeters and Cai as invalidating references for the reasons explained below.

### 1. The Background References

In each of the Background Paragraphs identified by TQ Delta, Mr. Lanning cites Peeters and Cai to establish: (1) background material that is relevant to the technology at issue; (2) the state of the art; (3) what one of ordinary skill in the art would have known at the time of the invention; (4) motivation or expectation of success with respect to an elected prior art combination; and/or (5) objective evidence of obviousness such as simultaneous invention. *See Arthrex, Inc. v. Smith & Nephew*, No. 2:15-cv-01047-RSP, 2016 U.S. Dist. LEXIS 203781, at *10 (E.D. Tex. Nov. 30, 2016). None of these references are relied on as anticipatory or obviousness art to the asserted patents, and none of them are used to "fill in gaps" in the prior art that Mr. Lanning does rely on for anticipation and obviousness. To be clear and leave no doubt, CommScope confirms that it will not rely on unelected prior art as a ground for invalidity.

TQ Delta complains about a number of paragraphs in Mr. Lanning's background section and alleges that his discussion of the Peeters and Cai references should be stricken because these references are "not mere 'background' references." Motion at 12. The references in the Background Paragraphs are appropriately used as background references in each instance, as demonstrated below:

| Background Paragraph | Expert Report | Permitted Use |
|---|---|---|
| the first sentence of ¶ 72 | "Cai uses the term 'subchannel(s); in its disclosure. *See e.g.*, Cai at Abstract." Ex. C ¶ 72. | Background |
| the citations to Peeters and Cai in ¶ 80 | "DMT is called 'Multi-Tone' because it splits the available frequencies into a defined number of smaller sub-channels or tones, and it is considered to be 'discrete' from the mathematical term meaning the subchannels tones are distinct or separate. Therefore, each subchannel or tone will only have one modulated symbol at any point in time. '354 Patent at 1:33-2:44; Cai at 1:18-62; Peeters at | Background |

| | 3:47-58, 5:50-6:15; Kapoor at 1:31-2:46; NOK00808435 at NOK00808435." Ex. C ¶ 80. | |
|---|---|---|
| all but the first sentence of ¶ 89 | "The ability to set a common margin was also well known prior to the priority date of the Family 10 Patents. As one example, Cai describes that it is 'typical practice to subtract a common margin, typically 6 dB, from the measured signal-to-noise ratio of each channel to obtain a transmission signal-to-noise ratio at which to achieve a bit error rate of approximately $10^{-7}$.' Cai at 1:44-48. Cai exemplifies this with the same margin shown on each channel in Fig. 1." Ex. C ¶ 89 (figure omitted). | Background |
| the first sentence of, and the reference to Peeters in, ¶ 138 | "Prior to April 18, 2000, it was known that SNR Margins could vary from carrier to carrier. *See e.g.*, Cai at 3:4-14; Peeters at 3:16-24, Figs. 4 and 5. Likewise, bit allocation was a well-known concept. *See e.g.*, Peeters at 3:16-24; Kapoor at 8:39-42, 10:36-46." Ex. C ¶ 138. | Establishing what one having ordinary skill in the art would have known at the time of the invention |

In no instance are the references mentioned in the Background Paragraphs used as a ground for invalidity. Instead, the art is relied on to demonstrate the background of the technology and to establish what one of ordinary skill in the art would have known at the time of the invention. In fact, paragraphs 72, 80, and 89 are located in the "Background of the Technology" section of Mr. Lanning's report. As such, Mr. Lanning's reference to Peeters and Cai in the Background Paragraphs do not run afoul of Local Rule 3-3, the Court's Narrowing Order, or any other applicable standard. Thus, Mr. Lanning may properly rely on those references for background purposes (as is explained in those Background Paragraphs).

### 2. The Nokia-Elected Prior Art

Mr. Lanning provided his expert report on behalf of both CommScope and Nokia. The Nokia Invalidity Paragraphs (which do not include the Background Paragraphs) address invalidity opinions based on Peeters and Cai—two references that Nokia elected as prior art. In the Motion, TQ Delta claims that including Peeters, Cai, and the TNETD8000 User Guide would exceed the twenty total references allowed under the Narrowing Order. Motion at 11. As an initial matter, the TNETD8000 User Guide relates to invalidity of the '988 patent, which TQ Delta dropped against CommScope

7

following the service of opening expert reports. Therefore, any discussion of the TNETD8000 User Guide is now moot. Further, CommScope's inclusion of Peeters and Cai as invalidity references remains within CommScope's allotted twenty prior art references.[2]

Still further, including these invalidity references does not prejudice TQ Delta, who has been aware of the Peeters and Cai references since CommScope served invalidity contentions on January 13, 2022. Ex. H; Ex. I (Peeters Invalidity Chart); Ex. J (Cai Invalidity Chart). The invalidity arguments related to Peeters and Cai were addressed in Mr. Lanning's opening report. And TQ Delta's rebuttal expert (Dr. Brody) addressed Peeters and Cai in his report. Ex. K (TQ Delta's Expert Rebuttal Report of Arthur Brody, Ph.D., Regarding Validity of the Family 10 Patent) ¶¶ 36–54, 104–180. TQ Delta even questioned Mr. Lanning about Peeters and Cai in his deposition. *See, e.g.*, Ex. F at 49:6, 51:16–19 ("Q: There were several other references: The Peeters reference and there was the Cai reference. Did you review those references?").

## IV.  CONCLUSION

For the reasons set forth above, CommScope respectfully requests that the Court deny TQ Delta, LLC's Motion to Strike the Invalidity Report of Defendants' Expert, Mark Lanning.

Dated this 6th day of January, 2023

Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Ste. B
Tyler, TX 75703
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

---

[2] CommScope had elected only eighteen prior art references in its final election, and so including Peeters and Cai remains within the twenty-reference allotment.

Douglas J. Kline
Lana Shiferman
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
P: (617) 570-1000
F: (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P: (415) 733-6000
F: (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Email: *ross.barton@alston.com*
*scott.stevens@alston.com*
*kirk.bradley@alston.com*
*stephen.lareau@alston.com*
*karlee.wroblewski@alston.com*
*nic.marais@alston.com*
*erin.beaton@alston.com*

9

*mary.riolo@alston.com*
Telephone: 704-444-1000
Facsimile: 704-444-1111

Katherine G. Rubschlager (Cal. Bar No. 328100)
ALSTON & BIRD LLP
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
Email: *katherine.rubschlager @alston.com*
Telephone: 650-838-2004
Facsimile: 650-838-2001

***Attorneys for Defendants
CommScope Holding Company, Inc,
CommScope Inc., ARRIS US Holdings, Inc.,
ARRIS Solutions, Inc., ARRIS Technology,
Inc., and ARRIS Enterprises, LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of January, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing upon Counsel of Record.

                                                          /s/*Eric H. Findlay*
                                                         Eric H. Findlay