# EXHIBIT F

**MARK REID LANNING - 12/2/2022**

```
 1  I believe are relement (phonetic) -- relevant for each
 2  element.
 3       Q.   And you reviewed the Kapoor reference?
 4       A.   Yes.
 5       Q.   There were several other references:  The
 6  Peeters reference and there was the Cai reference.
 7            Did you review those references?
 8       A.   I scanned those, and then I had some questions
 9  in my mind about which references were relevant for
10  today's deposition.  I did look through the Peeters
11  reference I recall, and then I moved on to just the
12  references that were relevant for today's deposition.
13       Q.   In prep -- in preparing these reports, or
14  actually in connection with this case, did you speak to
15  Krista Jacobsen ever?
16       A.   Are you asking me if I talk -- sorry, the
17  Internet --
18       Q.   Did you --
19       A.   -- every once in a while has a problem.
20       Q.   In preparing these expert reports of yours or
21  actually since you were working on this case, did you
22  ever speak to a Ms. Krista Jacobsen?
23       A.   Not that I recall, no.
24       Q.   Okay.  Did you speak to Dr. Chow?
25       A.   No, I know I didn't speak to Dr. Chow.
```

MARK REID LANNING - 12/2/2022

```
 1        A.    I think that's correct.
 2        Q.    And the attorneys provided the Chow reference
 3   to you?
 4        A.    Yes.
 5        Q.    And the attorneys provided the Kapoor
 6   reference to you?
 7        A.    They may have, but I -- I recall finding
 8   multiple Kapoor references and looking at those and then
 9   having a discussion of which one would be the best one
10   to use.
11        Q.    Okay.
12        A.    So I -- I can't say for sure, the one that we
13   used, whether I found it, whether someone else did, but
14   I do recall there were multiple Kapoor references that I
15   found.
16        Q.    And how about the Peeters reference, did --
17   did the attorneys give you that reference?
18        A.    Which reference?
19        Q.    Peeters.
20        A.    I'm thinking it would be similar to Kapoor.  I
21   -- I'm thinking that there were multiple Peeters
22   references that I found, and it was a matter of
23   resolving which prior art reference would be used.  And
24   I may have received that one from the attorneys.  I just
25   don't know which one of the multiple ones I found and
```

MARK REID LANNING - 12/2/2022

```
 1      A.   Okay.  I understand.
 2      Q.   Okay.
 3      A.   Again, every once in a while, the Internet
 4  just breaks up.  I don't know if it's coming from your
 5  end or whatever, and that's why --
 6      Q.   Right.
 7      A.   -- I have to fill in some blanks there.  Okay.
 8      Q.   Yes.  And as -- as you, perhaps, well know, an
 9  SNR margin is selected to establish what kind of bit
10  error rate you want in the system, correct?
11           MR. ONG:  Objection, form.
12      A.   Again, I'm very, very careful with the words
13  you're using.  So now you used the words "SNR margin" in
14  your question.
15           And the SNR margin, the Court has given us
16  a specific construction for that.  So I would say the
17  SNR margin is what the Court has construed it to be.
18      Q.   (BY MR. CHIPLUNKAR)  Yes.  And maybe it -- it
19  would be helpful if I send you a report and we look at
20  the court's construction.
21           Would that be helpful?
22      A.   For me to answer any questions specifically
23  about SNR margin, yes.
24           MR. ONG:  While we do that, Kelly, is
25  there a Realtime for this?
```

MARK REID LANNING - 12/2/2022

1   on a carrier -- bits on a subcarrier, and the numbers
2   can, when decreasing, can go from 2 to 0 or from 0 to 2
3   is the one option they give.
4        Q.   But when you change one carrier from 2 to 0,
5   you've got to increase it from -- you've got to increase
6   it by 2 on the other -- on another carrier, correct?
7        A.   You'll need to show me where it says that.  I
8   think this is just declaring that the subcarrier is
9   changing and doesn't have anything to do with increasing
10  anywhere else.
11       Q.   Okay.  Now, the bit swap described here,
12  you've not relied on the bit swap here for your
13  invalidity opinions, correct?
14       A.   Again, I don't recall relying on anything in
15  these two documents that you've just produced.
16       Q.   Okay.
17       A.   For invalid -- invalidity of the claim.
18       Q.   Okay.  Now, I'm not sure if -- so we were
19  looking at the Court's construction of SNR margin,
20  right, and -- and -- and you said -- I won't put words
21  in your mouth, but you -- to paraphrase what you said,
22  you said it's an extra SNR margin.
23            So you have an existing SNR margin in the
24  system, and then it's an extra added SNR margin?
25       A.   Well, and that's not exactly what I said.

```
 1       Q.   Yeah, so --
 2       A.   But frankly, I was reading -- they say
 3   additional I believe is the word the Court uses, but I
 4   want to be very clear, I have taken the Court's
 5   construction and used it in all of my analysis.
 6              In other words, I -- I don't want to get
 7   into a -- paraphrasing their construction.  I've used it
 8   word for word.  I think the word they use is an
 9   additional -- in addition to the bit error rate margin,
10   right?
11              But, again, I've used the Court's
12   construction.
13       Q.   Yeah.  So if you want to look at the Court's
14   construction and -- and...
15       A.   We looked at it earlier.  It was right in the
16   table.
17       Q.   Yeah.  It's -- it's in -- it's in paragraph
18   117, sir, if that helps.
19       A.   Oh, I wasn't back far enough then.  Okay.
20       Q.   That would be paragraph 117 of Exhibit 8.
21       A.   Wait a minute.  You said paragraph 110 of my
22   report.
23       Q.   117, sorry.  117.
24       A.   Here it is.  And, right, it -- I'm -- I'm
25   reading it and it requires an addition.  This
```

