**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TQ DELTA, LLC, | |
| *Plaintiff,* | |
| v. | Civil Action No.: 2:21-cv-310-JRG |
| COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC, | |
| *Defendants.* | |

**COMMSCOPE'S OPPOSITION TO TQ DELTA, LLC'S MOTION
FOR SUMMARY JUDGMENT ON FAMILIES 2, 3, 6, AND 9B (Dkt. No. 348)**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   COUNTERSTATEMENT OF ISSUES .................................................................2

III.  COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS ....................2

IV.   LEGAL STANDARD ............................................................................................7

V.    ARGUMENT .........................................................................................................8

     A.    TQ Delta Waived Res Judicata. ................................................................8

     B.    There Is No Final Judgment in the Delaware Action. ..............................11

     C.    TQ Delta Has Not Established That the Issues in This Case Are Identical to Issues Actually Litigated in Delaware. .....................................................13

     D.    Preclusion Would Be Unfair and Imprudent in This Case. ......................15

VI.   CONCLUSION ....................................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acumed LLC v. Stryker Corp.*,
    525 F.3d 1319 (Fed. Cir. 2008)................................................................7, 11

*Allen v. McCurry*,
    449 U.S. 90 (1980)....................................................................................16

*Avondale Shipyards, Inc. v. Insured Lloyd's*,
    786 F.2d 1265 (Fed. Cir. 1986)........................................................7, 12, 13

*Benson & Ford, Inc. v. Wanda Petroleum Co.*,
    833 F.2d 1172 (5th Cir. 1987) ...................................................................16

*Blankenbaker v. United Transp. Union*,
    878 F.2d 1235 (10th Cir. 1989) ...................................................................8

*Caldera v. Northrop Worldwide Aircraft Services, Inc.*,
    192 F.3d 962 (Fed. Cir. 1999).....................................................................8

*Care, Ltd. v. Jackel Int'l Ltd.*,
    No. 3:18-CV-00534, 2022 WL 4597823 (W.D. La. 2022)............................15

*Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.*,
    No. A-03-CA-754-SS, 2006 WL 1544621 (W.D. Tex. May 31, 2006) ................16

*Cycles, Ltd. v. Navistar Fin. Corp.*,
    37 F.3d 1088 (5th Cir. 1994) ......................................................................11

*Dana v. E.S. Originals, Inc.*,
    342 F.3d 1320 (Fed. Cir. 2003).............................................................7, 11, 12

*Ericsson Radio Sys., Inc. v. InterDigital Commc'ns Corp.*,
    No. CIV.A. 3:93-CV-1809-H, 1999 WL 288683 (N.D. Tex. May 4, 1999) ..........8, 12, 13, 14

*Fresenius USA, Inc. v. Baxter Intern., Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013)............................................................12, 13

*Hacienda Records, L.P. v. Ramos*,
    718 Fed. Appx. 223 (5th Cir. 2018).............................................................11

*Henry v. First Nat. Bank of Clarksdale*,
    595 F.2d 291 (5th Cir. 1979) ..................................................................1, 8

*Hicks v. Quaker Oats Co.*,
    662 F.2d 1158 (5th Cir. 1981) ....................................................................12

ii

*J.R. Clearwater Inc. v. Ashland Chem. Co.*,
    93 F.3d 176 (5th Cir. 1996) ........................................................................................11, 13

*Kariuki v. Tarango*,
    709 F.3d 495 (5th Cir. 2013) ...................................................................................8

*Mozingo v. Correct Mfg. Corp.*,
    752 F.2d 168 (5th Cir. 1985) ...................................................................................8

*N.Y. Life Ins. Co. v. Gillispie*,
    203 F.3d 384 (5th Cir. 2000) ...................................................................................7

*Pace v. Bogalusa City Sch. Bd.*,
    403 F.3d 272 (5th Cir. 2005) ...................................................................................7

*Paice LLC v. Toyota Motor Corp.*,
    No. 2:07-cv-180-DF, 2009 U.S. Dist. LEXIS 137132 (E.D. Tex. July 8, 2009)................7, 11

*Peterson v. Highland Music, Inc.*,
    140 F.3d 1313 (9th Cir. 1998) .............................................................................9, 10

*Phil-Insul Corp. v. Airlite Plastics Co.*,
    854 F.3d 1344 (Fed. Cir. 2017)............................................................................13, 14

*Roche Palo Alto LLC v. Apotex, Inc.*,
    531 F.3d 1372 (Fed. Cir. 2008)...............................................................................14

*Russell v. SunAmerica Sec., Inc.*,
    962 F.2d 1169 (5th Cir. 1992) .................................................................................8

*Shango v. Jurich*,
    No. 74 C 3598, 1989 WL 75446 (N.D. Ill. June 27, 1989), *aff'd*, 965 F.2d 289 (7th
    Cir. 1992) ............................................................................................................8

