THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>      *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>      *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED |

# TQ DELTA, LLC'S
# RESPONSE TO COMMSCOPE'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE FAMILY 3 PATENTS (DKT. 336)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I. INTRODUCTION ....................................................................................................... 1

II. RESPONSE TO STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ......... 2

III. RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ...................... 2

IV. FACTUAL BACKGROUND ....................................................................................... 3

    A. The Delaware Litigation on the Family 3 Patents .............................................. 3

        1. The Delaware Court Denies Summary Judgment Of Noninfringement ................. 3

        2. The Delaware Jury Finds Infringement ....................................................... 4

        3. The Delaware Court Upholds the Jury Verdict ............................................ 5

    B. The Texas Litigation on the Family 3 Patents .................................................. 6

V. APPLICABLE LAW .................................................................................................... 6

VI. ARGUMENT ............................................................................................................... 6

    A. Defendant Is Estopped From Claiming Noninfringement ................................. 6

    B. There Is At Least A Genuine Issue Of Material Fact ....................................... 8

        1. How Defendant's Products Implement The VDSL2 Standard ..................... 8

        2. Testing of the Accused Products ................................................................ 11

        3. Source Code Analysis ................................................................................ 13

VII. CONCLUSION ........................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Cases**

*Oyster Optics, LLC v. Coriant Am. Inc.*
    No. 2:16-CV-1302-JRG, 2018 U.S. Dist. LEXIS 104206(E.D. Tex. June 21, 2018).........6

I.  **INTRODUCTION**

The Court should deny Defendant's Motion for Summary Judgment of Noninfringement of the Family 3 Patents (Dkt. No. 336). Defendant fails to inform the Court that it has already extensively litigated this issue in Delaware, losing three times: at summary judgment, at trial, and on post-trial review. It now brazenly asks this Court to, effectively, overrule the Delaware court and enter judgment of noninfringement based on the same failed arguments. And Defendant does all of this while withholding the Delaware rulings and failing to mention the proceedings at all.

The Delaware rulings impact this Motion in two ways. First, having litigated this issue to a final decision and lost, Defendant is estopped from relitigating infringement, as explained in TQ Delta's summary-judgment motion (Dkt. 348). The Motion can be denied on that basis alone.

Second, should the Court address the merits of the Motion, the Delaware Court's and jury's rejection of the same argument reinforces that there is a genuine issue of material fact. Defendant, like in Delaware, argues that its products do not meet the "message . . . specifying a <u>maximum</u> number of bytes of memory . . ." claim element because the VDSL2 standard states that "[t]he <u>minimum</u> amount of memory required in a transceiver (VTU-O or VTU-R) to meet this requirement is $\frac{MAXDELAYOCTECT}{2}$ octets." Mot. at 4 (quoting Dkt. 336-5 at p. 25) (emphasis added).[1] The Delaware Court rejected that argument at summary judgment because the "minimum" language from the standard "is not dispositive" of the issue.[2]

> The language of the VDSL2 standard is not dispositive. The infringement inquiry is whether, in practice and within the meaning of the claims, a message specifying the maximum number of available bytes is sent. If, as Plaintiff contends, the message sent

---

[1] All emphases are supplied unless otherwise noted.

[2] Dkt. 350-12 (Memorandum Opinion (Dkt. 1106), at 13–14, *TQ Delta, LLC v. 2Wire, Inc.*, Case No. 1:13-cv-1835-RGA (D. Del. Apr. 25, 2019)).

1

> during initialization functions as a maximum then it may meet the requirement of the claim—despite being labeled as a minimum in the standard. Thus, there is a dispute of material fact as to whether the accused products meet the "message during initialization specifying a maximum number of bytes of memory that are available to be allocated" limitation.

That same reasoning requires denial of this Motion. Defendant's claim of how its products implement VDSL2 is incorrect. In addition, testing directed by TQ Delta's expert (Dr. Cooklev) showed that the ***max*** _delay_octect field specified a maximum (as its name indicates), not a minimum. Dr. Cooklev's source-code analysis also showed that the max_delay_octect field specified a maximum amount of memory.

