**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TQ DELTA, LLC, | Civil Action No.: 2:21-cv-00310-JRG |
| *Plaintiff,* | |
| v. | |
| COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC, | |
| *Defendants.* | |

**COMMSCOPE'S OPPOSITION TO PLAINTIFF TQ DELTA, LLC'S
MOTION TO STRIKE PORTIONS OF THE
EXPERT REPORT OF STEPHEN L. BECKER, Ph. D (Dkt. No. 345)**

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     ARGUMENT ......................................................................................................... 3

    A.    Dr. Becker's Opinions Regarding SSPPU Are Admissible............................................ 4

        1.    Dr. Becker's Opinions Are Supported by TQ Delta's Own Experts, CommScope's Experts, and Fact Witnesses............................................................... 4

        2.    Dr. Becker's Opinions as to The SSPPU Are Consistent With Case Law. ............... 9

    B.    Dr. Becker Properly Relies on the Sisvel Licenses as a "Reasonableness Check." ....... 11

    C.    Dr. Becker's Opinion Meets the Standard for Expert Testimony................................. 13

III.    CONCLUSION ................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012) ............................................................................................... 13

*Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*,
  No. 2:22-cv-00126-JRG-RSP, 2022 WL 14328350 (E.D. Tex. Oct. 24, 2022) ............... 2, 6, 7

*Bio-Rad Labs. Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020) ............................................................................................... 13

*Campbell v. Metro. Prop. & Cas. Ins. Co.*,
  239 F.3d 179 (2d Cir. 2001) ...................................................................................................... 4

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
  Civ. A. No.. 09-290, 2012 WL 5451567 (W.D. Pa. Nov. 7, 2012) ......................................... 12

*Cornell Univ. v. Hewlett-Packard Co.*,
  609 F. Supp. 2d 279 (N.D.N.Y. 2009), *amended*, No. 01-CV-1974, 2009 WL
  1405208 (N.D.N.Y. May 15, 2009) ............................................................................... 9, 10, 11

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ........................................................................................................ 3, 4, 14

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ......................................................................................... 10, 13

*Genband US LLC v. Metaswitch Networks Corp.*,
  No. 2:14-CV-33-JRG-RSP, 2016 WL 125503 (E.D. Tex. Jan. 9, 2016) ........................... 14, 15

*GPNE Corp. v. Apple, Inc.*,
  No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ......................... 12, 13

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ..................................................... 14

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
  No. 11 C 9308, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) ......................................... 9, 10, 11

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Circ. 2012) .......................................................................................... 9, 11

*Lucent Tech., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ......................................................................................... 10, 11

*Maxwell v. Ford Motor Co.*,
    160 F. App'x 420 (5th Cir. 2005) ....................................................................11

*Micro Chem, Inc. v. Lextron, Inc.*,
    317 F.3d 1387 (Fed. Cir. 2003)........................................................................3

*Personalized Media Communications, LLC v. Apple, Inc.*,
    No. 2:15-cv-01366-JRG-RSP, 2021 WL 662238 (E.D. Tex. Feb. 20, 2021).......................15

*Solas OLED Ltd. v. Samsung Elecs. Co.*,
    No. 2:21-CV-105-JRG-RSP, 2022 WL 1912868 (E.D. Tex. May 30, 2022).......................15

*TQP Dev., LLC v. 1-800-Flowers.com, Inc.*,
    No. 2:11-CV-248-JRG-RSP, 2013 WL 12143821 (E.D. Tex. Nov. 12, 2013) ......................14

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014).......................................................................10

**Statutes**

Fed. R. Evid. 702 ....................................................................................3

Fed. R. Evid. 703 ...................................................................................11

