███████████████████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>            *Plaintiff*, | |
| v. | Civil Action No.: 2:21-CV-00310-JRG |
| CommScope Holding Company, Inc., *et al.*,<br>            *Defendants*. | JURY TRIAL DEMANDED<br><br>███████████████ |

**TQ DELTA, LLC'S RESPONSE TO COMMSCOPE'S MOTION TO
EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF JONATHAN
PUTNAM AND TODOR COOKLEV UNDER FED R. EVID. 702 AND *DAUBERT***

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

I.      INTRODUCTION AND SUMMARY ..........................................................................1

II.     APPLICABLE LAW .....................................................................................................4

III.    ARGUMENT .................................................................................................................6

        A.  CommScope Deposed Both Experts on The Relevant Portions of Their Reports ........6

        B.  CommScope Raises No Specific Issue with Dr. Putnam's Report and His Reliance on
            Dr. Cooklev for Terms Is Appropriate Even If the Keywords Are Not Otherwise
            Admissible ................................................................................................................6

            1.  Dr. Putnam Uses Dr. Cooklev's Keywords to Create Three "Buckets" For
                Sampling, And All Buckets Were Sampled From .................................................7

        C.  CommScope Does Not Contest Dr. Cooklev's Capacity to Offer His Opinion That
            Certain Terms Are Less Likely to Be Found in Relevant SEPs ....................................8

        D.  Dr. Cooklev Is Qualified as An Expert to Identify Terms He Believes Are Less
            Relevant and Disputes About Such Terms Go to Weight Not Admissibility ..............8

        E.  Dr. Cooklev Explains His Decisions and CommScope is Free to Cross Examine Him
            at Trial .....................................................................................................................9

        F.  CommScope Provides No Argument Regarding the Other Paragraphs in Dr. Cooklev's
            Report That It Moves to Strike .................................................................................10

        G.  CommScope's Experts Do Not Offer the Opinion Dr. Cooklev's Keywords Are
            Unreliable or That Dr. Putnam's Use of Those Keywords is Unreliable ..................11

        H.  CommScope's Legal Argument is Unclear ...............................................................12

            1.  CommScope Does Not Appear to Address the Proper Legal Standard ...............12

            2.  Alternatively, CommScope Understands Dr. Cooklev's Opinion but Simply
                Disagrees ......................................................................................................13

        I.  The Cases CommScope Cites are Distinguishable ....................................................14

IV.     CONCLUSION ...........................................................................................................15

████████████████████

# **TABLE OF AUTHORITIES**

## **Cases**

*CQ, Inc. v. TXU Min. Co.*, L.P.
565 F.3d 268 (5th Cir. 2009) ............................................................................ 13

*Genband US LLC v. Metaswitch Networks Corp.*
No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 196292
(E.D. Tex. Jan. 7, 2016) ............................................................................ 14, 15

*Hathaway v. Bazany*
507 F.3d 312 (5th Cir. 2007) ............................................................................ 14

*In re Paoli R.R. Yard Pcb Litig.*
35 F.3d 717 (3d Cir. 1994) ................................................................................ 5

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*
Case No. 16-2740, 2019 U.S. Dist. LEXIS 143642 (E.D. La. Aug. 23, 2019) .................. 8

*Innovation Scis., LLC v. Amazon.com, Inc.*
Case No. 4:18-cv-474, 2020 U.S. Dist. LEXIS 128957
(E.D. Tex. July 22, 2020) .................................................................................. 8

*Kleen Prods. LLC v. Int'l Paper*
No. 10-cv-5711, 2017 U.S. Dist. LEXIS 83321 (N.D. Ill. May 31, 2017) ...................... 9

*Kumho Tire Co. v. Carmichael*
526 U.S. 137 (1999) ......................................................................................... 6

*Puga v. RCX Sols., Inc.*
922 F.3d 285 (5th Cir. 2019) .............................................................................. 5

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*
No. 2:17-CV-00651-JRG, 2019 U.S. Dist. LEXIS 65662 (E.D. Tex. Apr. 17, 2019) ...... 12

*United States v. Barnes*
979 F.3d 283 (5th Cir. 2020) .............................................................................. 4

