# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>                  *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>                  *Defendants*. | Civil Action No.: 2:21-cv-00310-JRG |

**COMMSCOPE'S OPPOSITION TO PLAINTIFF TQ DELTA'S MOTION FOR SUMMARY JUDGMENT REGARDING BREACH OF FRAND OBLIGATIONS (Dkt. 335)**

████████████████████████████████████

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.    RESPONSE TO TQ DELTA'S STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ................................................................................................................... 1

III.    RESPONSE TO TQ DELTA'S STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................................................................................................ 1

IV.    ARGUMENT .................................................................................................................. 2

V.    CONCLUSION .............................................................................................................. 5

██████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes & Noble, Inc. v. LSI Corp.*,
　849 F. Supp. 2d 925 (N.D. Cal. 2012) ................................................................................2, 3

*St. Lawrence Communs. LLC v. Motorola Mobility LLC*,
　No. 2:15-cv-351-JRG, 2018 U.S. Dist. LEXIS 25229 (E.D. Tex. Feb. 15, 2018) ....................5

## TABLE OF EXHIBITS[1]

| Exhibit No. | Description |
|---|---|
| Ex. F | Rebuttal Excerpts of Putnam Expert Report |
| Ex. G | Rebuttal Excerpts of Cooklev Opening Expert Report |

---

[1] For simplicity, Exhibits A–E reference those cited in and attached to TQ Delta's opening motion (Dkt. No. 335).

## I. INTRODUCTION

TQ Delta alleges that its Family 3 and Family 9a patents are "commercially essential" as opposed to other asserted patents that TQ Delta alleges are "technologically essential." While TQ Delta has invented these new categories of essentiality out of whole cloth, if these patents are, in fact, "commercially essential" to implement an ITU standard, then they are subject to the FRAND commitment and TQ Delta's motion must be denied.

To be clear, TQ Delta is trying to gain an advantage by terming the Family 3 and 9a patents "commercially essential." As an example, doing so allegedly justifies TQ Delta's modification of the *Georgia-Pacific* framework in its favor. If that is true, TQ Delta also has an obligation to fairly license those patents. TQ Delta cannot have it both ways.

Thus, TQ Delta's own treatment of the Family 3 and 9a patents as essential (whether they call it technologically essential or commercially essential) creates a FRAND obligation for those patents, and TQ Delta has breached those obligations. Thus, summary judgment is not appropriate.

## II. RESPONSE TO TQ DELTA'S STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

Is entry of summary judgment appropriate where TQ Delta alleges that the patents in question are "commercially essential" and where TQ Delta admits that all patents that "would be required to implement" a standard are subject to a FRAND obligation?

## III. RESPONSE TO TQ DELTA'S STATEMENT OF UNDISPUTED MATERIAL FACTS

**Disputed Fact 1:** Denied, especially as to the assertion that the ITU policy applies to only a subset of essential patents. The Patent Statement and Licensing Declaration filed by a Patent Owner with the ITU is applicable to all patents that a party believes use of "would be required to implement" the relevant standard. Ex. A at TQD_TX00067558.

**Disputed Fact 2:** Incomplete – Disputed Fact. In response to CommScope's Interrogatory No. 5,

1

TQ Delta stated that it believed each of the asserted patents, including the Family 3 and 9a patents, *is essential* to implement an ITU standard. Ex. D at 26 ("In Family 3, the '048 and '882 patents are essential as a commercial matter to the VDSL2 standard," and "[i]n Family 9a, the '411 patent is essential as a commercial matter to the G.inp standard").[2]

**Disputed Fact 3:**   Incomplete – Not an actual fact.  Despite Dr. Cooklev's opinion, TQ Delta's damages expert, Dr. Putnam, modified the *Georgia-Pacific* framework to account for standard essential patents.  Ex. F ¶ 15.  Dr. Putnam applies the *same* damages theory for patents he considers to be standard essential and for patents he considers to not be standard essential, including the Family 3 and 9a patents.  *Id.* ¶ 28.

IV.     **ARGUMENT**

TQ Delta argues that the Family 3 and 9a patents are "commercially essential."  If that is correct, then the Family 3 and 9a patents are subject to FRAND commitments (and CommScope alleges that TQ Delta breached its FRAND commitment).  For that very simple reason, the motion should be denied.

TQ Delta's motion exposes the fact that it attempts to speak out of both sides of its mouth. On the one hand, TQ Delta asserts that it is entitled to *heightened* damages because the patents it asserts against CommScope are "essential," while on the other hand asserts that it was not required to abide in good faith to its contractual FRAND obligations because some of those patents are only "commercially essential"—a category TQ Delta appears to have invented for this case.  As TQ Delta alleges it, though, there is no difference between patents that are "commercially essential" and those that are "technologically essential" for damages purposes.  The only difference seems to be that TQ Delta does not believe it has an obligation to fairly license the patents that are commercially essential.

---

[2] The parties' disagreement over the essentiality of these patents is further reason to deny the motion. Indeed, TQ Delta claims the patents are essential—and if that is correct, then there is a FRAND obligation.

2

But TQ Delta cites no support for such a distinction. In fact, the court in *Barnes & Noble, Inc. v. LSI Corp.*—cited by TQ Delta in its motion—contemplates only whether a patent is *essential*, not whether it is *technologically essential* versus *commercially essential*. 849 F. Supp. 2d 925, 931 n.4 (N.D. Cal. 2012). Here, TQ Delta unequivocally took the position that these patents are essential. Thus, there is a genuine dispute of material fact as to whether TQ Delta's treatment of the Family 3 and 9a patents as standard essential creates a FRAND obligation to those patents.

