# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

TQ DELTA, LLC,

         *Plaintiff,*

v.

COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,

         *Defendants.*

Civil Action No.: 2:21-cv-00310-JRG

**COMMSCOPE'S OPPOSITION TO PLAINTIFF TQ DELTA, LLC'S MOTION TO STRIKE PORTIONS OF THE NON-INFRINGEMENT REPORT AND OPINIONS OF DEFENDANTS' EXPERT, DR. LEONARD J. CIMINI, JR. (DKT. NO. 339)**

███████████████████████████

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 2

III. CONCLUSION .................................................................................................. 5

████████████████████████

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
    No. 2:07-CV-468, 2009 WL 4669854 (E.D. Tex. Sept. 15, 2009)...........................................4

*EMC Corp. v. Pure Storage, Inc.*,
    154 F. Supp. 3d 81 (D. Del. 2016)...........................................................................................4

*GREE, Inc. v. Supercell Oy*,
    No. No. 2:19-cv-00071-JRG-RSP, 2020 WL 3893697 (E.D. Tex. July 9, 2020)....................4

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
    340 F. Supp. 3d 934 (N.D. Cal. 2018).......................................................................................4

*Metaswitch Networks Ltd. v. Genband US LLC*,
    No. 2:14-CV-00744-JRG, 2017 WL 3704760 (E.D. Tex. Aug. 28, 2017)...............................4

*YETI Coolers, LLC v. RTIC Coolers, LLC*,
    No. A-15-CV-597-RP, 2017 WL 404519 (W.D. Tex. Jan. 27, 2017).......................................4

## I.      INTRODUCTION

CommScope Holding Company, Inc., CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC (collectively, "CommScope") hereby opposes Plaintiff TQ Delta, LLC's ("TQ Delta") Motion to Strike Portions of the Non-Infringement Report and Opinions of Defendants' Expert, Dr. Leonard J. Cimini, Jr. (Dkt. No. 339).

TQ Delta seeks to exclude the opinions of CommScope's technical expert, Dr. Cimini, because of an alleged improper claim construction, but TQ Delta's position fails because Dr. Cimini's opinions were merely responding to an infringement opinion by TQ Delta's technical expert that was itself based on an incorrect claim construction.  Neither side disputes that this Court gave the so-called "Mapping Element" term (in claim 36 of the Family 1 '686 patent) a construction of "plain meaning."  However, in TQ Delta's opening infringement report, TQ Delta's expert, Dr. Arthur Brody, construed the Mapping Element to have an overly narrow meaning in an attempt to avoid the prior art.  *See*, *e.g.*, Ong Decl., Ex. 1 ("Brody Rpt.") ¶ 246 (quoting the VDSL2 standard).[1]  Without any further explanation, Dr. Brody then opined that the Accused Products satisfy the Mapping Element.  *Id*. ¶ 247.

In response, CommScope offered the rebuttal report of Dr. Cimini where he expressly faulted Dr. Brody's approach.  *See, e.g.*, Dkt. No. 339-2 ("Cimini Rpt.") ¶¶ 84–85 ("Dr. Brody repeatedly equates mapping symbols to one bit with mapping one bit per DMT symbol and then repeating the message," but "mapping DMT symbols to bits makes no sense").  Dr. Cimini explained that a POSITA would understand the Mapping Element to have one of three possible meanings.  *Id*. ¶ 80. Dr. Cimini then showed that under *any* of the possible meanings of the Mapping Element term,

---

[1] Dr. Brody never suggested that his meaning is the plain meaning.

including the meaning applied by Dr. Brody, TQ Delta's proof of infringement was insufficient.  For example, Dr. Cimini explained that "VDSL2 does not require" the Mapping Element term, and thus Dr. Brody's pointing to the VDSL2 standard did not demonstrate infringement.  *Id.* ¶ 83 (opining that "VDSL2 does not require" the Mapping Element term; "[i]nstead, the standard is very clear, each bit is mapped to one DMT symbol . . .").

