██████████████████████████████

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>               *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>               *Defendants*. | Civil Action No.: 2:21-cv-00310-JRG |

**COMMSCOPE'S OPPOSITION TO PLAINTIFF TQ DELTA'S MOTION TO STRIKE THE EXPERT TESTIMONY OF DR. GEORGE A. ZIMMERMAN, DR. RICHARD WESEL, DR. BRUCE MCNAIR, AND DR. NIEL RANSOM (Dkt. 337)**

██████████████████████████████

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. APPLICABLE LAW ............................................................................................................. 1

    A. The Use of Prior Art for Background Purposes............................................................. 1

III. ARGUMENT ......................................................................................................................... 2

    A. CommScope's Experts Properly Rely on the Cited References ..................................... 2

        1. The Zimmerman Report (Family 2)............................................................................ 2

        2. The Wesel Report (Family 3) ..................................................................................... 4

        3. The McNair Report (Families 6 and 9)....................................................................... 5

    B. TQ Delta's "Wrong Priority Analysis" Argument Is Misplaced..................................... 7

    C. Dr. Ransom Is Not Construing the Claims and Will Apply the Court's Constructions ................................................................................................................... 8

        1. "Bonded Transceivers" (Family 2) .............................................................................. 8

        2. "Reducing a Difference in Latency Between the Bonded Transceivers" (Family 2)..................................................................................................................... 8

        3. "Configurable To" (Family 6) ..................................................................................... 9

        4. "Between" (Family 9) ................................................................................................ 11

IV. CONCLUSION .................................................................................................................... 12

██████████████████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allergan Inc. v. Teva Pharms. USA, Inc.*,
   No. 2:15-cv-1455, 2017 U.S. Dist. LEXIS 225041 (E.D. Tex. Aug. 13, 2017) .................... 1, 2

*Ariad Pharmaceuticals, Inc. v. Eli Lily & Co.*,
   598 F.3d 1336 (2010) ................................................................................................................. 7, 8

*Arthrex, Inc. v. Smith & Nephew*,
   No. 2:15-cv-01047-RSP, 2016 U.S. Dist. LEXIS 203781
   (E.D. Tex. Nov. 30, 2016) ......................................................................................................... 2, 3, 5, 7

**RULES**

Rule 3-3 .................................................................................................................................................. 1, 3, 5, 7

## TABLE OF EXHIBITS[1]

| Exhibit No. | Description |
|---|---|
| Ex. 10 | Excerpt of Rebuttal Expert Report of Dr. Todor Cooklev Regarding Validity of the Family 2, 3, and 9 Patents ("Cooklev Rebuttal Rept.") |
| Ex. 11 | Excerpt of Opening Expert Report of Dr. Richard Wesel on the Invalidity of the Asserted Claims of the Family 3 Patents (U.S. Patent Nos. 7,844,882; 8,276,048; 8,495,473; 9,547,608) ("Wesel Opening Rept.") |
| Ex. 12 | Excerpt of Provisional Appl. No. 60/618,269 |
| Ex. 13 | Excerpt of Expert Report of Vijay Madisetti, Ph.D., on Infringement of the Family 4 and Family 6 Patents ("Madisetti Opening Rept.") |
| Ex. 14 | Excerpt of Responsive Expert Report of Dr. Niel Ransom on Non-Infringement of the Family 2, 3, 6, 9A and 9B Patents ("Ransom Reb. Rept.") |
| Ex. 15 | Excerpt of U.S. Patent No. 8,468,411 ("'411 Patent") |

---

[1] For simplicity, Exhibits 1–9 reference those cited in and attached to TQ Delta's opening motion (Dkt. No. 337).

I.      INTRODUCTION

In its omnibus Motion to Strike, TQ Delta attempts to strike hundreds of paragraphs of CommScope's expert reports based on an alleged failure to comply with the Court's Narrowing Order and the Local Patent Rules. TQ Delta's Motion, however, is premised on a misapprehension of the way the experts rely on the cited references and a misapplication of this Court's caselaw. Despite TQ Delta's assertions otherwise, the prior art references it complains about are being used exclusively for permitted purposes such as demonstrating the state of the prior art and explaining the background of the technology. Unrelatedly, TQ Delta also seeks to strike written-description opinions from Dr. Wesel, but TQ Delta's position is based on a misunderstanding of Dr. Wesel's analysis. Finally, because neither CommScope nor its experts will collaterally attack the Court's claim constructions, those grounds of TQ Delta's Motion are either moot or misplaced. Denial of TQ Delta's Motion is warranted.

