# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>*Defendants*. | Civil Action No.: 2:21-cv-00310-JRG<br><br>JURY TRIAL DEMANDED |

**COMMSCOPE'S OPPOSITION TO PLAINTIFF TQ DELTA'S MOTION TO STRIKE PORTIONS OF THE NON-INFRINGEMENT REPORT AND OPINIONS OF EXPERT DR. NAOFAL AL-DHAHIR (Dkt. No. 341)**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 2 |
| III. | LEGAL STANDARD | | 4 |
| IV. | ARGUMENT | | 5 |
| | A. | CommScope Appropriately Responded to TQ Delta's Interrogatories | 5 |
| | B. | CommScope Timely Disclosed the Available Non-Infringing Alternatives | 6 |
| | C. | CommScope's Disclosures Regarding Available Non-Infringing Alternatives Were Substantially Justified | 7 |
| | | 1. Factor 1: CommScope has a reasonable explanation for the timing of its disclosure | 7 |
| | | 2. Factor 2: TQ Delta is not prejudiced by the timing of CommScope's disclosure | 8 |
| | | 3. Factor 3: A continuance is unnecessary | 9 |
| | | 4. Factor 4: The expert evidence at issue is important | 9 |
| V. | CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ART+COM Innovationpool GmbH v. Google Inc.*,
   155 F. Supp. 3d 489 (D. Del. 2016)........................................................................................4

*Barkan Wireless IP Holdings v. T-Mobile US, Inc.*,
   2021 U.S. Dist. LEXIS 257888 (E.D. Tex. Dec. 10, 2021).......................................................4

*Beneficial Innovations, Inc. v. AOL LLC*,
   Case No. 2:07-cv-555, Dkt. No. 260 (E.D. Tex. May 26, 2010)...............................................6

*Burleson v. Tex. Dep't of Criminal Justice*,
   393 F.3d 577 (5th Cir. 2004) ....................................................................................................4

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993).................................................................................................................9

*Droplets, Inc. v. Overstock.com, Inc.*,
   No. 2:11-cv-401-JRG-RSP, 2015 U.S. Dist. LEXIS 189122 (E.D. Tex. Jan. 9, 2015).............4

*Genband US LLC v. Metaswitch Networks Corp.*,
   No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 2652 (E.D. Tex. Jan. 8, 2016).......1, 6, 7, 8

*Image Processing Techs., LLC v. Smsung Elecs. Co.*,
   No. 2:20-cv-00050-JRG-RSP, 2020 U.S. .................................................................................9

*Longhorn HD LLC v. Netscout Sys.*,
   No. 2:20-cv-00349-JRG-RSP, 2022 U.S. Dist. LEXIS 60153 (E.D. Tex. Mar. 31, 2022) .......7

*Mathis v. Exxon Corp.*,
   302 F.3d 448 (5th Cir. 2002) ....................................................................................................9

*Personalized Media Communs. v. Apple, Inc.*,
   No. 2:15-cv-01366-JRG-RSP, 2021 U.S. Dist. LEXIS 127404 (E.D. Tex. Feb. 23, 2021)......9

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*,
   382 F.3d 546 (5th Cir. 2004) ....................................................................................................5

*ZiiLabs Inc. v. Samsung Elecs. Co.*,
   No. 2:14-cv-203-JRG-RSP, 2015 U.S. Dist. LEXIS 147848 (E.D. Tex. Nov. 1, 2015) .......5, 7

**RULES**

Fed. R. Civ. P. 37(c)(1)...............................................................................................................4, 5

Rule 26(a)........................................................................................................................................4

Rule 37 .................................................................................................................................4, 5

Rule 37(c) ................................................................................................................................4

## TABLE OF EXHIBITS

| Exhibit No.[1] | Description |
|---|---|
| Ex. E | Excerpts of the Expert Report of Arthur Brody, Ph.D., on Infringement of Family 1 and 10 Patents By CommScope |
| Ex. F | Excerpts of the 2022-12-05 Deposition Transcript of Dr. Naofal Al-Dhahir |

---

[1] For simplicity, Exhibits A-D reference those cited in and attached to TQ Delta's opening motion (Dkt. No. 341).

iv

## I. INTRODUCTION

TQ Delta asks this Court to strike Dr. Al-Dhahir's opinions relating to acceptable non-infringing alternatives on the basis that these non-infringing alternatives were not disclosed during fact discovery. TQ Delta's arguments are misplaced for three key reasons.

