THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>    *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>    *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED |

**TQ DELTA, LLC'S
REPLY IN SUPPORT OF ITS MOTION TO STRIKE THE EXPERT TESTIMONY
OF DR. GEORGE A. ZIMMERMAN, DR. RICHARD WESEL,
DR. BRUCE MCNAIR, AND DR. NIEL RANSOM (DKT. 337)**

TQ Delta respectfully requests that the Court grant its Motion to Strike (Dkt. 337).

I.     **Defendant's Invalidity Experts Improperly Rely On "Background" References**

Defendant does not dispute that it did not elect or disclose dozens of "background" references relied on it in its experts' reports. Nor does not Defendant dispute that had it elected these references, its election would have (1) violated the Focusing and (2) violated the Local Rules because Defendant did not disclose the references in its invalidity contentions. Defendant asserts the order and rules do not apply because the references are "background." Defendant is incorrect.

While "background art can be relied upon in an expert's report" even if it was not previous disclosed, "the rules do not permit the expert to rely on those undisclosed references as the basis of his invalidity position." *Ziilabs Inc. v. Samsung Elecs. Co.*, 2015 U.S. Dist. LEXIS 158549, at *10 (E.D. Tex. Aug. 24, 2015). That is what is happened here, which Defendant does not address in its response: the experts' reports contain hundreds of paragraphs of "background" material that is then used to allege that various claim elements were known in the art. This is an improper use of "background" references, will confuse the jury, and will prejudice TQ Delta. The references should be excluded and Defendant's experts' testimony based on those references should be struck.

Dr. Wesel's Family 3 report illustrates how Defendant is using "background" references. Defendant challenged the Family 3 Patents at trial in Delaware based on the Mazzoni reference. It lost. One deficiency with Mazzoni was that it did not disclose the "message" limitation of the claims: "transmitting or receiving a message during initialization specifying a maximum number of bytes of memory that are available to be allocated to [a deinterleaver/an interleaver]." Defendant's prior expert (Dr. Jacobsen) admitted at trial that Mazzoni did not disclose the claimed "message" (Exh. 16 at 671:4–11, 674:13–17) (emphases added).

> Q.    And Mazzoni does not describe any messages sent or received during initialization; right?

> A.  That's correct, <u>it does not address initialization at all</u>.
>
> Q.  It doesn't discuss any type of initialization, so it certainly <u>doesn't discuss exchanging messages for allocating memory; right</u>?
>
> A.  <u>That's correct</u>.

The jury found against Defendant on the issue, and the Delaware Court upheld that finding on post-trial review because, among other evidence, it was shown at trial that adding a "message" to Mazzoni would be inoperable. Dkt. 350-10 at 15–16.

Despite this history, Dr. Wesel (Defendant's new expert) opines that such initialization messages "would have been necessary" for Mazzoni to work—based on the references in the "Technology Background" section (Dkt. 337-5 at 34:9–36:15) (emphases added).

> Q.  Why would transmitting and receiving initialization messages setting parameters have been necessary for Mazzoni?
>
> A.  Well, I believe I discussed that in the -- in <u>the technology background section when I discussed configuration messages</u> like, just to summarize -- let me go back to that -- let's see.
>
> Basically, these communication devices at the time, that was the common practice for them to exchange initialization messages, <u>as I discussed in the technology background section</u> and in other places in my report, which we can go to if I can look for them. But that's the – that's the basic answer.

Defendant thus uses the "background" prior art to fix the problems with Mazzoni that caused the loss in Delaware. As another example, a second disputed issue in Delaware was whether Mazzoni and another reference raised in this case, Fadavi-Ardekani, disclosed the "shared memory" claim term. The Delaware Court concluded on summary judgment that Defendant failed to show that Fadavi-Ardekani contained "shared memory," Dkt. 350-12 at 18–19, and TQ Delta prevailed at trial on Mazzoni (the reference uses dedicated memory, not shared memory).

To plug the "shared memory" holes in Mazzoni and Fadavi-Ardekani, Dr. Wesel cites <u>ten</u> other references that allegedly show "shared memory." And Dr. Wesel testified that the point of these references was to prove invalidity: they "speak to the point that it's not correct to say that shared memory was hugely innovative at the time of the invention or that it had never been used . . . ." Dkt. 337-5 at 31:15–32:10; *see also id.* (explaining that the Technology Background is "definitely part of my invalidity opinion"). Dr. Zimmerman and Dr. McNair similarly use long "background" sections to shore up their invalidity opinions, as recounted in TQ Delta's Motion.

