IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>   *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>   *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED |

**TQ DELTA'S REPLY TO
COMMSCOPE'S OPPOSITION TO TQ DELTA LLC'S
MOTION FOR SUMMARY JUDGMENT ON FAMILIES 2, 3, 6, AND 9B**

**I.      INTRODUCTION AND SUMMARY**

CommScope ("CS")'s Response (Dkt. No. 378) is almost entirely procedural, claiming TQ Delta ("TQD") never had the ability to assert collateral estoppel or, if it did, it was waived or is inequitable. It concedes the core merits points TQD moves on, including by failing to admit or deny all but 4 out of 30 of TQD's statements of fact. This Reply addresses CS's arguments and shows they are unfounded. The Court should grant TQD's Motion and apply collateral estoppel on validity and infringement for Families 2 and 3 and infringement for Family 6.  Otherwise, the parties will retry the same issues, including the same evidence and theories, already adjudicated in Delaware.  This is a classic application of collateral estoppel between the parties:

> "[T]he determination of a question directly involved in one action is conclusive as to that question in a second suit." The idea is straightforward: Once a court has decided an issue, it is "forever settled as between the parties," thereby "protect[ing]" against "the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent verdicts." In short, "a losing litigant deserves no rematch after a defeat fairly suffered."

*B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 147 (2015) (internal citations omitted).

It is undisputed that the Delaware Court entered judgments, both FED. R. CIV. P. ("RULE") 58 following trial (for Families 2 and 3) and on summary judgment ("SJ") (for infringement of Family 6). TQD also showed, including with expert testimony, the same products and claims are at issue here, and for other claims and products not asserted in Delaware, there is no material difference for infringement.  CommScope raises no evidence or even specific argument to rebut TQD's showing that there is no material difference for infringement between the products and claims in this case and those in Delaware, and no expert opines that there is one.

Finally, CommScope responds with only one sentence on Family 9b. Resp., p. 2. TQD's '809 patent is presumptively valid, and CS has stipulated to no evidence to contest that validity.

1

The Court should thus enter judgment of validity. Now, CS tries to offer conditions, attempting to change its stipulation that the PTAB relied on, showing the need for the Court's judgment.

## II.  RESPONSE TO COMMSCOPE'S STATEMENTS OF FACT

1 and 4-9 – Admitted.

2 – Denied. The Family 6 expert reports and summary judgments occurred in 2020. Otherwise admitted for Families 2 and 3, though defendant ARRIS acquired 2Wire in 2017.

3 – Denied as to liability on Family 2, 3, and 6. Otherwise admitted for Family 2, 3, and 6 that damages remain to be tried and validity remains for Family 6 as well. Denied that J. Andrews has not issued an appealable final judgment. CS provides no authority on this legal conclusion.

## III.  ARGUMENT

### A.  The Delaware Judgments Are Final for Collateral Estoppel Purposes

The Delaware Court issued RULE 58 judgments, as separate documents, following verdicts on Family 2 and 3 in, respectively, January 2020 and May 2019, that it affirmed post-trial. *See* Mot., SUMF ¶¶ 5, 8. The Family 6 June 2021 summary judgment disposed of infringement on all patents in that family and will not be tried. *Id.* ¶ 11. <u>The one-year time window to seek relief from these judgments has long past</u>. *See* RULE 60(C). These are final decisions for the purposes of collateral estoppel. While other issues remain (*e.g.*, damages), the pendency of an issue does not undermine the finality of another part of the matter. *See Arizona v. California*, 460 U.S. 605, 617 n.7 (1983) (citing Rest. 2d of Judg. ("Rest.") § 13, Comment *e* ("A judgment may be final in a res judicata sense as to a part of an action although the litigation continues as to the rest")).

