# **EXHIBIT B**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| FRACTUS, S.A., <br><br> Plaintiff, <br><br> v. | JURY TRIAL DEMANDED |
| AT&T MOBILITY LLC, <br><br> Defendant, | Case No. 2:18-cv-00135-JRG <br><br> LEAD CASE |
| T-MOBILE US, INC., ET AL., <br><br> Defendants, | Case No. 2:18-cv-00137-JRG |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, <br><br> Defendant, | Case No. 2:18-cv-00138-JRG |
| COMMSCOPE TECHNOLOGIES LLC and CELLMAX TECHNOLOGIES AB, <br><br> Intervenor-Defendants. | |

**FRACTUS S.A.'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PRIOR ART STATUS**

# TABLE OF EXHIBITS[1]

| Exhibit | Description |
|---|---|
| 1 | Excerpts from the Deposition of Mats Nilson, dated March 28, 2019 ("Nilson Dep. Tr.") [excerpted with relevant portions highlighted] |
| 2 | Email Correspondence between M. Rosen. E. DeRieux, and P. Ayers, dated April 2-5, 2019 |
| 3 | Email Correspondence between E. DeRieux, G. Ruiz, and P. Ayers, dated April 5-9, 2019 |

---

[1] All exhibits identified herein are attached to the Declaration of Michael Rosen.

i

## I. INTRODUCTION

Plaintiff Fractus, S.A. ("Fractus") opposes Defendants' prior art status summary judgment motion because Defendants have not established the predicate facts and foundation necessary to support their contentions. With respect to the NRS Article, Defendants rely primarily on two witnesses: Mats Nilson and Peter Karlsson. But Mr. Nilson lacked personal knowledge of the matters about which he testified at deposition, revealed that the NRS Article was not publicly accessible online at least before November 1998, and served as a mere conduit for Defendant Cellmax. Moreover, Defendants rely upon a declaration by Dr. Karlsson that is not admissible. In addition, Dr. Karlsson was not presented for deposition with reasonable notice, and his declaration has not withstood the rigors of cross-examination. Fractus deserves the opportunity to challenge these matters of proof at trial. With respect to the Kathrein antennas, Defendants have not established that Kathrein's transfer of antennas to its affiliate Scala constituted a "sale" within the meaning of 35 U.S.C. § 102(b). Kathrein and Scala are commonly owned, and in an earlier case concerning a very similar issue, Kathrein contended that it and Scala were not separate entities for the purposes of the on-sale bar.

## II. FRACTUS'S RESPONSE TO DEFENDANTS' STATEMENT OF ISSUES

Fractus agrees with Defendants' recitation of the issue to be decided by the Court.

## III. FRACTUS'S RESPONSES TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Fractus does not dispute the purported undisputed material facts Defendants have set forth in Paragraphs Nos. 1, 2, 3, 7, 8, 9, 21, 22, and 25-32. Fractus disputes that Defendants have established an admissible evidentiary basis for the purported undisputed material facts set forth in Paragraphs Nos. 4, 5, 6, and 10-20 because Mats Nilson, the Rule 30(b)(6) representative of the Nordic Radio Society lacked personal knowledge of the matters on which he testified, *see* Ex. 1

(Nilson Dep. Tr.) at 11:25; 28:15-23; 29:6-10; 41:16-21; 57:19-21; and 57:22-58:13; and because the evidentiary record establishes that the NRS 98 Article was neither accessible nor accessed on the Internet before at least November 1998, *see id.* at 51:14-20, 61:8-13, 62:17-21, 62:21-22, and 63:7-20; and because Peter Karlsson's declaration is inadmissible and he was not presented for deposition with reasonable notice. *See* Ex. 2 at 1, 7. Fractus disputes the purported undisputed material facts set forth in Paragraphs Nos. 23 and 24 because the common ownership of Kathrein and Scala establishes that the transfer of antennas between them does not constitute a "sale" under 35 U.S.C. § 102(b).

## IV. ARGUMENT

### A. Legal Standard

"To prevail on summary judgment, the moving party must identify the basis for granting summary judgment and identify the evidence demonstrating the absence of a genuine issue of material fact." *Simpleair, Inc. v. Google Inc.*, 2015 WL 11110649 (E.D. Tex., Oct 6, 2015). The admissibility of evidence on a motion for summary judgment is subject to the same rules governing admissibility at trial. *Munoz v. Int'l All. of Theatrical Stage Emp. & Moving Picture Mach. Operators of U.S. and Canada*, 563 F.2d 205, 207 n.1 (5th Cir. 1977).

