**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TQ Delta, LLC,<br>    *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>    *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED |

**TQ DELTA, LLC'S SUR-REPLY TO COMMSCOPE'S MOTION TO
EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF JONATHAN
PUTNAM AND TODOR COOKLEV UNDER FED R. EVID. 702 AND *DAUBERT***

## I.  INTRODUCTION AND OVERVIEW

TQD Delta, LLC ("TQD") hereby provides its sur-reply to CommScope Holding Company, *et. al.* ("CommScope" or "CS")'s Reply (Dkt. No. 372) to TQD's Response (Dkt. No. 344) to CS's Motion to Exclude Portions of the Expert Testimony of Jonathan Putnam and Todor Cooklev Under Fed. R. Evid. 702 and *Daubert* (Dkt. No. 344). As TQD's Response explained, "this is a straightforward issue about one paragraph" that is, at most, a point for cross examination. TQD provided cases showing no *Daubert* or 702 issue, but CS does not address any of that authority. TQD also explained the uncontested statistical process of Dr. Putnam and the fulsome disclosure, testability, and reliability of the analysis. The Motion should be denied. Respectfully, that CS filed two separate motions to strike Dr. Putnam's report is improper.

CommScope fails to address or rebut major points of TQD's Response.

1. As TQD's Response showed, none of CS's experts challenge the methodology of Dr. Putnam or the keywords Dr. Cooklev provided at his request to aid his statistical sampling. Resp., pp.1-3, 10-12. CS's position is only attorney argument. No expert, including CS's own, makes the arguments found in its briefing; the experts see no problem.

2. TQD provided several clear cases that an expert requesting keywords from another expert / generating keywords—the issue underlying CommScope's Motion—does not present a *Daubert* issue. *Id.* pp. 8-9. CS's Reply does not address any of these cases.  This is unrebutted authority that Dr. Cooklev's providing keywords at the request of Dr. Putnam creates no *Daubert* issue. CS has not provided any case that any *Daubert* issue exists.

3. CommScope now admits "the focus of [CS]'s motion" is striking Dr. Putnam's damages model (Reply, p. 3), but neither its Motion nor Reply challenges the reliability of the statistical-sampling process used by Dr. Putnam, and no expert does either. Again, the

        keywords were only a part of a statistical analysis, which he cited authority for, of about 15,000 patents in which Dr. Putnam sampled 1,100 patents and Dr. Cooklev reviewed them one-by-one. Resp., p. 7. The keywords <u>helped</u> identify patents that were more likely relevant, but the <u>entire set of patents was sampled</u>. *Id.* The keywords themselves are taken from the classifications in the Derwent Worlds Patent Index ("DWPI"), an established classification system CS does not challenge. *Id.* pp. 1, 9-10. As TQD explained, the term "knockout" is misleading since Dr. Putnam sampled from every bucket at statically-reliable rates, including buckets with "knockout" terms. *Id.* (quoting Report). This statistical methodology and Dr. Cooklev's patent-by-patent review are what actually underlies Dr. Putnam's report. That CS does not challenge Dr. Putnam's statistical methodology (and no expert does either) or Dr. Cooklev's patent review should dispose of the *Daubert* issue.

4.     As TQD's Response explained, CommScope is seeking to broadly strike both Dr. Putnam's report (21 pages), including his reliance on Dr. Cooklev's unchallenged patent review, and paragraphs from Dr. Cooklev's report that are facts. Resp, pp. 3, 10-11. Tellingly, CS's Reply does not address these points, including the scope of the paragraphs it seeks to strike.

5.     Drs. Putnam and Cooklev provided the details of their sampling work in over 140 pages of their reports, including figures illustrating the work and citations to the treatises relied upon, allowing it to be recreated and tested in full. CS does not contest this replicability.

6.     TQD addressed the issue of what legal standard CommScope was moving under—*Daubert* or Rule 37—and showed it should prevail under either. CS also does not address the issue.

        CommScope repeats *ad nauseam* its conclusory assertions that there is an issue without showing there is one. TQD has provided legal and expert authority supporting its position, including cases specifically addressing both an expert identifying keywords and an expert relying

on keywords from another expert. CommScope has provided no authority supporting its position, either legal or expert. TQD also explained that CS did not address any specific paragraph of Dr. Putnam's report, despite broadly moving to strike it, and explained why that model, which relies on uncontested statistical methods, is sufficiently reliable. CS's Reply still does not explain why Dr. Putnam's statistical-sampling methodology or his reliance on Dr. Cooklev's review of 1,100 patents is improper, despite moving to strike 21 pages of his report.

## II.     ARGUMENT

### A.     CommScope Does Not Contest TQD's Clear Legal Authority

TQD has uncontested legal authority in support of its position. TQD provided authority that keywords and reliance on keywords from a technical expert was proper (e.g., *Innovations Scis.*; *In re Taxotre*; *Parkhurst*; *Kleen Prods*), but CS's Reply is silent on every case. To these cases, TQD also adds *Huawei Techs., Co v. Samsung Elecs. Co*, 340 F. Supp. 3d 934, 994-95 (N.D. Cal. 2018), which addresses an expert's filtering patents—in that case using a team in India. CS also does not address TQD's discussion of FED. R. EVID. 703, which allows an expert to rely on information in forming an opinion even if that information is not otherwise admissible.

