# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC, | Civil Action No.: 2:21-cv-00310-JRG |
| *Plaintiff*, | |
| v. | |
| COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC, | |
| *Defendants*. | |

**COMMSCOPE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT TO LIMIT DAMAGES BASED ON 35 U.S.C. § 286 (Dkt. No. 340)**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## TABLE OF CONTENTS

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 1

    A. TQ Delta Cannot Rely on Pre-2015 Sales as an Act of Direct Infringement. ................... 1

    B. TQ Delta Has Failed to Identify Any Affirmative Act by CommScope Post-2015 That Induced an Act of Direct Infringement Post-2015. ................................................... 3

III. CONCLUSION .................................................................................................................... 5

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*,
  424 F.3d 1293 (Fed. Cir. 2005)..................................................................................................2

*CSB-Sys. Int'l Inc. v. SAP Am., Inc.*,
  No. CIV.A. 10-2156, 2012 WL 1521321, at *8 (E.D. Pa. Apr. 30, 2012) ............................2, 4

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006)..................................................................................................2

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)................................................................................................................2, 4

*Power Integrations v. Fairchild Semiconductor*,
  843 F.3d 1315 (Fed. Cir. 2016)..................................................................................................3

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
  30 F.4th 1109 (Fed. Cir. 2022) ...............................................................................................1, 3

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*,
  754 F.2d 345 (Fed. Cir. 1985)....................................................................................................4

*Sysmex Corp. v. Beckman Coulter, Inc.*,
  No. CV 19-1642-JFB-CJB, 2022 WL 1786526 (D. Del. May 26, 2022)..................................4

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020)..................................................................................................4

I.  **INTRODUCTION**

TQ Delta attempts to save its untimely claim for pre-2015 damages by muddying the waters with irrelevant facts and documents, and by discounting binding law that forecloses its position. TQ Delta seeks damages for DSL CPE products sold entirely *prior* to the six-year statutory damages period under a theory of inducement that the Federal Circuit has rejected. Specifically, the Federal Circuit has rejected a theory of inducement based on sales *prior to* the damages period for products that allegedly have a "continuing impact" *during* the damages period, particularly where, as here, "the products have both non-infringing and infringing configurations." *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1120–21 (Fed. Cir. 2022). But that is what TQ Delta seeks here.

TQ Delta attempts to prove infringement by relying on pre-2015 sales of products that it asserts were *capable of performing* or *configurable to perform* the accused functionality. That is not enough. TQ Delta must show an actual infringing use of the accused products during the damages period (*i.e.*, post-2015). But TQ Delta cannot demonstrate any inducement by CommScope during the damages period. To prove inducement, TQ Delta must show that CommScope's post-2015 actions actually caused—and that CommScope *specifically intended* those actions to cause—an *act* of direct infringement post-2015. TQ Delta has not met and cannot meet this burden. It is not enough to show that CommScope provided a mere software update (for example) post-2015. Instead, TQ Delta must show that the software update actually *caused* a new act of direct infringement post-2015 (during the damages period), and that CommScope *knew* that this caused infringement of TQ Delta's patents.

II. **ARGUMENT**

    A.    **TQ Delta Cannot Rely on Pre-2015 Sales as an Act of Direct Infringement.**

TQ Delta's Response focuses on facts allegedly showing direct infringement through sales

of the DSL CPE products that occurred *prior* to the damages period. But those facts are legally irrelevant. As CommScope explained in its opening brief, TQ Delta must show evidence of direct infringement, i.e., *actual infringing use* of the DSL CPE product, during the damages period. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006); *Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005). Despite the number of documents that it points to in its Response, TQ Delta has not identified any *evidence*—direct or circumstantial—showing that, for the products sold *before* 2015, actual use of the accused DSL functionality occurred *during* the damages period. Thus, summary judgment is appropriate.

