# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>                            *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>                            *Defendants*. | Civil Action No.: 2:21-cv-00310-JRG<br><br>**FILED UNDER SEAL** |

**COMMSCOPE'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT TESTIMONY OF JONATHAN PUTNAM, PH.D. THAT IS <u>INCONSISTENT WITH LEGAL PRECEDENT (DKT. NO. 346)</u>**

## TABLE OF CONTENTS

**Page**

I. Dr. Putnam's Modified Top-Down Approach Violates Established Patent Damages Principles ...................................................................................................1

    A. Dr. Putnam Failed to Apportion the Value of the Patented Inventions and Instead Improperly Attempted to Value DSL as a Whole. .....................................1

    B. Dr. Putnam Improperly Rejects the SSPPU Method, Instead Relying on His Contrary Views in His Own Unpublished Manuscript. ....................................3

    C. Dr. Putnam Praises and Then Applies the Nash Bargaining Theory. ......................4

II. TQ Delta Does Not Apply the Correct Hypothetical Negotiation Date. ..............................5

III. TQ Delta's License Agreements Demonstrate That Dr. Putnam's Flawed Methodology Produces Inflated Damages Numbers. ...........................................................5

IV. Conclusion ............................................................................................................................5

██████████████████████████████

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Systems*,
   809 F.3d 1295 (Fed. Cir. 2015).............................................................................4, 5

*Ericsson, Inc. v. D-Link Systems, Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)..............................................................................1, 3

*Exmark Manufacturing Co. v. Briggs & Stratton Power Products Group, LLC*,
   879 F.3d 1332 (Fed. Cir. 2018).................................................................................3

*GPNE v. Apple*,
   No. 12-CV-02885-LHK, 2014 U.S. Dist. LEXIS 53234 (N.D. Cal. Apr. 16,
   2014) ..........................................................................................................................2

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
   2019 WL 126980 (E.D. Tex. Jan. 7, 2019).................................................................4

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)......................................................................................3

*MiiCS & Partners v. Funai Elec. Co.*,
   No. 14-804-RGA, 2017 U.S. Dist. LEXIS 201511 (D. Del. Dec. 7, 2017)................2

*Realtek Semiconductor Corp. v. LSI Corp.*,
   2014 WL 46997 (N.D. Cal. Jan. 6, 2014) ...................................................................2

*Virnetx, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)..................................................................................4

## TABLE OF EXHIBITS[1]

| Exhibit No. | Description |
|---|---|
| Ex. A | Corrected Expert Report of Jonathan D. Putnam, dated September 3, 2022 ("Putnam Op. Rpt.") |
| Ex. B | Supplemental Expert Report of Jonathan D. Putnam, dated November 16, 2022 ("Putnam Supp. Rpt.") |
| Ex. C | Second Supplemental Expert Report of Jonathan D. Putnam, dated December 1, 2022 ("Putnam Second Supp. Rpt.") |
| Ex. D | Excerpts from the deposition transcript of Jonathan D. Putnam dated December 6, 2022 ("Putnam 12/6/22 Dep.") |
| Ex. E | [REDACTED] |
| Ex. F | Excerpts from the deposition transcript of Jonathan D. Putnam dated February 7, 2019 ("Putnam 2/7/19 Dep.") |
| Ex. G | Excerpts from Plaintiff TQD's Objections and Responses to CommScope's First Set of Interrogatories (Nos. 1–35) dated May 12, 2022 ("TQD's Interrog. Resps.") |
| Ex. H | [REDACTED] |
| Ex. I | [REDACTED] |
| Ex. J | [REDACTED] |
| Ex. K | Additional excerpts from the deposition transcript of Jonathan D. Putnam dated December 6, 2022 ("Putnam 12/6/22 Dep.") |

---

[1] This exhibit list is inclusive of all exhibits cited by CommScope in its moving papers and in this Reply brief.

TQ Delta's opposition confirms that Dr. Putnam intends not only to offer certain damages opinions that violate well-established legal principles, but also to undermine the law itself—including expressing his views that valuing a standard as a whole (rather than the incremental value of the claimed invention) is appropriate, that the SSPPU rule should be rejected, and that the discredited Nash Bargaining Solution justifies a 50/50 split of profits. Because Dr. Putnam fails to follow the law, his methodology and associated opinions are unreliable and misleading. Dr. Putnam's opinions (identified on page 2 of CommScope's motion) should therefore be excluded.

