**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| TQ Delta, LLC,<br>    *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>    *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED |

**TQ DELTA, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO BREACH OF ANY FRAND OBLIGATIONS (FAMILY 3 AND <u>FAMILY 9A NON-ESSENTIAL PATENTS)</u>**

## I.     INTRODUCTION

TQ Delta contends that the Family 3 and 9A patents are not standard-essential. CommScope contends the same. The analysis is, therefore, a straightforward one. This agreement forecloses the existence of a genuine dispute on the relevant issue of material fact. The granting of summary judgment is called for.

In its attempt to avert this conclusion, CommScope argues that TQ Delta's damages expert, Dr. Putnam, has provided competent evidence on how the functionality of the Family 3 and 9A patents may or may not be implemented. Dr. Putnam, who is an economist, cannot provide such evidence. This alone is a critical error in CommScope's argument. Further, CommScope wrongly contends that because Dr. Putnam "treat[s]" the Family 3 and Family 9A patents "as though they were SEP[s]" for the purpose of computing damages, this should give rise to FRAND obligations. Resp. at 3. Contractual obligations, however, arise from contracts, not from a defendant's self-serving notion of fairness based on its (incorrect) interpretation of the opinions disclosed by a party's damages experts. Summary judgment is warranted

## II.    ARGUMENT

CommScope's argument rests on a false premise, namely, that Dr. Putnam's opinions constitute sufficient evidence that the use of the technology claimed by the Family 3 and 9A patents is required to implement the relevant ITU-T standards. Dr. Putnam cannot and does not offer any opinions on how the technology of the Family 3 and 9A patents may be implemented. He, instead, opines that these patents are "commercially essential" in that, "if most manufacturers implement the claimed technology, the cost to switch to a different implementation may be high." Exh. H, Putnam Expert Report at ¶ 27.

If, as CommScope contends, a damage's expert's opinion on essentiality triggers a patent holder's disclosure obligations under the ITU-T's Common Patent Policy, the effectuation of this policy would become untenable.  It would require a patent holder to file a declaration whenever he suspects that at some (unknown) point of time in the future, his claimed technology would be used to such a degree that a switch to a different technology is rendered, as an economic matter, unviable.  This sort of disclosure system, while being unworkable as a practical matter,[1] would also dissolve the rationale upon which the existence of FRAND obligations rests on: A patent owner should be required to accept the extra burden of FRAND requirements only when he knows that his technology will be embodied within an industry standard, not on the suspicion that his invention will become a commercial success.  See *FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 U.S. Dist. LEXIS 190051, at *12 (N.D. Cal. Nov. 6, 2018) ("In order to prevent the owner of a patent *essential to complying* with the standard . . . *from blocking implementation* of a given standard, SSOs maintain intellectual property right [policies]") (emphasis added); Exh. I, ITU's Understanding Patents at 64 (providing that the ITU-T's Common Patent Policy seeks to strike a balance between "the goals of fostering competition and widespread adoption of the standard" and "the desire to reasonably reward innovation and *technical contributions to standards development*) (emphasis added).

As the above indicates, a real and significant distinction exists between Dr. Putnam's use of "commercial essentiality" and the ITU-T's technical essentiality requirement.[2]  CommScope

---

[1] Indeed, the form of the declaration a patent holder is required to use by the ITU-T literally prevents such a disclosure from being made, as it mandates an association between a particular ITU-T Recommendation (i.e., standard) and the patents the filer believes to be essential.  *See* Dkt. No. 335-2 (Exhibit A).

[2] Dr. Putnam, in multiple instances, makes clear that a patent obtaining "commercial essentiality" is different from the concept that the claims of a patent are necessarily used in the implementation

accuses TQ Delta of fabricating such a distinction, making it "out of whole cloth" to use CommScope's language. Resp. at 1. CommScope would also have to make the same accusation against its own damages expert, Stephen Becker, Ph.D. He states: "Patents are considered to be 'standard essential patents' . . . when 'the standard *requires* that devices utilize specific technology, compliant devices *necessarily* infringe certain claims in patents that cover technology incorporated into the standard." Exh. J, Becker Expert Report at ¶ 72 (quoting *Ericsson, Inc, v. D-Link Sys.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014)); *see also id.* at ¶ 90, n.177. CommScope's understanding of the ITU-T's essentiality requirement also differs from how the ITU-T, itself, understands it. The ITU-T has explained that a patent is standard-essential "if the text of a standard is drafted in such a way that it becomes impossible to implement the specifications of the standard without using the technology protected by the patent." Exh. I, ITU's Understanding Patents at 51; *see also id*. at 52. Notably, the ITU-T has expressly recognized that although a patented technology may "add value to standards-based products[,]" the patent "will not be considered standard-essential if the specifications of the relevant standard do not require the use of this technology." *Id*. *See also* Exh. K, ITU-T Common Patent Policy at 1 ("[A] patent embodied fully or partly in a [standard] must be accessible to everybody without undue constraints.").

CommScope's Response also conflicts with this Court's precedent. The Eastern District of Texas has recognized that technical essentiality is what is required for a patent to be considered standard-essential under the terms set forth by standard-setting organizations. *See Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*, 2:17-CV-JRG, 2019 U.S. Dist. LEXIS 43489, at *3 (E.D. Tex. Mar. 18, 2019) (citing to the ETSI's Rules of Procedure in stating: "A patent is 'essential' if

---

of a standard. *See* Exh. H, Putnam Expert Report at ¶¶ 25, 26, 45

it is not *technically* possible to practice the standard without *infringing* the patent) (emphasis added).

CommScope argues that contractual obligations should be imposed because TQ Delta and Dr. Putnam have "treat[ed] . . . the Family 3 and 9[A] patents as standard-essential." Resp. at 4. However, the relevant inquiry is whether use of the claimed technology is "required to implement" the relevant standard. See Dkt. No. 335-2 (Exhibit A). TQ Delta—along with Dr. Putnam, Dr. Cooklev,[3] and (not least of all) CommScope—all agree that the Family 3 and Family 9A do not meet this definition and are, therefore, not standard-essential. The methodology Dr. Putnam applies in relation to these patents is not done because he believes that the Family 3 and 9A patents are encumbered by FRAND obligations, but because consideration of relevant economic factors convinces him that, for business reasons, the parties at the hypothetical negotiation would do so. *See, e.g.*, Exh. H, Putnam Expert Report at n.8; Appendices at § II, ¶ 1. In addition, contrary to CommScope's assertion, Dr. Putnam does provide an analysis particular to Family 3 and 9A in recognition of the fact that these patents are not standard-essential. *See id*. Appendices at § I, ¶¶ 4, 9. CommScope may (wrongly) disagree with the reliability of this expert opinion, but it cannot assert that it should be treated as giving rise to legal, contractual obligations. The only source from which those may spring is the language from the relevant ITU-T declarations.

### III.   CONCLSUION

For the foregoing reasons, TQ Delta respectfully requests that the Court enter a summary judgment against CommScope in relation to its breach of contract counterclaim (Counterclaim XXVII) for the Family 3 and Family 9A patents.

---

[3] CommScope appears to assert that Dr. Cooklev will opine that the Family 9A patent is standard-essential. This is incorrect. *See* Dkt. No. 335-2 (Exhibit C) at ¶ 1274.

4

Dated: January 19, 2023

Respectfully Submitted,

*/s/ William E. Davis, III*

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(Pro hac vice)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(Pro hac vice)
rchiplunkar@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

**ATTORNEYS FOR PLAINTIFF**

**TQ DELTA, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this January 19, 2023 on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/William E. Davis, III*
William E. Davis, III
