IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>                              *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>                             *Defendants*. | Civil Action No.: 2:21-cv-00310-JRG |

**COMMSCOPE'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF JONATHAN PUTNAM AND TODOR COOKLEV UNDER FED R. EVID. 702 AND *DAUBERT* (DKT NO. 344)**

███████████████████████████

## TABLE OF CONTENTS

                                                                                                      **Page**

I.     The Knockout Analysis Does Not Meet Minimum Standards of Reliability ...................... 1

II.    TQ Delta Bears the Burden of Admissibility .......................................................................... 4

III.   Conclusion ................................................................................................................................. 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Genband US LLC v. Metaswitch Networks Corp.*,
   No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 196292 (E.D. Tex. Jan. 7,
   2016) ....................................................................................................................................5

*Hathaway v. Bazany*,
   507 F.3d 312 (5th Cir. 2007) ...............................................................................................4

## TABLE OF EXHIBITS[1]

| **Exhibit** | **Description** |
|---|---|
| Exhibit A | Excerpts of the Corrected Expert Report of Johnathan D. Putnam, Ph.D., including Exhibits and Schedules |
| Exhibit B | Excerpts of the Opening Expert Report of Todor Cooklev, Ph.D. |
| Exhibit C | Excerpts of the Corrected Expert Report of Jonathan D. Putnam, Ph.D., Volume II |
| Exhibit D | Excerpts of the Deposition Transcript of Jonathan D. Putnam, Ph.D. |
| Exhibit E | Excerpts of the Deposition Transcript of Todor Cooklev, Ph.D. |

---

[1] This exhibit list is inclusive of all exhibits cited by CommScope in its moving papers and this reply brief.

The premise of CommScope's motion is clear: the knockout analysis performed by Drs. Cooklev and Putnam is entirely subjective, is not grounded in science, and deserves exclusion under *Daubert*. TQ Delta admits that Dr. Cooklev's list of knockout terms, which provides the foundation for Dr. Putnam's damages model, was generated from Dr. Cooklev's subjective determinations whether certain words might be less likely to appear in the claims of a standard-essential patent ("SEP"). Just because Dr. Cooklev may be familiar with the relevant technology does not make him an expert in the black-box exercise of determining which words are less likely to appear in patent claims. And the lack of any reasonable scientific method is exemplified by the fact that many of the "knockout" words *actually* appear in the DSL standard and, worse, *actually* appear in claims of an asserted patent as well as the alleged SEPs identified by Dr. Cooklev. The process employed by Dr. Cooklev was arbitrary and it, along with the associated conclusions, should be excluded. Moreover, TQ Delta improperly tries to shift the burden to CommScope by raising a host of issues regarding what CommScope (and its experts) did not do. But it is TQ Delta, not CommScope, that bears the burden of establishing reliability. TQ Delta has failed to do so.

I.  **The Knockout Analysis Does Not Meet Minimum Standards of Reliability**

As the proponent of the novel knockout[2] analysis, TQ Delta bears the burden of showing that its expert's testimony is reliable. *See United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004) ("The proponent of expert testimony [] has the burden of showing that the testimony is reliable."). Yet, missing from TQ Delta's Response is any argument or evidence that comes close to meeting minimum standards of reliability. Instead, TQ Delta's explanations highlight the subjectivity underlying the list of knockout terms and how that subjective list impacted Dr. Putnam's analysis.

TQ Delta's experts are not the first to try to value identified SEPs. Yet, TQ Delta fails to

---

[2] TQ Delta takes issue with CommScope's use of "knockout." Resp. at 7. It was TQ Delta's expert, Dr. Putnam, who coined the phrase "knockout terms." Dkt. No. 344-1 ¶ 371.

1

show that the techniques employed by its experts meet any of the relevant factors for determining reliability. TQ Delta does not demonstrate that the methodology employed here: (i) has been tested, (ii) has been subject to peer review or publication, (iii) has a known potential rate of error or has standards controlling the technique's operation, or (iv) enjoys general acceptance within a relevant scientific community. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). This is telling, and evidences the unprecedented analysis undertaken by TQ Delta's experts.

