IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>  *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>  *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF TQ DELTA, LLC'S REPLY IN SUPPORT OF ITS OPPOSED MOTION
FOR LEAVE TO FORMALLY SERVE THE FIRST SUPPLEMENTAL EXPERT
REPORT OF JONATHAN D. PUTNAM ON THE COMMSCOPE DEFENDANTS**

i

The Court should allow formal service of Dr. Putnam's First Supplemental Report because there is a reasonable explanation for the timing of the report, allowing formal service would not prejudice CommScope, Dr. Putnam's opinions are essential to TQ Delta's case, and no continuance is necessary.

A. **Dr. Putnam has a reasonable explanation for the timing of his Supplemental Report.**

As explained in TQ Delta's Motion, TQ Delta was diligent because it served the First Supplemental Report (dated 11/16/22) on CommScope only two days after CommScope served its fourth supplemental interrogatory response to TQ Delta's Interrogatory No. 7, which identified for the first time the CommScope spreadsheets containing accurate sales data for the CommScope accused products sold before August 2015. TQ Delta's service of Interrogatory No. 7 (requesting sales information for Accused Products since the date of their first commercialization) reflects TQ Delta's efforts to investigate and obtain the pre-2015 sales data.

CommScope asserts that it was "clear on the face" of the spreadsheets that they contained 2010-2014 sales data and that it "should have been apparent to a seasoned testifying expert like Dr. Putnam." Dkt. 371 at 10. But if it was indeed so "clear on the face" that the spreadsheets' data was accurate such that Dr. Putnam should have relied on them, then why did CommScope not identify those spreadsheets in response to Interrogatory No. 7 during discovery? As the spreadsheets' creator, CommScope was in a far better position to know whether the data was accurate and if so, identify the spreadsheets in its interrogatory response. During discovery, CommScope served an initial response and then three more supplemental responses to Interrogatory No. 7. Dkt. 349 - Ex. 4 at pp. 56-58. And each time, CommScope did not identify (and has not explained why it did not identify) any spreadsheets as containing accurate pre-2015 sales data. Thus, it was reasonable for Dr. Putnam and TQ Delta to conclude that CommScope

chose not to identify those spreadsheets in its response to Interrogatory No. 7 because it did not believe (or know if) the data in them was accurate or complete. And if CommScope was not comfortable citing those spreadsheets in its interrogatory response, then why should Dr. Putnam have relied on them in his original report as CommScope argues he should have done? It is hypocritical for CommScope to say that Dr. Putnam should have relied on the spreadsheets that CommScope would not rely on at the time.

Because there was no confirmation from CommScope regarding which spreadsheets had accurate pre-2015 sales data, it was reasonable for Dr. Putnam and TQ Delta to have doubts about whether the spreadsheets were accurate or complete. In its Response, CommScope showed a spreadsheet screenshot. The top row of that spreadsheet states, "CLIENT-ATTORNEY PRIVILEGE – NOT FINAL – FOR INTERNAL DISCUSSION ONLY.":

Ex. 1, COMMSCOPE016814 excerpted screenshot.

The "NOT FINAL" text, on its face, raised uncertainty about the accuracy and completeness of the data. This uncertainty was further reinforced by TQ Delta's knowledge that CommScope had not cited that spreadsheet in its response to Interrogatory No. 7 during discovery. If TQ Delta or Dr. Putnam believed that the data in this or other spreadsheets were accurate and complete, they would have relied on them, and Dr. Putnam would have addressed them in his original report. After all, TQ Delta and Dr. Putnam had nothing to gain by delaying calculating all the damages arising from CommScope's infringing activity in the damages period. For these reasons, this factor weighs strongly in favor of granting leave.

**B.     CommScope would not suffer prejudice if formal service is allowed.**

CommScope has suffered no prejudice and has failed to mitigate any alleged prejudice. CommScope tries to create prejudice where there is none by falsely asserting that TQ Delta is introducing a new and novel damages theory via the Supplemental Report. Dkt. 371 at 1, 6. There is nothing novel about seeking damages for infringing activity occurring within the damages period, which has been TQ Delta's damages theory since the filing of the Complaint in August 2021. CommScope is deliberately burying its head in the sand. TQ Delta pleaded inducement of infringement in its Original Complaint. Ex. 2, Complaint (Dkt. 1), at ¶¶ 35 ("CommScope also provides instructions and support (including, for example, providing upgrades, troubleshooting, and warranty support) to its Customers . . ."), 54, 65, 75, 85, 95, 105, 115, 151, 152, 186, 187. Also, the inducement of infringement theory was referenced in and/or discovery (e.g., relating to unit sales, use of the accused products, training, support, firmware, software, maintenance, instructions, and communications with broadband carriers) under that theory was sought by TQ Delta or disclosed via discovery requests, disclosures, discovery responses, correspondence, depositions, and briefs. CommScope's 30(b)(6) witness Dan Hagarty was asked numerous questions on August 11, 2022 about the pre-2015 sales data and was effectively told that the data was not available. Ex. 10, Hagarty Tr. at 51:1-58:20. Thus, it is not credible for CommScope to assert that it did not know of TQ Delta's theory until it received the Supplemental Report.[1]

