## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>    *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>    *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED |

### PLAINTIFF TQ DELTA'S SURREPLY IN OPPOSITION TO COMMSCOPE'S MOTION TO EXCLUDE EXPERT TESTIMONY OF JONATHAN PUTNAM, PH.D. THAT IS INCONSISTENT WITH LEGAL PRECEDENT
### [DKT NO. 346]

In their Reply, Defendants again mischaracterize Dr. Putnam's opinions and misstate the law. Moreover, their critiques go, at best, to the weight, not admissibility, of his testimony.

## I. DR. PUTNAM APPORTIONS THE VALUE OF THE INVENTIONS

Defendants again incorrectly assert that Dr. Putnam's "top down" approach failed to value the patented inventions. Dkt. No. 400 at 1. His approach follows the Federal Circuit's guidance that "a royalty award for a SEP must be apportioned to the value of the patented invention . . . not the value of the standard as a whole." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014). Dr. Putnam measured the incremental value of DSL standards over their next best alternative standard, FTTP, to calculate the benefits to those who have used the invention. He then apportioned that top value down to each asserted patent by (i) apportioning the contributions made by all SEP holders from the non-patented elements, (ii) apportioning the SEP holders' share among a household's multiple DSL devices to arrive at a total royalty per unit, and (iii) with the help of TQ Delta's technical expert, mapping a statistically specified sample of patent claims against each DSL standard to estimate the number of inventions (patent families) that are expected to be essential to a DSL standard. He then divided the total per-unit royalty by the number of essential families to determine the royalty rate for one family, per unit, per standard, representing an individual family's contribution to the standard. In sum, an individual invention's portion of the $544 gain created by the standard is $0.33 per DSL unit, which means that 99.94% of the gain is attributable to an input other than the asserted patent. Defendants do not point to any case that says that Dr. Putnam's approach is improper, their own expert acknowledged that a top down approach is appropriate in FRAND cases, and another Court rejected a motion to exclude a similar top down approach by Dr. Putnam. *See* Ex. B at 231:6-232:7; Dkt. No. 383 at 7.

Defendants' other criticisms are meritless. They assert that Dr. Putnam's approach does

not "contemplate[e] what any of the asserted patents actually claim" or "rely on a technical expert" and that he "criticizes the law." Dkt. No. 400 at 1. First, the asserted patents "actually claim" technology required by the DSL standards and implemented in the accused products, as confirmed by TQ Delta's technical experts. Second, Dr. Putnam *did work* with a technical expert to identify other potentially DSL standard essential patents and weigh the value of TQ Delta's SEPs to apportion the value of the claimed inventions. *See* Ex. A, at 186-194; Dkt. No. 383 at 2-3; Dkt. No. 372. Third, Dr. Putnam does apply the pertinent case law. *See* Ex. A at, *e.g.*, 45-82; 142-194.

Defendants argue that "[t]he fact that Dr. Putnam started his analysis with a *cost savings* does not eliminate the requirement to value the patented invention itself" and that in *MiiCS & Partners v. Funai Elec. Co.*, No. 14-804-RGA, 2017 U.S. Dist. LEXIS 201511, at *5-7 (D. Del. Dec. 7, 2017), the asserted patent conferred the cost-savings benefit, but, here, Dr. Putnam determined the cost savings of DSL as a whole. Dkt. No. 400 at 1-2. Dr. Putnam started with determining the cost savings of DSL as a whole because the cost savings of DSL can only be obtained by implementing the standard as a whole. Dr. Putnam then apportioned the cost savings to the patent family based on its contribution to that cost savings.

Defendants also argue that Dr. Putnam erred in arriving at a royalty rate for patent families regardless of the number of patents in the families that are asserted against Defendants. Dkt. No. 400 at 2. Again, case law, SDO policy, industry licensing practices, economic theory, and logic support Dr. Putnam's "per family" approach. *See* Dkt. No. 383 at 6-9. Defendants do not address any of those bases set forth in TQ Delta's opposition brief. Further, Defendants' case law is off point. In *Realtek Semiconductor Corp. v. LSI Corp.*, No. 12-03451, 2014 WL 46997, at *3-4 (N.D. Cal. Jan. 6, 2014), the Court excluded testimony of a rate based on a valuation of the patentee's entire SEP portfolio instead of the patents in suit. Dr. Putnam's royalty, however, is not based on

the value of TQ Delta's entire DSL SEP portfolio; it is based on the contribution of the asserted DSL SEP families only. Defendants contend that in *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885, 2014 U.S. Dist. LEXIS 53234, at *26-30 (N.D. Cal. Apr. 16, 2014), the court found that an expert must adjust a royalty figure based on the value of the asserted patent relative to the other SEPs. Importantly, however, the court found "sufficiently reliable" a methodology that included dividing profits by the number of SEP <u>families</u> to arrive at a "per-<u>patent family</u> profit figure" to obtain a rate, <u>and</u> Dr. Putnam *did* weigh the value of TQ Delta's asserted patent families concerning other SEP families. See Ex. A at 190-92.

