# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>    *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>    *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED |

## TQ DELTA, LLC'S
## SUR-REPLY TO COMMSCOPE'S MOTION FOR SUMMARY JUDGMENT OF
## NON-INFRINGEMENT OF THE FAMILY 3 PATENTS (DKT. 336)

Defendant failed to disclose in its Motion (or at the *Markman* hearing) that it lost on this same "minimum" argument in Delaware—at summary judgment, at trial, and on post-trial review. After TQ Delta pointed this out, Defendant's Reply manufactures a "claim construction" dispute, namely whether the claim "can be satisfied by a message that specifies a ***minimum*** amount of memory." Reply at 1 (emphasis in original). But whether the claims "can be satisfied" by an accused product is an infringement issue, not a *Markman* issue. And Defendant's "claim construction" dispute is a repackaging of the "minimum" argument rejected in Delaware.

Defendant lost in Delaware because the max_delay_octect$_{DS,0}$ field specifies a <u>maximum amount of deinterleaver memory</u> in the accused products, as shown in this case through the VDSL2 standard, source code, and testing of Defendant's products. Defendant's Reply ignored all that evidence except to repeat that the VDSL2 standard uses the word "minimum" for a different field. The Delaware Court rejected that argument at summary judgment, and this Court should as well.

Indeed, Defendant <u>still</u> does not address Delaware, save one sentence: "[T]he Delaware court and the jury did not have the benefit of the proper construction of this claim limitation, nor the admissions made by TQ Delta to this Court." Reply at 5. But Defendant's "proper construction" is a holding that its products cannot infringe because the VDSL2 standard uses the word "minimum"—a position rejected in Delaware. And Defendant does not identify any "admission" in this Court that was not made in Delaware. For these patents, both cases involve materially identical products, chips, and source code, and (for TQ Delta) the same technical expert.

Defendant is, in effect, asking this Court to overrule the Delaware Court. It refuses to acknowledge that fact or address the Delaware decisions. When confronted with those decisions, Defendant sprang a "claim construction" dispute in Reply. These tactics belie a weak motion that never should have been filed. TQ Delta respectfully requests that the Court deny the Motion.

I. **The Court Should Reject Defendant's Manufactured "Claim Construction" Dispute**

A. **There Is No Claim-Scope Dispute Between The Parties**

There is no claim-scope dispute. Both sides agree, like they did at the *Markman* hearing, that the claim requires a "maximum." The dispute is about infringement—Defendant (wrongly) claims that the max_delay_octect$_{DS,0}$ field specifies a *minimum* as opposed to a *maximum* based on a statement in the VDSL2 standard. That is an infringement issue, not a claim-scope dispute.

Indeed, when Defendant raised this issue at the *Markman* stage, the Court recognized that the argument "relates to the sufficiency of Plaintiff's proof on infringement rather than any legal question for claim construction." Dkt. 169 at 59. That holding still applies. *In re CSB-System Int'l, Inc.*, 832 F.3d 1335, 1342-43 (Fed. Cir. 2016) (explaining that "[w]ithout a 'fundamental dispute regarding the scope' of this term, construction is not necessary" and noting that the "claim construction" arguments "relate to a comparison of the . . . claims to the prior art—which is part of the anticipation analysis, . . . not claim construction") (quotation omitted).

B. **Collateral Estoppel And Waiver Preclude Further Claim Construction**

Collateral estoppel and waiver also preclude any further construction. Defendant's argument, like at the *Markman* hearing, is based on the VDSL2 standard that has been cited in TQ Delta's infringement contentions since the Delaware case (filed in 2013). Defendant did not seek a construction of "maximum" in Delaware and lost at trial in 2019 (resulting in estoppel here).

TQ Delta then asserted infringement in this case and again cited the VDSL2 standard in its infringement contentions. Defendant and its co-defendant Nokia did not raise a *bona fide* claim-scope dispute for the "maximum" term here—they raised a factual noninfringement issue based on one statement in the VDSL2 standard. While the Court "fully expect[ed] the parties to raise *no later than at the summary judgment stage* any underlying claim construction issue regarding this term that arises because of the particular infringement issues presented in this case," *id.* (emphasis

2

in original), Defendant does not raise a new argument. It makes the same VDSL2-standard-based argument. And Defendant did not even raise the argument in its summary-judgment Motion. It switched to a "claim construction" argument in Reply—only after TQ Delta informed the Court that Defendant was relitigating the same issue that it lost three times in Delaware. The Court would be within its discretion to find the argument waived. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014) ("Failure to raise an argument in a motion waives the argument; raising it for the first time in a reply memorandum is too late.").

### C. Defendant's "Upper Bound" Argument Should Be Rejected On The Merits

Defendant does not explain why the Court should replace "maximum"—an ordinary word—with the term "upper bound." Defendant does not assert that "maximum" is outside the grasp of lay jurors. Nor does it point to any portion of an expert report that expressly construed the term "maximum" or created a claim-scope dispute between the experts.

