THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>    *Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>    *Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED |

# TQ DELTA, LLC'S
# SUR-REPLY TO COMMSCOPE'S MOTION FOR PARTIAL SUMMARY
# JUDGMENT TO LIMIT DAMAGES BASED ON 35 U.S.C. § 286 (DKT. 340)

Defendant's Reply attacks a theory that TQ Delta is not advancing. The Reply claims that TQ Delta alleges that <u>sales</u> prior to the damages period are the underlying act of direct infringement. That allegation is wrong. As laid out in TQ Delta's response, TQ Delta alleges that the <u>use</u> of these products by Defendant's customers <u>during the damages period</u> is an independent act of direct infringement. And Defendant's inducement of and contribution to that use—again, acts that occurred <u>during the damages</u> period—is an independent basis for liability. There is sufficient evidence to reach a jury on each step, evidence the Reply largely does not address.

The Reply (like the Motion) sets up this strawman to argue that this case is like *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109 (Fed. Cir. 2022). But this case is not *Roche*, as TQ Delta detailed in its response. TQ Delta is not alleging a "continuing impact" theory based on the <u>sale</u> of products prior to the damages period. Nor is it alleging inducement based on acts that occurred <u>prior to</u> the damages period.

TQ Delta is instead pointing to acts that occurred <u>within the damages period</u> as the basis of its claims, as in *Sysmex*. There, as Defendant quotes, the Court looked to "(1) did [defendant]'s customers . . . directly infringe . . . and (2) if so, did [defendant] knowingly induce those customers to take infringing actions . . . in that same relevant time period." Reply at 4 (quoting *Sysmex Corp. v. Beckman Coulter, Inc.*, 2022 WL 1786526, at *12 (D. Del. May 26, 2022) (Defendant's emphasis removed)). TQ Delta has provided sufficient evidence on each prong, just like the patentee in *Sysmex*, for a jury to hear its claims. Defendant's Motion should be denied.

I.  **There Is Sufficient Evidence Of Direct Infringement During The Damages Period**

Defendant no longer claims—like it did in its Motion—that all its products sold prior to the damages period could be sitting on a shelf and not deployed in its customers' networks. The evidence exposed that claim for what it was: Defendant's internal presentations showed that ████████ of Accused Products sold before August 15, 2015 remained in the field in 2016.

1

The Reply does not address that evidence, effectively conceding the point.

That should end the inquiry. As TQ Delta explained—and Defendant ignored—"use" of system claims requires putting the system as whole into service, with a focus on each element of the claimed system. Resp. at 6–7 (quoting *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)). The claims here—which Defendant also does not address—recite systems that are "capable of," "configurable to," or "operable to" to provide certain functionality. *Id.* at 7. It is undisputed in the Reply that Defendant's customers have "used" such systems during the damages period, including systems deployed in the field that were sold before August 13, 2015. There is sufficient evidence of direct infringement.

Defendant does not address this theory. It instead attacks a theory that TQ Delta does not raise—arguing that TQ Delta claims that "*pre-2015* sales of products that are (allegedly) *capable* of infringement" is the act of direct infringement. Reply at 2 (emphasis in original). TQ Delta is not raising that theory; instead, it points to Defendant's customers' use of such apparatuses during the damages period. And it is undisputed in the Reply that such use has occurred.

Despite this, Defendant claims that TQ Delta must show "actual use of the accused DSL functionality" and that there is no evidence of such use. Reply at 2. That is wrong under the law. Defendant again rebrands apparatus claims as method claims requiring the performance of each method step. This is contrary to even the new cases cited in Defendant's Reply. *See, e.g.*, *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311-12 (Fed. Cir. 2005) ("To infringe an apparatus claim, the device must meet all of the structural limitations.") (emphasis added) (collecting authority) (cited at Reply at 2). All that is required for "use" is that the system with the structural limitations (*e.g.*, a transceiver configured to perform certain operations) is put into service, regardless of whether the system actually provides DSL service.

Defendant is also wrong as a matter of fact.  As TQ Delta recounted, there is substantial evidence that the products—designed to ▇▇▇▇ DSL requirements—have, in fact, been used to provide DSL service.  *See, e.g.*, Resp. at 8–12.  Again, while Defendant speculates that some of its products <u>might</u> be deployed without using DSL, it does not provide specific evidence of that occurring for the products at-issue.  And the evidence TQ Delta submitted shows the opposite, that it is more likely than not that the products were deployed for DSL service (that is their intended use).  Defendant's claim that <u>none</u> of its DSL products that remained in the field during the damages period have been used for DSL does not stand up to common sense or the evidence.

