IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>      *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>      *Defendants*. | Civil Action No.: 2:21-cv-00310-JRG |

**COMMSCOPE'S SUR-REPLY TO TQ DELTA'S MOTION
FOR LEAVE TO SERVE THE FIRST SUPPLEMENTAL
<u>EXPERT REPORT OF JONATHAN D. PUTNAM (DKT. NO. 349)</u>**

██████████████████████████████

**TABLE OF CONTENTS**

                                                                                                                 **Page**

I.     INTRODUCTION ............................................................................................................. 1

II.    ARGUMENT ................................................................................................................... 1

        A.     TQ Delta Has No Reasonable Explanation for Its Untimely Disclosure ............... 1

        B.     TQ Delta Never Disclosed a Pre-2015 Damages Theory in Its Pleadings or During Discovery ................................................................................................. 3

        C.     Allowing the Supplement Would Severely Prejudice CommScope in a Manner That Cannot Be Cured by a Continuance ................................................ 5

III.   CONCLUSION ................................................................................................................ 5

██████████████████████████████

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*CEATS, Inc. v. Ticketnetwork, Inc.*,
   No. 2:15- ..................................................................................................................3

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
   No. 2:16-CV-00134-JRG, 2017 WL 2869365 (E.D. Tex. May 18, 2017) ...............................5

*Grant v. CRST Expedited, Inc.*,
   No. 1:18-CV-433, 2021 WL 1151560 (E.D. Tex. Jan. 28, 2021) ............................................2

*Kumar v. Frisco Indep. Sch. Dist.*,
   476 F. Supp. 3d 439 (E.D. Tex. 2020).....................................................................................2

**STATUTES**

35 U.S.C. § 286............................................................................................................3, 4, 5

## TABLE OF EXHIBITS

| Exhibit No.[1] | Description |
|---|---|
| Ex. A | Email correspondence dated December 9, 2022 |
| Ex. B | Copies of spreadsheets bearing Bates numbers COMMSCOPE16810, COMMSCOPE16813, COMMSCOPE16814, and COMMSCOPE16816 |
| Ex. C | Email correspondence dated April 22, 2022 |
| Ex. D | Transcript from the August 11, 2022 deposition of Daniel Hagarty |
| Ex. E | Excerpts from Plaintiff TQ Delta's Second Supplemental Objections and Responses to CommScope's First Set of Interrogatories (Nos. 1-35) |
| Ex. F | Cover pleading for cover Plaintiff's Disclosure of Asserted Claims and Infringement Contentions |

---

[1] This exhibit list is inclusive of all exhibits cited by CommScope in its Response and this Sur-Reply brief.

**I.     INTRODUCTION**

In its Reply, TQ Delta does not address the underlying points raised in CommScope's Response or otherwise provide good cause for its untimely expert disclosure. TQ Delta does not adequately or credibly explain its failure to timely disclose Dr. Putnam's opinions based on documents that Dr. Putnam and TQ Delta admittedly had in their possession months earlier. TQ Delta also completely ignores its delay in filing its Motion (after criticizing CommScope for not having filed a motion to strike a report that TQ Delta admittedly had not even formally served). And TQ Delta's claim that it had disclosed (when it had not) a damages theory covering pre-2015 sales is nothing more than superficial hand-waiving that highlights the true, after-the-fact nature of TQ Delta's motion for leave. TQ Delta's Motion should be denied.

**II.    ARGUMENT**

    **A.     TQ Delta Has No Reasonable Explanation for Its Untimely Disclosure**

TQ Delta does not dispute that it and Dr. Putnam had all of CommScope's pre-2015 sales data more than ***four months before*** the deadline for opening expert reports. *See* Dkt. No. 371 ("Resp.") at 1, 3. And tellingly, TQ Delta's Reply completely ignores the portions of CommScope's Response addressing Dr. Putnam's testimony and his explanation as to why he did not opine on the pre-2015 sales data in his opening report. According to Dr. Putnam himself, despite possessing the underlying sales data, he was supposedly unable to understand or interpret the spreadsheets until he received the purported explanation provided by CommScope's November supplemental interrogatory response. Dkt. No. 349-5 (Putnam Dep.) at 187:18–24 ("[M]y understanding is that the rog responses rendered interpretable what was previously uninterpretable in the way of financial spreadsheets that had been produced . . . ."); *see also id.* at 187:12–188:3, 189:13–192:9. As set forth in CommScope's Response (and unrebutted by TQ Delta), this explanation lacks all credibility.

