# EXHIBIT L

# Guide on Intellectual Property Rights (IPRs)

# Version adopted by Board #133
# (10 June 2021)

### Background

The ETSI IPR Policy was adopted by the 21st General Assembly on 23 November 1994 and incorporated in the ETSI Directives as Annex 6 to the ETSI Rules of Procedure.

At a later stage a Technical Body Chair's Guide on IPRs had been written to help Chairs and others involved in ETSI's standardization activities to understand and implement the Institute's IPR Policy. That Chair's Guide on IPR had not been endorsed by the General Assembly or the Board and therefore did not have the same official status as the ETSI Statutes, the Rules of Procedure or the Technical Working procedures. The Technical Body Chair's Guide on IPRs is now replaced by the present ETSI Guide on IPRs.

In 2002 the ETSI General Assembly #40 identified the need to review the ETSI IPR Policy with a view to addressing and rectifying any uncertainties on the operation of this Policy and on any legal rules and obligations on the membership in order to avoid an incorrect implementation of the ETSI IPR Policy and in order to avoid anti-competitive actions. An ad-hoc IPR group, with a clear mandate to review the implementation of the IPR Policy but not to change the Policy itself, was consequently created and 30 recommendations on the operation of the ETSI IPR Policy where approved by the ETSI General Assembly #42. The present ETSI Guide on IPRs embodies most of these recommendations.

A revised version of the Clause 4.1 of the ETSI IPR Policy was adopted by the 46th General Assembly in November 2005. This revision was induced by the EC DG COMPETITION in its concern to generate a general awareness of the risk of "patent ambush" situation in the standard making process. The EC DG COMPETITION rationale behind the changes is given in section 4.5 of the present Guide.

For the avoidance of any doubt, the changes to the ETSI IPR Policy with respect to software copyright introduced and approved by General Assembly #58 are not intended, and shall not be interpreted, as a shift in the ETSI IPR regime towards a preference for royalty-free licensing. The basic principle of the ETSI IPR regime remains FRAND with no specific preference for any licensing model.

### Foreword

Intellectual property plays an important role in standardization, especially in the telecommunications and electronic communications sector. In that context, the likelihood of having Intellectual Property Rights (IPRs) incorporated into ETSI Deliverables became critical after a few years of existence of ETSI. This tension (proprietary nature of IPRs versus wide dissemination of standards) was minimized with the adoption by the ETSI membership of the ETSI IPR Policy as found in Annex 6 to the ETSI Rules of Procedure.

In the preparation of standards, IPR issues may arise. It is important for all parties involved in the ETSI standards-making process to be aware of their responsibilities and that there is good co-operation between all parties.

This guide is intended to help ETSI members and any other party involved in ETSI's standardization activities (e.g. members, Technical Body Chairs, Secretariat, etc.) to understand and implement the Institute's IPR Policy.

This guide provides explanatory information on how to handle IPR matters in ETSI and does not replace the ETSI IPR Policy which takes precedence in all cases.

This guide has been endorsed by the Board but does not have the same official status as the Statutes, the Rules of Procedure or the Technical Working Procedures.

Should you (the reader) have any difficulty with provisions of this guide or with any practical aspects of the Policy which are not answered by this guide, please do not hesitate to contact the ETSI Secretariat (hereafter called simply "Secretariat").

| | Obligations | Rights |
|---|---|---|
| **Third Parties** | - the ETSI IPR Policy is only binding on ETSI members. Third parties do not have any legal OBLIGATIONS under the Policy;<br>- when ETSI is informed that an IPR belonging to a non-member could be essential for a standard, the non-member owner is also requested to undertake to grant licenses on fair, reasonable and non-discriminatory terms and conditions (Clause 6.1). | - third parties have certain RIGHTS under the ETSI IPR Policy either as owners of Essential IPRs or as users of ETSI standards or documentation:<br>  o to refuse the inclusion of their own Essential IPRs in ETSI Deliverables (Clause 8.1 and 8.2);<br>  o to be granted licenses on fair, reasonable and non-discriminatory terms and conditions in respect of a standard at least to manufacture, sell, lease, repair, use and operate, (Clause 6.1);<br>  o to be granted licenses for ETSI owned IPRs (other than copyright in the standard documentation) (Clause 9.3) on fair, reasonable and non-discriminatory terms and conditions;<br>  o to have confidential information within a Technical Body respected until publication of the relevant Deliverable (Clause 10). |

### 1.5   "Essential" IPRs

Clause 15.6 of the ETSI IPR Policy gives the following definition of essentiality:

> "15.6   ==ESSENTIAL as applied to IPR means that it is not possible on technical (but not commercial) grounds==, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL".

In simpler terms, an "essential IPR" is an IPR which has been included within a standard and where it would be impossible to implement the standard without making use of this IPR. The only way to avoid the violation of this IPR in respect of the implementation of the standard is therefore to request a license from the owner.

### 2   Importance of timely disclosure of Essential IPRs

The main problems for ETSI as a standards body which may arise from "late disclosures" include:

- licenses for Patents which have been disclosed late and are not available at all; or,

- licenses for Patents which have been disclosed late and which are available, but not on Fair, Reasonable and Non-Discriminatory (FRAND) terms, i.e. the company is unwilling to make a "FRAND" undertaking/licensing declaration.