# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **TQ DELTA, LLC,** <br>       *Plaintiff*, <br>   v. <br><br> **COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC** <br>       *Defendants*. | CIV. A. NO. 2:21-CV-310-JRG |

# DEFENDANT COMMSCOPE'S MOTIONS *IN LIMINE*

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

I.   COMMSCOPE'S MIL 1: USE OF THE TERMS "HOLDOUT," "HOLDUP," AND "UNWILLING LICENSEE" ............................................................................... 1

II.  COMMSCOPE'S MIL 2: PRIVILEGED TESTIMONY FROM MARCOS TZANNES ...................................................................................................................... 2

III. COMMSCOPE'S MIL 3: TESTIMONY CONTRARY TO TQ DELTA'S 30(b)(6) TESTIMONY ................................................................................................................... 5

IV.  COMMSCOPE'S MIL 4: OFFERS BY COMMSCOPE DURING SETTLEMENT NEGOTIATIONS ............................................................................................................ 6

V.   COMMSCOPE'S MIL 5: COMMSCOPE'S CONTRIBUTIONS TO STANDARD-SETTING ORGANIZATIONS ..................................................................... 7

VI.  CONCLUSION ................................................................................................................ 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ericsson, Inc. v. Apple, Inc.*,
    No. 2:21-cv-00376-JRG, Dkt. 291 (E.D. Tex. Nov. 29, 2022) .................................................1

*Lead GHR Enters. v. Am. States Ins. Co.*,
    No. 3:17-mc-91-M-BN, 2017 U.S. Dist. LEXIS 205550 (N.D. Tex. 2017) .............................6

*St. Lawrence Commc'ns LLC v. QTE Corp.*,
    No. 2:15-CV-349-JRG, 2017 U.S. Dist. LEXIS 228923 (E.D. Tex. Mar. 2, 2017) ..............6, 7

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
    No. 2:17-cv-00456-JRG, 2018 U.S. Dist. LEXIS 218056 (E.D. Tex. Nov. 14,
    2018) .....................................................................................................................................5, 6

**Other Authorities**

FED. R. EVID. 401, 402 ................................................................................................................7, 8

FED. R. EVID. 403 .........................................................................................................................7, 8

FED. R. EVID. 408 ............................................................................................................................6

FED. R. EVID. 408(a) .......................................................................................................................6

██████████████████████████

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| Ex. A | *Ericsson, Inc. v. Apple, Inc.*, No. 2:21-cv-00376-JRG, Dkt. 291, at 9 (E.D. Tex. Nov. 29, 2022) |
| Ex. B | Excerpts from the Expert Report of Dr. Jonathan D. Putnam dated August 29, 2022 |
| Ex. C | Excerpts from the August 4, 2022 deposition transcript of Abha S. Divine |
| Ex. D | Excerpts from the July 13, 2022 deposition transcript of Marcos Tzannes |
| Ex. E | June 15, 2022 Email from Bo Davis |
| Ex. F | July 12, 2022 Email from Rudy Fink |
| Ex. G | July 28, 2022 Email from Bo Davis |
| Ex. H | January 15, 2020 Family 2 Trial Transcript |
| Ex. I | May 23, 2019 Family 3 Trial Transcript |

## INTRODUCTION

Defendant CommScope moves for an order from the Court precluding Plaintiff TQ Delta, and its counsel, witnesses, and technical and damages experts, from mentioning, referring to, or offering any evidence or argument relating to the following matters within the hearing of any member of the jury during *voir dire* or at any time during trial. TQ Delta has indicated that it opposes each of CommScope's proposed MILs.

### I.   COMMSCOPE'S MIL 1: USE OF THE TERMS "HOLDOUT," "HOLDUP," AND "UNWILLING LICENSEE"

The Court should exclude the use of the terms "holdout," "holdup," "unwilling licensee," or any similarly pejorative term that implies a failure to negotiate in good faith. As this Court has previously recognized, use of such pejorative terms in front of the jury should be excluded. Specifically, in *Ericsson, Inc. v. Apple, Inc.*, No. 2:21-cv-00376-JRG, Dkt. 291, at 9 (E.D. Tex. Nov. 29, 2022), this Court *sua sponte* issued a MIL that "[t]he terms 'holdout,' 'holdup,' or 'unwilling licensee' will not be used before the jury by any counsel or witness without prior leave of the Court." Ex. A at 9. CommScope seeks the same MIL here.

