**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TQ Delta, LLC,<br>   *Plaintiff*, | |
| v. | Civil Action No.: 2:21-CV-00310-JRG |
| CommScope Holding Company, Inc., *et al.*,<br>   *Defendants*. | JURY TRIAL DEMANDED |

**PLAINTIFF TQ DELTA, LLC'S PARTIALLY OPPOSED MOTIONS *IN LIMINE***

<u>**TABLE OF CONTENTS**</u>

I.      Agreed MIL ................................................................................................................ 1

        A.      TQD MIL No. 1 - Precluding presentation or argument that TQ Delta or its
                predecessor-in-interest violated any rule or policy of, or agreement with, any
                standards body (e.g., ITU or ANSI) by, for example, failing to disclose any specific
                patent or patent application number to the standards body, or by failing to disclose
                in a timely manner that it believes it holds any standard essential patent or patent
                application (e.g., by filing a patent statement and licensing declaration). .............. 1

II.     Opposed MILs .............................................................................................................. 2

        A.      TQD MIL No. 2. - Precluding reference to and presentation of any argument,
                evidence, and testimony relating to: (a) TQ Delta, LLC's business model and
                corporate structure as being suspicious or improper; (b) Other entities that are or
                that are insinuated to be associated with TQ Delta, LLC such as but not limited to
                ███████████████████████████████████████████████████ and
                entities owned, in whole or in part, or managed by them ("Other Entities"),
                including the identity and number of, and compensation paid to, the Other Entities'
                personnel; and (c)Investors or members in TQ Delta and the Other Entities,
                including their identities, capital contributions, ownership stake, and payments
                received, if any. ..................................................................................................... 2

        B.      TQD MIL No. 3. - Precluding presentation or argument that TQ Delta, its
                predecessor-in-interest, or the inventors were aware of prior art (of any kind under
                35 U.S.C. § 102) but withheld or failed to disclose it to the Patent Office ............. 6

        C.      TQD MIL No. 4 - Precluding presentation comparing TQ Delta's requested royalty
                with CommScope's costs or profits from the Accused Products, including
                comparison to a claimed profit margin for the Accused Products ......................... 8

        D.      TQD MIL No. 5. Precluding presentation or argument that the Accused Products
                must be actually operated or used in a particular mode (e.g., to provide DSL service
                or in a G.inp or G.bond mode) in order to infringe or in order to determine the
                appropriate amount of damages ............................................................................... 9

III.    Requested Clarification ................................................................................................ 12

        A.      Court's MIL No. 13 ....................................................................................... 12

IV.     Conclusion ................................................................................................................ 14

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*B. Braun Medical, Inc. v. Abbott Labs.*
    124 F.3d 1419 (Fed. Cir. 1997)) ........................................................................................ 1

*Conversant Wireless Licensing S.A.R.L. v. Apple, Inc.*
    No.15-cv-05008-NC, 2019 U.S. Dist. LEXIS 148297 (N.D. Cal. May 10, 2019) ............. 1

*Electro-Mechanical Corp. v. Power Distrib. Prods.*
    No. 1:11CV00071, 2013 U.S. Dist. LEXIS 65740 (W.D. Va. Mar. 13, 2013) .................. 7

*Ericsson, Inc. v. D-Link Sys., Inc.*
    773 F.3d 1201 (Fed. Cir. 2014) ................................................................................. 3, 12

*Evolved Wireless, LLC v. Apple, Inc.*
    No. 15-542-JFB-SRF, 2019 U.S. Dist. LEXIS 27870 (D. Del. Feb. 21, 2019) ................ 1

*Kaist IP United States LLC v. Samsung Elecs. Co.*
    No. 2:16-CV-01314-JRG-RSP, 2018 U.S. Dist. LEXIS 248508
    (E.D. Tex. May 3, 2018) ................................................................................................. 8

*Le-Vel Brands, LLC v. DMS Nat. Health, LLC*
    No. 4:20-CV-398-SDJ, 2022 U.S. Dist. LEXIS 55528 (E.D. Tex. Mar. 28, 2022) ........... 1

