# EXHIBIT 8

```
 1                     IN THE UNITED STATES DISTRICT COURT

 2                       FOR THE DISTRICT OF DELAWARE

 3

 4      TQ DELTA LLC,                  )
                                       )
 5                   Plaintiff,        )
                                       ) C.A. No. 13-1835-RGA
 6      v.                             )
                                       )
 7      2WIRE, INC.,                   )
                                       )
 8                   Defendant.        )

 9
                                            J. Caleb Boggs Courthouse
10                                          844 North King Street
                                            Wilmington, Delaware
11
                                            Wednesday, May 22, 2019
12                                          8:30 a.m.
                                            Trial Volume III
13

14      BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

15      APPEARANCES:

16               FARNAN LLP
                 BY:  MICHAEL J. FARNAN, ESQUIRE
17
                          -and-
18
                 MCANDREWS HELD & MALLOY, LTD
19               BY:  PETER J. MCANDREWS, ESQUIRE
                 BY:  PAUL W. MCANDREWS, ESQUIRE
20               BY:  JAMES MURPHY, ESQUIRE
                 BY:  THOMAS WIMBISCUS, ESQUIRE
21
                          -and-
22
                 ROBINS KAPLAN LLP
23               BY:  DAVID A. PRANGE, ESQUIRE
                 BY:  BENJAMIN C. LINDEN, ESQUIRE
24
                                             For the Plaintiff
25
```

```
 1    APPEARANCES CONTINUED:

 2              MORGAN LEWIS
                BY:  JODY C. BARILLARE, ESQUIRE
 3
                         -and-
 4
                GOODWIN PROCTER, LLP
 5              BY:  BRETT SCHUMAN, ESQUIRE
                BY:  RACHEL WALSH, ESQUIRE
 6              BY:  DOUGLAS KLINE, ESQUIRE
                BY:  ANDREW ONG, ESQUIRE
 7              BY:  CINDY CHANG, ESQUIRE

 8                                   For the Defendant

 9              ***   PROCEEDINGS   ***

10              DEPUTY CLERK:  All rise.

11              THE COURT:  All right.  Good morning, everyone.
12    Please be seated.
13              All right.  So one administrative matter.  I
14    believe the courtroom deputy has passed out the time that's
15    been allotted or that each side has used.  But if it's the
16    case that some of the depositions that were played
17    yesterday, that the time is supposed to be shared, we
18    haven't been given that information.  So if there needs to
19    be a different allocation of that, you need to get us that
20    information.
21              So in terms of any issues that I can help you
22    with or at least resolve this morning?
23              MR. MCANDREWS:  Yes, Your Honor.  We have a few
24    issues about slides.
25              THE COURT:  Okay.
```

```
 1   just said LB-031 discloses shared memory, did she not?
 2              MR. SCHUMAN:  I think I heard the same thing
 3   that the Court heard, but the objection is -- the objection
 4   should be to my question, not to the answer.  I have a few
 5   more questions.  She will explain her opinion.  If
 6   Mr. McAndrews has a problem with that answer, that's for
 7   cross-examination.
 8              THE COURT:  But I don't think it really is in
 9   the sense of, you know, you represented that she wouldn't
10   disclose that.  I agree your question is vanilla.
11              MR. SCHUMAN:  I only give the question, not the
12   answer.
13              THE COURT:  But so what do you want me to do
14   about this?
15              MR. SCHUMAN:  I can try to clarify it.
16              MR. MCANDREWS:  If he can clarify it, I think
17   that would be okay.  Although, I mean, saying it's disclosed
18   means it's expressly or inherently disclosed, that's clearly
19   not her opinion.
20              THE COURT:  If you think you can clarify, and
21   feel free to use leading questions if that helps.  Okay?
22              MR. SCHUMAN:  Thank you, Your Honor.
23              THE COURT:  All right.
24   BY MR. SCHUMAN:
25   Q.    Dr. Jacobsen, is it your opinion that LB031 expressly
```

1 discloses the preamble of each of the three TQ Delta claims?
2 A.     No, that is not my opinion.  It does not use the
3 words shared memory explicitly.  But as I explained
4 previously, there are only two ways to implement memory,
5 interleaving and deinterleaving memory.  It's either a
6 dedicated or shared.
7           LB031 -- the LB031 contribution doesn't say
8 either way.  So my opinion is that a person having ordinary
9 skill reading it would have understood it to apply to either
10 kind of implementation.
11 Q.     When LB031 was contributed to the standards body in
12 June 2004, were there discussions going on at the standards
13 body about whether to use shared memory in VDSL?
14 A.     Yes, there were.  The discussions on whether to use
15 shared memory began immediately once folks realized the
16 breadth of requirements that the service providers had in
17 mind, and the fact that the product might need to be able to
18 do symmetrical and isometrical services.  So my recollection
19 is that those discussions began --
20           MR. MCANDREWS:  Your Honor, objection.  This
21 is --
22           THE COURT:  I'm sorry.  Sorry, members of the
23 jury.
24           Can I see you at side-bar?
25           (Beginning of conference held at side-bar:)

```
1              THE COURT:  I'm not entirely sure what your
2    objection is.
3              MR. MCANDREWS:  So she seems to be describing a
4    new category of prior art which is an oral disclosure that
5    she's just about to say the date of.  There is no
6    corroboration for that.  It was never put in in an opinion.
7              And she's also suggesting that there's
8    derivation by Mr. Tzannes who attended these meetings.
9              THE COURT:  So the way I would interpret this is
10   because I don't think you were thinking of something like,
11   at least the first part of that is that this goes -- I mean,
12   this is what the people of ordinary skill in the art
13   understand at the time.  It's like the scope of this, and I
14   don't think -- I'm positive the defendant's not going to
15   say, We now have a new theory.  I mean, I think that's what
16   -- to the extent that this is what Mr. Schuman expected the
17   answer to be, I would think this is why the question has
18   been asked, and why the answer is relevant.
19             Because what people when they're skilled in the
20   art, that's the whole thing.  She's saying she's trying to
21   take how people of ordinary skill in the art would have
22   thought about this.  And that's -- you know, I've never
23   actually seen it happen before -- having a piece of prior
24   art, and you know, person of ordinary skill in the art in
25   the combination, well, this seemed like actually where it
```

