**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **TQ DELTA, LLC,** | |
| *Plaintiff*, | |
| v. | CIV. A. NO.  2:21-CV-310-JRG |
| **COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC** | |
| *Defendants*. | |

**DEFENDANT COMMSCOPE'S OPPOSITION TO PLAINTIFF TQ DELTA, LLC'S
PARTIALLY OPPOSED MOTIONS IN LIMINE**

**TABLE OF CONTENTS**

I.   RESPONSE TO TQ DELTA'S "AGREED" MIL 1 .......................................................... 1

II.  RESPONSE TO TQ DELTA'S OPPOSED MIL NO. 2 ON TQ DELTA'S AND
     OTHER ENTITIES' BUSINESS MODEL ........................................................................ 1

  1.  The Court should deny the first part of MIL No. 2 because it contains
      unnecessary restrictions on language the Court expressly permits................................. 2

  2.  The Court should deny the second part of MIL No. 2 because TQ Delta is
      attempting to hide its witnesses' financial bias and control of TQ Delta. ...................... 2

  3.  The Court should deny the third part of MIL No. 2 because TQ Delta is
      attempting to preclude relevant facts about valuation. .................................................... 4

III. RESPONSE TO TQ DELTA'S OPPOSED MIL NO. 3 ON STANDARDS
     CONTRIBUTIONS ......................................................................................................... 5

IV.  RESPONSE TO TQ DELTA'S PROPOSED MIL NO. 4 ON SUPPOSED NEW
     DAMAGES THEORIES ................................................................................................. 8

V.   RESPONSE TO TQ DELTA'S OPPOSED MIL NO. 5 ON ACTUAL USE AND
     OPERATION .................................................................................................................. 9

  1.  CommScope has already mooted the alleged prejudice. ................................................. 9

  2.  TQ Delta seeks to use MIL No. 5 to exclude evidence about damages.......................... 10

VI.  RESPONSE TO TQ DELTA'S OPPOSED REQUESTED CLARIFICATION ON
     THE COURT'S MIL NO. 13. ON PRIOR LITIGATION ................................................ 11

  1.  TQ Delta's request for clarification should be denied and the Court's MIL No.
      13 should be enforced as written. .................................................................................. 12

  2.  If the Court revises its Standing MIL No. 13, then CommScope must be allowed
      to present its version of the prior litigations to avoid undue prejudice......................... 13

VII. CONCLUSION ............................................................................................................... 14

████████████████████████████

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|:---:|:---|
| Ex. A | Excerpt of 2022-08-18 Becker Report |

The Court should deny TQ Delta's opposed Motions in Limine (MILs). In each instance, TQ Delta is attempting to preclude introduction of relevant evidence under the guise of an alleged prejudice that is speculative, non-existent, or unlikely to outweigh the prejudice caused to CommScope by granting the MIL.

## I.     RESPONSE TO TQ DELTA'S "AGREED" MIL 1

To be clear, CommScope agreed only to the express language of TQ Delta's MIL No. 1:

> Precluding presentation or argument that TQ Delta or its predecessor-in-interest violated any rule or policy of, or agreement with, any standards body (e.g., ITU or ANSI) by, for example, failing to disclose any specific patent or patent application number to the standards body, or by failing to disclose in a timely manner that it believes it holds any standard essential patent or patent application (e.g., by filing a patent statement and licensing declaration).

CommScope notes this issue because TQ Delta's briefing concerning the agreed MIL contains a page and a half of unnecessary statements about supposed prejudice TQ Delta may suffer. CommScope disagrees with the statements and legal conclusions, including the statements about the relevant ITU policy. CommScope reserves all rights to respond to such statements at the proper time, including as part of any equitable defense post-trial.

## II.    RESPONSE TO TQ DELTA'S OPPOSED MIL NO. 2 ON TQ DELTA'S AND OTHER ENTITIES' BUSINESS MODEL

TQ Delta's MIL No. 2 contains three parts, all of which request unnecessary and prejudicial expansions to MILs already present in the Court's Standing Order on MILs. The first part of MIL No. 2 contains unnecessary restrictions on language the Court expressly permits. The second part of MIL No. 2 is designed to exclude deposition testimony of TQ Delta's witnesses who hid their financial bias behind TQ Delta's corporate structure. The third part of MIL No. 2 is designed to keep relevant valuations out of the case.

