# EXHIBIT J

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| TQ Delta, LLC,<br>　　　　　*Plaintiff,* | |
| v. | Civil Action No.: 2:21-CV-00310-JRG |
| CommScope Holding Company, Inc., *et al.,*<br>　　　　　*Defendants.* | JURY TRIAL DEMANDED<br><br>FILED UNDER SEAL |

## **[PROPOSED] PRELIMINARY JURY INSTRUCTIONS**

## I.      PRELIMINARY INSTRUCTIONS[1]

### A.      General Preliminary Instructions[2]

Members of the Jury,

I have some preliminary instructions to give you before we start with opening statements from the lawyers and then get on to the evidence.

You've now been sworn in as the jurors in this case. And as the jury, you are the sole judges of the facts.  And, as such, you will determine all the facts in this case.  As the Judge, I will give you instructions on the law.  I will address and decide any questions of law that arise during the course of the trial.  I'll handle all matters related to evidence and procedure, and I'm responsible for maintaining an efficient flow of the evidence and maintaining the decorum of the court.

At the end of the evidence, I'll give you detailed instructions about the law to apply in deciding this case.  And I'll give you a list of questions that you are then to answer.  This list of questions is called the verdict form.  And your answers to those questions will need to be unanimous.  And your answers to those questions will constitute the jury's verdict in this case.

---

[1] Submissions that are not agreed to by both Plaintiff TQ Delta LLC ("TQ Delta") and Defendants CommScope Holding Company, Inc., CommScope Inc., Arris US Holdings, Inc., Arris Solutions, Inc., Arris Technology, Inc. and Arris Enterprises, LLC's (collectively, "CommScope") are not highlighted.

Sub Submissions proposed by TQ Delta but not agreed to by CommScope are bracketed and highlighted in green. Submissions proposed by CommScope, but not agreed to by TQ Delta, are bracketed and highlighted in blue.

The parties reserve their respective rights to further object or propose new instructions based on their pending motions or further development at trial.

[2] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 152:18–153:15 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 3:16–4:10 (E.D Tex. March 21, 2019).

### B.      Introduction to Patents[3]

I now want to briefly tell you what this case is about.  This case involves a dispute relating to nine United States patents.  I know that each of you saw the patent film this morning, but I need to give you some additional instructions now and on the record about a patent and how one is obtained.

Patents are either granted or denied by the United States Patent and Trademark Office, sometimes simply called, for short, the PTO.

Now a patent is a form of property called intellectual property [and it is granted to protect an invention].  And like all other forms of property, a patent may be bought or sold.

If the PTO grants the inventor a patent, that means that for 20 years from the date of the patent application, the patent owner can keep others from making, using, or selling that invention within the United States or from importing it into the United States without the patentholder's permission.  The patent owner is entitled to go to court to enforce a patent against somebody he believes to be infringing the patent.  That is what we have in this case.

[Everyone, however, has the right to use existing knowledge and principles.  A patent cannot remove from the public the ability to use what was known or obvious before the invention was made or patent protection sought.  Thus, to be entitled to patent protection, an invention must be new, useful, and non-obvious.[4]]

---

[3] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 153:16–159:5 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 4:11–9:17 (E.D Tex. March 21, 2019); *Erfindergemeinschaft UroPep GbR v. Eli Lilly Co.*, No. 2:15-cv-01202-WCB, Preliminary Jury Instructions, Dkt. No. 341, Tr. at 109:17–110:25 (E.D Tex. April 17, 2017); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Preliminary Jury Instructions, Dkt. No. 412, Tr. at 26:4–30:7 (E.D Tex. November 27, 2013).

[4] **Authority**: Adapted from *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 41:–42:11 (E.D. Tex. Aug. 28, 2018).

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO, the United States Patent and Trademark Office. The PTO is an agency of the United States Government, and it employs trained examiners who review patents and applications for patents.

The application submitted to the PTO includes within it what is called a specification.  The specification contains a written description of the claimed invention, telling what the invention is, how it works, how to make it, and how to use it.  The specification concludes or ends with one or more numbered sentences.  These numbered sentences are the patent claims.

When the patent is eventually granted by the PTO, the claims, ladies and gentlemen, define the boundaries of its protection and give notice to the public of those boundaries.

Patent claims exist in two forms referred to as either independent or dependent claims.  An independent claim does not refer to any other claim in the patent.  It is independent.  It's not necessary to look at any other claim to determine what an independent claim covers.

On the other hand, a dependent claim refers to at least one other claim in the patent.  A dependent claim includes each limitation or element of that other claim or claims to which it refers, or as we sometimes say, from which it depends, as well as those additional limitations or elements recited within the dependent claim itself.  Therefore, to determine what a dependent patent claim covers, it's necessary to look at both the dependent claim itself and the independent claim or claims to which it refers or from which it depends.

The claims of the patents-in-suit in this case use the word "comprising."  Comprising means including or containing.  A claim that includes the work "comprising," ladies and gentlemen, is not limited to the methods or devices having only the elements that are recited in the claim but also covers methods or devices that add additional elements.

