# EXHIBIT K

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TQ Delta, LLC,<br>　　　　　　*Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>　　　　　　*Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED<br><br>FILED UNDER SEAL |

**[PROPOSED] FINAL JURY INSTRUCTIONS**

## I.      FINAL INSTRUCTIONS[1]

### A.      Introduction[2]

Ladies and gentlemen of the jury, you have now heard all the evidence in this case, and I will now instruct you on the law you must apply.

Each of you are going to have your own personal copy of these final jury instructions that I'm about to give you orally.  You'll have these in written form for your review in the jury room when you retire to deliberate in a few minutes.  Accordingly, there is really no need for you to take written notes on these final jury instructions unless you particularly want to do so.

It's your duty to follow the law as I give it to you.  On the other hand, and as I've said before, you, the jury, are the sole judges of the facts in this case.  Do not consider any statement I have made during the course of the trial or make during the course of these instructions as an indication that I have any opinion about the facts in this case.

Now, you are about to hear closing arguments from the attorneys for the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the

---

[1] Submissions that are not agreed to by both Plaintiff TQ Delta LLC ("TQ Delta") and Defendants CommScope Holding Company, Inc., CommScope Inc., Arris US Holdings, Inc., Arris Solutions, Inc., Arris Technology, Inc. and Arris Enterprises, LLC's (collectively, "CommScope") are not highlighted.

Submissions proposed by TQ Delta but not agreed to by CommScope are bracketed and highlighted in green. Submissions proposed by CommScope, but not agreed to by TQ Delta, are bracketed and highlighted in blue.

The parties reserve their respective rights to further object or propose new instructions based on their pending motions or further development at trial.

[2] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 852:1–854:25 (E.D Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Final Jury Instructions, Dkt. No. 421, Tr. at 19:10–20:19 (E.D Tex. November 27, 2013).

law.  They're intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you.  You will take this verdict form to the jury room, and when you've reached a unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form to reflect your unanimous answers, date it, and it should be signed by your jury foreperson.  Answer the questions in the verdict form as directed and from the facts as you find them to be.  Do not decide who you think should win this case and then answer the questions accordingly to reach that result.  Your answers and your verdict, ladies and gentlemen, must be unanimous.

In determining whether any of the facts have been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses regardless of who may have called them, and you may consider all the exhibits received and admitted into evidence regardless of who may have introduced them.

Remember, ladies and gentlemen, you the jurors are the sole and only judges of the credibility of all the witnesses and the weight and effect to give all of the evidence.

### B.      Credibility of Witnesses[3]

Now, in deciding the facts in this case, you may have to decide which testimony to believe and which testimony to not believe. You alone are to determine the questions of credibility or truthfulness of the witnesses, and in weighing the testimony of the witnesses, you may consider the witness's manner and demeanor as reflected on the witness stand.

---

[3] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 852:1–854:25 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 8:9–18 (E.D Tex. March 21, 2019).

You may consider any feelings or interest they may have in the case and any bias or prejudice about the case that the witness may have, and you may consider the consistency or inconsistency of their testimony considered in the light of the circumstances.

Has the witness been contradicted by other evidence? Has he or she made statements at other times in other places contrary to what he or she said on the witness stand?  You must give the testimony of each witness the amount of credibility and weight that you think it deserves.  You must keep in mind, however, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth.

You must consider whether any misstatement was an intentional falsehood or a simple lapse of memory and what significance should be attached to that testimony.

Now, unless I instruct you otherwise, you may properly determine that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence you believe that single witness.

### C.      Rulings on Objections[4]

As I've told you previously, the attorneys in this case are advocates for their competing clients, and they have a duty to raise objections when they believe evidence is being offered that should not be admitted under the rules of the Court.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and you may draw no inference from its wording, and you may not speculate about what the witness would have said if he or she had been permitted to answer the

---

[4] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 856:6–25 (E.D Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 21:1–15 (E.D. Tex. Aug. 28, 2018).

question by the Court.  On the other hand, ladies and gentlemen, if the objection was overruled by the Court, then you should treat the question and the answer just as you would treat any other question and answer as if the objection had not been.

Also, by allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate to you any opinion as to the weight or effect of such evidence.

### D.    Discussions Out of the Presence of the Jury[5]

Now, at times, ladies and gentlemen, during the trial, it's been necessary for the Court to talk with the attorneys outside of your hearing by asking you to retire to the jury room or by calling a recess and talking to them outside of your hearing while we were in recess, and you were out of the courtroom.  This happens because during trial, sometimes things arise that do not involve the jury.  You should not speculate about what was side during such discussions that took place outside of your presence.

### E.    Direct and Circumstantial Evidence[6]

Now, there are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, ladies and gentlemen, the law makes no distinction between direct evidence or circumstantial evidence but

---

[5] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 857:1–10 (E.D Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 21:16–23 (E.D. Tex. Aug. 28, 2018).
[6] **Authority**: Adapted from *Solas Oled Ltd v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 857:11–22 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 9:20–10:8 (E.D Tex. March 21, 2019).

simply requires that you find the facts based on the evidence presented during the trial, both direct and circumstantial.

## F.    Stipulated Facts[7]

Now, the parties may have agreed or stipulated to some facts in this case.  [A list of the stipulations has been included in your jury notebooks.]  When the lawyers for both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the facts as proven.

## G.    Deposition Testimony[8]

Also, certain testimony in this case has been presented to you through depositions.  A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be personally present to testify from the witness stand physically, the witness' testimony may be presented under oath in the form of a deposition.

Before this trial began, the attorneys representing the parties in this case questioned these deposition witnesses under oath.  The witnesses were sworn, a court reporter was present and recorded the testimony, both the questions and the answers.  Deposition testimony, ladies and gentlemen, is entitled to the same consideration as the testimony given by a witness in person from the witness stand during the trial.  Accordingly, you should determine the credibility and the

---

[7] **A**uthority: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 857:23–858:2 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 10:9–13 (E.D Tex. March 21, 2019).
[8] **A**uthority: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 858:3–21 (E.D Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Final Jury Instructions, Dkt. No. 421, Tr. at 22:6–22 (E.D Tex. November 27, 2013).

importance of deposition testimony to the best of your ability just as if the witness had testified in person from the witness stand.

### H.    Drawing Inferences[9]

Now, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience.  Said another way, ladies and gentlemen, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and the evidence in this case.

However, you should not base your decisions on any evidence not presented by the parties during the trial, including your own personal experiences with any particular mobile payment system.

### I.    Witnesses[10]

Unless I instruct you otherwise, and as I have told you, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after you consider all the evidence you believe that single witness.

Now, when knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, we call them expert witnesses, they

---

[9] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 858:22–859:8 (E.D Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Final Jury Instructions, Dkt. No. 421, Tr. at 22:23–23:6 (E.D Tex. November 27, 2013).

[10] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 859:9–23 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 11:22–12:16 (E.D Tex. March 21, 2019).

are permitted to testify and to state opinions on those technical matters. However, ladies and gentlemen, you're not required to accept or believe any such opinion. As with any other witness, it's solely up to you to decide whether to rely on an expert witness' testimony and opinions or not.

