

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| TQ DELTA, LLC, | § | |
| Plaintiff, | § | |
| | § | JURY TRIAL DEMANDED |
| v. | § | |
| | § | |
| COMMSCOPE HOLDING COMPANY, | § | |
| INC., COMMSCOPE INC., ARRIS US | § | |
| HOLDINGS, INC., ARRIS SOLUTIONS, | § | Civil Action 2:21-cv-310-JRG |
| INC., ARRIS TECHNOLOGY, INC., and | § | (Lead Case) |
| ARRIS ENTERPRISES, LLC, | § | |
| Defendants. | § | |
| | § | |
| | § | |

**PLAINTIFF TQ DELTA, LLC'S MOTIONS FOR
A NEW TRIAL ON DAMAGES AND THE VALIDITY OF U.S. PATENT NO. 8,462,835,
AND CONDITIONAL MOTION FOR A NEW TRIAL ON ADDITIONAL DAMAGES
FOR INFRINGEMENT OF U.S. PATENT NOS. 8,462,835, 8,090,008, AND 7,570,686**

**Table of Contents**

I.   MOTION FOR A NEW TRIAL ON DAMAGES ..............................................1

    A.   Erroneous Jury Instruction .......................................................................1

    B.   Dr. Becker's Unsupported SSPPU Testimony.........................................4

    C.   Legal Standards.......................................................................................5

    D.   The Erroneous Instruction on TQD's Damages Model was
        Prejudicial ...............................................................................................6

        1.   TQD Timely Objected to the Instruction and
            Requested an Alternative Instruction that Would
            Have Remedied the Error.............................................................6

        2.   The Court's Instruction was Erroneous ......................................7

        3.   The Erroneous Instruction Had Prejudicial Effect......................9

    E.   Allowing Dr. Becker's SSPPU Testimony was Improper and
        Prejudicial .............................................................................................10

II.  MOTION FOR A NEW TRIAL REGARDING VALIDITY OF
    THE 835 PATENT ..........................................................................................13

III. CONDITIONAL MOTION FOR A NEW TRIAL ON
    ADDITIONAL DAMAGES ...........................................................................15

IV.  CONCLUSION...............................................................................................15

## TABLE OF AUTHORITIES

**CASES**

*Accord Delaronde v. Legend Classic Homes, Ltd.*,
716 Fed. Appx. 322 (5th Cir. 2018).................................................................................. 6

*Advanced Display Sys. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000) ............................................................................. 5, 6, 10

*Aguayo v. Universal Instruments Corp.*,
356 F. Supp. 2d 699 (S.D. Tex. 2005) ............................................................................ 8

*Bender v. Brumley*,
1 F.3d 271 (5th Cir. 1993) ............................................................................................... 9

*Biodex Corp. v. Loredan Biomedical, Inc.*,
946 F.2d 850 (Fed. Cir. 1991) ........................................................................................ 5

*Blitzsafe Tex., LLC v. Honda Motor Co.*,
No. 2:15-cv-1274-JRG-RSP, 2017 U.S. Dist. LEXIS 176613 (E.D. Tex. Jan. 10, 2017) ....... 12

*Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*,
No. 6:07-cv-222, 2009 U.S. Dist. LEXIS 36246 (M.D. Fl. Apr. 17, 2009) ............................ 12

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
25 F.4th 976 (Fed. Cir. 2022) ......................................................................................... 8

*Carnegie Mellon Univ. v. Marvell Tech. Grp, Ltd.*,
807 F.3d 1283 (Fed. Cir. 2015) .................................................................................... 10

*Davis v. Ector County, Tex.*,
40 F.3d 777 (5th Cir. 1994) ............................................................................................ 6

*Finalrod IP, LLC v. Endurance Lift Sols., Inc.*,
No. 2:20-cv-00189, 2021 U.S. Dist. LEXIS 202681 (E.D. Tex. Oct. 20, 2021)..................... 11

*GPNE Corp. v. Apple, Inc.*,
No. 12-CV-02885-LHK, 2014 U.S. Dist. LEXIS 108686 (N.D. Cal. Aug. 6, 2014).............. 12

*Hanson v. Alpine Valley Ski Area, Inc.*,
718 F.2d 1075 (Fed. Cir. 1983) ...................................................................................... 7

*In re Isbell Records, Inc.*,
774 F.3d 859 (5th Cir. 2014) ........................................................................................... 5

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ......................................................................................... 13

*Minks v. Polaris Indus.*,
546 F.3d 1364 (Fed. Cir. 2008) ................................................................................. 5, 10

