# EXHIBIT A

| | |
|---|---|
| **From:** | Patrick Clark <Patrick_Clark@txed.uscourts.gov> |
| **Sent:** | Friday, March 24, 2023 7:13 AM |
| **To:** | tqd; TQD-MHM-TX; Comm Scope; Dacus, Deron; michael.deane@alston.com; Rudy Fink; Ty Wilson |
| **Cc:** | Harris Huguenard; Dallas Jackson; Andrea Brunson |
| **Subject:** | Jury Instructions and Verdict Form |
| **Attachments:** | 221-cv-310 TQ Delta v. CommScope jury instructions.pdf; 221-cv-310 TQ Delta v. CommScope verdict form.pdf |

**CAUTION: External Email From: Patrick_Clark@txed.uscourts.gov**

Counsel,

Please find the jury instructions and verdict form attached for your review.

Best regards,

**Patrick Clark**
*Law Clerk to Chief Judge Rodney Gilstrap*
U.S. District Court for the Eastern District of Texas
100 East Houston Street
Marshall, Texas 75670
patrick_clark@txed.uscourts.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| TQ DELTA, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:21-CV-00310-JRG |
| | § | |
| COMMSCOPE  HOLDING  COMPANY, | § | |
| INC.,   COMMSCOPE  INC.,    ARRIS | § | |
| INTERNATIONAL   LIMITED,    ARRIS | § | |
| GLOBAL  LTD.,   ARRIS  US  HOLDINGS, | § | |
| INC.,  ARRIS  SOLUTIONS,  INC.,  ARRIS | § | |
| TECHNOLOGY,   INC.,   and   ARRIS | § | |
| ENTERPRISES, LLC, | § | |
| | § | |
| *Defendants.* | § | |

## FINAL JURY INSTRUCTIONS

Ladies and Gentlemen of the Jury: You have now heard the evidence in this case. I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions that I am about to give you orally. You will have these instructions for your review when you retire to deliberate in a few minutes. Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so.

It is your duty to follow the law as I give it to you. On the other hand, as I have said, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have made in the course of the trial or may make in the course of these instructions as an indication that I have any opinion about the facts in this case.

You are about to hear closing arguments from the attorneys for both of the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the

law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this form to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it, and sign it. Answer the questions as directed in the verdict form from the facts as you find them to be. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all of the witnesses, regardless of who may have called them, and the stipulations of the parties. You may also consider all the exhibits received and admitted into evidence, regardless of who may have introduced them.

You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all of the evidence. In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider a witness's manner and demeanor on the witness stand, any feelings or interest they may have in the case, any prejudice or bias about the case that the witness may have, and the consistency or inconsistency of their testimony, considered in light of the circumstances. Has the witness been contradicted by other evidence? Has he or she made statements at other times and places contrary to what he or she said on the witness stand? You must give the testimony of each witness the amount of credibility that you think it deserves.

You must also keep in mind, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth. You must consider whether any misstatement was an

intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

As I have told you previously, the attorneys in this case are advocates for their competing clients, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of this Court. When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer. If the objection was overruled, then you may treat the answer to that question just as you would treat the answer to any other question as if the objection had not been made. By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

Now, at times during the trial it was necessary for the Court to talk with the lawyers outside of your hearing at the bench, or by calling a recess and talking to them while you were out of the courtroom. This happened because, often during a trial, something comes up that does not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented.

The parties have stipulated or agreed to some facts in this case. When the lawyers on both

sides stipulate as to the existence of a fact, then you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proven. The parties stipulate to the following facts:

1. Plaintiff TQ Delta, LLC filed its Complaint, in this case, on August 13, 2021, alleging that the Defendants infringe certain claims of the Patents-in-Suit.  There are seven Patents-in-Suit: U.S. Patent No. 7,570,686 will be referred to as the "'686 Patent"; U.S. Patent No. 7,453,881 will be referred to as the "'881 Patent"; U.S. Patent No. 8,276,048 will be referred to as the "'048 Patent"; U.S. Patent No. 8,090,008 will be referred to as the "'008 Patent"; U.S. Patent No. 8,462,835 will be referred to as the "'835 Patent"; U.S. Patent No. 8,468,411 will be referred to as the "'411 Patent"; and U.S. Patent No. 9,154,354 will be referred to as the "'354 Patent."  I will refer to these patents as the "Patents-in-Suit" or as the "Asserted Patents."

2. Plaintiff TQ Delta, LLC owns all rights necessary to bring this action for the Patents-in-Suit.

3. Plaintiff TQ Delta, LLC is a limited-liability company organized and existing under the laws of the State of Delaware and having a principal place of business at 900 S. Capital of Texas Hwy., Suite 150, Austin, Texas 78746.

4. Defendant CommScope Holding Company, Inc. is a corporation organized and existing under the laws of the State of Delaware.

5. Defendant CommScope Inc. is a corporation organized and existing under the laws of the State of Delaware. CommScope Inc. is a wholly owned subsidiary of CommScope Holding Company, Inc.

6. Defendant CommScope Holding Company, Inc. acquired Defendants, ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC in 2019.

7. Defendant ARRIS US Holdings, Inc. is a corporation organized and existing under the

laws of the State of Delaware. ARRIS US Holdings, Inc. is a subsidiary of ARRIS International Limited.

8. Defendant ARRIS Solutions, Inc. is a corporation organized and existing under the laws of the State of Delaware. ARRIS Solutions, Inc. is a subsidiary of ARRIS U.S. Holdings, Inc.

9. Defendant ARRIS Technology, Inc. is a corporation duly organized and existing under the laws of the State of Delaware. ARRIS Technology, Inc. is a subsidiary of ARRIS Solutions, Inc.

