# EXHIBIT B

| | |
|---|---|
| **From:** | Deane, Michael <Michael.Deane@alston.com> |
| **Sent:** | Thursday, March 23, 2023 7:28 PM |
| **To:** | Patrick Clark; Fink, Rudy; Ty Wilson; Harris Huguenard; Jackson, Dallas |
| **Cc:** | tqd; TQD-MHM-TX; Comm Scope; Dacus, Deron; Andrea Brunson |
| **Subject:** | RE: TQ Delta v. CommScope (2:21-cv-310) - Requested language |

**CAUTION: External Email From: Michael.Deane@alston.com**

Mr. Clark, Mr. Huguenard, and Ms. Jackson:

Defendants object to TQD's proposed instruction. The proposed instruction neglects TQD's FRAND obligation and comments on the propriety of TQD's damage model instead of accurately stating the law. Moreover, none of TQD's instruction was a part of any party's prior agreed-to instructions on the issue, which at minimum, seems like an appropriate starting place.

An appropriate instruction that merges already agreed upon language with what the Judge asked for is as follows. The yellow highlighting reflects the changes that would fall in line with the Judge's request showing the different ways a reasonable royalty may be calculated:

    The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty to compensate the Plaintiff for Defendants' infringement.  TQ Delta seeks damages in the form of a reasonable royalty.

    A reasonable royalty is defined as the money amount the parties would have agreed upon for CommScope to use the asserted patents at the time the infringement began. A reasonable royalty must only compensate TQ Delta for CommScope's use of only the Patents-in-Suit and no other patents.

    If you find that TQ Delta has established patent infringement and the Defendants have not established patent invalidity, TQ Delta is entitled to at least a reasonable royalty to compensate it for that infringement.

    A royalty is a payment made to a patent holder in exchange for the right to make, use, sell, or import a claimed invention.

    In determining this, you must assume both parties believed the Patents-in-Suit were valid and infringed and that both parties were willing to enter into an agreement.

    The law requires that any damages awarded to TQ Delta correspond to the value of the alleged inventions within the accused products as distinct from other unpatented features of the accused product or other factors, such as marketing or advertising or CommScope's size or market position.  This is particularly true where the

accused product has multiple features and multiple components not covered by the patent or where the accused product works in conjunction with other non-patented items.

The amount you find as damages must be based on the value attributable to the patented technology as distinct from other unpatented features of the accused product.  If the unpatented features contribute to an accused product, you must apportion that value to exclude any value attributable to unpatented features.  You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

TQ Delta bears the burden to establish the amounts attributable to the patented features.

Further, TQ Delta committed to the DSL standards of the International Telecommunication Union, sometimes called the ITU, to license patents essential to the Standards on a non-discriminatory basis and reasonable terms and conditions.  These terms and conditions are sometimes referred to as RAND, R-A-N-D, commitments. As this Court has previously instructed, RAND and FRAND have been used interchangeably throughout this trial.

Because of this RAND commitment, I'll refer in my instructions at times to standard essential patents.  By referring to standard essential patents, the Court is not instructing you that the asserted patents are actually essential to any standard.  I have already determined that the 048 and 411 Patents are not standard essential.[36][1]  For the remaining patents, it's up to you, the jury, to decide whether or not TQ Delta has proven that the patents are standard essential and infringed.

TQ Delta and Aware, the entity from which TQ Delta purchased the Patents-in-Suit from, submitted written commitments to the ITU covering the '881, '686, '008, '835, and '354 patents, in which they agreed to grant a license on a non-discriminatory basis and on reasonable, or RAND, terms and conditions.

You must make sure that any reasonable royalty determination takes into account TQ Delta's RAND obligations as the Court has just explained to you.  A reasonable royalty in this case for patents that you, the jury, determine are essential cannot exceed the amount permitted under TQ Delta's RAND obligations.

The '048 and '411 patents have not been declared essential to any DSL standard, and, therefore, a reasonable royalty determination regarding these patents need not take into account any RAND obligations.

