# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>                        *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>                        *Defendants*. | Civil Action No.: 2:21-cv-310<br><br>████████████████ |

**COMMSCOPE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

██████████████████████████████

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................................1

II. LEGAL STANDARD ....................................................................................................2

III. ARGUMENT .................................................................................................................2

    A. TQ Delta's Contract with the ITU ...................................................................3

    B. TQ Delta Breached Its FRAND Obligation ....................................................4

        1. TQ Delta's Existing Licenses ...............................................................4

        2. TQ Delta's Offers to CommScope .......................................................5

        3. The Jury's Damages Award Proves That TQ Delta's Offers to CommScope Were Not FRAND ..........................................................5

    C. CommScope Suffered Harm as a Result of TQ Delta's Breach .......................8

IV. CONCLUSION ..............................................................................................................8

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraham v. Alpha Chi Omega*,
   708 F.3d 614 (5th Cir. 2013) ...................................................................................................2

*Arismendez v. Nightingale Home Health Care, Inc.*,
   493 F.3d 602 (5th Cir. 2007) ...................................................................................................2

*Cassidian Communs., Inc. v. Microdata GIS, Inc.*,
   Civil Action No. 2:12-cv-00162-JRG, 2014 U.S. Dist. LEXIS 110133 (E.D.
   Tex. Aug. 8, 2014) ...................................................................................................................2

*City of Dall. v. Delta Air Lines, Inc.*,
   847 F.3d 279 (5th Cir. 2017) ...................................................................................................2

*Cordero v. Avon Products., Inc.*,
   629 Fed. Appx. 620 (5th Cir. 2015) .........................................................................................2

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   No. 2:14-cv-911-JRG, 2016 U.S. Dist. LEXIS 112425 (E.D. Tex. Aug. 23,
   2016) ........................................................................................................................................2

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
   12 F.4th 476 (5th Cir. 2021) .................................................................................................6, 7

*Realtek Semiconductor, Corp. v. LSI Corp.*,
   No. C-12-3451-RMW, 2014 U.S. Dist. LEXIS 81673, 2014 WL 2738226
   (N.D. Cal. June 16, 2014) ........................................................................................................6

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ................................................................................................7

**Rules**

Fed. R. Civ. P. 50(a) .......................................................................................................................2

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| Ex. 36-A | |
| Ex. 36-B | |
| Ex. 37 | |
| Ex. 38-A | |
| Ex. 38-B | |
| Ex. 40 | |
| Ex. 65-A | |
| Ex. 65-B | |
| Ex. 68 | TQ Delta, LLC's Patent Statement and Licensing Declarations for ITU-T Recommendation |
| Ex. 74 | TQ Delta's DSL Technology Patent Portfolio |
| Ex. 78 | |
| Ex. 81 | |
| Ex. 124-B | |
| Ex. 135-B | |
| DDX-006 | Defendants' demonstratives for the direct examination of Stephen Becker, Ph.D. |

I.  **INTRODUCTION**

In deciding whether TQ Delta breached its contractual obligation with the International Telecommunications Union ("ITU") to grant a license on FRAND terms and conditions to CommScope, the jury considered whether TQ Delta violated its obligation and, if so, whether any damages were owed to CommScope for that violation. Because TQ Delta's expert admitted that the rates TQ Delta was trying to extract from CommScope were inconsistent with FRAND, and because TQ Delta's offered rates were about ten times what the jury found to be reasonable, a jury could have only found that TQ Delta breached its obligation. Therefore, the Court should enter judgment as a matter of law that TQ Delta breached its contractual obligation and should order a new trial limited to the question of the appropriate damages owed to CommScope for TQ Delta's breach.

