

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| TQ DELTA, LLC, | § | |
|     Plaintiff, | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| COMMSCOPE HOLDING COMPANY, | § | |
| INC., COMMSCOPE INC., ARRIS US | § | |
| HOLDINGS, INC., ARRIS SOLUTIONS, | § | Civil Action 2:21-cv-310-JRG |
| INC., ARRIS TECHNOLOGY, INC., and | § | (Lead Case) |
| ARRIS ENTERPRISES, LLC, | § | |
|     Defendants. | § | |
| | § | |
| | § | |

**PLAINTIFF TQ DELTA, LLC'S RESPONSE IN OPPOSITION TO COMMSCOPE'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     LEGAL STANDARD..............................................................................................1

III.    ARGUMENT ..........................................................................................................2

        A.      CommScope Proffered No Evidence of Damages....................................2

        B.      The Evidence Showed that TQD Did Not Breach ....................................5

                1.      TQD's Existing Licenses and Its Offers to
                        CommScope....................................................................................5

                2.      The Jury's Damages Award Does Not Prove Breach................................8

                        a.      The Jury's Award Does Not Demonstrate
                                That TQD's Offers Were Unreasonable .........................................8

                        b.      CommScope Mischaracterizes Dr. Putnam's
                                Testimony and the Law................................................................13

IV.     CONCLUSION......................................................................................................15

i

**TABLE OF AUTHORITIES**

## CASES

*Apple, Inc., v. Motorola Mobility, Inc.*,
  No. 11-cv-178, 2012 U.S. Dist. LEXIS 181854 (W.D. Wis. Oct. 29, 2012) ............................ 9

*Baisden v. I'm Ready Prods., Inc.*,
  693 F.3d 491 (5th Cir. 2012) ........................................................................................... 1

*Cousin v. Trans Union Corp.*,
  246 F.3d 359 (5th Cir. 2001) ........................................................................................... 1

*E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*,
  731 F.3d 444 (5th Cir. 2013) ....................................................................................... 2, 13

*Ellis v. Weasler Eng'g Inc.*,
  258 F.3d 326 (5th Cir. 2001) ........................................................................................... 2

*Howley v. Bankers Standard Ins. Co.*,
  No. 20-10940, 2022 U.S. App. LEXIS 5137 (5th Cir. Feb. 25, 2022) ....................................... 2

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
  12 F. 4th 476 (5th Cir. 2021) ................................................................................... passim

*Int'l Ins. Co. v. RSR Corp.*,
  426 F.3d 281 (5th Cir. 2005) ........................................................................................... 1

*JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*,
  508 S.W.3d 391 (Tex. App. 2014) ...................................................................................... 4

*Loeb-Defever v. Strategic Constr., Ltd.*,
  No. 4:20-CV-1981, 2022 U.S. Dist. LEXIS 124597 (S.D. Tex. July 14, 2022) ............... 2, 3, 5

*Microsoft Corp. v. Motorola, Inc.*,
  795 F.3d 1024 (9th Cir. 2015) ...................................................................................... 9, 13

*Realtek Semiconductor, Corp. v. LSI Corp.*,
  No. C-12-3451, 2014 WL 2738226 (N.D. Cal. June 16, 2014)............................................... 14

*Seismic Wells, LLC v. Matthews*,
  No. 5:15-CV-148-C, 2016 U.S. Dist. LEXIS 85602 (N.D. Tex. Feb. 22, 2016) ...................... 2

*Silverthorne Seismic, LLC v. Sterling Seismic Servs.*,
  No. H-20-2543, 2021 U.S. Dist. LEXIS 193813 (S.D. Tex. Oct. 7, 2021) ............................... 3

*Taub v. Houston Pipeline Co.*,
  75 S.W.3d 606 (Tex. App. 2002)....................................................................................... 3

## RULES

Fed. R. Civ. P. 50(a) ..................................................................................................... 1