1  requirement assigned per carrier in addition to the SNR
2  requirement to maintain a specified bit error rate.
3              So I'm just -- that's why instead of extra
4  or whatever, it uses in addition to.  So the first thing
5  that needs to be established is the bit error rate
6  margin to establish and maintain a specific bit error
7  rate and then it needs to be a margin on top of that or
8  in addition to that.
9      Q.   So you interpreted the Court's construction to
10 have a bit error rate margin and then added to that an
11 SNR -- an extra margin?  That's how you interpreted the
12 Court's construction?  I just want to understand.
13             MR. ONG:  Objection, form.
14     A.   We need to start with the beginning of the
15 construction or the construed term.  It says, "a
16 parameter used in determining the number of bits
17 allocated to each of the plurality carriers."
18             So what we're -- I'm going to stop there
19 and explain what I interpret there.  This is regarding
20 bit allocation or bit loading, it's sometimes referred
21 to, right?
22             So in order for the transmitter to
23 understand how many bits it's going to apply per symbol,
24 it needs to look at a value of a parameter that
25 specifies an extra SNR requirement assigned per carrier

MARK REID LANNING - 12/2/2022

1  combination of Kapoor and Chow that I've used, and I've
2  been very careful to map the claims that include the
3  term SNR margin to the Court's construction of SNR
4  margin.
5      Q.   So would it surprise you if I told you that
6  the Court's construction of SNR margin does not appear
7  anywhere in your analysis of the prior art?
8      A.   That's not true at all.  I have it at least
9  three times that I've applied it.
10     Q.   Okay.
11     A.   And multiple times.  I strongly disagree with
12 that.
13     Q.   Okay.
14     A.   This is a lesson that I've learned -- let me
15 finish.  This is a lesson I learned many years ago, that
16 you apply -- as an expert, you apply the Court's
17 construction.
18          That's what I'm trying to explain many
19 times to you is I will not go away or try to change the
20 Court's construction, and I have mapped the Court's
21 construction to each one of the claims as I've analyzed
22 them.
23     Q.   Okay.  If you could go to Exhibit 3 of your
24 report.
25     A.   Okay.

**MARK REID LANNING - 12/2/2022**

```
 1      Q.   So -- so you -- before we get into your
 2   opinions regarding the prior art, so you agree that the
 3   prior art does not disclose the type of SNR margin
 4   described in Columns 1 and 2 of our patent, correct?
 5      A.   I haven't made that analysis.  I agree and I
 6   provided analysis that the prior art that I've used
 7   meets the Court's construction for SNR margin.
 8      Q.   So sitting here today, you don't have an
 9   opinion if the prior art discloses the type of SNR
10   margin described in Columns 1 and 2 of our patent?
11      A.   I didn't even consider that because the Court
12   gave us a clear construction.
13           Why do you keep asking me this question?
14   I'm going to keep answering it the same way.  I have --
15   I've been in Judge Gilstrap's court many times.  It
16   doesn't matter what court it is.
17           But I am very clear and I'll continue to
18   be very clear that I am following the Court's
19   construction for SNR margin.  I'm not trying to compare
20   it.  I'm not trying to contrast it to any other
21   definition.  I've simply mapped what the Court says it
22   is and I've gone with it in my analysis, and I haven't
23   varied in any way.
24      Q.   Okay.  Can we go to Section -- can we go to
25   paragraph 29?
```

MARK REID LANNING - 12/2/2022

```
 1  Mr. Lanning.  Before we proceed, did you speak with
 2  anybody regarding your deposition testimony today?
 3       A.   No, nothing about my deposition.
 4       Q.   Okay.  If you could turn to Exhibit 1, which
 5  is the patent, and look at Columns 1 and 2.
 6       A.   Okay.  I've got 1 and 2 open.
 7       Q.   Yeah.  So -- so now, you agree with me that
 8  Chow does not dis -- disclose the type of SNR margin
 9  described in Columns 1 and 2 of the patent, correct?
10            MR. ONG:  Objection, form.
11       A.   As we've gone over many times, I believe Chow
12  discloses the claims as they've been -- as SNR margin
13  has been construed by the Court, and I've included my
14  analysis, starting at Element 10.C for the first margin,
15  and continued on with 10.D for the second margin.
16       Q.   (BY MR. CHIPLUNKAR)  But sitting here today,
17  you haven't provided an opinion that the product
18  discloses the type of SNR margin described in Column 1
19  and 2 of the patent, correct?
20            MR. ONG:  Objection, form.
21       A.   I have included the analysis.
22            Whether I understand what those columns
23  say, but those columns aren't clearly the same as the
24  Court's construction.  So I followed the Court's
25  construction for my analysis.
```