*Soverain Software LLC v. Victoria Secret Direct Brand Mgmt.*,
    778 F.3d 1311 (Fed. Cir. 2015)...............................................................................7

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
    No. 6:15-CV-00551-RWS, 2019 WL 2757243 (E.D. Tex. Apr. 16, 2019)............................8

*TQ Delta, LLC v. 2Wire, Inc.*,
    No. 1:13-cv-1835-RGA (D. Del.) ................................................................. *passim*

*U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas*,
    944 F.2d 253 (5th Cir. 1991) ...................................................................................8

*Vines v. University of Louisiana at Monroe*,
    398 F.3d 700 (5th Cir. 2005) ...................................................................................7

*Watts v. XL Systems, L.P.*,
  No. CIV.A. 1:06-CV-653-LY, 2008 WL 5731945 (W.D. Tex. July 2, 2008) .......................16

*White v. World Finance of Meridian, Inc.*,
  653 F.2d 147 (5th Cir. 1981) ...................................................................................................7

**Statutes**

28 U.S.C. § 1291 .......................................................................................................................11, 12

35 U.S.C. § 286 ..............................................................................................................................15

**Other Authorities**

F.R.C.P. 8(c) ....................................................................................................................................8

Restatement (Second) of Judgments § 13(b) (1982) ................................................................12, 13

18A Wright, Miller, & Cooper, Fed. Prac. & Proc. § 4432 (3d ed.) ............................................13

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| Ex. 1 | Final Scheduling Order in *TQ Delta, LLC v. 2Wire, Inc.*, No. 13-cv-1835-RGA ("*2Wire*"), Dkt. No. 513, dated April 10, 2018 |
| Ex. 2 | Jury verdict form for the Family 2 trial in *2Wire*, Dkt. No. 1271, dated January 16, 2020 |
| Ex. 3 | Jury verdict form for the Family 3 trial in *2Wire*, Dkt. No. 1187, dated May 23, 2018 |
| Ex. 4 | Order granting summary judgment of infringement on the Family 6 patent in *2Wire*, Dkt. No. 1568, dated June 28, 2021 |
| Ex. 5 | Court's oral order in *2Wire*, Dkt. No. 1045, dated April 2, 2019 |

## I.      INTRODUCTION

Eight years into its litigation against 2Wire, Inc. in the District of Delaware, TQ Delta made the tactical decision to file this suit in August 2021 against CommScope—which had acquired 2Wire through its acquisition of ARRIS—accusing both 2Wire and non-2Wire products of patent infringement.  Intent on avoiding a transfer to Delaware, TQ Delta made no mention in its pleadings of the verdicts and orders it had obtained in the Delaware Action—much less any assertion that they might be preclusive of claims and issues in this case.  Instead, TQ Delta affirmatively represented to this Court that this case involves "*different* parties, *different* patents, *different* product lines, and *different* standards."  Dkt. No. 89 at 2 (emphasis added).  Now, just a few months before trial and after completing fact and expert discovery directed to the merits of the parties' claims, TQ Delta asserts for the first time that res judicata precludes this Court from adjudicating the validity and infringement of most of the claims at issue based entirely on interlocutory verdicts and orders issued in Delaware before this suit was filed.

TQ Delta's untimely assertion should be rejected for at least four reasons.  *First*, TQ Delta forfeited and waived its res judicata arguments by failing to timely plead them and by affirmatively distinguishing the issues in this case from those in Delaware when it opposed transferring this case to that court.  *Second*, the verdicts and partial summary judgment order in the Delaware Action are not appealable final judgments and thus cannot serve as the basis for issue or claim preclusion under Fifth Circuit law.  *Third*, the issues are not identical because this case indisputably involves different theories of infringement, different patent claims, and different accused products.  *Fourth*, the application of res judicata against CommScope here would be unfair and imprudent as CommScope only joined and acquired interest in the Delaware Action late into that litigation and has not had an opportunity to challenge the decisions there on appeal.  The development of a full

trial record on all issues in this case would avoid the need for a new trial on invalidity and infringement if, for example, aspects of the Delaware decisions are vacated on appeal.

Finally, TQ Delta's motion for summary judgment on validity of the Family 9b claim should be denied as moot as CommScope will not be presenting an invalidity case on that patent claim, and CommScope will stipulate to dismissal so long as TQ Delta agrees not to affirmatively raise the issue of validity at trial.

## II.      COUNTERSTATEMENT OF ISSUES

1.      Whether TQ Delta should be permitted to raise issue and claim preclusion defenses for the first time on summary judgment, when it failed to plead or otherwise disclose the defenses and when it previously represented to this Court that the issues in this case do not substantially overlap with those in the Delaware Action.