Defendant's Motion does not address this evidence. There is substantial evidence by which a reasonable jury could render a verdict in TQ Delta's favor. Indeed, that is what happened in Delaware. And the Delaware Court, reviewing the verdict, upheld the jury's verdict on the same types of evidence that Defendant failed to address in this Motion. The Motion should be denied.

## II.     RESPONSE TO STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

TQ Delta submits there are two issues for the Court to decide:

1. Is Defendant precluded from relitigating its VDSL2-standard-based "minimum" noninfringement argument when (1) the Delaware Court rejected that argument at summary judgment; (2) the Delaware jury rejected that argument at trial and found infringement, resulting in a final judgment; and (3) the Delaware Court rejected that argument when upholding the jury's verdict on post-trial review?

2. And, if the Court address the merits, is there a genuine issue of material fact?

## III.    RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Admitted.
2. Denied.
3. Admitted.
4. Denied.

## IV. FACTUAL BACKGROUND

### A. The Delaware Litigation On The Family 3 Patents

TQ Delta sued 2Wire (who Defendant now owns) in 2013 on a number of Family 3 Patents, including the two patents at-issue in Defendant's Motion, U.S. Patent Nos. 7,844,882 ("the '882 Patent") and 8,276,048 ("the '048 Patent"). Dkt. 350-12 at 2. The asserted claims in Delaware, similar to here, recited "transmitting or receiving a message during initialization specifying a maximum number of bytes of memory that are available to be allocated to [a deinterleaver/an interleaver]." *Id.* at 4. TQ Delta asserted that 2Wire's products that comply with the VDSL2 standard (ITU-T G.993.2) infringe the Family 3 Patent claims. *Id.* at 13.

Defendant 2Wire argued noninfringement three times in Delaware, claiming that the "minimum" language in the VDSL2 standard showed that its products did not meet the "message . . . specifying a maximum number of bytes of memory" claim element. It lost at each stage.

#### 1. The Delaware Court Denies Summary Judgment Of Noninfringement

At summary judgment in March 2019, 2Wire (then-owned by Defendant[3]) argued that the VDSL2 initialization messages did not meet the "specifying a maximum number of bytes of memory" because (among other arguments) the messages specified "the *minimum* necessary amount" of memory required. Dkt. 350-12 at 13; *see also* Defendant 2Wire, Inc.'s Opening Brief in Support of its Motion for Summary Judgment (Public Version) (Dkt. 816), at 1, *TQ Delta, LLC v. 2Wire, Inc.*, Case No. 1:13-cv-1835-RGA (D. Del. Mar. 1, 2019) (Exh. 1) ("By specifying the maximum allowed delay, these parameters enable the receiving transceiver to determine the

---

[3] ARRIS acquired 2Wire in 2017 and CommScope's acquisition of ARRIS was in progress, closing on April 4, 2019. *See, e.g.*, https://www.commscope.com/press-releases/2018/commscope-to-acquire-arris-approximately-$7.4-billion-transaction-accelerates-commscope-vision-to-shape-communications-networks-of-the-future/ (announcing on November 8, 2018 that CommScope had agreed to acquire ARRIS); Dkt. 350-1, -2, -3 (Corporate Disclosure Statements and press release).

3

opposite of what is required by the claims—the *minimum* amount of interleaver or deinterleaver memory that is needed to support the maximum end-to-end delay."); *id.* at 7 ("G.993.2 states that the ***minimum amount*** of memory the VTU-O or the VTU-R must use to meet each of the delay_octet values is half of the specified delay.").

The Delaware Court denied the motion because the "minimum amount of memory" language "is not dispositive, Dkt. 350-12 at 13–14:

> The language of the VDSL2 standard is not dispositive. The infringement inquiry is whether, in practice and within the meaning of the claims, a message specifying the maximum number of available bytes is sent. If, as Plaintiff contends, the message sent during initialization functions as a maximum then it may meet the requirement of the claim—despite being labeled as a minimum in the standard. Thus, there is a dispute of material fact as to whether the accused products meet the "message during initialization specifying a maximum number of bytes of memory that are available to be allocated" limitation.