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
| --- | --- |
| Ex. A | Excerpts from the Expert Report of Stephen L. Becker, Ph.D., dated November 18, 2022 ("Becker Rpt.") |
| Ex. B | Excerpts from the Expert Report of Vijay Madisetti, Ph.D., on Infringement of the Family 4 and Family 6 Patents, dated August 29, 2022 ("Madisetti Rpt.") |
| Ex. C | Excerpts from the Expert Report of Arthur Brody, Ph.D., on Infringement of the Family 1 and Family 10 Patents by CommScope, dated August 29, 2022 ("Brody Rpt.") |
| Ex. D | Excerpts from the Opening Expert Report of Todor Cooklev, Ph.D., dated August 29, 2022 ("Cooklev Rpt.") |
| Ex. E | Errata to the transcript of the December 7, 2022  deposition of Dr. Niel Ransom ('Ransom Errata") |
| Ex. F | Excerpts from the transcript of the December 7, 2022 deposition of Dr. Stephen Becker ("Becker Tr.") |
| Ex. G | Excerpts from the Expert Report of Vijay Madisetti, Ph.D., on Infringement of U.S. Patent No. 8,462,835 (Family 6), dated July 10, 2020, submitted in *TQ Delta, LLC v. 2Wire, Inc.*, C.A. No. 1:13-cv-01835-RGA (D. Del Nov. 4, 2013) ("Madisetti 2Wire Rpt.") |
| Ex. H | Excerpts from the Expert Report of Todor Cooklev, Ph.D., Regarding Infringement of the Family 3 Patents, dated November 28, 2018, submitted in *TQ Delta, LLC v. 2Wire, Inc.*, C.A. No. 1:13-cv-01835-RGA (D. Del Nov. 4, 2013) ("Cooklev 2Wire Rpt.") |
| Ex. I | Excerpts from the transcript of the December 8, 2022 deposition of Dr. Todor Cooklev ("Cooklev Tr.") |
| Ex. J | Excerpts from the data sheet for BCM63148, bearing Bates numbers BRCM028148–477 |
| Ex. K | Excerpts from the data sheet for BCM63168, bearing Bates numbers BRCM09978–10499 |
| Ex. L | Excerpts from the transcript of the August 24, 2022 deposition of Dr. Gong-San Yu ("Yu Tr.") |
| Ex. M | Excerpts from the transcript of the August 12, 2022 deposition of Jaime Salazar  ("Salazar Tr.") |
| Ex. N | Excerpts from the transcript of the July 28, 2022 deposition of Benjamin Miller ("Miller Tr.") |

| Exhibit No. | Description |
|:---:|:---|
| Ex. O | Excerpts from the Corrected Expert Report of Jonathan D. Putnam, dated September 3, 2022 ("Putnam Rpt.") |

██████████████████████████████

## I.  INTRODUCTION

CommScope hereby opposes TQ Delta's Motion to Strike Portions of the Expert Report of Stephen L. Becker, Ph.D.  Dkt. No. 345.  The motion raises two separate points.  Neither has merit.

TQ Delta's motion seeks to strike core opinions by Dr. Becker where he applies an apportionment analysis that focuses recoverable damages on the actual footprint of the claimed inventions.  Dr. Becker's apportionment analysis first identifies applicable law—that "courts must insist on a more realistic starting point for the royalty calculations by juries—often, the smallest saleable unit and, at times, even less."  Ex. A, Becker Rpt. ¶ 23 (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014)).  Dr. Becker's apportionment analysis then points out an indisputable fact—that "TQ Delta's infringement theories are based on functionality provided by the 'DSL chipset' within the Accused Products."  *Id.* ¶ 24 (footnote omitted).  On that foundation, Dr. Becker opines: "Thus, the SSPPU associated with the accused products is no broader than the chipset that includes the DSL functionality in each of the Accused Products."  *Id.*  He then opines that "apportionment of the value of the DSL chipsets is needed to limit the analysis to the 'footprint' of the claimed inventions."  *Id*.

TQ Delta does not dispute the foundation for Dr. Becker's apportionment analysis, nor could it.  Both parties' technical experts focus their infringement and noninfringement analyses on *the functionality provided by the chipsets*.[1]  Dr. Becker confirmed that indisputable fact through discussions with CommScope's technical experts.  *See, e.g.*, *id*. ("Based on my discussions with Dr.

---

[1] TQ Delta's own motions for summary judgment include statements of undisputed material facts that make this very point.  *See, e.g.*, Dkt. No. 347 at SUMF #10 ("The 5031NV Accused Product includes the Broadcom BCM 6368 DSL chipset to provide the accused DSL functionality"), SUMF #11 ("The 5168N, the 5168NV, the 5268ac, the NVGG589, and the NVG599 Accused Products includes the Broadcom BCM63168 DSL chipset to provide the accused DSL functionality."), and SUMF #12 ("The BGW210-700 ("BGW210") and the NVG44xs series Accused Products use the Broadcom BCM63148 DSL chipset to provide the accused functionality.").

███████████████████████████

Cimini, Dr. Ransom, and Dr. Al-Dhahir, it is my understanding that for all of the asserted claims of the Patents-in-Suit, TQ Delta's infringement theories are based on functionality provided by the 'DSL chipset' within the Accused Products.").