*United States v. Dien Vy Phung*
127 F. App'x 594 (3d Cir. 2005) ......................................................................... 5

*United States v. Parkhurst*
865 F.3d 509 (7th Cir. 2017) .............................................................................. 9

*United States v. Perry*
  35 F.4th 293 (5th Cir. 2022) .................................................................................. 5

*Wilbourn v. Brg Sports*
  Case No. 4:19-cv-00263-P, 2021 U.S. Dist. LEXIS 231311
  (N.D. Tex. Oct. 7, 2021) ..................................................................................... 14

*Williams v. Monitowoc Cranes, L.L.C.*,
  898 F.3d 607 (5th Cir. 2018) ............................................................................... 8

## **Rules**

FED. R. EVID. 702 ...................................................................................... 1, 5, 8, 15

FED. R. EVID. 703 ................................................................................................ 7

## I.    INTRODUCTION AND SUMMARY

TQD Delta, LLC ("TQD") hereby responds to CommScope Holding Company, *et. al.* ("CommScope" or "CS")'s Motion to Exclude Portions of the Expert Testimony of Jonathan Putnam and Todor Cooklev Under Fed. R. Evid. 702 and *Daubert* (Dkt. No. 344). This is a straightforward issue about one paragraph in Dr. Cooklev's report that CommScope does its best to confuse.

Dr. Cooklev, using decades of experience with the relevant technology, standards, and patents, created, at the request of Dr. Putnam, a list of 360 terms found in Derwent World Patents Index ("DWPI") classifications that he considered, in his expert judgment, were less likely to be in the independent claims of a relevant standard-essential patent ("SEP"). This is well within his expertise, which CS does not challenge, and the term-list is disclosed in his report. And the entire statistical process used by Drs. Cooklev and Putnam, of which the terms are just one part, is also disclosed, allowing replication and testing. Despite this detail, CS offers no specific challenge to the statistical methodology or to <u>any paragraph</u> in Dr. Putnam's report. It, at best, only criticizes about 13 of 360 terms used to <u>prioritize</u> relevant patents for review (not eliminate patents from review), suggesting the possibility of error without actually showing any. This is an issue for cross examination, and CS's Motion should be denied for the following 6 reasons:

1. CommScope offers only its attorneys' say so that there is an issue with the paragraphs of Dr. Cooklev's and Dr. Putnam's reports that the Motion seeks to strike. None of CS's experts make the claims found in the Motion, and no declaration or citation to any other expert is included in the Motion. Both Drs. Putnam and Cooklev were deposed on the sections of their reports at issue (a fact CommScope's Motion omits) and CS offers no criticism of their explanations. CS just provides its attorneys' *ipse dixit* there is an issue.

2. Two of CS's experts did consider and address these opinions (another fact the Motion omits), but neither expert raises the argument put forward by the Motion—that the "keyword terms" used to prioritize patents for consideration (but not remove any from consideration) were improper or might have caused some error.  Their reports offer no criticism on this issue. First, CS's damages expert Dr. Stephen Becker considered Dr. Putnam's sampling methodology, but the <u>closest</u> he comes to criticism is a neutral reference to another expert's comments: "Dr. Ransom provides comments on the methodology employed by Dr. Cooklev in his search for DSL SEPs." *See* Nov. 18, 2022 Expert report of Stephen L. Becker, Ph.D. ("Becker Rep."), Exh. 01 at ¶ 343.  Dr. Ransom, in turn, provides one page of analysis. *See* Nov. 18, 2022 Responsive Expert Report of Dr. Neil Ransom on Non-Infringement of the Family 2, 3, 6, 9A and 9B Patents ("Ransom Rep."), Exh. 02 at ¶¶ 401-405. But Dr. Ransom provides no criticism on Dr. Cooklev's keywords or any criticism (or even any mention) of any part of Dr. Putnam's report.  *See id.* Essentially, Dr. Ransom only speculates that there may be more standard-essential patents, but, as he admits in his deposition, he performs no actual analysis himself. *See id.* At most, he suggests that Dr. Cooklev should have used a larger starting pool than "DSL" patents (*See* Ransom Rep., ¶ 404), a point the Motion makes no mention of.