CommScope properly alleged that to the extent the technology was "actually necessary to implementation of the relevant standards, TQ Delta was obligated to grant licenses to CommScope on FRAND terms." Dkt. No. 17 (CommScope's Answer and Counterclaims) ¶ 94. When asked to identify whether TQ Delta contends that any "claim is essential to the implementation of the DSL Standard," TQ Delta responded for each asserted patent that the respective patent is "essential" to at least one standard. *See* Ex. D at 23, 26–27. Now, when confronted with the FRAND implications of its position, TQ Delta attempts to draw a distinction in its motion by reasoning that for some patents it stated the patent "is essential to [a] standard," while for the Family 3 and 9a patents it stated that they are "essential as a commercial matter to [a] standard." *Id.* at 26. Merely adding in the language "as a commercial matter" does not allow TQ Delta to escape its fair licensing obligations.

Indeed, Dr. Putnam—TQ Delta's damages expert—explained that in his analysis he applied "the same per-family royalty rate I compute for TQ Delta's SEP families to its asserted non-SEP patent families." Ex. F ¶ 28. He reasoned that while he understood that "these inventions are not technically essential to the standards, they are commercially essential." *Id.* ¶ 27. Dr. Putnam's reasoning, however, confirms that (like TQ Delta) he has treated the patents as though they were SEP patents, while at the same time opining that "TQ Delta is not bound by any FRAND commitment" for those patents. *Id.* ¶ 26. Dr. Putnam's treatment of the Family 3 and 9a patents as SEP patents is significant. For example, Dr. Putnam admits that treating patents as SEP patents in the FRAND

3

context allows him to modify the *Georgia-Pacific* framework to "de-emphasize, or eliminate, certain of the *Georgia-Pacific* factors." *Id.* ¶ 15. Dr. Putnam's conflation of the patents TQ Delta claims are only commercially essential with those it claims are technologically essential therefore demonstrates that there is no practical difference between the two under TQ Delta's theory of the case. TQ Delta's treatment of the Family 3 and 9a patents as standard-essential patents—whether technologically or commercially essential—therefore creates a FRAND obligation for those patents.

Such a result comports with the ITU provisions governing fair licensing. The relevant ITU agreement states that, if the "Patent Holder believes that it holds granted and/or pending applications for Patents, the use of which would be required to implement the above document," it will grant a reasonable and non-discriminatory license. Ex. A at TQD_TX00067558. Further, it continues by explaining that "[e]ssential patents are patents that would be required to implement a specific Recommendation." *Id.* The key inquiry per the ITU is whether the use of the relevant patent would be *required to implement the standard*. TQ Delta unequivocally took the position that the Family 3 and 9a patents are required to implement the VDSL2 and G.inp standards, respectively. *See, e.g.*, Ex. D at 26 ("In Family 3, the '048 and '882 patents are essential as a commercial matter to the VDSL2 standard," and "[i]n Family 9a, the '411 patent is essential as a commercial matter to the G.inp standard"). It makes no difference that TQ Delta attempted to label this requirement as "commercially" essential for the Family 3 and 9a patents; nowhere does the ITU agreement distinguish between *technologically* essential and *commercially* essential. Therefore, because TQ Delta's position is that the Family 3 and 9a patents are essential to certain ITU standards, the language of the ITU agreement obligates TQ Delta to license those patents on a reasonable and non-discriminatory basis. Certainly TQ Delta is not entitled to summary judgment of the opposite conclusion.

Notably, even TQ Delta's technical expert, Dr. Cooklev, was unable to consistently apply TQ

4

Delta's nonsensical position. For example, Dr. Cooklev first states that the Family 9a patent (U.S. Patent No. 8,468,411) is not standard essential. Ex. G ¶ 1274. But later in his report he identifies that same patent as "likely essential to the practice of" the VDSL2 and G.inp standards. *Id.* ¶ 1363. He does so because there is no practical difference between how TQ Delta is treating the Family 3 and 9a patents compared to the other patents it claims are standard essential.

Should TQ Delta's assertion that the Family 3 and 9a patents are commercially essential be accepted by the jury, then there exists a question of fact as to whether TQ Delta was likewise in violation of its FRAND obligations based on its contract, whether express or implied, with the ITU. *St. Lawrence Communs. LLC v. Motorola Mobility LLC*, No. 2:15-cv-351-JRG, 2018 U.S. Dist. LEXIS 25229, at *27 (E.D. Tex. Feb. 15, 2018) ("Whether [the patent owner] violated its FRAND obligations is a question of fact."). Therefore, TQ Delta's motion should be denied.

## V. CONCLUSION

For the reasons set forth above, CommScope respectfully requests that the Court deny TQ Delta's motion for summary judgment as to CommScope's claim for breach of contract for the Family 3 and 9a patents.

Dated this 6th day of January, 2023

Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Ste. B
Tyler, TX 75703
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Lana Shiferman
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
P: (617) 570-1000
F: (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P: (415) 733-6000
F: (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Email: *ross.barton@alston.com*
*scott.stevens@alston.com*
*kirk.bradley@alston.com*
*stephen.lareau@alston.com*
*karlee.wroblewski@alston.com*
*nic.marais@alston.com*
*erin.beaton@alston.com*
*mary.riolo@alston.com*

6

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Telephone: 704-444-1000
Facsimile: 704-444-1111

Katherine G. Rubschlager (Cal. Bar No. 328100)
ALSTON & BIRD LLP
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
Email: *katherine.rubschlager @alston.com*
Telephone: 650-838-2004
Facsimile: 650-838-2001

*Attorneys for Defendants CommScope Holding Company, Inc, CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC*

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel on January 6, 2023.

/s/ *Eric H. Findlay*
Eric H. Findlay

8