TQ Delta now urges the Court to strike Dr. Cimini's opinions as improper claim construction.  But Dr. Cimini was simply responding to Dr. Brody's approach, including Dr. Brody's apparent interpretation of the Mapping Element's plain meaning.  Accordingly, TQ Delta's motion to strike should be denied.

## II.    ARGUMENT

The opinions that TQ Delta seeks to strike here were made in response to TQ Delta's expert's own interpretation of the "Mapping Element" term (i.e., the claim phrase "DMT symbols that are mapped to one bit of the diagnostic message").  During claim construction, the Court gave this term its plain meaning, and declined to find the term indefinite.  *See* Dkt. No. 169 at 27–28.  In the report by TQ Delta's infringement expert, Dr. Brody opined that the Mapping Element is satisfied because the VDSL2 standard "specifically requires that all SOC messages during loop diagnostic mode 'be sent using 1 information bit per DMT symbol.'"  Brody Rpt. ¶ 246 (quoting the VDSL2 standard).  In particular, with respect to his review of the DSL standards at issue, Dr. Brody quoted section 12.4.1.1 of G.993.2 that "all SOC messages shall be sent using 1 information bit per DMT symbol, where ***each bit is sent 5 times in 5 consecutive DMT symbols***."  *Id.* (emphasis added).  Dr. Brody then stated, relying on Dr. Cooklev's analysis of the source code in the Accused Products, that "the firmware includes code with instructions that generate the R-PRM-LD message that during loop diagnostic mode extracts one bit to be modulated on a DMT symbol (*e.g.*, extractOneBit) and ***repeats each bit on five DMT symbols*** (*e.g.*, expandTxByte)."  *Id.* ¶ 250 (emphasis added).  Dr. Brody also

stated that "the TraceSpan identified the transmission of the R-PRM-LD message of 1,030 bytes (8,240 bits) mapped to 41,200 DMT symbols, each symbol containing one bit and *each bit repeated 5 times*." *Id.* ¶ 254 (emphasis added).  By expressing these opinions, Dr. Brody gave a clear indication that, in his view, the Mapping Element does not simply require that each DMT symbol in the diagnostic message includes only one bit, but also requires that the bits be repeated.

In CommScope's rebuttal report, Dr. Cimini pointed out the flaws with Dr. Brody's approach. For instance, because Dr. Cimini disagreed with Dr. Brody's interpretation of the Mapping Element, Dr. Cimini identified three possible interpretations of the plain meaning, including the one apparently asserted by Dr. Brody in his infringement report.  *See* Cimini Rpt. ¶ 80.  Those interpretations were: (1) "[t]he diagnostic message includes multiple DMT symbols and each DMT symbol includes only one bit"; (2) "[t]he diagnostic message includes DMT symbols such that one bit is spread across two or more DMT symbols"; and (3) "[t]he diagnostic message includes DMT symbols such that each symbol includes only one bit and there is at least one identical symbol that includes that same bit." *Id.*  Dr. Cimini then explained that, as he had opined in his opening report on invalidity, there is no written description in the intrinsic record for Dr. Brody's interpretation, which corresponds to the third interpretation.  *Id.* ¶ 81.[2]  Dr. Cimini then showed that under Dr. Brody's interpretation, indeed any of the possible interpretations, the Accused Products clearly do not infringe.  *Id.* ¶ 87.

Because Dr. Brody had asserted a non-plain meaning construction of the Mapping Element,[3]

---

[2] Dr. Cimini also explained that the prior art disclosed multicarrier modulation where each DMT symbol contains a single bit, as described in Dr. Cimini's first interpretation of the Mapping Element. Cimini Rpt. ¶ 81.  TQ Delta complains that Dr. Cimini applies one of these claim constructions for purposes of his invalidity analysis, but TQ Delta itself asserts that under the Court's plain meaning construction, "claim terms are given their full scope absent disavowal by the patentee or a clear intent to act as his own lexicographer."  Mot. at 7–8.