II.     APPLICABLE LAW

   A.      The Use of Prior Art for Background Purposes

A party's invalidity contentions must contain "[t]he identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious." Local Patent Rule 3-3(a). "[T]he language of the Rule makes clear that only the reference or references that are anticipatory are required to be disclosed. The Rule plainly does not require the disclosure of other references that may provide evidentiary support for the anticipation defense." *Allergan Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-cv-1455, 2017 U.S. Dist. LEXIS 225041, at *12 (E.D. Tex. Aug. 13, 2017). Moreover, the portion of Local Patent Rule 3-3 pertaining to obviousness "does not expressly, or by implication, require the production of all evidence that may be relevant in any way to the issue of obviousness, such as background evidence going to the state of the art at the time of the invention or evidence bearing on any secondary considerations that the patentee may invoke to help rebut the defendant's

1

obviousness case." *Id*. at *12–13. In the *Allergan* case, Judge Bryson analyzed this Court's long-standing and consistent approach to this issue and, relying on that approach, rejected the plaintiff's attempt to strike all mentions of background references.

### III.     ARGUMENT

####    A.     CommScope's Experts Properly Rely on the Cited References

TQ Delta's Motion incorrectly states that CommScope's experts decided to rely on unelected art to demonstrate that the claims of the asserted patents are invalid. TQ Delta is wrong.

In each instance identified by TQ Delta, CommScope's experts permissibly cite prior art references to establish: (1) background material that is relevant to the technology at issue; (2) the state of the art; (3) what one of ordinary skill in the art would have known at the time of the invention; (4) motivation or expectation of success with respect to an elected prior art combination; and/or (5) objective evidence of obviousness such as simultaneous invention. *See Arthrex, Inc. v. Smith & Nephew*, No. 2:15-cv-01047-RSP, 2016 U.S. Dist. LEXIS 203781, at *10 (E.D. Tex. Nov. 30, 2016). None of these references are relied on as anticipatory or obviousness art to the asserted patents, and none of them are used to "fill in gaps" in the prior art that the experts do rely on for anticipation or obviousness. To be clear and leave no doubt, CommScope confirms that it will not rely on these prior art references as a ground for invalidity of any asserted claim.

####    1.     The Zimmerman Report (Family 2)

TQ Delta complains about several references discussed by Dr. Zimmerman in his background section and alleges that his opinions should be stricken because "these references are not mere background references." Dkt. No. 337 ("Motion") at 3. TQ Delta is wrong because the references are mere background, and in fact are found in the background section of Dr. Zimmerman's report.

Also, TQ Delta's own expert disagrees with its position. In his rebuttal report, TQ Delta's expert Dr. Cooklev stated that, "I have reviewed [Dr. Zimmerman's background] references. They

are irrelevant to invalidity because either alone, or in combination with any other prior art reference they do not anticipate or render obvious any Asserted Claim. Indeed, ***even Dr. Zimmerman does not assert that these references (with the exceptions of the documents I discuss below) alone or in combination render the Asserted Claims obvious***." Ex. 10 (Cooklev Rebuttal Rept.) ¶ 78 (emphasis added). With one exception, Dr. Cooklev does not "discuss below" (i.e., in his invalidity analysis) any of the references that TQ Delta now complains about, meaning that the position taken in TQ Delta's Motion is irreconcilable with the position its expert took. Ironically, the one exception is Dr. Cooklev's discussion of ITU-T G.992.1, which Dr. Cooklev likewise addresses in ***his own background section*** (which is understandable—for both Dr. Zimmerman and Dr. Cooklev alike— because that reference appears *in the specification of the asserted patent*). *Compare* Motion at 4, *with* Ex. 10 ¶ 128.