*First*, TQ Delta complains that CommScope's responses to Interrogatory Nos. 4 and 14 were deficient, but neither interrogatory sought CommScope's position as to available non-infringing alternatives. Interrogatory No. 4 merely asked CommScope "whether [each accused] product implements the parts or subparts of the DSL standards identified in TQ Delta's Infringement Contentions." And Interrogatory No. 14 merely asked CommScope to "[d]escribe in detail *CommScope's efforts* to identify and avoid infringement of the Asserted Patents." As a subpart, Interrogatory No. 14 stated that CommScope's response regarding its "efforts to identify and avoid infringement" should "include[e] any *attempts* to design around or develop any alleged non-infringing alternatives . . . or ceasing to make, use, sell, or offer to sell." CommScope had not made such efforts or attempts, and therefore responded—correctly—that "CommScope is not aware of any information responsive to this Interrogatory." CommScope also explained that, in any event, Broadcom (not CommScope) develops the DSL chipsets, and so "███████████████████████████████████████████████████████████████." The fact that CommScope did not make *efforts* to design around or develop any alleged non-infringing alternative does not somehow preclude Dr. Al-Dhahir from opining that non-infringing alternatives *exist*.

*Second*, even if TQ Delta *had* posed an interrogatory asking CommScope to identify all non-infringing alternatives that exist or could be implemented, such an inquiry would have been objectionable because the topic is appropriately reserved for expert discovery. *See Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 2652, at *10 (E.D.

1

Tex. Jan. 8, 2016) (denying motion to strike because the plaintiff was not entitled to the defendant's expert's opinions on non-infringing alternatives prior to the expert report disclosure deadline). CommScope timely disclosed the pertinent available non-infringing alternatives in Dr. Al-Dhahir's expert report.

*Third*, there is no prejudice to TQ Delta. In addition to the available non-infringing alternatives being timely disclosed, there is no prejudice to TQ Delta because the non-infringing alternatives are based *entirely* on functionality described in the same standard that TQ Delta alleges practices the asserted claim of the '354 Patent. TQ Delta is aware of this because it specifically questioned Dr. Al-Dhahir about the functionality at his deposition, demonstrating that not only was TQ Delta not surprised by Dr. Al-Dhahir's opinions, but also that TQ Delta is not suffering any prejudice.

For each of these reasons, TQ Delta's Motion lacks merit and should be denied.

## II. FACTUAL BACKGROUND

During fact discovery, TQ Delta served its First Set of Interrogatories to CommScope, which included Interrogatory No. 14 as follows:[2]

> Describe in detail CommScope's *efforts to identify and avoid infringement* of the Asserted Patents, including *any attempts to design around or develop* any alleged non-infringing alternatives to any Asserted Patent or ceasing to make, use, sell, or offer to sell in the United States or import into the United States any Accused Products.

Dkt. No. 341-4, Ex. C at 15 (emphasis added).

CommScope timely served its objections and responses. In a supplemental response, CommScope provided its objections and then substantively answered as follows:

---

[2] TQ Delta also relies on Interrogatory No. 4 (seeking CommScope's position about "whether the [accused] product[s] implement[] the parts or subparts of the DSL Standards identified in TQ Delta's Infringement Contentions"). That interrogatory is not relevant to non-infringing alternatives, and TQ Delta does not explain or discuss otherwise.

2

> CommScope is not aware of any information responsive to this Interrogatory. The DSL functionality accused by TQ Delta of infringement is performed by the DSL chipsets in the CommScope Accused Products; the DSL chipsets are designed, developed, and manufactured by Broadcom. Based on its current understanding,

Dkt. No. 341-5, Ex. D at 79.