Defendant does not address its experts' testimony, other than to label the testimony as "background." But the substance of the opinions, not the labeling, is what matters. For example, in *ContentGuard*, the Court excluded paragraphs discussing an alleged "background" reference (Pfleeger) where it was "difficult to completely separate the use of Pfleeger as a state-of-the-art reference from the use of Pfleeger as an invalidity reference: the use for one purpose unavoidably bleeds into the other." *ContentGuard Holdings, Inc. v. Amazon.com*, Inc., 2015 U.S. Dist. LEXIS 109743, at *10 (E.D. Tex. Aug. 19, 2015). The Court similarly in *Huawei* excluded "background"-reference testimony where the expert concluded that the references described "an element recited in the asserted claims": those statements were "an invalidity opinion, not an opinion concerning the general technological background or state of the art." *Huawei Techs. Co. v. T-Mobile US, Inc.*, 2017 U.S. Dist. LEXIS 170481, at *7-8 (E.D. Tex. Oct. 16, 2017). The Court even excluded the more general discussions of the "background" references because "there appears to be a significant risk that [the expert] will present the jury with an undisclosed invalidity opinion." *Id.* at *8.

The same outcome applies here. It is undisputed that Defendant's experts assert that "background" references disclose claim elements and use those references to bootstrap their invalidity opinions. Defendant's only argument is that TQ Delta's technical expert, Dr. Cooklev,

3

stated in his report that Dr. Zimmerman's and Dr. Wesel's ultimate opinions were based on the elected prior art and not the "background" art. But it is not Dr. Cooklev's job to police Defendant's compliance with the rules. And Dr. Wesel's deposition testimony (obtained after Dr. Cooklev's report) shows that Defendant is using the background references to circumvent the rules: Dr. Wesel testified that the background references are "extremely relevant" to his invalidity opinions but are not the "official grounds" subject to the Local Rules and Focusing Order. Dkt. 337-5 at 31:15–32:10. TQ Delta thus respectfully requests that the Court enforce the Local Rules and Focusing Order and limit Defendant's expert testimony to the elected prior art references.

## II. Dr. Wesel Did Not Apply The Correct Written Description Legal Test

Defendant does not engage with Dr. Wesel's actual written-description opinions. While Dr. Wesel may have recited the correct test under *Ariad v. Eli Lilly* in the legal standard section, 200 paragraphs later he applies the essential-element-test: "Because exchange of a message communicating the total amount of shared memory available is a 'necessary' and 'essential' aspect of the alleged invention described in the October 2004 Provisional, a POSA would not understand the inventors to be in possession of embodiments that lack this 'necessary' and 'essential' aspect." Dkt. 337-4 at ¶ 232. While the words "necessary" and "essential" are from the provisional application, Dr. Wesel opines that the lack of such elements in the later-filed claims creates a written-description problem. That is the essential-element test, which Defendant does not contest is improper under the law. TQ Delta thus respectfully requests that the Court strike that analysis.

## III. Dr. Ransom Improperly Engages In Claim Construction, Including Raising Claim-Constructions Arguments That The Court Rejected

Dr. Ransom did not follow the Court's constructions. As to the "difference in latency" term, Defendant ignores Dr. Ransom's opinion, which required a showing of a "before" and "after" comparison in latency values to show infringement. This is the opposite of the Court's holding

that such a comparison is not required: "[T]he claims can be understood without comparing actual latency values or actual data rates, instead requiring reducing 'a difference in latency' (such that the difference is less than it would have otherwise been)." *Id.* Defendant's claim that the "Court never precluded determining whether there is a reduced difference in latency via such a comparison" (Opp. at 9) mischaracterizes both Dr. Ransom's actual opinions (he did not do such a comparison) and the Court's Order (which held the opposite of Dr. Ransom's actual opinion).

For "configurable to," Defendant admits that Dr. Ransom opines on prosecution-history-disclaimer. Opp. at 9–10. That alone is a basis to exclude the opinions. Defendant also does not address that Dr. Ransom's construction of "configurable to" requires the functionality to be in operation—which is the opposite of what the Court held and is contrary to Defendant's representations at the *Markman* hearing that it would not make that argument. *See* Mot. at 12–13.

For "between," Defendant does not address what Dr. Ransom's report says: he expressly redefined "between" as requiring "all of the memory has to be allocated to one or the other of the two functions." Dkt. 337-8 at ¶ 349. That was improper claim construction. The claims are "open-ended 'comprising' claims and thus allow for unrecited elements without straying from the scope of the claims, *Vocalife LLC v. Amazon.Com, Inc.*, 2020 U.S. Dist. LEXIS 60526, at *43 (E.D. Tex. Apr. 6, 2020). Dr. Ransom's rewriting of "between" as "exclusively between" or "only between" improperly closes the claim (by not allowing for additional items in memory). And it does so even though the intrinsic evidence is broader, a fact Defendant admits. The plain meaning of "between" is not "exclusively between" or "only between." And if Defendant wanted that construction, it should have raised it at the *Markman* phase. It did not, and Dr. Ransom's late and incorrect claim construction should be stricken.

## IV. Conclusion

For the foregoing reasons, TQ Delta requests that the Court grant this Motion.

Dated: January 17, 2023

Respectfully Submitted,

/s/ Christian J. Hurt

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(Pro hac vice)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(Pro hac vice)
rchiplunkar@mcandrews-ip.com

Ashley Ratycz
(*Pro hac vice*)
aratycz@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000

6

Facsimile: (312) 775-8100

**ATTORNEYS FOR PLAINTIFF**
**TQ DELTA, LLC**

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this January 17, 2023 on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ Christian Hurt
Christian Hurt