CommScope argues that, in the Fifth Circuit, a judgment must be appealable for issue preclusion to take effect. *See* Resp., pp. 11-13. CommScope is incorrect; there is no such bright-line rule. TQD cited, among others, *Cycles, Ltd. v. Navistar Fin. Corp.*, 37 F.3d 1088, 1090 (5th Cir. 1994), which held "Judgments are final for purposes of issue preclusion when fully litigated, even

if not yet appealable." Motion, pp. 13-14.  CommScope points to no authority overruling *Cycles*, and the *Hacienda* case it cites is non-precedential, unlike *Cycles*. *See Hacienda Records, L.P. v. Ramos*, 718 Fed. Appx. 223, 230 (5th Cir. 2018).  Worse, *Hacienda* did not reach the merits: "we need not decide whether the ... dismissal for lack of standing was sufficiently final for collateral-estoppel purposes." *Id.* at 231.  As such, *Hacienda*'s discussion of the issue is, at best, dicta.

*Hacienda* simply recognizes there are cases in both directions—some apply collateral estoppel prior to an appealable judgment and some do not (typically for truly interlocutory orders that could be revisited).  This is what the Supreme Court has stated: finality is contextual.  *Clay v. United States*, 537 U.S. 522, 527 (2003) (holding finality is contextual and favorably citing Rest. § 13, stating a flexible inquiry for issue preclusion).  Further, *Hacienda* cites *Recoveredge*, which is clear Fifth Circuit authority that even "a final judgment is not a prerequisite for issue preclusion when a jury has rendered a conclusive verdict." *Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1295 (5th Cir. 1995).  As *Cycles* noted, its holding is in accordance with Wright and Miller, Moore's, and the Restatement. *Cycles*, 37 F.3d at 1090. *Cycles* was also sufficiently final where (after a bench trial) the court had yet to rule on post-judgment motions. *Cycles*, 37 F.3d at 1098.

The cases CommScope cites do not change this analysis or address the situation here, where a court has entered final judgments and orders over a year ago.[1] *J.R. Clearwater v. Ashland Chem. Co.*, 93 F.3d 176, 177-78 (5th Cir. 1996) addresses the preclusive effect of a denial of class certification, an interlocutory order in which a district court has wide discretion. *See id.* The *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320 (Fed. Cir. 2003) case is somewhat related, though it was decided under 11th Cir. law. *Dana* addresses whether a plaintiff could apply non-mutual offensive collateral estoppel from a partial-SJ against defendants. *See id.* at 1321-23.  The court "h[e]ld that

---

[1] TQD does not have the pages to address every case CS cites and attempts to do its best.

3

the legal prerequisites for applying collateral estoppel were satisfied in this case," but remanded on "whether [the plaintiff] could easily have joined the earlier action." *See id.* at 1325-26. The *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319 (Fed. Cir. 2008) case "consider[ed] the application of claim preclusion"—not *issue* preclusion, which are different standards. *Id.* at 1326. The *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1171 (5th Cir. 1981) case addressed non-mutual offensive collateral estoppel. *Id.* Again, non-mutual estoppel is not at issue here.

CommScope claims that the fact that other issues remain prevents Delaware's judgments from having preclusive effect. This is incorrect. First, it ignores (and is contrary to) *Arizona v. California* (above) that "[a] judgment may be final … as to a part of an action although the litigation continues as to the rest" and Rest. § 13 illus. 3, <u>which addresses the exact "split" trial scenario</u>. Second, the portion of the Restatement—§ 13<u>(b)</u>—CS's cases cite address finality for *claim* preclusion, not *issue* preclusion, which is addressed in § 13<u>(g)</u>. Third, *Recoveredge* (above) holds that a "final judgment" is not required for issue preclusion and relies on the Rest. § 13, comment g (on issue preclusion), and illus. 3 (on split trials) for its holding. *Recoveredge*, 44 F.3d at 1295. Fourth, it is even contrary, under CS's misplaced theory that appealability is required for issue preclusion, to *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1317-20 (Fed. Cir. 2013), which holds that, in a bifurcated patent case, liability is final for appellate purposes even if damages remain to be tried. CS could have pursued an appeal of these judgments if it wanted to. This underscores their finality—that they are "sufficiently firm to be accorded conclusive effect."