### B. Defendants Have Not Established that the NRS Article Constitutes 102(b) Printed Publication Prior Art.

Defendants contend that the NRS Article constitutes printed publication prior art under 35 U.S.C. § 102(b), but they have not established through admissible evidence that the paper was publicly accessible prior to October 26, 1998, the critical date. The witnesses Defendants rely upon to establish the article's prior art status, namely, Mats Nilson and Peter Karlsson, lacked personal knowledge of the relevant matters, revealed the paper was *not* publicly accessible from the NRS website at least prior to November 1998, collaborated with Defendants' witnesses and

2

counsel in assembling evidence, and/or were not presented for deposition with reasonable notice. At a minimum, Fractus deserves the opportunity to challenge these failures of proof at trial.

Under 35 U.S.C. § 102(b), a patent is invalid if the claimed invention is shown by clear and convincing evidence to have been "described in a printed publication in this or a foreign country." Public accessibility is the touchstone in determining whether a reference constitutes a "printed publication." *In re Hall*, 781 F.2d 897, 898–99 (Fed. Cir. 1986). A reference is "publicly accessible" if it was "made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation." *Bruckelmyer v. Ground Heaters, Inc*., 445 F.3d 1374, 1378 (Fed. Cir. 2006) (citations omitted). "The decision whether a particular reference is a printed publication must be approached on a case-by-case basis." *In re Cronyn*, 890 F.2d 1158, 1161 (Fed. Cir. 1989).

Here, Defendants have not presented sufficient evidence to substantiate their claims that the NRS Article constitutes a printed publication as of October 26, 1998. The first witness upon whom Defendants rely heavily, Mats Nilson, the Chairman of the Nordic Radio Society, was presented as a 30(b)(6) witness but lacked personal knowledge of the matters about which he testified in virtually all relevant areas. First and foremost, Mr. Nilson testified that he did not attend the NRS conference. Ex. 1 (Nilson Dep. Tr.) at 11:25; 57:19-21. He did not serve on the program committee for the NRS 98 conference, and therefore was not involved with selecting or printing any papers or proceedings. *Id.* at 28:15-23. He did not participate in the preparations for the NRS 98 conference in any way. *Id.* at 57:22-58:13. He did not have personal knowledge of who or how many people attended the conference and instead consulted what he believed to be the list of participants. *Id*. at 29:6-10. And his "conclusion" from reviewing documents is that the list

of attendees was published shortly before the conference. *Id.* at 41:16-21. In short, Mr. Nilson made clear he had no personal knowledge about the 1998 conference and what papers were presented there and was therefore simply drawing his own inferences from the relevant documentation. The jury should be permitted to assess whether Mr. Nilson's conclusions were in fact correct.

With respect to the supposed availability of the paper through the NRS website, Mr. Nilson testified that NRS would not have had its own independent website in the 1998 time frame and that, instead, the relevant web page would have been "a sub-page" on the server of the Swedish Royal Science Council. *Id.* at 51:14-20. He further testified that the conference proceedings themselves were never uploaded to the web. *Id.* at 61:8-13. He acknowledged that he could not say whether there were any sort of web form for ordering the proceedings from NRS. *Id*. at 62:17-21. Instead, he testified that he believed the only way anyone who did not attend the conference could access the NRS Article was "by contacting Ake Blomquist," then the chairman of the NRS. *Id.* at 62:21-22. The only evidence Mr. Nilson presented of anyone actually ordering the NRS Article were two payment transfers from November 1998 and one transfer from January 1999. *Id.* at 63:7-20. In short, Mr. Nilson's testimony confirmed that there is no evidence the paper was either accessed or accessible from the NRS website at least before November 1998.