The only cases CommScope discusses are the two it cited: *Hathaway* and *Genband*. CS asserts that TQD "cannot distinguish" these cases (Reply, p. 4), but, as TQD showed, both are distinguishable. Resp., pp. 14-15. Tellingly, CS does not address the facts of either case. Reply, pp. 4-5. In *Hathaway*, the court found that the father of the deceased teenager was not an expert and that his reconstruction of a shooting contradicted factual testimony. Resp., p. 14. Here, it is undisputed that Drs. Cooklev and Putnam are experts, and TQD explained that Dr. Cooklev has decades of experience in DSL, including working on standards and essential patents. Resp., p. 8. Unlike *Hathaway*, he is both an expert and not providing an opinion on an ultimate issue. He is simply providing data as an input to an uncontested statistical process, which, as TQD's cases

3

show, raises no *Daubert* issue. Resp., pp. 8-9. In *Genband*, it was uncontested that the at-issue portion—a short conclusory statement on the doctrine of equivalents—should be struck. Resp., pp. 14-15. In this case, the issue is contested, and it is not a conclusory statement on an ultimate issue.

### B.   CommScope Does Not Squarely Address the Facts

CommScope's Reply asserts that its experts "did challenge the methodology employed by Drs. Putnam and Cooklev." Reply, p. 4. CS, again, does not explain its position. It cites paragraphs in support, but these are the paragraphs TQD presented to the Court in its Response and explained in detail, including quoting the paragraph from CS's damages expert in full. Reply, pp. 11-12. These paragraphs do not challenge the statistical methodology of Dr. Putnam or the keywords of Dr. Cooklev. *See id.* No expert takes CS's position.

TQD's Response explained that, while it primarily seeks to strike Dr. Putnam's report, "CommScope offers no argument on any specific paragraph in Dr. Putnam's report." Resp., p. 3 (emphasis in original). Now, CS boldly claims, "TQD incorrectly argues that CommScope does not offer argument on particular paragraphs in his report." Reply., p. 3. TQD stands by the position in its Response, no argument was provided. As "proof," the Reply cites the "Conclusion," listing the paragraphs it seeks to strike, saying, "CommScope's motion identifies the paragraphs (and a figure and an exhibit)." *Id.* Yes, the Motion identifies paragraphs (and a figure and an exhibit) it seeks to strike, but that is not, at all, argument on why any specific paragraph should be struck. Now, CS admits Dr. Putnam's report "is the focus of CommScope's motion." Reply, p. 3. But CS still provides no challenge to his statistical methods or their reliability. TQD quoted his report that he sampled from every bucket. CS does not address this paragraph of his Report.

Instead, the Reply poses legally meaningless questions, such as why Dr. Cooklev included the terms "kitchen" and "karaoke" but not "bedroom" and "dancing." Nonetheless, there is a straightforward answer. Dr. Cooklev explained in his report that the terms were taken from DWPI

4

classifications. The terms "kitchen" and "karaoke" are in the DWPI classifications, but "bedroom" and "dancing" are not. But, even if there was no clear answer, it does not change the essential reliability of the keywords Dr. Cooklev selected or the statistical process used by Dr. Putnam. CS also asserts, without support, that it only found 43 terms Dr. Cooklev used in the DWPI. That is, respectfully, incorrect. As a quick check, TQD sampled 100 terms and found all in the DWPI, including "words generally associated with those broad descriptions."[1] Again, even if TQD had not found all the terms, it would not change the essential reliability. As Dr. Putnam's report explains, all buckets were sampled from (Resp., p. 7), so the effect is that patents that did not have a keyword are more likely to be sampled, not that they would never be sampled.

Stepping back, CommScope has had this analysis for about four years, and, as TQD explained, CS can recreate it in full. CS does not contest that. If the analysis had a flaw, CS or its experts would have identified it. Instead, CS has only attorney argument. As TQD explained, identifying keywords is a standard and common methodology familiar to all, including lay jurors. As documented in the reports, the process is sufficiently reliable to present to the jury. CS is free to cross examine on this issue.

**III.    CONCLUSION**

For the reasons set forth in TQD's Response and Sur-reply, CommScope's Motion should be denied. Dr. Cooklev's providing keyword data to aid in a search is well within his ability as an expert and, as TQD's uncontested cases show, is legally proper. CS's arguments, at most, go to weight, which it can contest on cross examination, not admissibility. In contrast, striking these paragraphs, which include a substantial portion of Dr. Putnam's damages report, will eviscerate TQD's damages case.

---

[1] For example, the term "LAN" is listed in the DWPI, but the "generally associated" expansion of that acronym—"local area network"—is not.

Dated: January 24, 2023

Respectfully Submitted,

/s/ Rudolph Fink IV

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(Pro hac vice)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(Pro hac vice)
rchiplunkar@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

**ATTORNEYS FOR PLAINTIFF
TQ DELTA, LLC**

6

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this January 24, 2023 on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

/s/ Rudolph Fink IV
Rudolph Fink IV