Because any such evidence is lacking, TQ Delta resorts to arguing that, because the DSL CPE products sold before the damages period are *capable* of infringing during the damages period, they must necessarily infringe, and CommScope must necessarily have specifically intended to induce that (alleged) infringement.[1] But as explained above, for purposes of the requisite predicate direct infringement, TQ Delta is relying on *pre-2015 sales* of products that are (allegedly) *capable* of infringement. Because those sales occurred prior to the damages period, another act of direct infringement—one occurring during the damages period—must be shown. *See CSB-Sys. Int'l Inc. v. SAP Am., Inc.*, No. CIV.A. 10-2156, 2012 WL 1521321, at *8 (E.D. Pa. Apr. 30, 2012) ("[T]o the extent Plaintiff can succeed on its claims for infringement, its damage award must be limited to those damages resulting from acts of infringement committed from March 29, 2010 onward . . . . [T]he trial burden now falls upon Plaintiff to prove that, during th[e relevant] time frame, [defendant] took affirmative steps to induce continued direct infringement by [defendant's]

---

[1] TQ Delta cites certain Nokia statements during the *Markman* hearing as proof that "capable of infringement" is enough for *direct* infringement by a party. *See* Resp. at 7 n.8. What TQ Delta ignores is that the statement concerned sales of DSL CPE products occurring *during the damages period*. At that time, TQ Delta had not even disclosed its erroneous theory of induced infringement based on pre-2015 sales.

2

customers.").

### B. TQ Delta Has Failed to Identify Any Affirmative Act by CommScope Post-2015 That Induced an Act of Direct Infringement Post-2015.

TQ Delta identifies no evidence in the record that CommScope's conduct, such as providing training and software updates to service providers (like AT&T) post-2015, actually induced end users to directly infringe the Asserted Patents by using DSL functionality. And TQ Delta likewise has not demonstrated that CommScope had intent to induce such direct infringement.

TQ Delta cannot prove that CommScope's software updates and/or training for service providers caused them to act in an infringing matter. Notably, TQ Delta has not demonstrated that the software updates and training provided to service providers actually caused end users to use the CPE devices in an infringing way (i.e., using DSL), as opposed to a non-infringing way (i.e., using Wi-Fi). The Federal Circuit has made clear that a party may be liable for induced infringement only if it "successfully communicate[s] with *and* induce[s] a third party direct infringer." *Power Integrations v. Fairchild Semiconductor*, 843 F.3d 1315, 1331 (Fed. Cir. 2016) (emphasis added) (overturning jury verdict based on jury instruction that did not require successful communication but only that "the party took steps to encourage or assist that infringement, regardless of whether that encouragement [1] succeeded, or [2] was even received"). TQ Delta has no evidence—whether direct or circumstantial—that any software updates or training (or any other actions) actually resulted in products sold pre-2015 being newly used in an infringing way during the damages period. And if (during the post-2015 period) CommScope's customers and ultimate end users were *already using* the DSL functionality of an accused CPE device that was sold/installed pre-2015, then nothing CommScope did post-2015 *caused* (or could have caused) that infringement.[2] *Roche*

---

[2] Had TQ Delta timely disclosed its theory of induced infringement based on pre-2015 sales, CommScope would have had opportunity during fact discovery to develop evidence on this issue. As detailed in CommScope's opposition to TQ Delta's Motion For Leave to Serve the First Supplemental Expert Report of Jonathan D. Putnam, CommScope was prejudiced by TQ Delta's

3

*Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1120–21 (Fed. Cir. 2022) (citing *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345 (Fed. Cir. 1985) (rejecting the idea that "acts occurring before the damages period could support a finding of inducement if they 'continue[d] to have an impact' and cause[d] third parties to use the products-at-issue" during the damages period); *see also CSB*, 2012 WL 1521321, at *6 ("[S]imply selling the Accused Products to its customers with knowledge that the customers would continue to use them do[es] not constitute the requisite affirmative acts required for inducement.").