I. **Dr. Putnam's Modified Top-Down Approach Violates Established Patent Damages Principles.**

   A. **Dr. Putnam Failed to Apportion the Value of the Patented Inventions and Instead Improperly Attempted to Value DSL as a Whole.**

TQ Delta's summary of Dr. Putnam's analysis makes clear that Dr. Putnam failed to value the patented inventions themselves. As TQ Delta points out, Dr. Putnam started with "the total cost savings" of DSL as a technology, and then derived a value of "$0.33 per patent family, per accused device, per standard" without once even contemplating what any of the asserted patents actually claim. Dkt. No. 383, Resp. at 5. The Federal Circuit requires more. In *Ericsson, Inc. v. D-Link Systems, Inc.*, the Federal Circuit explained that "a royalty award for a SEP **must** be apportioned to *the value of the patented invention*." 773 F.3d 1201, 1232 (Fed. Cir. 2014) (emphasis added). Specifically, the Federal Circuit explained that (1) "the patented feature must be apportioned from all of the unpatented features reflected in the standard"; and (2) "the patentee's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology." *Id.* Nowhere does Dr. Putnam perform such an analysis or rely on a technical expert for such an analysis—instead, he openly criticizes the law on this subject. TQ Delta's opposition does not even attempt to show otherwise.

The fact that Dr. Putnam started his analysis with a *cost savings* does not eliminate the

1

requirement to value the patented invention itself. TQ Delta mischaracterizes *MiiCS & Partners v. Funai Elec. Co.*, No. 14-804-RGA, 2017 U.S. Dist. LEXIS 201511 (D. Del. Dec. 7, 2017), in an attempt to salvage Dr. Putnam's errant analysis. In that case, the technical expert told the damages expert that the *asserted patent*—meaning the *patented invention*—"confers a 5% to 10% cost-savings benefit." *Id.* at *7. Here, Dr. Putnam attempted to determine the cost savings of DSL as a whole, not the cost savings from any of the *asserted patents* or the *patented inventions*. TQ Delta does not contest this, and Dr. Putnam's opinions should be excluded for this reason alone.

Dr. Putnam's failure to value the individual patented inventions is further demonstrated by his opinions seeking a royalty for entire patent families regardless of the number of patents actually at issue within those families.² It is undisputed that there are numerous patents (asserted by TQ Delta to be SEPs (Dkt. No. 346, Ex. K (Putnam 12/6/22 Dep.) at 113:5–114:22)) in each patent family that have either never been asserted against CommScope or have been dropped from this case. Dr. Putnam's damages valuations thus include non-asserted patents, which is improper. *See Realtek Semiconductor Corp. v. LSI Corp.*, 2014 WL 46997, at *3–4 (N.D. Cal. Jan. 6, 2014) (excluding a patent citation counting methodology where 93 percent of the citations in the pool were attributable to non-asserted patents). The cases cited by TQ Delta support this same point. For example, in *GPNE v. Apple*, the court found the expert's counting methodologies "sufficiently reliable" only where she "adjust[ed] her final royalty figure based on *the value of the asserted patent relative to the other standard essential patents.*" No. 12-CV-02885-LHK, 2014 U.S. Dist.

---

² Dr. Putnam admits that the number of Asserted Patents within a family did not impact his royalty rate, and so his royalty rate opinions did not change when patents were dropped. *See, e.g.*, Dkt. No. 346, Ex. K (Putnam 12/6/22 Dep.) at 64:7–65:10 ▮▮▮), 69:3–20 ▮▮▮), 77:12–17 (no rate change when a patent is dropped ▮▮▮).

2

LEXIS 53234, at *30 (N.D. Cal. Apr. 16, 2014) (emphasis added). Dr. Putnam failed to take that critical step here.

>    B.  **Dr. Putnam Improperly Rejects the SSPPU Method, Instead Relying on His Contrary Views in His Own Unpublished Manuscript.**

Relying on mischaracterizations of the law, Dr. Putnam intends to tell the jury that "the SSPPU has no general business or economic justification," and, based on that notion, to offer a damages opinion premised on his personal rejection of the law. Dkt. No. 346, Ex. A (Putnam Op. Rpt.) ¶ 159. Dr. Putnam should not be allowed to do so.