With respect to the 360 knockout words identified by Dr. Cooklev, both TQ Delta and Dr. Cooklev admit that the list was generated entirely based on Dr. Cooklev's subjective judgment and unscientific opinion. For example, in its Response, TQ Delta argues that Dr. Cooklev "use[d] decades of experience with the relevant technology, standards, and patents" to create the list of knockout terms that based on "*his expert judgment*, were less likely to be in the independent claims of a relevant standard essential-patent ('SEP')." Resp. at 1 (emphasis added). Dr. Cooklev is not an expert in determining whether a term is "more likely" or "less likely" to be in a SEP claim. And TQ Delta fails to offer any basis for Dr. Cooklev's expertise in this specific exercise. Even if Dr. Cooklev were qualified, there is no explanation as to how he determined which terms to include or what it quantifiably means for a term to be "less likely" to be in SEP claim. The subjectivity and lack of scientific rigor is pervasive.[3] Yet TQ Delta intends to parade the analysis to the jury cloaked in its experts' credentials when in truth there are zero scientific underpinnings.

While TQ Delta attempts to support Dr. Cooklev's analysis by claiming the "terms were found in Derwent World Patents Index ('DWPI') classifications" (Resp. at 1), that was **not** the scope of his analysis. Dr. Cooklev's report expressly states that he used not only words found in

---

[3] Why include "kitchen" but not "bedroom"? Why include "karaoke" but not "dancing"? Why include "switch" and "switching" when they appear in the claims of the asserted '835 Patent?

2

the DWPI classifications but also "*other words associated with those broad descriptions.*" See Dkt. No. 344-2 ¶ 1340. Thus, any possible word that Dr. Cooklev deemed to be "associated" with the "broad descriptions" was a candidate for the list. An examination of his list reveals that only 43 out of the 360 words (*i.e.*, ~12%) are found in the DWPI classifications identified in his report. TQ Delta cannot credibly claim that the 360 terms were found in the classifications when Dr. Cooklev's report expressly indicates otherwise. Moreover, terms included on the list *appear at least 25 times in independent claims of the 33 patents Dr. Cooklev identified as DSL standard essential* (Dkt. No. 344-2 ¶ 1363), further demonstrating the analysis is unreliable and flawed.

With respect to Dr. Putnam's analysis, TQ Delta incorrectly argues that CommScope does not offer argument on particular paragraphs of his report. CommScope's motion identifies the paragraphs (and a figure and an exhibit). *See* Mot. at 6–7. Moreover, it is undisputed that Dr. Putnam relies on the knockout terms as the foundation for his damages model, which is the focus of CommScope's motion. Dkt. No. 344-1 ¶ 371. This calculation is the denominator Dr. Putnam uses to determine the value of TQ Delta's patent families. The smaller the number of likely SEPs, the larger the purported share of the standard's value that should allegedly go to TQ Delta. Because Dr. Cooklev's knockout methodology is unreliable, Dr. Putnam's analysis is likewise unreliable. Thus, the issue is not merely that Dr. Cooklev should or should not have included certain terms on his list, as TQ Delta argues. Rather, Dr. Cooklev offers an unqualified opinion as to terms that are "less likely" to

---

[4] While TQ Delta suggests that all buckets were sampled, including those with knockout terms, both Drs. Cooklev and Putnam expressly testified that the knockout terms were used to *eliminate* patents from consideration. *See, e.g.*, Ex. D at 166:10-15; Ex. E at 146:17-148:6.

appear in SEP claims, and then Dr. Putnam uses those arbitrary and subjective terms as the foundation for his damages model. The analysis lacks scientific procedure and reliability, and it should not be permitted to reach the jury.