Moreover, in Dr. Putnam's original report dated August 29, 2022, he stated, "I understand from counsel for TQ Delta that, CommScope could be liable for inducing infringement of accused

---

[1] Ex. 3, First Amended Initial Disclosures (2/7/22) at p. 9; Ex. 4, TQ Delta's First Set of Interrogatories to CommScope (2/9/22) at pp. 4, 7, 12, 13, 15; Ex. 5, TQ Delta's Response to CommScope's Motion to Transfer (2/22/22; Dkt. 89) at pp. 7, 10, 11; Ex. 6, Document request letter (3/10/22) at pp. 1, 6, 7, 9-13, 16, ; Ex. 7, TQ Delta's First Obj. and Responses to CommScope's First Set of Interrogatories (5/12/22) at 52-53; Ex. 8, Rule 30(b)(6) Notice of Deposition to CommScope re Damages topics (6/27/22) at pp. 13-15, 21; Dkt. 370-1 Ex. 1 – Baker depo excerpts; Dkt. 370-3 Ex. 3 – Wauters depo excerpts; Dkt. 370-8 Ex. 8 – Salazar depo excerpts.

products that it sold prior to August 2015, but provided technical and other support for after August 2015 . . . I reserve the right to supplement my opinion should CommScope produce pre-2015 sales data." Dkt. 349 - Ex. 2, at ¶¶ 386-387. If this were the first time that CommScope learned of this theory, one would have expected CommScope to object or move to strike this part of Dr. Putnam's original report. But CommScope did neither.

Also, TQ Delta's technical expert, Dr. Todor Cooklev, Ph.D., served an opening report on August 29, 2022, that included an section, including cites to CommScope documents and witness testimony, regarding how CommScope indirectly infringed the asserted claims, including by providing training, services and support, firmware and software upgrades, which is consistent with what Dr. Putnam referenced in his original report and later in his Supplemental Report. Ex. 9, Cooklev Report at ¶¶ 1257-1258, 1260, 1262-1263, 1265, fn. 1555; Dkt. 349 - Ex. 1, Putnam First Suppl. Report at ¶ 6; Dkt. 349 – Ex. 2, Putnam Report at ¶¶ 386-387. Thus, when Dr. Putnam served his Supplemental Report, CommScope already knew about TQ Delta's inducement theory and should not be surprised that certain accused products sold before 2015 were used in an infringing manner after 2015 and that those products would be included in the damages calculation. Also, after CommScope finally supplemented its response to Interrogatory No. 7 to identify the spreadsheets that had the pre-2015 sales data, it could not have been surprising to CommScope that Dr. Putnam would submit a supplemental report (which he said in his original report that he would do) to calculate the damages linked to those accused products. *See Image Processing Techs. v. Samsung Elecs. Co.*, No. 2:20-cv-00050-JRG-RSP, 2020 U.S. Dist. LEXIS 85982, at *13 (E.D. Tex. May 14, 2020) (denying motion to strike corrected report; "This simple calculation adjusting the number of products that allegedly practiced the Asserted Patents is a minor update that does not lead to *Daubert* exclusion. There is no fundamental change to theory or methodology here.").

Finally, CommScope has failed to mitigate any alleged prejudice. The door has always been open for CommScope to serve a rebuttal to the Supplemental Report. Its refusal to do so speaks volumes about its failure to mitigate any alleged prejudice. This factor weighs in TQ Delta's favor.

**C.      Dr. Putnam's opinions are important.**

Dr. Putnam's calculation of damages based on pre-August 2015 sales data is necessary, relevant, and essential to TQ Delta's inducement of infringement theory. TQ Delta will suffer undue prejudice and lose up to an estimated $22.2 million in damages if the Court denies TQ Delta's motion. As explained in TQ Delta's response to CommScope's Motion for Partial Summary Judgment to Limit Damages Based on 35 U.S.C. § 286, TQ Delta has a legitimate legal basis for its damages theory under its direct and indirect infringement claims, even as to products sold before August 13, 2015, that continued to be used by CommScope's customers after that date. Dkt. 370. TQ Delta's model simply accounts for all of CommScope's infringement during the damages period. *See, e.g., Sysmex Corp. v. Beckman Coulter, Inc*., Civil Action No. 19-1642-JFB-CJB, 2022 U.S. Dist. LEXIS 97623, at *34 n.11 (D. Del. May 26, 2022) (denying summary judgment of no induced infringement because the patentee "seeks damages for acts of inducement that occurred after the damages period began to run," even though the defendant sold the products before that date). Moreover, and as explained in Section B above, this theory is neither novel nor new and was disclosed during discovery. TQ Delta did not hide the ball on a model based on infringing activity within the damages period.  Thus, this factor weighs in favor of TQ Delta.

**D.      A continuance is not necessary.**

CommScope has suffered no prejudice, as explained above. Accordingly, without the necessity of a continuance to cure prejudice, this factor weighs in favor of TQ Delta.

For the preceding reasons, the Court should grant TQ Delta's Motion.

/s/ *William E. Davis III*

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(*Pro hac vice*)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(*Pro hac vice*)
rchiplunkar@mcandrews-ip.com

Ashley Ratycz
(*Pro hac vice*)
aratycz@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**

500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

*Counsel for TQ Delta, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this January 17, 2023, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ William E. Davis III
William E. Davis, III