## II.     DEFENDANTS ARE STILL WRONG ABOUT THE SSPPU

Defendants again incorrectly assert that Dr. Putnam "rejects" the law by not relying on the SSPPU. Dkt. No. 400 at 3. Defendants' own expert says a royalty analysis need not be based on the SSPPU, and the older cases Defendants cite (*LaserDynamics*, *Ericsson*, and *VirnetX*) do not say application of the SSPPU is mandatory. See Ex. B at 216:2-224:19; Dkt. No. 383 at 9 n.5, 11. The more recent cases TQ Delta cites make it clear that using the SSPPU as a base is not mandatory and explain that the concern of the older cases – the risk that the patentee will be compensated for non-infringing components – can be addressed in other ways. Dkt. No. 383 at 9-11.

Defendants' strained efforts to factually distinguish TQ Delta's cases fail. While *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp.*, 879 F.3d 1332, 1348-49 (Fed. Cir. 2018) involved claims directed to a lawn mower, the Court did not limit its statement that "using the [entire] accused [product] as a royalty base and apportioning through the royalty rate is an acceptable methodology" to cases in which claims cover an entire product and, thus, the case does not require Dr. Putnam to value the SSPPU. Similarly, the court in *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) did not limit its statement that

requiring all damages models to begin with the SSPPU "is untenable" to only situations where apportionment starts from the parties' negotiations.[1] And, while the Court applied French law in *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-cv-00243, 2019 WL 126980, at *5-6 (E.D. Tex. Jan. 7, 2019), its finding that prevailing industry practice was to base FRAND licenses on the end-user device was based on sources outside of French law, <u>and</u> it cited U.S. law in finding that there is no prescribed method for calculating a FRAND license.

Dr. Putnam does not base his theory on the price of the entire end user device, as Defendants assert. Dkt. No. 400 at 4. He bases it on the per-unit cost savings of using DSL over FTTP; any non-DSL features of end user devices do not change the royalty. He begins with the value of DSL, which is the proper approach, not the commoditized component costs of the SSPPU. *See Commonwealth Sci. & Indus. Research Org. v. Cisco Sys.*, 2014 U.S. Dist. LEXIS 107612, at *38 (E.D. Tex. Jul. 23, 2014) ("Basing a royalty solely on chip price is like valuing a copyrighted book based only on the costs of the binding, paper, and ink . . . . While such a calculation captures the cost of the physical product, it provides no indication of its actual value.").

### III. DR. PUTNAM'S USE OF THE NASH BARGAINING THEOREM IS PROPER

Contrary to Defendants' assertions, Dr. Putnam did not use the Nash Bargaining Theory ("NBT") as a rule of thumb or blindly apply it to the parties, as was done in the *VirnetX* case. Instead, he determined, on the facts of the case, that the assumptions underlying NBT were satisfied and, thus, considered it – among several other independent justifications – to arrive at his 50/50 split of cost savings <u>between innovators and implementers</u>. *See* Dkt. No. 383 at 11-12. Such use of NBT comports with the law and does not "suffer from the same flaws" as *VirnetX*.

---

[1] Defendants incorrectly state that Dr. Putnam is "without justification" for not apportioning from an SSPPU component cost base. Dkt. No. 400 at 4. He provides *pages* of reasoning for not doing so. Ex. A at 77-83.

## IV. DR. PUTNAM'S OPINIONS REGARDING THE HYPOTHETICAL NEGOTIATION ARE PROPER

Defendants assert incorrectly that "TQ Delta backtracks on the hypothetical negotiation date in a way that ignores Dr. Putnam's previous testimony and opinions" and that "Dr. Putnam used 2003/2004 as the relevant date in his analysis." Dkt. 400 at 5. TQ Delta set the record straight by pointing to, not ignoring, as Defendants assert, Dr. Putnam's testimony, where he testified that he did not place the hypothetical negotiation in 2004 as CommScope falsely claimed. Dkt. No. 383 at 13, at Ex. D, Putnam Tr. at 115:10-12, 122:22-23 ("I did not say that the hypothetical occurred – negotiation occurs in 2004. So let's just be clear about that."; "Obviously, you aren't bargaining in 2004."). His testimony squarely refutes the Defendants' argument. Defendants did not cite any cases that either prohibit Dr. Putnam's approach in the FRAND context or that excuse the FRAND violation that Defendants advocate and that his approach seeks to prevent.

## V. DR. PUTNAM'S DAMAGES FIGURES ARE CONSISTENT WITH TQ DELTA'S LICENSE AGREEMENT

Defendants fail to refute TQ Delta's arguments concerning the ▉▉▉▉▉▉▉▉▉▉ licenses. And the Defendants fail to address the *Mondis* case, wherein the court approved plaintiff Mondis' use of a damages multiplier to remove uncertainty about patent validity and infringement. *Mondis Tec. Ltd. v LG Elecs., Inc.*, 407 F.Supp.3d 482, 497-500 (D.N.J. 2019) ("[t]he Federal Circuit recognizes such an adjustment to patent value to be proper"; "Discounting the value of a patent to adjust for uncertainty about validity or infringement appears to be uncontroversial in Federal Circuit jurisprudence."). Ultimately, Defendants' arguments concerning TQ Delta's license agreements go to weight, not admissibility.

## VI. CONCLUSION

For the preceding reasons, TQ Delta requests that the Court deny Defendants' Motion.

Dated: January 24, 2023

Respectfully submitted,

By: /s/ *William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**The Davis Firm PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(Pro hac vice)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(Pro hac vice)
rchiplunkar@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000

Facsimile: (312) 775-8100

**ATTORNEYS FOR PLAINTIFF
TQ DELTA, LLC**

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this January 24, 2023, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/ William E. Davis, III*
William E. Davis, III