Indeed, Defendant does not claim that "maximum" has a special meaning in the patents or that TQ Delta surrendered claim scope. *See, e.g.*, *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (explaining the only two exceptions to the general rule of plain meaning). And it does not cite any evidence from the patents, file history, or anywhere else that uses the term "upper bound"—all the citations use the word "maximum," which is in the claim already. Defendant also fails to identify any evidence that TQ Delta surrendered its infringement theory as a matter of claim construction. Without supporting evidence, Defendant's construction fails. *See, e.g.*, *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) (rejecting argument that claims excluded "cutting" where "[n]othing in the claim language indicates that the claims exclude 'cutting' as a matter of law" and absent from the specification was "a manifest exclusion of all 'cutting' from the scope of the claims").

Defendant also does not explain how replacing "maximum" with "upper bound" changes

the scope of the claims. Defendant argues that its "upper bound" construction requires noninfringement because it <u>theoretically</u> could have allocated more deinterleaver memory than the max_delay_octect$_{DS,0}$ field specifies if its products <u>worked differently</u>.[1] That is, according to Defendant, the field does not specify an "upper bound" for <u>all theoretical systems</u>.

Defendant provides no support for this theoretical argument. The claims are system claims drawn to how the system is <u>actually</u> configured to operate; it is irrelevant how <u>other</u> (unidentified) systems <u>might</u> work. And Defendant's argument is not a claim-scope argument; it is a repackaging of the same "minimum" noninfringement argument rejected in Delaware. There, Defendant "argue[d] that it is at least theoretically possible that more memory is available to be allocated and that the VDSL2 standard says it is the *minimum* necessary amount"—and the Court rejected the argument because the focus is on how Defendant's products <u>actually</u> work: "[t]he infringement inquiry is whether, in practice and within the meaning of the claims, a message specifying the maximum number of available bytes is sent." Dkt. 350-12 at 13 (emphasis in original).

The same outcome applies here. In Defendant's actual products—which Defendant does not address—the max_delay_octect$_{DS,0}$ field specifies a maximum amount of deinterleaver memory (*e.g.*, it is undisputed in this Motion that , as Dr. Cooklev opines). That is the "upper bound."

**II.     Should The Court Construe The Claims, Summary Judgment Is Improper**

Should the Court engage in additional claim construction, TQ Delta requests that the Court provide TQ Delta with leave to supplement its expert report. Typically, a change in construction

---

[1] Defendant also argues for the first time in Reply that delay is not memory. Reply at 3, 5. That argument is waived. It was also rejected in Delaware because max_delay_octect$_{DS,0}$ specifies an amount of memory. Dkt. 350-10 at 8–9 (rejecting "delay" argument because "substantial evidence supports a finding that max_delay_octet in the VDSL2 standard specifies an amount of memory").

4

requires additional proceedings to address the factual issues raised by the new construction. *See, e.g., 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1370 (Fed. Cir. 2003) (explaining that when a new construction is entered on appeal, the typical course is to allow for the district court to reconsider "whether a genuine issue of material fact exists and whether either party is entitled to summary judgment" under "the new claim construction"); *Beckson Marine v. Nfm, Inc.*, 292 F.3d 718, 724 (Fed. Cir. 2002) (explaining that a change of construction on appeal generally requires further proceedings to "resolve the new factual issues raised by the new claim construction"). That is appropriate here, especially since Defendant raised the argument in Reply.

Under Defendant's "upper bound" construction, the evidence reveals a triable issue. The Reply does not address the documentary, source code, and testing evidence showing that max_delay_octect$_{DS,0}$ specifies a maximum amount of deinterleaver memory in the Accused Products. That same evidence shows that the field is an "upper bound"—there is no evidence that the products allocate <u>more</u> deinterleaver memory than what is specified in the field. Rather than address the evidence, Defendant repeats its claim that Dr. Cooklev "admits" that the max_delay_octect$_{DS,0}$ field does not specify a maximum. Reply at 3. This assertion is untrue, as TQ Delta explained in its opposition. *See, e.g.*, Opp. at 8–14 (recounting Dr. Cooklev's Report). Indeed—after nearly a decade of litigation and an infringement judgment—Defendant <u>still</u> does not point to a single instance in which a product uses more deinterleaver memory than is specified in the max_delay_octect$_{DS,0}$ field. It provides no evidence that the field specifies the minimum amount of memory in its products. And the evidence, which Defendant largely ignores, shows that the field specifies a maximum amount of deinterleaver memory, even if that term "maximum" is construed as an "upper bound." Summary judgment is thus improper.

### III. Conclusion

For the foregoing reasons, TQ Delta requests that the Court deny Defendant's Motion.

Dated: January 24, 2023

          Respectfully Submitted,

          /s/ Christian J. Hurt

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(Pro hac vice)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(Pro hac vice)
rchiplunkar@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

**ATTORNEYS FOR PLAINTIFF
TQ DELTA, LLC**

6

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this January 24, 2023 on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

/s/ Christian J. Hurt
Christian J. Hurt