## II.     There Is Sufficient Evidence Of Indirect Infringement During The Damages Period

Defendant's Reply also does not address TQ Delta's evidence of indirect infringement.  The Reply first narrows the inducement inquiry via the direct infringement inquiry: incorrectly requiring inducement of "using DSL functionality" and a corresponding intent to induce that "use." Reply at 3.  The act of direct infringement is using the CPE device that is capable of, configurable to, or operable to provide DSL functionality.  Defendant does not dispute that its interacting with customers and providing repair and software update services during the damages period is an act inducing the use and contributing to the use of Defendant's CPE devices—including those sold before August 15, 2015.  That use is a new act of direct infringement.

But even under Defendant's narrower (and incorrect) focus—requiring inducement of using DSL functionality and a corresponding intent—TQ Delta still provided sufficient evidence on those prongs.  TQ Delta pointed to specific DSL functionalities for which Defendant received ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ during the damages period (in late 2015 and early 2016) that caused a resulting use of that functionality once the product was ▇▇▇▇▇▇▇▇. *See, e.g.*, Resp. at 15 (collecting example evidence).  Providing those ▇▇▇▇▇▇ shows an intent that Defendant's customers use the ▇▇▇▇▇▇▇▇ functionality.  Defendant

3

does not address that theory or the evidence in its Reply.

Instead, Defendant again responds to an argument that TQ Delta does not make. Defendant claims that TQ Delta argues that "inducing actions may occur *after* the direct infringement." Reply at 4. But, again, that is not TQ Delta's theory. TQ Delta's theory is that the acts of inducement and contributory infringement (*e.g.*, ███████████████) later caused an infringing use, as was the case in *Sysmex*. For example, as detailed above, TQ Delta pointed to ████████████████████████████ late 2015 and early 2016. Resp. at 15. These acts caused the devices receiving those ████████████ updates—including those sold before August, 2015—to then perform the accused DSL functionality. This use is a new act of direct infringement resulting from the act of indirect infringement.

Recognizing that the ████████████████ evidence meets *Sysmex*, Defendant closes its Reply with a new argument: that the evidence "say[s] nothing about CommScope's subjective intent to knowingly induce infringement" under *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011). Reply at 4–5. But Defendant failed to challenge to the "knowledge" element of inducement in its Motion and thus waived the issue. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014) ("Failure to raise an argument in a motion waives the argument; raising it for the first time in a reply memorandum is too late.").

Should the Court consider Defendant's new argument, there is substantial evidence that Defendant knew its acts caused infringement. Defendant knew about TQ Delta's patents and its infringement by the beginning of the damages period, August 13, 2015.

TQ Delta filed suit against Defendant in 2013, alleging infringement of a number of patents that are also at-issue here (*e.g.*, patents in Families 2, 3, and 6). *See, e.g.*, Amended Complaint (Dkt. 6), *TQ Delta, LLC v. 2Wire Inc.*, No. 1:13-CV-01835 (D. Del. Nov. 20, 2013); Opening Brief

in Support of Motion for Leave to File a Third Amended Complaint (Dkt. 49), *TQ Delta, LLC v. 2Wire Inc.*, No. 1:13-CV-01835 (D. Del. June 24, 2014) (detailing inducement and contributory infringement allegations). By 2015, Defendant received TQ Delta's infringement contentions and served noninfringement contentions. Notice of Service (Dkt. 88), *TQ Delta, LLC v. 2Wire Inc.*, No. 1:13-CV-01835 (D. Del. Mar. 23, 2015). TQ Delta has also been in ongoing discussions with Defendant since ███████████████████████████████████████████████████████████████████████████████████████████. *See, e.g.*, Exh. 11 (TQD_TXCS-00002961). By 2019, Defendants had two adverse jury verdicts in Delaware. These facts are sufficient to support TQ Delta's indirect infringement claims under *Global-Tech*. *See, e.g.*, *Walker Dig., LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del. 2012) ("""[A] defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint satisfies the requirements of *Global-Tech*."); *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 937 (E.D. Tex. 2016) (agreeing with courts holding that "a complaint provides sufficient notice of the existence of the patent-in-suit to support a claim of indirect infringement as to conduct following the filing of the initial complaint in the case"); *Monkeymedia, Inc. v. Twentieth Century Fox Home Entm't, LLC*, 226 F. Supp. 3d 693, 708 (W.D. Tex. 2016) ("Defendants have been litigating the '158 Patent for years and were involved in the very re-examination that gave rise to the asserted claims. The Court is therefore unconvinced by Defendants' argument that they could not anticipate—let alone possess actual knowledge—that the users would perform the claimed methods and infringe . . . .").

**III.   Conclusion**

    For the foregoing reasons, TQ Delta requests that the Court deny Defendant's Motion.

Dated: January 24, 2023

Respectfully Submitted,

/s/ Christian J. Hurt

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(Pro hac vice)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(Pro hac vice)
rchiplunkar@mcandrews-ip.com

Ashley Ratycz (admitted *pro hac vice*)
aratycz@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

ATTORNEYS FOR PLAINTIFF<br>
TQ DELTA, LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this January 24, 2023 on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

/s/ Christian J. Hurt<br>
Christian J. Hurt

7