1

Faced with this, TQ Delta abandons its prior argument that it could not interpret the data and now argues just that it "was reasonable for Dr. Putnam and TQ Delta to have doubts" about the information until CommScope *listed* the documents in a supplemental interrogatory response (a response that merely identified but did not explain the documents (spreadsheets) that Dr. Putnam already had). Dkt. No. 410 ("Reply") at 2. This argument is similarly uncompelling.

To start, nothing prevented TQ Delta from asking CommScope's 30(b)(6) deponent about the spreadsheets, which TQ Delta should have done but did not. As this Court has explained, "a party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." *Grant v. CRST Expedited, Inc.*, No. 1:18-CV-433, 2021 WL 1151560, at *5 (E.D. Tex. Jan. 28, 2021). Nothing prevented Dr. Putnam from explaining his damages theory and including estimated calculations in his opening report based on his best understanding of the data he possessed (which was what he did in the Nokia case). He simply did not do it here. *See Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 469 (E.D. Tex. 2020); Resp. at 7–8, 11. And nothing prevented Dr. Putnam from relying on information outside of CommScope's interrogatory responses, such as the four spreadsheets of pre-2015 sales data that he had in his possession. Indeed, Dr. Putnam admitted that he did just that when preparing his opening report. Dkt. No. 349-5 at 238:8–12.

TQ Delta's reference to the "not final" header in one of the four spreadsheets is superficial and unavailing. TQ Delta never questioned a single CommScope witness about that spreadsheet or this specific language, and there is no indication that the header meant that the data contained in the spreadsheet was incorrect or unreliable. Moreover, only one of the four spreadsheets

2

contained this header.[2] And even a casual review shows that the other three spreadsheets contained sales figures similar to those contained in the spreadsheet with the header. *See, e.g.*, Ex. B at 7 (COMMSCOPE016810 stating, for example, that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬); *id.* at 13 (COMMSCOPE016813 stating same); *id.* at 17 (COMMSCOPE016814 stating same); *id.* at 36 (COMMSCOPE016816 stating same). The combination of these spreadsheets provided Dr. Putnam data that he could have relied on to perform his analysis and provide a timely disclosure. Certainly, this data was enough to provide at least a complete disclosure of the theory along with estimated calculations. But Dr. Putnam and TQ Delta chose not to do either. They must now live with the consequences of that decision.

In sum, TQ Delta's proffered explanations for its untimely disclosure are not reasonable and do not demonstrate good cause. *See, e.g.*, *CEATS, Inc. v. Ticketnetwork, Inc.*, No. 2:15-CV-01470, 2018 WL 453732, at *4 (E.D. Tex. Jan. 17, 2018) ("Most significantly, however, [plaintiff] has no good explanation for its delay in proffering this new information, which was available well before the deadline for its initial expert reports.").

### B. TQ Delta Never Disclosed a Pre-2015 Damages Theory in Its Pleadings or During Discovery

As set forth in CommScope's Response, Dr. Putnam's new opinions on pre-2015 sales are not important because they are based on a theory of recovery that (i) TQ Delta never disclosed during discovery (and thus should be stricken anyways) and (ii) is unavailable as a matter of law because it violates 35 U.S.C. § 286. The latter point is addressed in connection with CommScope's Motion for Partial Summary Judgment, Dkt. No. 340, and need not be discussed here.

As to the first point, TQ Delta attempts to cobble together an explanation that it had actually

---

[2] COMMSCOPE016814 contained this language, but COMMSCOPE016810, COMMSCOPE016813, and COMMSCOPE016816 did not.