TQ Delta's damages expert, Dr. Putnam, intends to tell the jury that "CommScope's conduct meets the definition of holdout and/or an unwilling licensee." Ex. B (Putnam Rpt.) at 18. Indeed, Dr. Putnam repeatedly uses the pejorative terms "holdout" and "unwilling licensee" in reference to CommScope. *Id.* at 201–219. TQ Delta's corporate witness, Abha Divine, likewise intends to tell the jury that CommScope was a "holdout" and an "unwilling licensee." *See, e.g.*, Ex. C (Divine Depo.) at 157:1–20 (stating ); *id*. at 289:25–290:15 (stating that CommScope's actions ).

Such pejorative terms are akin to terms that this Court already precludes in its Standard *Limine* Orders. For example, this Court precludes parties from referring to any other person or entity

1

as "greedy," "corrupt," "evil," or "dishonest." Court MIL No. 9. Here, Dr. Putnam equates "holdout" with "economic opportunism," thus essentially labeling CommScope as inappropriately greedy. Ex. B (Putnam Rpt.) at 18. The negative manner in which TQ Delta uses the terms "holdout" and "unwilling licensee" in reference to CommScope generates the same prejudice that occurs when one party refers to another as "greedy," "corrupt," "evil," or "dishonest." For these reasons, including in particular the reasons that this Court in *Ericsson sua sponte* issued the identical MIL sought here, this Court should grant CommScope's requested MIL.

## II.  COMMSCOPE'S MIL 2: PRIVILEGED TESTIMONY FROM MARCOS TZANNES

The Court should exclude any testimony from TQ Delta's witness Marcos Tzannes regarding the subject matter that he was instructed not to answer or address during his deposition on the basis of the attorney-client privilege. This Court's Standard *Limine* Orders preclude parties from "ask[ing] questions or mak[ing] statements to invoke a privileged or protected answer, including any materials that are privileged, or that have been presented outside of the jury to establish/prevent a finding of privilege." Court MIL No. 22. During his deposition, Mr. Tzannes was instructed not to answer a number of questions on the basis of privilege. Accordingly, Mr. Tzannes should not be allowed to provide substantive answers to those same questions (or colorably similar questions) in front of the jury. Allowing him to do so would prejudice CommScope, since TQ Delta prevented CommScope from hearing Mr. Tzannes's responses during discovery and since any cross examination would potentially implicate this Court's MIL No. 22 given the instructions pressed by TQ Delta at the deposition.

TQ Delta's assertion of the attorney-client privilege or work product immunity covered any analysis Mr. Tzannes had performed regarding essentiality, infringement, validity, and several other categories. Mr. Tzannes should therefore be precluded from presenting any testimony on those categories at trial, specifically including the following categories that he was instructed not to answer

2

or address during his deposition:

- Any facts or analysis related to whether the accused products, or any other products in the industry, infringe TQ Delta's patents. *See, e.g.*, Ex. D (Tzannes Depo.) at 41:1–4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *id.* at 44:4–10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *see also id.* at 39:9–19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

- Any facts or analysis of any DSL related equipment, including any consumer premises equipment such as the accused products in this case. *See, e.g., id.* at 40:21–25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* at 40:12–16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

- Any facts or analysis related to what any of TQ Delta's patents cover or claim. *See, e.g., id.* at 41:11–17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *see also id.* at 109:10–16, 110:14–17, 111:13–17, 113:25–114:4, and 116:19–22.

- Any facts or analysis related to whether any of TQ Delta's patents are standard essential or

3

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
cover any ITU or other standard-setting organization standard. *See, e.g., id.* at 41:18–21 ■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■ ; *id.* at 42:6–10 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■ ; *id.* at 43:21–44:3 ■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■ .

- Any facts or analysis related to whether any of the TQ Delta patents are valid. *See, e.g., id.* at 43:2–7 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

- Any facts or analysis that any party is using TQ Delta's patents without a license. *See, e.g., id.* at 53:22–54:3 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ .

- Any facts or analysis regarding the asserted patents in this case. *See, e.g., id.* at 56:1–5 ■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■ .