*Lone Star Tech. Innovations v. ASUS Computer International Inc., et al.*
    No. 6:19-cv-000509-RWS, Dkt. No. 324 (E.D. Tex. Feb. 20, 2019) .............................. 14

*Mendenhall v. Cedarapids, Inc.*
    5 F.3d 1557 (Fed. Cir. 1993) ........................................................................................ 14

*Microsoft Corp. v. Motorola, Inc.*
    No. C10-1823JLR, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013) ............................. 12

*Mondis Tech. v. LG Elecs. Inc.*
    No. 15-cv-04431, D.I. 429-1 (D.N.J. March 25, 2019) ..................................................... 3

*Optis Wireless Technology, LLC, et al. v. Apple Inc.*
    No. 2:19-cv-00066-JRG, Dkt. No. 668 (E.D. Tex. Feb. 25, 2019) .................................. 14

*Sprint Commcn's. Co., L.P. v. Time Warner Cable, Inc.*
    760 Fed. Appx. 977 (Fed. Cir. 2018) ............................................................................. 14

*SSL Servs., LLC v. Citrix Sys., Inc.*
    No. 2:08-CV-158-JRG, 2012 WL 12906091 (E.D. Tex. May 24, 2012) ........................... 5

*z4 Techs., Inc. v. Microsoft Corp.*
    507 F.3d 1340 (Fed. Cir. 2007) ........................................................................................... 11

**<u>Rules</u>**

Fed. R. Evid. 401 ............................................................................................................... 1, 10

Fed. R. Evid. 402 ............................................................................................................... 1, 10

Fed. R. Evid. 403 ............................................................................................................... 1, 10

Plaintiff TQ Delta, LLC ("TQD") moves *in limine* for an order under the Federal Rules of Evidence ("FRE") 401, 402, and 403 and applicable law to preclude offering evidence, arguments, and testimony on the topics discussed below.  In addition to the five motions *in limine* ("MIL") discussed below (one agreed and four opposed), TQD also seeks the Court's clarification on Court MIL No. 13, which precludes testimony on other litigation, given the specific facts at issue in this matter, including extensive prior litigation between the parties.

## I.      Agreed MIL

### A.      TQD MIL No. 1 - Precluding presentation or argument that TQ Delta or its predecessor-in-interest violated any rule or policy of, or agreement with, any standards body (e.g., ITU or ANSI) by, for example, failing to disclose any specific patent or patent application number to the standards body, or by failing to disclose in a timely manner that it believes it holds any standard essential patent or patent application (e.g., by filing a patent statement and licensing declaration).

CommScope has confirmed that this MIL is agreed, and TQD asks that the Court enter it on that ground.  Such evidence would go to an affirmative defense of unenforceability, and, as this defense is equitable, it should be heard by the Court and not the jury. *See* Court's MIL No. 5 (precluding presentation on equitable defenses or counterclaims); *Le-Vel Brands, LLC v. DMS Nat. Health, LLC*, No. 4:20-CV-398-SDJ, 2022 U.S. Dist. LEXIS 55528, at *19-20 (E.D. Tex. Mar. 28, 2022) ("Because this case now only involves federal equitable claims, there is no right to a jury trial."); *Evolved Wireless, LLC v. Apple, Inc.*, No. 15-542-JFB-SRF, 2019 U.S. Dist. LEXIS 27870, at *22 (D. Del. Feb. 21, 2019) ("Unenforceability is an equitable remedy that arises as an extension of the doctrine of unclean hands, 'whereby a court of equity will not lend its support to enforce a patent that has been misused.'" (quoting *B. Braun Medical, Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427 (Fed. Cir. 1997)) (emphasis added); *Conversant Wireless Licensing S.A.R.L. v. Apple, Inc.*, No.15-cv-05008-NC, 2019 U.S. Dist. LEXIS 148297, at *38 (N.D. Cal. May 10, 2019)

███████████████████████████████████     ████████████████

(describing unenforceability under the doctrine of implied waiver for failure to disclose patent information to a standards body as an "equitable defense").