1    might apply when you don't have a specific reference to
2    shared memory.  And yet, people out there have a very
3    limited -- people who are skilled in the art have a limited
4    selection of choices.
5              Isn't that kind of like the definition of how
6    this is supposed to work?
7              MR. MCANDREWS:  Right.  But there's going to be
8    substantial evidence of record that this is not compatible
9    with shared memory.  And this is effectively letting her,
10   uncorroborated, to suggest that the invention was being
11   discussed.
12             I mean, you're familiar with the barbed wire
13   case.  You need corroboration if you are going to say
14   there's prior art that exists.
15             THE COURT:  Yeah.  Yeah.  But that's not what's
16   happening here, and I'm not going to let anyone argue that's
17   what's happening here.  So --
18             MR. SCHUMAN:  That's not what's happening here.
19   I think Your Honor has it exactly correct.
20             And to Mr. McAndrews point, there's not going to
21   be some date attached to it.  It's not about derivation.
22   It's the context of the person -- context in which a person
23   of ordinary skill in the art understood LB031, and that's
24   it.
25             MR. MCANDREWS:  But she's saying that her

1    knowledge is that people actually discussed shared memory in
2    the context of LB031, and that the standard is missing.
3    That's a different category of prior art.
4           THE COURT:  I didn't interpret that to be --
5    what she has said so far to be that specific.  I thought she
6    said, and I may be making this up, but around about that
7    time or even at these meetings, we were discussing -- you
8    know, that's what people were discussing.  I guess that's
9    kind of the way she said it.
10          MR. SCHUMAN:  That's right.  So --
11          MR. MCANDREWS:  There's no corroboration for
12   that.  There's no evidence of that.  That was never
13   disclosed to us, so we could go test if that's true or not.
14          We can put Mr. Tzannes back on the stand.  He
15   can tell you that it's actually not true.
16          THE COURT:  Well, he's a fact witness.  He can
17   do that if he wants.
18          MR. SCHUMAN:  Well, hold on.  I don't think they
19   get a rebuttal case.  I mean, this was her opinion disclosed
20   as what one of ordinary skill would understand.
21          THE COURT:  So her saying people were discussing
22   it at the meetings, I understood her opinion was shared
23   memory was well known.  You know, she perhaps has added a
24   wrinkle that was, you know, assuming this is elaboration on
25   what's well known, it's -- I take it she's never said this

1    before.

2              MR. SCHUMAN:  Well, I don't know whether -- I
3    wasn't at the deposition in this case.  I don't know whether
4    he chose to ask her that question, but her opinion disclosed
5    was one of ordinary skill in the art would understand as the
6    Court -- I don't want to recapitulate everything that the
7    Court has already said.  This is the basis for her disclosed
8    opinion, why one of skill in the art would have understood
9    this reference to be compatible with either of these two
10   references.

11             THE COURT:  Well, I'm going to allow you to
12   continue.  Certainly, if I do think that because Mr. -- if
13   Mr. Tzannes wants to come back and say, no, nobody was
14   discussing that, you can do that.

15             MR. SCHUMAN:  Okay.  Thank you, Your Honor.

16             THE COURT:  Okay.

17             ( Conference held at side-bar was concluded.)

18   BY MR. SCHUMAN:
19   Q.    So Dr. Jacobsen, I lost track.  The objection came
20   while you were testifying.

21             Did you finish your answer to my last question,
22   if you can remember the last question?
23   A.    I can't remember if I finished.
24   Q.    So I don't want -- we don't have to restate all your
25   testimony, but the question was whether the subject of using

1    shared memory and VDSL was being discussed at the standards
2    body meetings around the time of LB031?
3    A.    And my recollection is that, yes, it was.
4    Q.    Dr. Jacobsen, we'll move on to the next element of
5    these claims.  So just before we do, what is your opinion
6    for the members of the jury regarding the relationship of
7    LB031 and the preamble of each of these claims?
8    A.    Well, can I quickly just go through the -- I don't
9    think I talked about the transceiver and the information.
10   Q.    Certainly.  Certainly.
11   A.    Yeah, I don't think I finished this slide.  So claim
12   1 and claim 13 require a transceiver.  The LB031
13   contribution discloses a VDSL2 transceiver.  And as far as
14   the claim 5 of the '381 requiring as I believe Dr. Cooklev
15   said basically a storage medium somewhere that the code is
16   stored, the code to be executed.  Every VDSL or DSL
17   transceiver that I've ever encountered has a processor and
18   some code that runs on the processor.
19          So that limitation, in my opinion, would have
20   been disclosed to a person who was reading the LB031
21   contribution at the time.  Okay.  Now, I'm done.
22   Q.    All right.  So let's move on to the yellow shaded
23   element, transmitting or receiving a message.  It's a
24   mouthful, so I won't restate it.  I think we all know by now
25   what this limitation is, what this element is.