**1. The Court should deny the first part of MIL No. 2 because it contains unnecessary restrictions on language the Court expressly permits.**

TQ Delta's MIL No. 2 requests a restriction on language expressly permitted by the Court's MIL No. 11. The Court's MIL No. 11 permits the use of the term "non-practicing entity." Nothing in the Court's MIL No. 11 limits the number of times that term may be used. Yet TQ Delta seeks to prevent "repeated" use of this term under the guise that such "repeated" use would cross—in TQ Delta's mind—a line that turns its business model into something "suspicious or improper." TQD MIL No. 2 at 3.

TQ Delta offers no explanation or solution for how to police when CommScope has supposedly crossed this line. Such a restriction would place an unnecessary and unwarranted burden on CommScope to approach the bench each and every time CommScope intends to discuss this otherwise expressly permitted subject matter. Instead, the Court should simply enforce the Court's MIL No. 11 as it is written. To the extent that the Court believes that CommScope is somehow abusing the use of the phrase "non-practicing entity" as trial progresses, it will of course raise that with the parties during trial.

Relatedly, TQ Delta avers that it is not "suspicious or improper for TQD to have no employees, or to have investors, such as other entities (e.g., limited partnerships), trusts, private individuals, or affiliates." TQD MIL No. 2 at 3. Based on this admission, there is no reason to prohibit CommScope from pointing out this *fact* at trial. None of these factual statements cross any line drawn by the Court's MIL Nos. 11 or 12. Given none of those facts are suspicious or improper, the Court should deny this aspect of TQ Delta's MIL as well.

**2. The Court should deny the second part of MIL No. 2 because TQ Delta is attempting to hide its witnesses' financial bias and control of TQ Delta.**

During depositions in this case, TQ Delta's witnesses tried to hide who controls TQ Delta and their financial bias behind the corporate structure of TQ Delta and so-called "Other Entities." In

███████████████████████████████████████

the second part of MIL No. 2, TQ Delta seeks exclusion of any reference to these Other Entities in an attempt to keep TQ Delta's true corporate structure and the witnesses' financial bias hidden from the jury. TQ Delta makes this request while brazenly stating that the "MIL is not intended to preclude CommScope from referring to the fact that any testifying witness has a financial interest in TQ Delta." TQD MIL No. 2 at 3. But CommScope must refer to the Other Entities to show the witnesses' interests due to TQ Delta's choice to use those Other Entities as a shield during depositions. The Court should therefore deny this aspect of MIL No. 2.

TQ Delta's practice of using its corporate structure to obfuscate witness bias is most prominently shown by the testimony of ████████████████████████████████████ ████████████████████████. Only through examination about Other Entities was ████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ The Court should not grant TQ Delta's MIL or exclude this deposition testimony because doing so would allow ████████████████████████████████████████ ████████████████████████, just like he did in his deposition.

As another example, ███████████████████████████ in TQ Delta until her ownership and participation in the Other Entities was questioned. ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

In addition to financial bias, TQ Delta used the "Other Entities" to hide the identity of the decision makers at TQ Delta. Thus, once again CommScope will be forced to discuss the Other Entities to describe how TQ Delta is structured, where it started out, and the various corporate steps TQ Delta has taken to get to where it is today. This Court routinely permits this type of testimony so long as the testimony is factual and does not insinuate fault or harm. *See, e.g.*, *IPCom GmbH v. AT&T, Inc.* 2:20-cv-323, Dkt. No. 302 (Pre-Trial Conf. Day 1 Tr.) at 155:10-21 (Feb. 28, 2022).

TQ Delta's choice to intermingle and interject facts about the Other Entities during depositions is precisely why CommScope must now present those same facts to the jury. Only by walking through the deposition testimony (either live or via video), which discusses the Other Entities, can CommScope prove that witnesses such as ██████████████████ are financially biased and show the facts of how TQ Delta operates. Witness bias and financial compensation are always relevant, and CommScope should not be prejudiced by TQ Delta's efforts to shield those facts. CommScope agrees, however, not to discuss the various ████████████████████ ████████████ ██████████████████████, etc., none of which involve the concerns expressed above.