Let me give an example.  If you take a claim that covers a table and the claim recites a table comprising a tabletop, legs, and glue, the claim will cover any table that contains these structures, even if the table also contains other additional structures, such as a leaf to go in the tabletop or wheels to go on the ends of the legs.

Now, that's a simple example using the word comprising and what it means.  In other words, it can have other features in addition to those covered by the patent.

Now, after the applicant files the application, an examiner reviews the application to determine whether or not the claims are patentable, that is to say that they're appropriate for patent protection, and whether or not the specification adequately describes the invention claimed.

In examining a patent application, the examiner reviews certain information about the state of the technology at the time the application was filed.  The PTO searches for and reviews this type of information that is publicly available or that is submitted by the applicant.  This type of information is called prior art.  The examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time.

Prior art is defined by law, and I will give you, at a later time, specific instructions as to what constitutes prior art.  However, in general, prior art includes information that demonstrates the state of the technology that existed before the claimed invention was made or before the application for a patent was filed.

A patent contains a list of certain prior art that the examiner has considered.  The items on this list are called the cited references.  Now, after the prior art search and examination of the application, the examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim in the application to be patentable, in which case it would be allowed.  This writing from the examiner to the applicant is called an office action.  Now,

if the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try and persuade the examiner to allow the claims.  The applicant also has a chance to change the claims or to submit new claims.   The papers generated during these back-and-forth communications between the examiner and applicant are called the prosecution history.

This process may go back and forth between the applicant and the examiner for some time until the examiner is satisfied that the application meets the requirements for a patent.  And in that case, the application issues a United States Patent.  Or, in the alternative, if the examiner ultimately concludes that the application should be rejected, then no patent is issued. Sometimes patents are issued after appeals within the PTO or to a court.

While each United States patent that is issued by the PTO is presumed to be valid under the law, a person accused of infringement has the right to argue here in Federal Court that a claimed invention in a patent is invalid. It's your job, ladies and gentlemen, as the jury to consider the evidence presented by the parties and determine independently and for yourselves whether or not the Defendant has proven that a patent is invalid.

### C.      Introduction to Standard Essential Patents[5]

[Now, this case is about a license to patents that relate to DSL technology.  However, unlike most cases, the license and the patent at issue are based on a special framework.]

Now, during the course of the trial, it is likely that you'll hear the patents-in-suit referred to as standard essential patents or "SEPs."

---

[5] **Authority**: Adapted from *Optis Wireless Tech. LLC v. Apple, Inc.*, No. 2:19-cv-66-JRG, Preliminary Jury Instructions, Dkt. No. 490, Tr. at 184:6-186:15 (E.D. Tex. Aug. 12, 2020); *HTC Corporation, et al., v. Telefonaktiebolaget LM Ericsson, et al.*, No. 6:18-cv-00243-JRG, Preliminary Jury Instructions, Dkt. No. 465, Tr. at 117:13–121:16 (E.D. Tex. Feb. 21, 2019)

Standard essential patents, ladies and gentlemen, are patents that have been declared to be a part of a standard in a certain field. This standard is set and maintained by a global body to ensure that certain processes and devices operate and work in the same way anywhere in the world.

For example, it would be counterproductive for your cell phone to work only in the United States such that if you got on a plane and flew to London, England, and got off of the airplane, your cell phone that you use every day at your home in Texas wouldn't work in the United Kingdom or in Europe or in Asia or anywhere else on the planet.

To prevent this, standard technologies are created such that telecommunication devices like your cell phones interwork across different places in the world and different brands of devices. Patents related to such a common and standard technology are recognized as impacting that standard technology and are contributed to and declared by their owner to be essential to that standard.  These are called standard essential patents.

[In order to help you better understand the dispute about this license and these patents, I'm going to give you some general instructions on what this special framework is.

As you know, ladies and gentlemen, we live in a world that is technologically linked and interconnected.  Whether it's through the Internet, our mobile phones, we can instantly contact any other person anywhere in the world at any time through any number of networks.

And this ability to connect does not depend on whether you're using an iPhone, an Android, a PC, a Mac, or any other type of device.  The reason these different devices can connect to and operate on various networks is because of a process called standardization.  A standard is a uniform design for a product.

Companies make devices in accordance with the same standard so the devices made by different manufacturers can connect and interact with one another throughout the communications network.

These standards are set by what are known as standard setting organizations.  You may sometimes see this referred to as SSO's, a standard setting organization.]

The standard setting organization in this case is the International Telecommunication Union.  The International Telecommunication Union is often referred to as the "ITU."  The ITU oversees the development of standards related to information and communications technologies.  Because the patents-in-suit are standard essential patents, you will hear about the standards and the contributions of these patents to the standard, all as part of this trial.

[One example of the technologies the ITU oversees is digital subscriber line, or "DSL" technology.