### J.      Demonstrative Exhibits[11]

Now, certain things have been shown to you over the course of the trial that were illustrations. We call these types of things demonstrative exhibits. Often, we simply call them demonstratives for short. Demonstratives, ladies and gentlemen, are a party's description, picture, drawing, model, something to describe an issue involved in the trial. Many times, these demonstratives were shown to you as slides on the monitors that are before you.

If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstratives, which are sometimes called jury aides, themselves are not evidence, but a witness' testimony concerning a demonstrative is evidence.

Demonstrative exhibits will not be available to you to view again during your deliberations in the jury room.

### K.      Burdens of Proof[12]

Now, in any legal action, facts must be proven by a required amount of evidence known as the burden of proof. The burden of proof in this case is on the Plaintiff for some issues, and it's on the Defendants for other issues. And there are two burdens of proof that you will apply in this case, the preponderance of the evidence and clear and convincing evidence.

---

[11] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 859:24–860:15 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 12:17–13:9 (E.D Tex. March 21, 2019).
[12] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 860:16–860:20 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 13:10–15:9 (E.D Tex. March 21, 2019).

The Plaintiff, TQ Delta, LLC, who you've heard referred to throughout the trial simply as TQ Delta, has the burden of proving patent infringement by a preponderance of the evidence.  TQ Delta also has the burden of proving willful patent infringement by a preponderance of the evidence.  TQ Delta, additionally, has the burden of proving its damages for patent infringement by a preponderance of the evidence.

A preponderance of the evidence, ladies and gentlemen, means evidence that persuades you, the jury, that a claim is more probably true than not true.  Sometimes this is talked about as being the greater weight and degree of credible testimony.

The Defendants in this case, CommScope Holding Company, Inc.; CommScope Inc.; ARRIS US Holdings, Inc.; ARRIS Solutions, Inc.; ARRIS Technology, Inc.; and ARRIS Enterprises, LLC; who you have heard referred to throughout this case collectively as CommScope, has the burden of proving invalidity by clear and convincing evidence. [Clear and convincing evidence means evidence that produces, in your mind, an abiding conviction that the truth of the party's factual contentions is highly probable.  Now, although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than the preponderance of the evidence standard.  In order to meet the clear and convincing evidence standard, the Defendants must establish proof in your mind, as the jury, an abiding conviction in the truth of the matter.] [Clear and convincing evidence means that it is highly probably that the fact is true.  Although proof to an absolute is certainly not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.  If the proof establishes in your mind an abiding

==conviction in the truth of the matter, then the clear and convincing evidence standard has been met==.[13]]

Now, ladies and gentlemen, these two burdens of proof are not to be confused with the burden of proof known as beyond a reasonable doubt, which is the burden of proof applied in a criminal case. It is never applied in a civil case like this. You should not confuse clear and convincing evidence with beyond a reasonable doubt. Clear and convincing evidence is not as high a burden, but it is a higher burden than the preponderance of the evidence.

Now, in determining whether any facts have been proven by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider any stipulation the parties may have entered into, the testimony of all the witnesses, regardless of who called them, and all the exhibits that were received into evidence over the course of the trial, regardless of who may have introduced them.

### L.    Position of the Parties[14]

Now, as I did at the start of the case, I'll first give you a summary of each side's contentions, and then I'll provide you with detailed instructions on what each party must prove to win on each of its contentions.

As I previously told you, this is an action for patent infringement, and this case concerns nine United States patents:

- U.S. Patent No. 7,453,881, which you have heard referred to as the '881 patent;

---

[13] **Authority**: Adapted from *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 25:23-26:7 (E.D. Tex. Aug. 28, 2018)

[14] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 862:21–866:6 (E.D Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 26:25–30:14 (E.D. Tex. Aug. 28, 2018).

- U.S. Patent No. 7,570,686, which you have heard referred to as the '686 patent;

- U.S. Patent No. 7,844,882, which you have heard referred to as the '882 patent;

- U.S. Patent No. 8,090,008, which will you have heard referred to as the '008 patent;

- U.S. Patent No. 8,276,048, which you have heard referred to as the '048 patent;

- U.S. Patent No. 8,462,835, which you have heard referred to as the '835 patent;

- U.S. Patent No. 8,468,411, which you have heard referred to as the '411 patent;

- U.S. Patent No. 9,154,354, which will you have heard referred to as the '354 patent; and

- U.S. Patent No. 10,833,809, which you have heard referred to as the '809 patent.

I will refer to these patents as the "Patents-in-Suit."  I may also refer to them as the "Asserted Patents."

Now, TQ Delta, the Plaintiff, contends that the Defendants, CommScope, have infringed the following claims of the Patents-in-Suit:

- Claims 17 and 23 of '881 patent;

- Claim 36 of the '686 patent;

- Claim 13 of the '882 patent;

- Claim 14 of the '008 patent;

- Claim 5 of the '048 patent;

- Claim 10 of the '835 patent;

- Claims 10 and 18 of the '411 patent;

- Claim 10 of the '354 patent; and

- Claim 13 of the '809 patent.

These are the "Asserted Claims."

TQ Delta seeks money damages from CommScope for allegedly infringing all of the asserted claims of the Patents-in-Suit by making, using, importing, selling, or offering for sale in the United States [the accused products in this case] [CommScope's CPE DSL products].

The Plaintiff, TQ Delta, further contends that the Defendants, CommScope, have actively induced others to infringe of the Asserted Patents.

TQ Delta also contends that CommScope has contributorily infringed the Asserted Patents.

TQ Delta further contends that CommScope's alleged infringement of the Patents-in-Suit has been willful.

TQ Delta seeks damages for CommScope's alleged infringement of the Patents-in-Suit.

The Defendants, CommScope, deny that they have infringed any of the asserted claims of the Asserted Patents.  CommScope contend that during the terms of these patents, they did not make, use, sell, or offer for sale within the United States or import into the United States any product that infringes any of the asserted claims of the Asserted Patents.

 CommScope further denies that they have induced others to infringe the Asserted Patents. CommScope also denies that they have contributed to the infringement of others.

CommScope further denies that they have willfully infringed the Asserted Patents.

CommScope also denies that TQ Delta is entitled to any money damages.

The Defendants, CommScope, further contend that the asserted claims of the Patents-in-Suit are invalid because they were [known and] obvious in light of the prior art.

Invalidity is a defense to infringement.   Invalidity and infringement, however, are separate and distinct issues.  Your job is to decide whether the Defendants have infringed [any of] the asserted claims and whether those claims are invalid.  If you decide that any asserted claim has been infringed and is not invalid, you will then need to decide the amount of money damages to

be awarded to the Plaintiff to compensate it for that infringement.  If you decide that there was any infringement of the asserted patents and that such infringement was willful, your decision as to willfulness should not affect any damages that you might award.  I will take willfulness into account later.