*Munn v. Algee*,
924 F.2d 568 (5th Cir. 1991) .......................................................................................... 5

*Network-1 Techs. v. Hewlett-Packard Co.*,
    No. 6:13-CV-00072-RWS, 2021 U.S. Dist. LEXIS 92958 (E.D. Tex. May 7, 2021) ............... 5

*Russell v. Plano Bank & Trust*,
    130 F.3d 715 (5th Cir. 1997) ................................................................................................. 10

*Smith v. Transworld Drilling Co.*,
    773 F.2d 610 (5th Cir. 1985) ................................................................................................... 5

*Stickle v. Heublein, Inc.*,
    716 F.2d 1550 (Fed. Cir. 1983) ............................................................................................... 8

**RULES**

Fed. R. Civ. P. 50(a) ..................................................................................................................... 2

Fed. R. Civ. P. 59 ..................................................................................................................... 1, 5

Fed. R. Civ. P. 61 ..................................................................................................................... 5, 6

Pursuant to Fed. R. Civ. P. 59, Plaintiff TQ Delta, LLC ("TQD") moves for a new trial on (i) damages due to error relating to jury instructions and admission of evidence, (ii) the validity of U.S. Patent No. 8,462,835, and (iii) additional damages for infringement of U.S. Patent Nos. 8,090,008, 7,570,686, and/or 8,462,835 should the Court grant TQD's motions for JMOL or a new trial relating to those patents and deny TQD's motion for a new trial on all damages.

## I.      MOTION FOR A NEW TRIAL ON DAMAGES

After a week-long trial, the jury deliberated for only a few hours before rendering a verdict that was overwhelmingly in TQD's favor.  The jury found, among other things, that TQD's U.S. Patent Nos. 7,453,881, 8,276,048, 8,468,411, and 9,154,354 were willfully infringed and are not invalid, awarded TQD $11,125,000 as a reasonable royalty, and rejected CommScope's[1] claim that TQD had breached any FRAND obligation.  *See* Dkt. No. 513.  TQD seeks a new trial on the issue of damages because the Court committed prejudicial error by (i) incorrectly instructing the jury that TQD's damages model depends on any cost savings to **CommScope**, and (ii) allowing CommScope's damages expert to testify, without support, that the DSL chip in the accused products is the smallest saleable patent practicing unit ("SSPPU"). Those errors fundamentally harmed TQD's substantive rights – its damages for CommScope's infringement – and are inconsistent with substantial justice.  Thus, TQD is entitled to a new trial.

### A.  Erroneous Jury Instruction

The Court gave an erroneous jury instruction that mischaracterized the fundamental nature of the cost-savings damages model used by TQD's damages expert, Dr. Jonathan Putnam. At trial, TQD asserted standard essential patents ("SEPs") and non-SEPs against CommScope. Dr. Putnam testified at trial that he used a cost savings model to calculate TQD's reasonable

---

[1] All Defendants collectively are referred to herein as "CommScope" unless otherwise indicated.

1

royalty damages for infringement of the SEPs that relied on the cost savings that CommScope's customer, AT&T, realized by using standardized DSL technology found in the accused products instead of using Fiber to the Premises ("FTTP") technology.  *See* 3/22/23 Tr. at 14:1-22:15; 102:20-105:16.  He also testified that TQD was entitled to damages for infringement of the non-SEPs that are based on the cost savings realized by being able to make a smaller chip for use in CommScope's accused products.  *See id.* at 40:2-20; 48:19-23.  Before the trial, CommScope had moved to exclude Dr. Putnam's damages opinions "as inconsistent with legal precedent," pointing to the fact that his cost savings model is based on the savings to AT&T as a reason for excluding the opinions.  *See* Dkt. No. 346 at 3; 3/1/23 Tr. at 72:1-11; 96:7-17.  The Court, however, denied that motion and, in its position as a gatekeeper, allowed Dr. Putnam to present his damages model to the jury.  *See* 3/1/23 Tr. at 97:22-99:25; Dkt. No. 496 at 5.[2]

On the morning of the final day of trial, and after the close of evidence and Dr. Putnam's testimony, the Court circulated jury instructions to the parties, which included the following:

> TQ Delta, the Plaintiff, has proposed a cost-savings model of calculating reasonable royalty damages that values the Accused Products that CommScope, the Defendant, provides to its customers. This approach relies upon estimated costs, if any, that ***CommScope*** saved from making, using, or selling the Accused Products. In considering the amount of reasonable royalty damages under the cost-savings model, you should focus on whether ***CommScope's*** make, use, or sale of the patented technology allowed ***it*** to avoid taking a different, more costly course of action, and if so, how much CommScope saved by using the Accused Products instead of taking the more costly course of action.