10. Defendant ARRIS Enterprises LLC is a corporation organized and existing under the laws of the State of Delaware. ARRIS Enterprises LLC is a subsidiary of ARRIS Solutions, Inc.

11. ARRIS International Limited, ARRIS Global Ltd., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC maintain a regular and established place of business at 4516 Seton Center Pkwy, Austin, Texas 78759-5370 and/or 5300 Hollister St., Houston, Texas 77040.

12. CommScope Holding Company, Inc. and CommScope Inc. maintain a regular and established place of business at 2601 Telecom Parkway, Richardson, Texas 70852.

13. On April 4, 2019, CommScope Holding Company, Inc., acquired ARRIS International Limited, becoming its parent company. Prior to CommScope Holding Company, Inc.'s acquisition of ARRIS International Limited, ARRIS International Limited acquired 2Wire, Inc.

14. The priority dates for some of the Patents-in-Suit are as follows: October 5, 2001, for the '881 Patent; October 12, 2004, for the '048 Patent; November 9, 1999, for the '008 Patent; March 3, 2004, for the '835 Patent; April 12, 2006, for the '411 Patent; and April 18, 2000, for the'354 Patent.

15. The '686 Patent, the '881 Patent, the '008 Patent, the '835 Patent, and the '354 Patent

are subject to commitments with the International Telecommunications Union, which will be referred to as the "ITU."  These patents are often referred to as "standard essential patents" or "SEPs."  The '048 Patent and the '411 Patent are not standard essential patents and are not subject to commitments with the ITU.

Certain testimony in the case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition.

Before this trial began, the attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded their sworn testimony. Deposition testimony is entitled to the same consideration by you as testimony given by a witness in-person from the witness stand in open court. Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you in open court.

Now, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. However, you should not base your decision on any evidence not presented by the parties during this case, including your own personal experience with any products that are at issue in the case.

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have

testified to the contrary, if after considering all of the evidence, you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an "expert witness"—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide whether to rely upon it or not.

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits are sometimes called "jury aides." Demonstrative exhibits themselves are not evidence, but a witness's testimony concerning a demonstrative exhibit is evidence. Demonstrative exhibits will not be available for you to view during your deliberations.

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on the Plaintiff for some issues and on the Defendants for other issues. There are two burdens of proof that you will apply in this case: "preponderance of the evidence" and "clear and convincing evidence."

The Plaintiff in this case, TQ Delta, LLC, which I will refer to as "Plaintiff" or "TQ Delta," has the burden of proving patent infringement by a preponderance of the evidence. TQ Delta also has the burden of proving that CommScope has actively induced others to infringe the Asserted Patents by a preponderance of the evidence. TQ Delta also has the burden of proving willful patent infringement by a preponderance of the evidence. TQ Delta also has the burden of proving damages for any patent infringement by a preponderance of the evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more

probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

The Defendants in this case, CommScope Holding Company, Inc., CommScope Inc., ARRIS International Limited, ARRIS Global Ltd., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC, which I will refer to collectively as "Defendants," or "CommScope," have the burden of proving by a preponderance of the evidence that TQ Delta breached its contract with the ITU, to grant licenses to SEPs held by TQ Delta on fair, reasonable, and non-discriminatory, or "FRAND," terms and conditions.  CommScope also has the burden of proving invalidity of TQ Delta's patent claims by clear and convincing evidence.

Clear and convincing evidence means evidence that produces, in your mind, an abiding conviction that the truth of the party's factual contentions is highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If proof establishes, in your mind, an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

Now, as I've previously told you, ladies and gentlemen, these two burdens of proof are not to be confused with the burden of proof known as "beyond a reasonable doubt," which is the burden of proof applied in a criminal case, not in a civil case such as this. Beyond a reasonable doubt is a higher standard than both the preponderance of the evidence and clear and convincing evidence standards.

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions. As I previously advised you, this is an action for patent infringement.

TQ Delta contends that CommScope infringes certain claims of the Patents-in-Suit. Remember, there are seven Patents-in-Suit: the '686 Patent; the '881 Patent; the '048 Patent; the '008 Patent; the '835 Patent; the '411 Patent; and the '354 Patent.

The Plaintiff, TQ Delta, contends that the Defendants, CommScope, infringe the following claims of the Patents-in-Suit: Claim 36 of the '686 Patent, Claim 17 of the '881 Patent, Claim 5 of the '048 Patent, Claim 14 of the '008 Patent, Claim 10 of the '835 Patent, Claim 18 of the '411 Patent, and Claim 10 of the '354 Patent.  These are the "Asserted Claims."  TQ Delta contends that CommScope has infringed the Asserted Claims by making, using, selling, importing, or offering for sale the 5031, 5168, 5268, BGW210, NVG589, NVG599, and NVG44X.  I will refer to these as the "Accused Products."  TQ Delta also contends that CommScope has actively induced others to infringe the Asserted Patents.  TQ Delta further alleges that CommScope's infringement of the Asserted Patents was willful. TQ Delta contends that it is entitled to money damages in the form of a reasonable royalty for CommScope's infringement. TQ Delta has the burden to prove these issues by a preponderance of the evidence.

The Defendants, CommScope, deny that they infringe any of the Asserted Claims. CommScope denies that it makes, uses, offers for sale, sells, or imports any of the Accused Products that infringe any of the Asserted Claims.  CommScope also denies that it has induced others to infringe the Asserted Patents.  CommScope also denies that any alleged infringement was willful. CommScope also denies that it owes TQ Delta any money damages.

CommScope contends that all of the Asserted Claims of the Patents-in-Suit are invalid as obvious in light of the prior art.  Invalidity is a defense to infringement. CommScope has the burden to prove invalidity by clear and convincing evidence.