2

I'll provide you with additional instructions on how a RAND commitment for the asserted patent affects your determination of a reasonably royalty.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are as follows:

1. the royalties received by the patentee for licensing of the patents-in-suit proving or tending to prove an established royalty;

2. the nature and scope of the license as exclusive or non-exclusive or as restricted or non-restricted in terms of territory or with respect to whom the manufactured products may be sold.

3. the patent owner's established policy and marketing program to maintain his or her patent exclusivity by not licensing others to use the invention or by granting licenses under special positions designed to preserve that exclusivity;

4. the commercial relationship between the licensor and licensee, such as whether or not they are competitors in the same territory, in the same line of business or whether they are inventor and promoter;

5. the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his or her non-patented items and the extent of such derivative or convoyed sales;

6. the duration of the patent and the term of the license;

7. the established profitability of the product made under the patents, its commercial success, and its current popularity;

8. the utility and advantages of the patented invention over the old modes or devices that had been used for achieving similar results;

9. the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor and the benefits of those who have used the invention;

10. the extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

11. the portion of the profit or selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

12. the portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

13. the testimony and opinions of qualified experts;

14. the amount that a licensor, such as the patent owner, and a licensee, such as the infringer, would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement, that is, the amount which a prudent licensee who desired as a business proposition to obtain a license to manufacture and sell a particular article embodying the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit which amount would have been acceptable to a prudent patentee who was willing to grant a license; and

15. the rates paid by a licensee for the use of other patents comparable to the patents-in-suit.

Now, none of these factors, ladies and gentlemen, are dispositive, and you can and you should consider the evidence that's been presented to you in this case on each of these factors. You may have heard these factors referred to during the trial as the *Georgia-Pacific* factors.

A common approach to a reasonable royalty is a hypothetical negotiation. You should focus on what the parties' expectations would have been had they entered into negotiations for royalties at the time of the hypothetical negotiation. But, regardless of the type of damages you choose to award, you must be careful to ensure that the award is no more and no less than the value of the patented invention. When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the Asserted Patents or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would have been negotiated between the patent owner and accused infringer in order for you to consider it. The reasonable royalty that you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty that either party would have preferred. In some cases, a reasonable royalty, if any, may be calculated as a one-time, lump sum payment. A lump sum royalty is when the

infringer pays a single price for a license covering both past and future infringing use of the patents. A lump sum should reflect the total amount necessary to compensate TQ Delta for the Defendants' past and future infringement.

Another approach to calculating a reasonable royalty may be reliance upon estimated cost savings from use of the infringing product. The method is appropriate where other approaches such as established royalty or lost profits would be difficult. (*See, e.g.*, *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075 (Fed. Cir. 1983).

Since standard essential patents have a RAND obligation to the ITU as part of the DSL standards, you must consider the following two factors:

1. any royalty for the patented technology must be apportioned from the value of the standard as a whole; and

2. the RAND royalty rate must be based on the incremental value that the patented technology adds to the product, not any value added by the standardization of that technology.

In considering the evidence of a reasonably royalty, you are not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you consider to be a reasonable royalty based on your consideration of all the evidence presented by the parties, whether that evidence is of a specific figure or a range of figures.

**From:** Patrick Clark <Patrick_Clark@txed.uscourts.gov>
**Sent:** Thursday, March 23, 2023 8:06 PM
**To:** Fink, Rudy <rfink@davisfirm.com>; Ty Wilson <twilson@davisfirm.com>; Harris Huguenard <harris_huguenard@txed.uscourts.gov>; Jackson, Dallas <dallas_jackson@txed.uscourts.gov>
**Cc:** tqd <tqd@davisfirm.com>; TQD-MHM-TX <TQD-MHM-TX@mcandrews-ip.com>; Comm Scope <CommScope@alston.com>; Dacus, Deron <ddacus@dacusfirm.com>; Andrea Brunson <Andrea_Brunson@txed.uscourts.gov>
**Subject:** RE: TQ Delta v. CommScope (2:21-cv-310) - Requested language

**EXTERNAL SENDER – Proceed with caution**

Mr. Fink,

Thank you for your submission to the Court.