The evidence presented at trial uniformly demonstrated that TQ Delta had a contractual obligation with the ITU to grant licenses on FRAND terms and conditions, that CommScope was an intended third-party beneficiary of the contract, that TQ Delta violated the contract when it refused to license CommScope on FRAND terms and conditions, and that CommScope suffered harm (in the form of business disruption and litigation costs) warranting damages. In fact, the jury's own findings demonstrate that TQ Delta breached its FRAND obligation. The jury awarded TQ Delta patent-infringement damages in the amount of $11,250,000 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, finding that ▇▇ per unit is the "reasonable" royalty under the circumstances. And yet TQ Delta's offers to CommScope were as much as ten times higher, and thus inconsistent with TQ Delta's FRAND obligations. The offers to CommScope included an initial per-unit royalty of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇ These offers, when compared to the amount deemed reasonable by this very jury, demonstrate that the offers were unfair, unreasonable, and discriminatory, and that TQ Delta

1

therefore unquestionably violated its FRAND obligation. For these and other reasons described herein, CommScope renews its motion for judgment as a matter of law that TQ Delta breached its FRAND obligation.

## II.     LEGAL STANDARD

"Judgment as a matter of law is proper when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)). "Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court asks whether 'the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict.'" *Cassidian Communs., Inc. v. Microdata GIS, Inc.*, Civil Action No. 2:12-cv-00162-JRG, 2014 U.S. Dist. LEXIS 110133, at *6 (E.D. Tex. Aug. 8, 2014); *see also Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-cv-911-JRG, 2016 U.S. Dist. LEXIS 112425, at *6 (E.D. Tex. Aug. 23, 2016). "[T]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Core Wireless*, 2016 U.S. Dist. LEXIS 112425, at *7 (quoting *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007)).

## III.    ARGUMENT

Under Texas law, a party asserting breach of contract must prove: "(1) the existence of a valid contract; (2) that the [party] performed or tendered performance; (3) that the other party breached the contract; and (4) that the party was damaged as a result of the breach." *City of Dall. v. Delta Air Lines, Inc.*, 847 F.3d 279, 287 (5th Cir. 2017) (citing *Cordero v. Avon Products., Inc.*, 629 Fed. Appx. 620, 623 (5th Cir. 2015)). As shown below, CommScope demonstrated at trial that each and every element of its breach of contract claim was met, and a reasonable jury could not have found otherwise.

2

### A. TQ Delta's Contract with the ITU

In its contract with the ITU, TQ Delta promised that it would "grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use, and sell implementations of the" ITU-T Recommendation. *See, e.g.*, Ex. 68 at 2. TQ Delta contractually bound itself to this obligation through its own undertaking directly with the ITU, thus committing to FRAND obligations for the Asserted Patents.[1] *See id*. Moreover, TQ Delta knew that the entity from whom it had purchased the Asserted Patents, Aware, Inc., had previously entered into an identical contractual obligation with the ITU. *See* Ex. 81 at 114 (Aware reporting "FRAND License Obligations"; "Participated in ITU DSL standards setting body – FRAND obligation"); Tr. Vol. 2, Dkt. No. 528 at 77:21–78:25. Acting on its contractual obligation, Aware entered into multiple license agreements that set the operative FRAND terms for Aware's patent portfolio, which included the Asserted Patents. *See* Ex. 81 at 114 (identifying and summarizing "Existing Licenses"). As an example, in one of Aware's FRAND licenses, Aware granted █████████████████████████████████████████████████████████████████████████. *Id.*; Tr. Vol. 2, Dkt. No. 528 at 92:8–20, 98:3–7. Prior to selling the Asserted Patents to TQ Delta, and as part of the parties' discussions about that sale, Aware expressly disclosed the existing FRAND licenses and ITU obligations to TQ Delta. Ex. 81 at 114; Tr. Vol. 2, Dkt. No. 528 at 78:24–25. Thus, when TQ Delta purchased the patent portfolio, it inherited the FRAND obligations and the existing licenses reflecting those obligations. And as noted earlier, TQ Delta doubled down on that commitment by signing its own obligation with the ITU. *See, e.g.*, Ex. 68 at 2.

---

[1] U.S. Patent No. 7,570,686 ("'686 Patent"); U.S. Patent No. 7,453,881 ("'881 Patent"); U.S. Patent No. 8,276,048 ("'048 Patent"); U.S. Patent No. 8,090,008 ("'008 Patent"); U.S. Patent No. 8,462,835 ("'835 Patent"); U.S. Patent No. 8,468,411 ("'411 Patent"); and U.S. Patent No.