## I.  INTRODUCTION

CommScope's renewed motion for judgment as a matter of law (Dkt. No. 541) should be denied.  The jury saw CommScope's breach of contract claim for the half-hearted afterthought that it was and correctly found that TQ Delta, LLC ("TQD") did not violate its obligation to license its SEPs to CommScope on FRAND terms.  That verdict should not be disturbed. CommScope had the burden of providing evidence of concrete, non-speculative damage from TQD's alleged breach, but it failed to provide any.  CommScope devotes a single paragraph of its JMOL motion to showing how it allegedly proved up damages and does not cite to anything in the record that shows in any detail how it was harmed.  Thus, the jury could more than fairly find that there was no harm.  CommScope should not be given a mulligan and be allowed to try to prove up damages at a new trial when it was unable to do so the first time.  Moreover, CommScope's position that TQD must have breached its FRAND obligation because the jury's damages award purportedly implies a FRAND rate that is less than TQD's license offer or damages theory at trial has no basis in fact or law.  The record and law support the jury's verdict of no FRAND breach, and CommScope is not entitled to JMOL or a new trial.

## II.  LEGAL STANDARD

Judgment as a matter of law is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  A court is to be "especially deferential" to a jury's verdict.  *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498-99 (5th Cir. 2012).  The Court will "uphold a jury verdict unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable [jurors] could not arrive at any verdict to the contrary."  *Cousin v. Trans Union Corp.*, 246 F.3d 359, 366 (5th Cir. 2001); *see also Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005).  In evaluating a motion for JMOL, a court must "draw all reasonable inferences in the light most

favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 452 (5th Cir. 2013). The court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001).

## III.   ARGUMENT

A party asserting a claim for breach of contract must prove:  the existence of a valid contract, that it performed its obligations, breach by the other party, and its damages caused by the breach. *See Howley v. Bankers Standard Ins. Co.*, No. 20-10940, 2022 U.S. App. LEXIS 5137, at *4-5 (5th Cir. Feb. 25, 2022).  While TQD does not deny that its SEPs are subject to a FRAND agreement with the ITU, CommScope did not present evidence compelling a reasonable jury to find that TQD did not meet its obligations.  And, even if it had, CommScope did not prove any harm, thereby eliminating any possible liability for breach and any remedy.

### A.   CommScope Proffered No Evidence of Damages

CommScope devotes only eight lines of its renewed JMOL motion to the damages element of its claim.  Dkt. No. 541 at 8.  That reflects CommScope's failure to point to any evidence that it presented to the jury of how TQD's alleged breach harmed it.

Under Texas law, the damages element of a breach of contract claim is not some non-essential add-on that can be elided away.  Instead, "a material element of a claim for breach of contract is the existence of damages suffered by the plaintiff," *Seismic Wells, LLC v. Matthews*, No. 5:15-CV-148-C, 2016 U.S. Dist. LEXIS 85602, at *7 (N.D. Tex. Feb. 22, 2016), and there is no "presum[ption of] the existence of harm from the simple fact of breach."  *Loeb-Defever v. Strategic Constr., Ltd.*, No. 4:20-CV-1981, 2022 U.S. Dist. LEXIS 124597, at *14 (S.D. Tex. July 14, 2022).  Further, "damages must be shown in the form of loss actually sustained and may not be remote or speculative." *Seismic Wells*, 2016 U.S. Dist. LEXIS 85602, at *7-8; *see also*

*Loeb-Defever,* 2022 U.S. Dist. LEXIS 124597, at *15 ("The measure of damages is just compensation for *the loss actually sustained.* The burden is on the complaining party to establish his right to recover compensatory damages by proving he suffered a pecuniary loss . . . . Such loss must be established with a reasonable degree of certainty and cannot be left to speculation.") (quoting *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 616-17 (Tex. App. 2002); *Silverthorne Seismic, LLC v. Sterling Seismic Servs.*, No. H-20-2543, 2021 U.S. Dist. LEXIS 193813, at *10 (S.D. Tex. Oct. 7, 2021) ("[R]emote, contingent, speculative or conjectural damages are insufficient to support a breach of contract action.").

CommScope did not offer at trial any evidence of a pecuniary loss with any degree of certainty, much less that the jury was required to believe. CommScope asserts its business was disrupted but cites only the following testimony of its corporate witness, Mr. Wauters:

> [O]ur intention was to try to negotiate a deal with them so ultimately we wouldn't have to litigate it; we wouldn't end up in a courtroom like this. So our intention was to try to come up with a compromise with them, and that's why we offered the lump sum plus the other licensing arrangement in that offer.
>
> And also, frankly, we want to keep -- stay focused on designing and building products. Right? We don't want our business to be disrupted on events like this. And, I mean, this obviously can take a lot of resources away from our focus areas inside of our company, and so that definitely was the intent of making that offer over to TQ Delta.