2.      Whether the verdicts and partial summary judgment orders in the Delaware Action are "final judgments" that have preclusive effect under Fifth Circuit law.

3.      Whether the infringement issues in this case are identical to those adjudicated in the Delaware Action.

4.      Whether the application of res judicata would be fair and prudent in this case.

## III.     COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS

Before responding to TQ Delta's Statement of Material Facts, CommScope sets forth additional material facts relevant to this motion.

1.      TQ Delta filed suit against 2Wire, Inc. in the District of Delaware on November 4, 2013. *TQ Delta, LLC v. 2Wire, Inc.*, No. 1:13-cv-1835-RGA (D. Del.) (the "Delaware Action").

2.      By the time CommScope acquired 2Wire (through ARRIS) on April 3, 2019, fact discovery, claim construction, expert discovery, and summary judgment briefing on liability issues

were substantially complete in the Delaware Action, and the parties were a little over a month from trial on the Family 2 patents.  Ex. 1 (Final Scheduling Order).

3.      Multiple trials on liability, damages, and 2Wire's affirmative defenses still need to be completed in the Delaware Action.  Judge Andrews in Delaware has not issued any appealable final judgment.  Ex. 5 (oral order bifurcating damages and liability issues).

4.      TQ Delta filed the instant case against CommScope in August 2021, after each of the jury verdicts on the Family 2 and Family 3 patents, and after the summary judgment order of infringement on the Family 6 patent in the Delaware Action had been entered.  Dkt. No. 1; Ex. 2 (Family 2 verdict form); Ex. 3 (Family 3 verdict form); Ex. 4 (Family 6 summary judgment order). The Complaint did not mention the Delaware Action or plead res judicata or collateral estoppel. *See* Dkt. No. 1.

5.      CommScope filed counterclaims seeking declaratory judgments of invalidity and non-infringement of the Family 2, 3, and 6 patents, among others.  TQ Delta's Answer to those counterclaims pleaded no affirmative defense of res judicata or collateral estoppel.  *See* Dkt. No. 35.

6.      TQ Delta also never raised res judicata or claim preclusion in its infringement contentions, interrogatory responses, or expert reports in this case.

7.      Claim 5 of U.S. Patent No. 8,276,048 (Family 3) and claim 23 of U.S. Patent No. 7,453,881 (Family 2) were not asserted at trial or summary judgment in the Delaware Action.

8.      The majority of the Accused Products in this case were not accused in the Delaware Action.

9.      The following Accused Products in this litigation were not acquired through 2Wire and were not accused in the Delaware Action: BGW-210; NVG44x; NVG589; NVG599.

CommScope responds to TQ Delta's Statement of Material Facts as follows:

1.     Rather than factual allegations, paragraph 1 contains statements from CommScope and the U.S. Patent Trials and Appeals Board that speak for themselves.

2.     In this case, CommScope is represented by additional counsel who were not involved in the Delaware Action, namely, attorneys from the law firm Alston & Bird LLP. Dkt. Nos. 326, 327, 328, 329, 330, 331, 332, 333, & 334.

3.     Mr. Shead was not CommScope's only 30(b)(6) representative in this case, he is only one of CommScope's 30(b)(6) witnesses in this case. .

4.     Paragraph 4 does not include statements of fact, but rather legal allegations made by TQ Delta.

5.     Rather than factual allegations, paragraph 5 contains statements about and quotations from filings and Orders that speak for themselves.

6.     TQ Delta has not proven that all the CommScope CPE products accused of infringement in this case use "the same or substantially identical Broadcom source code" as the chips accused in the Delaware Action.

7.     CommScope did not present Counterman in view of Djokovic to the jury at the Delaware trial.

8.     Rather than factual allegations, paragraph 8 contains statements about and quotations from filings and Orders that speak for themselves.

9.     TQ Delta has not proven that all the CommScope CPE products accused of infringement in this case use "the same or substantially identical Broadcom source code" as the chips accused in the Delaware Action.

10.     The LB-031 and Mazzoni references were not considered by the jury in the

Delaware Family 2 trial.  TQ Delta did not present Mazzoni in view of G.993.1 (VDSL1) or Fadavi-Ardekani in view of G.993.1 to the jury at the Delaware trial. CommScope has a different Family 3 expert than in the Delaware trial.

11.     Rather than factual allegations, paragraph 11 contains statements about and quotations from filings and Orders that speak for themselves.

12.     Rather than factual allegations, paragraph 12 contains statements about and quotations from filings and Orders that speak for themselves.

13.     Rather than factual allegations, paragraph 13 contains statements about filings and Orders that speak for themselves.

14.     CommScope disputes TQ Delta's statement that "CS was aware of these references well before the time it filed its IPRs," in paragraph 14.