### 2. The Delaware Jury Finds Infringement

Defendant 2Wire raised the "minimum" argument at trial in May 2019: "[T]hese max_delay_octet fields convey to the modem on the other end the minimum amount of memory that the device needs to handle that amount of delay." Trial Tr., at 120:15–18, *TQ Delta, LLC v. 2Wire, Inc.*, Case No. 1:13-cv-1835-RGA (D. Del.) (Exh. 2) (Opening Statement); *id.* at 563:4–23 ("[T]he max_delay_octet specifies a minimum amount of memory which is the polar opposite of a maximum amount of memory.") (Direct Examination of 2Wire's technical expert, Dr. Walker); *id.* at 613:17–614:25 ("[S]pecifying a minimum amount of memory is not the same as specifying a maximum amount of memory. So the O-PMS message does not meet the message limitation of the claims.") (Direct Examination of 2Wire's technical expert, Dr. Jacobsen); *id.* at 855:17–19 ("Maximum delay conveys information about the minimum amount of memory that you need to have, not maximum memory.") (Closing Argument). TQ Delta explained that the messages in the

4

accused products do meet the message limitations because the products use the max_delay_octect fields as a maximum. *See, e.g.*, *id.* at 835:13–836:6 (addressing "minimum" noninfringement argument during Closing Argument).

The jury sided with TQ Delta and found infringement. Dkt. 350-9 (Jury Verdict (Dkt. 1187), *TQ Delta, LLC v. 2Wire, Inc.*, Case No. 1:13-cv-1835-RGA (D. Del. May 23, 2019)). The District Court then entered a judgment of infringement. Dkt. 350-11 (Judgment (Dkt. 1188), *TQ Delta, LLC v. 2Wire, Inc.*, Case No. 1:13-cv-1835-RGA (D. Del. May 23, 2019)).

### 3. The Delaware Court Upholds the Jury Verdict

Defendant 2Wire then moved for post-judgment relief based on the "message . . . specifying a maximum number of bytes of memory" claim element. Among other arguments, 2Wire claimed that the max_delay_octect field in the VDSL2 standard provides "the *minimum* amount of memory—not the maximum—required to support the maximum end-to-end delay[.]". Defendant 2Wire, Inc.'s Opening Brief in Support of its Motion for Judgment as a Matter of Law (Public Version) (Dkt. 1220) at 1, *TQ Delta, LLC v. 2Wire, Inc.*, Case No. 1:13-cv-1835-RGA (D. Del. Mar. 1, 2019) (Exh. 3)); *see also id.* at 5–6 ("According to the standard, the **minimum amount** of memory each transceiver must provide to support the actual end-to-end delay of delay_octet is half of the value of the actual end-to-end delay, or delay_octet / 2. As Dr. Jacobsen testified, specifying a **minimum** amount of memory is not the same as specifying a **maximum** amount of memory.") (citations omitted).

The Delaware Court denied the motions and concluded that "substantial evidence supports a finding that max_ delay_ octet refers to a maximum amount of memory." Dkt. 350-10 (Memorandum Opinion (Dkt. 1239) at 9–10, *TQ Delta, LLC v. 2Wire, Inc.*, Case No. 1:13-cv-1835-RGA (D. Del. Aug. 23, 2019)). The Court concluded that "[t]he combination of" TQ Delta's expert testimony on "on the operation of the Accused Products and . . . testimony on the

functionality of the code in the products provides substantial evidence to support a finding that the max_ delay_ octet specifies a maximum amount of memory." *Id.* at 10.

### B. The Texas Litigation On The Family 3 Patents

TQ Delta filed suit against CommScope in August 2021, asserting infringement of the '882 and '048 Patents in addition to other patents. TQ Delta has elected in its Final Election claim 13 of the '882 Patent (which was tried in Delaware) and claim 5 of the '048 Patent. Both claims contain the message limitation was that contested and resolved in Delaware: "transmitting or receiving a message during initialization specifying a maximum number of bytes of memory that are available to be allocated to a deinterleaver." Despite its three loses in Delaware on this same issue, Defendant argues that summary judgment of the Family 3 Patent is proper here.