TQ Delta's motion tries to create an issue where none exists.  The motion states that "[t]here are no written opinions by CommScope's technical experts . . . that the SSPPU in this case is the DSL chipset."  Mot. at 2.  But the technical experts are not tasked with opining whether particular components qualify as a SSPPU.  Instead, they address the pertinent technical functionality—and here that functionality is on the chipsets.  Dr. Becker, as a damages expert, is entitled to rely on his understanding of the information from the technical experts and conclude that "the SSPPU associated with the accused products is no broader than the chipset that includes the DSL functionality."  And he is permitted to gain that understanding through discussions with the technical experts.  *See, e.g.*, *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, No. 2:22-cv-00126-JRG-RSP, 2022 WL 14328350, at *2-3 (E.D. Tex. Oct. 24, 2022) (permitting defendant's damages expert to rely on conversations with technical expert to form damages-related opinions).  Any concerns TQ Delta has with Dr. Becker's SSPPU-related opinions can be addressed through cross-examination at trial.  It is no basis for excluding those opinions.

Next, TQ Delta's motion seeks to eliminate Dr. Becker's opinions relating to Sisvel International S.A.'s published DSL patent licensing rates (the "Sisvel Rate Card").  The motion argues that Dr. Becker did not rely on a "technical comparability opinion" from one of CommScope's technical experts.  Mot. at 8.  TQ Delta's argument fails for multiple reasons.  Foremost, the Sisvel Rate Card is not the basis for Dr. Becker's opinions regarding damages.  Instead, as Dr. Becker noted, the Sisvel Rate Card includes rates for DSL technologies "based on customary and appropriate practices in the market…"  Ex. A, Becker Rpt. ¶ 202.  Dr. Becker then relies on ███████████

███████████████████████████

████████████████████████████

████████████████████████████████████████

████████████████    *Id.* ¶ 203.   Dr. Becker then relies on that information not for calculating

damages in this case, but merely as "a reasonableness check on the royalty rates that I determine

using the Market Approach and the hypothetical negotiation."  *Id.* ¶ 205.  Notably, Sisvel was not

the only one to identify the technical comparability.

Accordingly, TQ Delta's motion to strike should be denied.

## II.    ARGUMENT

Expert testimony must "help the trier of fact to understand . . . or to determine a fact in issue."

Fed. R. Evid. 702; *see, e.g., Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-93 (1993).

Courts have the "responsibility of acting as gatekeepers to exclude unreliable expert testimony."  Fed.

R. Evid. 702 (Comm. Notes on Rules – 2000 Amend.).   Rule 702 states that an expert witness may

testify in the form of an opinion "if . . . (b) the testimony is based upon sufficient facts or data; (c)

the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied

the principles and methods to the facts of the case."   This rule, and the Court's gatekeeper function,

however, does not mean that all disputes over the correctness or propriety of an expert's opinion are

grounds for exclusion.   The Federal Circuit has stated:

> When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of
> the trial court to evaluate the correctness of facts underlying one expert's testimony.
> We find the Advisory Committee note to Rule 702 instructive in this regard: "When
> facts are in dispute, experts sometimes reach different conclusions based on
> competing versions of the facts. The emphasis in the amendment on "sufficient facts
> or data" is not intended to authorize a trial court to exclude an expert's testimony on
> the ground that the court believes one version of the facts and not the other.

*Micro Chem, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) (quoting Fed. R. Evid. 702).

Indeed, as the Supreme Court stated in *Daubert*: "Vigorous cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

means of attacking shaky but admissible evidence."  509 U.S. at 596; *Campbell v. Metro. Prop. &*

███████████████████████████████████

*Cas. Ins. Co.*, 239 F.3d 179, 186 (2d Cir. 2001) ("[G]aps or inconsistencies in the reasoning ... go to the weight of the evidence, not to its admissibility.").  For the reasons stated below, Dr. Becker's opinions and testimony on damages issues are proper and admissible under Rule 702 and *Daubert*.

### A. Dr. Becker's Opinions Regarding SSPPU Are Admissible.

#### 1. Dr. Becker's Opinions Are Supported by TQ Delta's Own Experts, CommScope's Experts, and Fact Witnesses.

It is uncontested that the allegedly infringing DSL functionality is wholly contained in the Broadcom DSL chipset in the Accused Products.  *See, e.g.*, Dkt. No. 347 at SUMF #10, #11, and #12.  TQ Delta wrongly claims that Dr. Becker's opinions concerning the SSPPU being the Broadcom DSL chipset are "not supported by evidence," as TQ Delta's assertion is contradicted by ample evidence, including its own assertions and those of its experts.  Throughout their reports, TQ Delta's own experts refer to the DSL chipset as the portion of a device that actually performs the claimed DSL functionality.  *See, e.g.*, Ex. B, Madisetti Rpt. ¶ 144; Ex. C, Brody Rpt. ¶ 130; Ex. D, Cooklev Rpt. ¶¶ 61, 635, 637, 654–55.  Additionally, both CommScope and Broadcom fact witnesses confirmed that the relevant accused DSL functionality resides within the Broadcom chipsets.  *See infra* note 4.