3. CommScope offers no specific argument that Dr. Putnam's statistical sampling methodology—the substantive issue—is unreliable, was based on insufficient data, or would have produced a different result if other terms had been used, and again, no expert takes those positions. Stepping back, Dr. Putnam used Dr. Cooklev's keywords in a statistical sampling process for 14,838 patents. Basically, the patents were separated into 3 buckets—but <u>all</u> buckets were sampled from, including buckets with keywords in the claims

███████████████████████████████████

(yet another fact the Motion omits). This process produced a set of <u>1,100 patents that Dr. Cooklev reviewed patent-by-patent</u>. Dr. Putnam then used the results of Dr. Cooklev's review of these 1,100 patents to determine the total number of essential patents in the overall set, and, again, CS's Motion does not take issue with this methodology or its statistical reliability, though it seeks to exclude it in full.

4. CommScope <u>offers no argument on any specific paragraph in Dr. Putnam's report</u>, despite moving to strike both his entire methodology and his separate analysis on other damages issues.  The failure to identify any actual issue in his methodology should be dispositive.  But the scope of the paragraphs CS moves to exclude shows its real intent is striking Dr. Putnam's report. His creation of the statistical sample is discussed in four paragraphs: ¶¶ 371-374.  But CS also moves to strike his opinions on patent quality (¶¶ 376-379); his opinions on whether his analysis from 2018 needed to be updated (¶¶ 380-382), including discussions of DSL standards and his assessment of the number of new likely essential patent families; <u>his calculation of damages</u> (¶383); his assessment related to "TQD's licenses and offer" (¶¶ 384-387); his assessment of pre-2015 sales and convoyed sales (¶¶ 386-390); his assessment of non-infringing alternatives (¶¶ 391-394); and his assessment of the value of the standard as a whole (¶¶ 395-398).

5. Drs. Putnam and Cooklev also offered similar opinions in the *TQ Delta, LLC v. 2Wire, Inc.*, No. 1:13-cv-1835-RGA (D. Del. filed Nov. 4, 2013) ("DE Case") in 2018.  Despite having the details of their analysis for 4 years, CommScope identifies no substantive flaw in the sampling methodology. The expert reports in both cases explain and provide the material details of the analysis performed, including providing lists of specific patents considered (e.g., the 1,100 specific patents sampled from 14,848 patents; the 132 patents Dr. Cooklev

identified for close analysis; and the 33 patents he found essential from the set).  In other words, CS can recreate the analysis.  But the Motion makes no criticism of the patent-data sources, the sampling (other than using Dr. Cooklev's terms), Dr. Cooklev's analysis of the sampled patents, or Dr. Putnam's subsequent opinions incorporating Dr. Cooklev's review.

6. Finally, but not least, courts in this District and Circuit have found keyword / search term opinions reliable and have held that they are properly the subject of cross examination, not motions to strike.  Similarly, a circuit court has also found no issue with an expert identifying relevant search terms that are within the expert's experience.  CommScope's Motion provides no authority that an expert's identification of keywords is unreliable.

TQD asks the Court to deny CommScope's Motion.  Dr. Cooklev did nothing improper. The issue CommScope suggests—perhaps Dr. Cooklev should or should not have included a search term—is well within the understanding of a lay jury who have likely all made their own search-term determinations at some point.  While Dr. Cooklev exercised his technical judgment in selecting keywords, his analysis is nothing like a complex scientific opinion, such as whether a particular chemical compound does or does not cause cancer.  As the cases TQD identifies below make clear this is an issue about weight, not admissibility.