[3] Dr. Brody has since reversed course in his rebuttal report by asserting that the Mapping Element does not require repeated bits.  *See*, *e.g.*, Ong Decl., Ex. 2 (Brody Rebuttal Rpt.) ¶ 153 (not disputing that G.992.1 discloses using multicarrier modulation with DMT symbols that are mapped to one bit

3

████████████████████

it was proper for Dr. Cimini to review the possible interpretations of the term and to rebut Dr. Brody's position. *See GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00071-JRG-RSP, 2020 WL 3893697, at *1 (E.D. Tex. July 9, 2020) (citing *Haberman v. Gerber Prod. Co.*, 236 F. App'x 592, 600 (Fed. Cir. 2007)) ("For terms given their plain and ordinary meaning, the jury is free to apply an expert's description of the claims if it is consistent with the jury's understanding.") (internal quotations omitted); *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016) ("When a court does not construe a term or orders that ordinary meaning applies, expert testimony on the understanding of a skilled artisan is appropriate to assist the jury."); *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-00744-JRG, 2017 WL 3704760, at *4 (E.D. Tex. Aug. 28, 2017) (denying JMOL relying on expert testimony regarding the plain and ordinary meaning of the claim term "digital transmission facility"); *YETI Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 WL 404519, at *3 (W.D. Tex. Jan. 27, 2017) (noting that "in appropriate circumstances case law may permit testimony to the jury regarding the plain and ordinary meaning of a phrase as understood by one skilled in the art"). TQ Delta's cases are not to the contrary. For example, in *Huawei Techs., Co. v. Samsung Elecs. Co.*, the court excluded an expert's opinions that "'exceed the bounds' of the plain and ordinary meaning of the claim terms." 340 F. Supp. 3d 934, 967 (N.D. Cal. 2018). Dr. Cimini has not exceeded the bounds of the Mapping Element's plain meaning; rather, he responded to Dr. Brody's view. Similarly, in *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-CV-468, 2009 WL 4669854, at *7–8 (E.D. Tex. Sept. 15, 2009), the defendants' expert provided new opinions on claim construction and indefiniteness. That is simply not the situation here.

Thus, Dr. Cimini's opinions do not, as TQ Delta asserts, misapply the Court's "plain

---

of a message, but only disputing that it does not disclose that message being a diagnostic message).

meaning" construction.  As explained, Dr. Cimini was simply responding to—and disagreeing with—the interpretation offered and applied by Dr. Brody.  There is no basis for excluding Dr. Cimini's opinions.

## III.    CONCLUSION

For the reasons set forth above, CommScope respectfully requests that the Court deny TQ Delta's Motion to Strike Portions of the Non-Infringement Report and Opinions of Defendants' Expert, Dr. Leonard J. Cimini, Jr.


Dated this 6th day of January, 2023              Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Ste. B
Tyler, TX 75703
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Lana Shiferman
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
P:  (617) 570-1000
F:  (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P:  (415) 733-6000

F:  (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Email: *ross.barton@alston.com*
*scott.stevens@alston.com*
*kirk.bradley@alston.com*
*stephen.lareau@alston.com*
*karlee.wroblewski@alston.com*
*nic.marais@alston.com*
*erin.beaton@alston.com*
*mary.riolo@alston.com*
Telephone: 704-444-1000
Facsimile: 704-444-1111

Katherine G. Rubschlager (Cal. Bar No. 328100)
ALSTON & BIRD LLP
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
Email: *katherine.rubschlager @alston.com*
Telephone: 650-838-2004
Facsimile: 650-838-2001

***Attorneys for Defendants
CommScope Holding Company, Inc,
CommScope Inc., ARRIS US Holdings, Inc.,
ARRIS Solutions, Inc., ARRIS Technology,***

6

████████████████████████████████

*Inc., and ARRIS Enterprises, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance

with Local Rule CV-5(a).  Therefore, this document was served on all counsel on January 6, 2023.

*/s/  Eric H. Findlay*
Eric H. Findlay

████████████████████████████████

██████████████████████████████████████

████████████████████████

██████████████