Setting aside the incongruity of TQ Delta's position, the references at issue are not being used by Dr. Zimmerman to prove invalidity. Instead, the references are used to illustrate the background of the technology, the state of the art, and to establish what one of ordinary skill in the art would have known at the time of the invention, as summarized in the chart below.

| Zimmerman Report | |
|---|---|
| **Challenged Paragraphs** | **Proper Basis for Citation to Art** |
| ¶¶ 60–130 | Background of the Technology |
| ¶¶ 233–35 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| ¶¶ 285–87 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| ¶¶ 297–99 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| ¶ 308 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |

These are all appropriate uses. *See, e.g., Arthrex*, 2016 U.S. Dist. LEXIS 203781, at *10. As such, Dr. Zimmerman's citations to these references do not run afoul of Local Patent Rule 3-3, the Court's Narrowing Order, or any other applicable standard.

3

### 2. The Wesel Report (Family 3)

TQ Delta's complaints about background references cited in Dr. Wesel's expert report are also misplaced. TQ Delta asserts that "Dr. Wesel's 'background' section is not innocuous" and that "Dr. Wesel relies on that section (and its accompanying references) multiple times for his element-by-element invalidity opinions." Motion at 4. Once again, TQ Delta is not only wrong, but its own expert contradicts TQ Delta's assertions.

TQ Delta's expert Dr. Cooklev states that, "Dr. Wesel cites many references in the background section of his report that do not support his invalidity opinions." Ex. 10 ¶ 79. He then states, "I have reviewed these references. They are irrelevant because either alone, or in combination with any other prior art reference they do not anticipate or render obvious any Asserted Claim. Indeed, *even Dr. Wesel does not assert that this references alone or in combination render the Asserted Claims obvious*." Ex. 10 ¶ 80 (emphasis added). Here again, Dr. Cooklev had made clear that both he and TQ Delta understand that Dr. Wesel is not using these references as grounds for invalidity.

And to be sure, the references at issue are *not* being used by Dr. Wesel to prove invalidity. Instead, the references are used to illustrate the state of the art, to establish what one of ordinary skill in the art would have known at the time of the invention, and the like, as summarized in the chart below.

| Wesel Report | |
|---|---|
| **Challenged Paragraphs** | **Proper Basis for Citation to Art** |
| ¶¶ 40–223 | Background of the Technology |
| ¶ 321 | Background of the Technology |
| ¶ 332 | Background of the Technology; Establishing what one skilled in the art would have known at the time of the invention |
| ¶ 449 | Background of the Technology; Supplying motivation or expectation of success with respect to an elected combination |

4

| ¶ 451 | Background of the Technology; State of the art; Establishing what one skilled in the art would have known at the time of the invention; Supplying motivation or expectation of success with respect to an elected combination |
|---|---|
| ¶ 539 | Background of the Technology; Establishing what one skilled in the art would have known at the time of the invention |
| ¶ 562 | Background of the Technology; Establishing what one skilled in the art would have known at the time of the invention |
| ¶ 577–78 | Background of the Technology; Establishing what one skilled in the art would have known at the time of the invention; Supplying motivation or expectation of success with respect to an elected combination |
| ¶ 624 | Background of the Technology; Establishing what one skilled in the art would have known at the time of the invention |
| ¶ 678 | Background of the Technology; Establishing what one skilled in the art would have known at the time of the invention |
| ¶ 1029 | Background of the Technology; Establishing what one skilled in the art would have known at the time of the invention |
| ¶ 1050 | Background of the Technology; Establishing what one skilled in the art would have known at the time of the invention |
| ¶ 1117 | Establishing what one skilled in the art would have known at the time of the invention |
| ¶ 1384 | Background of the Technology; Establishing what one skilled in the art would have known at the time of the invention |

These are all appropriate uses. *See, e.g., Arthrex*, 2016 U.S. Dist. LEXIS 203781, at *10. As such, Dr. Wesel's citations to these references do not run afoul of Local Patent Rule 3-3, the Court's Narrowing Order, or any other applicable standard.