On November 18, 2022, CommScope served the Responsive Expert Report of Dr. Naofal Al-Dhahir Regarding Family 10. In his report, Dr. Al-Dhahir provided opinions relating to available non-infringing alternatives "that make the ROC latency pathway more reliable than the data-carrying latency path" based on functionality described in the VDSL2 standard. Dkt. No. 341-2, Ex. A, Al-Dhahir Rpt. ¶¶ 209, 213. Dr. Al-Dhahir opined that one such non-infringing alternative "is realized by applying Step 3 of the mandatory VDSL2 channel initialization policy 0 ([depicted below]) where fewer bits are allocated to carriers of the ROC latency path than the data carrying latency path." *Id*. ¶ 209.

> **12.3.7.1 Channel initialization policies with ROC**
>
> The method used by the receiver to select the values of transceiver parameters described in this clause is implementation dependent. However, within the limit of the total data rate provided by the local PMD, the selected values shall meet all of the constraints communicated by the transmitter prior to the channel analysis and exchange phase, including:
> - Message overhead data rate ≥ Minimum message overhead data rate;
> - Net data rate ≥ Minimum net data rate for all bearer channels;
> - Impulse noise protection ≥ Minimum impulse noise protection for all bearer channels;
> - Delay ≤ Maximum delay for all bearer channels;
> - SNR Margin ≥ TARSNRM;
> - SNR Margin for the ROC ≥ TARSNRM.
>
> Within those constraints, the receiver shall select the values as to optimize in the priority given in one of the priority lists below, where the selection of the list is configured through the CO-MIB channel initialization policy parameter (CIPOLICY, see clause 7.3.2.10 of [ITU-T G.997.1]). The channel initialization policy applies only for the selection of the values exchanged during initialization and does not apply during SHOWTIME.
>
> Due to use of the specific modulation pattern of O/R-P-MEDLEY signal (modulation with SOC bytes followed by a quadrant scrambler), after the VTU enters the SHOWTIME state, the reported SNRM-ROC value can be inaccurate and lower than the TARSNRM value.
>
> If OLR type 3 (SRA) is supported and enabled, the VTU may initiate an SRA with vendor discretionary triggering criteria for a period of 10 seconds after the VTU has entered the SHOWTIME state in order to achieve a more accurate reported SNRM-ROC value greater than or equal to the TARSNRM value, preferably up to TARSNRM-ROC, as defined in the channel initialization policy below.

3

> The following channel initialization policy is defined:
> - Policy ZERO if $CIpolicy_n=0$, then:
>   1) Maximize the SNR Margin for the ROC up to TARSNRM-ROC.
>   2) Maximize net data rate for all bearer channels, per the allocation of the net data rate, in excess of the sum of the minimum net data rates over all bearer channels (see clause 12.3.5).
>   3) Maximize the SNR Margin for the ROC above TARSNRM-ROC.
>   4) Minimize excess margin with respect to the maximum SNR margin MAXSNRM through gain adjustments (see clause 10.3.4.2). Other control parameters may be used to achieve this (e.g., MAXMASK, see clause 7.2.3).
>
> Support of channel initialization policy ZERO is mandatory. Additional channel initialization policies are for further study. The $CIpolicy_n$ parameter values other than 0 are reserved for use by the ITU-T.

*Id*. In addition, Dr. Al-Dhahir opined that "robustness of the ROC overhead-carrying path over the data-carrying path" can be improved by careful selection of framing parameters (e.g., interleaver depth) as described in the following excerpt from Section 9.7 of the VDSL2 standard:

> For single latency with ROC mode, the value $delay_p$ for latency path #0 (the ROC) shall comply with:
> $$delay_0 \leq 8 \text{ ms}$$
> Additionally, the framing parameters of the latency path #0 (the ROC) shall be chosen such that the ROC is robust to repetitive impulse noise at a frequency of 120 Hz. This may be achieved by selecting the framing parameters such that:
> $$\frac{8 \times N_{FEC0} \times D_0}{L_0} \leq \left\lfloor \frac{f_s}{120 \text{ Hz}} \right\rfloor - 1$$

*Id*. ¶ 213. Dr. Al-Dhahir then concluded that "forward error correction" for the ROC can similarly be used to provide more robustness as described in section 9.3 of the VDSL2 standard. *Id*.