### B.     TQ Delta Has Not Waived Collateral Estoppel

CommScope's claim that it was prejudiced by TQD's SJ motion on collateral estoppel is unfounded. First, CommScope points to no specific prejudice suffered or specific choices it would make differently. Second, CS tries to suggest something improper on TQD's part, labeling the issue as "strategic delay," but nothing of the kind occurred. It was necessary to proceed through

4

expert discovery and depositions to develop the record such that the application of collateral estoppel to this case could be fully understood. Otherwise, the argument would have been that there was an insufficient record (e.g., expert testimony) to address the issue, which is an argument CS tries, but fails, to raise in its Response. Expert discovery closed a week before this motion was filed. (*See* Dkt. No. 299 (3d Am. DCO)). TQD raised this issue at the first point it was practically ripe.

Stepping back, the parties have also both raised the overlap with the Delaware Case, including each raising estoppel, throughout this case. *See, e.g.*, (Dkt. Nos. 101 (TQD responding in March 2022 on motion for order focusing patent claims and discussing estoppel)); 135 (CommScope responding to claim construction brief and discussing estoppel)); 152 (CommScope arguing for a stay based on Delaware overlap); 168 (TQD responding on motion for stay); 176 (same, discussing preclusion in June 2022)). Defendants also asserted collateral estoppel in their answer. There is no credible surprise that collateral estoppel is an issue in the case.

Defendant's cases do not express a requirement that the plaintiff plead collateral estoppel, but instead reflect an evolving holding that collateral estoppel can be raised in good faith (at essentially any point), even for the first time on appeal. *See Ngomi Kariuki v. Tarango*, 709 F.3d 495, 508 (5th Cir. 2013) (applying good faith exception to allow amendment); *Caldera v. Northrop Worldwide Aircraft Servs.*, 192 F.3d 962, 970-72 (Fed. Cir. 1999) (reversing, for failure to grant preclusive effect, despite claim plaintiff waived its collateral estoppel argument by failing to plead and reciting caselaw that "courts have even held that raising collateral estoppel for the first time on appeal is not fatal"); *Russell v. Sunamerica Secur.*, 962 F.2d 1169, 1173 (5th Cir. 1992) (noting res judicata was not pled but the Circuit "may raise the issue … *sua sponte*"); *United States use of Am. Bank v. C.I.T. Constr., Inc.*, 944 F.2d 253, 257-58 (5th Cir. 1991) (affirming refusal to find

*judicial* estoppel (but res judicata was not discussed)); *Henry v. First Nat'l Bank*, 595 F.2d 291, 298 n.1. (5th Cir. 1979) (refusing to allow res judicata on appeal after a "fail[ure] to present these issues … below").  Estoppel may not be able to be raised after trial, but that is not the case here. *See Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 171-72 (5th Cir. 1985) (holding doctrine of late amendment to plead estoppel did not apply after trial occurred); *Harvey v. United Transp. Union*, 878 F.2d 1235, 1243 (10th Cir. 1989) (refusing to allow collateral estoppel raised over a year after trial).  CommScope also mischaracterizes *Peterson v. Highland Music*, 140 F.3d 1313, 1322 (9th Cir. 1998), which applies to the limited context of a declaratory judgment action.

However, assuming pleading is required, the Fifth Circuit has repeatedly held "[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise," a "technical failure to comply precisely with Rule 8(c) is not fatal."  *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 309 (5th Cir. 2019) (citation omitted); *see also Am. Cas. Co. v. United S. Bank*, 950 F.2d 250, 253 (5th Cir. 1992) (applying rule to pleading collateral estoppel).  The Circuit endorses that raising the issue at SJ may be a "pragmatically sufficient time." *Id.*; *see also Yazdchi v. Wells Fargo Bank, N.A.*, Case No. H-15-568, 2018 U.S. Dist. LEXIS 234008, at *4-5 (S.D. Tex. Oct. 23, 2018) (finding estoppel raised at Rule 50 stage was "sufficiently pragmatic").  To the extent a pleading is required, TQD asks the Court's leave under RULE 15(a)(2), which states such leave "should be freely given."  In any event, TQD moved shortly after the issue was pragmatically ripe, CommScope has articulated no specific prejudice, and, otherwise, the parties will retry the same issues already adjudicated in Delaware.