Finally, Mr. Nilson testified that his "research" into the historical NRS web pages that may have hosted the relevant information originated with counsel for Cellmax, *See id.* at 65:19-66:10, and that he "had quite a long extensive discussion" with counsel for Cellmax and Cellmax engineer Jens Malmgren in advance of the deposition. *Id.* at 66:13-67:17. He further testified that he "enabled the access to the information the copying and so on was actually handled by Jens Malmgren who came to our office," granted Mr. Malmgren access to NRS's "locked-in facility,"

4

and collaborated with Mr. Malmgren "to find the correct documentation actually to assist which, for instance, presentation was the relevant one and so on." *Id.* at 69:3-70:8. In short, Mr. Nilson's testimony confirmed that, far from serving as a witness with historical, personal knowledge about NRS's activities, he served instead as a mere conduit for the invalidity theories of Cellmax and its counsel. Fractus should have the opportunity to challenge Mr. Nilson's credibility and bias at trial.

Defendants have also presented a declaration by Peter Karlsson, who purportedly attended the conference in question. But that declaration itself is inadmissible as hearsay. Instead, on April 2, following Mr. Nilson's deposition, and apparently recognizing the gaps in their proof due to Mr. Nilson's lack of personal knowledge and the inadmissibility of Dr. Karlsson's declaration, Defendants noticed a deposition for Dr. Karlsson in Sweden for April 9, one week later, during the final weeks of fact discovery when dozens of other depositions had already long been scheduled. Ex. 2 at 1. Fractus promptly objected to the deposition notice, and Defendants withdrew it. *Id.* at 1, 7. Fractus offered to depose Dr. Karlsson at a later time, but Defendants insisted that they would bring him to the U.S. to testify at trial only. Ex. 3 at 3. Without a deposition of Dr. Karlsson, Fractus will be deprived of the opportunity to challenge the factual assertions he makes in his declaration.

Thus, without adequate evidentiary support, Defendants cannot sustain their burden of proving by clear and convincing evidence that the NRS Article constitutes printed publication prior art as of October 26, 1998. They cannot establish when or whether the article was distributed to attendees of the conference, how many or which attendees (if any) received it, when they received it, if they did, whether or when the article was accessible on the NRS web page, and whether or how it could have been obtained therefrom. This failure of proof at a minimum presents a genuine

5

issue of material fact that Fractus should be entitled to challenge at trial.[2] The facts here resemble those of *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, where the Federal Circuit vacated the district court's entry of summary judgment of invalidity on the basis of an alleged printed publication. 511 F.3rd 1186 (Fed. Cir. 2008). There, the author of the would-be invalidating prior art paper posted it to an FTP site and directed at least seven people of ordinary skill in the art to download it there. *Id.* at 1191. But the Federal Circuit held the posting did not constitute at printed publication because "the FTP server did not contain an index or catalogue or other tools for customary and meaningful research." *Id.* at 1196-97. In addition, the court held that "[w]hile actual retrieval of a publication is not a requirement for public accessibility, this record does not evince that the Live Traffic paper was accessible to anyone other than the peer-review committee, thus further suggesting an absence of actual public accessibility." *Id.* at 1197. Here, too, the NRS Article was not itself available for download on the relevant NRS web page, Ex. 1 (Nilson Dep. Tr.) at 61:8-13, and the only evidence Defendants have produced indicate that three people succeeded in ordering the paper in November 1998 and January 1999, after the critical date.

### C. Defendants Have Not Established that the Kathrein 739-495 Antennas Were on Sale Within the Meaning of § 102(b)

Defendants have not established by clear and convincing evidence that the Kathrein 739-495 antennas were "on sale" within the meaning of § 102(b) before the critical date. Defendants concede that the only "sales" of the Kathrein 739-495 antennas during the relevant timeframe were between Kathrein and Scala, its former affiliate. But as Defendants point out, Kathrein itself did

---

[2] Moreover, unlike in *In re Klopfenstein*, where the slide presentation in question was pasted onto poster boards and displayed continuously at a conference for two and a half days at a conference, and which the Federal Circuit held was "shown for an extended period of time to members of the public having ordinary skill in the art," 380 F.3d 1345, 1350-52, 1374 (Fed. Cir. 2004), even assuming Defendants' contentions are correct, the NRS Article was not displayed in any meaningful way and was presented verbally. This does not constitute a printed publication.