TQ Delta's reliance on *Sysmex* does not support its position. That case holds that an act of inducement must cause direct infringement—not that inducing actions may occur *after* the direct infringement, as TQ Delta argues here. The court in *Sysmex* noted that "the relevant inquiry on this issue should simply be: (1) did [defendant]'s customers . . . directly infringe . . . and (2) if so, did [defendant] knowingly induce those customers to take infringing actions . . . *in that same relevant time period.*" *Sysmex Corp. v. Beckman Coulter, Inc.*, No. CV 19-1642-JFB-CJB, 2022 WL 1786526, at *12 (D. Del. May 26, 2022) (emphasis added). *Sysmex* does not hold, as TQ Delta wrongly suggests, that an act of direct infringement during the pre-damages period may constitute direct infringement for alleged inducement occurring years *after* the act of direct infringement.

Still further, TQ Delta has not provided any evidence—direct or circumstantial—that CommScope knowingly induced its customers or any end users to infringe. "A defendant is liable for 'induced infringement under § 271(b)' if the defendant took certain affirmative acts to bring about the commission by others of acts of infringement and *had 'knowledge that the induced acts constitute patent infringement.*'" *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011)) (emphasis added). TQ Delta's citations to two documents describing methods of repair and describing a

---

failure to timely disclose it contention during fact discovery. Dkt. No. 371 at 13–15.

4

software release to include vectoring (Resp. at 15) say nothing about CommScope's subjective intent to knowingly induce infringement. TQ Delta lacks any evidence at all to prove the required knowledge and intent components of an inducement claim. CommScope at all times lacked such knowledge and intent, and TQ Delta has not shown otherwise. This further demonstrates the appropriateness of summary judgment.

In the end, in addition to TQ Delta's lack of evidence, TQ Delta's erroneous inducement theory upends settled law. For both reasons, this Court should foreclose TQ Delta's position. If a pre-damages period sale of an apparatus may be "carried forward" into the damages period to qualify as an act of direct infringement for the purposes of an inducement claim, as TQ Delta seeks to do here, the Patent Act's six-year time limitation on damages would be eviscerated. Such a result is contrary to the law, both from a statutory perspective (under § 286) and based on Federal Circuit precedent. This Court should reject TQ Delta's already-rejected inducement theory, and award CommScope summary judgment precluding TQ Delta from recovering any damages arising from CommScope's pre-2015 sales.

### III.   CONCLUSION

For the reasons set forth above, CommScope respectfully requests that the Court grant CommScope's Motion for Partial Summary Judgment to Limit Damages Based on § 286.

Dated this 17th day of January, 2023

Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Ste. B
Tyler, TX 75703
903-534-1100 (t)

5

903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Lana Shiferman
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
P: (617) 570-1000
F: (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P: (415) 733-6000
F: (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Email: *ross.barton@alston.com*
*scott.stevens@alston.com*
*kirk.bradley@alston.com*
*stephen.lareau@alston.com*

6

██████████████████████████████████████

*karlee.wroblewski@alston.com*
*nic.marais@alston.com*
*erin.beaton@alston.com*
*mary.riolo@alston.com*
Telephone: 704-444-1000
Facsimile: 704-444-1111

Katherine G. Rubschlager (Cal. Bar No. 328100)
ALSTON & BIRD LLP
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
Email: *katherine.rubschlager @alston.com*
Telephone: 650-838-2004
Facsimile: 650-838-2001

***Attorneys for Defendants***
***CommScope Holding Company, Inc,***
***CommScope Inc., ARRIS US Holdings, Inc.,***
***ARRIS Solutions, Inc., ARRIS Technology,***
***Inc., and ARRIS Enterprises, LLC***

7



## CERTIFICATE OF SERVICE

Pursuant to Local Rule CV-5(c), the undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on January 17, 2023.

/s/ Eric H. Findlay
Eric H. Findlay