TQ Delta does not dispute that Dr. Putnam intends to tell the jury that the SSPPU rule does not apply or is unnecessary. TQ Delta itself asserts as much. Dkt. No. 383, Resp. at 9 (arguing that "a royalty need not be based on the SSPPU"). But Federal Circuit precedent explains that "it is generally ***required*** that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit' [SSPPU]." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (emphasis added). The case law relied on by TQ Delta does not support its contrary view. For example, the Federal Circuit in *Ericsson* (relied on by TQ Delta) reasoned that "courts must insist on a more realistic starting point for the royalty calculations by juries—often, the smallest salable unit and, at times, even less." 773 F.3d at 1227. Likewise, in *Exmark Manufacturing Co. v. Briggs & Stratton Power Products Group, LLC*, 879 F.3d 1332 (Fed. Cir. 2018), the Federal Circuit emphasized the requirement of apportionment and the need to focus on "the incremental value that the patented invention adds to the end product." *Id*. at 1348. Addressing claims directed to a lawn mower, the *Exmark* court permitted apportionment via the royalty rate rather than the royalty base solely "because the asserted claim is, in fact, directed to the lawn mower as a whole." *Id*. Here, in contrast, the asserted claims are directed to functionality in the accused chipset (the SSPPU) and not the accused products as a whole, and so Dr. Putnam was

3

required to value the chipset. Similarly, the court in *Commonwealth Sci. & Indus. Research Organisation v. Cisco Systems* determined that starting with the SSPPU was not necessary simply because the parties "did not apportion from a royalty base at all," but rather started from the parties' negotiations. 809 F.3d 1295, 1302–03 (Fed. Cir. 2015). Unlike that case, here Dr. Putnam *does* apportion from a royalty base, but he uses the wrong base (the entire product, rather than the SSPPU) without justification.

Although TQ Delta asserts otherwise, this Court has not concluded that the SSPPU can be put aside. In *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, this Court considered only whether the SSPPU was required under a **contractual** FRAND obligation **governed by the laws of France**. 2019 WL 126980, at *6 (E.D. Tex. Jan. 7, 2019) ("*[A]s a matter of French law*, the FRAND commitment embodied in the ETSI IPR policy does not require a FRAND license to be based on the SSPPU." (emphasis added)). Under the law that applies here—patent damages under U.S. law—"when claims are drawn to an individual component of a multi-component product, it is the exception, not the rule, that damages may be based upon the value of the multi-component product." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014). Dr. Putnam's rejection of the SSPPU rule should therefore be excluded. *See* Dkt No. 346, Ex. A (Putnam Op. Rpt.) ¶¶ 139–166 (criticizing SSPPU for 15 pages).

   C. **Dr. Putnam Praises and Then Applies the Nash Bargaining Theory.**

The Federal Circuit rejected the Nash theorem for the same reason it rejected the "25 percent rule of thumb"—because it failed "to tie a reasonable royalty to the facts of the case," it "did not differentiate between different industries, technologies, or parties," and "it assumed the same 25/75 royalty split regardless of the size of the patent portfolio in question or the value of the patented technology." *VirnetX*, 767 F.3d at 1332. Dr. Putnam's application of the Nash theorem here suffers from the same flaws. As TQ Delta admits, Dr. Putnam divided the gains between

4

innovators and implementors in a 50/50 split, and he justifies his approach as "fair" and "balanced." Dkt. No. 346, Ex. A (Putnam Op. Rpt.) at 174–79; Dkt. No. 383, Resp. at 12. Dr. Putnam's post hoc "independent justifications" to rationalize his reliance on the Nash theorem are nothing more than a re-hash of the theorem itself.[3] Dr. Putnam's Nash analysis is premised entirely on splitting the alleged value among SEP families and between "innovators" and "implementors." *Id*. The Federal Circuit has expressly rejected that approach.

## II. TQ Delta Does Not Apply the Correct Hypothetical Negotiation Date.

TQ Delta backtracks on the hypothetical negotiation date in a way that ignores Dr. Putnam's previous testimony and opinions. Dr. Putnam used 2003/2004 as the relevant date in his analysis, and as a hedge stated that the hypothetical negotiation date did not matter. Dkt. No. 346, Ex. A (Putnam Op. Rpt.) ¶ 169; *id.*, Dkt. 346, Ex. K (Putnam 12/6/22 Dep.) at 109:6–14, 115:22–118:20. Neither approach is proper under the law. *See* Dkt. No. 346 at 11.