## II.     TQ Delta Bears the Burden of Admissibility

TQ Delta's main criticisms center on CommScope's experts' alleged failure to challenge the knockout methodology or to re-create the analysis. Resp. at 1–2, 11. First, TQ Delta cannot shift its burden to prove admissibly of its own experts' analysis by pointing to CommScope's experts. *Hicks*, 389 F.3d at 525. Second, TQ Delta is wrong because both Drs. Becker and Ransom *did* challenge the methodology employed by Drs. Putnam and Cooklev, respectively. Dkt. No. 372-2 ¶¶ 343–4; Dkt. No. 733-3 ¶¶ 401–05. Moreover, the core problem with the knockout methodology is its subjective nature and lack of scientific foundation or procedure, not simply being able to repeat the flawed methodology. Thus, it makes no difference that TQ Delta's experts were deposed about the methodology (Resp. at 6), that Dr. Putnam used Dr. Cooklev's keywords (*id*. at 7–8), or that Dr. Cooklev explained his decisions (*id*. at 9–10). The methodology *itself* is subjective and lacks scientific underpinnings, and for that reason should be excluded. *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) ("The reliability prong mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" (citation omitted)).

Finally, TQ Delta cannot distinguish the case law cited by CommScope (*see* Resp. at 8–9, 14), which held that unreliable and unsupported opinions should be excluded, and that cross-examination was not a sufficient cure. In *Hathaway v. Benzany*, 507 F.3d 312, 318 (5th Cir. 2007), the Fifth Circuit affirmed the exclusion of expert testimony where the expert's opinion was premised entirely on his assurances, rooted in his experience, and was based on unsupported conjectures rather than a reliable methodology. TQ Delta admits this is what Dr. Cooklev did here

4

by arguing that "Dr. Cooklev, using his decades of experience with the relevant technology [and] standards," created the list of terms "*that he considered, in his expert judgment*, were less likely" to be in the claims of an SEP. Resp. at 1 (emphasis added). With respect to *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 196292, at *6 (E.D. Tex. Jan. 7, 2016), Judge Payne made clear that "[c]onclusory opinions unsupported by 'facts or data' and *based on no discernable 'principles and methods'* are not admissible under Fed. R. Evid. 702" (emphasis added). Here, Dr. Putnam's knockout analysis is premised on Dr Cooklev's arbitrary, conclusory opinion that any of 360 words (out of the hundreds of thousands of words in the English language) are "less likely" to be in claims of a SEP. That analysis is not based on any acceptable scientific principle or methodology, rendering it inadmissible.

TQ Delta's case law does not support a contrary view. TQ Delta posits that experts may create search terms, and disputes regarding such terms are proper for cross examination. *See* Resp. at 8–9. But the issue here is not merely about keyword sufficiency or what terms should have been on the list. Rather, it is about the subjective, unscientific exercise employed by TQ Delta's experts, which will mislead the jury into thinking it is grounded in science. Quibbling over the search terms via cross-examination does not cure that underlying problem. The methodology employed is not a reliable one for identifying patents that are allegedly less likely to be essential, or for determining a sampling rate or how many patents should be reviewed. And yet the methodology provides the foundation for TQ Delta's damages model in this case. TQ Delta identifies no case or instance where such a methodology has been deemed scientifically sound. This case should not be the first.

### III.  Conclusion

For these reasons, the knockout analysis performed by Drs. Cooklev and Putnam, and any opinions that depend on that analysis, should be stricken, and both experts should be prohibited from offering such opinions at trial.

5

Dated: January 17, 2023

Respectfully submitted,

By: /s/ Eric H. Findlay
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Suite B
Tyler, TX 75703
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
P: (617) 570-1000
F: (617) 523-1231
dkline@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P: (415) 733-6000
F: (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)

6

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Email: *ross.barton@alston.com*
*scott.stevens@alston.com*
*kirk.bradley@alston.com*
*stephen.lareau@alston.com*
*karlee.wroblewski@alston.com*
*nic.marais@alston.com*
*erin.beaton@alston.com*
*mary.riolo@alston.com*
Telephone: 704-444-1000
Facsimile: 704-444-1111

Katherine G. Rubschlager
(Cal. Bar No. 328100)
ALSTON & BIRD LLP
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
Email: *katherine.rubschlager @alston.com*
Telephone: 650-838-2004
Facsimile: 650-838-2001

***Counsel for Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on January 17, 2023, to all counsel of record via electronic mail.

/s/ Eric H. Findlay
Eric H. Findlay

8