3

timely disclosed a damages theory covering pre-2015 sales, but that explanation is tenuous at best. As explained in detail in CommScope's Response, TQ Delta's complaint, infringement contentions, and interrogatory responses never articulated a theory of damages for products sold more than six years prior to suit. In its Reply, TQ Delta selectively cites its complaint and Dr. Cooklev's report (*see, e.g.*, Reply at 3–4), but none of those articulate TQ Delta's damages theory for pre-2015 sales. TQ Delta points to nothing more than unremarkable facts, such as product lifespan or software updates, that in no way disclose its belated theory of induced infringement based on sales made more than six years prior to the filing of the complaint. Nowhere does TQ Delta explain that these facts pertain to a damages theory that reaches back to sales that occurred before the damages period prescribed by § 286.[3] Not only did TQ Delta not disclose its theory, but it also actively tried to hide it—concealing the primary reason that pre-2015 financial data was relevant as part of its motion to compel. *See* Dkt. No. 234 at 3.

TQ Delta cannot explain—and does not even try to explain—its failure to disclose this theory in its infringement contentions or its responses to interrogatories (including those specifically directed to damages and inducement). *See* Resp. at 12 (citing Ex. E at 28–37, 48–53, 57–62 (Second Supp. Responses to Interrogatory Nos. 7 (damages), 13 (willful infringement), and 15 (indirect infringement)); *see also* Ex. F (Inf. Contentions)). Nor does TQ Delta address its failure to explain this theory when moving to compel pre-2015 sales information. To the contrary, as explained in CommScope's Response, TQ Delta did the exact opposite by expressly

---

[3] TQ Delta contends that these selective paragraphs from the complaint and from six paragraphs and a footnote in Dr. Cooklev's 800-page report (*see* Dkt. 410-9 at 15) gave CommScope fair notice of a pre-2015 inducement and damages theory. But that contention stands in stark contrast to TQ Delta's position that it "could not interpret" the pre-2015 sales spreadsheets, produced natively, which clearly and obviously list sales of Customer Premises Equipment for 2010–2015, broken down by product, financial quarter, and year. If anyone was "deliberately burying its head in the sand" (Reply at 3), it was TQ Delta and Dr. Putnam.

representing to this Court (in connection with the motion to compel) that "§ 286 limits 'recovery' not discovery." *See* Resp. at 13 (citing Dkt. No. 234 at 3). TQ Delta's intentional obfuscation should not serve as a basis for leave to offer untimely, undisclosed opinions now.[4]

### C. Allowing the Supplement Would Severely Prejudice CommScope in a Manner That Cannot Be Cured by a Continuance

Allowing Dr. Putnam to offer his untimely opinions would severely prejudice CommScope. As CommScope explained in its Response, TQ Delta's failure to disclose this theory during fact discovery deprived CommScope of the opportunity to develop facts that would further rebut TQ Delta's belated damages theory, such as information regarding the extent to which the pertinent accused products were used in an allegedly infringing manner (or at all), the nature of the software updates, the extent to which the updates were downloaded and installed, and whether the updates changed any customer's behavior. *See* Resp. at 13–14. This prejudice cannot be cured by a continuance.

### III. CONCLUSION

In sum, each of the factors weighs against the good cause that TQ Delta is obligated to show in order to be afforded leave to submit Dr. Putnam's untimely opinions. TQ Delta's motion for leave should be denied.

Dated this 25th day of January, 2023          Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.

---

[4] Had TQ Delta timely disclosed Dr. Putnam's opinions, CommScope would have moved to strike on these grounds. *See Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-00134-JRG, 2017 WL 2869365, at *2 (E.D. Tex. May 18, 2017) (striking expert opinions that were not disclosed in an interrogatory response prior to the close of fact discovery). Instead, TQ Delta delayed filing this motion for leave until the deadline for motions to strike and motions for summary judgment.

5

7270 Crosswater Avenue, Ste. B
Tyler, TX 75703
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Lana Shiferman
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
P: (617) 570-1000
F: (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P: (415) 733-6000
F: (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000

6

Email: *ross.barton@alston.com*
*scott.stevens@alston.com*
*kirk.bradley@alston.com*
*stephen.lareau@alston.com*
*karlee.wroblewski@alston.com*
*nic.marais@alston.com*
*erin.beaton@alston.com*
*mary.riolo@alston.com*
Telephone: 704-444-1000
Facsimile: 704-444-1111

Katherine G. Rubschlager (Cal. Bar No. 328100)
ALSTON & BIRD LLP
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
Email: katherine.rubschlager @alston.com
Telephone: 650-838-2004
Facsimile: 650-838-2001

***Counsel for Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC***

7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel on January 25, 2023.

/s/ *Eric H. Findlay*
Eric H. Findlay



8