### III.     COMMSCOPE'S MIL 3: TESTIMONY CONTRARY TO TQ DELTA'S 30(b)(6) TESTIMONY

TQ Delta should be precluded from presenting any testimony that attempts to provide a substantive response to topics where TQ Delta's designated 30(b)(6) witness, Abha Divine, testified during her deposition that TQ Delta had no knowledge. As this Court has recognized, it is improper to present "evidence, testimony, opinion, or argument that is inconsistent [with] the 30(b)(6) deposition testimony . . . on designated topics." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-cv-00456-JRG, 2018 U.S. Dist. LEXIS 218056, at *2 (E.D. Tex. Nov. 14, 2018). TQ Delta should be precluded from doing the same here.

On June 15, 2022, TQ Delta identified Abha Divine as TQ Delta's corporate witness for ***all*** of the topics in CommScope's 30(b)(6) notice to TQ Delta. *See* Ex. E (June 15, 2022 Email from B. Davis).[1] During the deposition of Ms. Divine, she could neither provide nor identify any knowledge of TQ Delta regarding the topics that concerned technical aspects of the Asserted Patents or the ideas or inventions claimed therein. *See, e.g.*, Ex. C (Divine Depo.) at 44:4-45:14; 76:6-78:2, 81:3-82:1, 100:23-106:3. TQ Delta did not seek to supplement Ms. Divine's responses, instead being satisfied with her answers on behalf of the company. Ms. Divine's lack of discoverable corporate knowledge is consistent with TQ Delta's instructions to Mr. Tzannes not to answer any questions about information he may have shared with TQ Delta (as noted above in MIL #2).

The purpose of a corporate deposition is, of course, to determine the knowledge of the corporate litigant through its employee witnesses who are identified as having knowledge on the specified topics. In designating a Rule 30(b)(6) witness, the corporation is designating an individual

---

[1] On July 13, 2022, the day before Marcos Tzannes's deposition, TQ Delta attempted to designate him on sixteen of the 30(b)(6) topics. *See* Ex. F (July 12, 2022 Email from R. Fink). After objection by CommScope regarding the untimeliness of the new designation, TQ Delta de-designated Mr. Tzannes and instead designated Ms. Divine to testify as to "***all [30(b)(6)] topics in Defendants' notices***." *See* Ex. G (July 28, 2022 Email from B. Davis) (emphasis added).

whose testimony is "binding on the corporation." *Lead GHR Enters. v. Am. States Ins. Co.*, No. 3:17-mc-91-M-BN, 2017 U.S. Dist. LEXIS 205550, at *25 (N.D. Tex. 2017). CommScope relied on Ms. Divine's corporate representations during her deposition that she had no knowledge of the relevant technical aspects of the patents, and so CommScope would be prejudiced by any conflicting responses at trial. Accordingly, just as this Court ruled in *Weatherford*, the Court should in this case preclude TQ Delta from presenting contrary evidence, testimony, or argument that deviates from Ms. Divine's 30(b)(6) testimony, whether through Ms. Divine or another witness (including in particular TQ Delta's paid consultant, Mr. Tzannes). *See Weatherford*, 2018 U.S. Dist. LEXIS 218056, at *2.

### IV. COMMSCOPE'S MIL 4: OFFERS BY COMMSCOPE DURING SETTLEMENT NEGOTIATIONS

The Court should exclude any evidence, testimony, or argument regarding offers made by CommScope to TQ Delta during settlement negotiations. Rule 408 of the Federal Rules of Evidence prohibits the use of evidence "either to prove or disprove the validity or amount of a disputed claim" where that evidence is related to the "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim" or any "conduct or a statement made during compromise negotiations about the claim." FED. R. EVID. 408(a). Any mention of CommScope's offers to TQ Delta would violate Rule 408 and be prejudicial to CommScope.

To the extent TQ Delta asserts that CommScope's offers are relevant to CommScope's FRAND counterclaim, that does not justify disclosing CommScope's offers, which are protected by Rule 408. This Court has recognized that even when "a party needs to discuss an alleged breach of a FRAND obligation, evidence regarding settlement discussions between the parties . . . shall be done outside the presence of the jury." *St. Lawrence Commc'ns LLC v. QTE Corp.*, No. 2:15-CV-349-JRG, 2017 U.S. Dist. LEXIS 228923, at *19–20 (E.D. Tex. Mar. 2, 2017). Notably, precluding

6

disclosure of CommScope's offers will not prevent TQ Delta from addressing FRAND issues that relate to damages. For instance, in *St. Lawrence* this Court stated that "FRAND issues that relate to damages, including what is a proper FRAND royalty rate, will be presented in the presence of the jury." *Id.* at *20. Here, by comparison, CommScope's offers to TQ Delta involve the former category, namely, "settlement discussions between the parties," which should be discussed only "outside the presence of the jury." *Id*. Thus, the Court should exclude any evidence, testimony, or argument in front of the jury regarding CommScope's offers to TQ Delta.