To the extent the Court requires additional grounds of prejudice, testimony that TQ Delta or Aware failed to disclose specific patent or patent application numbers to a standards body would improperly confuse the jury and require legal explanation because a member of the ITU does not need to disclose such information in a Patent Statement and Licensing Declaration submitted to the ITU.  Under relevant ITU policy, a declarant was required to identify a patent or application number to the ITU only if it expressly elected the option to decline offering patent licenses on FRAND terms.  Neither TQ Delta nor Aware selected this option in the relevant Patent Statement and Licensing Declarations.  TQ Delta and Aware checked the box indicating that it <u>was</u> willing to grant such a license.  Therefore, TQ Delta and Aware had no obligation to disclose patent or application numbers to the ITU.  *See, e.g.,* Exh. 1 (exemplary Patent Statement and Licensing Declaration for VDSL2 (G.993.2)).

## II.    Opposed MILs

**A.    TQD MIL No. 2. - Precluding reference to and presentation of any argument, evidence, and testimony relating to: (a) TQ Delta, LLC's business model and corporate structure as being suspicious or improper; (b) Other entities that are or that are insinuated to be associated with TQ Delta, LLC such as but not limited to** ███████████████████████████████████████████████ **and entities owned, in whole or in part, or managed by them ("Other Entities"), including the identity and number of, and compensation paid to, the Other Entities' personnel; and (c)Investors or members in TQ Delta and the Other Entities, including their identities, capital contributions, ownership stake, and payments received, if any.**

During the meet-and-confer process, TQ Delta presented CommScope with the language of this MIL as set forth above, and CommScope would not agree to any of it.  Thus, it is reasonable to conclude that CommScope intends to refer to and present argument, evidence, and testimony at trial concerning these matters, which are irrelevant to the material disputed issues in this case and would be unfairly prejudicial to TQD.

███████████████████████████████████                    ███████████████████

First, although the Court's MIL No. 11 permits using the term "non-practicing entity," TQ Delta's business model and corporate structure should not be described or characterized as suspicious or improper, either directly or through repeated references to TQD as a non-practicing entity or its size or corporate structure, because that would be unfairly prejudicial to TQD.[1]  There is nothing suspicious or improper about being a non-practicing entity. A "[defendant]. . . may not argue that there is something wrong with [a licensing] business model or [plaintiff] because it does not make a product." *Mondis Tech. v. LG Elecs. Inc*., No. 15-cv-04431, D.I. 429-1 (D.N.J. March 25, 2019).  Nor is it suspicious or improper for TQD to have no employees, or to have investors, such as other entities (e.g., limited partnerships), trusts, private individuals, or affiliates (e.g., ███████████████████████████████████████████████████).  Yet, CommScope's refusal to agree to not characterize TQD's business model and corporate structure as being suspicious or improper shows its intent to disparage TQD.  The intent of this MIL is to prevent prejudicial argument or implication that there is something wrong with TQD's business or its corporate structure, such as suggesting it only engages in litigation-based licensing, has no employees and thus does not need or is not deserving of a large damages award, or has a nefarious purpose behind its corporate structure.

Second, TQ Delta, LLC is the only plaintiff in this litigation. TQD's relationship with other entities have no bearing on any issue in this case. Thus, there should not be a reference to or introduction of argument, evidence, and testimony regarding any other entities that are or that are insinuated to be associated with TQ Delta, LLC, such as but not limited to ██████████████████

---

[1] Because this is a FRAND case, whether TQ Delta is a non-practicing entity and whether it competes against a potential licensor such as CommScope is irrelevant to damages. See *Ericsson, Inc. v. D-Link Systems, Inc.,* 773 F. 3d 1201, 1230-31 (Fed. Cir. 2014) ("Likewise, factor 5—'[t]he commercial relationship between the licensor and licensee'—is irrelevant because Ericsson must offer licenses at a non-discriminatory rate.").