### 3. The Court should deny the third part of MIL No. 2 because TQ Delta is attempting to preclude relevant facts about valuation.

TQ Delta's request to exclude any evidence about its investors, ████████████████████ ██████████████, is likewise overbroad and designed to keep relevant evidence about the value of the patents out of the case. The Court's MIL No. 12 already covers evidence regarding litigation funding.

████████████████████████████████████

However, that MIL says nothing about identifying investors or the amount they invested to acquire an ownership interest. Indeed, CommScope should be permitted to discuss investors in TQ Delta and the amount of money invested because TQ Delta's only assets are its patents. Therefore, the amount of money invested—and what the investors received in return for their investments—is direct and relevant evidence about the value of those patents. *See CXT Sys., Inc. v. Academy, Ltd.*, No. 2:18-CV-00171, Dkt. No. 424, at 4 (E.D. Tex. Jan. 27, 2020) ("The MIL is otherwise DENIED, and does not preclude JCP from discussing the amount of money paid for acquisition of the patents still in suit."). The fact that one of those investors happened to be the ███████████ does not outweigh the fact that ████████████████████████████████████████████ ████████████████████████████████. Keeping this information away from the jury based on the ████████████████ of the investor would unduly prejudice CommScope.

Thus, all three aspects of TQ Delta's MIL No. 2 should be denied.

## III.   RESPONSE TO TQ DELTA'S OPPOSED MIL NO. 3 ON STANDARDS CONTRIBUTIONS

TQ Delta's MIL No. 3 is an attempt to exclude relevant and admissible evidence concerning standards contributions, all of which were disclosed, and many of which are prior art references in this case. Through this MIL, TQ Delta seemingly seeks to preclude the facts that (i) members of the ITU standards, including the primary inventor, Mr. Tzannes, received ITU standards contributions at the ITU standards meetings (e.g., "was aware" of ITU standards contributions); and (ii) TQ Delta's contributions were not the contributions that were ultimately adopted into the relevant standard. This evidence is relevant to issues other than inequitable conduct or derivation, including issues such as the history of standard development, public availability, *ex ante* valuation, and non-infringement. Given that TQ Delta's alleged prejudice is speculative and that TQ Delta will undoubtedly tout Mr. Tzannes's involvement in the ITU meetings, the Court should deny this MIL.

As an example, for Family 3, TQ Delta's request appears to encompass the idea that the Court should exclude discussion of an ITU contribution (LB-031) made by Texas Instruments. TQD MIL No. 3 at 7 (citing Dkt. No. 451-9 (TQD MIL Ex. 8 Excerpt from TQ Delta v. 2Wire Trial Tr.) discussing LB-031). CommScope relies on LB-031 as an asserted § 103 invalidity reference in this case.[1] Under TQ Delta's MIL No. 3, CommScope would supposedly be precluded from presenting evidence about the fact that Mr. Tzannes "was aware of" (e.g., received) this reference at an ITU standards meeting and that LB-031 was made part of the standard that TQ Delta now points to for infringement. Both of these facts are highly relevant to standard development, the public availability of LB-031 (a fact that TQ Delta contests), and non-infringement of the standard. *See* Dkt. No. 375 (opposing MSJ on public availability of prior art); *In re Coutts*, 726 F. App'x 791, 796 (Fed. Cir. 2018) (ruling that an inventor's "knowledge could go to showing whether a person of ordinary skill would have that knowledge as well"). Indeed, Judge Andrews rejected TQ Delta's same "derivation" objection with respect to LB-031 during the 2019 trial. Dkt. No. 451-9 (excerpt from *TQ Delta v. 2Wire* Trial Tr.) at 630:20-634:14 (allowing questioning to continue after counsel raised an objection based on an undisclosed derivation defense); *see also* Dkt. No. 451-8 (excerpt from *TQ Delta v. 2Wire* Family 2 Trial Tr.) at 203:3-8 (overruling TQ Delta's relevance objection for an 802.3ah reference). The Court should do the same here.