Now, ladies and gentlemen, if a patent implements technology that is covered by a standard and it would be not technically possible to implement the standard without infringing the patents contributed to that standard, then the patent is called a "standard essential patent."  And that will often be referred to by the abbreviation "SEP," a standard essential patent.

This mean that if a company makes a device that implements a standard that is covered by a standard essential patent, an SEP, then the company may need to obtain a license to use that technology.]

Now, The ITU has a certain policy called its Common Patent Policy, and this is sometimes shortened simply to "CPP," the Common Patent Policy.  The Common Patent Policy requires the owners of standard essential patents to license their patents on specific terms.

[The ITU requires that owners of standard essential patents that relate to DSL technology grant license with other parties on a non-discriminatory basis on reasonable terms and conditions. And you will hear this phrase, "reasonable terms and conditions and on a non-discriminatory basis," throughout trial.  And it is often reduced to an abbreviation, "RAND," reasonable and non-discriminatory.  You'll hear this abbreviation over and over.  RAND means "reasonable and non-discriminatory."  I will give you more detailed instructions on these matters at the end of trial.]

[If a company agrees to license its standard essential patents on RAND terms and conditions, then that commitment forms a contract between that patentholder and the representative standards setting organization.

So, for example, if Company A owns an SEP that relates to DSL and is prepared to grant licenses on RAND, reasonable terms and conditions and a non-discriminatory basis, then that promise to do so form a contract between Company A, the contributing patentholder, and the ITU.

Now, if a second company, we'll call it Company B, implements a standard which will require it to use those standard essential patents of Company A that have been contributed to the standard, then Company B is said to be a third-party beneficiary to the contract between Company A and the respective standards setting organization.

This means that Company B can enforce the terms of the contract between the standard essential patent owner and the standard setting organization.  In our example, Company B can enforce the contract between Company A and the ITU.]

### D.      The Positions of the Parties[6]

Now, to help you follow the evidence in this case, I'll give you a brief summary of the parties in this case and their positions.  As I'm sure you all know, the party that brings a lawsuit is called the Plaintiff.  In this case, the Plaintiff is TQ Delta, LLC, and you'll hear them referred to throughout trial simply as either Plaintiff or TQ Delta.

As you know, the party against whom a lawsuit is brought is called the Defendant.  In this case, the Defendants are CommScope Holding Company, Inc.; CommScope Inc.; ARRIS US Holdings, Inc.; ARRIS Solutions, Inc.; ARRIS Technology, Inc.; and ARRIS Enterprises, LLC.  These parties are either referred to collectively as CommScope or as the Defendants.

Now, as I told you during jury selection, this is a case of alleged patent infringement.  And, as I mentioned, there are nine separate United States patents that have been asserted in this case.

The first asserted patent in this case is United States Patent No. 7,453,881.  And patents, you should know, are commonly referred to by their last three digits.  So, in this case, Patent No. 7,453,881 will be referred to as the '881 patent.

The other eight asserted patents are as follows: U.S. Patent No. 7,570,686, which will be referred to as the '686 patent, U.S. Patent No. 7,844,882, which will be referred to as the '882 patent, U.S. Patent No. 8,090,008, which will be referred to as the '008 patent, U.S. Patent No. 8,276,048, which will be referred to as the '048 patent, U.S. Patent No. 8,462,835, which will be referred to as the '835 patent, U.S. Patent No. 8,468,411, which will be referred to as the '411

---

[6] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 159:6–162:19 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 8:18–12:6 (E.D Tex. March 21, 2019); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Preliminary Jury Instructions, Dkt. No. 297, Tr. at 9:2–11:23 (E.D. Tex. Aug. 28, 2018).

patent, U.S. Patent No. 9,154,354, which will be referred to as the '354 patent, and U.S. Patent No. 10,833,809, which will be referred to as the '809 patent.

Now, these patents can be referred to and will be referred to at various times of trial collectively and together as the Patents-in-Suit.  They're sometimes also called the Asserted Patents.  [And these patents generally related to DSL technology.]

Now, the Plaintiff in this case, TQ Delta, contends that the Defendants, CommScope, are and have willfully infringed certain claims of one of the nine Patents-in-Suit by importing, making, or selling products that include TQ Delta's patented technology.  TQ Delta also contends that CommScope has induced and continues to induce to infringement by others.  TQ Delta further contends that CommScope has and continues to contribute to the infringement of others.  TQ Delta also contends that it's entitled to money damages as a result of such infringement.

Now, the Defendants, CommScope, deny that they are infringing or have infringed any of the claims of the Patents-in-Suit asserted by the Plaintiff, and they contend that the asserted claims of the Patents-in-Suit are invalid as being obvious in the light of prior art. [In addition, CommScope denies that it has willfully infringed the Patents-in-Suit and denies that TQ Delta is entitled to any damages.]

The Defendants, CommScope, also argue that the Plaintiff, TQ Delta, has breached its obligations to offer the Asserted Patents on [non-discriminatory basis and on reasonable terms and conditions] [reasonable and non-discriminatory], or RAND, R-A-N-D, terms and conditions.