[CommScope contends that all of the Patents-in-Suit are subject to commitments with the ITU.  CommScope further contends that TQ Delta breached its commitment to the ITU by failing to offer to CommScope a license to TQ Delta's standard essential patents on RAND terms, and that CommScope is entitled to damages as a result of TQ Delta's breach of contract.]

### M.    Patent Claims[15]

Now, before you can decide many of the issues in this case, you'll need to understand the role of the patent "claims."  The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims that define what a patent covers.

The figures and the text in the rest of the patent provide a description and/or examples of the invention, and they provide a context for the claims.  But it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or cover less than any other claim.  Therefore, what a patent covers depends in turn on what each of its claims covers.

You'll first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.

---

[15] **Authority**: Adapted from *Synqor, Inc. v. Vicor Corp.*, No. 2:14-cv-287-RWS-JBB, Final Jury Instructions, Dkt. No. 734, Tr. at 1859:19–1864:10 (E.D. Tex. October 26, 2022); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 866:7–871:17 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 16:13–21:21 (E.D Tex. March 21, 2019); *SSL Servs., LLC v. Citrix Sys., Inc.*, Final Jury Instructions, No. 2:08-cv-158-JRG, Final Jury Instructions, Dkt. No. 272, Tr. 19:10–22:21 (E.D. Tex, June 27, 2012).

Now, the law says that it's my role to define the terms of the claims, and it's your role to apply my definitions to the issues that you're asked to decide in this case.

Accordingly, as I've explained to you at the start of the trial, I've already determined the meaning of certain claim terms in this case, and I've provided you with those definitions or constructions as to those terms in your juror notebooks.  You must accept my definitions and my constructions of these words in the claims as being correct.  It's your job to take these definitions and apply them to the issues that you're deciding, including the issues of infringement and invalidity.

Now, ladies and gentlemen, you should disregard any evidence presented at the trial that contradicts or is inconsistent with the constructions and the definitions that I have given you.  And, again, these are in your juror notebooks.

For claim elements or limitations that I have not construed, that is, elements or limitations that I have not interpreted or defined, you are to use and apply the plain and ordinary meaning of the element or limitation as understood by one of ordinary skill in the art, which is to say in the field of technology of the patent at the time of the alleged invention.

The meaning of the words of the patent claims must be the same when deciding both the issue of infringement and the issue of validity.

As I've already told you, you've been provided with copies each of the nine asserted patents, and these are inside your juror notebooks, and you may use them and refer to them during your deliberations.

I'll now explain how a claim defines what it covers.  A claim sets forth in words a set of requirements. Each claim sets forth its requirements in a single sentence.  If a device satisfies each of these requirements, then it is covered by and infringes the claim.

Now, there can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is accessed on a claim-by-claim basis.

In patent law, the requirements of a claim are often [divided into parts, sometimes] referred to as the "claim elements" or the "claim limitations."  When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim.  In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or one element of a claim, the product is not covered by the claim.  And if the product is not covered by the claim, that product does not infringe that claim.

Now, the beginning portion or "preamble" of a claim often uses the word comprising.  The word "comprising," when used in a preamble of a claim, means including but not limited to or containing but not limited to.  When comprising is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed, and that is true even if the accused product or instrumentality contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also and additionally contains other structures, such as leaves to expand the size of the tabletop or wheels to go on the ends of the legs.

Now, this case involves two types of patent claims, independent claims and dependent claims.  An independent claim, ladies and gentlemen, sets forth all the requirements that must be met in order to be covered by the claim.  Thus, it's not necessary to look at any other claim in the patent to determine what an independent claim covers. It is independent.

However, on the other hand, a dependent claim does not itself recite all the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim depends on another claim.  A dependent claim incorporates all the requirements of the claim to which it refers, or as we sometimes say, from which it depends, and it adds its own additional requirements.

Now, to determine what a dependent claim covers, it's necessary to look at both the dependent claim itself and any other claim or claims from which it refers or from which it depends. A product that meets all the requirements of both the dependent claim and the claim or claims to which it refers is covered by that dependent claim.

[Now, TQ Delta, contends that the CommScope Defendants have infringed the following claims of the patents-in-suit: Claims 17 and 23 of the '881 patent, where dependent claim 23 depends from independent claim 17, claim 36 of the '686 patent, claim 13 of the '882 patent; claim, claim 14 of the '008 patent, claim 5 of the '048 patent, claim 10 of the '835 patent, claims 10 and 18 of the '411 patent, claim 10 of the '354 patent, and claim 13 of the '809 patent.  These are the asserted claims.]

Now, if a person or a corporation makes, uses, sells, or offers to sell within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person or corporation is said to infringe the patent.

In reaching your decision on infringement, keep in mind, ladies and gentlemen, that only the claims of a patent can be infringed.  You must compare the asserted patent claims as I have construed them for you to the accused products and determine whether or not there is infringement. This is the only correct comparison.

You should not compare the accused products with any specific examples set out in the patent or with the prior art in reaching your decision on infringement.  In deciding infringement,

the only correct comparison is between the accused products and the limitations of the asserted claims as the Court has construed any claim language.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by both sides during the course of the trial.

### N.    Direct Infringement[16]

I'll now instruct you about the specific rules you must follow to determine whether TQ Delta has proven that CommScope has infringed one or more of the patent claims involved in this case.

A patent can be directly infringed even if the alleged direct infringer did not have knowledge of the patent and without the direct infringer knowing that what it was doing was infringement of the claim.  A patent may also be directly infringed even though the accused direct infringer believes in good faith that what it is doing is not infringement of the patent.

Now, in order to prove direct infringement of a patent claim, the Plaintiff, TQ Delta, must prove by a preponderance of the evidence that the accused products include each and every limitation of the claim.

In determining whether an accused product directly infringes a patent claim in this case, you must compare the accused product with each and every one of the requirements or limitations in that claim to determine whether the accused product contains each and every requirement or limitation recited in that claim.  If an accused product omits any element recited in a claim, then you must find that particular product does not infringe that claim.

---

[16] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 871:18–873:13 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 21:22–22:23 (E.D Tex. March 21, 2019).

Now, you must decide separately and for each asserted claim whether or not there is infringement.  However, if you find that an independent claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers or depends directly or indirectly from that independent claim.

On the other hand, if you find that an independent claim has been infringed, you must still decide separately whether the product meets the additional requirements of any claim that depends from or refers to that independent claim, thus whether those dependent claims have also been infringed.  As I've said, a dependent claim includes all the requirements of any of the claims to which it refers or depends, plus the additional requirements set forth in the dependent claim itself.

### O.    Induced Infringement[17]

Now, the Plaintiff, TQ Delta, also alleges that the Defendants, CommScope, are liable for infringement for actively inducing others to directly infringe the Asserted Patents.  As with direct infringement, ladies and gentlemen, you must determine whether there has been active inducement on a claim-by-claim basis.