Ex. A (Final Jury Instructions) at 25 (emphasis added).  Much to TQD's surprise, these instructions erroneously told the jury that Dr. Putnam's model relied upon cost savings realized *by CommScope*, not by AT&T, which was plainly at odds with Dr. Putnam's trial testimony.

---

[2] CommScope also moved for JMOL of no damages under Fed. R. Civ. P. 50(a), arguing that Dr. Putnam improperly relied on the cost savings to AT&T instead of CommScope in his damages model, but the Court also denied that motion.  *See* 3/23/23 Tr. at 243:17-245:9; 249:6-11.

Before closing arguments, TQD timely objected to this instruction and asked the Court to modify it by genericizing who benefits from the cost savings.   3/24/23 Tr. at 10:14-11:11.  CommScope also objected to the instruction and had itself proposed an instruction that similarly genericized the direct beneficiary of the cost savings.   *See id.* at 11:13-15; Ex. B, 3/23/23 Email from Deane to Court, at 5 ("Another approach to calculating a reasonable royalty may be reliance upon estimated cost savings from use of the infringing product.").   The Court, however, overruled TQD's and CommScope's objections (*see* 3/24/23 Tr. at 11:12; 11:16), and then incorrectly instructed the jury that TQD's damages model "relies on estimated costs, if any, that CommScope saved from making, using, or selling the Accused Products" and to "focus on whether CommScope's make, use, or sale of the patented technology allowed it to avoid taking a different, more costly course of action."  *Id.* at 59:17-60:4.

In closing arguments, the Court's erroneous jury instruction allowed CommScope's counsel (who by then knew that the Court's instruction would focus the jury on the estimated cost savings to CommScope) to sow the seeds of jury confusion and cast doubt about the sufficiency of the evidence supporting Dr. Putnam's damages model by criticizing TQD for seeking "savings that AT&T had, not savings that CommScope had" and for "trying to make [CommScope] pay for savings from AT&T."  *Id.* at 93:15-19; 113:16-24.

The Court's jury instruction on Dr. Putnam's cost savings model was prejudicial error.  The instruction was not a correct statement of the law, Dr. Putnam's damages model, or the issues the jury should have been deciding.  Because Dr. Putnam testified that his damages model was based on cost-savings to AT&T and CommScope's chipmaker, but the Court then instructed the jury to consider CommScope's costs savings, which Dr. Putnam did not testify about, the instruction not only confused and misled the jury, but it also required the jury to throw out the

"base" of Dr. Putnam's royalty computation.  The only "base" the jury was then left to use was the selling price of CommScope's damages expert's unsupported SSPPU.  This could only have resulted in the jury issuing a smaller damages award than TQD was entitled to.

### B.  Dr. Becker's Unsupported SSPPU Testimony

Error warranting a new trial was committed another way.  Before trial, TQD moved to strike the opinion of CommScope's damages expert, Dr. Stephen Becker, that the DSL chip included in the accused customer premises equipment ("CPE") products is the SSPPU because that opinion was not supported by any testimony or opinions of a technical expert.  *See* Dkt. No. 345, 382, 406, and 427.  Dr. Becker based his SSPPU opinion entirely on "discussions" he purportedly had with CommScope's technical experts, but none of those technical experts had disclosed any opinion or factual analysis in their reports that might have supported Dr. Becker's SSPPU opinion.  The Court, however, denied TQD's motion, *see* Dkt. No. 496 at 5, and Dr. Becker expressed at trial his conclusory and unsupported opinion that the SSPPU is the DSL chip and that damages should be a running royalty of 1.57% to 2.91% of the selling price of the DSL chip.  *See* 3/23/23 Tr. at 73:19-24; 96:13-97:5; 131:25-132:3; 141:14-143:15.  When pressed at trial for support for his opinion that the DSL chip is the SSPPU, Dr. Becker admitted that he did not "have the ability to make that analysis on my own" and that the only evidence for his opinion was undocumented phone calls he purportedly had with CommScope's technical experts.  *Id*. at 142:14-25; 143:10-15.  He also acknowledged that CommScope's technical experts did not testify before the jury that the DSL chip is the SSPPU or that they had had any discussions with Dr. Becker about the SSPPU.  *Id*. at 143:1-15.