Invalidity and infringement are separate and distinct issues. Your job is to decide whether

9

CommScope has infringed any of the Asserted Claims and whether those claims are invalid.  If you decide that any Asserted Claim has been infringed and is not invalid, you will then need to decide the amount of money damages, if any, to be awarded to TQ Delta to compensate it for the infringement. If you decide that there was any infringement and it was willful, that decision should not affect any damages award you make. I will take willfulness into account later if you find it.

CommScope further contends that TQ Delta breached its commitment to the ITU by failing to offer to CommScope a license to TQ Delta's SEPs on FRAND terms. These terms and conditions are sometimes referred to as RAND, R-A-N-D, commitments. As this Court has previously instructed, FRAND and RAND have been used interchangeably throughout this trial. CommScope also alleges that CommScope is entitled to damages as a result of TQ Delta's breach of contract. CommScope has the burden to prove that TQ Delta breached its FRAND obligation by a preponderance of the evidence.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of the patent.  The claims are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims themselves that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims cover.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the

issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the case, I have already determined the meaning of the claims, and I have provided to you my definitions of certain claim terms.  These definitions can be found in your juror notebooks.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity.

You should disregard any evidence presented at trial that contradicts or is inconsistent with the constructions and definitions that I have given you. For claim limitations that I have not construed—that is, limitations that I have not interpreted or defined—you are to use the plain and ordinary meaning of the limitations as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent, at the time of the alleged invention. The meaning of the words of the patent claims must be the same when deciding both the issue of infringement and the issue of validity. You have been provided with copies of the Asserted Patents, which are inside your juror notebooks, and you may use them in your deliberations.

Several times in my instructions, I have referred or will refer to a person of ordinary skill in the field of the invention, or a person of ordinary skill in the art. It is up to you to decide the level of ordinary skill in the field of technology of the patent and what it is.  In deciding this, you should consider all of the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a

patent can be infringed. Each of the claims must be considered individually.

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a product satisfies each of these requirements, then it is covered by the claim. There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by the claim. If the product is not covered by the claim, that product cannot infringe that claim.

The beginning portion, or preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an Accused Product includes all of the requirements of that claim, the claim is infringed. This is true even if the Accused Product contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also contains other structures, such as leaves that would go in the tabletop or wheels that would go on the ends of the legs.

This case involves two types of patent claims: independent claims and dependent claims. In this case, Claim 36 of the '686 Patent, Claim 17 of the '881 Patent, Claim 5 of the '048 Patent, Claim 14 of the '008 Patent, Claim 18 of the '411 Patent, and Claim 10 of the '354 Patent are

independent claims.   Claim 10 of the '835 Patent is a dependent claim.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A "dependent claim" does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers or, stated alternatively, from which it depends. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

If a person or corporation makes, uses, sells, or offers to sell within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person or corporation is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the Asserted Claims, as I have construed each of them, to the Accused Product, and determine whether or not there is infringement.  This is the only correct comparison.

You should not compare the Accused Products with any specific examples set out in the patent or the prior art. In deciding infringement, the only correct comparison is between the Accused Products and the limitations of the claims as the Court has construed them. You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

I will now instruct you on the specific rules that you must follow to determine whether TQ Delta has proven that CommScope has directly infringed one or more of the Asserted Claims involved in this case.

A patent can be directly infringed even if the alleged direct infringer did not have knowledge of the patent and without the direct infringer knowing that what it did was infringement of the claim. A patent may also be directly infringed even though the accused direct infringer believed in good faith that what it did was not an infringement of the patent.

You must determine, separately for each Asserted Claim, whether or not there is infringement. In order to prove direct infringement of an Asserted Claim, TQ Delta must show by a preponderance of the evidence that an Accused Product includes each and every limitation of the claim. In determining whether an Accused Product directly infringes an Asserted Claim in this case, you must compare an Accused Product with each and every one of the requirements or limitations of that claim to determine whether that Accused Product contains each and every requirement or limitation recited in the claim. An Accused Product infringes a claim if it satisfies the claim elements, even though it may also be capable of non-infringing modes of operation.

However, if you find that an independent claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets additional requirements of any claims that depend from the independent claim; that is, whether those claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

A claim requirement is literally present if it exists in an Accused Product just as it is described in

the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by its plain and ordinary meaning to one of ordinary skill in the art. If an Accused Product omits any element recited in a claim, then you must find that the Accused Product in question does not literally infringe that claim.

So long as an Accused Product has each and every one of the claim requirements, infringement of that claim is shown, even if the product contains additional features or elements not required by the claims.

In this case, TQ Delta has also accused CommScope of indirect infringement by actively inducing others to directly infringe the Asserted Claims of the Asserted Patents.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

CommScope is liable for induced infringement of a claim only if TQ Delta proves by a preponderance of the evidence that:

1. Acts have been carried out by CommScope's customers that directly infringe that claim;

2. CommScope has taken action during the time the Asserted Patents were in force, intending to cause the infringing acts to be carried out by its customers; and

3. CommScope has been aware of the Asserted Patents and has known that the acts of its customers constitute infringement of the Asserted Patents, or was willfully blind to that infringement.

Willful blindness is established if CommScope believed that there was a high probability that the acts, if taken, would constitute infringement of the Asserted Claims, but it deliberately avoided confirming that belief.

To establish induced infringement, it is not sufficient that someone else directly infringes a claim, nor is it sufficient that the company accused of inducing another's direct infringement merely had knowledge or notice of an Asserted Patent or had been aware of the acts by another

15

that allegedly constitute direct infringement. Further, the mere fact that the company accused of inducing another's direct infringement had known or should have known that there was a substantial risk that someone else's acts would infringe is not sufficient. Rather, in order to find inducement, you must find that CommScope specifically intended or was willfully blind to that infringement.