5

Best regards,

**Patrick Clark**
*Law Clerk to Chief Judge Rodney Gilstrap*
U.S. District Court for the Eastern District of Texas
100 East Houston Street
Marshall, Texas 75670
patrick_clark@txed.uscourts.gov

---

**From:** Rudy Fink <rfink@davisfirm.com>
**Sent:** Thursday, March 23, 2023 7:02 PM
**To:** Patrick Clark <Patrick_Clark@txed.uscourts.gov>; Ty Wilson <twilson@davisfirm.com>; Harris Huguenard <Harris_Huguenard@txed.uscourts.gov>; Dallas Jackson <Dallas_Jackson@txed.uscourts.gov>
**Cc:** tqd <tqd@davisfirm.com>; TQD-MHM-TX <TQD-MHM-TX@mcandrews-ip.com>; Comm Scope <CommScope@alston.com>; Dacus, Deron <ddacus@dacusfirm.com>; Andrea Brunson <Andrea_Brunson@txed.uscourts.gov>
**Subject:** TQ Delta v. CommScope (2:21-cv-310) - Requested language

**CAUTION - EXTERNAL:**

Mr. Clark, Mr. Huguenard, and Ms. Jackson:

As TQ Delta understood the Court to request, TQ Delta hereby proposes the following language (below) for an instruction section. TQ Delta's expectation is that the language would like follow a general § 284 instruction and an instruction that damages may be calculated in different ways. At a high level, TQ Delta understands that the law provides general tools to the jury to think about assessing the problem of damages, and that these tools, generally, can be applied across different types of models. For example, how the jury should think about dividing gains from an invention appears consistent across different approaches, such as cost, market, and analytical.

If the Court has any additional points it would like TQ Delta to address, including any additional issues it wishes proposed language on, TQ Delta stands ready. TQ Delta hereby provides the following under the time provided. TQ Delta will continue to research this issue.

> "[D]amages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer…" 35 USC § 284.
>
> TQ Delta's expert has proposed a cost-savings model that values the accused products CommScope provides to its customers. "Reliance upon estimated cost savings from use of the infringing product is a well-settled method of determining a reasonable royalty." *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075 (Fed. Cir. 1983). On the other hand, CommScope's expert has applied an approach that considers the terms two parties would have agreed to in a hypothetical negotiation approach. While this "hypothetical negotiation" approach is the most common approach in patent infringement damages

cases, it is not required in every case *TWM Manufacturing Co. v Dura Corp.,* 789 F. 2d 895 (Fed. Cir. 1986), cert. denied, 479 U.S. 852 (1986).

In considering damages, "[you] may consider not only the benefit to the patentee in licensing the technology, but also the value of the benefit conferred to the infringer by use of the patented technology." *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011). Although a "patentee must carefully tie proof of damages to the claimed invention's footprint in the market place" *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010), that requirement for valuing the patented technology can be met if the patentee adequately shows that the defendant's infringement allowed it to avoid taking a different, more costly course of action. "To prevent the hypothetical from lapsing into pure speculation, this court requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Grain Processing Corp. v. American Maize–Prods. Co.*, 185 F.3d 1341, 1350 (Fed.Cir.1999).

Regardless of the approach taken, "[t]he essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). The royalty rate "(1) must distinguish between the intrinsic value of the technology and the value of the standardization of that technology; (2) take into account what part of the standard the patent actually covers; and (3) must be high enough to ensure that innovators have appropriate incentive to invest in future developments and contribute their inventions to the standard-setting process." *Id.*

Best Regards,
Rudy Fink

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

---

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

---

[36][1] The Court has already determined this. *See* 03-01-2023 Pre-Trial Tr. at 263-64.