3

████████████████████████████████████████████████████████

### B. TQ Delta Breached Its FRAND Obligation

#### 1. TQ Delta's Existing Licenses

Despite being obligated to offer FRAND licenses, and despite Aware's existing FRAND licenses,[2] TQ Delta published its own, higher FRAND royalty rates of $0.60 to $3.10 per licensed product per standard (depending on the number of standards incorporated into each licensed product), averaging to about $1.85 per product. Ex. 74. Based on this supposed "standard rate," TQ Delta then entered into licenses with ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ *See* Exs. 36-A, 36-B, 37, 38-A, 38-B, 40; Tr. Vol. 2, Dkt. No. 528 at 99:1–102:2, 110:6–114:2, 122:22–124:8, 128:1–132:7. TQ Delta attempted to portray those licenses as involving a $1.85 rate, but as the evidence showed, TQ Delta in fact offered the licensees substantial discounts (or "adjustments" as termed by TQ Delta) ████████████████████████████████████████████████████████ ████████████ ████████████████████████████████████████████████████ Tr. Vol. 2, Dkt. No. 528 at 115:15–116:23, 117:21–7. These discounts or adjustments resulted in a per-unit effective rate of ████████████████████████████████████████████████. Tr. Vol. 2, Dkt. No. 528 at 105:18–20, 120:8–121:4; Tr. Vol. 5, Dkt. No. 533 at 153:10–155:9. The jury's award of a per-unit effective rate ██████ for CommScope is consistent with the average per-unit rates ████████████████████████████████.

---

9,154,354 ("'354 Patent"). The parties have stipulated that the '048 and '411 Patents are not standard essential and therefore are not subject to the FRAND commitment.
[2] Aware entered into FRAND licenses with ████████████████, among others, and TQ Delta acquired these licenses in connection with its acquisition of the Aware patent portfolio. Ex. 65-A; Tr. Vol. 2, Dkt. No. 528 at 97:10–21; Tr. Vol. 5, Dkt. No. 533 at 103:13–16; *see also* DDX-006.42 (showing ████████████████████████████████████████████████████████████████ ████████████████████████████████████); Ex. 65-B; Tr. Vol. 2, Dkt. No. 528 at 92:8–20 (showing ████████████████████████████████████████████████████████████).

4

### 2. TQ Delta's Offers to CommScope

When TQ Delta approached CommScope (prior to litigation), it offered CommScope a license at a rate of ▇▇ per licensed product for the relevant accused standards (VDSL2, G.INP, and G.bond (designed to operate with VDSL2)). Ex. 124B, 135B. As summarized above, CommScope's DSL equipment maker competitors all paid substantially less than ▇▇ per licensed product for the same standards. Tr. Vol. 4, Dkt. No. 532 at 113:4–8. Thus, prior to the litigation, at a time when TQ Delta was obligated to make a FRAND offer to CommScope, TQ Delta instead sought to commercially disadvantage CommScope by seeking to charge five times the alleged standard rate for the G.INP standard that CommScope's largest competitor, ▇▇ had paid. Tr. Vol. 4, Dkt. No. 532 at 114:7–18. And worse, once litigation commenced, TQ Delta raised its allegedly FRAND demand to ▇▇ per licensed product. Tr. Vol. 4, Dkt. No. 532 at 112:3–8. And then during trial, TQ Delta raised its demand yet again, this time to ▇▇ per licensed product. Tr. Vol. 4, Dkt. No. 532 at 112:19–113:3. Notably, these post-litigation offers to CommScope covered only the five asserted U.S. patents subject to a FRAND commitment, not the 100-plus patents that TQ Delta has licensed to others at much lower rates. Tr. Vol. 2, Dkt. No. 528 at 101:16–25.

### 3. The Jury's Damages Award Proves That TQ Delta's Offers to CommScope Were Not FRAND

This Court instructed the jury to "determine a FRAND royalty based on the totality of the circumstances," with "the law require[ing] that any royalty awarded to TQ Delta correspond to the value of the patented invention within the accused product, as distinct from other unpatented features or market factors." Tr. Vol. 6, Dkt. No. 534 at 66:5–12. Further, the Court instructed the jury that "[y]ou must make sure that any reasonable royalty determination takes into account TQ Delta's FRAND obligations." *Id*. at 67:22–23.