3/21/23 Tr. at 283:11-23 (cited at Dkt. No. 541 at 8). This does not say that CommScope's business *was* disrupted or that the lawsuit *did* take resources away from "focus areas." Even so, such vague conjecture cannot meet CommScope's burden to prove damages. Under Texas law, "[d]amages for business interruption are measured by the amount of profits lost due to the interruption. . . . While recovery for lost profits does not require that the loss be susceptible of exact calculation, the injured party must do more than show they suffered some lost profits. . . . The loss amount must be shown by competent evidence with reasonable certainty." *JPMorgan*

*Chase Bank, N.A. v. Prof'l Pharmacy II*, 508 S.W.3d 391, 429 (Tex. App. 2014).  Mr. Wauters'

testimony does not meet this standard.

CommScope also asserts that there were "sales lost to competitors" but does not provide

any cite to the trial record to support this assertion.  *See* Dkt. No. 541 at 8.

Lastly, CommScope cites to a patent portfolio valuation report for TQD that generally

refers (on pages never presented to the jury) to litigation costs.  *Id*.  But TQD's general reference

to its own potential litigation costs is not evidence of damages to *CommScope* tied to TQD's

alleged breach.  And CommScope never proffered any evidence of its litigation costs.

That's it – that's all that CommScope can point to as alleged damages:  speculative

business disruption untethered to any actual damages, unsupported attorney argument that an

unknown amount of sales were lost to an unknown number of unnamed competitors during an

unknown period because of an unstated connection between licensing/litigation and sales

activities, and TQD's reference to future litigation expenses on pages never presented to the jury.

CommScope certainly cannot show that the record compels a reasonable jury to believe that it

was damaged.  In this way, CommScope's present motion is no different from the Rule 50(a)

motion it is renewing, in which it failed to even pay lip service to the damages element of a

breach of contract claim.  *See* 3/23/23 Tr. at 238:6-240:5.  It is also consistent with

CommScope's closing arguments, which acknowledge that CommScope did not identify its

damages with any degree of certainty.  *See* 3/24/23 Tr. at 101:12-15 ("You're also going to be

asked, what sum of money would compensate us for that breach.  We're not here about money.

We're not here asking for a bunch of money.  We will leave that totally to your discretion.").

Because CommScope did not present any evidence of damages, much less evidence that

the jury was compelled to believe, the jury reasonably found in TQD's favor on CommScope's

████████████████████████████████████

breach of contract claim.  For this reason alone, CommScope's motion should be denied.[1]

**B.   The Evidence Showed that TQD Did Not Breach**

While the complete lack of evidence of damages alone torpedoes CommScope's JMOL motion, the motion also fails because there was more than sufficient evidence for the jury to reasonably find that TQD's licensing behavior and offer did not breach its FRAND obligations, and CommScope's effort to construct a record that requires a finding of breach falls short.

**1.   TQD's Existing Licenses and Its Offers to CommScope**

CommScope begins its argument by trying to paint the rates TQD offered it as far greater than those TQD agreed to with other DSL equipment makers.  CommScope asserts that it presented evidence that TQD licensed ███████████████ at per-unit effective rates of ████████████, respectively, and that those numbers are "substantially less" than TQD's pre-litigation offer of a ████ per unit to CommScope and the per-unit rate found in TQD's damages model.  Dkt. No. 541 at 4-5.

These facile comparisons of purported per-unit royalties, however, do not dictate a finding of breach.  First, as discussed below, TQD's damages model is distinct from determining whether TQD breached its FRAND obligation or whether TQD's licensing offer was FRAND.

Second, the effective per-unit rates asserted by CommScope mischaracterize the prior agreements. The ████████████ agreements all include the same or similar rates as were

---

[1] CommScope also did not show it was entitled to nominal damages.  Nominal damages are not available when the harm is entirely economic and subject to proof (as opposed to non-economic harm to civil or property rights).  *See Loeb-Defever*, 2022 U.S. Dist. LEXIS 124597, at *15-18. CommScope did not take the position that its alleged harm is non-economic.