15.     CommScope's validity expert on Family 9—Dr. McNair—presents a number of references that describe the state of the art at the time of the Asserted Patent that demonstrates what was already known in the art.  Fink Decl., Ex. 16, Section VII.

16.     CommScope does not agree that Dr. Cooklev's "opinions" described in paragraph 16 demonstrate that "the claims of the Family 9 patents are valid."

17.     CommScope disputes TQ Delta's bare assertion that for "Families 2, 3, and 6, the DE Case related to 2Wire products that comply with the G. bond standard (Family 2) and the VDLSL2 standard (Family 3 and Family 6)."

18.     Paragraph 18 is a statement of TQ Delta's allegations and assertions in this case, not a statement of undisputed fact.

19.     TQ Delta has not proven that the accused products in this case comply with the G. bond standard and the VDSL2 standard.

20.     TQ Delta bears the burden of infringement. Paragraph 20 is a statement of assertions in this case, not a statement of undisputed fact.

21–23. CommScope does not dispute the statements in paragraphs 21–23.

24.     CommScope disputes that the quoted characterization captures all differences between the BCM63168 and BCM63148 chips.

25.     TQ Delta has cited no evidence in support of this statement.  CommScope disputes that the expert opinions proffered by TQ Delta in this case are sufficient to establish beyond dispute the absence of substantial differences between the BCM63168 and BCM63148 in terms of how the chipsets are utilized in connection with implementing DSL functionality.

26.     TQ Delta has cited no evidence in support of this statement.  CommScope disputes that the expert opinions proffered by TQ Delta in this case are sufficient to establish beyond dispute that the relevant source code for the BCM63168 and BCM63148 is substantially identical as it relates to implementing DSL functionality, including the functionality TQ Delta alleges infringes the asserted claims.

27.     TQ Delta cites no evidence in support of this paragraph 27. CommScope disputes that TQ Delta, who bears the burden of infringement, has demonstrated that the products across the two cases are the same or substantially similar.

28.     Paragraph 28 provides a statement of opinions provided by TQ Delta's experts that is not a statement of undisputed fact.

29–30. CommScope disputes any assertion that CommScope bears the burden of identifying material differences between the accused products or the chips contained therein for purposes of this motion.

## IV.    LEGAL STANDARD

The general standards for summary judgment are not in dispute.  In a patent infringement case, Fifth Circuit law applies for the res judicata doctrines—including claim preclusion and collateral estoppel, also known as issue preclusion—and Federal Circuit law applies for substantive issues of patent law.  *See Paice LLC v. Toyota Motor Corp.*, No. 2:07-cv-180-DF, 2009 U.S. Dist. LEXIS 137132, at *4-6 (E.D. Tex. July 8, 2009) ("When dealing with general principles of claim preclusion, the law of the regional circuit in which the district court sits applies. . . .  Because issue preclusion does not involve matters 'particular to patent law,' the law of the regional circuit applies."); *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008); *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003); *Soverain Software LLC v. Victoria Secret Direct Brand Mgmt.*, 778 F.3d 1311, 1314 (Fed. Cir. 2015).

A party seeking summary judgment on the ground of claim preclusion bears the burden of establishing four factors: (1) the parties in a later action are identical or in privity with the parties in a prior action; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action concluded with a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits.  *Vines v. University of Louisiana at Monroe*, 398 F.3d 700, 704–05 (5th Cir. 2005); *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000).

To establish issue preclusion, a party must establish that: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision."  *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (citation omitted).  As with claim preclusion, the prior judgment must be "final" and appealable— and not interlocutory—to be preclusive.  *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269 (Fed. Cir. 1986); *White v. World Finance of Meridian, Inc.,* 653 F.2d 147, 149–52 (5th

Cir. 1981).  Additionally, when a plaintiff is seeking to collaterally estop a defendant in an offensive manner, "the application of offensive issue preclusion requires additional equitable consideration of the court." *Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:15-CV-00551-RWS, 2019 WL 2757243, at *2 (E.D. Tex. Apr. 16, 2019).  Specifically, issue preclusion should be applied offensively only when "no special circumstances exist that would render preclusion inappropriate or unfair." *Id*.; *see also Ericsson Radio Sys., Inc. v. InterDigital Commc'ns Corp.*, No. CIV.A. 3:93-CV-1809-H, 1999 WL 288683, at *6 (N.D. Tex. May 4, 1999).