## V. APPLICABLE LAW

This Court is familiar with the summary-judgment legal standards, including in the context of noninfringement. *See, e.g.*, *Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-CV-1302-JRG, 2018 U.S. Dist. LEXIS 104206, at *5-6 (E.D. Tex. June 21, 2018) (reciting summary judgment standards under Federal Rule of Civil Procedure 56).

## VI. ARGUMENT

### A. Defendant Is Estopped From Claiming Noninfringement

Defendant has had its opportunity to litigate this issue, and it is precluded from further litigation here. *See* TQ Delta's Mot. for Summary Judgment (Dkt. 348) (reciting and applying law on issue preclusion). Each of the elements of issue preclusion apply here.

<u>First</u>, there is sufficient overlap in parties for estoppel to apply. Defendant is bound by the decisions against 2Wire, who Defendant acquired and controlled during the Delaware litigation (as the PTAB has also twice concluded, Exh. 4 at 15–16 and Exh. 5 at 4).

<u>Second</u>, Defendant raises the same issues that it lost in Delaware. Not only is Defendant

relitigating noninfringement, but it raises the same standards-based argument that the Delaware Court and jury rejected—at summary judgment, at trial, and on post-trial review. Indeed, for the "minimum" argument, the Defendant's expert report in this case (using a new expert, Dr. Ransom) is largely a copy-and-paste of the report it submitted on in Delaware, as exemplified below.

| 2018 Delaware Expert Report (Dr. Jacobsen) (Exh. 6) |
|---|
| 63. G.993.2 is explicit that the value of MAXDELAYOCTET establishes a lower bound on the amount of memory each of the VTU-O and VTU-R must provide to meet the specified maximum aggregate interleaver and deinterleaver delay: "The ***minimum amount of memory required*** in a transceiver (VTU-O or VTU-R) to meet this requirement is MAXDELAYOCTET/2 octets. ***The actual amount of memory used is implementation specific***." *Id.* at § 6.8.2 (emphasis added). In other words, the amount of memory a VTU-R must provide to meet the maximum allowed total delay is <u>at least</u> half of the number of octets listed for the parameter "aggregate interleaver and de-interleaver delay (octets)" of the selected profile in Table 6-1, but the amount of memory actually provided may be larger. |
| **2022 Texas Expert Report (Dr. Ransom) (Exh. 7)** |
| 162. G.993.2 is explicit that the value of MAXDELAYOCTET establishes a lower bound on the amount of memory each of the VTU-O and VTU-R must provide to meet the specified maximum aggregate interleaver and deinterleaver delay: "The ***minimum amount of memory required*** in a transceiver (VTU-O or VTU-R) to meet this requirement is MAXDELAYOCTET/2 octets. ***The actual amount of memory used is implementation specific***." *Id.* § 6.8.2 (emphasis added). In other words, the amount of memory a VTU-R must provide to meet the maximum allowed total delay is <u>at least</u> half of the number of octets listed for the parameter "aggregate interleaver and de-interleaver delay (octets)" of the selected profile in Table 6-1, but the amount of memory actually provided may be larger. |

Third, resolution of Defendant's "minimum" defense was necessary to the Delaware Court's final decision of infringement. Had the Court or the jury accepted that defense, there would be findings of noninfringement. The verdict and judgment of infringement necessarily means that the jury rejected Defendant's "minimum" defense, which the Court upheld post-trial. The elements of issue preclusion are thus met, and Defendant's Motion should be denied.

### B. There Is At Least A Genuine Issue Of Material Fact

Should the Court reach the merits, there is at least a genuine issue of material fact, as the Delaware Court concluded when it rejected the same arguments presented there. The same types of evidence that were sufficient to reach trial in Delaware, convince a Delaware jury, and then uphold the jury's verdict also raise a genuine issue of fact for trial in this case.