Moreover, Dr. Becker's reliance on the DSL chipset as the SSPPU is fundamentally informed by relevant licenses that underpin his market approach.  Dr. Becker opines that under a market approach, the ███████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████ Ex. A, Becker Rpt ¶ 214.  Broadly speaking, each of these licenses covered the sale of integrated circuits that implemented DSL functionality ("DSL chipsets").  *Id.* ¶¶ 122–124 (██████ 138-140, 144, 149–151 (██████ 162–165 (█████ As such, it was ███████ strategy and established practice to ████ ███████████████████████████████████████████. It should come as no

███████████████████████████████████

surprise to TQ Delta that Dr. Becker, in utilizing these comparable license agreements for the

hypothetical negotiation, ████████████████████████████████████████

███████████████████████████████████.

In addition, as he described in his report and during his deposition, Dr. Becker spoke with

CommScope technical experts Dr. Leonard Cimini, Dr. Naofal Al-Dhahir, and Dr. Niel Ransom to

confirm his understanding that the accused Broadcom DSL chipsets provide the functionality that is

at issue under TQ Delta's infringement theories.[2]  *See, e.g.*, Ex. A, Becker Rpt. ¶¶ 24, 89, 270, 307;

Ex. F, Becker Tr. at 210:15–215:25.  Dr. Becker described his conversations with these experts in

his report and during his deposition, and he is subject to cross-examination about them (as are Drs.

Cimini, Al-Dhahir, and Ransom).  *Id.*  TQ Delta nevertheless complains that Dr. Becker's report is a

"black box" regarding his and the technical experts' methodology.  *See* Mot. at 5.  Putting aside the

fact that using the *same* class of components that were ███████████ requires no further

explanation, TQ Delta had ample opportunity to depose Dr. Becker regarding his methodology and

his discussions with the technical experts.  Indeed, at Dr .Becker's deposition, TQ Delta confirmed

that Dr. Becker had conversations with Drs. Cimini, Al-Dhahir, and Ransom regarding the DSL

chipsets containing the pertinent functionality.  Ex. F, Becker Tr. at 210:15–211:11.  Dr. Becker

further explained the precise methodology he employed for determining the appropriate SSPPU.

Specifically, for each patent he discussed with the appropriate technical expert whether the inventive

elements of what TQ Delta alleged practiced the patent were found within the Broadcom chipset or

were found within the CPE equipment more broadly.  *Id.* at 211:12–212:2.  Dr. Becker also explained

---

[2] In its motion, TQ Delta asserts that Dr. Ransom "testified under oath that he did not have any discussion with Dr. Becker."  Mot. at 4.  Dr. Ransom, however, did not recall at the time of his deposition that he had in fact spoken to Dr. Becker several times prior to submission of CommScope's rebuttal reports.  As part of his review of his deposition transcript, Dr. Ransom has submitted an errata correcting his prior statement.  *See* Ex. F, Ransom Errata.

███████████████████████████████

that he considered additional evidence, including the undisputed fact that the relevant DSL chipsets *were in fact sold* to CommScope, thus proving that the chipsets were *saleable*. *Id.*. As a result of the evidence and his analysis, Dr. Becker concluded that the DSL chipsets found in the accused CommScope CPE products, which TQ Delta alleges practice the asserted patents, are the appropriate SSPPU ████████████████████████ *Id.* at 213:3-21. TQ Delta further deposed Dr. Becker as to the metes and bounds of his opinion that the DSL chipset is the SSPPU (*id.* at 213:22–215:25) and more broadly as to his opinion regarding the SSPPU (*id.* at 216:2–224:19). In view of the foregoing, TQ Delta bears responsibility for any ignorance as to the basis for Dr. Becker's SSPPU opinion.