## II.    APPLICABLE LAW

"A trial court's decision to admit expert evidence is reviewed for abuse of discretion." *United States v. Barnes*, 979 F.3d 283, 307 (5th Cir. 2020) (citation omitted). "As a general matter, district courts are afforded 'wide latitude' when it comes to the admissibility of expert testimony." *Id.* "Thus, [the Fifth Circuit] will only disturb the district court's decision to admit expert testimony if the decision was 'manifestly erroneous.'" *Id.* "A manifest error is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Id.*

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019). "[T]he *Daubert* [inquiry] should not supplant trial on the merits." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (citation omitted). "Particularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Id.* (citation omitted). "[W]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Id.* (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

"Daubert's reliability requirement does not set a high bar for the admissibility of expert testimony." *United States v. Dien Vy Phung*, 127 F. App'x 594, 598 (3d Cir. 2005) (citing *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 744 (3d Cir. 1994) (holding "the evidentiary requirement of reliability is lower than the merits standard of correctness"). "Moreover, Daubert does not require a district court to look at whether a proposed expert could have performed his or her analysis in a better manner." *Id.* (citing *Paoli*, 35 F.3d at 744 (observing that "good grounds" for an opinion may exist "even if the judge thinks that a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result")).

The trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for

questioning the expert's reliability arises." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  "[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."  *Id.* at 156.

## III.   ARGUMENT

### A.   CommScope Deposed Both Experts on The Relevant Portions of Their Reports

CommScope deposed both Dr. Cooklev and Dr. Putnam on these issues. *See* December 8, 2022 Deposition of T. Cooklev, Exh. 03 at 141:9-154:4, 154:20-156-15; December 6, 2022 Deposition of J. Putnam, Exh. 04 at 160:25-170:3. CommScope makes no mention of their testimony and makes no claim they failed to explain all of the portions of their reports that they were asked about.  CommScope asserts a failure to explain, but both experts provide complete explanations in their reports and answered the questions asked during their depositions.

### B.   CommScope Raises No Specific Issue with Dr. Putnam's Report and His Reliance on Dr. Cooklev for Terms Is Appropriate Even If the Keywords Are Not Otherwise Admissible

Despite moving to strike 21 paragraphs (13 pages) of Dr. Putnam's Rep., <u>CommScope provides no specific argument on any paragraph of his report</u>.  *See* Motion, pp. 4-6 (providing no citation to Dr. Putnam's report).  It, for example, offers no explanation of why the statistical methods used by Dr. Putnam are unreliable or based on insufficient data, including either the 1,100 patent set he created for Dr. Cooklev to review or his subsequent analysis of Dr. Cooklev's findings.  *See id.* As discussed above, CS moves to broadly strike Dr. Putnam's opinions on everything from non-infringing alternatives to patent quality, but no explanation is provided.

CommScope also does not dispute that his analysis is relevant or that it is proper for Dr. Putnam to request Dr. Cooklev's help in either analyzing patents related to essentiality or in creating a list of technical terms. *See id.*  Dr. Putnam is entitled to rely on Dr. Cooklev's analysis

even if it is not separately admissible.  *See* FED. R. EVID. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted").  As CommScope provides no specific argument regarding any paragraph in Dr. Putnam's Report, including the statistical method nominally at the heart of its Motion, the Motion should be denied regarding Dr. Putnam's report.

1.   **Dr. Putnam Uses Dr. Cooklev's Keywords to Create Three "Buckets" For Sampling, And All Buckets Were Sampled From**

CommScope's Motion repeats the phrase "knockout," suggesting patents were eliminated from consideration. TQD believes it is important to make clear that Dr. Putnam used the keywords to focus on the most relevant patents out of the set of 14,848 potentially-essential patents:

> To obtain a sample of the most relevant patents, I incorporated a list of keywords identified by Dr. Cooklev as unlikely to be found in the claims of an essential DSL patent ("knockout" words). I grouped all patents whose independent claims contained at least one knockout word together; these patents should be sampled at a lower rate, as they are unlikely to be essential. If the claims did not contain a knockout word, then I grouped the patents separately.

Putnam Rep. ¶ 371.  Dr. Putnam grouped the patents "into three 'buckets,' based on the likelihood of each group containing a DSL-essential patent. *Id.* ¶¶ 372-373. While CS repeats the phrase "knockout," Dr. Putnam makes clear that he "<u>drew from each bucket a random (that is, representative) sample, large enough in size to ensure statistically reliable results</u>." *Id.* ¶ 373 (emphasis added).  CommScope's Motion does not cite to that paragraph of Dr. Putnam's report. But all of the patent buckets were sampled, even patents with "knockout" terms, and, again, CommScope offers no challenge and no expert contests the reliability or statistical methods used by Dr. Putnam to create statistically significant samples from each bucket.