### 3. The McNair Report (Families 6 and 9)

TQ Delta's complaints about background references cited in Dr. McNair's report suffer from the same flaws. Once more, TQ Delta focuses on references used as background to establish the state of the art and the knowledge of one of ordinary skill in the art. Also, as in the case of Dr. Zimmerman and Dr. Wesel, the references at issue relied on by Dr. McNair are not used to prove invalidity. Instead, the references are used to illustrate the state of the art, to establish what one skilled in the art would have known at the time of the invention, and the like, as summarized in the chart below.[2]

---

[2] CommScope will not argue or suggest at trial that T1.413 anticipates and/or renders obvious claims

| | McNair Report |
|---|---|
| **Challenged Paragraphs** | **Proper Basis for Citation to Art** |
| F6 ¶¶ 40–220 | Background of the Technology |
| F6 ¶ 363 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| F6 ¶ 391 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| F6 ¶ 432 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| F6 ¶ 444 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| F6 ¶¶ 450–51 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| F6 ¶ 453 | ¶ 453 does not reference any prior art and appears to be a typo by TQ Delta |
| F6 ¶¶ 461–64 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| F6 ¶ 468 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| F6 ¶¶ 531–32 | Establishing what one skilled in the art would have known at the time of the invention; Supplying motivation or expectation of success with respect to an elected combination |
| F6 ¶ 564 | Background of the Technology |
| F6 ¶ 566 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| F6 ¶ 571 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| F6 ¶ 589 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| F6 ¶ 605 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |
| F6 ¶ 615 | Establishing what one skilled in the art would have known at the time of the invention; Supplying motivation or expectation of success with respect to an elected combination |
| F9 ¶¶ 41–239 | Background of the Technology |
| F9 ¶ 566 | Establishing what one skilled in the art would have known at the time of the invention; Supplying motivation or expectation of success with respect to an elected combination |
| F9 ¶ 575 | Establishing what one skilled in the art would have known at the time of the invention; Supplying motivation or expectation of success with respect to an elected combination |

---

8 and 10 of the '835 patent, and thus withdraws footnote 8 to paragraph 349 of Dr. McNair's report.

| F9 ¶ 578 | Establishing what one skilled in the art would have known at the time of the invention; Supplying motivation or expectation of success with respect to an elected combination |
|---|---|
| F9 ¶¶ 630–31 | State of the art; Establishing what one skilled in the art would have known at the time of the invention |

These are all appropriate uses. *See, e.g.*, *Arthrex*, 2016 U.S. Dist. LEXIS 203781, at *10. As such, Dr. McNair's citations to these references do not run afoul of Local Patent Rule 3-3, the Court's Narrowing Order, or any other applicable standard.

### B. TQ Delta's "Wrong Priority Analysis" Argument Is Misplaced

TQ Delta attacks Dr. Wesel's Family 3 report by arguing that Dr. Wesel performed an incorrect "essential element" analysis in reviewing the October 2004 provisional application for the Family 3 patents (and analyzing whether the provisional is a basis for priority). Motion at 8–9. But TQ Delta is wrong because Dr. Wesel relied on the correct standard in his report.

Contrary to TQ Delta's argument, Dr. Wesel *did* recite and apply the pertinent standard set forth in *Ariad Pharmaceuticals, Inc. v. Eli Lily & Co.*, 598 F.3d 1336 (2010). *Compare* Motion at 8, *with* Ex. 11 (Wesel Opening Rpt.) ¶ 34. Under *Ariad*, satisfying the written description test requires that the disclosure "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." 598 F.3d at 1351. That is exactly the standard that Dr. Wesel applied. *See* Ex. 11 ¶ 34 (stating that "the standard for satisfying written description with respect to a patent is that the patent specification reasonably conveys to a person having ordinary skill in the art that the inventor had possession of the subject matter of the claims as of the effective filing date"). The "essential" and "necessary" language that TQ Delta apparently objects to is language from the actual October 2004 provisional application itself:

> It is apparent that it is **necessary** for the receiver to have knowledge of the total shared memory prior to configuring the FCI blocks to meet application requirements. It is therefore **an essential aspect of this invention** that prior to configuring the FCI blocks the transmitting modem must send a message to the receiving modem containing information describing the total/shared memory of the transmit FCl blocks.

7

Ex. 12 (Provisional Appl. No. 60/618,269) (emphasis added); *see also* Ex. 4 ¶ 229. Dr. Wesel's analysis addresses the fact that the provisional application, through which the Family 3 patents allegedly claim priority, describes transmitting information describing the "total/shared memory" as "necessary" and "an essential aspect of this invention." Dr. Wesel explains in his report that the messages recited in the asserted claims are fundamentally different from the "total/shared memory" information, and so a person of ordinary skill in the art "would not understand the inventors to be in possession of claimed embodiments." Ex. 4 ¶ 232. This is the *Ariad* standard, which Dr. Wesel applied. TQ Delta's motion should be denied.