### III. LEGAL STANDARD

Courts have broad discretion in determining whether to admit expert submissions under Rule 37(c). *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 583 (5th Cir. 2004). Rule 37 provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . [or] to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Motions to strike opinions regarding non-infringing alternatives are denied where the information was in fact disclosed or where the failure to disclose the alternatives was substantially justified or harmless. *See, e.g.*, *Barkan Wireless IP Holdings v. T-Mobile US, Inc.*, 2021 U.S. Dist. LEXIS 257888, at *15–18 (E.D. Tex. Dec. 10, 2021); *Droplets, Inc. v. Overstock.com, Inc.*, No. 2:11-cv-401-JRG-RSP, 2015 U.S. Dist. LEXIS 189122, at *14–16 (E.D. Tex. Jan. 9, 2015); *ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d

4

489, 511 (D. Del. 2016).

This Court applies a four-factor test to determine whether a failure to disclose was "substantially justified" or "harmless": (1) the explanation, if any, for the party's failure to provide discovery; (2) the prejudice to the opposing party of allowing the expert to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the expert evidence. *See ZiiLabs Inc. v. Samsung Elecs. Co.*, No. 2:14-cv-203-JRG-RSP, 2015 U.S. Dist. LEXIS 147848, at *5 (E.D. Tex. Nov. 1, 2015) (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563-564 (5th Cir. 2004)).

IV. **ARGUMENT**

    A. **CommScope Appropriately Responded to TQ Delta's Interrogatories**

CommScope appropriately responded to TQ Delta's interrogatories and timely disclosed the available non-infringing alternatives through Dr. Al-Dhahir's non-infringement expert report. Rule 37 is therefore not applicable, and the Motion should be denied on that basis. *See* Fed. R. Civ. P. 37(c)(1) (exclusion is appropriate only "[i]f a party fails to provide information").

TQ Delta points to Interrogatory No. 14, but that interrogatory did not seek CommScope's contentions regarding *possible* or *available* non-infringing alternatives (as TQ Delta seems to suggest in its Motion). Dkt. No. 341 at 1. Rather, Interrogatory No. 14 asked for information relating to CommScope's "*efforts to identify and avoid infringement* of the Asserted Patents, including *any attempts to design around or develop* any alleged non-infringing alternatives." Dkt. No. 341-4, Ex. C at 15 (emphasis added). CommScope correctly responded that "CommScope is not aware of any information responsive to this Interrogatory," since it had not made such efforts or attempts. CommScope also explained that, in any event, "[t]he DSL functionality accused by TQ Delta of infringement is performed by the DSL chipsets in the CommScope Accused Products," which "are designed, developed, and manufactured by Broadcom." Dkt. No. 341-5, Ex. D at 78–79.

5

CommScope further explained that it "███████████████████████████████████████████████████████████████████████████████████████." *Id.* at 79. For those reasons—which CommScope explained in its response—CommScope not only had not attempted to design-around or develop a non-infringing alternative, but also could not have done so.

TQ Delta apparently views its interrogatory as asking for *possible* or *available* non-infringing alternatives, but that is not what it says. Regardless, if TQ Delta had actually believed that the interrogatory called for such information, TQ Delta could have and should have filed a motion to compel. It failed to do so. And as explained, CommScope fairly and correctly responded to the actual interrogatory propounded by TQ Delta.