Both parties assert this case is not the same "claim" in the res judicata sense.  Earlier the parties briefed § 1404 and discussed the overlap between the two proceedings.  CommScope points to statements TQD made, distinguishing that the cases involve different parties, patents, product

6

lines, etc. Resp. at 9. TQD stands by those statements, which address the entire case. And none of those statements suggest that issue preclusion does not apply. TQD also notes that it is almost a year after that briefing, and TQD now has the benefit of discovery, including expert discovery and source code, allowing it to understand the evidence in a way it could not have a year ago.

### C. The Issues Are Identical for Collateral Estoppel Purposes

TQD provided nine pages of detailed explanation on how and why identical issues of infringement and validity were litigated in Delaware, including discussing and comparing the claims at issue, showing relevant expert testimony, and addressing the products and prior art at issue. *See* Mot., pp. 14-23. CommScope only offers two pages in Response, cites to no expert testimony, discusses only one claim in passing (without addressing TQD's discussion of that claim), and does not address any specifics of the products at issue. *See* Resp. pp., 13-15.

CommScope boldly claims "TQD provide[s] no expert testimony comparing the accused products," but that is untrue. *See, e.g.* Resp., p. 14. TQD provided extensive expert testimony showing material similarity in products at issue. *See, e.g.*, Mot., SUMF ¶¶ 21-28 (citing Cooklev report). For example, Dr. Cooklev found "there are no material differences in the products that contain the BCM63168 (e.g., the 5168, 5268, NVG589, NVG599) and the products that contain the BCM63148 (e.g., the BGW210 and NVG44x). (*Id.* at ¶ 643). He explains there is no material difference between the BCM63168 chip in this case—that was tried in Delaware (and discussed in the F6 summary judgment ruling)—and the additional BCM63148 chip in this case:

> I am not aware of any material difference between the BCM63168 and BCM63148 in terms of how the chipsets are utilized in connection with implementing DSL functionality, including the functionality I conclude infringes the asserted claims. In most (in fact nearly all) places in the source code as part of my analysis, the source code is virtually identical between two chipsets. Nor am I aware of any differences between those chipsets and the chipsets used on products that do not predominate, based on CommScope's data.

(Dkt. No. 350-19, ¶ 641). This is just a portion of the expert testimony cited. *See* Mot., SUMF ¶¶ 21-30. CS does not contest these core facts, and CS would have come forward with evidence if it had any. The evidence that the products and claims are essentially the same is undisputed.

Stepping back, the issues of validity and infringement of these patents were adjudicated in Delaware between the parties. As TQD explained, issue preclusion broadly precludes separate theories that could have been raised but were not; it is "the entire issue … not just the particular arguments raised in support of it in the first case" that is precluded. Mot., p. 10. CommScope does not contest this authority or its application to validity or infringement.

CommScope's attempts to distract by noting two TQD cases applied collateral estoppel to non-infringement. First, the cases—*Roche* and *Phil-Insul*—were cited for their thorough discussion of the "essentially the same" standard for proving infringement (or non-infringement) by collateral estoppel. Second, the cases do not state that the "essentially the same" analysis only applies to non-infringement, and CS does not claim that it does (or that there is a line of authority that does). Third, even the *Dana*, 342 F.3d at 1322, case cited by CS found no issue that "the defendants were collaterally estopped from denying infringement or challenging the validity" of an asserted patent. *See also KSM Fastening Sys. v. H.A. Jones Co.*, 776 F.2d 1522, 1532 (Fed. Cir. 1985) (explaining courts "utilize principles of claim and issue preclusion (res judicata) to determine what issues were settled by the original suit and what issues would have to be tried").

CommScope discusses one claim of one patent (in only one sentence) and does not discuss the other three claims at issue. As TQD told the Court, dependent claim 23 of the '881 patent was not asserted in Delaware, but the broader independent claim was tried (and is at issue in this Motion). Mot., p. 16. TQD explained claim 23 is essentially the same for the purposes of infringement or validity, and that the experts argue both claims without distinction, including

asserting identical prior art against both claims (that was also asserted in Delaware). *See* Mot., pp. 16-17.  CS does not contest any of these points, including the essential similarity of the claims.