not consider Scala to be an independent company such that transfers of antennas between the two would constitute an invalidating "sale." Specifically Kathrein itself argued that its purchase orders from and invoices to Scala reflected "deliveries but not sales of antennas to Scala." *Kathrein-Werke KG v. Radiacion Y Microondas S.A.*, No. 07 C 2921, 2011 U.S. LEXIS 113778, at *15-16 (N.D. Ill. Sept. 26, 2011). Kathrein also contended that internal "sales" to Scala did not trigger the on-sale bar because Kathrein and Scala shared a common owner. *Id.* "A section 102(b) sale or offer must involve separate entities." *Ferag AG v. Quipp Inc.*, 45 F.3d 1562, 1567 (Fed. Cir. 1995) (finding on-sale bar applied when the two parties in question were *not* controlled by the same group). Both here and in the previous Kathrein case, it was undisputed that Kathrein and Scala *were* controlled by the same owner, Anton Kathrein, and the parties were therefore *not* separate entities. While the district court ultimately disagreed with Kathrein's contentions and held the sales in question qualified under § 102(b), that ruling is not binding on this court, and Kathrein's own understanding of its relationship with Scala should govern here. Moreover, because the interests of Kathrein and the Defendants in this case align so closely, Defendants should be estopped from disavowing Kathrein's own position, expressed in federal court filings, that it and Scala were not separate entities. At a minimum, a genuine question of material fact exists as to whether Kathrein and Scala are separate entities with an arm's-length relationship, and for this reason, the Court should deny Defendants' motion.

## V. CONCLUSION

Accordingly, Fractus respectfully requests that the Court deny Defendants' motion.

Dated: June 25, 2019  Respectfully submitted,

7

*/s/ Michael Ng*
Michael Ng
California State Bar No. 237915 (Lead Attorney)
Daniel A. Zaheer
California State Bar No. 237118
Michael M. Rosen
California State Bar No. 230964
michael.ng@kobrekim.com
daniel.zaheer@kobrekim.com
michael.rosen@kobrekim.com
**KOBRE & KIM LLP**
150 California Street, 19th Floor
San Francisco, CA 94111
Telephone: 415-582-4800
Facsimile: 415-582-4811

Hugham Chan
Washington DC Bar No. 1011058
Kimberly Perrotta Cole
Washington DC Bar No. 495574
hugham.chan@kobrekim.com
kimberly.cole@kobrekim.com
**KOBRE & KIM LLP**
1919 M Street, NW
Washington, DC 20036
Telephone: 202-664-1956
Facsimile: 202-510-2993

George Stamatopoulos
New York State Bar No. 5163340
Benjamin J.A. Sauter
New York State Bar No. 4691515
Steven W. Perlstein
New York State Bar No. 2982478
george.stamatopoulos@kobrekim.com
benjamin.sauter@kobrekim.com
steven.perlstein@kobrekim.com
**KOBRE & KIM LLP**
800 Third Avenue
New York, NY 10022
Telephone: 646-658-4972
Facsimile: 212-488-1220

Adriana Riviere-Badell
Florida State Bar No. 30572

Gabriela Ruiz
Florida State Bar No. 46844
Joshua Kushner
Florida State Bar No. 93597
adriana.riviere-badell@kobrekim.com
gabriela.ruiz@kobrekim.com
Joshua.kushner@kobrekim.com
**KOBRE & KIM LLP**
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: 305-967-6100
Facsimile: 305-967-6120

*/s/ S. Calvin Capshaw*
S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth L. DeRieux
Texas State Bar No. 05770585
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com
**CAPSHAW DERIEUX LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770

*/s/ Claire Abernathy Henry*
T. John Ward Jr.
Texas State Bar No. 00794818
Claire Abernathy Henry
Texas State Bar No. 24053063
Andrea L. Fair
Texas State Bar No. 24078488
jw@jwfirm.com
claire@wsfirm.com
andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
PO Box 1231
Longview, TX 75606
Telephone: 903-757-6400
Facsimile: 903-757-2323

*Attorneys for Plaintiff*
*Fractus, S.A.*

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record for CommScope, as well as Intervenor-Defendant CellMax Technologies AB ("CellMax") and Defendants Verizon Wireless ("Verizon") and TMobile, who have consented to electronic service in the above-referenced case, are being served with a copy of the above document via email on this 25th day of June, 2019. Unredacted copies of the foregoing document will be served upon counsel of record for T-Mobile, counsel of record for Verizon, counsel of record for CellMax, and upon counsel of record for CommScope.

*/s/ Michael Ng*
Michael Ng

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that this document is being filed under seal pursuant to the Court's authorization in Section V.B.4 of the Protective Order entered in this matter.

*/s/ Michael Ng*
Michael Ng