## III. TQ Delta's License Agreements Demonstrate That Dr. Putnam's Flawed Methodology Produces Inflated Damages Numbers.

Dr. Putnam's assumption that the royalty rates in the ▮▮▮▮▮▮▮▮▮▮ licenses should be adjusted *upwards* (rather than be considered equivalent) is contrary to the law, which explains that "the parties are constrained by the market's actual valuation of the patent." *CSIRO*, 809 F.3d at 1303 (citation omitted). Here, these licenses show that the market's actual valuation of the patents is far below Dr. Putnam's inflated number.

## IV. Conclusion

For these reasons, the Court should exclude Dr. Putnam's unreliable expert testimony.

---

[3] Dr. Putnam's claim that he did not "apply the Nash theorem to TQ Delta and CommScope" is belied by the entirety of his "Divisions of the Gains from DSL" analysis. Dkt. No. 346, Ex. A (Putnam Op. Rpt.) ¶ 348 n.447. Moreover, in the very next sentence of footnote 447 he *admits* that he "appl[ied] it advisedly" to the DSL SDOs based on unidentified "facts of the case." *Id*.

5

| | |
|---|---|
| Dated this 17th day of January, 2023 | Respectfully submitted,<br><br>By: */s/ Eric H. Findlay*<br>Eric H. Findlay<br>State Bar No. 00789886<br>Brian Craft<br>State Bar No. 04972020<br>FINDLAY CRAFT, P.C.<br>7270 Crosswater Avenue, Ste. B<br>Tyler, TX 75703<br>903-534-1100 (t)<br>903-534-1137 (f)<br>efindlay@findlaycraft.com<br>bcraft@findlaycraft.com<br><br>Douglas J. Kline<br>Lana Shiferman<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA 02210<br>P: (617) 570-1000<br>F: (617) 523-1231<br>dkline@goodwinlaw.com<br>lshiferman@goodwinlaw.com<br><br>Brett Schuman<br>Rachel M. Walsh<br>GOODWIN PROCTER LLP<br>Three Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>P: (415) 733-6000<br>F: (415) 677-9041<br>bschuman@goodwinlaw.com<br>rwalsh@goodwinlaw.com<br><br>Andrew Ong<br>GOODWIN PROCTER LLP<br>601 Marshall St.<br>Redwood City, CA 94063<br>P: (650) 752-3100<br>F: (650) 853-1038<br>aong@goodwinlaw.com<br><br>Ross R. Barton (NC Bar No. 37179) |

███████████████████████

        M. Scott Stevens (NC Bar No. 37828)
        Kirk T. Bradley (NC Bar No. 26490)
        Stephen R. Lareau (NC Bar No. 42992)
        Karlee N. Wroblewski (NC Bar No. 55043)
        Nicholas C. Marais (NC Bar No. 53533)
        Erin Beaton (NC Bar No. 59594)
        Mary I. Riolo (NC Bar No. 59644)
        ALSTON & BIRD LLP
        101 S. Tryon Street, Suite 4000
        Charlotte, NC 28280-4000
        Email: *ross.barton@alston.com*
        *scott.stevens@alston.com*
        *kirk.bradley@alston.com*
        *stephen.lareau@alston.com*
        *karlee.wroblewski@alston.com*
        *nic.marais@alston.com*
        *erin.beaton@alston.com*
        *mary.riolo@alston.com*
        Telephone: 704-444-1000
        Facsimile: 704-444-1111

        Katherine G. Rubschlager (Cal. Bar No. 328100)
        ALSTON & BIRD LLP
        1950 University Avenue, Suite 430
        East Palo Alto, CA 94303
        Email: *katherine.rubschlager @alston.com*
        Telephone: 650-838-2004
        Facsimile: 650-838-2001

        ***Attorneys for Defendants CommScope Holding Company, Inc, CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC***



## CERTIFICATE OF SERVICE

Pursuant to Local Rule CV-5(c), the undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on January 17, 2023.

                    /s/ Eric H. Findlay
                    Eric H. Findlay