## V. COMMSCOPE'S MIL 5: COMMSCOPE'S CONTRIBUTIONS TO STANDARD-SETTING ORGANIZATIONS

The Court should preclude TQ Delta from introducing any evidence, testimony, or argument at trial relating to CommScope's (and any predecessor entities') contributions, or purported lack of contributions, to any standard-setting organizations, including but not limited to the ITU-T. This evidence is irrelevant to the issues of infringement and invalidity and damages, which are the only issues to be decided during this trial. *See* FED. R. EVID. 401, 402. In addition, the probative value of any purported relevance that TQ Delta may try to identify would be substantially outweighed by the unfair prejudice to CommScope from being portrayed by TQ Delta as an *implementer* that takes intellectual property from alleged *contributors* like TQ Delta or Aware, and such evidence would also confuse the issues and mislead the jury. *See* FED. R. EVID. 403.

CommScope reasonably believes that TQ Delta intends to solicit this testimony, as it did so in the previous Delaware trials, to the surprise of 2Wire. There, TQ Delta elicited evidence of 2Wire's participation at the ITU-T standards body meetings and urged the jury to find that 2Wire was not a *contributor* but a *taker* of intellectual property from contributors like TQ Delta. For example, during the cross examination of 2Wire's principal software engineer, Benjamin Miller, TQ Delta asked a question to suggest to the jury that 2Wire did not contribute anything to the ITU DSL standards:

7

> Q. Okay. Are you aware of any contributions by 2Wire that were adopted into any ITU DSL standard?
>
> A. I don't know personally of any contributions that were actually accepted into a standard. I just know that they took contributions to the ITU.

Ex. H at 541:23–542:2. Similarly, in another Delaware trial, TQ Delta's counsel made the following argument in closing:

> So Marcos Tzannes, he's an ***innovator***. He devoted his life's work, thirty years to the DSL industry. He's got more than a hundred patents. ***And he contributed to the development of these very important standards***.
>
> 2Wire on the other hand, you didn't hear that they were ***contributors***. Instead, they're ***implementers***. So they ***took*** the benefits that Mr. Tzannes provided by working very hard on the standards and they benefitted from that. ***They benefitted from that, but they don't want to pay for it***, they don't want to acknowledge that they're using it. They don't want to do what's right. They should have taken a license when they were approached six years ago, but they didn't want to do that.

Ex. I at 829:25–830:12 (emphasis added).

This type of argument should not be permitted as CommScope's participation in the ITU is not relevant to any issue to be decided by the jury. Evidence and argument that one party may have contributed more to the development of the xDSL standards is totally irrelevant to any issue to be decided by the jury, including liability. *See* FED. R. EVID. 401, 402. Further, any purported relevance that TQ Delta may try to identify is substantially outweighed by the unfair prejudice to CommScope from having to defend the relevant weight of the parties' contributions to the development of the standards, and any such evidence would merely confuse the issues and mislead the jury. *See* FED. R. EVID. 403. Any such evidence by TQ Delta would be inviting the jury to render a verdict based on a perception that CommScope is a "taker," or worse, rather than a verdict based on the actual merits of the issues to be decided by the trier of fact.

For the reasons set forth above, the Court should preclude TQ Delta from introducing any evidence, testimony, or argument relating to CommScope's (and its predecessors') contributions, or purported lack thereof, to DSL standard-setting bodies such as the ITU-T.