██████████████████████████████              ███████████████

█████████████████████████████ and entities owned, in whole or in part, or managed by them ("Other Entities"), including the identity and number of, and compensation paid to, the Other Entities' personnel.  That presentation would be irrelevant to this case, confusing to the jury, and unfairly prejudicial to TQD.  In addition to bringing irrelevant entities into the case, it also stands to bring irrelevant activities into the case: some of the Other Entities (e.g., ██████ ███████████████████) are or have been involved in other patent litigations and other patent-related (e.g., patent licensing, patent development, patent acquisition) activities that are unrelated to this litigation.  These Other Entities have no relevance to this case and discussion of them can only serve to confuse and prejudice the jury.

Similarly, the identity and number of, and compensation paid to, personal net worth, assets, or investments of the Other Entities' personnel (e.g., owner, shareholder, director, officer, employee) are irrelevant to this case and both confusing to the jury (e.g., bringing individuals before the jury who have no real relevance) and unfairly prejudicial to TQD (e.g., suggesting something improper on TQD's behalf). This MIL is not intended to preclude CommScope from referring to the fact that any testifying witness has a financial interest in TQ Delta (subject to the Court's Standing MIL No. 12 regarding the funding of the litigation and attorney-fee compensation).  It is, for example, intended to prevent raising some individual who is not before the Court and discussing their role and investments.

Third, there should not be any reference to or introduction of argument, evidence, and testimony regarding investors or members in TQ Delta and the Other Entities, including their identities, capital contributions, ownership stake, payments received, if any, personal net worth, assets, or investments.  *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-CV-158-JRG, 2012 WL 12906091, at *1 (E.D. Tex. May 24, 2012) ("The parties are precluded from making any reference

███████████████████████████████████████        █████████████████████

to investors in the litigation, litigation financing or attorney's fee arrangements. The parties shall

be permitted, however, to introduce evidence regarding any testifying witnesses' financial interest

in any of the companies that are parties to this suit.").  These individuals and entities are even

further removed than the Other Entities and their personnel.  Such matters are irrelevant to the

issues to be tried in this case and would be unfairly prejudicial to TQD (and invade the investors'

and members' privacy). ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████ ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

TQ Delta is concerned that CommScope will attempt to refer to or introduce argument,

evidence, and testimony regarding these issues, which are irrelevant to any material disputed issue

in this case and would be unfairly prejudicial to TQD.  TQD's concern is neither imagined nor

speculative.  There is every reason to believe that CommScope intends to delve into these irrelevant

and unfairly prejudicial issues at trial.  For example, as part of its initial pretrial disclosures,

CommScope designated many pages of deposition testimony regarding TQD's investors and Other

Entities. *See* Ex. 2, A. Divine Depo. Tr. (Aug. 4, 2022), at 9:20-10:21, 11:12-11:21, 13:21-14:7,

17:1-18:2, 18:20-19:13, 20:12-21:3, 22:23-25:3, 25:3, 25:18-26:25, 236:18-238:7, 241:21-242:25,



243:18-244:11, 251:16-258:1, 270:20-275:15, 339:24-347:13; Ex. 3, M. Roche Tr. (Aug. 12, 2022) at 13:20-14:17, 15:9-16:21, 17:1-18:21, 22:14-24:9, 25:13-26:15, 80:22-85:23, 86:6-88:19, 89:5-90:1, 91:22-92:5, 92:17-95:23, 98:7-101:9; Ex. 4, M. Roche Tr. (Sept. 12, 2018) at 64:15-20, 65:10-66:3, 95:22-97:25, 108:7-112:11, 132:1-133:6 (CommScope made its designations via yellow highlighting; TQD uses red boxes to show portions of CommScope's designations that are relevant to this MIL.  Also, CommScope's proposed trial exhibits include documents that identify or refer to TQD's investors (including ████████████████████████) and Other Entities. *See* Ex. 5, ████████████████ ████████████████████, TQD_TX00472068 at 2092 (listing ████████████ ████████████████████), 2093-2095; Ex. 6, ████ ████████████████████████████████ ████, TQD_TX00472096 at 2123-2127 (listing ████████████ ████████).  Those exhibits, even if relevant and admissible for other purposes, which TQD does not concede, should, at a minimum, be redacted consistent with the scope and spirit of this MIL topic.