Moreover, TQ Delta's alleged prejudice is speculative. TQ Delta alleges that presenting the above facts to the jury would give a "false impression to the jury" about issues of derivation or inequitable conduct. TQD MIL No. 3 at 7. But because the jury will receive no instruction on inequitable conduct or derivation, it is wholly speculative for TQ Delta to conclude the jury will pull

---

[1] This same set of facts is at play for at least each of Families 1, 6, and 9. For each of these Families, CommScope's elected prior art involves ITU contributions made by companies *other* than TQ Delta, Aware, or Marcos Tzannes.

this "false impression" out of thin air. This speculative prejudice does not outweigh the fact that this evidence serves other legitimate purposes relevant for the jury to consider. In particular, evidence that serves other legitimate evidentiary purposes under CommScope's § 102 and § 103 invalidity defenses include: (i) the asserted contributions were not before the U.S. Patent Office[2]; (ii) the asserted contributions were publicly available, including to Mr. Tzannes, at the standards meetings; and (iii) the contributions that led to the relevant standard were not submitted by Mr. Tzannes or TQ Delta (or its predecessors). Thus, this evidence is not precluded by the Court's MIL No. 5 and should not be precluded by TQ Delta's proposed MIL here.

Meanwhile, TQ Delta will undoubtably *tout* Mr. Tzannes's involvement in the ITU standards meetings. *See, e.g.*, Dkt. No. 1 (Compl.) at ¶ 31 (touting Mr. Tzannes's "significant involvement in developing industry standards"). TQ Delta asserts that the patent families at issue here are direct results of Mr. Tzannes's involvement in those meetings. TQ Delta should not be permitted to open the door to Mr. Tzannes's involvement in ITU standards meetings on the one hand and preclude evidence of what happened there on the other. Such a result would be highly prejudicial to CommScope.

Finally, to be clear, CommScope intends to present testimony about *asserted prior art* references and other standards contributions, many of which are one and the same, *disclosed by CommScope* in this case. Thus, TQ Delta's concerns about "prior art that had not previously been disclosed" is unfounded. *See* TQD MIL No. 3 at 7.

Thus, TQ Delta's MIL No. 3 should be denied.

---

[2] This Court routinely allows such testimony. Indeed, *Microsoft Corp. v. i4i Ltd. P'ship* recognized that "new evidence [e.g., prior art] supporting an invalidity defense may 'carry more weight' in an infringement action than evidence previously considered by the PTO." 564 U.S. 91, 110 (2011).

████████████████████████████████████████████

## IV.    RESPONSE TO TQ DELTA'S PROPOSED MIL NO. 4 ON SUPPOSED NEW DAMAGES THEORIES

CommScope's damages expert will not set forth "a new damages theory" at trial like TQ Delta alleges. TQD MIL No. 4 at 8. Each and every opinion that Dr. Becker will set forth at trial is disclosed in his damages report and deposition testimony. Thus, as with TQ Delta's other MILs, the alleged prejudice of "jury confusion" is imagined and not credible.

*First*, CommScope's damages expert is not going to present a new theory at trial. TQ Delta's statement that Dr. Becker "does not discuss additional component costs or total device costs" is false. █████████ to  Dr.  Becker's  report, ████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████. These profits, costs, and sales are different than the Broadcom chip costs that TQ Delta identifies in its motion. TQD MIL No. 4 at 8. Thus, Dr. Becker expressly offered an opinion concerning the profits, costs, and sales of each individual product and should not be precluded from discussing those costs in conjunction with profitability, just as he did in ██████████.