TQ Delta denies that it has breached its obligations to offer the Asserted Patents on RAND terms and conditions.  I will give you further instructions on RAND terms and conditions at the conclusion of this trial.

[Your job is to decide whether or not the asserted claims of the nine Patents-in-Suit have been infringed and whether the asserted claims of the asserted patents are invalid.

If you decide that any claim of the Patents-in-Suit has been infringed and is not invalid, and if you decide that TQD has not breached its obligation to offer the Asserted Patents on RAND terms, you'll then need to decide what amount of money damages are to be awarded to TQ Delta as compensation for such infringement.  You will also need to decide whether or not the infringement by the Defendants has been willful.[7]]

Now, I know there are new words, and I know there are a lot of new concepts that have been thrown at you today, ladies and gentlemen. I'm going to define a lot of these words and concepts for you as we go through my instructions. The attorneys are going to discuss many of these in their opening statements. The witnesses are going to help you through their testimony to understand these terms and concepts.

### E.      Role of the Court and Overview of Law[8]

Now, my job in this case is to tell you what the law is, to handle matters and rulings on evidence and procedure, and to oversee the conduct of the trial as efficiently as possible, and to maintain the proper decorum of this courtroom.

---

[7] **Authority**: Adapted from *Optis Wireless Tech. LLC v. Apple, Inc.*, No. 2:19-cv-66-JRG, Preliminary Jury Instructions, Dkt. No. 490, Tr. at 186:3-12 (E.D. Tex. Aug. 12, 2020); *Rembrandt Wireless Technologies, LP v. Samsung Electronics Co.,* No. 13-cv-00213-JRG, Preliminary Jury Instructions, Dkt. No. 290 at 15:22-16:4 (E.D. Tex. Feb. 9, 2015).

[8] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 162:20–167:23 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 12:7–17:2 (E.D Tex. March 21, 2019); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Preliminary Jury Instructions, Dkt. No. 297, Tr. at 11:24–16:8 (E.D. Tex. Aug. 28, 2018).

In determining the law, it's specifically my job to determine the meaning of the claim language from the asserted claims of the patents-in-suit that needs interpretation.  I have already determined the meanings of the claims of the patents-in-suit, and you must accept the meanings or constructions that I give you and use those meanings when you decide whether any particular claim has or has not been infringed and whether or not any particular claim is invalid.  And you're going to be given a document, ladies and gentlemen, in a few moments that will reflect these meanings or constructions that I have determined.

Now, for any of the claim language or claim terms that I have not provided you with a specific definition or construction, you should apply the plain and ordinary meaning.  But if I've provided you with a definition, sometimes called a construction, you are to apply my definition to those terms throughout the case.

However, my interpretation of the language of the claims should not be taken as an indication by you that I have a personal opinion or any opinion at all regarding the issues of infringement and validity.  Those issues, ladies and gentlemen, are yours as the jury to decide, and they're yours to decide alone.

Now, I'll provide you with more detailed instructions on the meanings of the claims before you retire to deliberate and reach your verdict.  In deciding the issues that are before you, you will be asked to consider specific legal rules, and I'll give you an overview of those rules now, and then at the conclusion of the case, I'll give you more detailed instructions.

The first issue you're asked to decide is whether the Defendants, CommScope, has infringed any of the asserted claims of the patents-in-suit.  Infringement, ladies and gentlemen, is assessed on a claim-by-claim basis.  And TQ Delta, the Plaintiff, must show by a preponderance

of the evidence that a claim has been infringed.  Therefore, there may be infringement as to one claim but no infringement as to another claim.

There are also a few different ways that a patent claim can be infringed, and I'll explain the requirements for each of these types of infringement to you in detail at the conclusion of the case.  But, in general, a defendant may infringe an asserted patent by making, using, selling, or offering for sale in the United States or importing into the United States a product that meets all of the requirements of a claim of the asserted patent.  As I say, I'll provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.

Now, the second issue that you'll be asked to decide is whether any of the asserted patents are invalid.  Invalidity, ladies and gentlemen, is a defense to infringement.  Therefore, [even though the United States Patent and Trademark Officer has allowed the asserted claims and issued a patent and even though the issued] [a] patent is presumed under the law to be valid, you, the jury, must decide whether those claims are invalid after hearing the evidence presented in this case.

[A patent claim can be found to be invalid for a number of reasons, including because it is not new or is obvious. Even though a claim is not anticipated because every element of a claim is not shown or sufficiently described in a single piece of prior art, the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.[9] ] [A patent claim may be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.]  Now, you will need to consider a number of questions in deciding whether the inventions claimed in the asserted patents

---

[9] **Authority**: Adapted from *Optis Wireless Tech. LLC v. Apple, Inc.*, No. 2:19-cv-66-JRG, Preliminary Jury Instructions, Dkt. No. 490, Tr. at 189:11-13 (E.D. Tex. Aug. 12, 2020); *Rembrandt Wireless Technologies, LP v. Samsung Electronics Co.,* No. 13-cv-00213-JRG, Preliminary Jury Instructions, Dkt. No. 290 at 18:11-19:9 (E.D. Tex. Feb. 9, 2015).

are obvious.  And I'll provide you with more detailed instructions on those questions at the conclusion of the trial.