CommScope is liable for [active inducement] [induced infringement] of a claim only if TQ Delta proves by a preponderance of the evidence that:

(1)    The alleged infringing acts were actually carried out by others and directly infringed that claim;

[(2)    The Defendants took action during the time the asserted patents were in force intending to cause infringing acts by others; and

---

[17] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 873:14–874:19 (E.D Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Final Jury Instructions, Dkt. No. 421, Tr. at 39:12–40:5 (E.D Tex. November 27, 2013).

(3)     The Defendants were aware of the asserted patents and knew that the acts, if taken, would constitute infringement of those patents, or believed there was a high probability the acts, if taken, would constitute infringement of the asserted patents but deliberately avoided confirming that belief, that is to say that the Defendants believed there was a high probability that the acts, if taken, would constitute infringement but was willfully blind to that fact.] [(2) that CommScope was aware of the Asserted Patents and knew that the acts, if taken, would constitute infringement of that patent; and (3) that after CommScope was aware of (2) it took action during the time that the Asserted Patents were in force that was intended to cause and led to the infringing acts by CommScope's customers in the United States.

If you find that CommScope was aware of the Asserted Patents, but believed that the acts it encouraged did not infringe those patents, CommScope cannot be liable for inducement.[18]]

In order to establish induced infringement, it is not sufficient that the others directly infringe the claim, nor is it sufficient that the CommScope was aware of the acts of others that allegedly constitute direct infringement. [Rather, in order to find induced infringement, you must find that either CommScope specifically intended others to infringe the Asserted Patents or that CommScope believed there was a high probability that others in the United States would infringe the Asserted Patents, but deliberately avoided learning the infringing nature of those acts.  The mere fact, if true, that CommScope knew or should have known that there was a substantial risk that others acts would infringe the Asserted Patent would not be sufficient to support a finding of induced infringement.[19]]

---

[18] **Authority**: Adapted from the Federal Circuit Bar Association. Model Patent Jury Instructions §§ 3.1, 3.2, 3.3 (May 2020).
[19] *Id.*

### P.        Contributory Infringement[20]

The Plaintiff, TQ Delta, also contends that the Defendants, CommScope, is liable for contributory infringement by contributing to the direct infringement of the Asserted Patents.  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis

CommScope is liable for contributory infringement of a claim if the Plaintiff, TQ Delta, proves by a preponderance of the evidence that:

1.        CommScope sells, offers to sell, or imports within the United States a component of a product or apparatus for use in a product during the time the Asserted Patents are in force;

2.        the component or apparatus has no substantial non-infringing use;

3.        the component or apparatus constitutes a material part of the invention;

4.        CommScope was aware of the Asserted Patents and knew that the products or processes for which the component or apparatus has no other substantial use may be covered by a claim of the Asserted Patents; and

5.        that use directly infringes the claim.

CommScope's culpability is measured against its knowledge and intent at the time of their knowledge and intent at the time of its conduct.  The mere knowledge of possible infringement by others does not amount to contributory infringement.  Rather, the Plaintiff, TQ Delta, must prove that the Defendants, CommScope, knew that the products infringed a claim of TQ Delta's patents

---

[20] **Authority**: Adapted from *Synqor, Inc. v. Vicor Corp.*, No. 2:14-cv-287-RWS-JBB, Final Jury Instructions, Dkt. No. 734, Tr. at 1859:19–1861:16 (E.D. Tex. October 26, 2022); *SSL Servs., LLC v. Citrix Sys., Inc.*, Final Jury Instructions, No. 2:08-cv-158-JRG, Final Jury Instructions, Dkt. No. 272, Tr. 41:7–42:10 (E.D. Tex, June 27, 2012).

or subjectively believed there was a high probability that they infringed a claim of TQ Delta's patents and took deliberate actions to avoid confirming this belief.

When considering whether CommScope knew that the products infringe a claim of TQ Delta's patents or believed there was a high probability that the products infringe a claim of TQ Delta's patents and deliberately avoided confirming that belief, you should consider the totality of the circumstances, including whether CommScope relied on the advice of a competent lawyer.

In order to prove contributory infringement, TQ Delta must prove that each of the above requirements is met.  This proof of each requirement must be by a preponderance of the evidence, that is, more likely than not that each of the above requirements is met.

## Q.    Willful Infringement[21]

Now, in this case, the Plaintiff, TQ Delta, also contends that the Defendants, CommScope, have willfully infringed the asserted claims of the asserted patents.   If you decide that the CommScope has infringed a valid claim of the asserted patents, you must go on and address the additional issue of whether or not that infringement was willful.

TQ Delta must prove willfulness by a preponderance of the evidence.  In other words, you must determine whether it is more likely than not that the Defendants willfully infringed.

[To determine whether CommScope acted willfully, consider all facts.  These may include, but are not limited, to:

1.   Whether or not CommScope acted consistently with the standards of behavior for its industry;

---

[21] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 874:20–876:7 (E.D Tex. March 8, 2021); *Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-013140-JRG, Final Jury Instructions, Dkt. No. 498, Tr. at 48:20–49:13 (E.D Tex. June 18, 2018).

2.   Whether or not CommScope reasonably believed it did not infringe or that the patent was invalid;

3.   Whether or not CommScope made a good-faith effort to avoid infringing the asserted patents, for example, whether CommScope attempted to design around the asserted patents;

And

4.   Whether or not CommScope tried to cover up its infringement.

None of these factors alone is determinative, and this is not an exhaustive list of the things that you should consider.[22]]

You may find that a defendant willfully infringed if you find that it acted egregiously, willfully, or wantonly.  You may find the defendant's actions were egregious, willful, or wanton if it acted in reckless or callous disregard of or with indifference to the rights of TQ Delta.  A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that is known to it or was apparent to a reasonable person in its position.  Your determination, ladies and gentlemen, of willfulness as to the asserted patents should incorporate the totality of the circumstances based on the evidence presented during the trial.

Willfulness can be established by circumstantial evidence.  Knowledge of the existence of a patent can be relevant to the question of willful infringement.  If you decide that any infringement was willful, that decision should not affect any damages award that you give. I will take willfulness into account later if you find it.

---

[22] **Authority**: *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 40:7–41:21 (E.D. Tex. Aug. 28, 2018).

### R.      Invalidity[23]

I'll now instruct you on the rules that you must follow in deciding whether or not the CommScope has proven that any of the asserted claims of the asserted patents are invalid.

[An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing the patent.  This presumption of validity, ladies and gentlemen, extends to all issued United States patents.  Now, in order to overcome this presumption, CommScope must establish by clear and convincing evidence that the claim is invalid.]

[To prove that any claim of a patent is invalid, CommScope must establish persuade you by clear and convincing evidence that the claim is invalid.  In making your decision whether CommScope has met its burden of proof, you may take into account the fact that the prior art was not considered by the Patent Office.  Prior art differing from the prior art considered by the Patent Office may, but does not always, carry more weight than the prior art that was considered by the Patent Office.  Again, the ultimate responsibility for deciding whether the Asserted Claims are invalid is up to you, the members of the jury.

Keep in mind that everyone has the right to use existing knowledge and principles.  A patent cannot remove from the public the ability to use what was known or obvious before the invention was made or patent protection was sought.[24]]

---

[23] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 876:8–877:8 (E.D Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 41:4–42:18 (E.D. Tex. Aug. 28, 2018).