It was prejudicial error to allow Dr. Becker to provide testimony on the SSPPU because, though unquestionably technical in nature, it was not supported by any testimony from a technical expert.  Also, it allowed the jury to use just the DSL chip as the royalty base – as

opposed to the full DSL chipset and other components comprising the claimed "transceivers" of the accused products as identified by TQD's technical experts (*see* 3/21/23 Tr. at 23:11-24:24; 41:9-42:3; 116:24-118:18; 136:3-17; 3/20/23 Tr. at 211:20-212:25; 307:22-309:13) – in arriving at its reasonable royalty award, which necessarily drove down the jury's damages award.

### C.  Legal Standards

A new trial may be granted in the interest of justice "on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1).  A new trial is appropriate when, *inter alia*, the trial was unfair or prejudicial error was committed during the trial.  *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).  "In making this determination, the district court weighs all the evidence but need not view it in the light most favorable to the nonmoving party."  *Id*.  A new trial should be granted when "necessary to prevent an injustice."  *In re Isbell Records, Inc.*, 774 F.3d 859, 872 (5th Cir. 2014) (quotation marks and citation omitted).

The Court can grant a new trial based on an erroneous evidentiary ruling when the error prejudiced a substantial right of the moving party.  *Network-1 Techs. v. Hewlett-Packard Co.*, No. 6:13-CV-00072-RWS, 2021 U.S. Dist. LEXIS 92958, at *10 (E.D. Tex. May 7, 2021); *Munn v. Algee*, 924 F.2d 568, 571 (5th Cir. 1991); Fed. R. Civ. P. 61.  Furthermore, a party may challenge a jury verdict and seek a new trial by establishing that the court committed a legal error or abused its discretion by issuing an incorrect jury instruction.  *See Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1281 (Fed. Cir. 2000); *Minks v. Polaris Indus.*, 546 F.3d 1364, 1375-76 (Fed. Cir. 2008); *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 853-54 (Fed. Cir. 1991).  A party seeking a new trial based on erroneous jury instructions must establish that (1) it made a proper and timely objection to the jury instructions, (2) those instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) it requested alternative

instructions that would have remedied the error.  *Advanced Display*, 212 F.3d at 1281.[3]

"Prejudicial error exists when it 'appears to the court [that the error is] inconsistent with

substantial justice.'"  *Advanced Display*, 212 F.3d at 1283 (quoting Fed. R. Civ. P. 61); *see also*

*Davis v. Ector County, Tex.*, 40 F.3d 777, 786 (5th Cir. 1994) (instructions should "show no

tendency to confuse or mislead the jury with respect to the applicable principles of law" and "we

will reverse if we conclude that the trial court erred with respect to the instructions proffered to

the jury and that . . . the error affected the outcome of the case") (citations omitted).

### D.  The Erroneous Instruction on TQD's Damages Model was Prejudicial

TQD is entitled to a new trial on damages because the Court committed prejudicial error

by erroneously instructing the jury that TQD's damages model relied on CommScope's cost-

savings and that it "should focus on whether CommScope's make, use, or sale of the patented

technology allowed it to avoid taking a different, more costly course of action."  3/24/23 Tr. at

59:17-60:4.   But for the Court's erroneous jury instruction directing it to consider and "focus

on" the cost savings to CommScope, which was never the basis for Dr. Putnam's cost savings

model, the jury would have been able to weigh Dr. Putnam's trial testimony fairly on its merits

and core basis – the cost savings to AT&T.   A jury instruction that tells the jury that a party's

expert's damages model is something that it is not, forcing the jury to view the evidence through

the prism of a false standard, could only cause prejudicial error and an unfair trial.

#### 1.     TQD Timely Objected to the Instruction and Requested an Alternative Instruction that Would Have Remedied the Error

Before the charge conference, Dr. Putnam had already testified that concerning TQD's

asserted SEPs, TQD's damages theory included a cost-savings model based on the cost-savings

---

[3] *Accord Delaronde v. Legend Classic Homes, Ltd.*, 716 Fed. Appx. 322, 326 (5th Cir. 2018).

that CommScope's customer, AT&T, realized from using DSL technology instead of FTTP technology.  He further testified that, concerning the asserted non-SEPs, TQD's damages model was based on cost savings realized by the chipmaker.  At the formal charge conference, TQD made a proper and timely objection to the Court's proposed instruction that incorrectly stated that TQD's model relied on *CommScope's* cost-savings and requested an alternative instruction that remedied that error by genericizing by whom the relevant cost savings was realized.  *See* 3/24/23 Tr. at 10:16-11:11.  The substance of TQD's proposed alternative instruction was not substantially covered elsewhere in the jury instructions.  Because it was not covered elsewhere, the Court provided a new instruction on cost savings on the morning of the last day of trial.