TQ Delta also contends that CommScope has willfully infringed the Asserted Claims of the Patents-in-Suit.  If you decide that CommScope has infringed a valid claim, you must go on to address the issue of whether or not that infringement was willful. TQ Delta has the burden of proving willful infringement by a preponderance of the evidence. You may not determine that the infringement was willful just because CommScope knew of the Asserted Patents and infringed them. You may find that CommScope willfully infringed if you find that CommScope deliberately or intentionally infringed the Asserted Patents.

You may find that CommScope's actions were willful if CommScope acted in reckless or callous disregard of, or with indifference to, the rights of TQ Delta. A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that is known to it or would have been apparent to a reasonable person in its position.

To determine whether CommScope acted willfully, consider all the facts, and assess CommScope's knowledge at the time of the challenged conduct. Facts that may be considered include whether or not CommScope reasonably believed it did not infringe or that the Asserted Patents were invalid. You may also find that CommScope's actions were deliberate or intentional if CommScope was willfully blind to TQ Delta's patent rights.

Your determination of willfulness should incorporate the totality of the circumstances based on the evidence presented during this trial. Willfulness can be established by circumstantial

evidence. If you decide that any infringement was willful, that decision should not affect any damages award that you give. I will take willfulness into account later if you find it.

I will now instruct you on the rules you must follow in deciding whether or not CommScope has proven that any Asserted Claims of the Asserted Patents are invalid.

An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've heard referred to throughout this trial as the "PTO" or sometimes just the "Patent Office," acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents.

In order to overcome this presumption, CommScope must establish by clear and convincing evidence that a claim is invalid. Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, this does not mean that any other claim is necessarily invalid.

You have heard evidence of prior art that the Patent Office may or may not have evaluated. The fact that any particular reference was or was not considered by the Patent Office does not change CommScope's burden of proof. However, in making your decision whether CommScope has met its burden of proof, you may take into account the fact that the prior art was not considered by the Patent Office.  Prior art differing from the prior art considered by the Patent Office may, but does not always, carry more weight than the prior art that was considered by the Patent Office. Again, the ultimate responsibility for deciding whether the Asserted Claims are invalid is up to you, the members of the jury.

Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity. In making your determination as to invalidity, you should

17

consider each claim separately.

When considering whether a particular reference predates a particular Asserted Patent—and is therefore prior art as to that patent—the relevant date is called the patent's "priority date." To be prior art, an item or reference must have been made, known, used, published, or patented either before the invention was made or more than one year before the priority date.  Prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of the invention. The parties dispute the applicable priority date of the '686 Patent.  TQ Delta contends that the applicable priority date for the '686 Patent is no later than January 7, 2000. CommScope contends that the relevant date is August 10, 2000. You must determine the priority date for the claimed inventions in the '686 Patent.  CommScope must demonstrate by clear and convincing evidence that TQ Delta is not entitled to its claimed priority date. A claim is entitled to a priority date of an earlier application if the earlier application contained a written description of the invention as recited in that claim.

As I explained earlier, a previous device, system, method, publication, or patent that predates the claimed invention is generally called "prior art" and may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.  Prior art may be authored or created by anyone. In evaluating the prior art to determine whether an invalidity defense has been proven by clear and convincing evidence, you may consider whether that prior art was or was not before the PTO.

In this case, CommScope contends that Claim 36 of the '686 Patent is invalid as obvious in view of the ITU-T Temporary Document FI-071, which you have heard referred to as "FI-071"

in combination with ITU-T Recommendation G.992.1, which you have heard referred to as "G.992.1."

CommScope also contends that Claim 5 of the '048 Patent is invalid as obvious in view of U.S. Patent No. 7,267,208, which you have heard referred to as "Mazzoni," in combination with ITU-T Standard G.993.1, which you have heard referred to as "G.993.1," and/or Mazzoni in view of ITU-T Contribution LB-031, which you have heard referred to as "LB-031."

CommScope claims that Claim 14 of the '008 Patent is invalid as anticipated and/or obvious in view of U.S. Patent No. 6,657,949, which you have heard referred to as "Jones."

CommScope contends that Claim 10 of the '835 Patent is invalid as anticipated in view of G.992.1 and/or obvious in view of G.992.1 in combination with ITU-T SG15/Q4 Contribution SC-060, which you have heard referred to as "SC-060."

I will now instruct you on how to determine whether any of the Asserted Claims of the Asserted Patents are invalid as anticipated.

In order for someone to be entitled to a patent, the invention must actually be "new," and the inventor must not have lost his or her rights by delaying the filing of an application claiming the invention. In general, inventions are "new" when the identical method has not been used or disclosed before.

CommScope contends that Claim 14 of the '008 Patent and Claim 10 of the '835 Patent are invalid because the claimed inventions are not "new." In other words, CommScope contends that these Asserted Claims are "anticipated" by prior art. Anticipation requires that all of the elements of a patent claim be disclosed in a single prior art reference. Also, the single prior art reference must disclose all elements of the claim arranged or combined in the same way as in the claim—that is, as the claim has been construed or interpreted by the Court. CommScope must

prove by clear and convincing evidence that an Asserted Claim was anticipated by the prior art reference. Anticipation must be determined on a claim-by-claim basis. If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the elements or requirements of the claim must have been disclosed, either stated expressly or implied, to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention. Keep in mind that CommScope may not establish anticipation by arguing that the Accused Products practice the prior art, or by comparing the Accused Products to a prior art reference. An item of prior art may anticipate without explicitly disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference.

In this case, CommScope contends that Claim 36 of the '686 Patent, Claim 5 of the '048 Patent, Claim 14 of the '008 Patent, and Claim 10 of the '835 Patent are invalid as obvious.  I will refer to these claims as the "Challenged Claims."

I will now instruct you on how to determine whether any of the Challenged Claims are invalid as obvious.