5

TQ Delta and its damages expert, Dr. Putnam, failed to recognize that "a jury assessing patent infringement damages undertakes the same task of assessing whether an offered rate is FRAND." *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 492 (5th Cir. 2021); *see also Realtek Semiconductor, Corp. v. LSI Corp.*, No. C-12-3451-RMW, 2014 U.S. Dist. LEXIS 81673, 2014 WL 2738226, at *6 (N.D. Cal. June 16, 2014) ("[D]etermining damages for patent infringement is equivalent to declaring the parties' rights under the RAND contract."). To the contrary, Dr. Putnam admitted that the rate it sought to charge CommScope for the G.INP standard would violate FRAND "if that were an offered license." Tr. Vol. 4, Dkt. No. 532 at 114:23–115:4. TQ Delta's mistaken assumption throughout trial was that it could back away from its FRAND commitment and charge CommScope non-FRAND rates for its declared-essential patent portfolio:

> Q. Do you understand, sir, that damages in this case are constrained by the [F]RAND obligation? Do you understand that?
>
> A. No, I firmly disagree with that.
>
> Q. Let's be really clear here. You have done your work in this case under the assumption that [F]RAND does not constrain the damages to be awarded. Is that true?
>
> A. That's right. [F]RAND is an offer to be prepared to license. That preparation to license has passed.
>
> Q. So the work you've done in this case, as I understand it, it has no ceiling and no constraint based on that [F]RAND promise that was made. Is that a fair statement?
>
> A. No, that's completely inaccurate.
>
> Q. Well, what is the limit then? Is there any limit at all on what TQ Delta can charge to CommScope in this lawsuit?
>
> A. Well, the Court will instruct the jury on the law, but my understanding is that the law says that the royalty must be a reasonable royalty and adequate to compensate for the infringement.

Tr. Vol. 4, Dkt. No. 532 at 115:2-19 (Putnam).

Also, TQ Delta's proposed royalty rates—ranging from ▮▮▮▮▮ per product—were not FRAND because "a jury assessing whether a SEP holder has breached its FRAND obligation

6

must determine the value of the SEP holder's portfolio and compare that value to the offered rates. Valuing the portfolio requires apportionment, just as valuing a patent requires apportionment." *HTC*, 12 F.4th at 492. "TQ Delta's rates, totaling ▇▇▇▇ per box in some instance[s], would take up ▇▇▇▇ for some of the boxes, given that some of the features are optional, some of the features are not standard essential, and some of the features are not actually used by our customers." Tr. Vol. 3, Dkt. No. 530 at 193:16–21. TQ Delta failed to apportion its rates to the value of the patents, overlooked that the accused products are "subject to other patent pools," and overlooked that the accused products include features beyond those claimed in the patents, such as WiFi and fiber connection. Tr. Vol. 5, Dkt. No. 533 at 194:6–12, 146:19–147:6; *see Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) ("[T]he patentee . . . must in every case give evidence tending to separate or apportion … damages between the patented feature and the unpatented features . . . ." (internal quotation marks omitted)). Further, all of the accused functionality was found exclusively in the chipset. Thus, seeking to charge a percentage of the entire product, as opposed to a percentage of the chipset (as Aware's licenses had been structured), was not FRAND.

Tellingly, TQ Delta's demand of a ▇▇ rate is nearly ten times higher than the amount that the jury found to be reasonable (and TQ Delta's demand of a ▇▇ rate is higher still). The jury awarded TQ Delta a reasonable royalty of $11,125,000 for four patents found to be infringed. Dkt. No. 508. Considering the royalty base of ▇▇▇▇ of Accused Products, the jury's finding results in an effective reasonable royalty of about ▇▇ per product, which is **about ten times less** than TQ Delta's demands of ▇▇▇▇ per product. Dkt. No. 513 at 1–2. The jury's ultimate conclusion is consistent with the rates presented by CommScope at trial for ▇▇ ▇▇▇▇ (which average to ▇▇ per product). Tr. Vol. 2, Dkt. No. 528 at 105:18–20, 120:8–121:4; Tr. Vol. 5, Dkt. No. 533 at 153:10–155:9. It is also consistent with CommScope's

7

application of the ███████████████████████████████████ to the Broadcom chipsets in the Accused Products in the present case (which resulted in a royalty rate of ███ per product). Tr. Vol. 5, Dkt. No. 533 at 104:16–19, DDX-006.43-45. Thus, the jury's verdict itself (and specifically the jury's finding of a "reasonable" royalty of about ███ per product) demonstrates that TQ Delta's offers to CommScope were *not* reasonable, and therefore *not* FRAND—meaning that TQ Delta breached its contract with the ITU.