[2] CommScope asserts that the average of those rates ████ is "consistent" with the jury award's "effective rate" of ████ Dkt. No. 541 at 4, 7.  Setting aside the fact that TDQ does not agree with the ████ calculation, CommScope's assertion is a strained reading of the tea leaves given that ██ does not equal ████  It also ignores TQD's licenses to two other DSL equipment makers, ████████████ who agreed to TQD's standard rates.  *See* 3/20/23 Tr. at 165:9-167:20.

offered to CommScope.   Trial Ex. 36-B at TQD_TX00313568; Trial Ex. 37 at TQD_TX-00044462.   As those agreements reflect, and as explained by TQD's managing director, the ██████████ agreements include an ████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████.   *Id.*; 3/20/23 Tr. at 104:13-19, 106:11-107:5, 108:20-109:7, 115:11-118:12.   The jury did not have to accept CommScope's mischaracterization of the ██████████ effective rates as being ████████████, respectively.   The jury was also not required to give CommScope an "early-mover" discount because CommScope delayed negotiations 10 years.

CommScope's assertion that the ████ agreement yielded an effective rate of ████ per unit is based on a mischaracterization of the ████ license as being ████████████. Because of this mischaracterization, CommScope's calculation of the effective royalty rate inflated the number of units licensed by about ████████████████████████████████████ ████████    *See* 3/23/23 Tr. at 153:10-155:9.   The jury was not required to accept CommScope's mischaracterization of the ████ license and, instead, could have concluded (based on, *e.g.*, Trial Exs. 38-A at TQD_TX00491591 ████████████████████ and 38-B and 3/20/23 Tr. at 130:1-131:24, 132:12-16) that there was only ████████████████████████ and that the ██████████████████████████████████████████.

Third, TQD's obligation to license "applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions" does not require that it offer the exact same per unit rate to all licensees.   *See* 3/22/23 Tr. at 86:19-87:21.   Rather, as TQD demonstrated at trial, the non-discriminatory aspect of the FRAND obligation is understood to, and does, apply to similarly

6

████████████████████████████████████████████

situated competitors who have been similarly willing to negotiate licenses in good faith.  *See* Ex. 68; 3/20/23 Tr. at 71:3-16, 149:10-151:4, 152:13-154:9, 185:8-12, 186:7-25; 3/21/23 Tr. at 205:21-207:4; *see also HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F. 4th 476, 486, n.3 (5th Cir. 2021) ("HTC's proposed instruction would transform the non-discrimination element of FRAND into a most-favored-licensee approach, which would require Ericsson to provide identical licensing terms to all prospective licensees"; "Generally, the non-discrimination requirement of FRAND means that similarly situated firms should receive similar terms and conditions (or have access to the same range of terms and conditions)." (quoting Model Pat. Jury Instructions § 5.11 (Fed. Cir. Bar Association 2020))).



TQD presented evidence of important differences between the circumstances surrounding its negotiations with ██████████████, on the one hand, and the circumstances surrounding its negotiation of a license with CommScope, on the other hand.  Those differences demonstrate that TQD did not breach its FRAND obligations.  ████ paid TQD's standard rates but the license included an ████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████. *See* 3/20/23 Tr. at 117:21-118:7-21, 167:23-171:7, 173:13-19, 178:14-22, 187:1-9; 3/22/23 Tr. at 116:11-12, 123:12-25.  Similarly, ████ paid TQD's standard rates, but the license included an ████████████████████████████████████████████████████████████

██████████████████████████████████████████. *See* 3/20/23 Tr. at 163:13-165:6, 178:23-25.  As for ████ it actually paid ████████████████████████

████████████████████████████████████████████████████████.

*See id*. at 31:18-32:4, 128:18-25, 174:18-177:19.  Conversely, CommScope was not a willing

██████████████████████████████

licensee and did not negotiate in good faith because it did not approach TQD for a license, dragged out negotiations for years, refused to provide essential technical and unit sales information to TQD, and its counteroffer ████████████████████████████████████

████████████████████████.  *See* 3/20/23 Tr. at 14:22-21:16, 26:17-29:17, 32:8-43:20, 160:21-25, 169:6-10, 171:8-172:4; 3/22/23 Tr. at 58:12-22; 3/21/23 Tr. at 247:3-252:11.[3]  Furthermore, TQD's damages expert testified that TQD's offer to CommScope was reasonable when compared to TQD's other licenses.  *See* 3/22/23 Tr. at 9:11-13:25.