## V.   ARGUMENT

### A.   TQ Delta Waived Res Judicata.

As the Fifth Circuit has repeatedly recognized, res judicata and collateral estoppel are affirmative defenses that are waived if not timely pled.  *See, e.g.*, *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985) ("Under F.R.C.P. 8(c), res judicata, and hence collateral estoppel, is an affirmative defense which if not pled is considered waived."); *Kariuki v. Tarango*, 709 F.3d 495, 508 (5th Cir. 2013); *Caldera v. Northrop Worldwide Aircraft Services, Inc.*, 192 F.3d 962, 970 (Fed. Cir. 1999); *Russell v. SunAmerica Sec., Inc.,* 962 F.2d 1169, 1172 (5th Cir. 1992); *U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas,* 944 F.2d 253, 258 (5th Cir. 1991). A plaintiff can forfeit res judicata arguments by failing to "promptly" assert them when they "became available." *Shango v. Jurich*, No. 74 C 3598, 1989 WL 75446, at *9 (N.D. Ill. June 27, 1989), *aff'd*, 965 F.2d 289 (7th Cir. 1992); *see also Henry v. First Nat. Bank of Clarksdale*, 595 F.2d 291, 298 n.1 (5th Cir. 1979) (holding that the plaintiff-appellant waived principles of res judicata and collateral estoppel by failing to plead them); *Blankenbaker v. United Transp. Union*, 878 F.2d 1235, 1243 (10th Cir. 1989) (holding that the plaintiffs waived its issue preclusion claim by failing to invoke it timely).  Moreover, when a party deliberately files suit seeking an adjudication of its rights on the merits instead of seeking judgment on res judicata grounds, it

"waive[s] the right to assert any defense of res judicata that [it] might have had." *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1322 (9th Cir. 1998).

Here, TQ Delta invokes claim and issue preclusion theories based on verdicts and orders against 2Wire that had been entered in the Delaware Action before TQ Delta filed this suit against CommScope. Yet, the Complaint in this case is devoid of any mention of the Delaware Action or any suggestion of issue or claim preclusion based on the Delaware Action. *See* Dkt. No. 1. Furthermore, when CommScope asserted counterclaims seeking declaratory judgment of invalidity and non-infringement, TQ Delta answered those counterclaims without pleading res judicata or collateral estoppel as affirmative defenses. *See* Dkt. No. 35. Nowhere in its pleadings did TQ Delta allege that the claims and issues raised in this case are identical or similar to those in the Delaware Action. Notably, TQ Delta has never even sought to amend its Complaint and Answer to allege these defenses.

In fact, TQ Delta has—until this motion—taken the opposite view. For instance, in opposing a transfer of this case to Delaware, TQ Delta expressly represented to this Court that "[t]he Delaware case ***does not have substantial overlap*** with this case" and that "this case involves ***different parties, different patents, different product lines, and different standards***." Dkt. No. 89 at 2 (emphasis added). Specifically, TQ Delta asserted that this case involves "parties (*e.g.*, CommScope and Arris) that are not at issue in the *2Wire* case" and involves "products designed and developed by Motorola, eventually acquired by Arris and then CommScope, as opposed to products exclusively designed by 2Wire." *Id.* at 12. TQ Delta also argued that "even the patents that were asserted in the *2Wire* case here do not have the same asserted claims." *Id.*

TQ Delta's decisions—both to waive its res judicata and collateral estoppel theories and to assure this Court that the cases have many differences—were strategic, not accidental. By

omitting res judicata from its pleadings and expressly distinguishing the parties and issues in this case from those in the Delaware Action, TQ Delta affirmatively represented to this Court and to CommScope that it was seeking adjudication of the merits of its claims in this proceeding.  Those strategic decisions are grounds for waiver.  *See Peterson*, 140 F.3d at 1322.  As noted above, in the 16 months this case has been pending, TQ Delta never sought leave to amend its pleadings to add a claim preclusion or issue preclusion defense.  Nor did it invoke either doctrine in any of its infringement contentions, responses to invalidity contentions, or expert reports.  Instead, TQ Delta waited through more than a year of litigation before raising res judicata for the first time in this summary judgment motion filed just months before trial.

TQ Delta's strategic delay is prejudicial to CommScope and substantially undermines any espoused interest in judicial economy.  Over the past year, CommScope sought and provided rounds of extensive discovery, invalidity contentions, claim construction, expert reports, and expert depositions, all with the expectation that the issues would be adjudicated on the merits.  Even if res judicata and collateral estoppel would have applied in this case—and for the reasons set forth below they do not—waiting until the end of the case to raise them, thus contradicting the very assurances TQ Delta gave this Court at the outset, would mean that the Court and CommScope squandered more than a year litigating moot issues.  If TQ Delta genuinely believed the decisions in the Delaware Action precluded adjudication of issues in this case, it could and should have pled that theory at the outset of this case.  Doing so would have provided CommScope the opportunity to seek a ruling before further proceedings and to tailor its arguments and defenses throughout this litigation appropriately.  The Court should find that TQ Delta's res judicata arguments are forfeited and waived, and contradict TQ Delta's representations to this Court.  The Court should deny the motion on at least those grounds.