#### 1. How Defendant's Products Implement The VDSL2 Standard

Defendant inaccurately characterizes how its products implement the VDSL2 standard. Defendant [REDACTED] a fact Defendant's Motion does not contest. *See, e.g.*, Cooklev Opening Report (Exh. 8) at ¶ 719 (referencing documentation). Dr. Cooklev explains in detail how [REDACTED] interleavers are implemented in memory, but the relevant (and, again, uncontested) fact is that the amount of deinterleaver or interleaver memory required for a given system is according to an equation: $\frac{delay\_octect}{2}$. *See, e.g.*, *id.* at ¶¶ 196–208, 1181.

The VDSL2 standard explains that delay_octect is the end-to-end delay for a given latency path (*e.g.*, communications channel) between the VTU-O (*e.g.*, a device at a central office that

---

[4] In general, interleaving and deinterleaving in a DSL system refers to temporarily storing in order to delay and thereby rearrange the data in a transmission to spread out the impact of noise on the transmission. *See, e.g.*, Exh. 8 at ¶¶ 183–195 (discussing error correction, interleaving, and deinterleaving).

8

provides the Internet service) and the VTU-R (*e.g.*, the device at a customer's home, sometimes referred to as "customer premises equipment" or "CPE"). *See, e.g.*, Exh. 8 at ¶¶ 1179–1181.

Dr. Cooklev focused on the amount of deinterleaver memory at the VTU-R. For example, the VDSL2 standard refers to the delay_octet value in the downstream direction (*i.e.*, the direction from the VTU-O to the VTU-R) for latency path #0 as delay_octet$_{DS,0}$. Exh. 8 at ¶ 1180.



Because each device has limited memory, the VDSL2 standard requires the VTU-O to send a message that contains as a field the maximum value of delay_octect (and thus specifies a maximum amount of memory). This value is for a given direction (*e.g.*, downstream ("DS")) on a given latency path (*e.g.*, latency path #0). This message is known as the O-PMS message, and the field is known as max_delay_octect.

For latency path #0 in the downstream direction, max_delay_octect$_{DS,0}$ "specifies the maximum value of delay_octect$_{DS,0}$," as reflected below in the portions of the VDSL2 standard excerpted in Dr. Cooklev's expert report (at ¶ 1179) (image truncated).

Table 12-56 – Description of message O-PMS

| | Field name | Format |
|---|---|---|
| 8 | max_delay_octet$_{DS,0}$ | 3 bytes |

Field #8 "max_delay_octet$_{DS,0}$" is a 3-byte field that specifies the maximum value of delay_octet$_{DS,0}$ (defined in clause 6.2.8), specified in bytes as an unsigned integer.

As Dr. Cooklev concludes, the value of max_delay_octect$_{DS,0}$ specifies the maximum amount of memory available to a deinterleaver (which is $\frac{max\_delay\_octect_{DS,0}}{2}$ in a ▬▬▬ interleaver) and Defendant's products receive a "message . . . specifying a maximum number of

9

bytes of memory that are available to be allocated to a deinterleaver." Exh. 8 at ¶¶ 1177–1181.

Defendant ignores this evidence. Its Motion instead hinges on an alleged case-killing "admission" that in the background section of Dr. Cooklev's report (the "admission" highlighted):

> 207. The amount of interleaver and deinterleaver memory required at each transceiver is $\frac{MAXDELAYOCTET}{2}$. *Id.* ("The minimum amount of memory required in a transceiver (VTU-O or VTU-R) to meet this requirement is $\frac{MAXDELAYOCTET}{2}$ octets."). MAXDELAYOCTET is equal to the summation over all latency paths of the aggregate interleaver and deinterleaver delays, which is written as:
>
> $$\sum_p (I_{US,p} - 1) \times (D_{US,p} - 1) + (I_{DS,p} - 1) \times (D_{DS,p} - 1)$$

Defendant's "admission" argument fails. First, the argument is a rehash of the standards-based argument Defendant lost three times in Delaware. As the report shows, Dr. Cooklev simply quotes the VDSL2 standard in a parenetical cite (the *id.* is to page 25 of the VDSL2 standard, *see* Exh. 8 at ¶ 200, fn. 137). This is not an "admission" (let alone one a case-ending one). Indeed, this same paragraph was in Dr. Cooklev's Delaware expert report, Cooklev Report (Exh. 9) at ¶ 74), where the Delaware Court rejected the same "minimum" argument based on the same sentence from the VDSL2 standard. It should be rejected here as well.[5]