Despite Dr. Becker's clear explanation, TQ Delta now argues that because CommScope's technical experts did not provide a *written* opinion on the SSPPU, Dr. Becker's opinions relying on those experts should be excluded. Mot. at 4–5. But there is no such requirement in the law, and TQ Delta cites no authority indicating otherwise. To the contrary, this Court's precedent plainly demonstrates that TQ Delta's relief should be denied. *See, e.g., Arigna Tech., Ltd. v. Nissan Motor Co.*, No. 2:22-cv-00126-JRG-RSP, 2022 WL 14328350, at *2–3 (E.D. Tex. Oct. 24, 2022). In *Arigna*, the plaintiff sought to exclude the apportionment analysis of the defendant's damages expert because that expert relied upon conversations with the defendant's technical expert to inform his apportionment analysis. *Id.* In denying the motion, the court held that "there is no *per se* rules against relying on a conversation between experts" and a damages expert is "permitted to rely on 'a technical expert in the industry to help form [his] damages opinion.'" *Id.* at *8 (citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014)). The court further relied upon the fact that the damages expert provided multiple citations to the conversation in his report and was made available for a deposition, and thus the court concluded that there was neither a Rule 26 violation nor a Fed. R. Evid. 702 violation. *Id.* at *7. Here, Dr. Becker cited his conversations with Drs. Cimini, Al-Dhahir, and

███████████████████████████████████

Ransom throughout his report (as TQ Delta admits in its motion) and was deposed as to his methodologies and opinions.  *See*, *e.g.*, Ex. A, Becker Rpt. ¶¶ 24, 89, 222, 224, 270, 276, 307; Ex. F, Becker Tr. at 210:15–215:25.   As such, Dr. Becker's methodologies and opinions as to the appropriate SSPPU, which are otherwise unchallenged by TQ Delta's motion, are more than sufficiently reliable and relevant to be helpful to the finder of fact and thus warrant admission.

Moreover, TQ Delta can hardly be heard to complain about Dr. Becker's opinion, as the opinions of TQ Delta's own technical experts confirm that the Broadcom DSL chipset is the SSPPU. For example, both Dr. Madisetti and Dr. Brody assert that the ████████████████████████ ████████████████████████████████████████████  Ex. B, Madisetti Rpt. ¶ 144; Ex. C, Brody Rpt. ¶ 130.  Dr. Cooklev asserts that ██████████████████████████ ████████████████████████████████████████████████ ██████████████████  Ex. D, Cooklev Rpt. ¶¶ 61, 654–55.  In fact, both Dr. Cooklev and Dr. Madisetti previously opined in the Delaware litigation that "[t]he accused DSL functionality is implemented or controlled by a DSL chipset that is included in each of Accused Products."  Ex. G, Madisetti *2Wire* Rpt. ¶ 100; Ex. H, Cooklev *2Wire* Rpt. ¶ 123.[3]   Given these admissions, it is

---

[3] The expert reports of TQ Delta's experts are full of similar statements confirming that the accused functionality is in the DSL chipset.  For example, Dr. Cooklev cites to Broadcom documentation as indicating that the chipsets are standard-compliant.  *See, e.g.*, Ex. D, ██████████████████████████ ████████████████████████████████████████████████████████████████████████

██████████████████████████████

unsurprising that TQ Delta's experts all rely on the fact that the accused functionality is embodied in the Broadcom DSL chipsets in the Accused Products.  Nowhere do any of TQ Delta's experts discuss how any other components of the Accused Products allegedly practice the claimed invention.  *See*, *e.g.*, Ex. I, Cooklev Tr. at 130:18–141:7 (admitting no novel advancements claimed in the patents with respect to any element of the CommScope CPE products, other than the DSL chip).  Not surprisingly, the fact witnesses, including Broadcom's own witness, uniformly agree.[4]

Perhaps most damning to TQ Delta's motion is TQ Delta's own admission.  In seeking summary judgment, TQ Delta itself states as an ***undisputed material fact*** that the DSL chipset provides the accused DSL functionality.  *See, e.g.*, Dkt. No. 347 at SUMF #10 ("The 5031NV Accused Product includes the Broadcom BCM 6368 DSL chipset to provide the accused DSL functionality"), SUMF #11 ("The 5168N, the 5168NV, the 5268ac, the NVGG589, and the NVG599

────────────────────

██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████

[4] Dr. Gong-San Yu, Broadcom's corporate witness, ████████████████████

██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████

███████████████████████

Accused Products includes the Broadcom BCM63168 DSL chipset to provide the accused DSL functionality."), and SUMF #12 ("The BGW210-700 ("BGW210") and the NVG44xs series Accused Products use the Broadcom BCM63148 DSL chipset to provide the accused functionality.").

Thus, not only is there ample evidence in the record that the SSPPU is the Broadcom DSL chipset in the Accused Products, but the fact is undisputed by TQ Delta and its experts.  Dr. Becker's damages analysis based on this definition of the SSPPU is therefore well-supported.