Dr. Putnam's "resulting sample comprised 1,100 patents and 826 patent families, implying an overall sample rate of 7.4%." *Id.* at 374.  "Dr. Cooklev analyzed this sample and determined whether each patent in it is essential to one or more DSL standards." *Id.*

███████████████████████████

**C.      CommScope Does Not Contest Dr. Cooklev's Capacity to Offer His Opinion
That Certain Terms Are Less Likely to Be Found in Relevant SEPs**

Though CommScope argues that Dr. Cooklev did not fully explain his listing of terms, it
does not argue he lacks the expertise or ability to offer his opinion.  Dr. Cooklev is well qualified
to offer such an opinion.  He has an undergraduate and Ph.D degree in electrical engineering; he
has been teaching electrical engineering since the early 2000s; he has served on more than 50
graduate thesis committees; he is a named inventor on 32 U.S. patents for communication systems;
he has co-authored over 100 peer reviewed articles; he has received awards and was inducted in
the Purdue Inventors Hall of Fame; he has conducted approximately 20 years of research; he has
familiarity with the relevant DSL technologies and standards; he has participated in standards
committees related to DSL technology; and he has served as an expert in patent litigation cases
including the *2Wire* case.  *See* August 29, 2022 Opening Expert Report of Todor Cooklev, Ph.D
("Cooklev Rep."), Exh. 06, ¶¶ 3-14.

Dr. Cooklev is highly qualified, but even if he were not "Rule 702 does not mandate that
an expert be highly qualified in order to testify about a given issue." *Williams v. Monitowoc
Cranes, L.L.C.*, 898 F.3d 607, 623 (5th Cir. 2018) (citation omitted).

**D.      Dr. Cooklev Is Qualified as An Expert to Identify Terms He Believes Are Less
Relevant and Disputes About Such Terms Go to Weight Not Admissibility**

It almost goes without saying, but Dr. Cooklev's ability to identify keyword terms is well
within the ability of a qualified expert.  Courts in this District and Circuit have found that experts
may create search terms for other experts and rely on them in their reports, and that these disputes
are proper for cross examination—not *Daubert*. *See Innovation Scis., LLC v. Amazon.com, Inc.*,
Case No. 4:18-cv-474, 2020 U.S. Dist. LEXIS 128957, at *9 (E.D. Tex. July 22, 2020) (denying
motion to strike and finding cross examination is the proper vehicle to attack such evidence); *see
also In re Taxotere (Docetaxel) Prods. Liab. Litig.*, Case No. 16-2740, 2019 U.S. Dist. LEXIS

143642, at *12-13 (E.D. La. Aug. 23, 2019) (finding no issue with an expert relying on search terms created by another expert).  At least one circuit court has considered the ability of an expert to create search terms, and that court found no issue with an expert identifying keywords based on experience. *See United States v. Parkhurst*, 865 F.3d 509, 516-17 (7th Cir. 2017) (finding detective's testimony based on his experience was sufficient to identify keywords and noting "[t]raining and experience are proper foundations for expert testimony"). As another court explained, disputes about keyword sufficiency go to weight not admissibility. *See Kleen Prods. LLC v. Int'l Paper*, No. 10-cv-5711, 2017 U.S. Dist. LEXIS 83321, at *83-84 (N.D. Ill. May 31, 2017) (denying motion to strike and finding that arguments related to scientific reliability of keywords go to weight not admissibility).

### E.   Dr. Cooklev Explains His Decisions and CommScope is Free to Cross Examine Him at Trial

Dr. Cooklev's report describes, in 128 pages, his process of working with Dr. Putnam, including collaborating on terms to aide Dr. Putnam's sampling, personally reviewing 1,100 patents provided to him by Dr. Putnam, and providing the results of his analysis to Dr. Putnam. *See* Cooklev Rep., ¶¶ 1332-1364. Dr. Cooklev explains that he:

> worked closely with Mr. Putnam to further narrow the list of roughly 15,000 patents to a manageable, yet statistically significant sample set of potentially-essential patents that I would then review and make a determination as to whether those patents are likely essential for one or more DSL standards.