### C. Dr. Ransom Is Not Construing the Claims and Will Apply the Court's Constructions

#### 1. "Bonded Transceivers" (Family 2)

TQ Delta seeks to strike paragraph 211 of Dr. Ransom's rebuttal expert report, including the portion where Dr. Ransom notes that TQ Delta's expert (Dr. Cooklev) failed to show that the accused products "███████████████████." To avoid unnecessary briefing and to streamline the presentation of the issues at trial, CommScope will not rely on this argument for purposes of noninfringement. ████████████████████████ may, of course, demonstrate a lack of *value* of the Asserted Patents, but CommScope will not rely on that notion as a basis for noninfringement. Thus, this portion of TQ Delta's motion is moot.

#### 2. "Reducing a Difference in Latency Between the Bonded Transceivers" (Family 2)

TQ Delta argues that the Court's Claim Construction Memorandum and Order, Dkt. No. 169 ("Claim Construction Order"), rejected CommScope's arguments regarding ████████ ████████████████████████████. That is not right. The Court did not reject CommScope's arguments regarding a difference in latency, but rather adopted Judge Andrews'

8

construction that the claim phrase means "reduce a difference in configuration latency between the bonded transceivers." Claim Construction Order at 44. In fact, the Court's discussion supports the propriety of Dr. Ransom's opinions. Although the Court noted that "the claims can be understood without comparing actual latency values," the Court never precluded determining whether there is a reduced difference in latency via such a comparison. *Id.* at 43. Moreover, the Court (in the very same sentence) stated that the patent's disclosures "requir[e] reducing '*a* difference in latency' (such that the difference is less than it would have otherwise been)." *Id.* (emphasis in original). Consistent with the Court's Claim Construction Order, Dr. Ransom's opinions explain how a person of ordinary skill in the art would go about determining that "███████████████████████████████████████████" and he does so by ███████████████████████████████. This is not a collateral attack on the Court's claim construction and is entirely proper.

### 3. "Configurable To" (Family 6)

TQ Delta argues that Dr. Ransom's report regarding the '835 patent (Family 6) applies a construction of "configurable to" that is inconsistent with the Court's construction. TQ Delta is incorrect, and its arguments seem to be based on misinterpretations of Dr. Ransom's opinions. Dr. Ransom's opinions merely rebut Dr. Madisetti's incorrect opinions regarding what the accused products are "capable of" (which is not the Court's construction) rather than what they are "configurable to" do (the claim language) or "able to be configured" to do (the Court's construction). Ex. 13 (Madisetti Opening Rept.) ¶ 310; *see also* Ex. 14 (Ransom Reb. Rept.) ¶¶ 173–178, 262, 264, 277 (discussing Dr. Madisetti's improper reliance on what the accused products are "capable of").

Dr. Ransom explains that Dr. Madisetti's "capable of" opinions are incorrect because, for example, "during prosecution of the application that matured into the '835 patent, the applicant surrendered 'capable of' as the meaning of 'configurable to.'" Ex. 14 ¶ 278; *see also id.* ¶¶ 85–95, 278 (summarizing the prosecution history). Dr. Ransom also rebuts Dr. Madisetti's flawed analysis

9



by pointing out that the Accused Products are "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* ¶ 265. In other words, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* ¶ 266 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). TQ Delta's selective readings thus misinterpret Dr. Ransom's opinions.[3] Notably, in the end, Dr. Ransom concludes that under any of these meanings of "configurable to" (including Dr. Madisetti's) there is no infringement. *See id.* (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *id.* ¶ 290 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

Dr. Ransom's opinions that TQ Delta complains about are primarily rebutting Dr. Madisetti's opinions, including Dr. Madisetti's improper analysis of what the accused products are "capable of." The opinions are not inconsistent with the Court's construction. For the avoidance of doubt, CommScope confirms that CommScope and Dr. Ransom will not offer any evidence or opinions that "configurable to" means anything other than what the Court has construed it to mean—"able to be configured.".[4] Accordingly, CommScope respectfully requests that the Court deny TQ Delta's

---

[3] Dr. Ransom's deposition testimony likewise does not demonstrate use of an improper claim construction position, but rather demonstrates the optional nature of the feature in the standard. *See* Ex. 9 (Ransom Dep.) at 89:1–17.