### B. CommScope Timely Disclosed the Available Non-Infringing Alternatives

Even if TQ Delta had propounded an interrogatory seeking CommScope's position as to any available non-infringing alternatives, CommScope would have been justified in objecting and deferring the issue until the period for expert discovery. *See Genband*, 2016 U.S. Dist. LEXIS 2652, at *10 (denying motion to strike where the plaintiff was not entitled to the defendant's expert's opinions on non-infringing alternatives prior to the expert report disclosure deadline). Moreover, a party is "not required [] to disclose its experts' opinions in advance of the deadline for serving expert reports." *Beneficial Innovations, Inc. v. AOL LLC*, Case No. 2:07-cv-555, Dkt. No. 260, at 1 (E.D. Tex. May 26, 2010). CommScope followed that exact timing. Specifically, in Dr. Al-Dhahir's rebuttal expert report, he identified certain acceptable non-infringing alternatives to the accused functionality based on functionality described in the VDSL2 standard itself. In particular, in paragraphs 209–214 of the report, Dr. Al-Dhahir identified the following possible non-infringing alternatives, each of which is rooted in the standard: (1) applying Step 3 of the mandatory VDSL2 channel initialization policy; (2) selecting the framing parameters of the latency path #0 as described in standard; and (3) relying on forward error correction for the ROC to provide more robustness.

6

Dkt. No. 341-2, Ex. A, Al-Dhahir Rpt. ¶¶ 209, 213. Each of these opinions is based on functionality described in the standard which, if implemented, would be an acceptable non-infringing alternative. Therefore, even if TQ Delta had asked the proper interrogatory, it cannot claim any surprise or prejudice by receiving the information via Dr. Al-Dhahir's opinions, since that is the appropriate timing for such information. *See Genband*, 2016 U.S. Dist. LEXIS 2652, at *10.

### C. CommScope's Disclosures Regarding Available Non-Infringing Alternatives Were Substantially Justified

In addition to CommScope's proper interrogatory responses and timely disclosure of non-infringing alternatives during the period for expert discovery, TQ Delta's motion should additionally be denied because there is no prejudice to TQ Delta. Specifically, all of the *ZiiLabs* factors favor not excluding Dr. Al-Dhahir's opinions regarding acceptable non-infringing alternatives.

#### 1. Factor 1: CommScope has a reasonable explanation for the timing of its disclosure

As explained above, TQ Delta relies on an interrogatory that simply did not seek CommScope's contentions regarding any available non-infringing alternatives that may exist. Rather, Interrogatory No. 14 posed a fundamentally different question—asking CommScope to identify its efforts to design-around or develop any non-infringing alternatives—which CommScope timely and correctly responded to. *Cf. Longhorn HD LLC v. Netscout Sys.*, No. 2:20-cv-00349-JRG-RSP, 2022 U.S. Dist. LEXIS 60153, at *2 (E.D. Tex. Mar. 31, 2022) (granting motion to strike where defendant failed to identify non-infringing alternatives in response to interrogatory requesting defendant to "describe in detail each alleged design-around and/or *non-infringing alternative that you contend* can be used as an alternative to each Asserted Patent"). Thus, CommScope was substantially justified in how it responded to TQ Delta's interrogatory. Moreover, even if TQ Delta had posed an interrogatory asking for non-infringing alternatives that "can be used" (as in *Longhorn*) rather than asking about attempts by CommScope to develop non-infringing alternatives (as here),

7

CommScope correctly and permissibly provided that information during the period for expert discovery. *See Genband*, 2016 U.S. Dist. LEXIS 2652, at *10.

### 2. Factor 2: TQ Delta is not prejudiced by the timing of CommScope's disclosure

TQ Delta was not prejudiced because CommScope's disclosures of acceptable non-infringing alternatives was timely provided during the period for expert discovery. Moreover, TQ Delta cannot claim any prejudice where the disclosed acceptable non-infringing alternatives are based entirely on functionality described in VDSL2, which is the standard that TQ Delta alleges practices the '354 Patent. Dkt. No. 341-3 at 4. TQ Delta has of course known about the VDSL2 standard since the outset of this litigation. TQ Delta's original Complaint alleged that VDSL2 included functionality that practiced the '354 Patent (Dkt. No. 1 ¶ 147), and TQ Delta similarly cited the standard in its infringement contentions (Dkt. No. 341-3 at 4). Moreover, there is no surprise or prejudice because the channel initialization functionality identified by Dr. Al-Dhahir was discussed by TQ Delta's own infringement expert, Dr. Brody. *See, e.g.*, Ex. E, Brody Rpt. ¶¶ 117, 411, 640 (opining that "the mandatory Channel Initialization Policy ZERO supports maximizing the SNR margin"). Indeed, Dr. Brody cited the same portions of the standard that Dr. Al-Dhahir relies on. *Id*. ¶¶ 116–117.