### D. Preclusion Is Fair and Prudent

CommScope's is wrong that equitable factors render preclusion unfair. *See* Resp., pp. 15-17. For issue preclusion, the Fifth Circuit has held that "preclusion applies without regard for equitable factors" when "the same parties would be forced to relitigate 'what is essentially the same controversy.'" *ETC Sunoco Holdings, L.L.C. v. United States*, 36 F.4th 646, 649 (5th Cir. 2022) (citing Rest. § 28).  Regardless, CS is using the same counsel here that it used Delaware, to argue the same legal theories and proofs advanced in Delaware, including the same prior-art references and the same non-infringement theories (often verbatim from the Delaware reports).

Factually, CommScope suggests that, because it acquired ARRIS in April 3, 2019 there is an equitable issue. This ignores reality.  First, CS acquired ARRIS well before both trials at issue (in late May 2019 and January 2020) and SJ (June 2021) occurred in Delaware.  CS makes no claim that it lacked control over the Delaware litigation when the trials occurred and judgments were rendered or that it was not in privity with 2Wire, despite TQD's assertion of these facts.  Second, CS is silent that co-defendant ARRIS gained control of the litigation <u>two years earlier</u> in 2017.  In other words, even if CS lacked the opportunity to control the case, defendant ARRIS, which creates the accused CS products, was in control for years.  Both ARRIS and CS are "bound … as if [they] would have been if [they] had been a party of record."  *See Montana v. United States*, 440 U.S. 147, 153-54 (1979) (discussing nonparties and collateral estoppel).

The historic Fifth Circuit and Supreme Court cases from 1979, 1980, and 1987 CommScope cites have no clear relevance, especially in light of more recent cases cited by TQD. The 1979 *Parklane Hosiery* case affirmed a ruling applying non-mutual collateral estoppel that a proxy statement was materially false and misleading based on an earlier action. *Parklane Hosiery*

9

*Co. v. Shore*, 439 U.S. 322, 324-25 (1979). The Court hypothesized in other cases there might be a risk, in allowing non-mutual collateral estoppel, that the party that lost might not have fully litigated the issue. *See id.* at 330-31. That is not the case here, as all of the judgments at issue were fully litigated. Why *Allen v. McCurry*, 449 U.S. 90 (1980) is cited is unclear: *Allen* reversed a determination that collateral estoppel did not apply in § 1983 proceedings. *See id.* at 105.

## IV.  CONCLUSION

The Court should grant TQD's Motion and apply collateral estoppel to the issues of validity and infringement. Otherwise, the parties will relitigate the same issues. Specifically, for validity, the Court should enter judgement for U.S. Patent Nos. 7,453,881 claims 17 and 23 (Family 2); and 8,276,048 claim 5 and 7,844,882 claim 13 (Family 3) based on the Delaware trial judgments. For Family 2 claim 23, the Court should also find there is no essential difference between the broader independent claim 17 that was, in Delaware, found not to infringe the same asserted art. Mot., pp. 15-16. For claim 5 of the '048 patent, the Court should also enter a finding there is no essential difference between it and claim 13 of the '882 patent, which was tried in Delaware; CS's Response does not contest this similarity. *Id.*, pp. 19-20. For infringement, the Court should enter judgment on the Family 2 and 3 patents and also U.S. Patent No. 8,462,835 claim 10 (Family 6). As discussed and as uncontested by CS, the 5031, 5168, and 5268 products (with BCM 6368 and BCM 63168 chipsets) were found to infringe in Delaware. Mot., SUMF 5, 6, 11. The Court should find that the other products at issue in this case, all of which undisputedly contain the same or a substantively identical chipsets, are essentially the same for the purposes of infringement, as TQD's expert has shown and no expert contests.

Dated: January 17, 2023

                                      Respectfully Submitted,

/s/  Rudolph Fink IV

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(Pro hac vice)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(Pro hac vice)
rchiplunkar@mcandrews-ip.com

Ashley Ratycz
(*Pro hac vice*)
aratycz@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000

                                        Facsimile: (312) 775-8100

                                        **ATTORNEYS FOR PLAINTIFF**
                                        **TQ DELTA, LLC**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this January 17, 2023 on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

                                          /s/Rudolph Fink IV
                                          Rudolph Fink IV