## VI. CONCLUSION

For the reasons set forth above, CommScope respectfully requests that the Court grant CommScope's above requested Motions *in Limine*.

|  |  |
|---|---|
| Dated this 9th day of February, 2023 | Respectfully submitted,<br><br>By: */s/ Ross R. Barton*<br><br>Ross R. Barton (NC Bar No. 37179)<br>M. Scott Stevens (NC Bar No. 37828)<br>Kirk T. Bradley (NC Bar No. 26490)<br>Stephen R. Lareau (NC Bar No. 42992)<br>Karlee N. Wroblewski (NC Bar No. 55043)<br>Nicholas C. Marais (NC Bar No. 53533)<br>Erin Beaton (NC Bar No. 59594)<br>Mary I. Riolo (NC Bar No. 59644)<br>ALSTON & BIRD LLP<br>101 S. Tryon Street, Suite 4000<br>Charlotte, NC 28280-4000<br>Email: *ross.barton@alston.com*<br>     *scott.stevens@alston.com*<br>     *kirk.bradley@alston.com*<br>     *stephen.lareau@alston.com*<br>     *karlee.wroblewski@alston.com*<br>     *nic.marais@alston.com*<br>     *erin.beaton@alston.com*<br>     *mary.riolo@alston.com*<br>Telephone: 704-444-1000<br>Facsimile: 704-444-1111<br><br>Katherine G. Rubschlager (Cal. Bar No. 328100)<br>ALSTON & BIRD LLP<br>1950 University Avenue, Suite 430<br>East Palo Alto, CA 94303<br>Email: *katherine.rubschlager @alston.com*<br>Telephone: 650-838-2004<br>Facsimile: 650-838-2001<br><br>Eric H. Findlay<br>State Bar No. 00789886<br>Brian Craft<br>State Bar No. 04972020<br> FINDLAY CRAFT, P.C.<br>102 N. College Ave, Ste. 900<br>Tyler, TX 75702<br>903-534-1100 (t)<br>903-534-1137 (f)<br>efindlay@findlaycraft.com<br>bcraft@findlaycraft.com |

10

████████████████████████████████████

        Douglas J. Kline
        Lana S. Shiferman
        Christie Larochelle
        GOODWIN PROCTER LLP
        100 Northern Avenue
        Boston, MA  02210
        P:  (617) 570-1000
        F:  (617) 523-1231
        dkline@goodwinlaw.com
        lshiferman@goodwinlaw.com
        clarochelle@goodwinlaw.com

        Brett Schuman
        Rachel M. Walsh
        GOODWIN PROCTER LLP
        Three Embarcadero Center, 28th Floor
        San Francisco, CA 94111
        P:  (415) 733-6000
        F:  (415) 677-9041
        bschuman@goodwinlaw.com
        rwalsh@goodwinlaw.com

        Andrew Ong
        GOODWIN PROCTER LLP
        601 Marshall St.
        Redwood City, CA 94063
        P: (650) 752-3100
        F: (650) 853-1038
        aong@goodwinlaw.com

        *Attorneys for Defendants*
        *CommScope Holding Company, Inc,*
        *CommScope Inc., ARRIS International Limited, ARRIS Global Ltd., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC*



### CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel have complied with the meet-and-confer requirements of Local Rule CV-7(h) and (i) and that, following discussion between TQ Delta and CommScope, the parties have reached an impasse on the five MILs described above and that this motion is opposed. On February 6, 2023, counsel for CommScope and counsel for TQ Delta met and conferred and discussed the parties' proposed MILs. Later that day, CommScope provided the specific text of the MILs discussed for confirmation of TQ Delta's position. On February 7, TQ Delta confirmed that it opposed CommScope's MILs 1-4 and would further consider MIL 5 after reviewing CommScope's briefing.

      /s/ *Ross R. Barton*
      Ross R. Barton

### CERTIFICATE OF SERVICE

I hereby certify that on Wednesday, February 8, 2023, I electronically filed the foregoing COMMSCOPE'S MOTIONS IN LIMINE with the Clerk of Court using the CM/ECF system. I also certify that on Thursday, February 9, 2023, I electronically filed the foregoing corrected COMMSCOPE'S MOTIONS IN LIMINE with the Clerk of Court using the CM/ECF system, which

will automatically send notification of such filing upon Counsel of Record, and served a true and correct copy of the above and foregoing document to all counsel of record via electronic mail.

                                                          /s/ *Ross R. Barton*
                                                          Ross R. Barton

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on February 15, 2023, on all counsel who have consented to electronic service via ECF.

                                                  /s/ *Ross R. Barton*
                                                  Ross R. Barton