Accordingly, the Court should grant MIL No. 2.

**B.   TQD MIL No. 3. - Precluding presentation or argument that TQ Delta, its predecessor-in-interest, or the inventors were aware of prior art (of any kind under 35 U.S.C. § 102) but withheld or failed to disclose it to the Patent Office**

CommScope has not asserted a claim or defense of inequitable conduct or of derivation under pre-AIA 35 U.S.C. § 102(f).  However, TQ Delta has reason to believe that CommScope may try to present evidence at trial that relates to such claims.  For example, at the 2020 trial in Delaware between TQD and CommScope affiliate 2Wire, Inc. regarding TQD's U.S. Patent No. 7,453,881 ("'881 Patent") (also asserted here), CommScope's counsel asked a co-inventor of the '881 patent, Marcos Tzannes, about purported prior art contributions made to a DSL standard

by another ITU member.  *See* Exh. 7, January 13, 2020 Trial Tr. at 200:8-205:5.  2Wire had not previously identified those contributions as prior art and had not asserted claims of inequitable conduct or derivation.  Those questions by CommScope's counsel prejudiced TQD by giving the false impression to the jury that Mr. Tzannes knew about prior art and did not disclose it to the USPTO and/or that he derived the inventions of the '881 patent from those contributions.  Similarly, at the May 2019 trial between TQD and 2Wire regarding TQD's U.S. Patent Nos. 7,836,381, 7,844,882, and 8,276,048 (the '882 and '048 Patents are also at issue here), 2Wire had not asserted a claim of derivation, but CommScope's counsel asked 2Wire's expert about purported prior art that had not previously been disclosed by 2Wire, and those questions suggested that Mr. Tzannes (one of the inventors named on the three patents) derived his inventions from that purported prior art.  *See* Exh. 8, May 22, 2019 Trial Tr. at 630:11-635:3.

CommScope should not be allowed to repeat those performances here.  The presentation of any evidence, arguments, or testimony that relates to inequitable conduct or derivation claims at trial here is irrelevant and would be unfairly prejudicial to TQ Delta.  Accordingly, consistent with the Court's Standing Order on MILs, CommScope should be precluded from presenting any argument, evidence, or testimony that TQD, its predecessor-in-interest, prosecution counsel, or the inventors of the patents-in-suit were aware of prior art but withheld it from, or failed to disclose it to, the USPTO or that the named inventors of the patents-in-suit derived the claimed inventions from others.  *See* Standing Order MIL Nos. 4 and 5; *see also Electro-Mechanical Corp. v. Power Distrib. Prods.*, No. 1:11CV00071, 2013 U.S. Dist. LEXIS 65740, at *4 (W.D. Va. Mar. 13, 2013) ("[A]rguments and evidence implying wrongful conduct on the part of the applicant in withholding or failing to disclose such prior art are not relevant where, as here, the defendants have asserted no defense or counterclaim of inequitable conduct.  Therefore, I will grant EMC's motion in limine

C████████████████████████████████              ████████████████

to the extent that it seeks to preclude evidence or arguments to the effect that the patent applicant

knew about the relevant prior art and either deliberately or negligently failed to disclose it to the

patent examiner."); *Kaist IP United States LLC v. Samsung Elecs. Co.*, No. 2:16-CV-01314-JRG-

RSP, 2018 U.S. Dist. LEXIS 248508, at *10 (E.D. Tex. May 3, 2018) (granting MIL "so as to

preclude any evidence or argument that the asserted patent were derived from work at MIT").