*Second*, TQ Delta's complaints about discovery responses are unfounded. As TQ Delta admits, CommScope *did* provide spreadsheets listing the information that TQ Delta now seeks to preclude. TQD MIL No. 4 at 9. TQ Delta demeans these spreadsheets as "summary spreadsheets" but offers no explanation of why summaries of financial information are inappropriate. Instead, TQ Delta states that CommScope's "interrogatory answer did not provide the detailed information or explanation that would allow these figures to be tested," which appears to be an untimely and belated discovery dispute about the scope of the documents. TQD MIL No. 4 at 9.  TQ Delta could have filed a motion to compel a more complete response, but instead sat idly by as Dr. Becker cited and relied on these spreadsheets as sources of information for his exhibits. ████████████████████ ██████████████████████████████████████████. Thus, combined

████████████████████████

with Dr. Becker's calculation of "sales and profitability" figures, TQ Delta was on notice that CommScope intends to rely on those figures at trial, and TQ Delta's attempt to raise a discovery issue at this stage in the litigation should be rejected.

*Third*, to the extent TQ Delta's motion seeks to exclude CommScope from asking *any* witness to compare proffered royalty rates with unit sales, profits, etc., the request is overbroad. If the Court determines Dr. Becker cannot discuss the numbers set forth in his report or raise the criticisms set forth in TQ Delta's motion, CommScope should not be precluded from raising the issue with TQ Delta's expert, Dr. Putnam, or from a knowledgeable CommScope fact witness.

For the reasons above, the Court should deny TQ Delta's MIL No. 4.

## V.   RESPONSE TO TQ DELTA'S OPPOSED MIL NO. 5 ON ACTUAL USE AND OPERATION

In MIL No. 5, TQ Delta *twice* admits that the issue it seeks to preclude—actual operation and use—is relevant to damages. CommScope even filed an entire motion related to the subject. *See* Dkt. No. 340 (Def.'s Mot. to Limit Damages). Nevertheless, TQ Delta directs the Court to the wrong subject matter (post-2015 infringement theories) and attempts to exclude all argument and evidence concerning these otherwise relevant facts about damages.

### 1.   CommScope has already mooted the alleged prejudice.

The prejudice TQ Delta alleges—that the jury will somehow misinterpret the law on infringement—is both moot and not credible.  As the Court acknowledged, CommScope has already represented that it "will not argue that Plaintiff must prove that the accused devices are taken out of their packaging, plugged in, and turned on." Dkt. No. 169 (Claim Construction Memorandum and Order) at 21–22. This agreement was repeated in CommScope's response to TQ Delta's Motion to Strike Dr. Ransom:

> To avoid unnecessary briefing and to streamline the presentation of the issues at trial, *CommScope will not rely on this argument for purposes of noninfringement.* A failure to implement bonding between transceivers may, of course, demonstrate

9

> a lack of value of the Asserted Patents, but *CommScope will not rely on that notion as a basis for noninfringement.*

Dkt. No. 377 (Def.'s Resp. to Omnibus Motion to Strike) at 8 (emphasis added).

This agreement moots TQ Delta's alleged prejudice. TQ Delta's complaint is that evidence of actual use might lead the "jury to believe that TQD has to prove that CommScope's customers operate the accused products in certain ways, something that the law does not require." TQD MIL No. 5 at 10. But as stated above, CommScope has at multiple times represented it will make no such noninfringement argument for products sold in the relevant damages window, and CommScope confirms that same point again now. In addition, CommScope is not going to instruct the jury on what the law does or does not require. That is the Court's prerogative. Planting an imaginary version of the law on infringement in the jury's mind is simply infeasible. The Court should deny TQ Delta's MIL No. 5 on this basis alone, as TQ Delta failed to muster a credible version of the prejudice it might suffer.

### 2.   TQ Delta seeks to use MIL No. 5 to exclude evidence about damages.

TQ Delta twice admits that evidence of actual use is relevant to the issue of damages. TQD MIL No. 5 at 11, 13. As a result, TQ Delta's MIL No. 5 is not tied to the alleged prejudice it proffers for the Court. In addition, TQ Delta's attempt to minimize the relevance of the damages issue is without merit.