If you decide that any claim of the patents-in-suit has been infringed and that claim is not invalid, then you'll need to decide whether the infringement by the Defendants has been willful.

[You will also be asked to decide whether TQ Delta breached its obligation to offer its essential patents on RAND terms, and whether CommScope is entitled to any damages as a result of TQ Delta's breach.]

You will also need to decide what amount of money damages should be awarded to the Plaintiff, in this case TQ Delta, to compensate it for that infringement.  A damages award, ladies and gentlemen, must be adequate to compensate the patentholder for the infringement, and in no event may a damages award be less than what the patentholder would have received if it had been paid a reasonable royalty for the use of its patent.  However, the damages that you award, if any, are meant to compensate the patentholder and they're not meant to punish the Defendant.  You may not include in any damages award an additional amount as a fine or penalty above what is necessary to fully compensate the patentholder for any infringement that you have found. Moreover, damages cannot be speculative, and the Plaintiff, TQ Delta, must prove the amount of its damages for the alleged infringement by a preponderance of the evidence.  I'll give you more instructions on the calculation of damages for the Defendants' alleged infringement of the patents-in-suit at the conclusion of the trial, including by instructing you on the specific instructions regarding the calculation of a reasonably royalty.  However, ladies and gentlemen, the fact that I am instructing you about damages does not mean that TQ Delta is or is not entitled to recover damages.

### F.    Standard of Proof[10]

Now, there are two standards of proof that you're going to be asked to apply to that evidence, depending on the issue that you're deciding.  As the jury, you may apply the burden known as a preponderance of the evidence, as well as a different burden of proof known as clear and convincing evidence.  I'm going to give you brief instructions on those different burdens of proof.

You need to understand that a party who has the burden of proof on any claim by a preponderance of the evidence means that you, the jury, must be persuaded by the credible or believable evidence that that claim or defense is more probably true than not true.  Sometimes this is talked about as being the greater weight and degree of credible testimony.

I'll give you an illustration of this standard of proof.  When the case is over and all of the evidence has been received and you're asked to answer the questions that comprise your verdict, consider that you will place all the evidence on the equal and balanced Scales of Justice.  If the party who has the burden of proof after all the evidence is placed on those scales, if those scales tip, even if it's ever so slightly in favor of that party, then they've met their burden of proof by a preponderance of the evidence.

But on the other hand, if a party has the burden of proving a defense by clear and convincing evidence, it means that you, the jury, must have an abiding conviction that the truth of the parties' factual contentions is highly probable.  That's a higher standard of proof than a preponderance of the evidence.

---

[10] **Authority**: Adapted from *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Preliminary Jury Instructions, Dkt. No. 412, Tr. at 35:23–36:23 (E.D Tex. November 27, 2013); No. 2:07-cv-563-RSP, Preliminary Jury Instructions, Dkt. No. 379, Tr. at 39:15–41:16 (E.D Tex. May 14, 2012).

As an example of this higher standard, after all the evidence is in and you're asked to answer the questions that will comprise your verdict, if a party who has a burden of proof by clear and convincing evidence, if all the evidence in the case is placed on the scales and if those scales tip significantly toward that party, then they've met the burden of clear and convincing evidence. But if those scales tip less so, even if they tip ever so slightly, that is not adequate to meet clear and convincing evidence.

And, ladies and gentlemen, there is a third burden of proof used only in criminal cases called beyond a reasonable doubt, and that has no application in this case whatsoever.  Clear and convincing evidence is less than beyond a reasonable doubt, but it is more than a preponderance of the evidence.

### G.     Credibility of Witnesses[11]

Now, over the course of the trial, you're going to be hearing from a number of different witnesses, and I want you to keep an open mind while you're listening to the evidence and not decide any of the facts until you have heard all of the evidence.

And this is important, ladies and gentlemen.  While the witnesses are testifying, remember, you, the jury, will have to decide the degree of credibility and believability to allocate to each of the witnesses and the evidence that they give.

So, while the witnesses are testifying, you should be asking yourselves things like this:

Does the witness impress you as being truthful?

---

[11] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 167:24–168:24 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 17:3–18:3 (E.D Tex. March 21, 2019); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Preliminary Jury Instructions, Dkt. No. 412, Tr. at 35:23–36:23 (November 27, 2013); No. 2:07-cv-563-RSP, Preliminary Jury Instructions, Dkt. No. 379, Tr. at 40:15–41:10 (E.D Tex. May 14, 2012).

Did he or she have a reason not to tell the truth?

Does he or she have any personal interest in the outcome of the case?

Does the witness seem to have a good memory?

Did he or she have the opportunity and ability to observe accurately the things that they testified about?

Did the witness appear to understand the questions clearly and answer them directly?