[24] **Authority**: Adapted from *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 41:–42:11 (E.D. Tex. Aug. 28, 2018).

Like infringement, invalidity is determined on a claim-by-claim basis.  You must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, that does not mean that any other claim is necessarily invalid.

Claims are construed in the same way for determining infringement as for determining invalidity.  You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity. And in making your determination as to invalidity, you should consider each claim separately.

**S.      Prior Art[25]**

Now, in patent law, a previous device, system, method, publication, or patent that predates the claimed invention is generally called "prior art" or a "prior art reference."  Prior art may include items that were publicly known or have been used or offered for sale or references such as publications or patents that disclose the claimed invention or elements of the claimed invention.

To be prior art, an item or reference must have been made, known, used, sold, offered for sale, published, or patented before the date of the invention or more than one year before the filing of the patent application to which the patent claims priority.  However, ladies and gentlemen, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of the invention.

[CommScope contends that Claim 36 of the '686 Patent is invalid as anticipated and/or obvious under 35 U.S.C. §§  103 in view of the following prior art:

- ITU-T Temporary Document FI-071 ("FI-071") in view of the knowledge of a person having ordinary skill in the art renders obvious Claim 36.

---

[25] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 877:9–878:8 (E.D Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 42:19–43:13 (E.D. Tex. Aug. 28, 2018).

- FI-071 in combination with ITU-T Recommendation G.992.1 ("G.992.1") renders obvious Claim 36.

CommScope contends that Claims 17 and 23 of the '881 Patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 in view of the following prior art:

- U.S. Patent No. 6,222,858 ("Counterman") anticipates and/or renders obvious Claims 17 and 23.

- Counterman in view of the knowledge of a person having ordinary skill in the art renders obvious Claims 17 and 23.

- Counterman in combination with U.S. Patent No. 6,956,872 ("Djokvic") renders obvious Claims 17 and 23.

CommScope contends that Claim 5 of the '048 Patent is invalid as obvious under 35 U.S.C. § 103 in view of the following prior art:

- U.S. Patent No. 7,269,208 ("Mazzoni") in combination with ITU-T Standard G.993.1 ("G.993.1") renders obvious Claim 5.

- Mazzoni in combination with ITU-T Contribution LB-031 ("LB-031") renders obvious Claim 5.

- U.S. Patent No. 6,707,822 ("Fadavi-Ardekani") in combination with G.993.1 renders obvious Claim 5.

CommScope contends that Claim 13 of the '882 Patent is invalid as obvious under 35 U.S.C. § 103 in view of the following prior art:

- Mazzoni in combination with G.993.1 renders obvious Claim 13.

- Mazzoni in combination with LB-031 renders obvious Claim 13.

- Fadavi-Ardekani in combination with G.993.1 renders obvious Claim 13.

24

CommScope contends that Claim 14 of the '008 Patent is invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 in view of the following prior art:

- U.S. Patent No. 6,657,949 ("Jones") anticipates and/or renders obvious Claim 14.

- ANSI T1.413-1998 ("T1.413.1998") in combination with U.S. Patent No. 6,625,219 ("Stopler") renders obvious Claim 14.

CommScope contends that Claim 10 of the '835 Patent is invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 in view of the following prior art:

- G.992.1 anticipates and/or renders obvious Claim 10.

- G.992.1 in combination with ITU-T SG15/Q4 Contribution SC-060 ("SC-060") renders obvious Claim 10.

- SC-060 anticipates and/or renders obvious Claim 10.

- G.992.1 in combination with U.S. Patent Pub. No. 2002/0172188 ("Wunsch") renders obvious Claim 10.

CommScope contends that Claims 10 and 18 of the '411 Patent are invalid as obvious under 35 U.S.C. § 103 in view of the following prior art:

- G.992.1 in combination with ITU-T Study Group 15 Temporary Document BI-089 ("BI-089") renders obvious Claims 10 and 18.

CommScope contends that Claim 10 of the '354 Patent is invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 in view of the following prior art:

- Peter Sienpin Chow, *Bandwidth optimized digital transmission techniques for spectrally shaped channels with impulse noise*, Stanford University (May 1993) ("Chow") anticipates and/or renders obvious Claim 10.

- U.S. Patent No. 6,516,027 ("Kapoor") in combination with Chow renders obvious Claim 10.

- EP 0,753,948 ("Peeters") in combination with U.S. Patent No. 6,205,410 ("Cai") renders obvious Claim 10.

CommScope further contends that each of the Asserted Claims of the Patents-in-Suit would have been obvious in view of the background art for which a person of ordinary skill in the art would have known and/or had knowledge of.]

Now, in evaluating the prior art to determine whether an invalidity defense has been proved by clear and convincing evidence, you may consider whether that prior art was or was not before the Patent Office.

[The priority dates for the Patents-in-Suit are as follows:

October 5, 2001 for the '881 patent;

January 7, 2000 for the '686 patent;

October 12, 2004 for the '882 patent and the '048 patent;

November 9, 1999 for the '008 patent;

March 3, 2004 for the '835 patent;

April 12, 2006 for the '411 patent and '809 patent; and

April 18, 2000 for the '354 patent.][26, 27]

[The undisputed priority dates for the Patents-in-Suit are as follows:

October 5, 2001 for the '881 patent;

---

[26] CommScope contends the priority date for the '686 patent is August 10, 2000. Thus, CommScope disputes TQ Delta's proposed language and proposes the language highlighted in blue which accurately reflects this dispute.

[27] TQ Delta disagrees with CommScope's position in footnote 26.  TQ Delta's proposed instruction, highlighted in green, accurately depicts the '686 patent's priority date.

October 12, 2004 for the '882 patent and the '048 patent;

November 9, 1999 for the '008 patent;

March 3, 2004 for the '835 patent;

April 12, 2006 for the '411 patent and '809 patent; and

April 18, 2000 for the '354 patent.

For the '686 patent, TQ Delta and CommScope disagree on the priority date.  TQ Delta contends the priority date for the '686 patent is January 7, 2000.  CommScope contends the priority date for the '686 patent is August 10, 2000.[28]]

### T.      [Anticipation[29]

In order for someone to be entitled to a patent, the invention must actually be "new." CommScope contends that some of the asserted claims are invalid because the claimed invention(s) are anticipated. CommScope must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claim(s) is/are invalid. Anticipation must be determined on a claim-by-claim basis. CommScope must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may be disclosed either expressly or inherently such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

---

[28] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 878:5-12 (E.D Tex. March 8, 2021).
[29] **Authority**: The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.4.3b-1 (May 2020).

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.]

**U.     Obviousness[30]**

Now, the Defendants, CommScope, contend that [all] [the] asserted claims of the Patents-in-Suit are invalid as being obvious.  Even though an invention may not have been identically disclosed or identically described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of the technology of the patent at the time the invention was made.

CommScope in this case has the burden of establishing obviousness by showing by clear and convincing evidence that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the technology of the patent.