CommScope did not disagree with TQD's objection or proposed alternative instruction.  Indeed, CommScope also objected to the instruction as given and had previously proposed an instruction that genericized who realized the cost savings benefit.  *See id*. at 11:13-15; Ex. B at 5.  The Court, however, overruled TQD's and CommScope's objections (*see* 3/24/23 Tr at 11:12; 11:16) and subsequently instructed the jury that TQD's model *was* based on, and the jury should *focus* on, any cost savings to CommScope.  *Id*. 59:17-60:4.

## 2.     The Court's Instruction was Erroneous

The Court's instruction regarding Dr. Putnam's cost savings model was not just inconsistent with his testimony, it was legally erroneous.  It is well accepted that a patentee can base its reasonable royalty damages theory on a cost savings model.  *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1081-81 (Fed. Cir. 1983) ("Reliance upon estimated cost savings from use of the infringing product is a well-settled method of determining a reasonable royalty.").  And, there is no requirement that a cost-savings model be based on the cost-savings of the defendant and to the exclusion of the defendant's customer for the infringing product.  Logically, there is good reason for that – in many cases, it is an accused infringer's customer that

realizes the benefit of using patented technology.  For example, the customer benefits from a gas-saving invention in a car or a better camera in a smartphone, not the maker of the car or the phone.  Here, the reason CommScope made and sold the accused DSL CPE products in the first place was because its customers recognized the significant benefit and cost-savings of using DSL technology instead of FTTP technology and wanted DSL CPEs.  Thus, the value of the patented inventions in this case can and should be based on the cost-savings benefit realized by the customer who bought CommScope's infringing products.  Indeed, if CommScope's products did not include the infringing DSL technology that allowed the customer to realize immense cost savings, the customer would not have bought them. CommScope would have sold zero units instead of the >36 million units it did sell.

The law supports TQD's proposed alternative instruction in other ways.  TQD is entitled to recover damages only once for the infringing CommScope products – it cannot recover damages for successive infringers of the same product in the supply chain, such as a downstream customer.  *See Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 994 (Fed. Cir. 2022); *see also Aguayo v. Universal Instruments Corp.*, 356 F. Supp. 2d 699, 755 (S.D. Tex. 2005) ("[A] patentee's damages are limited to full recovery for a particular unit even if there is a subsequent infringement by another with respect to the same unit.").  Therefore, because TQD sued the manufacturer, CommScope, and is not entitled to pursue a separate recovery against its customer or chip supplier, TQD can base its damages on the cost-savings of end-user customers and of the chip supplier to make sure that its one-time recovery adequately compensates it for the value of its patented technology.  *See Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983) ("the quantum of [the patent owner's] recovery for an infringing [product] does not depend on whether [the user] or [the maker/seller] is the defendant.").

8

Moreover, the Court previously found that Dr. Putnam's damages model based on cost-savings to CommScope's customer is consistent with the law.  As gatekeeper, the Court denied CommScope's motion to exclude Dr. Putnam's damages testimony as "inconsistent with legal precedent."  Instead, it allowed him to present to the jury his theory based on cost savings to the customer.  Dkt. No. 496 at p. 5. Accordingly, the Court has already found that TQD's cost savings theory is sufficiently reliable and rooted in law.

In sum, the Court's instruction on Dr. Putnam's damages model did not "instruct the jurors, fully and correctly, on the applicable law of the case, [or] guide, direct, and assist them toward an . . . understanding of the legal and factual issues" relating to TQD's damages claim. *See Bender v. Brumley*, 1 F.3d 271, 276 (5th Cir. 1993).

### 3.    The Erroneous Instruction Had Prejudicial Effect

The Court's erroneous jury instruction was unfairly prejudicial.  By allowing the jury to hear Dr. Putnam's damages model based on cost-savings to CommScope's customer and chip supplier but then instructing the jury that that damages model relies on, and the jury must focus on, any cost-savings by CommScope, the Court's instruction necessarily confused and misled the jury on a critical issue.  Indeed, the Court's instruction effectively told the jury to disregard Dr. Putnam's damages model by erroneously describing the model as relying on cost savings to CommScope, which Dr. Putnam did not (and had no reason to) present any evidence about because that was never the basis for his model.  At the most critical moment of the trial, this erroneous instruction gutted TQD's damages case and unfairly cast doubt on the sufficiency of TQD's damages evidence and the credibility of Dr. Putnam and his model.  The erroneous instruction drove down the jury's damages award because, given that Dr. Putnam presented no evidence of, but the jury was instructed to "focus on," the cost saving to CommScope, the jury could only have concluded that his damages model had no supporting evidence and, thus, it had