Even though an invention may not have been identically disclosed or identically described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the Asserted Patent at the time the invention was made.

CommScope has the burden of establishing obviousness by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having

ordinary skill in the art at the time the invention was made in the field of technology of the Asserted Patent.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention. Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. The skill of the actual inventor is not necessarily relevant because inventors may possess something that distinguishes them from persons having ordinary skill in the art.

In considering whether the claimed inventions were obvious, you must first determine the scope and content of the prior art. The scope and content of the prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Further, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ. A person of ordinary skill may be able to fit the teachings of multiple pieces of prior art together like pieces of a puzzle. The person of ordinary skill in the art would have the capability of understanding the scientific and engineering principles applicable to the pertinent art.

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way

that the claimed invention does, taking into account such factors as:

1. Whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2. Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. Whether the prior art teaches or suggests the desirability of combining elements in the claimed invention;

4. Whether the prior art teaches away from combining elements in the claimed invention;

5. Whether it would have been obvious to try the combination of elements in the claimed invention, such as when there is a design need or market pressure to solve a problem, and there are a finite number of identified, predictable solutions; and

6. Whether the change resulted more from design incentives or other market forces.

To find that the prior art rendered the invention obvious, you must find that it provided a reasonable expectation of success. Simply being "obvious to try" is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight; consider only what was known at the time of the invention. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teachings of the Patents-in-Suit.

In making these assessments, you should take into account any objective evidence, sometimes called "secondary considerations," that may have existed at the time of the invention, and afterwards, that may shed light on the obviousness or non-obviousness of the claimed invention. The following are possible secondary considerations, but it is up to you to decide whether secondary considerations of non-obviousness exist at all:

1. Whether the invention was commercially successful as the result of the merits of the claimed inventions, rather than the result of design needs or market pressure, advertising, or similar activities;

2. Whether the invention satisfied a long-felt need;

3. Whether the inventor proceeded contrary to accepted wisdom in the field;

4. Whether others tried, but failed, to solve the problem solved by the claimed invention;

5. Whether others invented the invention at roughly the same time;

6. Whether others copied the claimed invention;

7. Whether others accepted licenses under the Patents-in-Suit because of the merits of the claimed invention;

8. Whether the claimed invention achieved unexpected results;

9. Whether others in the field praised the claimed invention;

10. Whether there were changes or related technologies or market needs contemporaneous with the invention; and

11. Whether persons having ordinary skill in the art at the time of the invention expressed surprise or disbelief regarding the invention.

These factors are relevant only if there is a connection, or "nexus," between the factors and what differentiates the claimed invention from the prior art. TQ Delta has the burden of establishing this connection or "nexus." Moreover, even if you conclude that some of the above secondary considerations have been established, those factors should be considered along with all the other evidence in the case in determining whether CommScope has proven that the claimed invention would have been obvious.

In support of obviousness, you may also consider whether others independently invented the claimed invention before or at about the same time as the named inventor thought of it. In making these determinations, a person of ordinary skill uses simple common sense, and can rely upon the inferences and creative steps that a person of ordinary skill in the art would employ. Also, CommScope does not need to show that one of ordinary skill would actually have combined the physical structures of two references; one need only combine the teachings. Remember, as stated earlier, that prior art is not limited to patents and published materials but includes the general

knowledge that would have been available at the time to one of ordinary skill in the field of the invention. If you find that CommScope has proven the obviousness of a claim by clear and convincing evidence, then you must find that the claim is invalid.

If you find that CommScope has infringed any valid claim of the Asserted Patents, you must then consider what amount of damages, if any, to award to TQ Delta.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

If you find that CommScope has not infringed any valid claim of the Patents-in-Suit, then TQ Delta is not entitled to any patent damages.

TQ Delta has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that TQ Delta establishes that it more likely than not suffered as a result of CommScope's infringement. While TQ Delta is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. TQ Delta is not entitled to damages that are remote or that are only speculative.

The damages you award, if any, must be adequate to compensate TQ Delta for any infringement you may find. You must not award TQ Delta more damages than are adequate to compensate for the infringement. You also must not include any additional amount for the purpose of punishing CommScope or setting an example.

I will now instruct you on how to calculate reasonable royalty damages.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. The parties have put on evidence of two different damages models in this case. You may use either method to calculate reasonable royalty damages.

TQ Delta, the Plaintiff, has proposed a cost-savings model of calculating reasonable royalty damages that values the Accused Products that CommScope, the Defendant, provides to its customers. This approach relies upon estimated costs, if any, that CommScope saved from making, using, or selling the Accused Products. In considering the amount of reasonable royalty damages under the cost-savings model, you should focus on whether CommScope's make, use, or sale of the patented technology allowed it to avoid taking a different, more costly course of action, and if so, how much CommScope saved by using the Accused Products instead of taking the more costly course of action.

A reasonable royalty may also be calculated by determining the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. The Defendants have proposed a reasonable royalty calculation based on such a hypothetical negotiation. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed that the Patents-in-Suit were valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty must not be limited or increased based on the actual profits

that the alleged infringer made.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.

Some of the kinds of factors that you may consider in making your determination are:

1.  The royalties received by the patentee for the licensing of the Patents-in-Suit, proving or tending to prove an established royalty;

2.  The rates paid by the licensee for the use of other patents comparable to the Patents-in-Suit. Comparable license agreements include those covering the use of the claimed invention or similar technology;

3.  The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.  The licensor's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.  The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business;

6.  The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.  The duration of the patent and the term of the license;

8.  The established profitability of the product made under the patents, its commercial success, and its current popularity;

9.  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. The opinion and testimony of qualified experts; and

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been trying reasonably and voluntarily to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license.

You may have heard these factors referred to as the "*Georgia-Pacific* factors." No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which, in your mind, would have increased or decreased the royalty that the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent businesspeople.