### C. CommScope Suffered Harm as a Result of TQ Delta's Breach

CommScope proved that TQ Delta's breach harmed CommScope. If TQ Delta had made a FRAND offer to CommScope for its declared-essential patent portfolio, CommScope could have accepted that offer and there would have been no need for this litigation. Indeed, Mr. Wauters testified that CommScope actively made its own FRAND offers to try to negotiate and rid itself of the business disruptions caused by the litigation. Tr. Vol. 2, Dkt. No. 528 at 283:11–23.[3] TQ Delta's breach of its FRAND commitments directly caused harm to CommScope, including costs in business disruption and sales lost to competitors.

## IV. CONCLUSION

The Court should grant judgment as a matter of law that TQ Delta breached its contractual obligations with the ITU, causing damage to CommScope. The Court should additionally grant a new trial limited to the question of the appropriate damages owed to CommScope for TQ Delta's breach.

---

[3] TQ Delta's own valuation reports take into account the immense costs associated with litigation. Ex. 78 at 6-7.

|  |  |
|---|---|
| Dated this 31st day of May, 2023 | Respectfully submitted,<br><br>By: */s/ Ross R. Barton*<br>Ross R. Barton (NC Bar No. 37179)<br>M. Scott Stevens (NC Bar No. 37828)<br>Kirk T. Bradley (NC Bar No. 26490)<br>Stephen R. Lareau (NC Bar No. 42992)<br>Karlee N. Wroblewski (NC Bar No. 55043)<br>Nicholas C. Marais (NC Bar No. 53533)<br>Erin Beaton (NC Bar No. 59594)<br>Mary I. Riolo (NC Bar No. 59644)<br>ALSTON & BIRD LLP<br>1120 S. Tryon Street, Suite 300<br>Charlotte, NC 28283-6818<br>Email: ross.barton@alston.com<br>         scott.stevens@alston.com<br>         kirk.bradley@alston.com<br>         stephen.lareau@alston.com<br>         karlee.wroblewski@alston.com<br>         nic.marais@alston.com<br>         erin.beaton@alston.com<br>         mary.riolo@alston.com<br>Telephone: 704-444-1000<br>Facsimile: 704-444-1111<br><br>Michael C. Deane (GA Bar No. 498195)<br>Katherine M. Donald (GA Bar No. 753449)<br>ALSTON & BIRD LLP<br>1201 West Peachtree St. Suite 4900<br>Atlanta, GA 30309<br>Email: michael.deane@alston.com<br>katie.donald@alston.com<br>Telephone: 404-881-7000<br>Facsimile: 404-881-7777<br><br>Katherine G. Rubschlager (Cal. Bar No. 328100)<br>ALSTON & BIRD LLP<br>560 Mission Street, Suite 2100<br>San Francisco, CA 94105<br>Email: katherine.rubschlager@alston.com<br>Telephone: 650-838-2004<br>Facsimile: 650-838-2001<br><br>Darlena Subashi (NY Bar No. 5780747)<br>ALSTON & BIRD LLP<br>90 Park Avenue |

New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444

Deron R. Dacus (TX Bar No. 00790553)
THE DACUS FIRM
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543 (fax)
E-Mail: ddacus@dacusfirm.com

Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
102 N. College Ave, Ste. 900
Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Lana S. Shiferman
Christie Larochelle
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
P:  (617) 570-1000
F:  (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com
clarochelle@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P:  (415) 733-6000
F:  (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong

10

███████████████████████████████

GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com


Attorneys for Defendants
CommScope Holding Company, Inc,
CommScope Inc., ARRIS US Holdings, Inc.,
ARRIS Solutions, Inc., ARRIS Technology,
Inc., and ARRIS Enterprises, LLC

***Counsel for Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC***

11

██████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel on May 31, 2023.

/s/ *Ross R. Barton*
Ross R. Barton