Given this evidence, the jury had a sufficient basis to find that TQD did not breach its FRAND obligation.  *See HTC Corp.*, 12 F. 4th at 488 ("HTC further argued that Ericsson's licenses with [other] companies . . . were much more favorable, but Ericsson presented additional evidence indicating that those companies were not similarly situated to HTC . . . .  The jury was not required to accept HTC's arguments or evidence regarding valuation or non-discrimination. . . . .  [T]he evidence that HTC points to . . . is not so overwhelmingly in HTC's favor that . . . no reasonable jury could have found for Ericsson.").

### 2.    The Jury's Damages Award Does Not Prove Breach

CommScope's argument that the jury's damages award for CommScope's infringement proves that TQD breached its FRAND obligation is baseless.  Dkt. No. 541 at 5-8.

### a.    The Jury's Award Does Not Demonstrate That TQD's Offers Were Unreasonable

The premise of CommScope's breach argument is that the jury awarded an effective royalty of ████ per unit, which is purportedly much less than TQD's license offer and damages

---

[3] CommScope attempts to recast Dr. Putnam's damages model as a "post-litigation offer[]" that "covered only the five asserted U.S. patents subject to a FRAND commitment, not the 100-plus patents that TQD licensed to others."  Dkt. No. 541 at 5.  This assertion is highly misleading and unfair because Dr. Putnam's damages model was not an "offer" and was based on the notion that the value of the asserted patents typically represent the value of entire patent families.  Further, TQD was required to reduce the number of asserted patents for judicial economy.

███████████████████████████████████

demand per unit and, thus, the award demonstrates that TQD's offers were not FRAND.  Dkt. No. 541 at 7-8.  There are myriad holes in this argument.  *First*, the jury was not asked to decide whether ██████████, or any other number) is not a FRAND rate, and it did not answer that question.  Further, the verdict form did not specify that ████ per unit was *the* FRAND rate.

*Second*, CommScope does not cite a single case to support the idea that, when a jury awards less in royalty damages for infringement than what a patentee asks for, the infringer is entitled to JMOL on a claim for breach of FRAND.  And for good reason – as the Court in *HTC Corp.* found, determining damages for infringement of SEPs is distinct from assessing whether a license offer is FRAND.  Moreover, the case law does not support an inference that there is one FRAND rate.  Instead, FRAND rates are found in a range.  *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1044-45 (9th Cir. 2015) (finding that, "in determining the RAND rate and range for each SEP portfolio," the district court did not err); *Apple, Inc., v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012 U.S. Dist. LEXIS 181854, at *14-15 (W.D. Wis. Oct. 29, 2012) (to evaluate whether patentee's licensing offers were not FRAND "will require the court to determine first what rate or range of rates would qualify as a [FRAND] license offer . . . and then determine whether [patentee's] licensing offers were a breach of its duty to offer a license within that range").  So, even if the jury's purported per unit rate of ████ is a FRAND rate, that does not mean that other rates, including ████ are not in the FRAND rate range.  Accordingly, one cannot infer that the jury's damages award was a finding that TQD's rates were not FRAND or that ████ was the only or maximum FRAND rate.

*Third*, CommScope's argument relies on wishcasting.  CommScope asserts that the jury's purported ████ per unit effective royalty is consistent with the effective rates for ██████████ ██████████, which average to ████ per product.  But, as explained above, the jury did not have to

████████████████████████████████████████████

accept CommScope's mischaracterization of those effective rates.  The argument also ignores

licenses to other CPE makers ████████████) in which TQD's standard rates were paid.

CommScope further asserts that the ████ award is consistent with its application of the

████ agreement to the Broadcom chipsets used in the accused products, which CommScope

alleges resulted in a royalty of ████ per product.  Dkt. No. 541 at 8.  There is no support for that

assertion.  To start with, ████ times CommScope's ██████ infringing units results in a

total of $██████, not the jury's award of $11,125,000.  *See* 3/22/23 Tr. at 47:24-48:1; Dkt.