**B.      There Is No Final Judgment in the Delaware Action.**

This Court should also deny TQ Delta's motion on the merits.  In the Fifth Circuit, a judgment must be final and appealable to be accorded preclusive effect for purposes of both collateral estoppel and res judicata.  *Paice LLC*, 2009 U.S. Dist. LEXIS 137132, at *4–6; *Acumed LLC*, 525 F.3d at 1323; *Dana*, 342 F.3d at 1323. In arguing that issue preclusion does not require a final, appealable judgment, TQ Delta repeatedly relies on precedent from circuits *other* than the Fifth Circuit.  *See* Mot. at 13 (citing decisions from the Federal Circuit (applying Sixth Circuit law) and the Second, Third, Sixth, Ninth, and Eleventh Circuits).  But Fifth Circuit law applies here.  And importantly, the Fifth Circuit has acknowledged that "[t]here are two general approaches to the finality requirement"—(1) a more flexible approach that requires "only an order 'sufficiently firm to be accorded conclusive effect'" and (2) "[a] more rigid approach [that] equates finality for collateral-estoppel purposes with the final-decision requirement for purposes of appeal pursuant to 28 U.S.C. § 1291."  *Hacienda Records, L.P. v. Ramos*, 718 Fed. Appx. 223, 229 (5th Cir. 2018).  The Fifth Circuit follows the latter, stricter approach.  *See Paice LLC*, 2009 U.S. Dist. LEXIS 137132, at *4–6; *Acumed LLC*, 525 F.3d at 1323; *Dana*, 342 F.3d at 1323.

The Fifth Circuit has made clear that the appealability of an order, as set forth under 28 U.S.C. § 1291, is essential to its finality.  *J.R. Clearwater Inc. v. Ashland Chem. Co.*, 93 F.3d 176, 179 n.2 (5th Cir. 1996) (stating that the Fifth Circuit previously "declined to adopt this more flexible notion of finality") (citing *Avondale*, 786 F.2d at 1271).  And while TQ Delta cites *Cycles, Ltd. v. Navistar Fin. Corp.*, 37 F.3d 1088, 1090 (5th Cir. 1994) in support of its position, the Fifth Circuit acknowledged that the case is an outlier: "With the exception of *Cycles*, our court has consistently followed the strict approach to finality, linking the availability of appeal for the prior decision with finality for collateral-estoppel purposes."  *Hacienda Records*, 18 Fed. Appx. at 230 (collecting Fifth Circuit cases).  Indeed, in *Dana*, the Federal Circuit expressly distinguished the

Fifth Circuit's strict approach from the "flexible approach" of the Eleventh Circuit.  *Dana*, 342 F.3d at 1325 (stating that, as opposed to the Fifth Circuit, "the Eleventh Circuit follows the more flexible approach . . . which gives collateral estoppel effect to orders that do not constitute final, appealable judgments if they are sufficiently firm to be accorded conclusive effect") (quotation marks omitted). Following the Fifth Circuit's stricter rule is "especially appropriate in the case of offensive collateral estoppel," where—as here—"the problems of assuring a rigorous determination of all grounds of decision are magnified."  *Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1175 (5th Cir. 1981); *Ericsson*, 1999 WL 288683, at *4.

Importantly, in the Delaware Action, an outstanding resolution on damages has prohibited the judgment from being made final.  Ex. 5 (oral order bifurcating damages issues). Under the finality analysis required by the Fifth Circuit, "a partial summary judgment order that did not even determine liability, much less damages" is interlocutory and non-appealable, and thus has no collateral estoppel effect.  *Avondale*, 786 F.2d at 1271.  "Looking to general res judicata principles governing the preclusive effect of a judgment," the Federal Circuit confirmed this understanding, stating that "[a]n order that establishes liability but leaves open the question of damages or other remedies . . . [is] not final for purposes of preclusion."  *Fresenius USA, Inc. v. Baxter Intern., Inc.*, 721 F.3d 1330, 1341–42 (Fed. Cir. 2013) (citation omitted); *see also* Restatement (Second) of Judgments § 13(b) (1982) ("Finality will be lacking . . . if the court has decided that the plaintiff should have relief against the defendant of the claim but the amount of the damages, or the form or scope of other relief, remains to be determined").

Here, none of the Delaware verdicts or orders on which TQ Delta relies are appealable final judgments within the meaning of 28 U.S.C. § 1291.  As TQ Delta has emphasized to this Court, the Delaware court bifurcated liability and damages in the Delaware Action into multiple

trials and has not completed the liability phases of all families in that case.  *See* Dkt. No. 89 at 12, 14.  Disputes over multiple issues, including enforceability and damages, have yet to be adjudicated in the Delaware Action.  Under these circumstances, the existing verdicts and orders in the Delaware Action are not yet appealable and thus cannot support preclusion under Fifth Circuit law.  *Avondale*, 786 F.2d at 1271; *J.R. Clearwater,* 93 F.3d at 179 n.2; *see also Fresenius*, 721 F.3d at 1341–42; 18A Wright, Miller, & Cooper, Fed. Prac. & Proc. § 4432 (3d ed.); Restatement (Second) of Judgments § 13(b).