Second, Defendant ignores the context of the "admission": it is a section showing how to implement a triangular interleaver. *See* Exh. 8 at ¶¶ 196–208. Because a triangular interleaver is the most efficient way to implement an interleaver, it utilizes the <u>minimum</u> amount of memory <u>as

---

[5] Defendant also conflates the MAXDELAYOCTECT value with the max_delay_octet values in the O-PMS message. They are not the same value. The MAXDELAYOCTECT value is the <u>total</u> delays for all latency paths for both deinterleaving and interleaving; the max_delay_octet values in the O-PMS message are on a per-path, per-direction basis.

compared to other implementations, namely, $\frac{delay\_octect}{2}$. But when using a triangular interleaver, the maximum amount of memory is the maximum value of $\frac{delay\_octect}{2}$ (which is $\frac{MAXDELAYOCTECT}{2}$ for interleaving and deinterleaving on all latency paths). Moreover, the "minimum" referred to in the VDSL2 standard is the memory that is the actual interleaver/deinterleaver memory; any additional "implementation specific" memory generally refers to overhead memory that is not used for interleaving/deinterleaving, such as pointers and other overhead. *See, e.g.*, Exh. 8 at 713 n. 748 (explaining that overhead or excess memory is not used for interleaving or deinterleaving).

Dr. Cooklev's application of the VDSL2 standard in the context of how Defendant's products operate raises a genuine issue of material fact for trial. That Defendant's new expert, just like its old expert, reads the VDSL2 standard differently (Mot. at 6) is not grounds for summary judgment. It highlights that there is an issue for trial, just like there was in Delaware.

### 2. Testing of the Accused Products

Dr. Cooklev also directed testing of a representative accused product (the 5168NV) and concluded that the test results showed that the max_delay_octect$_{DS,0}$ field specified a maximum number of bytes of memory that are available to be allocated to a deinterleaver. Exh. 8 at ¶¶ 693–717, 1179–1183. Defendant's Motion does not address this evidence.

The tests captured two messages relevant to Dr. Cooklev's analysis of this claim element. The first was the O-PMS message received by Defendant's product, which contains the max_delay_octect$_{DS,0}$ field. Exh. 8 at ¶ 711. The second was the R-PMS message, which is sent by Defendant's product in response to the O-PMS message. *Id.* The R-PMS message includes a latency path descriptor field, called LP$_0$. *Id.* That field specifies the amount of memory actually used by the deinterleaver for latency path #0 in the downstream direction. *Id.* By comparing the actual amount of memory used (as specified in the LP$_0$ field) to the value specified in the

11

max_delay_octect$_{DS,0}$ field, the tests would indicate if the max_delay_octect field specified a maximum memory value.

Dr. Cooklev's test results showed that max_delay_octect field did indeed specify a maximum. Exh. 8 at ¶¶ 711–717. Dr. Cooklev tested two configurations: (1) a 30/30 configuration (where the data rates were configured for 30 Mbps in the downstream direction and 30 Mbps in the upstream direction); and (2) a 50/10 configuration (where the data rates were configured for 50 Mbps in the downstream direction and 10 Mbps in the upstream direction). *Id.* at ¶¶ 693–710. Both configurations showed that max_delay_octect$_{DS,0}$ specified a maximum.

For the 30/30 configuration, the max_delay_octect$_{DS,0}$ specified 36,776 bytes of memory for the deinterleaver ($\frac{max\_delay\_octect_{DS,0}}{2} = \frac{73,552}{2} = 36,776$). Exh. 8 at ¶ 712. Defendant's product (per the captured LP$_0$ field) utilized 36,654 bytes of memory for the deinterleaver. *Id.* Because 36,776 is greater than 36,654, the results indicated that max_delay_octect$_{DS,0}$ specified a maximum value. *Id.* And they rebut Defendant's argument that the value is a minimum.