### 2.     Dr. Becker's Opinions as to The SSPPU Are Consistent With Case Law.

TQ Delta's challenge is wrong as a matter of law: Dr. Becker's opinions are consistent with the specific methodology set forth by the Federal Circuit, with decisions in prior cases about what constitutes a SSPPU, and with the undisputed evidence about how CommScope's products operate in this case.  The Federal Circuit has long held that, for multi-component products such as the Accused Products in this case, the royalty base must generally be the "smallest salable patent practicing unit."  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67–68 (Fed. Circ. 2012) (citing *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283 (N.D.N.Y. 2009), *amended*, No. 01-CV-1974, 2009 WL 1405208 (N.D.N.Y. May 15, 2009)).  And, for patents claiming a novel invention that is utilized in a larger computing system, the "smallest salable patent-practicing unit" is not the entire computing system, but the smaller piece utilizing the claimed invention.  *See Hewlett-Packard*, 609 F. Supp. at 283; *see also In re Innovatio IP Ventures, LLC Pat. Litig.*, No. 11 C 9308, 2013 WL 5593609, at *13-14 (N.D. Ill. Oct. 3, 2013) (holding that the SSPPU was a Wi-Fi chip, which practiced the claimed Wi-Fi functionality, not the entire system with all end-product devices).

As demonstrated above, all of the technical experts from both sides agree that the accused DSL functionality is present in the Broadcom DSL chipsets, *not* in the other components of the larger CPE unit sold by CommScope to its customers.  The fact that some claims recite elements beyond

the DSL chipset (such as a generic transceiver) does make those elements an appropriate part of the SSPPU.  *See, e.g., Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338 (Fed. Cir. 2009) (although patent was for "a method of entering information into fields on a computer screen without using a keyboard," and the claims required a computer with a display, the Court noted that the SSPPU was the infringing software, not the "'infringing' computers loaded with the software"); *Hewlett-Packard*, 609 F. Supp. 2d at 283 (holding that processor, not entire claimed computing system, was SSPPU); *In re Innovatio*, 2013 WL 5593609 at *14 (rejecting contention that claims with antennas, access points, processors, and radios, cannot have as the SSPPU a WiFi chip).  Therefore, the Broadcom DSL chipset is the SSPPU in this case, and Dr. Becker properly relied on this SSPPU when forming his damages opinions.  *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327–28 (Fed. Cir. 2014) ("Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature . . . the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology.  To hold otherwise would permit the entire market value exception to swallow the rule of apportionment."); *see also Ericsson* 773 F.3d at 1226 ("What is taken from the owner of a utility patent (for purposes of assessing damages under § 284) is only the patented technology, and so the value to be measured is only the value of the infringing features of an accused product."); *Lucent*, 580 F.3d at 1338 (vacating a damages award where the expert based their damages assessment on the cost of the entire accused product, rather than the much smaller patented portion).

In other words, TQ Delta does not question the methodology that Dr. Becker used.  Instead, citing no authority in support of its contention that the Broadcom DSL chipsets are not the SSPPU, TQ Delta ignores the body of case law applying the SSPPU rule to specific facts in a way that directly supports Dr. Becker's opinion.  *See LaserDynamics*, 694 F.3d at 67–68 (SSPPU was optical disk drive, not entire laptop); *Lucent*, 580 F.3d at 1338; *Hewlett-Packard*, 609 F. Supp. 2d at 283 (SSPPU

was smaller processor within larger computing system); *In re Innovatio*, 2013 WL 5593609, at *14 (SSPPU was Wi-Fi chip, rather than entire device).  TQ Delta's challenge to Dr. Becker's damages analysis using the SSPPU is therefore wrong as a matter of law and should be rejected.

> **B.     Dr. Becker Properly Relies on the Sisvel Licenses as a "Reasonableness Check."**

TQ Delta seeks to exclude Dr. Becker's analysis of the Sisvel International S.A. licensing agreements and Rate Card ("Sisvel Rate Card")[5] on the basis that he did not rely on a "technological comparability determination" by a technical expert.  *See* Mot. at 8.  But such a determination is not required here, and TQ Delta cites no authority indicating that it is.  To the contrary, an expert may rely on information that is "reasonably relied upon" in his or her field, and that can "assist[] the jury in evaluating an expert's opinion."  *See* Fed. R. Evid. 703 (2000 Amendments); *Maxwell v. Ford Motor Co.*, 160 F. App'x 420, 424 (5th Cir. 2005) ("Experts may rely on facts that are otherwise inadmissible if of a type reasonably relied upon by experts in the particular field . . . . Trial courts should defer to the expert's opinion of what data they find reasonably reliable.") (internal quotations omitted).  That is all that Dr. Becker has done here—he relies on the Sisvel Rate Card as a "reasonableness check" to provide context for his and Dr. Putnam's opinions on an appropriate royalty rate, which will assist the jury in evaluating the reasonableness of the competing rates.