*Id.* ¶ 1334. CommScope only provides argument on Dr. Cooklev's creation of a list of 360 terms. *See* Motion pp. 4-5 (addressing arguments only to Dr. Cooklev's terms). Contrary to CommScope's claim, Dr. Cooklev explains, in his report, that the keywords were "terms [he] deemed would make it less likely a patent claim would be DSL standard essential":

1340.  Second, from the description of those classifications within the DWPI are example terms, and there are other words generally associated with those broad descriptions, from which I identified a list of keyword terms that I deemed would make it less likely that a patent claim would be DSL standard essential, including the following terms:

| | | | | | | |
|---|---|---|---|---|---|---|
| acceleration | ceramic | funds | metals | pumping | switched |
| accelerators | chargers | furnaces | meteorology | pumps | switches |
| accessories | charging | fuses | metering | punches | switchgear |
| address | chemical | games | MHD | quantum | switching |
| addressed | cleaners | gas | microwave | racks | switchyards |
| addresses | cleaning | geophysics | military | radar | tape |
| addressing | CMOS | geothermal | missile | railways | telecontrol |

Cooklev Rep., ¶ 1340 (excerpted in part).  Prior to that paragraph, Dr. Cooklev explains that he and Dr. Putnam were working on DWPI classifications, making his reliance on those descriptions expected and reasonable. *Id.* ¶¶ 1335-1339.  Given the fact that he lists the terms he determined (and that all of the steps used are described in both reports), Dr. Cooklev's explanation of terms is sufficiently reliable to present to the jury.  For example, Dr. Cooklev is not providing an opinion on undisclosed terms. He expressly lists all of the terms he provided, giving CommScope the ability to contest his work, as it does rhetorically in its Motion.  In this electronic age, developing terms related to relevancy (e.g., for work or to Google) is a widely conventional methodology.

### F.    CommScope Provides No Argument Regarding the Other Paragraphs in Dr. Cooklev's Report That It Moves to Strike

CommScope moves to exclude three paragraphs—¶¶ 1340-42—from Dr. Cooklev's report.  Motion, p. 7. But CommScope only provides specific argument regarding one paragraph: ¶ 1340.  The three paragraphs come from the middle of Dr. Cooklev's 128-page (¶¶ 1332-1364) description of his work with Dr. Putnam.  CommScope's argument for striking the other two paragraphs is unknown: no argument for either paragraph is provided.  They paragraphs state his factual understanding that Dr. Putnam "used the information [he] provided … to determine a statistically

significant sample set of potentially DSL standard essential patents for [his] analysis" (¶ 1341); and that he "received a list of 1,100 potentially standards essential DSL patents (listed starting at TQD_TX00384190) from Mr. Putnam in order for [him] to perform [his] independent claim analysis of these patents" (¶ 1342).  These are facts he can testify to.

CommScope's attempt to strike these facts is all the more perplexing because CommScope does not move to strike Dr. Cooklev's subsequent opinion analysis of the 1,100 patents he received from Dr. Putnam or his understanding that Dr. Putnam used the results of his analysis. Dr. Cooklev's ability to testify on these paragraphs is certainly within his personal knowledge.

### G.   CommScope's Experts Do Not Offer the Opinion Dr. Cooklev's Keywords Are Unreliable or That Dr. Putnam's Use of Those Keywords is Unreliable

CommScope's Motion claims Dr. Cooklev's and Dr. Putnam's work on the paragraphs at issue is unreliable, but none of its experts offer that opinion. CommScope has 10 experts, but only Dr. Ransom and Dr. Becker offer opinions on the paragraphs at issue. Neither expert raises any issue with the keywords that Dr. Cooklev created to help filter patents or any issue with the statistical methodology used by Dr. Putnam.