[4] In paragraph 278 of Dr. Ransom's rebuttal report (discussing how Dr. Madisetti's use of a "capable of" standard was foreclosed by the prosecution history), Dr. Ransom also discusses this Court's construction of "operable to" to mean "configured to" (*see* Claim Construction Order at 23) and he

motion on this issue.

### 4. "Between" (Family 9)

TQ Delta incorrectly argues that Dr. Ransom impermissibly construes the claim term "between," which appears in certain claims of the Family 9 patents requiring allocating a memory "between" "a" retransmission function and "an" interleaving and/or deinterleaving function. Dr. Ransom expressed his opinion that, in order to allocate a memory "between" these two functions, "███" Ex. 14 ¶ 349. He then opined that "███" *Id.* ¶ 351. This is not improper claim construction. Dr. Ransom is simply expressing his opinion under the plain and ordinary meaning of the claim language.

TQ Delta's motion improperly characterizes Dr. Ransom's opinions as "improper claim construction," and then TQ Delta proceeds to argue whether the view "finds support in the intrinsic record." Motion at 14. But TQ Delta never asked this Court to construe "between" during the claim construction process, and CommScope had no way to foresee that TQ Delta would object to this plain meaning view of the basic English word "between." TQ Delta seems to be using its motion as a means for taking a question of fact regarding non-infringement away from the jury.

To be sure, Dr. Ransom simply applies the ordinary meaning of "between" and opines that TQ Delta failed to satisfy this claim element—he does not construe the term. For example, he states that "███" and therefore the memory is not

---

errantly then stated that the phrase "configurable to" "should also be interpreted to mean 'configured to.'" Ex. 14 ¶ 278 (last sentence). That statement was an error and will not be expressed at trial.

allocated between just a retransmission function and an interleaving and/or deinterleaving function. Ex. 14 ¶¶ 375–76. His opinion relies on what a person of ordinary skill in the art would have known, which includes what is written in the patent specification. TQ Delta's citations to the specification are not a compelling reason to now construe this term. Indeed, while the specification does contemplate multiple functions, it also contemplates sharing a memory between just certain of those functions. For example, one disclosed embodiment contemplates "100 kBytes of available memory" that is allocated between just two functions—"RS coding functionality" and "retransmission functionality." Ex. 15 ('411 Patent) at 18:54–58. Similarly, the claim language at issue here requires allocating memory "between" just certain functions: "a" retransmission function and "an" interleaving and/or deinterleaving function. Dr. Ransom's opinions make this very point, and permissibly so. Accordingly, CommScope respectfully requests that the Court deny TQ Delta's Motion on this issue.

## IV.   CONCLUSION

For the reasons set forth above, CommScope respectfully requests that the Court deny TQ Delta's Motion to Strike.

Dated this 6th day of January, 2023

Respectfully submitted,

By: /s/ Eric H. Findlay
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Ste. B
Tyler, TX 75703
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Lana Shiferman

GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
P: (617) 570-1000
F: (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P: (415) 733-6000
F: (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Email: *ross.barton@alston.com*
*scott.stevens@alston.com*
*kirk.bradley@alston.com*
*stephen.lareau@alston.com*
*karlee.wroblewski@alston.com*
*nic.marais@alston.com*
*erin.beaton@alston.com*
*mary.riolo@alston.com*
Telephone: 704-444-1000
Facsimile: 704-444-1111

13

        Katherine G. Rubschlager (Cal. Bar No. 328100)
        ALSTON & BIRD LLP
        1950 University Avenue, Suite 430
        East Palo Alto, CA 94303
        Email: *katherine.rubschlager @alston.com*
        Telephone: 650-838-2004
        Facsimile: 650-838-2001

        ***Attorneys for Defendants***
        ***CommScope Holding Company, Inc, CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC***

███████████████████████████████████████ 15 ███████████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel on January 6, 2023.

/s/ *Eric H. Findlay*
Eric H. Findlay