Additionally, TQ Delta deposed Dr. Al-Dhahir on his opinions relating to non-infringing alternatives, further undermining any notion of prejudice. TQ Delta asked questions about the alternatives, including asking Dr. Al-Dhahir whether he was "familiar with what is channel initialization policy zero," and TQ Delta's counsel even had Dr. Al-Dhahir point to the paragraphs in his report regarding channel initialization policy zero. Ex. F, Al-Dhahir Dep. at 86:13–15. Dr. Al-Dhahir pointed to one of the very paragraphs that TQ Delta now moves to strike. *Id*. at 86:16–20. TQ Delta clearly has had a full opportunity to examine Dr. Al-Dhahir regarding his asserted non-infringing alternatives.

Finally, TQ Delta will have adequate opportunity to dispute the disclosed non-infringing

8

alternatives via cross-examination of Dr. Al-Dhahir at trial. This Court has consistently ruled that such disputes are best remedied through "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)); *see also*, *Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:20-cv-00050-JRG-RSP, 2020 U.S. Dist. LEXIST 108388 (E.D. Tex. June 22, 2020); *Personalized Media Communs. v. Apple, Inc.*, No. 2:15-cv-01366-JRG-RSP, 2021 U.S. Dist. LEXIS 127404 (E.D. Tex. Feb. 23, 2021). The Court should rule likewise here.

### 3. Factor 3: A continuance is unnecessary

Although Factor 3 considers whether any prejudice could be cured by granting a continuance, there is no need for a continuance here. As explained, there was no prejudice to TQ Delta; CommScope appropriately responded to the interrogatories (and other discovery requests) posed by TQ Delta; and CommScope timely disclosed available non-infringing alternatives under the period for expert discovery.

### 4. Factor 4: The expert evidence at issue is important

If the Court were to exclude Dr. Al-Dhahir's opinions regarding acceptable non-infringing alternatives, CommScope would be severely prejudiced because the opinions are important. Dr. Al-Dhahir timely opined on three possible acceptable non-infringing alternatives, and all three relate to the *sole* asserted claim of the '354 Patent. Also, TQ Delta double counts this patent for damages purposes because the patent implicates two standards—VDSL2 and G.INP. Moreover, the disclosed non-infringing alternatives are directly responsive to TQ Delta's allegation that, because the Accused Products practice the VDSL2 standard, they therefore infringe the '354 Patent. Dr. Al-Dhahir's testimony regarding the existence of acceptable non-infringing alternatives is therefore important evidence for the jury to consider since it demonstrates how one could avoid alleged infringement.

## V. CONCLUSION

For the reasons set forth above, CommScope respectfully requests that the Court deny TQ Delta's Motion to Strike the Non-Infringement Report and Opinions of Defendants' Expert, Dr. Naofal Al-Dhahir, including paragraphs 209–214.

Dated this 6th day of January, 2023

Respectfully submitted,

By: /s/ Eric H. Findlay
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Ste. B
Tyler, TX 75703
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Lana Shiferman
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
P: (617) 570-1000
F: (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P: (415) 733-6000
F: (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP

10

601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Email: *ross.barton@alston.com*
　　　*scott.stevens@alston.com*
　　　*kirk.bradley@alston.com*
　　　*stephen.lareau@alston.com*
　　　*karlee.wroblewski@alston.com*
　　　*nic.marais@alston.com*
　　　*erin.beaton@alston.com*
　　　*mary.riolo@alston.com*
Telephone: 704-444-1000
Facsimile: 704-444-1111

Katherine G. Rubschlager (Cal. Bar No. 328100)
ALSTON & BIRD LLP
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
Email: *katherine.rubschlager@alston.com*
Telephone: 650-838-2004
Facsimile: 650-838-2001

***Attorneys for Defendants CommScope Holding Company, Inc, CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel on January 6, 2023.

*/s/ Eric H. Findlay*
Eric H. Findlay