### C.    TQD MIL No. 4 - Precluding presentation comparing TQ Delta's requested royalty with CommScope's costs or profits from the Accused Products, including comparison to a claimed profit margin for the Accused Products

This MIL is directed to directed to the concern that CommScope may attempt to present a

new expert damages theory that is not disclosed in its expert report. CommScope's damages

expert— Dr. Becker—does not compare the royalty rate (either what he proposes or what TQ

Delta's expert proposes) to either the profit margin CommScope makes on its products or to

CommScope's per-unit costs. CommScope's presentation of such a new damages theory would

be unfairly prejudicial to TQD during trial and likely confuse the jury. During discovery,

CommScope stated that it was relying on its expert for its damages position: TQD's Interrogatory

No. 16 requested CommScope's opinion on what constitutes reasonable licensing terms and

CommScope responded that its "contentions regarding fair, reasonable, and non-discriminatory

("FRAND") licensing terms … will be based on determinations by CommScope's expert(s)" and

it confirmed ████████████████████████████████████████████████████████████

████████████████ Exh. 9 at pp. 85-87 (CommScope's answer on Rog. 16).

To be clear, Dr. Becker does discuss ██████████████████████████████████

████████████████████████████████████████████, and this MIL is not

directed to those facts. However, Dr. Becker does not discuss other additional component costs or

total device costs, much less discuss detailed aspects of such other costs or make a comparison,

such as to "check" the reasonableness of a royalty to device profits or costs. Therefore, it would

███████████████████████████████████          ███████████████████

be prejudicial to have such expert testimony introduced, especially as TQD has not had the opportunity to prepare on such complex testimony.

Further, during discovery, TQD's Interrogatory No. 7 specifically asked CommScope for detailed cost and profit information, "(including but not limited to costs of goods sold, material costs, operating costs, research & development costs, marketing costs, sales costs, royalty expenses), and profit (gross profits, operating profit, net income, gross profit margins, contribution margins, operating profit margins, net profit margins)." But this detailed information was never identified in response to TQD's interrogatory. *See* Exh. 9 at pp. 55-58 (CommScope's answer on Rog. 7).  CommScope, at most, provided ███████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████  *See id.* CommScope's interrogatory answer did not provide the detailed information or explanation that would allow these figures to be tested. It would be even more improper to allow CommScope to prejudicially raise an issue on which it did not fully provide information during discovery, especially as its expert also does not raise this argument, much less marshal evidence and provide a detailed explanation of how that evidence applies to the case.

### D.   TQD MIL No. 5.   Precluding presentation or argument that the Accused Products must be actually operated or used in a particular mode (e.g., to provide DSL service or in a G.inp or G.bond mode) in order to infringe or in order to determine the appropriate amount of damages

Evidence of how CommScope's customers operate the products is not necessary to show infringement, as CommScope itself agreed the *Markman* hearing.  At most, such evidence might be of minimal relevance to damages, but no damages expert opines that the royalty is based on

---

[3] CommScope, in its original answer and four different amended answers to Rog. No. 7, cited, at various times the following spreadsheets: COMMSCOPE016810, COMMSCOPE016813, COMMSCOPE016814, COMMSCOPE016816, COMMSCOPE039165, COMMSCOPE039166, COMMSCOPE044791, COMMSCOPE044792, COMMSCOPE044793, COMMSCOPE044794, COMMSCOPE124379, and COMMSCOPE124380.

actual operation of the products and both experts use a FRAND-based model that does not discriminate based on alleged customer usage (*e.g.*, no expert opines that TQD can charge a higher or lower royalty based on how much the licensee's customers use a particular mode of operation). In contrast, allowing CommScope to argue that its customers do not operate the devices in particular modes raises a substantial risk of unduly prejudicing TQD—it would ask the jury to believe that TQD has to prove that CommScope's customers operate the accused products in certain ways, something that the law does not require. TQD thus respectfully requests that the Court grant this Motion under Rules 401, 402, and 403.

First, evidence of how CommScope's customers operate the products is not necessary to show infringement. The claims are drawn to apparatuses that are "capable of," "configurable to," or "operable to" perform certain functionalities. Direct infringement of those claims under Section 271(a) does not require actual operation of those functionalities by customers; it only requires that the functionality is present to the product (*e.g.*, contained in the software). *See, e.g.*, Claim Construction Memorandum and Order (Dkt. 169) at 22 (citing Federal Circuit law); TQ Delta's Response to Defendant's Summary Judgment Motion (Dkt. 370) at 6–7 (reciting Federal Circuit law of "use" of system claims). Indirect infringement likewise does not require showing actual operation of the Accused Products in a particular mode by customers; it only requires showing "use" of the system claims as required by Section 271(a), *viz.*, use of a system that is "capable of," "configurable to," or "operable to" perform certain functionalities, regardless of how the device is actually operated. *See, e.g.*, *id; z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1350 ("[I]nfringement is not avoided merely because a non-infringing mode of operation is possible[.]").