*First*, TQ Delta's request for relief is overbroad and not proportional to the prejudice TQ Delta sets forth. TQ Delta buries its actual request for relief in the last sentence of footnote four. TQD's MIL No. 5 at 11 n.4. There, TQ Delta states that its motion seeks to "preclude such arguments [on actual use] to be made during opening statements, closing arguments, or the examination of other witnesses." *Id.*

This request is overbroad given that the harm TQ Delta alleges is solely tied to infringement. Instead of tying the requested relief to the alleged prejudice about errant noninfringement law, TQ

Delta seeks to preclude *all* witnesses and experts from testifying about these otherwise relevant facts about damages. But no witness other than a noninfringement expert would have made a use-based noninfringement defense in the first place, so there is no reason to grant a MIL that is so broad. At best, TQ Delta's request should have been limited to CommScope's noninfringement experts.

*Second*, TQ Delta's attempt to devalue the relevance of the issue as it relates to damages is nonsensical. As CommScope previously stated, the issue of actual use goes to "a lack of value *of the Asserted Patents*." Dkt. No. 377 (Def.'s Resp. to Omnibus Motion to Strike) at 8. Instead of addressing this, TQ Delta argues that the issue is of "minimal relevance" because the experts rely on a FRAND-based damages model that prohibits *discrimination*. TQD's MIL No. 5 at 10–11 ("[N]o expert opines that TQD can charge a higher or lower royalty based on how much the licensee's customers use a particular mode of operation."). But the value of the Asserted Patents is separate from FRAND-encumbered discrimination.

The Court should reject TQ Delta's attempt to exclude relevant evidence about the value of the Asserted Patents—*e.g.*, an issue related to damages—because it would be highly prejudicial to CommScope. Instead, CommScope should be permitted to present its *facts* on the value of the Asserted Patents unencumbered by a non-sensical MIL directed at a speculative prejudice that does not and cannot exist.

Thus, TQ Delta's MIL No. 5 should be denied.

## VI.   RESPONSE TO TQ DELTA'S OPPOSED REQUESTED CLARIFICATION ON THE COURT'S MIL NO. 13. ON PRIOR LITIGATION

The Court's MIL No. 13 does not require clarification or guidance. Discussing details about other litigations is confusing, time-consuming, and prejudicial, which is why it is guarded by the Court's Standing MIL No. 13. Moreover, TQ Delta's alleged prejudice if prior litigation is *not* discussed is speculative. There is simply no need to discuss other litigations that TQ Delta admits contain no substantial overlap. Through its motion, TQ Delta seeks "guidance" that effectively allows

███████████████████████████

TQ Delta to paint the picture of CommScope as a supposed willful infringer while simultaneously keeping all references to negative litigation outcomes (like those encountered by TQ Delta in a slate of IPRs) away from the jury. TQ Delta's attempt to use the Court's MIL No. 13 as both a sword and shield should be denied, and the Court should enforce MIL No. 13 as written.

### 1. TQ Delta's request for clarification should be denied and the Court's MIL No. 13 should be enforced as written.

*First*, as with the prior requested MILs, TQ Delta's alleged prejudice is not credible. TQ Delta alleges that unless it can tell the jury about adverse interlocutory judgments against CommScope, it "will lead the jury to think that TQD has slept on its rights and therefore is less entitled to relief." TQD MILs at 13. TQ Delta offers no explanation about why the jury would supposedly "think" such a thing. The Court's MIL No. 5 already precludes any argument about equitable relief (such as estoppel or latches) that would apply in such a situation. *See* Court's Standing MIL No. 5. Thus, the jury instructions will not state that TQ Delta is "less entitled to relief" based on the timing of this lawsuit that TQ Delta itself chose to file. Absent a jury instruction, TQ Delta's allegations about what might come to the mind of a juror is speculative.

*Second*, there is no reason to discuss other litigations such as the Delaware litigation because TQ Delta admits the cases have no substantial overlap.  TQ Delta expressly represented to this Court that "[t]he Delaware case does not have substantial overlap with this case" and that "this case involves different parties, different patents, different product lines, and different standards." Dkt. No. 89 (TQD's Resp. to Transfer Mot.) at 2.  Moreover, the majority of the Accused Products in this case were not accused in any prior action. *See, e.g.*, Dkt. No. 378 (Def.'s Resp. to TQD Mot. for SJ) at 4–5. Likewise, different prior art is at issue. *Id.* Thus, introducing evidence about the outcomes of prior litigations would only serve to confuse the jury, which is why the Court's MIL No. 13 prohibits it.