And, of course, does the witness' testimony differ from the testimony of other witnesses?

And if it does, how does it differ?

These are some of the kinds of things that you should be thinking about while you're listening to each witness during the trial of this case and while each and every witness testifies from the witness stand.

### H.    Expert Witnesses[12]

Also, ladies and gentlemen, I want to talk to you briefly about expert witnesses.  When knowledge of a technical subject may be helpful to you, the jury, a person who has special training and experience in that particular field—we call him or her an expert witness—is permitted to testify to you about his or her opinions on those technical matters.

However, you're not required to accept an expert witness' or any other witness' opinions at all.  It's up to you to decide who to believe and who not to believe and whether an expert witness or any witness, for that matter, is correct or incorrect about what he or she tells you.

---

[12] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 168:25–169:22 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 17:3–19:4 (E.D Tex. March 21, 2019); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Preliminary Jury Instructions, Dkt. No. 297, Tr. at 17:24–18:2 (E.D. Tex. Aug. 28, 2018).

Now, I anticipate that there will be expert witnesses testifying in support of both sides in this case.  But when an expert witness is called to testify, it will be up to you to listen to their qualifications, and when they give an opinion and explain the basis for it, you'll have to evaluate what they say, whether you believe it, and to what degree, if any, that you want to give it weight.

As I said, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

## I.      Deposition Testimony[13]

Now, during the course of the trial, it's possible that there will be testimony from one or more witnesses that is going to be presented to you through what's called a deposition.  In trials like this, it's difficult and sometimes almost impossible to get every witness physically present in court to testify at the same time.  Therefore, before the trial begins, the lawyers for both sides take the depositions of the witnesses.  In a deposition, the witness is present and sworn and placed under oath—just as if he or she were personally in court—a court reporter is present, and the lawyers for both Plaintiff and Defendant are present.

The witness is asked questions and gives answers to those questions under oath.  And those answers to the questions, along with the questions themselves, are taken down and transcribed and recorded.

Often in these depositions, in addition to taking down the written version of the questions and answers, the actual deposition is recorded by video so that you can see the witness, hear the question asked, and hear the answer given.

---

[13] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 166:23–171:21 (E.D Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Preliminary Jury Instructions, Dkt. No. 297, Tr. at 18:3–25 (E.D. Tex. Aug. 28, 2018).

These depositions generally, ladies and gentlemen, go on for several hours at a time.  If a witness is going to be presented at trial through a deposition and he or she cannot appear in person, then portions of that deposition will be selected by the parties to be played to the jury as that witness' testimony.

And you will not have to listen to a seven-hour deposition. You may hear a few minutes or some portion of it that has been selected by the plaintiff and defendant to be presented to you from that witness.

So, when you see deposition testimony that will be played for you, if it looks like there are places where it is spliced together or joined together, that's so the part that's not important for you to hear is cut out, and you don't have to listen to seven hours straight to get 20 or 30 minutes' worth of important testimony before you.

So, if you see areas in the deposition that look like they're spliced or there's a transition, that's because there was a splice or a transition. But that's to save you a lot of time and effort.  The important part, the part that the plaintiff and the defendant believe that you should hear as evidence in this case, will be played to you as deposition testimony.

And I want to remind you, ladies and gentlemen, that deposition testimony is entitled to the same consideration and is to be evaluated by you, the jury, in the same way as if the witness had appeared in Court and testified live from the witness stand in open court.

### J.        Ruling on Objections[14]

Now, during the course of the trial, it's possible that the lawyers will periodically make certain objections, and when they do, I will give rulings on those objections.  It's the duty of an

---

[14] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 172:13–175:1 (E.D Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Preliminary Jury Instructions, Dkt. No. 297, Tr. at 19:1–21:3 (E.D. Tex. Aug. 28, 2018).

attorney to object on each side of the case if the other side purports to offer testimony or other evidence that the objecting attorney believes is not proper under the rules of the Court or the orders of the Court.

Now, upon allowing the testimony or other evidence to be introduced over an objection of an attorney, the Court does not, unless expressly stated, indicate an opinion about the weight or effect of that testimony.  As I've said before, you are the sole judges of the credibility and believability of all the witnesses and the weight and effect, if any, to give to the testimony that's presented through the course of this trial.

Now, I want to compliment all the parties in this case and their counsel because prior to this trial today, both sides have worked with the Court very diligently to go through the exhibits that will be presented in this trial.  And any exhibits proposed by either party that the other side has objected to, the Court has considered those objections in earlier pre-trial hearings before you were selected and seated.

And I've heard all the arguments, I've seen all the documents, and I've already decided what is admissible.  And in those cases, the objections have been overruled and the document has been considered to be an exhibit.  Or in those cases where I think the document is not admissible under the Rules of Evidence, then I have sustained the objection, and the document is not a part of this case, and you'll never see it.

That means, ladies and gentlemen, that from that list of pre-admitted exhibits that the Court's already acted on and approved as to its admissibility, you don't have to sit through all those arguments, and you don't have to hear the back-and-forth between the lawyers about whether it is or is not admissible under the Rules of Evidence.  I've already done that.  And with their effort and my effort together, we have saved you hours and hours of time listening to all of that.