Now, in determining whether the claimed invention was obvious, you must consider the level of ordinary skill in the field that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention. [And, if present, so-called evidence of secondary considerations, which I will describe shortly.]

A patent claim with several elements, ladies and gentlemen, is not proved obvious merely by demonstrating that each of the elements was known. Most, if not all, inventions rely on the building blocks of prior art.

---

[30] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 889:2–884:11 (E.D Tex. March 8, 2021); *Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-013140-JRG, Final Jury Instructions, Dkt. No. 498, Tr. at 56:7–59:16 (E.D Tex. June 18, 2018).

In considering whether a claimed invention is obvious, you may but you are not required to find obviousness if you find at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way the claimed invention does, taking into account such factors as:

1.      Whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2.      Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3.      Whether the prior art teaches or suggests the desirability of combining elements in the claimed invention;

4.      Whether the prior art teaches away from combining elements in the claimed invention;

5.      Whether it would have been obvious to try the combination of elements in the claimed invention, such as when there is a design need or market pressure to solve a problem, and there are a finite number of identified predictable solutions; and

6.      Whether the change resulted more from design incentives or other market forces.

[To find that it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.]

In determining whether the claimed invention was obvious, consider each claim separately and consider only what was known at the time of the invention.  In determining whether the claimed invention was obvious, do not use hindsight.  In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teaching of the Patents-in-Suit.

In making these assessments, ladies and gentlemen, you should take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that shed light on the obviousness or not of the claimed invention, [such as:].

[The following are possible secondary considerations but it's up to you to decide whether secondary considerations of non-obviousness exist at all:, such as]:

1.      Whether the invention was commercially successful as the result of the merits of the claimed inventions rather than the result of design needs or market pressure, advertising, or similar activities;

2.      Whether the invention satisfied a long-felt need;

3.      Whether the inventor proceeded contrary to accepted wisdom in the field;

4.      Whether others tried but failed to solve the problem solved by the claimed invention;

5.      Whether others invented the invention at roughly the same time;

6.      Whether others copied the claimed invention;

7.      Whether others accepted licenses under the patents-in-suit because of the merits of the claimed invention;

8.      Whether the claimed invention achieved unexpected results;

9.      Whether others in the field praised the claimed invention;

10.     Whether there were changes or related technologies or market needs contemporaneous with the invention; and

11.     Whether persons having ordinary skill in the art in the invention expressed surprise or disbelief regarding the invention.

[No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the inventions made as a whole.]

These factors are relevant only if there was a connection or a nexus between the factors and [what differentiates the claimed invention from the prior art] [the asserted claims of the asserted patents].  TQ Delta, the Plaintiff, has the burden of establishing this connection or nexus.

[Even if you conclude that some of the above indicators have been established, those factors should be considered along with all the other evidence in the case in determining whether CommScope has proven that the claimed invention would have been obvious.[31]]

If you find that CommScope has proven the obviousness of a claim by clear and convincing evidence, then you must find that that claim is invalid. [In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.]  [If you find that CommScope has failed to prove by clear and convincing evidence that a claim was obvious, you must find that the claim is not invalid.[32]][33]

## V.     [Written Description[34]

CommScope contends that the '686, '881, '835 and '354Patents are invalid because they does not meet the written description requirement. CommScope bears the burden of establishing by clear and convincing evidence that the specification fails to satisfy the written-description requirement.

---

[31] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 889:1 (E.D Tex. March 8, 2021).
[32] CommScope contends that some of the asserted claims are anticipated by the prior art. Thus, a claim can still be found invalid pursuant to 35 U.S.C. § 102, even if it is found non-obvious.
[33] TQ Delta disagrees that inclusion of instructions on anticipation are appropriate, as TQ Delta does not believe CommScope has sufficiently disclosed that affirmative defense.
[34] Adapted from AIPLA's Model Patent Jury Instructions (2019) at § 9 (Written-Description Requirement).

A patent must contain a written description of the apparatus or method claimed in the patent. The written-description requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written-description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used. However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description. When determining whether the specification discloses the invention, the claim must be viewed as a whole.

The written-description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent. The written-description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims may have been changed or new claims added since that time.

It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; but enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention. In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

(1) The nature and scope of the patent claims;

(2) The complexity, predictability, and maturity of the technology at issue;

(3) The existing knowledge in the relevant field; and

(4) The scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or group of claims.

If you find that CommScope has proven by clear and convincing evidence that there is no written description support for the asserted claims, then you must find that those claims are invalid.]

## W.    [Enablement[35]

The patent law contains certain requirements for the part of the patent called the specification. One of those requirements is called the enablement requirement. CommScope contends that the some of the asserted claims are invalid because the specification does not "enable" the full scope of the claimed invention. To succeed, CommScope must show by clear and convincing evidence that the patent specification of those asserted claims does not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention as of the effective filing date without undue experimentation. If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field of the invention;

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

---

[35] The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.4.2b (May 2020)

(5) the nature and predictability of the field of the invention;

(6) the level of ordinary skill in the field of the invention; and

(7) the nature and scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the effective filing date, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.]

## X.   Person of Ordinary Skill in the Art[36]

Now, several times in these instructions, ladies and gentlemen, I refer to a person of ordinary skill in the field of the invention.  It's up to you to decide the level of ordinary skill in the field of technology of the patent and what it is.

In deciding this, you should consider all the evidence introduced at trial, including but not limited to:

1.      The levels of education and experience of persons working in the field;

2.      The types of problems encountered in the field;

3.      Prior art solutions to those problems;

4.      The rapidity of which innovations are made; and

5.      The sophistication of the technology.

---

[36] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 890:1–891:15 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 24:18–25:14 (E.D Tex. March 21, 2019).

A person of ordinary skill in the art is a hypothetical person who is presumed to have known all of the relevant prior art at the time of the claimed invention.

[In considering whether the claimed invention was obvious, you should first decide the scope and content of the prior art.  The scope and content of the prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention.  It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.]

## Y.    Compensatory Damages[37]

If you find that [the Defendants] [CommScope's products have] infringed any valid claim of the asserted patents, you must then consider what amount of damages to award to the Plaintiff. If you do not find infringement by CommScope or you find that all the infringed claims are invalid, you will not consider patent damages at all.

Now, I will now instruct you on the measure of damages.  By instructing you on damages, ladies and gentlemen, I'm not suggesting which party should win this case on any issue.

If you find that the CommScope has  not infringed any valid claim of the Patents-in-Suit, then TQ Delta is not entitled to any money damages.  The damages you award must be adequate to compensate TQ Delta for any infringement you may find.  You may not award TQ Delta more damages than are adequate to compensate for the infringement.  You must not include any additional amount for purposes of punishing CommScope or setting an example.  I will consider those issues post-trial.

---

[37] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG Final Jury Instructions, Dkt. No. 354, Tr. at 891:16–892:12 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 28:10–29:14 (E.D Tex. March 21, 2019).