9

no choice but to turn to Dr. Becker's model to calculate damages.  Thus, the error fundamentally harmed TQD's rights – its damages award for CommScope's infringement – and, therefore, is inconsistent with substantial justice.[4]

Accordingly, TQD should be given a new trial on the issue of damages where the jury is instructed properly on TQD's damages model.  *See*, *e.g.*, *Minks*, 546 F.3d at 1376, 1381 (remanding for new trial on damages because "erroneous and prejudicial" instruction on marking did "not fairly and correctly state the issues and the law" and "the jury should have been more clearly instructed that it was permitted to find notice prior to the date [plaintiff] discovered [defendant's] infringement"); *Carnegie Mellon Univ. v. Marvell Tech. Grp, Ltd.*, 807 F.3d 1283, 1310-11 (Fed. Cir. 2015) (remanding for new trial on damages because instruction on extraterritoriality did not require the jury to find a domestic location of sale as to chips not made or used in U.S. and, thus, "did not properly apprise[] the jury of the issues and the applicable law") (quotation marks and citation omitted); *Advanced Display*, 212 F.3d at 1283-84, 1289 (remanding for a new trial on anticipation where instruction improperly left to the jury the legal question of what material was incorporated by reference into a prior art patent).

### E.  Allowing Dr. Becker's SSPPU Testimony was Improper and Prejudicial

The Court's error in allowing Dr. Becker to testify that TQD's royalty should be based on the price of only the DSL chip allowed the jury to undervalue TQD's damages and, thus, prejudiced a substantial right of TQD.

---

[4] TQD is entitled to a new trial due to the erroneous instruction even under the plain error standard because, as discussed herein, the error was clear and obvious, it affected TQD's substantial rights, and not correcting it would seriously affect the fairness, integrity, or reputation of judicial proceedings.  *See Russell v. Plano Bank & Trust,* 130 F.3d 715, 721 (5th Cir. 1997).

Dr. Becker testified at trial that TQD's damages should be a running royalty of 1.57% to 2.91% of the estimated selling price of the DSL chip – and only the DSL chip – used in the accused products.  *See* 3/23/23 Tr. at 73:19-24.  Dr. Becker confirmed he based his damages opinion on his understanding that all the infringement of the accused products occurred in the DSL chip and that only the DSL chip is the SSPPU.  *Id*. at 131:25-132:3 ("Q. You believe, don't you sir, it's your testimony, and it's the basis for your opinion that the smallest saleable patent practicing unit in this case is the DSL chip, don't you?  A. I do."); 142:10-23.  Dr. Becker, however, admitted that the only basis for his understanding that the DSL chip is the SSPPU was some phone conversations he allegedly had with CommScope's technical experts.  *Id*. at 142:14-25; 143:10-15.  Dr. Becker did not even identify the experts he allegedly conversed with, and he acknowledged that CommScope's technical experts did not testify that the DSL chip is the SSPPU or that they had had any discussions with Dr. Becker about the SSPPU.  *Id*. at 143:1-15.

Thus, the jury was not presented with any testimony or evidence (beyond conclusory hearsay) to support the linchpin of Dr. Becker's damages testimony – that a reasonable royalty should be based on the price of just the DSL chipset in the accused products.  And, because CommScope's technical experts did not disclose any SSPPU opinion in their expert reports and, thus, could not and did not provide any analysis of the SSPPU at trial, TQD had no meaningful opportunity to cross-examine in front of the jury CommScope's technical experts on the purported SSPPU opinions they allegedly passed on to Dr. Becker.

While Dr. Becker may rely on the opinions of CommScope's technical experts, he cannot rely on a "black box" of undisclosed and unexplained opinions.  *See Finalrod IP, LLC v. Endurance Lift Sols., Inc.*, No. 2:20-cv-00189, 2021 U.S. Dist. LEXIS 202681, at *8 (E.D. Tex. Oct. 20, 2021) (precluding plaintiff's damages expert from making statements about plaintiff's