The Defendants, CommScope, contend that TQ Delta, the Plaintiff, breached its contract with the ITU, obligating it to grant licenses regarding its SEPs on FRAND terms and conditions. I will give you further instructions regarding CommScope's breach of contract claim shortly. If you, the jury, find that TQ Delta breached its FRAND obligation, and if you also find that CommScope infringed TQ Delta's Asserted Patents, then TQ Delta's breach of its FRAND obligation should not reduce or limit the damages awarded for CommScope's infringement, if any. Similarly, if the evidence supports, in your mind, a finding of both infringement by CommScope and breach of contract by TQ Delta, then you should award such an amount that would compensate CommScope for such a breach, if any, regardless of what your verdict might be regarding TQ Delta's infringement claims.

You have heard references throughout this trial as to whether TQ Delta should be entitled

27

to a running royalty or a lump-sum royalty. If you find that TQ Delta is entitled to damages, you must decide whether the parties would have agreed to a running royalty or a fully paid-up lump-sum royalty at the time of the hypothetical negotiation. A running royalty is a fee paid for the right to use the patent that is paid for each unit of the infringing products that have been sold. If there are additional units sold in the future, any damages for these sales will not be addressed by you. If you decide that a running royalty is appropriate, then the damages that you award, if any, should reflect the total amount necessary to compensate TQ Delta for CommScope's past infringement. However, a lump-sum royalty is when the infringer pays a single price for a license covering both past and future infringing sales. If you decide that a lump-sum is appropriate, then the damages you award, if any, should reflect the total amount necessary to compensate TQ Delta for CommScope's past and future infringement.

TQ Delta committed to the VDSL2, G.bond, and G.inp Standards, which I will refer to as the "Standards," of the ITU to license patents which are essential to the Standards on FRAND terms and conditions. TQ Delta has also committed to license the Asserted Patents on FRAND terms, subject to conditions such as reciprocity of the potential licensees. The FRAND commitment, in this case, does not require any specific licensing model to determine a FRAND royalty. You should determine a FRAND royalty based on the totality of the circumstances. As I have previously instructed, FRAND and RAND have been used interchangeably throughout this trial.

The law requires that any royalty awarded to TQ Delta correspond to the value of the patented invention within the Accused Products, as distinct from other unpatented features or market factors. This is particularly true where the Accused Products have multiple features and multiple components not covered by the Asserted Patents or where the Accused Products work in

conjunction with other non-patented items. If unpatented features contribute to the Accused Products, you must apportion that value out so as to exclude any value attributable to unpatented features. You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

In light of this FRAND commitment, I have referred at times in my instructions to SEPs. The parties have stipulated that the '686 Patent, the '881 Patent, the '008 Patent, the '835 Patent, and the '354 Patent are SEPs.  The parties have also stipulated that the '048 Patent and the '411 Patent are not SEPs, and, therefore, a reasonable royalty determination regarding these patents need not take into account any FRAND obligations.

TQ Delta and Aware, Inc., which has been referred to as Aware and the entity from which TQ Delta purchased the Patents-in-Suit, submitted written commitments to the ITU covering the '881, '686, '008, '835, and '354 Patents, in which they agreed to grant a license on FRAND terms and conditions.

When dealing with SEPs, there are two special apportionment issues that arise. First, the patented features must be apportioned from all of the unpatented features reflected in the standard. Second, the patentee's royalty must be premised on the value of the patented features, not any value added by the standard's adoption of the patented technology.

You must make sure that any reasonable royalty determination takes into account TQ Delta's FRAND obligations as the Court has just explained to you.  A reasonable royalty on the patents, which the parties have stipulated are SEPs, i.e., the '686, '881, '008, '835, and '354 Patents, cannot exceed the amount permitted under TQ Delta's FRAND obligations.   In determining what amount is a FRAND royalty, you may consider any evidence of "patent hold-up."  Patent hold-up exists when the holder of SEPs demands an excessive or unjustified royalty,

which is, considering the totality of the circumstances, not fair, reasonable, or nondiscriminatory. Alternatively, you have also heard the term "hold-out," which refers to an unwilling licensee of SEPs, seeking to avoid taking a license while practicing the standard and enjoying the benefit the SEP holder's technology.

In determining a reasonable royalty, you may also consider whether CommScope had commercially acceptable non-infringing alternatives to the Accused Products that were available at the time of the hypothetical negotiation and whether that would have affected the reasonable royalty the parties would have agreed upon. A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or a comparable result that does not require using the Asserted Claims. You may compare the patented invention to non-infringing alternatives to determine the value of said patented invention, including the utility and advantages of the patent over the old modes or devices, if any, that had been used to achieve similar results

A patentee is not entitled to damages for any infringement committed more than six years prior to the filing of the claim for infringement. In this case, the damages period commenced on August 13, 2015, six years prior to the date on which TQ Delta filed its complaint in this case. No damages can be awarded for any infringement that occurred before the date that an Asserted Patent was issued. Where you find that an Asserted Claim is both infringed and not invalid, you may not award any damages for activities occurring before the damages period begins.

A patentee is not entitled to damages after the expiration of an Asserted Patent. The '008 Patent expired on November 9, 2020, and the '354 Patent expired on April 18, 2021. Therefore, the damages period for the '008 Patent ended on November 9, 2020, and the damages period for the '354 Patent ended on April 18, 2021.

With regard to the Defendants' alleged breach of contract claim against the Plaintiff, the

Defendants bear the burden of proving their breach of contract claim by a preponderance of the evidence. CommScope contends that TQ Delta breached its contract with the ITU to grant licenses to SEPs held by TQ Delta on FRAND terms and conditions.  TQ Delta denies that it has breached any contractual obligations.