No. 513 at 2.  There is no support for the inference that the jury multiplied ██ cents (based on the

████ license) by ██████ units and then shaved exactly ██████ off that number to arrive

at its $11,125,000 award.  Further, the law and record show that the non-discriminatory language

of FRAND applies to similarly situated parties, that ████████████████████

████████████ and CommScope (a DSL CPE maker) were not similarly

situated, and that TQD's predecessor in interest would not have licensed a CPE maker like

CommScope on the ████ terms.  *See* 3/20/23 Tr. at 25:14-26:4, 62:16-63:23, 157:1-15; 3/22/23

Tr. at 52:18-53:15, 56:14-20; 3/17/23 Tr. at 188:7-25; 3/23/23 Tr. at 128:23-129:20, 132:10-

134:20; 3/21/23 Tr. at 202:16-203:13, 208:5-209:23.  Moreover, TQD presented unrebutted

evidence that the claimed inventions are not limited to the chipsets.  *See* 3/21/23 Tr. at 23:11-

24:24, 41:9-42:3, 116:24-118:18, 136:3-17; 3/20/23 Tr. at 211:20-212:25, 307:22-309:13.  The

jury was not required to believe that the ████ agreement set the FRAND rate, and the record

does not compel a reasonable the jury to base its FRAND verdict on the ████ agreement.

*Fourth*, CommScope's argument that the jury award demonstrates TQD's offers were not

FRAND ignores the fact that TQD's standard rate offer to CommScope encompassed far more

patents than were asserted at trial.  CommScope's premise is that the ████ per product royalty

████████████████████████████

TQD sought in licensing negotiations is higher than a purported rate of ███ per product implied by the jury verdict.[4]  However, given the trial themes and testimony offered by CommScope, the jury's verdict actually implies a royalty rate that is <u>greater</u> than the one sought by TQD.

TQD offered to license CommScope under ***all of its patents*** for the practice of VDSL2, G.Bond, and G.Inp for ███ per product (at its standard rates of ███ for VDSL2, ███ for G.Bond, and ███ for G.Inp).  *See* Trial Ex. 135-B.  At trial, however, CommScope repeatedly made the point that damages could only be for the seven TQD patents-in-suit.  CommScope's damages expert, Dr. Stephen Becker, told the jury that it could not award damages for all of TQD's patents applicable to these standards but, instead, could only award damages equivalent to a hypothetical license for just the seven patents-in-suit.  *See* Dkt. No. 541, Ex. DDX-006, at DDX-006.34, DDX-006.46, DDX-006.47.  One of CommScope's themes in cross-examining Dr. Putnam was to apportion back to the seven patents-in-suit TQD's standard licensing rates used in prior licenses.  *See* 3/22/23 Tr. at 96:23-97:15, 99:21-100:8.  CommScope's cross-examination characterized TQD's standard rates as being for 100 patents and suggested that the hypothetical royalty rate the jury should award would be for only seven patents.  *See id*. at 96:18-97:15. Further, Dr. Becker suggested that the damages award should only be for the seven patents-in-suit because CommScope would have to pay more later "for the other 150, 100-plus patents in

---

[4] TQD disagrees that the jury verdict implies a FRAND rate of ███ per product.  The verdict form did not ask the jury to identify a rate per product, much less the FRAND rate or range of FRAND rates.  Further, even if a rate per product could be implied from the $11,125,000 award, any implied rate per product may be much higher than ███ per product.  Because the jury might have concluded that CommScope was not liable for the indirect infringement TQD asserted for the ███ units CommScope sold before the 6-year statute of limitations cut-off in August 2015, the ███ could have actually represented a per unit rate of $11,125,000/███ = ███  *See* 3/22/23 Tr. at 45:10-48:1; 3/23/23 Tr. at 157:7-159:1.  Further, because the jury awarded a lump-sum, payable as of the date of first infringement in November 2008, the ███ could have actually represented a rate per product that is more than ███ in today's dollars (as of the date of the verdict).

████████████████████████████

the [TQD] portfolio."  3/23/23 Tr. at 106:16-107:1; *see also id.* at 103:25-104:8 (comparing a license from TQD's predecessor-in-interest to ████ for "152 patents" and the standard licensing rate of ████ "for all the patents" to a damages award for "just the seven patents").

Additionally, and importantly, the jury did not even award damages for all seven patents-in-suit.  The award did not include compensation for the three patents-in-suit the jury found to be either invalid or not infringed (*i.e.*, U.S. Patent Nos. 8,090,008, 8,462,835 and 7,570,686).  Thus, even using CommScope's effective royalty per product calculation of ████, the jury awarded at least $████ per product for *only four of TQD's patents*.