### C.    TQ Delta Has Not Established That the Issues in This Case Are Identical to Issues Actually Litigated in Delaware.

Yet another reason why TQ Delta's motion should be denied is that this case indisputably involves accused products, theories, and patent claims that were never addressed, let alone subject to a final judgment, in the Delaware Action.  Here, TQ Delta seeks collateral estoppel of infringement on products that CommScope did not acquired from 2Wire and that were never accused in the Delaware Action.[1]  As other courts in the Fifth Circuit have recognized, collateral estoppel of infringement is not appropriate where a plaintiff fails to establish that "identical products are at issue" in the earlier and later cases.  *See Ericsson*, 1999 WL 288683, at *4.

As an initial matter, TQ Delta fails to cite a single case in which any court has applied issue preclusion *offensively* to allow a plaintiff to establish *infringement* of accused products that had never previously been litigated.  The "essentially the same" inquiry raised in *Phil-Insul Corp. v.*

---

[1] TQ Delta argues that these products are within the scope of collateral estoppel because the accused functionality is housed on "materially identical" Broadcom chipsets.  *See* Mot. at 17–18; *see also id.* at 21, 22, 23.  But in its Motion to Strike Dr. Becker's opinions, TQ Delta took the opposite position—arguing that Dr. Becker has no basis for his opinion that the "SSPPU" is the DSL chipset within each of the Accused Products because, according to TQ Delta's apparent theory in *that* motion, product details beyond the Broadcom chipset are important.  *See, e.g.*, Dkt. No. 345 at 5 (TQ Delta arguing that "Dr. Becker has effectively provided no support for his assertion that a DSL chip or chipset is the appropriate SSPPU in this case").

*Airlite Plastics Co.*, 854 F.3d 1344, 1353 (Fed. Cir. 2017) and *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1379–80 (Fed. Cir. 2008) are inapposite because they involved *defensive* preclusion against the *patentee* where there had been a judgment of ***non-infringement*** on prior accused products based on the failure to establish one or more claim elements that were absent from the current accused products for identical reasons.  Here, TQ Delta is seeking summary judgment of ***infringement*** on new products in a way that would absolve it of its burden to establish that the products satisfy each and every element of the asserted claims.

Additionally, TQ Delta provided no expert testimony comparing the accused products at issue in the Delaware Action to the accused products at issue here.  Rather, TQ Delta merely provides attorney argument that because the products allegedly comply with the same standards and use either the same or a similar chipset, the products are "essentially the same."  That is not sufficient.  In *Phil-Insul Corp.*, the district court found the products from the later case had the "same design" as the products from the earlier case, and so all of the products did not infringe.  854 F.3d at 1354.  Here, TQ Delta—facing the burden of proving infringement—has simply not provided sufficient evidence to show that every infringing element from the prior accused products is also present on the newly accused products (thus further evidencing the higher burden faced with offensive preclusion).  Likewise, in *Roche*, the district court determined that the products were "essentially the same" only because the differences in the products were unrelated to the claims.  531 F.3d at 1380.  TQ Delta's failure to provide evidence, particularly through expert testimony, establishing the similarities and differences between the products leaves this Court having to guess as to whether the products are, in fact, "essentially the same."  *See Ericsson*, 1999 WL 288683, at *4.

TQ Delta's argument is particularly problematic here given that there are numerous issues

that were never tried or decided in the Delaware Action.  For example, asserted claim 23 of the '881 patent was never tried in Delaware and contains a claim element not present in any of the claims tried in that case.  *See* '881 patent, claim 23 ("The transceivers of claim 17, wherein the at least one transmission parameter value for the first transceiver is a *first interleaving parameter value that is different than a second interleaving parameter value for the second transceiver*.").  TQ Delta also repeatedly conflates invalidity theories that were raised at some point during the prior case with theories that were actually adjudicated.  For example, for Family 3, TQ Delta admits that the VDSL1 reference was dropped before trial in the Delaware Action, but that CommScope is still relying on it in the present action.  *See* Dkt. No. 348 at 18 n.5.

Moreover, here, TQ Delta alleges acts of induced infringement that allegedly occurred during time periods not asserted in the Delaware Action and that implicate questions of fact and law that have not previously been adjudicated.  *See* Dkt. No. 340 (CommScope's motion to limit damages based on 35 U.S.C. § 286).  TQ Delta cannot possibly ask the Court to preclude CommScope from defending itself in the present action, where the predicate acts for CommScope's alleged inducement in this case were never at issue, much less adjudicated, in the Delaware Action.