The 50/10 configuration testing yielded similar results. The captured max_delay_octect$_{DS,0}$ field specified 45,749 bytes of memory for the deinterleaver ($\frac{max\_delay\_octect_{DS,0}}{2} = \frac{91,498}{2} = 45,749$). Exh. 8 at ¶ 714. The captured LP$_0$ field specified that Defendant's product utilized 45,594 bytes of memory for the deinterleaver. Because 45,749 is greater than 45,594, the results indicated that the max_delay_octect$_{DS,0}$ field specified a maximum value. *Id.* And, like the 30/30 configurations, the results rebut Defendant's "minimum" argument.

Dr. Cooklev then relied on these test results to conclude that the max_delay_octect$_{DS,0}$ field specified "a maximum number of bytes of memory that are available to be allocated to a deinterleaver," per the claims of the Family 3 Patents (Exh. 8 at ¶¶ 1182):

12

> The testing results and analyses for the 5168 product (which contains the BCM63168) also shows that the $max\_delay\_octet_{DS,0}$ field specifies a maximum number of bytes of memory that are available to be allocated to a deinterleaver. In each configuration that was tested, the amount of bytes used by the deinterleaver (reflected in the latency patent description information) was less than the amount of memory specified in the $max\_delay\_octet_{DS,0}$ field of the O-PMS message as being available to allocate to the downstream deinterleaver.

Defendant does not address any of this testing evidence or Dr. Cooklev's ultimate opinions. But the evidence further shows the existence of a genuine issue of material fact for trial.

### 3. Source Code Analysis

Finally, Dr. Cooklev's source-code analysis—which Defendant also ignores—shows that Defendant's products meet the "specifying a maximum number of bytes" limitation: the products, through ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See, e.g.*, Exh. 8 at ¶¶ 718–749, 1183. Dr. Cooklev relied on this source-code evidence to conclude that the $max\_delay\_octect_{DS,0}$ field within the O-PMS message was a "message . . . specifying a maximum number of bytes of memory that are available to be allocated to a deinterleaver," per the claims of the Family 3 Patents (Exh. 8 at ¶¶ 1183):

> The source code for the BCM63148 and BCM63168 also shows that the O-PMS message specifies the maximum number of bytes available to be allocated to a deinterleaver. As I explain above, the source code ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This further confirms my conclusion that each of the CommScope CPE Products receive the O-PMS message specifying a maximum number of bytes of memory that are available to be allocated to a deinterleaver.

This evidence, which Defendant does not address, is sufficient to raise a triable issue. Defendant instead points to general deposition testimony from interested Broadcom corporate

13

witnesses (Defendant is Broadcom's customer) that Broadcom would ▇▇▇▇▇▇▇▇. Mot. at 5. But that testimony is not grounds for summary judgment, as the Delaware Court held when it rejected the same argument: "[t]he probative weight of Broadcom's witness's testimony should be determined by a jury." Dkt. 350-12 at 13. Indeed, the Delaware jury did disregard Broadcom's interested witness testimony in view of the hard evidence—such as the testing and source-code analysis—that showed infringement. The Court then upheld the jury's verdict post-trial.

*   *   *   *   *

Defendant ignores the evidence, but it all points in the same direction of a genuine question on infringement. Thus, should the Court allow Defendant to relitigate infringement of the Family 3 Patents, the record establishes a genuine issue of material fact for trial.

## VII. CONCLUSION

For the foregoing reasons, TQ Delta requests that the Court deny Defendant's Motion. Given that Defendant repeats issues already decided at trial in Delaware, forcing the expense of this briefing, TQ Delta also asks the Court for any other relief it considers just and proper.

Dated: January 6, 2023

Respectfully Submitted,

/s/ Christian J. Hurt

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(Pro hac vice)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(Pro hac vice)
rchiplunkar@mcandrews-ip.com

Ashley Ratycz (admitted *pro hac vice*)
aratycz@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

**ATTORNEYS FOR PLAINTIFF
TQ DELTA, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this January 6, 2023 on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ Christian Hurt
Christian Hurt