Courts routinely allow damages experts to include analysis of licenses and documents in order "to check the reasonableness of [the expert's] royalty calculation."  *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *9–10 (N.D. Cal. Apr. 16, 2014) (allowing expert's testimony regarding settlement licenses, even though settlement licenses are "not perfectly

---

[5] Like TQ Delta, Sisvel International S.A. is a patent licensing company; it manages patents and is engaged with various licensing programs to generate revenue.  It owns a DSL patent portfolio pertaining to VDSL, VDSL2, and G.fast, and describes products relevant to these patents as encompassing CPE such as DSL modems, router, gateways, transceivers and telecommunication equipment.  Sisvel International S.A. publishes a "rate card" of royalty rates that it offers to those in the DSL industry.

██████████████████████████████

comparable" and "may generally be of debatable relevance" because the expert "use[d] the allegedly comparable licenses as mere data points to verify whether his [royalty rate] result is reasonable."); *see also Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, Civ. A. No. 09-290, 2012 WL 5451567, at *5 (W.D. Pa. Nov. 7, 2012) (declining to exclude document containing plaintiff's $2,000,000 damages "forecast" from defendant's damages expert's opinion, because the expert was "not directly relying on the $2,000,000 figure set forth in this document to reach his opinion of the reasonable royalty," and "because, even if the document was excluded, [the expert's] opinion [regarding] the reasonable royalty" would be the same).

Here, Dr. Becker explains that his references to the Sisvel Rate Card are to help provide context for his assessment of Dr. Putnam's damages opinions and his own opinion based on the Aware Licenses.  As Dr. Becker opines: ██████████████████████████

██████████████████████████████████████████████

████████████████     Ex. A, Becker Rpt. ¶ 205.  It is therefore irrelevant if, as TQ Delta complains, Dr. Becker has not obtained a technological comparability opinion on the Sisvel Licenses' technology—as TQ Delta notes, Dr. Becker himself explains that he did not utilize the Sisvel Licenses as the basis for his hypothetical negotiation analysis.  *See* Mot. at 9; Ex. F, Becker Tr. at 197:18–198:5.  Instead, Dr. Becker performs his hypothetical negotiation analysis starting with the Aware Licenses.  *See* Ex. A, Becker Rpt. ¶¶ 212–64.  Dr. Becker's use of the Sisvel Licenses as a "reasonableness check" against his royalty rate conclusions based on the Aware Licenses is therefore permissible.

TQ Delta's motion also ignores the fact that a technical comparability analysis of the licensed Sisvel patents is unnecessary under TQ Delta's own damages theory.  According to Dr. Putnam, each family that is essential to DSL is worth ████ per essential standard, regardless of the quality of the patent family.  Ex. O, Putnam Rpt. ¶ 383.  And Dr. Cooklev identified at least four Sisvel patents that

██████████████████████████████████

he believes are essential to at least one DSL standard.  Ex. D, Cooklev Report ¶ 1363 (identifying U.S. Pat. Nos. 6,768,772; 6,934,326; 6,987,802; 7,012,954).  Thus, under TQ Delta's own theory of the case, no further technical comparison is required.[6]

Given Dr. Becker's limited and specific use of the Sisvel Licenses as a "reasonableness check," exclusion of his opinions is improper.  As the Federal Circuit has explained, "the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Ericsson*,773 F.3d at 1227; *see also ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc*., 694 F.3d 1312, 1333 (Fed. Cir. 2012) (allowing expert testimony relying on licenses that were not directly related to the asserted patents, because "a party's quarrel with the facts the damages expert use[s] go[es] to the weight, not admissibility, of the expert's opinion." (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011)); *Bio-Rad Labs. Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373–74 (Fed. Cir. 2020) (finding no abuse of discretion in allowing damages expert to testify about licenses for patents in the same field as the asserted patents).  "As cross-examination can cure any residual defect in [an expert's] license comparison, exclusion under *Daubert* would be improper."  *GPNE Corp.*, 2014 WL 1494247 at *10.

**C.     Dr. Becker's Opinion Meets the Standard for Expert Testimony.**

At most, TQ Delta's complaints about Dr. Becker's opinions boil down to disputes that can be addressed through cross-examination.  If an expert's "methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i*, 598 F.3d at 852.  Merely "point[ing] out various weaknesses" in an expert's damages calculation is no basis for exclusion.  *Id*. at 854.  Dr. Becker's opinion is admissible under these principle since Dr.