CommScope's damages expert—Dr. Becker—offers no specific criticism of Dr. Cooklev's keywords or the statistical methods Dr. Putnam uses to apply them.[1]  *See* Becker Rep. ¶¶ 323, 343 (discussing sampling approach).  In ¶ 323, Dr. Becker provides a one-paragraph summary of Dr. Putnam's analysis.  *See id.* ¶ 323.  In his other paragraph addressing the sampling performed in the report, Dr. Becker just notes that "Dr. Ransom provides comments":

> As a critical step in his damages model, Dr. Putnam uses an assumption regarding the "expected number of actually-essential DSL patent families." For this assumption, Dr. Putnam relies in part on his own analysis and in part on Dr. Cooklev's essentiality determination with respect to certain "sampled patents" that

---

[1] To be clear, Dr. Becker offers other criticisms of Dr. Putnam's report (e.g., that Dr. Becker believes he should have considered other agreements), but he does not offer specific criticism on the sampling method or its application of statistics.

███████████████████████

Dr. Putnam provided to Dr. Cooklev. Dr. Ransom provides comments on the methodology employed by Dr. Cooklev in his search for DSL SEPs.

Becker Rep. ¶ 343 (footnotes contained in the citation are omitted).

Dr. Ransom offers about one page on "Dr. Cooklev's Analysis of Standard Essential Patents." *See* Ransom Rep., ¶¶ 401-405. However, Dr. Ransom offers no criticism on the keyword issue raised by CommScope's counsel. Instead he asserts, without support, that Dr. Cooklev's analysis was "flawed in that he focused only on patents specifically tied to DSL." In other words, he asserts the analysis should have cast a wider initial net, and he does not claim the existing analysis is unreliable. But he offers no analysis of his own on essential patent families:

> Q. Okay. Did you go and conduct an analysis about -- of how many DSL standard essential patents there are and how many would be attributable to Aware or the patents in this case?
>
> A. No. I did not do that exercise.

December 7, 2022 Deposition of Dr. Neil Ransom, Exh. 05, 117:25-118:4. That no CommScope expert offers the argument made in the Motion cuts against its credibility.

### H.   CommScope's Legal Argument is Unclear

#### 1.   CommScope Does Not Appear to Address the Proper Legal Standard

CommScope's legal argument is unclear, but the two reasons it provides both appear to claim that Dr. Cooklev omits the basis for his opinion. *See* Motion pp. 4-5 (stating for the "first" ground that "Dr. Cooklev does not explain how he generated the list of knockout terms" and stating for the "second" ground that "Dr. Cooklev does not provide any basis for his opinion that the terms are unlikely to appear in an essential patent"). This challenge is normally made under Rule 37 as a failure of the expert to comply with the disclosure requirements of Rule 26(a), but CommScope does not raise that ground. *See Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00651-JRG, 2019 U.S. Dist. LEXIS 65662, at *7-8 (E.D. Tex. Apr. 17, 2019). In such circumstances,

the Court has broad discretion and considers the following factors: "(1) [The untimely party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the objecting party] in allowing the evidence, and (4) the availability of a continuance." *Id.* (quoting *CQ, Inc. v. TXU Min. Co.*, L.P., 565 F.3d 268, 280 (5th Cir. 2009)).

To the extent the Court applies this framework, TQD addresses these factors. First, CommScope is not correct. Dr. Cooklev adequately explains the basis for his opinion as to how he chose those terms, which he states in his report.  CommScope disagrees, but CommScope is, respectfully, trying to manufacture a ground to strike Dr. Cooklev's terms as a way to strike opinions offered by Dr. Putnam. Second, the evidence CommScope seeks to strike is of critical importance to TQD's case as the paragraphs at issue are central to Dr. Putnam's damages report and the paragraphs in Dr. Cooklev's report provide critical evidence to that report.  CommScope is essentially seeking to strike TQD's damages case.  Third, CommScope articulates no real prejudice in allowing the evidence.  Fourth, should the Court disagree, Dr. Cooklev could provide a one page (or less) supplement, with the Court's guidance, to make his basis even more explicit. This would likely take less than 3 days and would be not necessitate a continuance.