Indeed, CommScope represented to the Court that it would not make an "actual operation" argument. At the *Markman* hearing, Defendant stated that it "will not argue that Plaintiff must

prove that the accused devices are taken out of their packaging, plugged in, and turned on."  Claim Construction Memorandum and Order (Dkt. 169) at 17, 21–22; June 3, 2022 *Markman* Hearing Tr. (Exh. 10) at 20:16–19 ("We're not going to say -- to Your Honor's analogy, we're not going to say that the gizmo has to be taken out of the box, plugged into a wall, and actually in operation.").  It should be held to that representation.[4]

Second, evidence of how CommScope's customers operate the products is, at most, of minimal relevance to damages and would be unduly prejudicial.  Neither damages expert looks to the extent of actual operation of the accused products to determine the amount of damages.  The jury will not hear an opinion that damages should be determined by the actual operation of the accused products by CommScope's customers.  And, because actual operation is not required for infringement, it would be improper to limit infringement damages based on actual operation.

In addition, this case involves FRAND damages models presented by each side's experts.  While the extent of use by customers may be relevant to damages under *Georgia-Pacific* in certain cases, an argument that CommScope is entitled to a lower royalty because its customers may not be operating the products in certain modes invites the jury to impermissibly discriminate in CommScope's favor—giving CommScope a lower rate compared to similarly-situated companies.  *See, e.g.*, *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014) ("In a case involving RAND-encumbered patents, many of the *Georgia–Pacific* factors simply are not

---

[4] As explained in TQ Delta's Motion to Strike the Expert Testimony of Dr. George A. Zimmerman, Dr. Richard Wesel, Dr. Bruce McNair, and Dr. Neil Ransom (D.I. 337), Dr. Ransom improperly imported a "use" noninfringement defense in his analysis of Families 2 and 6.  Defendant's Family 1 expert similarly criticized TQ Delta's infringement evidence because it did not show that the product "would ever enter the loop diagnostic mode as it is deployed by CommScope customers."  Exh. 11 (Cimini Report) at ¶ 66 (emphasis added).  This Motion would also preclude such arguments to be made during opening statements, closing arguments, or the examination of other witnesses.

relevant; many are even contrary to RAND principles."); *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 2111217, at *18 (W.D. Wash. Apr. 25, 2013) ("[H]aving committed to license on RAND terms, the patentee no longer may discriminate against its competitors in terms of licensing agreements.").

Ultimately, allowing argument that the Accused Products have not been shown to operate in a particular way will unduly prejudice TQ Delta.  Actual operation by customers is, at most, of minimal relevance to damages and is irrelevant to infringement.  But hearing evidence and argument on actual operation raises a substantial risk that the jury will believe that TQD must show how the products are actually operated to prove its case—something the law does not require.

## III.   Requested Clarification

### A.   Court's MIL No. 13

The parties need the Court's guidance applying the Court's MIL No. 13, which precludes the discussion of other litigations.  Given the facts in this case, the parties will need to discuss specifics of other litigations in a limited form in the context of the facts of their history, willfulness, and damages.  TQD is not suggesting that the details of every litigation needs to be discussed (e.g., IPRs do not need to be discussed at all), but there will be significant prejudice if no other litigation can be discussed, since they form a materially relevant part of the facts of this case.  In an email following the meet and confer, CommScope took the position that the Court's "MIL No. 13 is necessary, appropriate, and should apply to the present case."  TQD does not disagree, but TQD believes it should apply with the Court's clarification below.