For these reasons, TQ Delta's request for clarification of MIL No. 13 should be denied.

████████████████████████

**2.  If the Court revises its Standing MIL No. 13, then CommScope must be allowed to present its version of the prior litigations to avoid undue prejudice.**

If, however, the Court allows the specifics of any prior litigation, then it is only fair to allow *all* specifics of prior litigations. Permitting TQ Delta to cherry-pick facts it deems favorable while precluding CommScope from doing the same—a scenario that TQ Delta alludes to in its motion— would be unduly prejudicial. It would be prejudicial to permit the jury to hear about interlocutory judgments in 2019 and 2020 without permitting CommScope to explain at least that:

- The interlocutory judgments from Delaware against 2Wire are subject to appeals, stays, cancelled trials, and stays pending IPRs (and all relevant details surrounding those judgments);

- The interlocutory judgments against TQ Delta include a loss for the Family 1 patents on summary judgment;

- In Delaware, TQD dropped the Family 5 trial after an adverse ruling from the Court;

- TQ Delta has received nearly a dozen adverse invalidity judgments to its patent families since 2017 due to the weak nature of its patents; and

- TQ Delta has settled out of numerous PTAB proceedings where trial was instituted and a finding of invalidity—including findings against some of the very patents at issue here, stemming from this litigation—was already deemed substantially likely.

This situation should present an all-or-nothing proposition. The correct resolution is "nothing," but the only feasible alternative is "all." TQ Delta cannot present a one-sided view where TQ Delta "won" prior litigations without actually explaining the context of what happened or while shielding those issues that they lost.

Finally, to the extent any litigation needs to be "discussed," it is to add context to the licenses of third parties. But to that end, the only thing that needs to be stated is that the license was taken as

part of a settlement. CommScope does not believe this kind of statement about a settlement violates the Court's MIL No. 13, as it does not reference any specific litigation. But to the extent "clarity" is needed with respect to MIL No. 13, this is the only clarity warranted.

## VII.   CONCLUSION

For the reasons set forth above, CommScope respectfully requests that the Court deny TQ Delta's requested Motions *in Limine*.

Dated this 21st day of February, 2023

Respectfully submitted,

By: */s/ Ross R. Barton*
Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Email: *ross.barton@alston.com*
      *scott.stevens@alston.com*
      *kirk.bradley@alston.com*
      *stephen.lareau@alston.com*
      *karlee.wroblewski@alston.com*
      *nic.marais@alston.com*
      *erin.beaton@alston.com*
      *mary.riolo@alston.com*
Telephone: 704-444-1000
Facsimile: 704-444-1111

Katherine G. Rubschlager (Cal. Bar No. 328100)
ALSTON & BIRD LLP
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
Email: *katherine.rubschlager @alston.com*
Telephone: 650-838-2004
Facsimile: 650-838-2001

Michael C. Deane (GA Bar No. 498195)
ALSTON & BIRD LLP
1201 West Peachtree St. Suite 4900
Atlanta, GA 30309
Email: michael.deane@alston.com
Telephone: 404-881-7000
Facsimile: 404-881-7777

Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
 FINDLAY CRAFT, P.C.

15

102 N. College Ave, Ste. 900
Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Lana S. Shiferman
Christie Larochelle
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
P:  (617) 570-1000
F:  (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com
clarochelle@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P:  (415) 733-6000
F:  (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

***Attorneys for Defendants
CommScope Holding Company, Inc,
CommScope Inc., ARRIS US Holdings, Inc.,
ARRIS Solutions, Inc., ARRIS Technology,
Inc., and ARRIS Enterprises, LLC***



## CERTIFICATE OF SERVICE

I hereby certify that on Tuesday, February 21, 2023, I electronically filed the foregoing COMMSCOPE'S MOTIONS IN LIMINE with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing upon Counsel of Record, and served a true and correct copy of the above and foregoing document to all counsel of record via electronic mail.

/s/ *Ross R. Barton*
Ross R. Barton

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on February 28, 2023, on all counsel who have consented to electronic service via ECF.

/s/ *Ross R. Barton*
Ross R. Barton