We are now in a position where all those documents have been dealt with, and either side can show you any item from the list of exhibits that I've already approved and simply show it to you and use it over the course of the trial without a formal offer, without a predicate, without an argument, without a dispute.

However, it's still possible that objections may arise during the course of trial, and in that case, I will rule on them.  If I should sustain an objection to a question addressed to a witness, then you must disregard the question entirely, and you can draw no inference from its wording or speculate about what the witness would have said if I had allowed him or her to answer the question.

On the other hand, ladies and gentlemen, if I overrule an objection to a question addressed to a witness, then the witness will answer the question, and you should consider the answer and the question just as if no objection had been made.

### K.    Comments on the Evidence[15]

Now, you should know that the law of the United States permits a United States District Judge to comment to the jury regarding the evidence in the case, but such comments from the Judge on the evidence are only an expression of the Judge's opinion. And the jury can disregard those comments in their entirety as I've said before, you, the jury, are the sole judges of the facts. You are the sole judges of the credibility and believability of the witnesses and how much weight, if any, to give to all of the testimony that's presented to you over the course of the trial.

---

[15] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 175:2–175:20 (E.D Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Preliminary Jury Instructions, Dkt. No. 412, Tr. at 45:5–23 (E.D Tex. November 27, 2013).

So, even though the law of the United States permits me to offer comments on the evidence, as I told you during jury selection, I'm going to work very hard not to do that and not to indicate to you what I think about any of the evidence presented over the course of the trial.  Evaluating and considering the evidence and from determining what the facts are in this case is your job, ladies and gentlemen.  It's not my job.

## L.      The Written Transcript[16]

Now, the court reporter in front of me is taking down everything that's said in the courtroom. And the transcription of everything that's said over the course of the trial is being prepared in case there is an appeal of this case or for other purposes, but I want you to understand it is not being prepared so that you will have it to use as a resource during your deliberations after you've heard all the evidence. You're not going to have a written version of all this testimony. You're going to have to rely on your memories of the evidence over the course of the trial.

## M.      Juror Notebooks[17]

Now, in a moment, each member of the jury is going to be given a juror notebook.  And in the back of those notebooks, you'll find legal pads, and you'll find a pen in the front pocket where you can make notes as the witnesses testify over the course of the trial.

It's up to each member of the jury to decide whether you want to make notes, and if you do, how detailed you want those notes to be.  But, remember, any notes taken by any member of the jury are for that juror's personal use only.  You still have to rely on your memory of the

---

[16] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 175:21–176:6 (E.D Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Preliminary Jury Instructions, Dkt. No. 297, Tr. at 21:23–22:4 (E.D. Tex. Aug. 28, 2018).

[17] **Authority**: Adapted from *Solas Oled Ltd v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 176:7–178:25 (E.D Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Preliminary Jury Instructions, Dkt. No. 297, Tr. at 22:5–24:19 (E.D. Tex. Aug. 28, 2018).

evidence.  And that's why you need to pay close attention, as I'm sure you will, to the testimony of each and every witness.

You should not abandon your own recollection because some other juror's notes indicate something differently.  The notes that you take are to refresh your recollection, and that's the only reason you should be taking them.

I'm going to ask our Court Security Officer at this time to pass out these juror notebooks to the members of the jury.

Thank you.

Ladies and gentlemen, in these notebooks, you'll see that you each have a copy of each of the nine patents-in-suit.  You're also going to find a section for the witnesses that may testify in this case.  And for each witness that may testify, there should be a separate tabbed page for that witness and his or her picture superimposed at the top of the page and his or her name there as well, identifying the witness. The remainder of those pages have ruled lines for note taking if you choose to do so.

You'll also find a chart in there that provides you with the Court's construction or definitions of certain parts of the language from the asserted claims.  Those are the definitions or constructions that I told you I have already reached, and you must apply my constructions or definitions to that claim language in deciding the issues that you are required to decide.

You should find a chart with on one side the language from the claims that needed to be construed or interpreted by the Court, and directly across from it the actual construction or definition that the Court has already reached and given to you. You must use my definitions or constructions as you discharge your duty as jurors.

And, again, you should find a new three-hole punched legal pad in the back for additional note taking.

Now, ladies and gentlemen, these notebooks should be in your possession throughout the trial.  They're not to be left around loosely.  They should either be with you in the jury box where you are now, or they should be on the table in the jury room.  At the end of each day, I'm going to ask you to leave them on the table in the jury room as you exit the courthouse and go to your respective homes.  They'll be there in the morning when you come back.

There may be one slight exception to this rule, and that is over the course of the trial, we may take a short recess or break where I will simply say, because I know you're not going to be out of the jury box very long, I may say, ladies and gentlemen, you can simply close and leave your notebooks in your chairs. And in that case, you can simply close them, put them where you're seated, and they'll be there when you get back.