[Your damages award, if you reach this issue, should put TQ Delta in approximately the same financial position that it would have been in had the infringement not occurred. Under the law, this means that if CommScope infringes, TQ Delta would be entitled to recover at least a reasonable royalty for each infringing sale or use of its inventions.

TQ Delta has the burden of establishing damages by a preponderance of the evidence. In other words, you should award only those damages that TQ Delta establishes that it more likely than not has suffered. While TQ Delta is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.[38]]

## Z.        Reasonable Royalty[39]

[The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty to compensate the Plaintiff for Defendants' infringement.

TQ Delta, the Plaintiff, has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that TQ Delta establishes as more likely than not that it suffered.]

TQ Delta seeks damages in the form of a reasonable royalty.   [A reasonable royalty is defined as the money amount the parties would have agreed upon for CommScope to use the asserted patents at the time the infringement began.]

---

[38] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG Final Jury Instructions, Dkt. No. 354, Tr. at 892:12-893:7 (E.D Tex. March 8, 2021); *see also Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022).

[39] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG Final Jury Instructions, Dkt. No. 354, Tr. at 892:13–901:2 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 29:15–33:12 (E.D Tex. March 21, 2019); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 51:5–59:13 (E.D. Tex. Aug. 28, 2018).

[A reasonable royalty is the royalty payment that a patent owner and an alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In determining this, you must assume both parties assumed the patents-in-suit to were valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty that either party would have preferred[40]].

The determination, ladies and gentlemen, of a damages award is not an exact science, and the amount need not be proven with unerring precision.  You may approximate, if necessary.

Now, while the Plaintiff is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty, and you may not award damages that are speculative.

If you find that TQ Delta has established patent infringement and the Defendants have not established patent invalidity, TQ Delta is entitled to at least a reasonable royalty to compensate it for that infringement.

A royalty is a payment made to a patent holder in exchange for the right to make, use, sell, or import a claimed invention.

A reasonable royalty is the royalty payment that a patent owner and an alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patentholder and the alleged infringer would have been had they entered into an agreement at that time and had they been acting reasonably in their negotiations.

---

[40] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG Final Jury Instructions, Dkt. No. 354, Tr. at 893:15-894:10 (E.D Tex. March 8, 2021).

In determining this, you must assume both parties believed the Patents-in-Suit were valid and infringed and that both parties were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty that either party would have preferred.  Evidence of things that happened after infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from the hypothetical negotiation.

[Your determination does not depend on the actual willingness of the parties to the lawsuit to engage in negotiations. You should focus on what the parties' expectations would have been had they entered into negotiations for royalties at the time of the hypothetical negotiation. But, regardless of the type of damages you choose to award, you must be careful to ensure that the award is no more and no less than the value of the patented invention.[41]]

The law requires that any damages awarded to TQ Delta correspond to the value of the alleged inventions within the accused products as distinct from other unpatented features of the accused product or other factors, such as marketing or advertising or CommScope's size or market position.  This is particularly true where the accused product has multiple features and multiple components not covered by the patent or where the accused product works in conjunction with other non-patented items.

The amount you find as damages must be based on the value attributable to the patented technology as distinct from other unpatented features of the accused product.  If the unpatented features contribute to an accused product, you must apportion that value to exclude any value

---

[41] **Authority**: *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 52:21-2 (E.D. Tex. Aug. 28, 2018); The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.5.1 (May 2020).

attributable to unpatented features.  You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

TQ Delta bears the burden to establish the amounts attributable to the patented features.

A reasonable royalty, if any, may be calculated as a one-time, lump sum payment.  A lump sum royalty is when the infringer pays a single price for a license covering both past and future infringing use of the patents.  A lump sum should reflect the total amount necessary to compensate TQ Delta for the Defendants' past and future infringement.

A reasonable royalty must reflect that the [ '881, '686, '008, '835, '354, and the '809 patents] [Patents-in-Suit][42,43] have been declared to be essential to the DSL standards of the International Telecommunication Union, sometimes called the ITU.  Further, TQ Delta committed to license the [ '881, '686, '008, '835, '354, and the '809 patents] [Patents-in-Suit] on a non-discriminatory basis and reasonable terms and conditions.   These terms and conditions are sometimes referred to as RAND, R-A-N-D, commitments.

Because of this RAND commitment, I'll refer in my instructions at times to standard essential patents.  By referring to standard essential patents, the Court is not instructing you that the asserted patents are actually essential to any standard.  Again, it's up to you, the jury, to decide whether or not TQ Delta has proven that the patents are standard essential and infringed.

[TQ Delta and Aware, the entity from which TQ Delta purchased the Patents-in-Suit from, submitted written commitments to the ITU covering the '881, '686, '008, '835, '354, and the '809

---

[42] TQ Delta contends that '881, '686, '008, '835, '354, and the '809 patents are essential. CommScope, on the other hands, contends that all of the Patents-in-Suit are essential, consistent with TQ Delta's damages theories in this case.

[43] TQ Delta disagrees with CommScope's representations in footnote 40.  This dispute is the subject of TQ Delta's pending Motion for Summary Judgment of No Breach of FRAND Obligations (Family 3 and 9A Non-Essential Patents) (Dkt. No. 335).

patents, in which they agreed to grant a license on a non-discriminatory basis and on reasonable, or RAND, terms and conditions.]

You must make sure that any reasonable royalty determination takes into account TQ Delta's RAND obligations as the Court has just explained to you.  A reasonable royalty in this case for the ['881, '686, '008, '835, '354, and the '809 patents] [Patents-in-Suit] cannot exceed the amount permitted under TQ Delta's RAND obligations.

In determining what amount is a RAND royalty, you may consider any evidence of patent hold-up and royalty stacking.

[The '882, '048, and '411 patents have not been declared essential to any DSL standard, and, therefore, a reasonable royalty determination regarding these patents need not take into account any RAND obligations.]

I'll provide you with additional instructions on how a RAND commitment for the asserted patent affects your determination of a reasonably royalty.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are as follows:

1.      the royalties received by the patentee for licensing of the patents-in-suit proving or tending to prove an established royalty;

2.      the nature and scope of the license as exclusive or non-exclusive or as restricted or non-restricted in terms of territory or with respect to whom the manufactured products may be sold.

3.      the patent owner's established policy and marketing program to maintain his or her patent exclusivity by not licensing others to use the invention or by granting licenses under special positions designed to preserve that exclusivity;

4.      the commercial relationship between the licensor and licensee, such as whether or not they are competitors in the same territory, in the same line of business or whether they are inventor and promoter;

5.      the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his or her non-patented items and the extent of such derivative or convoyed sales;

6.      the duration of the patent and the term of the license;

7.      the established profitability of the product made under the patents, its commercial success, and its current popularity;

8.      the utility and advantages of the patented invention over the old modes or devices that had been used for achieving similar results;

9.      the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor and the benefits of those who have used the invention;

10.      the extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

11.      the portion of the profit or selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

12.      the portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

41

13.      the testimony and opinions of qualified experts;

14.      the amount that a licensor, such as the patent owner, and a licensee, such as the infringer, would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement, that is, the amount which a prudent licensee who desired as a business proposition to obtain a license to manufacture and sell a particular article embodying the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit which amount would have been acceptable to a prudent patentee who was willing to grant a license;

[15.      the rates paid by a licensee for the use of the other patents comparable to the patents-in-suit; and

16.      whether being able to use the patented invention helps in making sales of other products or services.]