technical expert's opinion regarding non-infringing alternatives provided on a phone call because the technical expert "never disclosed that opinion or disclosed any analysis to properly support that opinion"); *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 U.S. Dist. LEXIS 108686, *22-27 (N.D. Cal. Aug. 6, 2014) (excluding damages expert's SSPPU testimony because the "testimony is either outside the scope of [the expert's] expertise, or it relies on undisclosed opinions from [plaintiff's]'s technical expert"); *Blitzsafe Tex., LLC v. Honda Motor Co.*, No. 2:15-cv-1274-JRG-RSP, 2017 U.S. Dist. LEXIS 176613, at *24-25 (E.D. Tex. Jan. 10, 2017) (that plaintiff's technical expert had not disclosed the opinions that Dr. Becker relied on in his damages report was a "critical issue"; requiring the technical expert to disclose "in sufficient [] detail" the opinions Dr. Becker relied on); *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, No. 6:07-cv-222, 2009 U.S. Dist. LEXIS 36246, at *12 (M.D. Fl. Apr. 17, 2009) (an expert report that "did not provide the identities of all the individuals interviewed and consulted, or the substance of the discussions" violated Rule 26(a)(2)(B)(ii)).

Because CommScope's technical experts did not present any opinions regarding the SSPPU to the jury, and TQD did not have the opportunity to cross-examine them on any such opinions, Dr. Becker's testimony about the DSL chip being the SSPPU and the base for a royalty was prejudicial to TQD. *See Bray*, 2009 U.S. Dist. LEXIS 36246 at *13 ("Generalizations like these coupled with the failure to disclose the substance of information obtain[ed] by CCA through interviews and conferences are too vague to permit [Defendant] to prepare adequately to cross-examine CCA or for its experts to address the factual premises on which CCA's programming opinions are based.  As such, [Defendant] has been prejudiced.").  That prejudice was compounded by the fact that Dr. Becker's unsupported testimony allowed the jury to undervalue TQD's damages by starting with a smaller royalty base – the price of the DSL chip.

Given the prejudice to a substantial right, *i.e.*, its damages, TQD is entitled to a new trial on damages at which CommScope is not allowed to base its royalty damages theory on just the DSL chip. *See*, *e.g.*, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79-82 (Fed. Cir. 2012) (finding that the district court erred in denying defendant's *Daubert* motion to exclude damages expert's testimony on a 6% running royalty rate and that "the 6% royalty rate was untethered from the patented technology at issue and the many licenses thereto and, as such, was arbitrary and speculative. . . .  A new trial is required because the jury's verdict was based on an expert opinion that finds no support in the facts in the record").

## II.    MOTION FOR A NEW TRIAL REGARDING VALIDITY OF THE 835 PATENT

TQD requests a new trial on validity of claim 10 of the 835 Patent because the Court improperly struck paragraphs 69-72 of Dr. Madisetti's Rebuttal Report and precluded him from testifying that G.992.1's DRA_Swap_Request and DRA_Swap_Reply messages do not meet the "flag signal" requirement of claim 10 because they do not "indicate" when the updated FIP setting is to be used but instead *set forth* the change time in the message itself.

The Court construed "flag signal" as "signal used to indicate when an updated FIP setting is to be used (the signal does not include the FEC codeword counter value upon which the updated FIP setting is to be used)."  CommScope moved to exclude paragraphs 69-72 of Dr. Madisetti's Rebuttal Report because allegedly "Dr. Madisetti provides his own claim construction for the term."  *See* Dkt. No. 342 at 4.  CommScope asserted that TQD was trying to revive its argument regarding the negative portion of the claim construction.  *See* 3/1/23 Tr. at 182:4-184:23.  Ultimately, the Court struck paragraphs 69-72 of Dr. Madisetti's Rebuttal Report, stating that they "conflicted with the Court's claim construction."  Dkt. No. 496 at 4.

The Court's order striking paragraphs 69-72 is erroneous and caused severe prejudice to TQD in attempting to defend the validity of its 835 Patent.  Contrary to the Court's decision, Dr.

Madisetti's stricken opinions are consistent with the positive portion of the Court's construction of "flag signal" requiring a "signal used to ***indicate*** when an updated FIP setting is to be used." Dkt. No. 169 at 91 (emphasis added).   The stricken opinions explained that the DRA_Swap_Request and DRA_Swap_Reply messages cannot meet the Court's construction of "flag signal" because they themselves include information that sets forth, rather than indicates, when the updated FIP setting is to be used.[5]  This distinction is reasonable and correct given the use of "flag signal" in the 835 Patent specification and in the context of related claim language showing that the switching time is "predefined" rather than specified, *i.e.*, set forth, in a message during operation.  *See* Tr. Ex. 6, 835 Patent, at 19:14-30 (explaining that switch occurs at a "*predefined* change time following the transmission of the flag signal") and at claim 8 ("the switching occurs on a *pre-defined* forward error correction codeword boundary following the flag signal").  The Court recognized this same distinction:

> Construing the term "flag signal" in light of this disclosure in the specification does not improperly limit the term to a particular embodiment because the surrounding claim language, such as in above-reproduced Claim 8 of the '835 Patent, recites that "the switching occurs on a pre-defined forward error correction codeword boundary following the flag signal." This usage of "pre-defined" and "following" demonstrates that ***a "flag signal" does not itself set forth a change time but rather is merely an indication*** that the updated FIP setting / interleaver parameter value should be used at some juncture that is pre-defined in relation to when the flag signal is received.

Dkt. No. 169 at 90 (emphasis added).

The exclusion of Dr. Madisetti's opinions in paragraphs 69-72 was highly prejudicial.  It precluded him from presenting conclusive evidence to the jury that the DRA_Swap_Request and

---

[5] *See* Dkt. No. 342-3, Madisetti Rebuttal Report, at ¶70 ("The DRA_Swap_Request and DRA_Swap_Reply messages are not indicators. Rather, they contain information about the timing of parameter changes that must be decoded in order for both transceivers to coordinate changes to FIP settings."); ¶72 ("Accordingly, they are not flag signals because they include information that must be decoded in order to specify the timing of parameter changes.").

DRA_Swap_Reply messages of the G.992.1 reference do not disclose a "flag signal" because those messages "set forth a change time" in contradistinction to the claimed "flag signal" which "does not itself set forth a change time but rather is merely an indication."  Dkt. No. 169 at 90. But for the exclusion of paragraphs 69-72, the jury would not have had substantial evidence upon which it could have reasonably found that G.992.1 anticipates claim 10 of the 835 Patent.

## III.   CONDITIONAL MOTION FOR A NEW TRIAL ON ADDITIONAL DAMAGES

To the extent the Court grants one or more of TQD's motions for JMOL of infringement of the 008 Patent, no invalidity of the 686 Patent, or no invalidity of the 835 patent, or TQD's motion for a new trial on validity of the 835 Patent, the Court should also grant a new trial to determine the additional damages that would be due for CommScope's infringement of the additional patent(s).  A new trial on such damages would be warranted because the jury's verdict did not compensate TQD for CommScope's infringement of any of the 008, 686, or 835 patents. *See* Dkt. 508 at 7 ("Answer Questions No. 4a and 4b ONLY as to any Asserted Claim that you have found in Questions No. 1 and No. 2 to be BOTH INFRINGED AND NOT INVALID.").

## IV.   CONCLUSION

For at least the foregoing reasons, the Court should grant TQD's motion for a new trial on all damages. Additionally, the Court should grant a new trial to determine the validity of the 835 Patent.  In the event the Court denies TQD's motion for a new trial on all damages, the Court should grant a new trial on damages for the 008 Patent if its non-infringement verdict is overturned, for the 686 Patent if its invalidity verdict is overturned, and/or for the 835 Patent if its invalidity verdict is overturned or a new trial is granted to determine its validity.

Respectfully submitted,

Dated:  May 31, 2023          */s/ Peter J. McAndrews*
                              Peter J. McAndrews

15

(*Pro hac vice*)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(*Pro hac vice*)
rchiplunkar@mcandrews-ip.com

David Z. Petty
(*Pro hac vice*)
dpetty@mcandrews-ip.com

Ashley Ratycz
(*Pro hac vice*)
aratycz@mcandrews-ip.com

**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

Anthony K. Bruster
akbruster@brusterpllc.com
Texas Bar No. 24036280

Edward K. Chin
ed@brusterpllc.com
Texas Bar No. 50511688

Andrew J. Wright
andrew@brusterpllc.com
Texas Bar No.24063927

Shawn A. Latchford
shawn@brusterpllc.com
Texas Bar No. 24066603

**BRUSTER PLLC**
680 N. Carroll Ave., Suite 110
Southlake, TX 76092
(817) 601-9564 – Telephone

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

16

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

*Attorneys for Plaintiff TQ Delta, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this May 31, 2023 on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

/s/ *Peter J. McAndrews*
Peter J. McAndrews

## <u>CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL</u>

The undersigned certifies that, pursuant to Local Rule CV-5(a)(7), the foregoing instrument is designated as confidential in accordance with the previously signed Protective Order and is authorized by the Court to be filed under seal.

/s/ *Peter J. McAndrews*
Peter J. McAndrews

18