Before you can decide these issues, you will need to understand the terms of the contract at issue in this case.  A contract is a legally enforceable promise or set of promises.  When two individuals or entities enter into a contract that is intended to benefit a "third party," the third party has the right to enforce the terms of the contract in the event the contract is later breached.

The contract at issue in this case is the obligation imposed on TQ Delta because certain of its patents were contributed to the ITU, which is a standard-setting organization.  The obligation is to license those SEPs to third parties on FRAND terms and conditions.

The ITU has a policy called its Common Patent Policy or "CPP." The Common Patent Policy requires SEP owners to license their patents on specific terms.  TQ Delta made a commitment to the ITU that it would license its patents essential to the Standards on FRAND terms.  Whether or not a license is FRAND will depend upon the totality of the particular facts and circumstances existing during the negotiations and leading up to the license.  There is no fixed or required methodology for setting or calculating the terms of a FRAND license other than when all aspects have been considered.

Although CommScope is not a party to TQ Delta's contract with the ITU, CommScope is a third-party beneficiary to TQ Delta's FRAND commitment to the ITU and can enforce that obligation.  CommScope contends that TQ Delta breached its commitment to the ITU by failing to offer to CommScope a license to TQ Delta's SEPs on FRAND terms.

To find that TQ Delta has breached a contractual obligation, you must conclude that the

party bound by the contract did not fulfill its obligations under that contract. In deciding whether or not TQ Delta has breached a contractual obligation, you must determine (1) whether TQ Delta had a contractual obligation; (2) whether TQ Delta violated any such contractual obligation; (3) if TQ Delta violated a contractual obligation, whether there is a defense for that violation; and (4) if any obligations were violated and there are no defenses, what are the damages, if any, for the violation?

I will instruct you as to the measure of damages for a breach of contract claim.  By instructing you on damages, I do not suggest which party should win on any claim.

To recover damages for breach of contract, CommScope must prove by a preponderance of the evidence that TQ Delta failed to comply with its contract with the ITU and that the failure to comply with said contract resulted in harm to CommScope.  That means that CommScope must prove that TQ Delta breached its FRAND obligations and that the breach caused harm to CommScope.

If you find that TQ Delta has breached a contractual obligation, then you must determine an amount that fairly compensates CommScope for all of its damages.  These damages are called compensatory damages.  The purpose of compensatory damages is to make the injured party whole—that is, to compensate the injured party for the damage that it has suffered.  The damages you award must be fair compensation for all of the injury party's damages, no more and no less.

Damages are not allowed as a punishment and cannot be imposed or increased to penalize the party who breached the contract.  You should not award compensatory damages that are speculative or arbitrary.

If you find by a preponderance of the evidence that TQ Delta technically breached its contractual obligations, but that CommScope suffered no actual loss or injury as a result of that

violation, then you may award the non-breaching party a nominal amount of damages.  Nominal damages are an inconsequential or trifling sum awarded to a party when a technical violation of its rights has occurred, but the party has suffered no actual loss or injury.

As you have already heard, TQ Delta contends that CommScope infringes the Asserted Claims of the Patents-in-Suit.  A finding of infringement by CommScope should not reduce or limit damages for breach of contract by TQ Delta, if any, but there may be independent damages, which, if shown, could flow from such infringement.  If the evidence supports a finding of infringement by CommScope, in your mind, then you should award such an amount of damages that TQ Delta has proven would compensate it for any such infringement by CommScope, regardless of what your verdict is on CommScope's breach of contract claim.

*      *      *

Now, with those instructions, we're ready to hear closing arguments from the attorneys in this case.

**[ATTORNEYS PRESENT CLOSING ARGUMENTS]**

PLAINTIFF'S CLOSING: [40 MIN.]

Start time: _____

1st warning: _____

2nd warning: _____

**End**: _____


DEFENDANT'S CLOSING: [40 MIN.]

Start time: _____

1st warning: _____

2nd warning: _____

**End:** _____

I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict regardless of the consequences.

Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly. Again, I remind you, your answers and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its rights under the laws of the United States. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties. All corporations, partnerships, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you. If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or exhibits to you. Once you retire, you should select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your Foreperson is to fill in the verdict form in a

manner which reflects your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, you should give a message or question written by the Jury Foreperson to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom, so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

I will now hand the verdict form and eight copies of these instructions to the Court Security Officer to deliver to the jury room.

Ladies and Gentlemen, you may now retire to the jury room to deliberate. We await your verdict.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| TQ DELTA, LLC, | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:21-CV-00310-JRG |
| | § | |
| COMMSCOPE   HOLDING   COMPANY, | § | |
| INC.,   COMMSCOPE   INC.,   ARRIS | § | |
| INTERNATIONAL   LIMITED,   ARRIS | § | |
| GLOBAL LTD., ARRIS US HOLDINGS, | § | |
| INC., ARRIS SOLUTIONS, INC., ARRIS | § | |
| TECHNOLOGY,   INC.,   and   ARRIS | § | |
| ENTERPRISES, LLC, | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

## <u>VERDICT FORM</u>

In answering the following questions and completing this Verdict Form, you are to follow all the instructions that I have given you in the Court's Final Jury Instructions.  Your answers to each question must be unanimous.  Some of the questions contain legal terms that are defined and explained in detail in the Final Jury Instructions.  You should refer to and consider the Final Jury Instructions as you answer the questions in this Verdict Form.

As used herein, the following terms have the following meanings:

- "**Plaintiff**" or "**TQ Delta**" refers to TQ Delta, LLC.

- "**Defendants**" or "**CommScope**" refers to CommScope Holding Company, Inc., CommScope Inc., ARRIS International Limited, ARRIS Global Ltd., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC.

- The "**'881 Patent**" refers to U.S. Patent No. 7,453,881.

- The "**'686 Patent**" refers to U.S. Patent No. 7,570,686.