So, in sum, CommScope effectively told the jury that TQD's ████ standard rate offer (the same one made to CommScope and accepted by other TQD licensees) was for a 100 patent portfolio, but the jury could only award damages for the four valid and infringed patents. Viewed in this light, and to the extent the jury's award was intended to represent the FRAND rate or a rate that is FRAND, the jury's ████ per product (or ████ per product per patent) award implies that the jury found that rates at least as high as ████ per product for TQD's 100 patent portfolio would be FRAND.  TQD's ████ standard rate offer to CommScope was well below this ████ amount and, for this reason, the jury could reasonably have found that TQD's standard rates offer was FRAND.  Accordingly, if anything relevant to a FRAND obligation can be taken from the jury's lump sum damages award – and TQD maintains that no such connection was made in the verdict form or can or should be made now – it is that the jury's damages award shows that the jury found that the royalty rate TQD offered to CommScope for its entire portfolio of patents for the practice of VDSL2, G.Bond, and G.Inp was indeed FRAND.  Thus, in view of this reasonable inference, and the requirement that the Court "draw[] all reasonable inferences in

the light most favorable to the verdict," *Boh Bros.*, 731 F.3d at 452, this is an additional reason

that the Court should deny CommScope's motion.

        **b.**      **CommScope Mischaracterizes Dr. Putnam's Testimony and the Law**

CommScope supports its argument that the jury's verdict shows breach by asserting that

TQD's damages expert, Dr. Putnam, "failed to recognize that a jury assessing patent

infringement damages undertakes the same task of assessing whether an offered rate is FRAND"

and that he took the position that TQD could "back away from Its FRAND commitment and

charge CommScope non-FRAND rates" in its damages model. Dkt. No. 541 at 5-6.  In doing so,

CommScope mischaracterizes Dr. Putnam's testimony and the law.

Dr. Putnam specifically said he did take TQD's FRAND promises into account in his

opinion.  *See* 3/22/23 Tr. at 9:11-13:25.  He also testified that he considered FRAND obligations

when apportioning the value of TQD's SEPs.  *See id*. at 25:15-26:22, 30:24-33:9.  He further

testified that the final royalty he arrived at for damages was comparable to the royalty in the

license and was non-discriminatory.  *See id*. at 48:24-52:12.  Thus, while Dr. Putnam

testified that TQD's patent infringement damages were not constrained by TQD's FRAND

obligations, *see* Dkt. No. 541 at 6, he did consider FRAND obligations in his damages analysis.

Further, the case law does not require Dr. Putnam's damages model to be constrained by

TQD's FRAND obligation.  As the Fifth Circuit has stated, "a breach-of-FRAND claim 'is not a

patent law action' . . . and [t]he act of determining the value of a standard[ ]essential patent for

purposes of calculating damages is distinct from assessing whether a particular offer made

during unique licensing negotiations was fair and reasonable."  *HTC Corp.*, 12 F. 4th at 485

(quoting *Microsoft Corp.*, 795 F.3d at 1040).  Thus, TQD's damages for patent infringement is a

separate issue from its FRAND obligation.  Moreover, the Court did not instruct the jury that

███████████████████████████████

TQD's damages model was constrained by FRAND obligations.  Instead, the jury was instructed to "take[] into account TQ Delta's FRAND obligations," that "[t]he FRAND commitment in this case does not require any specific licensing model to determine a FRAND royalty," and to "determine a FRAND royalty based on the totality of the circumstances."  3/24/23 Tr. at 66:4-67:23.  Dr. Putnam's damages model, which considered FRAND obligations and which he compared favorably to the ████ license, was consistent with those instructions.

Additionally, the case law CommScope relies on is not apt.  CommScope takes the statement in *HTC Corp.* that "a jury assessing patent infringement damages undertakes the same task of assessing whether an offered rate is FRAND" out of context.  *See* Dkt. No. 541 at 6.  That statement comes from the concurrence and is made in evaluating whether patent damages law should be used in a jury instruction for a breach of FRAND case.  *HTC Corp.*, 12 F. 4th at 492.[5] It is not made in support of the position that reasonable royalty damages must be FRAND. Indeed, as quoted above, the majority in the *HTC Corp.* case unequivocally states that determining SEP infringement damages is distinct from assessing whether an offer is FRAND.