For these reasons, TQ has not established, and cannot establish, that the issues in this case are identical to those raised in Delaware.

### D.   Preclusion Would Be Unfair and Imprudent in This Case.

The Court should also decline to apply claim and issue preclusion on grounds of equity and prudence.  The application of res judicata is "controlled by the principles of equity, and fairness to both parties must be considered when it is applied."  *Luv n' Care, Ltd. v. Jackel Int'l Ltd.*, No. 3:18-CV-00534, 2022 WL 4597823, at *4 (W.D. La. 2022) (citing *Johnson v. United States*, 576 F.2d 606, 614 (5th Cir. 1978)).  As numerous courts have recognized, fairness is always

an appropriate factor when considering collateral estoppel.  *See, e.g.*, *Watts v. XL Systems, L.P.*, No. CIV.A. 1:06-CV-653-LY, 2008 WL 5731945, at *11 (W.D. Tex. July 2, 2008) (citing *Allen*, 449 U.S. at 95; *Financial Acquisition*, 440 F.3d at 284).

When preclusion is asserted offensively against a defendant, among the fairness considerations are whether the defendant had the opportunity and incentive to fully litigate the issues in the first case, including whether similar damages exposures were at stake, and whether the defendant had a full opportunity to take adequate discovery and develop relevant defenses. *See Parklane Hosiery*, 439 U.S. at 330–31; *Allen v. McCurry*, 449 U.S. 90, 95 (1980) ("[T]he concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case.") (citations omitted); *Benson & Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, 1174 (5th Cir. 1987) (holding that, to be collaterally estopped, a non-party must have had "effective choice as to the legal theories and proofs to be advanced" by the party to the action).  Here, CommScope acquired 2Wire years into the Delaware Action, after the completion of discovery as to liability on the patent families at issue.  Ex. 1 (Delaware scheduling order).  Moreover, while some damages discovery has occurred, the only damages at issue were those related to 2Wire's own products, not the substantially larger array of products and timeframes at issue in this case. Additional discovery will need to occur in the Delaware Action before any trial can proceed on damages and other issues.

Courts in the Fifth Circuit have recognized that while a transfer of property may give rise to privity, that privity is "only with respect to an adjudication of rights *in the property that was transferred*; they are not in privity for other purposes, such as an adjudication of rights in other property that was never transferred between the two."  *Crossroads Sys. (Texas), Inc. v. Dot Hill*

16

*Sys. Corp.*, No. A-03-CA-754-SS, 2006 WL 1544621, at *7 (W.D. Tex. May 31, 2006) (internal quotations and citation omitted) (emphasis in original).  Thus, CommScope's acquisition of the accused 2Wire products in this case cannot and should not preclude it from fully and fairly defending itself against allegations of infringement against other products.

The impropriety of res judicata is compounded by the fact that CommScope had no opportunity to appeal the verdicts and orders in the Delaware Action and may not have the opportunity to do so for some time.  The case has not reached a final resolution because a number of liability trials (as well as a trial on damages and unenforceability) have yet to be conducted.  If res judicata is applied here, and the underlying Delaware decisions are vacated or reversed on appeal, then the merits of this case, including invalidity, infringement, and any damages, would need to be retried, likely years down the line.  This substantial waste of judicial resources can be avoided by developing a full trial record on all the contested issues now.

## VI.    CONCLUSION

For the foregoing reasons, CommScope respectfully requests that the Court deny TQ Delta's Motion for Summary Judgment of validity on the asserted Family 2, 3, and 9b patents and of infringement on the Family 2, 3, and 6 asserted  patents.

Dated this 6th day of January, 2023

Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Ste. B
Tyler, TX 75703
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Lana Shiferman
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
P:  (617) 570-1000
F:  (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P:  (415) 733-6000
F:  (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Email: *ross.barton@alston.com*
*scott.stevens@alston.com*
*kirk.bradley@alston.com*
*stephen.lareau@alston.com*
*karlee.wroblewski@alston.com*
*nic.marais@alston.com*

18

*erin.beaton@alston.com*
*mary.riolo@alston.com*
Telephone: 704-444-1000
Facsimile: 704-444-1111

Katherine G. Rubschlager (Cal. Bar No.
328100)
ALSTON & BIRD LLP
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
Email: katherine.rubschlager @alston.com
Telephone: 650-838-2004
Facsimile: 650-838-2001

***Counsel for Defendants CommScope Holding
Company, Inc., CommScope Inc., ARRIS US
Holdings, Inc., ARRIS Solutions, Inc., ARRIS
Technology, Inc., and ARRIS Enterprises,
LLC***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel on January 6, 2023.

*/s/ Eric H. Findlay*
Eric H. Findlay