---

[6] Moreover, ████████████████████████████████
██

13

████████████████████████████████████████

Becker applied the appropriate methodology for assessing patent damages.  For example, Dr. Becker relied on uncontested facts regarding the chipset DSL functionality, and he properly considered and applied Federal Circuit authority as to the SSPPU.  In his analysis, he relied on the Aware Licenses as part of the basis for his opinion, and he used the Sisvel Licenses only as a reasonableness check on his already-formed opinion.  *See* Ex. A, Becker Rpt. ¶ 205 ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████   *see, e.g.*, *TQP Dev., LLC v. 1-800-Flowers.com, Inc.*, No. 2:11-CV-248-JRG-RSP, 2013 WL 12143821, at *3 (E.D. Tex. Nov. 12, 2013) ("Dr. Becker has explained the reasoning behind his damages theory.  Whether his specific methodology and the reasoning are persuasive is a question for the jury.  It is enough that Dr. Becker has expressed his opinion in a manner that could be helpful to the jury and that his opinion is relevant and supported by evidence.  Distilled to their essence, Defendants' disagreements are with Dr. Becker's conclusions, not his methodology.  More is needed to bar expert testimony under Rule 702 and *Daubert*.").

If TQ Delta takes issue with Dr. Becker's methodology and conclusions, it will have the opportunity to challenge them via cross-examination at trial.  *See Daubert*, 509 U.S. at 596; *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 125503, at *4 (E.D. Tex. Jan. 9, 2016) (declining to exclude expert testimony and holding that "weigh[ing] the importance and credibility of various pieces of evidence" is "a task for the fact finder"); *Personalized Media Communications, LLC v. Apple, Inc.*, No. 2:15-cv-01366-JRG-RSP, 2021 WL 662238, at *5 (E.D. Tex. Feb. 20, 2021) (declining to exclude expert testimony and holding that the "vigorous cross-examination" is the traditional means of attacking evidence, not exclusion); *Solas OLED Ltd. v. Samsung Elecs. Co.*, No. 2:21-CV-105-JRG-RSP, 2022 WL 1912868 at *2 (E.D. Tex. May 30,

2022) (declining to strike expert opinion where issues with an expert's consideration of licensing rates goes to weight and credibility, not admissibility).

## III.    CONCLUSION

For the reasons set forth above, CommScope respectfully requests that the Court deny TQ Delta's Motion to Strike Portions of the Expert Report of Stephen L. Becker, Ph.D.

Dated this 6th day of January, 2023   Respectfully submitted,

             By: */s/ Eric H. Findlay*
             Eric H. Findlay
             State Bar No. 00789886
             Brian Craft
             State Bar No. 04972020
             FINDLAY CRAFT, P.C.
             7270 Crosswater Avenue, Ste. B
             Tyler, TX 75703
             903-534-1100 (t)
             903-534-1137 (f)
             efindlay@findlaycraft.com
             bcraft@findlaycraft.com

             Douglas J. Kline
             Lana Shiferman
             GOODWIN PROCTER LLP
             100 Northern Avenue
             Boston, MA  02210
             P:  (617) 570-1000
             F:  (617) 523-1231
             dkline@goodwinlaw.com
             lshiferman@goodwinlaw.com

             Brett Schuman
             Rachel M. Walsh
             GOODWIN PROCTER LLP
             Three Embarcadero Center, 28th Floor
             San Francisco, CA 94111
             P:  (415) 733-6000
             F:  (415) 677-9041
             bschuman@goodwinlaw.com
             rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Email: *ross.barton@alston.com*
*scott.stevens@alston.com*
*kirk.bradley@alston.com*
*stephen.lareau@alston.com*
*karlee.wroblewski@alston.com*
*nic.marais@alston.com*
*erin.beaton@alston.com*
*mary.riolo@alston.com*
Telephone: 704-444-1000
Facsimile: 704-444-1111

Katherine G. Rubschlager (Cal. Bar No.
328100)
ALSTON & BIRD LLP
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
Email: *katherine.rubschlager @alston.com*
Telephone: 650-838-2004
Facsimile: 650-838-2001

***Attorneys for Defendants***
***CommScope Holding Company, Inc,***
***CommScope Inc., ARRIS US Holdings, Inc.,***
***ARRIS Solutions, Inc., ARRIS Technology,***
***Inc., and ARRIS Enterprises, LLC***

██████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance

with Local Rule CV-5(a).  Therefore, this document was served on all counsel on January 6, 2023.

*/s/  Eric H. Findlay*
Eric H. Findlay

█████████████████████████████

████████████████████████████████████████

███████████████████████

██████████████
████████████