## 2.  Alternatively, CommScope Understands Dr. Cooklev's Opinion But Simply Disagrees

CommScope first argues that Dr. Cooklev "does not provide any basis for his opinion," but CommScope later argues that the "words rest[] entirely on his own subjective view as to keywords that might be unlikely to appear in the claims of a DSL standard-essential patent." Motion, pp. 5-6. Though TQD disagrees with CommScope's argument, it suggests, as one would expect from the fulsome disclosure, that CommScope actually fully understands Dr. Cooklev's report and has all the basis it needs but CommScope's attorneys simply dislike it or disagree with it. Respectfully, Dr. Cooklev's view is his "expert opinion" and, at some level, expert opinion is always subjective

to the expert.  That does not render such opinions inadmissible as experts often disagree and even "conflicting expert testimony alone is insufficient to show that an expert's opinion is inadmissible." *Wilbourn v. Brg Sports*, Case No. 4:19-cv-00263-P, 2021 U.S. Dist. LEXIS 231311, at *15 (N.D. Tex. Oct. 7, 2021) (citation omitted).

## I.      The Cases CommScope Cites are Distinguishable

CommScope provides no legal authority that the Dr. Cooklev or Dr. Putnam have offered any improper opinion.  As discussed above, their opinions are legally proper.  TQD has reviewed the two cases cited by CommScope in its argument section and neither is instructive.

The *Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007) case that CommScope cites is distinguishable and involved "questions of excessive force under the Fourth Amendment involving the shooting death of a teenage driver by a policeman who was struck by the car as it sped away after a traffic stop." *Id.* at 315.  The issue included a decision by the lower court to exclude testimony, at the summary-judgment stage, by a Mr. Harry Hathaway a former police officer and the father of the teenager who was shot. *See id.* at 315-16.   As the Circuit explained, Mr. Hathaway's "primary argument, that Bazany must have been behind the car when he fired his shot, is not based on any discernable training in or use of a scientific methodology suited to the reconstruction of the location of a shooter based on the trajectory of the bullet or location of a shell casing. Instead, Hathaway relies on a host of unsupported conjectures that falls far short of a methodology." *Id.* at 318. The *Hathaway* case is readily distinguishable.  *Hathaway* involved a non-expert, with no evidence of training, recreating an entire series of events for a shooting. *See id.* at 318-19.  This Motion concerns an expert providing a list of terms under his technical judgment to another expert as part of multi-step, uncontested, statistical analysis.

The *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 196292 (E.D. Tex. Jan. 7, 2016) is also unlike the case at hand. *Genband*

14

excluded doctrine of equivalents ("DoE") evidence and denied on all other grounds.  *See id.* at *16.  The court noted the expert's testimony on the DoE issue consisted of two sentences and "Genband's Response and Sur-reply make no attempt to defend [the expert]'s doctrine of equivalents opinions." *Id.* at *6.  Here, the opinions that CommScope moves to strike are far more than two conclusory sentences and each form part of multi-page analyses by two different experts.

## IV.     CONCLUSION

For the reasons discussed above, TQD asks the Court to deny CommScope's Motion.  CommScope provides argument on one paragraph of Dr. Cooklev's report (¶ 1340), but, as discussed above, Dr. Cooklev's opinion is well within his ability as an expert.  To the extent CS has any issue, those arguments go to weight not admissibility and are the proper subject for cross examination.  CS, really, seeks to strike Dr. Putnam's damages opinion, but it provides no argument on any paragarph of Dr. Putnam's report that it seeks to strike.  Dr. Putnam's sampling methodology is disclosed such that CS can test it, and no expert contests it or even criticizes its methodology.  And CS seeks to strike parts of Dr. Putnam's report that are well beyond the uncontested sampling, including Dr. Putnam's reliance of paragraphs of Dr. Cooklev's report that it does not move to strike.  This Motion is, respectfully, a second motion to strike Dr. Putnam's report and TQD does not understand why it was filed. *Compare* (Dkt. No. 346 at p. 14 (moving to strike ¶¶ 291-400 of Putnam's Rep.)) to Motion at p. 6 (also moving to strike ¶¶ 371-398).  CommScope has not shown any failure under Rule 702 or Daubert for either expert.

████████████████████████████

Dated: January 6, 2023

Respectfully Submitted,

/s/  Rudolph Fink IV

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(Pro hac vice)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(Pro hac vice)
rchiplunkar@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

**ATTORNEYS FOR PLAINTIFF
TQ DELTA, LLC**

███████████████████████████████████████████

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this January 6, 2023 on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

/s/Rudolph Fink IV_____
Rudolph Fink IV

███████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████

████████████████████████████
████████████████