Relevant to damages, a number of ███████████████████████████████ ███████████████████████████████████████████, followed litigation. The parties' damages experts discuss these licenses and their relation to litigation; it is one of CommScope's damages expert's primary criticisms of the licenses.  If the parties are unable to

discuss the details of these licenses, including that they followed litigation, there will be significant prejudice as the jury will not hear an accurate representation of the evidence and the relevant context necessary to weigh fairly that evidence.  TQD does not believe that the parties need to discuss most of the details of these litigations, but TQD believes that they will need to be addressed in general terms in, at least, the damages context.

Similarly, relevant to the parties' history and willfulness, the parties will need to discuss that they have been in litigation in Delaware since 2013 and that CommScope has lost judgments (e.g., trials in 2019 and 2020 and on summary judgment in 2021), regarding DSL patents there, including regarding, in part, both the same and similar products asserted in this case. (*See* Dkt. No. 348 (moving for collateral estoppel based on Delaware judgments and providing summary of the parties' history in Delaware)). If the parties are unable to discuss these facts, there will be material prejudice as the jury will mistakenly believe that TQD has slept on its rights and weigh that against TQD.  For example, the jury will hear that TQD contacted what is now CommScope in 2013, but then they will believe that TQD never acted before 2021.  This will lead the jury to think that TQD has slept on its rights and therefore is less entitled to relief.  TQD will also face material prejudice if these facts cannot be presented, as the jury will also credit CommScope's acts as less willful than they have been.  For example, the jury may credit CommScope's suggestions that it is not willful (or believed it was not) despite multiple legal judgments to the contrary.

This District has held in the context of willfulness that "[w]hile [a prior verdict] can be prejudicial and must be treated with great care, it is admissible if it is relevant to a material issue in the case and its use is limited to the purpose for which it is relevant." *Lone Star Tech. Innovations v. ASUS Computer International Inc., et al.*, Dkt. No. 324 at *3-4 (E.D. Tex. Feb. 20, 2019) (quoting *Sprint Commcn's. Co., L.P. v. Time Warner Cable, Inc.*, 760 Fed. Appx. 977, 980–81

(Fed. Cir. 2018) (citing *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1573–74 (Fed. Cir. 1993)))). Given the sensitivity of the issue regarding the Delaware judgments, TQD understands it may be necessary for the Court to instruct the jury on the relevant details.  *See, e.g.*, *Optis Wireless Technology, LLC, et al. v. Apple Inc.*, Dkt. No. 668 at *8 (E.D. Tex. Feb. 25, 2019) (holding "[t]he Court—not the parties—will instruct the jury as to what occurred in the previous trial with respect to infringement and invalidity. However, the Court's instruction will not be limited to merely instructing the jury to assume infringement and validity….").

## IV.    Conclusion

TQD asks the Court to grant the motions *in limine* requested.

Dated: February 8, 2023

/s/ William E. Davis, III

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Peter J. McAndrews
(*Pro hac vice*)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(*Pro hac vice*)
rchiplunkar@mcandrews-ip.com

Ashley Ratycz
(*Pro hac vice*)
aratycz@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

15

███████████████████████                    ███████████████

*ATTORNEYS FOR PLAINTIFF TQ DELTA, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this February 8, 2023 on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

/s/ William E. Davis, III
William E. Davis, III

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel have complied with the meet-and-confer requirements of Local Rule CV-7(h) and (i) and that discussion between TQD and CommScope have reached an impasse on the four MILs described above and that this motion is opposed, as summarized below.  On February 6, 2022, counsel for CommScope, including Scott Stevens, Deron Dacus, and Karlee Wroblewski, and counsel for TQD, including Bo Davis, Christian Hurt, Rudy Fink, Ed Chin, Ty Wilson, Pete McAndrews, Ashley Ratycz and Raj Chiplunkar, met and conferred and discussed the parties' proposed MILs.  Later that day, TQD provided the specific text of the MILs discussed for confirmation of CommScope's position.  On February 7, CommScope confirmed that it did not oppose what is listed above as TQD MIL 1, and that it opposed TQD's other MILs.

/s/ William E. Davis, III
William E. Davis, III

16