But unless I give you those kinds of instructions, they either need to be in your possession, or they need to be on the table in the jury room and not left out in the courtroom.

### N.     Outline of Trial[18]

Now, in a moment, we're going to get to the lawyer's opening statements.  These opening statements, ladies and gentlemen, are designed to give you a roadmap of what each side expects that their evidence will show you.  [Opening statements are intended to assist you in understanding the evidence.]  You should remember throughout the trial, ladies and gentlemen, that what the lawyers tell you is not evidence.  I'll say that again.  What the lawyers tell you is not evidence.

---

[18] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 179:1–181:25 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 26:17–28:20 (E.D Tex. March 21, 2019).

The evidence in this case will be the admitted exhibits and the sworn testimony from the witnesses from the witness stand who testify to you subject to cross-examination.   And that includes any witness who presents testimony through a sworn deposition where you see and hear the testimony, but the person is not physically present the courtroom.   They've nonetheless been sworn and are under oath and are subject to cross-examination, and that deposition testimony, and the live testimony of the witnesses who appear and testify under oath in this courtroom and the exhibits that you are shown that the Court has admitted into evidence, those are the evidence in this case, nothing else, and certainly not what the lawyers tell you.

Now, what the lawyers tell you is their impression of what they believe the evidence is, and they have a duty to try and point out to you where they believe the evidence supports their side of the case.   But, remember, what they're telling you is not evidence itself.

Now, after the lawyers present their opening statements, the Plaintiff will go forward with its evidence and its case.   This is called the Plaintiff's case-in-chief, and the Plaintiff will call its witnesses and present its testimony.   After the witnesses have been called and testified, cross-examined, and released by the Court and all the Plaintiff's witnesses have been called, the Plaintiff will rest its case-in-chief.

And when the Plaintiff rests its case-in-chief, then we will transition to the Defendants' case-in-chief, and the Defendants will call their witnesses and present its testimony, and its witnesses will be cross-examined by the Plaintiff.   And when all the Defendants' testimony and witnesses have been presented, then the Defendants will rest their case-in-chief.

At that point, the rules allow for the Plaintiff to present what are called rebuttal witnesses to rebut what the Defendants have shown in its case-in-chief.   The Plaintiff is not required to present rebuttal witnesses.   We won't know until we get to that point if the Plaintiff chooses to.

But if the Plaintiff calls rebuttal witnesses, then those witnesses will testify in the same way and will be subject to cross-examination by the Defendants.  And when all the Plaintiff's rebuttal witnesses, if any, have testified, then at that point, ladies and gentlemen, you will have heard all the evidence in this case.

Once you've heard all of the evidence in this case, then I will present to you my final instructions on the law that you are to apply.  Those instructions from the Court to the jury are sometimes called the Court's charge to the jury.  Once I've given you my charge, my final instructions, then the lawyers for both sides will present their closing arguments to you.

And once the closing arguments have been completed by both sides, then I will instruct you to retire to the jury room.  Only when all the evidence is complete and you retire to the jury room to deliberate and reach your verdict, only then is it proper for you to discuss the case among yourselves.[19]

I will send with you the verdict form that contains the questions in it that you are to answer. At that time, but not before, you will be obligated to talk to each other about the evidence as a part of addressing those questions and doing your best to come to a unanimous answer to each of those questions in the verdict form.

---

[19] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 181:16-25 (E.D Tex. March 8, 2021); *Rembrandt Wireless Technologies, LP v. Samsung Electronics Co.,* No. 13-cv-00213-JRG, Preliminary Jury Instructions, Dkt. No. 290 at 30:8-13 (E.D. Tex. Feb. 9, 2015).

### O.      Conclusion[20]

As I've said earlier, you are not to discuss the case and you are not to communicate about the case with anyone in any way, including the eight of yourselves, until such time as all the evidence has been heard, you've received my final instructions, you've heard counsel's closing arguments, and I instruct you to retire to the jury room and to deliberate and consider your verdict in this case. That's when it all changes. That's when you must discuss the evidence with each other in attempting to answer those questions and come to a unanimous decision about the proper answers to those questions.

Let me also remind you, as I did earlier, that throughout this trial, there are going to be unavoidable times when you are in close proximity or pass right by one or more of these lawyers, one or more or more of these party representatives, one or more of these witnesses, or some support person from each trial team.  You can look out in this courtroom.  Most of the people out there are not spectators.  Most of the people out there are associated with one side or the other in this case. And when you come in close proximity to one or more of these folks, they're not going to speak. They're not going to be friendly.  They're not going to stop and start a conversation with you.  And when that happens, don't hold it against them.  Don't think they're being rude or unfriendly or penalize them in any way.  They are simply doing what I have instructed them they have to do. And please keep that in mind.  Now, with these instructions, ladies and gentlemen, we will proceed to hear opening statements from the parties. We'll begin with the Plaintiff's opening statement.

---

[20] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 182:1–183:9 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 28:21–29:18 (E.D Tex. March 21, 2019).