Now, none of these factors, ladies and gentlemen, are dispositive, and you can and you should consider the evidence that's been presented to you in this case on each of these factors. You may have heard these factors referred to during the trial as the *Georgia-Pacific* factors.

You may consider any other factors that in your minds would have increased or decreased the royalty the infringer would have been willing to pay, and the patent owner would have been willing to accept acting as normally prudent businesspeople.

[When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the Asserted Patents or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would have been negotiated between TQ Delta and CommScope in order for you to consider it. The reasonable royalty that you determine must be a royalty that would have resulted from the

hypothetical negotiation and not simply a royalty that either party would have preferred.[44]] Now, for purposes of determining a reasonable royalty, you may consider whether at the time of the hypothetical negotiation CommScope had acceptable, non-infringing alternatives to taking a license.  To be an acceptable, non-infringing alternative, a product must have the advantages of the patented invention that were important to the purchasers of the infringing product and the relevant components thereof.  CommScope bears the burden of proof to show that any non-infringing, acceptable alternative was available at the time of the hypothetical negotiation.

[For the '881, '686, '008, '835, '354, and the '809 patents, which] ] [Since the Patents-in-Suit have] a RAND obligation to the ITU as part of the DSL standards, you must consider the following two factors:

1.      any royalty for the patented technology must be apportioned from the value of the standard as a whole; and

2.      the RAND royalty rate must be based on the incremental value that the patented technology adds to the product, not any value added by the standardization of that technology.

[In considering the evidence of a reasonably royalty, you are not required to accept one specific figure or another for the reasonable royalty.  You are entitled to determine what you consider to be a reasonable royalty based on your consideration of all the evidence presented by the parties, whether that evidence is of a specific figure or a range of figures.][45]

---

[44] **Authority**: Adapted from *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 56:22-58:7 (E.D. Tex. Aug. 28, 2018).
[45] **Authority**: *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 58:17-23 (E.D. Tex. Aug. 28, 2018).

## AA.    Damages Period[46]

In determining the amount of damages, you must determine when the damages began.  [No damages can be awarded for any infringement that occurred before the date the patent was issued.] Where you find that an asserted claim is both infringed and not invalid, you may not award any damages for activities occurring before the damages period start.

[Damages commence on the date CommScope began the alleged infringement of the asserted claims of the Patents-in-Suit.]

[A patentee is not entitled to damages for any infringement committed more than six years prior to the filing of the claim for infringement.  Damages commence no earlier than August 13, 2015, six years prior to the date on which TQ Delta filed its complaint in this case.

A patentee is not entitled to damages after the expiration of an asserted patent. The '008 patent expired on November 9, 2020 and the '354 patent expired on April 18, 2021.  So the damages period for the '008 patent would have ended on November 9, 2020 and the damages period for the '354 would have ended on April 18, 2021.[47]]

## BB.    Breach of Contract[48]

Finally, the Defendant, CommScope, bears the burden on proving their breach of contract claim by a preponderance of the evidence.

---

[46] **Authority**: Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 892:13–901:2 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 33:24–34:4 (E.D. Tex. March 21, 2019).

[47] **Authority**: *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 54:3-12 (E.D. Tex. Aug. 28, 2018).

[48] **Authority**: Adapted from *HTC Corporation, et al., v. Telefonaktiebolaget LM Ericsson, et al.*, No. 6:18-cv-00243-JRG, Final Jury Instructions, Dkt. No. 480, Tr. at 15:14-16, 17:3-20:16 (E.D. Tex. Feb. 21, 2019); *Comcast Corp. v. Houston Baseball Partners LLC*, 627 S.W.3d 398, 423 (Tex. App. 2021), review granted (June 3, 2022), review dismissed (Dec. 2, 2022).

CommScope contends that TQ Delta, the Plaintiff, breached its contract – TQ Delta's contract with the International Telecommunications Union, known as the ITU.

TQD denies that it breached any contractual obligations.

Your job in this case is to decide whether or not TQ Delta has breached its contractual obligations, and, if so, what money CommScope is owed.

Now, before you can decide these issues, you'll need to understand the terms of the contract at issue in this case.

A contract is a legally enforceable promise or set of promises. When two individuals or entities enter into a contract that is intended to benefit a third party, the third party has standing to enforce the terms of the contract in the event that it is breached.

The contract at issue in this case is for a license to patents.

As I have already explained, TQ Delta entered into a contract with the ITU, and it made a commitment to the ITU that it would license its patents essential to the standards on RAND terms.

As I have just explained, whether or not a license is RAND will depend upon the totality of the particular facts and circumstances existing during the negotiations and leading up to the license.

Ladies and gentlemen, there is no fixed or required methodology for setting or calculating the terms of a RAND license rate.

Now, although CommScope is not a party to TQD's contract with the ITU, CommScope is a third-party beneficiary to TQ Delta's RAND commitment to the ITU.

CommScope contends that TQ Delta breached its commitment to the ITU by failing to offer to CommScope a license to TQ Delta's standard essential patents on RAND terms.

45

To find that TQ Delta has breached a contractual obligation, [you must conclude that there is 1) a valid contract; 2) CommScope must have performed or tendered performance under the contract; 3) TQ Delta must have breached the contract; and 4) CommScope must have been damaged as a result of the breach.] [you must conclude the the party bound by the contract did not fulfill its obligations under the contract][49]

## CC.     Deliberations[50]

I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer the questions in the verdict form based on the facts as you find them, following the instructions that the Court has given you. Do not decide who you think should win and then answer the questions accordingly. Again, your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction

---

[49] **Authority**: Adapted from *HTC Corporation, et al., v. Telefonaktiebolaget LM Ericsson, et al.*, No. 6:18-cv-00243-JRG, Final Jury Instructions, Dkt. No. 480, Tr. at 20:13-16 (E.D. Tex. Feb. 21, 2019).

[50] **Authority**: *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Final Jury Instructions, Dkt. No. 284 at 28-30  (E.D. Tex. Aug. 28, 2018).

among types of parties, and all corporations, partnerships, and other organizations stand equal before the law, regardless of their size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of these instructions to take with you. If you desire to review any of the exhibits that the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or exhibits to you. Once you retire, you should select your foreperson and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your foreperson is to fill in the verdict form, which reflects your unanimous answers to the questions. Do not reveal your answers until such time as you are discharged, unless I direct you otherwise. You must never disclose to anyone, not even me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

47

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise. However, at that time, if you choose to talk about your service as jurors, then you are perfectly free to. At that point, after you have been discharged, that decision will be yours and yours alone.

Now, with those instructions, ladies and gentlemen, we're ready to hear closing arguments from the attorneys in the case.