- The "**'008 Patent**" refers to U.S. Patent No. 8,090,008.

- The "**'048 Patent**" refers to U.S. Patent No. 8,276,048.

- The "**'835 Patent**" refers to U.S. Patent No. 8,462,835.

- The "**'411 Patent**" refers to U.S. Patent No. 8,468,411.

- The "**'354 Patent**" refers to U.S. Patent No. 9,154,354.

- The "**Patents-in-Suit**" refers collectively to the '881 Patent, '686 Patent, the '008 Patent, the '048 Patent, the '835 Patent, the '411 Patent, and the '354 Patent.

- The "**Asserted Claims**" refers collectively to Claim 17 of the '881 Patent, Claim 36 of the '686 Patent, Claim 14 of the '008 Patent, Claim 5 of the '048 Patent, Claim 10 of the '835 Patent, Claim 18 of the '411 Patent, and Claim 10 of the '354 Patent.

**<u>IT IS VERY IMPORTANT THAT YOU FOLLOW THE
INSTRUCTIONS PROVIDED IN THIS VERDICT FORM</u>**

**<u>READ THEM CAREFULLY AND ENSURE THAT YOUR
VERDICT COMPLIES WITH THEM</u>**

## QUESTION NO. 1

Did TQ Delta, the Plaintiff, prove by a preponderance of the evidence that CommScope, the Defendants, infringed any of the following Asserted Claims?

**Answer "Yes" or "No" for each Asserted Claim listed below:**

U.S. Patent No. 7,453,881

      Claim 17    Yes:_____      OR      No: _____

U.S. Patent No. 7,570,686

      Claim 36    Yes:_____      OR      No: _____

U.S. Patent No. 8,090,008

      Claim 14    Yes:_____      OR      No: _____

U.S. Patent No. 8,276,048

      Claim 5    Yes:_____      OR      No: _____

U.S. Patent No. 8,462,835

      Claim 10    Yes:_____      OR      No: _____

U.S. Patent No. 8,468,411

      Claim 18    Yes:_____      OR      No: _____

U.S. Patent No. 9,154,354

      Claim 10    Yes:_____      OR      No: _____

## QUESTION NO. 2

Did CommScope, the Defendants, prove by clear and convincing evidence that any

of the following Asserted Claims are invalid?

**Answer "Yes" or "No" for each Asserted Claim listed below:**

U.S. Patent No. 7,570,686

      Claim 36    Yes:_____      OR      No: _____

U.S. Patent No. 8,090,008

      Claim 14    Yes:_____      OR      No: _____

U.S. Patent No. 8,276,048

      Claim 5    Yes:_____      OR      No: _____

U.S. Patent No. 8,462,835

      Claim 10    Yes:_____      OR      No: _____

**If you answered "No" regarding ALL Asserted Claims in Question No. 1, then DO NOT answer Question No. 3.**

**As to any of the Asserted Claims that you answered "Yes" to in Question No. 2, if any, DO NOT consider those claims in answering Question No. 3.**

**Answer Question No. 3 ONLY as to any Asserted Claim that you have found in Questions No. 1 and No. 2 to be BOTH INFRINGED AND NOT INVALID.**

**QUESTION NO. 3**

Did TQ Delta, the Plaintiff, prove by a preponderance of the evidence that CommScope, the Defendants, **willfully** infringed **ANY** of the Asserted Claims that you found were infringed?

Yes:_____         OR         No:_____

**If you answered "NO" regarding ALL Asserted Claims in Question No. 1, then DO NOT answer Questions No. 4a or No. 4b.**

**As to any of the Asserted Claims that you answered "Yes" to in Question No. 2, if any, DO NOT consider those claims in answering Questions No. 4a and No. 4b.**

**Answer Questions No. 4a and 4b ONLY as to any Asserted Claim that you have found in Questions No. 1 and No. 2 to be BOTH INFRINGED AND NOT INVALID.**

## QUESTION NO. 4a

What sum of money, if now paid in cash, has TQ Delta, the Plaintiff, proven by a preponderance of the evidence, would **compensate** it for the Defendants' infringement of the Asserted Claims that you have found to be both infringed and not invalid?

Answer in United States Dollars and Cents, if any:

$ _____

## QUESTION NO. 4b

Is the total amount of the reasonable royalty that you found in Question No. 4a a one-time lump sum for past and future sales, or a running royalty for past sales only?

Check **ONLY** one of the following:

_____ Lump Sum               OR               _____ Running Royalty

## QUESTION NO. 5

Did CommScope, the Defendants, prove by a preponderance of the evidence that TQ Delta, the Plaintiff, breached its contractual duty to grant licenses regarding its Standard Essential Patents to CommScope on fair, reasonable, and non-discriminatory (FRAND) terms?

Yes:_____          OR          No:_____

**If you answered "YES" to Question No. 5, then you should answer Question No. 6.**

**If you answered "NO" to Question No. 5, then you should not answer Question No. 6.**

## QUESTION NO. 6

What sum of money, if now paid in cash, has CommScope, the Defendants, proven by a preponderance of the evidence, would **compensate** it for Plaintiff's breach of its contractual duty to grant licenses regarding its Standard Essential Patents to CommScope on fair, reasonable, and non-discriminatory (FRAND) terms and conditions?

Answer in United States Dollars and Cents, if any:

$_____

## FINAL PAGE OF THE JURY VERDICT FORM

You have now reached the end of the Verdict Form and should review it to ensure that it accurately reflects your unanimous determinations.  The Jury Foreperson should then sign and date the Verdict Form in the spaces below.  Once this is done, notify the Court Security Officer that you have reached a verdict. The Jury Foreperson should keep the Verdict Form and bring it when the jury is brought back into the courtroom.

Signed this _____ day of March, 2023.

_____

Jury Foreperson