CommScope further argues that TQD's proposed royalty rates were not FRAND because "a jury assessing whether a SEP holder has breached its FRAND obligation must determine the value of the SEP holder's portfolio and compare that value to the offered rates.  Valuing the portfolio requires apportionment; just as valuing a patent requires apportionment."  Dkt. No. 541 at 6-7.  CommScope again bases its argument on a quote from the concurrence in *HTC* related to the issue of basing a jury instruction for a breach of FRAND claim on patent damages law. Regardless, the argument fails because Dr. Putnam <u>did</u> determine the value of TQD's asserted SEPs and compared that value to offered rates.  He testified that he apportioned the gains of DSL

---

[5] The quote from *Realtek Semiconductor, Corp. v. LSI Corp.*, No. C-12-3451, 2014 WL 2738226, at *6 (N.D. Cal. June 16, 2014) that CommScope relies on is made in a similar context.

██████████████████████████████████

over the next best alternative (FTTP) all the way down to TQD's asserted SEPs and compared the result of that apportionment to the ████ license.  *See* 3/22/23 Tr. at 9:11-52:12.

CommScope critiques TQD's apportionment by making the following points: (i) TQD's proposed damages rates take ██████████████████████████ per unit, (ii) TQD's apportionment does not take into account that the accused products are subject to other patent pools and include features not claimed in TQD's SEPs, and (iii) TQD's royalty is based on the entire product and not the chipset.  Dkt. No. 541 at 7.  The jury was not required to conclude that TQD's rates were not FRAND based on (i), (ii), or (iii) above.  And, TQD presented contrary evidence on those points.  TQD's managing director testified that CommScope had never told TQD its rates were too high in view of the price of a DSL modem, and TQD's counsel pointed out in closing remarks that CommScope should have accounted for royalties to TQD in pricing its accused products.  *See* 3/20/23 Tr. at 162:16-24; 3/24/23 Tr. at 85:24-86:10.[6]  Further, the damages model that Dr. Putnam presented to the jury did apportion down to the value of TQD's SEPs (and, thus, excluded the value of other SEPs and features of the accused products not covered by TQD's SEPs).  *See* 3/22/23 Tr. at 33:10-45:9, 106:7-19.  Lastly, TQD presented evidence that all the accused functionality is not found in just the DSL chip.  *See* 3/21/23 Tr. at 23:11-24:24, 41:9-42:3, 116:24-118:18, 136:3-17; 3/20/23 Tr. at 211:20-212:25, 307:22-309:13.

IV.    **CONCLUSION**

For at least the foregoing reasons, CommScope's JMOL motion should be denied.  The relevant facts and inferences do not so strongly and overwhelmingly favor CommScope that reasonable jurors could not have arrived at a verdict for TQD on CommScope's breach claim.  If anything, the facts and inferences greatly favor TQD and support the jury's verdict.

---

[6] Also, the Court specifically instructed the jury that the "royalty must not be limited or increased based on the actual profits that the alleged infringer made."  3/24/23 Tr. at 61:7-8

Respectfully submitted,

Dated:  June 14, 2023

/s/ *Peter J. McAndrews*
Peter J. McAndrews
(*Pro hac vice*)
pmcandrews@mcandrews-ip.com

Rajendra A. Chiplunkar
(*Pro hac vice*)
rchiplunkar@mcandrews-ip.com

David Z. Petty
(*Pro hac vice*)
dpetty@mcandrews-ip.com

Ashley Ratycz
(*Pro hac vice*)
aratycz@mcandrews-ip.com

**McANDREWS, HELD & MALLOY, LTD.**
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

Anthony K. Bruster
akbruster@brusterpllc.com
Texas Bar No. 24036280

Edward K. Chin
ed@brusterpllc.com
Texas Bar No. 50511688

Andrew J. Wright
andrew@brusterpllc.com
Texas Bar No.24063927

Shawn A. Latchford
shawn@brusterpllc.com
Texas Bar No. 24066603

**BRUSTER PLLC**
680 N. Carroll Ave., Suite 110
Southlake, TX 76092
(817) 601-9564 – Telephone

16

███████████████████████████████

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com

Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

*Attorneys for Plaintiff TQ Delta, LLC*

17

███████████████████████████████████

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this June 14, 2023 on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

/s/ *Peter J. McAndrews*
Peter J. McAndrews

███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

█████████████████████████████████

18