████████████████████████████████████

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| TQ DELTA, LLC, | |
| *Plaintiff*, | Civil Action No.: 2:21-cv-310 |
| v. | |
| COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC, | |
| *Defendants*. | |

**COMMSCOPE'S RESPONSE TO TQ DELTA'S MOTIONS FOR**
**A NEW TRIAL ON DAMAGES AND THE VALIDITY OF U.S. PATENT NO. 8,462,835**
**AND CONDITIONAL MOTION FOR A NEW TRIAL ON ADDITIONAL DAMAGES**
**FOR INFRINGEMENT OF U.S. PATENT NOS. 8,462,835, 8,090,008, AND 7,570,686**
**(DKT. NO. 538)**

## TABLE OF CONTENTS

**Page**

I.      LEGAL STANDARD ......................................................................................................1

II.     ARGUMENT ..................................................................................................................1

     A.     The Court Did Not Err by Giving the Cost Savings Instruction .............................1

          1.     TQ Delta Failed to Properly Raise Its Objection ........................................2

          2.     The Cost Savings Instruction Is a Correct Statement of the Law ...............5

          3.     The Cost Savings Instruction Had No Prejudicial Effect on TQ
              Delta ...........................................................................................................7

          4.     The Court Was Not Required to Give TQ Delta's Proposed
              Alternative Instruction ................................................................................8

     B.     The Court Did Not Err by Allowing Dr. Becker's Testimony ................................9

          1.     Dr. Becker's Opinion Was Based on Aware's Comparable
              Licenses ....................................................................................................10

          2.     TQ Delta's Attacks on Dr. Becker's SSPPU Analysis Are Baseless ........10

          3.     TQ Delta Has Not Been Prejudiced ...........................................................13

     C.     TQ Delta's Motion for a New Trial Regarding the Validity of the 835
        Patent Should Be Denied .......................................................................................14

III.    CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Display Sys. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000)..................................................................................................2

*Apple Inc. v. Motorola, Inc.*,
757 F. 3d 1286 (Fed Cir. 2014)................................................................................................12

*Aqua Shield v. Inter Pool Cover Team*,
774 F.3d 766 (Fed. Cir. 2014)...............................................................................................5, 6

*Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*,
No. 2:22-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 193340 (E.D. Tex. Oct. 24,
2022) ........................................................................................................................................12

*Cardsoft, Inc. v. Verifone Holdings, Inc.*,
No. 2:08-cv-98-RSP, 2013 U.S. Dist. LEXIS 140322 (E.D. Tex. Sept. 30, 2013) ................15

*Daubert v. Merrell Dow Pharms.*,
509 U.S. 579 (1993)..............................................................................................6, 10, 11, 14

*Delaronde v. Legend Classic Homes, Ltd.*,
716 Fed. Appx. 322 (5th Cir. 2018).......................................................................................7, 8

*Hanson v. Alpine Valley Ski Area, Inc.*,
718 F.2d 1075 (Fed. Cir. 1983).............................................................................................5, 6

*Highlands Ins. Co. v. National Union Fire Ins. Co.*,
27 F.3d 1027 (5th Cir. 1994) ...................................................................................................4

*Innovation Scis. LLC v. Amazon.com, Inc*.,
2021 WL 2075677, at *2 (E.D. Tex. May 24, 2021)...............................................................13

*Kanida v. Gulf Coast Medical Personnel LP*,
363 F.3d 568 (5th Cir. 2004) ...............................................................................................8, 9

*Laxton v. Gap Inc.*,
333 F.3d 572 (5th Cir. 2003) ...................................................................................................1

*Metaswitch Networks Ltd. v. Genband US LLC*,
No. 2:14-cv-00744, 2017 U.S. Dist. LEXIS 137926 (E.D. Tex. Aug. 28, 2017)......................1

*Mobile Equity Corp. v. Walmart Inc.*,
No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 175050 (E.D. Tex., Sept. 27,
2022) ................................................................................................................................5, 6

*Personal Audio, LLC v. Apple*,
2011 U.S. Dist. LEXIS 83746 (E.D. Tex. July 29, 2011)........................................................3

*Powell v. Home Depot U.S.A., Inc.*,
663 F.3d 1221 (Fed. Cir. 2011)...........................................................................................5, 6

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
849 F.3d 1360 (Fed. Cir. 2017)...........................................................................................5, 6

*Rembrandt Wireless Techs., LP v. Samsung Elecs., Co., Ltd.*,
2016 U.S. Dist. LEXIS 10590 (E.D. Tex. Jan. 26, 2019).....................................................11

*Russell v. Plano Bank & Trust*,
130 F.3d 715 (5th Cir. 1997) ...........................................................................................2, 3, 4

*Seibert v. Jackson Cnty.*,
851 F.3d 430 (5th Cir. 2017) ...................................................................................................8

*Smith v. Transworld Drilling Co.*,
773 F.2d 610 (5th Cir. 1985) ...................................................................................................1

*Stickle v. Heublein, Inc.*,
716 F.2d 1550 (Fed. Cir. 1983)...........................................................................................6, 7

*Symbol Techs., Inc. v. Opticon, Inc.*,
935 F.2d 1569 (Fed. Cir. 1991)..............................................................................................15

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
No. 2:21-cv-00246-JRG, Dkt. 435 (E.D. Tex. Mar. 13, 2023)...............................................11

*United States v. McClatchy*,
249 F.3d 348 (5th Cir. 2001) ...................................................................................................8

*Versata Software, Inc. v. SAP Am., Inc.*,
717 F.3d 1255 (Fed. Cir. 2013).......................................................................................10, 14

*West v. Perry*,
2009 U.S. Dist. LEXIS 63422 (E.D. Tex. July 23, 2009).....................................................2, 3

**RULES**

Fed. R. Civ. P. 61 .....................................................................................................................1

Fed. R. Civ. P. 51 ...............................................................................................................2, 3, 4

Fed. R. Evid. 702 ................................................................................................................6

Local Rule CV-5(a)..........................................................................................................19

Local Rule CV-5(a)(7).....................................................................................................19

Local Rule CV-7(a)............................................................................................................1

**STATUTES**

35 U.S.C. § 284.................................................................................................................6

███████████████████████████

TQ Delta's Motion for a New Trial on Damages and the Validity of U.S. Patent No. 8,462,835 and TQ Delta's Conditional Motion for a New Trial on Additional Damages for Infringement of U.S. Patent Nos. 8,462,835, 9,090,008, and 7,570,686 (Dkt. 538, "Mot.") should be denied. Both motions[1] lack merit and should be rejected.

## I.  LEGAL STANDARD

"[C]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-00744, 2017 U.S. Dist. LEXIS 137926, at *8 (E.D. Tex. Aug. 28, 2017). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985); *see also Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003). Furthermore, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . . [T]he court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61.

## II.  ARGUMENT

### A.  The Court Did Not Err by Giving the Cost Savings Instruction

The Court instructed the jury:

> The parties have put on evidence of two different damages models in this case, and you may use either method to calculate reasonable royalty damages. TQ Delta, the Plaintiff, has proposed a cost-savings model of calculating reasonable royalty damages that values the accused products that CommScope, the Defendant, provides to its customers. This approach relies upon estimated costs, if any, that CommScope saved from making, using or selling the accused

---

[1] TQ Delta includes multiple motions in a single document, contrary to L.R. CV-7(a).

1

products. In considering the amount of reasonable royalty damages under this cost-saving model, you should focus on whether CommScope's make, use, or sale of the patented technology allowed it to avoid taking a different, more costly course of action, and if so, how much CommScope saved by using the accused products instead of taking the more costly course of action.

Dkt. 534 at 59:14–60:4 (hereafter "the Cost Savings Instruction").

Despite the Court's instruction that TQ Delta proposed a cost-savings model for determining a reasonable royalty, TQ Delta now claims it is entitled to a new trial on damages because the "the Court committed prejudicial error by erroneously instructing the jury that TQD's model relied on CommScope's cost-savings." Mot. at 6. A party seeking to alter a judgment based on erroneous jury instructions must establish that (1) it made a proper and timely objection to the jury instructions, (2) those instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) it requested alternative instructions that would have remedied the error. *See Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1281 (Fed. Cir. 2000) (internal citations omitted). But when a party has failed to raise the objection before the district court, review is limited to "plain error" review. *Russell v. Plano Bank & Trust*, 130 F.3d 715, 721 (5th Cir. 1997); *West v. Perry*, 2009 U.S. Dist. LEXIS 63422, at *5 (E.D. Tex. July 23, 2009). Because TQ Delta failed to sufficiently state the reasons for its objection and because the Court's Cost Savings Instruction was not legally erroneous, TQ Delta's motion should be denied.

### 1.      TQ Delta Failed to Properly Raise Its Objection

As an initial matter, TQ Delta failed to properly raise its objection to the Court's Cost Savings Instruction. Under Fed. R. Civ. P. 51(c)(1), a party objecting to a jury instruction must "stat[e] distinctly the matter objected to and the grounds for the objection." According to Fifth Circuit law, "a party satisfies Rule 51 by specifically objecting to an instruction prior to the jury's deliberation and ***stating the reason for its objection***." *Advanced Display*, 212 F.3d at 1282

(applying 5th Circuit law on Rule 51)[2]; *see also Personal Audio, LLC v. Apple*, 2011 U.S. Dist. LEXIS 83746, at *17–18 (E.D. Tex. July 29, 2011). "A party does not satisfy this rule by merely submitting to the court a proposed instruction that differs from the instruction ultimately given to the jury." *See Russell*, 130 F.3d at 719; *West*, 2009 U.S. Dist. LEXIS 63422, at *28–29 n.10 ("[A]lthough West proposed a jury instruction . . ., this does not preserve error because such a proposal is non-specific.").

TQ Delta's objection at trial is reproduced below:

> **THE COURT:** Let's turn next to page 25. Are there objections here?
>
> **MR. FINK:** Yes, Your Honor. From the Plaintiff, for the first paragraph and the second sentence that begins, This approach relies upon the estimated costs, Plaintiff objects to the language in the sentence and the following sentence and would propose that the language be changed in the second sentence to, This approach relies upon estimated costs, if any, that the making, using, or selling of the accused products save.
>
> And the following sentence, Plaintiff would change the language to, In considering the amount of reasonable royalty damages under the cost savings model, you should focus on whether CommScope's making, using, or selling of the patented technology avoided taking a different, more costly course of action. And the rest of the sentence would stay the same.
>
> So essentially that's for the second sentence striking the 'allowed it to' language and changing 'avoid' to 'avoided'.

Trial Tr. Vol 6 at 10:14–11:6.

TQ Delta's "objection" to the Court's Cost Savings Instruction does not constitute a distinct statement of the grounds for its objection. Instead, TQ Delta simply proposed an alternative instruction, which is insufficient. *Russell*, 130 F.3d at 719. If TQ Delta believed that there was some specific error in the Court's construction, it was required by the plain language of Rule 51 to identify it. The purpose of the requirement for specifically identifying the grounds for the

---

[2] All emphasis added unless otherwise noted.

objection is at least twofold: to provide the Court with an opportunity to fix an erroneous instruction and to prevent a party from making a vague objection that will later allow it to make post hoc arguments at JMOL and on appeal after the jury has returned a disappointing verdict. TQ Delta elected not to apprise the Court of its specific concern with the challenged instruction, and thus did not abide by Rule 51(c). Review of the jury instruction, therefore, is limited by Rule 51 to the exceedingly high "plain error" standard.

Rule 51(d)(2) provides a Court with discretion to review a jury instruction for plain error where the objecting party failed to properly preserve the objection: a "court *may* consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." The requirements of plain error are exacting, and the plain error exception is a narrow one that applies only where "the error is so fundamental as to result in a miscarriage of justice." *Russell*, 130 F.3d at 719. In order to prevail under this level of scrutiny, TQ Delta must show: "(1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Highlands Ins. Co. v. National Union Fire Ins. Co.*, 27 F.3d 1027, 1032 (5th Cir. 1994)).

While TQ Delta acknowledges the possibility of plain error review in its Motion (and recites the elements of the test in a footnote), TQ Delta made no effort to explain how the plain error standard is met. *See* Mot. at 10 n.4. TQ Delta failed to provide any analysis under that higher standard of review by failing to state how the alleged error is clear and obvious, which substantial rights are allegedly affected, or how the alleged error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Russell*, 130 F.3d at 719. TQ Delta made no effort to explain how the arguments it set forth with respect to the lower abuse of discretion standard satisfy the higher plain error standard. Facts that demonstrate plain error may (arguably) satisfy lower

standards of review, but facts that satisfy a lower standard of review do **not** necessarily satisfy the plain error standard of review. TQ Delta, however, made no attempt to demonstrate plain error and thus waived its ability to argue it. In any event, as explained in detail below, the Court's Cost Savings Instruction is not an error warranting a new trial under any applicable standard.

### 2.    The Cost Savings Instruction Is a Correct Statement of the Law

"Reliance upon estimated cost savings from use of the infringing product is a well settled method of determining a reasonable royalty." *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1080–81 (Fed. Cir. 1983). Under this approach, the price for a hypothetical license between a willing licensor and a willing licensee may be based on the potential infringer's cost savings. *See Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1375–76 (Fed. Cir. 2017) (affirming damages based on "evidence that a reasonable royalty would reflect [defendant] Sprint's willingness, in a hypothetical negotiation, to pay an amount calculated by reference to the costs that Sprint . . . would have incurred if it had chosen not to infringe"); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240–41 (Fed. Cir. 2011) (holding that "evidence of cost savings that [the willing licensee] Home Depot could expect to achieve by reducing claims from employee accidents while using radial arm saws" supported jury's damages award); *see also Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 771–72 (Fed. Cir. 2014) (noting that information about cost savings may be used to inform the economic value of patented technology during a hypothetical negotiation); *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 175050, at *8–9 (E.D. Tex., Sept. 27, 2022) (allowing patent owner to present expert testimony on a hypothetical negotiation based on cost savings to defendant).

The Court did not err by instructing the jury that TQ Delta proposed a cost-savings approach as its damages model. Consistent with long-standing legal precedent, the Court instructed the jury that the cost-savings model focuses upon "the estimated costs, if any, that CommScope

[*i.e.*, the accused infringer and willing licensee] saved from making, using or selling the accused products." Dkt. 532 at 59:20–22. This is an accurate statement of law, as evidenced by the litany of cases cited above, and thus did not constitute legal error.[3]

TQ Delta's claim that "there is no requirement that a cost-savings model be based on the cost-savings of the defendant" flies in the face of Federal Circuit precedent, which makes clear that a cost-savings model is based on the cost savings to the defendant acting as a willing licensee in a hypothetical negotiation. *Hanson*, 718 F.2d at 1079[4]; *Prism Techs.*, 849 F.3d at 1375–76; *Powell*, 663 F.3d at 1240–41; *Aqua Shield*, 774 F.3d at 771–72; *Mobile Equity Corp.*, 2022 U.S. Dist. LEXIS 175050 at *8–9. This makes sense as 35 U.S.C. § 284 requires that a damages award be "adequate to compensate for infringement, but in no event less than a reasonable royalty ***for use made of the invention by the infringer***."

TQ Delta's argument that the Court's Cost Savings Instruction is erroneous because the law of exhaustion prohibits TQ Delta from recovering from CommScope as well as CommScope's customers (service providers such as AT&T) and CommScope's chip supplier (Broadcom) is without merit. ***TQ Delta chose to sue CommScope, <u>not</u> AT&T or Broadcom***, for patent infringement, and to the extent TQ Delta now regrets its decision, that is a problem of TQ Delta's own making. In support of its argument, TQ Delta quotes from *Stickle v. Heublein, Inc.*, arguing that it can base its recovery on the cost savings of end users because "the quantum of [a patent

---

[3] While it is true that the Court previously denied-in-part CommScope's motion to exclude Dr. Putnam's damages testimony, the purpose of the Court's role as gatekeeper is to ensure that a proposed expert's testimony is ***sufficiently reliable and relevant to the issues at hand***. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). The Court has not previously ruled on whether Dr. Putnam's cost savings approach was "rooted in law," and the denial of a motion to exclude does not predetermine the jury instructions in a case. *See* Mot. at 9.

[4] It speaks volumes that *Hanson*, the sole case TQ Delta cites in support of its cost savings model, focused on the ***cost savings to the defendant acting as a willing licensee***. *Hanson*, 718 F.2d at 1079.

owner's] recovery for an infringing fryer does not depend on whether [the user] or [the maker/seller] is the defendant." Mot. at 8 (citing 716 F.2d 1550, 1562 (Fed. Cir. 1983)). But *Stickle* does not say that damages may be based on the cost savings to an accused infringer's downstream customers, and the case is easily distinguishable. First, Stickle sued the user of the infringing products for patent infringement and sought a use-based royalty based off ***the accused infringer's use***. And second, the Federal Circuit's holding in *Stickle* was highly fact specific and does not apply to this case. *Stickle*, 716 F.2d at 1562. As such, *Stickle* does not endorse TQ Delta's damages model or stand for the general proposition that a cost-savings approach may be based on the cost savings to a third-party downstream user, as opposed to an accused user like in *Stickle*.

TQ Delta fails to cite a single case establishing that the cost savings to *a third party* to the hypothetical negotiation may form the basis of a reasonable royalty calculation or that the Court was required to instruct the jury about the factual nuances of TQ Delta's unconventional cost-savings approach. Without any authority establishing (much less mandating) TQ Delta's approach, the Court did not legally err in giving the Cost Savings Instruction. Certainly, there is no error warranting a new trial.

### 3.     The Cost Savings Instruction Had No Prejudicial Effect on TQ Delta

The Court's Cost Savings Instruction did not cause TQ Delta substantial prejudice. The Court instructed the jury that TQ Delta employed a cost-savings model while CommScope opted for the traditional hypothetical negotiation approach, and the Court explained that the jury "may use either method to calculate reasonable royalty damages." Dkt. 532 at 59:14–60:11. The Court's instruction did not, as TQ Delta suggests, "[tell] the jury to disregard Dr. Putnam's damages model." Mot. at 9. Rather, the Court accurately recited the applicable law and, as noted, expressly told the jury that it "may use either [party's] method." Dkt. 532 at 59:14–60:11. Because the Court properly instructed the jury on the controlling law regarding the cost-savings approach and

apprised the jury that TQ Delta employed that approach, TQ Delta was not prevented in its ability to present its arguments. *See Delaronde v. Legend Classic Homes, Ltd.*, 716 Fed. Appx. 322, 327 (5th Cir. 2018) ("When a jury is properly instructed regarding the controlling law and counsel is able to present the jury with inferences it was permitted to make from the evidence, this court cannot conclude a party was seriously impaired in presenting its claim."). Also, a new trial is not warranted merely because an "instruction was not as clear as it could have been." *Seibert v. Jackson Cnty.*, 851 F.3d 430, 439 (5th Cir. 2017); *see also Delaronde*, 716 Fed. Appx. at 327 (finding that the Court did not misstate the law by failing to get "into the weeds" of a jury charge).

Moreover, the jury awarded TQ Delta over $11 million in damages, a number ***between*** TQ Delta's and CommScope's proposed damages numbers. The jury was apprised of the two different methods the parties employed and the controlling law, and the jury was free to make its own findings based on the credibility of the parties' different methodologies and reach its own conclusions based on the extensive testimony and evidence regarding damages presented at trial. The fact that the jury may not have weighed the evidence as TQ Delta wished, rejecting TQ Delta's proposed damages number, does not mean that the Court's Cost Savings Instruction caused TQ Delta any prejudice, much less substantial prejudice.

### 4.    The Court Was Not Required to Give TQ Delta's Proposed Alternative Instruction

The Court similarly did not err by declining to "genericize[] who benefits from the cost savings." Mot. at 3. A district court is given "substantial latitude in crafting jury instructions," and the Court's "refusal to give a requested jury instruction constitutes reversible error 'only if the instruction 1) was a substantially correct statement of law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the [party's] ability to present a given [claim].'" *Kanida v.*

*Gulf Coast Medical Personnel LP*, 363 F.3d 568, 578 (5th Cir. 2004) (alterations in original) (quoting *United States v. McClatchy*, 249 F.3d 348, 356 (5th Cir. 2001)). TQ Delta's proposed instruction could not plausibly be a "substantially correct statement of law" because the law is clear that the cost-savings approach, and damages in general, must be based on the use made by CommScope—the accused infringer and hypothetical willing licensee. Moreover, given that the Court instructed the jury that TQ Delta's damages model employed a cost-savings approach and that the jury was free to use TQ Delta's methodology, TQ Delta's damages model was covered in the charge as a whole and the charge did not "seriously impair[]" TQ Delta's ability to present its damages claim. *Kanida*, 363 F.3d at 578.

Even if it were viable to name CommScope's customers as a hypothetical licensee, TQ Delta did not present any evidence that CommScope's customers were the hypothetical licensee. *See* Dkt. 532 at 70:17–23 ("Q: So one side [in a hypothetical negotiation] would sit 2Wire and CommScope. Right? Dr. Putnam: Yes."). In fact, Dr. Putnam did not offer any affirmative testimony regarding the hypothetical negotiation. *Id.* 64:10–65:18 ("Q: So did you perform a hypothetical negotiation or did you not? Dr. Putnam: I did do that as part of the analysis. ***I didn't present that analysis today***."). Because no such evidence was presented, the Court had no obligation to give TQ Delta's proposed instruction, and TQ Delta's claim was not impaired by the instructions given.

### B.    The Court Did Not Err by Allowing Dr. Becker's Testimony

TQ Delta claims that Dr. Becker's opinion that "a royalty should be based on the price of only the DSL chip" was improper and prejudicial because Dr. Becker allegedly based his testimony on the DSL chipset being the smallest salable patent practicing unit ("SSPPU"). Mot. at 10–11. But this was not the basis for Dr. Becker's opinion. Rather, Dr. Becker based his damages analysis on the license agreements Aware executed around the hypothetical negotiation date, which

9

established that Aware had a practice of licensing on a chipset basis. These agreements formed the basis of Dr. Becker's opinions and were completely independent of his SSPPU analysis. While Dr. Becker conducted an SSPPU analysis *in addition* to his analysis regarding the Aware comparable licenses, both analyses stand on their own (as explained in more detail below), which is why his ultimate opinion did not hinge on an SSPPU analysis. Accordingly, TQ Delta's attempt to re-write Dr. Becker's opinions should be rejected, and TQ Delta's Motion should be denied.

### 1.   Dr. Becker's Opinion Was Based on Aware's Comparable Licenses

Dr. Becker presented a comparable license approach based on Aware's licenses with ██████████. *See* Dkt. 533 at 81:16–83:2, 87:10–88:8. Dr. Becker explained that Aware's license agreement with ████████████████ and the agreement with ████████ ████████████. *Id.* at 82:10–83:2, 86:7–11, 92:25–93:13. These were the closest Aware agreements to the hypothetical negotiation date and provided clear evidence of what Aware was willing to agree to at the November 2008 hypothetical negotiation. *Id.* These licenses covered DSL chipsets, and the agreements contemplated that these chipsets would be integrated in customer premises equipment. *Id.* at 89:17–24, 91:9–92:3, 93:7–11. From there, Dr. Becker testified that he relied on Dr. Ransom for technical comparability, who concluded that the ████████ chips were technically comparable to the accused Broadcom chipset. *Id.* at 87:10–88:8. In view of these facts, Dr. Becker used the Aware agreements as the basis for his reasonable royalty. *Id.* at 96:23–97:10. Those opinions stood independently of any SSPPU analysis.

### 2.   TQ Delta's Attacks on Dr. Becker's SSPPU Analysis Are Baseless

Even as to Dr. Becker's opinions that addressed the SSPPU, TQ Delta's attacks on the analysis are merely repackaged *Daubert* arguments that should be rejected yet again. *See* Dkt. No. 452 (denying TQ Delta's Motion);  Dkt. No. 493 at 141:27–142:8 ("I am going to deny the Plaintiff's Motion. I think there's enough in the record to make it clear that [the DSL chipset] is

probably what is the SSPPU."). It is improper to use a motion for new trial as a renewed *Daubert* challenge. *See Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013) (holding that questions regarding the admissibility of allegedly flawed expert testimony should be raised under the Federal Rules of Evidence and through a *Daubert* context). The Court already considered and rejected TQ Delta's attack on Dr. Becker's SSPPU analysis during the *Daubert* stage. *See* Dkt. No. 496 at 5; *see also* Dkt. No. 493 at 141:27–142:8; Dkt. No. 482 at 3. Thus, TQ Delta's arguments related to the reliability of Dr. Becker's opinions regarding the SSPPU should be rejected on the same grounds. *See United Servs. Auto. Ass'n v. PNC Bank N.A.,* No. 2:21-cv-00246-JRG, Dkt. 435 (E.D. Tex. Mar. 13, 2023) (citing *Rembrandt Wireless Techs., LP v. Samsung Elecs., Co., Ltd.*, 2016 U.S. Dist. LEXIS 10590, *11–12 (E.D. Tex. Jan. 26, 2019)).

And even if the Court were to reconsider TQ Delta's arguments, those arguments are meritless. First, TQ Delta asserts that "the jury was not presented with any testimony or evidence" that supports Dr. Becker's analysis that the DSL chipset is the SSPPU. That argument is incorrect. TQ Delta's own experts consistently referred to the DSL chipset as the portion of the DSL modem that performs the accused DSL functionality. *See, e.g.*, Dkt. 528 at 201:11–202:7; Dkt. 530 at 27:13–18, 112:16–23, 143:25–146:7, 158:16–160:13. Moreover, CommScope's experts Dr. Cimini and Dr. Ransom both unequivocally testified that TQ Delta's technical experts pointed solely to functionality found within the Broadcom chipset in connection with those technical experts' opinions regarding alleged infringement. *See* Dkt. 532 at 154:7–155:4, 155:5–20, 233:22–234:20. Thus, CommScope's technical experts testified at trial about the very information that Dr. Becker explained he had confirmed with them during expert discovery. *See* Dkt. 533 at 142:14–25; *see also* Dkt. 382 at 5.  TQ Delta was free to cross-examine CommScope's experts on this issue.

Second, when TQ Delta asked Dr. Becker about his opinions during cross-examination, he

fully explained the methodology he employed to determine the SSPPU. Specifically, Dr. Becker testified that he had discussed with CommScope's technical experts that the inventive elements of what TQ Delta alleged practice the patent were found within the Broadcom chipset. *See* Dkt. 533 at 142:14–25. It is undisputed that Dr. Becker was permitted to gain that understanding through discussions with technical experts, who later testified about the same information at trial. *See, e.g.*, *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, No. 2:22-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 193340, at \*7–9 (E.D. Tex. Oct. 24, 2022) (permitting defendant's damages expert to rely on conversations with technical expert to form damages-related opinions); *Apple Inc. v. Motorola, Inc.*, 757 F. 3d 1286 (Fed Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field.").[5] Dr. Becker further explained why he disagreed with Dr. Putnam's opinion that it would be appropriate to use the full sales price of the accused CPE modems. Dkt. 533 at 145:2–147:6. Dr. Becker explained that the CPE modems provide functionality beyond DSL, including Wi-Fi, ethernet, and fiber services. *Id.* at 145:2–147:4. He additionally testified that the CPE modems contain significant features and functions that are unrelated to the asserted patents and DSL functionality. *Id.* at 147:2–6. As a result of the evidence and his analysis, Dr. Becker properly concluded that the DSL chipsets found in the accused CPE products were the appropriate SSPPU.

Nevertheless, Dr. Becker explained on cross-examination that whether or not the Broadcom chipset is the smallest saleable patent-practicing unit ***did not affect his conclusions*** or

---

[5] TQ Delta's cited case law does not support the opposite conclusion. *See* Mot. at 10–11. Each of TQ Delta's cited cases precluded an expert from testifying based on theories or information learned from another expert where the information learned was not disclosed in the consulted expert's report. Here, by comparison, both parties' technical experts explained in their expert reports that the accused functionality was found in the Broadcom chipset and similarly testified to that effect, and Dr. Becker was permitted to rely on that information to discern that the Broadcom chipset constitutes the SSPPU. *See* Dkt. No. 493 at 141:16–142:8.

change the methodology he presented to the jury. *See, e.g.*, *id.* at 144:15–23 ("Q. … Whether or not the chip, the semiconductor chip, is the smallest saleable patent-practicing unit, does that affect your conclusions and analysis in this case in any way or change what you've told the jury? A. No."). As explained above, Dr. Becker determined that the appropriate unit to license was the DSL chipset, which came from Aware's own license agreements. Thus, he did not even need to testify about or rely on the SSPPU, but he decided to speak with CommScope's experts to determine the accurate SSPPU anyway. *Id.* at 144:19–5; *see also id.* at 87:10–88:3, 89:25–90:7.

### 3.    TQ Delta Has Not Been Prejudiced

Despite ample evidence and testimony presented at trial, TQ Delta now argues that Dr. Becker "rel[ied] on a black box of undisclosed and unexplained opinions."  Mot. at 11. But TQ Delta's claim could not be further from the truth and is divorced from the record at hand. Dr. Becker's testimony did not hinge on the SSPPU, and even if it had, as a damages expert he was entitled to rely on his understanding of the information from the technical experts to conclude that the SSPPU associated with the accused products is no broader than the chipset that includes the accused DSL functionality.

Moreover, as the Court noted in denying TQ Delta's original motion to strike Dr. Becker's opinions related to the SSPPU, any prejudice was the fault of TQ Delta alone, not CommScope. *See* Dkt. No. 493 at 142:2–8. Also, TQ Delta had the opportunity to cross-examine CommScope's technical witnesses and Dr. Becker at trial about the substance of their conversations, but TQ Delta chose not to. The jury was tasked with "[w]eighing the … evidence and the inferences to be drawn from that evidence[] and determining the relative credibility of the witness[es]." *Innovation Scis. LLC v. Amazon.com*, Inc., 2021 WL 2075677, at *2 (E.D. Tex. May 24, 2021). The fact that the jury may have ultimately sided with Dr. Becker or given credence to his testimony does not warrant a new trial on damages.

13

## C.     TQ Delta's Motion for a New Trial Regarding the Validity of the 835 Patent Should Be Denied

TQ Delta's motion for a new trial regarding the validity of the 835 Patent again comprises repurposed *Daubert* arguments—this time regarding certain excluded opinions of Dr. Madisetti. *See* Dkt. 496. *Daubert* arguments under the guise of a motion for a new trial are inappropriate. *See Versata Software,* 717 F.3d at 1264. (post-trial briefing is not the appropriate context for renewing *Daubert* arguments). For that reason alone, TQ Delta's motion should be denied.

Even if the Court were to consider TQ Delta's arguments, they should be rejected. As this Court properly held, the stricken portions of Dr. Madisetti's rebuttal expert report "conflicted with the Court's claim construction." Dkt. 496 at 4. In particular, in those stricken paragraphs, Dr. Madisetti provided his own construction for the term "flag signal," stating that it was his "opinion that a flag signal is required to be a flag signal that has ***no information***." *See* Dkt. 342 at 1 (quoting Dkt. 342-3 at ¶ 71). This opinion tracked TQ Delta's rejected proposed construction for the term "flag signal." *Compare* Dkt. 169 at 87, 90 *with id.* at 91. In the stricken paragraphs, Dr. Madisetti used ***his own*** claim construction as a basis to distinguish the prior art. *See, e.g.*, Dkt. 342-3 at ¶ 72. Because these opinions contradicted the Court's claim construction order, they were properly excluded. *See* Dkt. 496 at 4. Moreover, the Court's exclusion of four paragraphs from Dr. Madisetti's report (conflicting with the Court's claim construction) is not prejudicial in any respect, much less prejudicial as to TQ Delta's substantial rights. First, even after the Court's ruling, Dr. Madisetti was free to and in fact did offer an opinion at trial that the "flag signal" limitation as construed by the Court was not met by the prior art. *See* Dkt. 533 at 168:8–19. Thus, despite certain opinions being stricken from his report, Dr. Madisetti was still permitted to (and did) offer a different opinion regarding why the prior art allegedly did not meet the claimed "flag signal" limitation as construed.

14

Further, TQ Delta was entitled to and did cross-examine Mr. McNair on his opinions regarding how the prior art meets the claimed limitations as construed. *See generally* Dkt. 532 at 317:20–326:20. To the extent TQ Delta believed that the prior art did not meet the claimed "flag signal" limitation, TQ Delta could have addressed that issue during its cross-examination of Mr. McNair. *Cardsoft, Inc. v. Verifone Holdings, Inc.*, No. 2:08-cv-98-RSP, 2013 U.S. Dist. LEXIS 140322 at *17–18 (E.D. Tex. Sept. 30, 2013) ("[Defendant] did not cross-examine him on the basis for his opinion, and therefore the jury was free to accept or reject this opinion evidence.") (citing *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1576 (Fed. Cir. 1991)).

Finally, TQ Delta's motion and Dr. Madisetti's stricken opinions relate to only one of the prior art references that CommScope presented for the 835 patent, the ADSL standard (Tr. Ex. 48). But Mr. McNair ***also*** opined that the claimed flag signal was found in a second reference, the Texas Instruments contribution (SC-060, Tr. Ex. 57). *See* Dkt. 532 at 311:18–22, 327:10–14. Accordingly, TQ Delta was not prejudiced where the jury properly weighed the evidence regarding how the prior art discloses and renders obvious the claimed "flag signal." Because there was no prejudicial error in excluding Dr. Madisetti's opinions, TQ Delta's Motion should be denied.

## III.   CONCLUSION

For the reasons described above, CommScope respectfully requests that the Court deny TQ Delta's Motion for a New Trial on Damages and the Validity of U.S. Patent No. 8,462,835 and TQ Delta's Conditional Motion for a New Trial on Additional Damages for Infringement of U.S. Patent Nos. 8,462,835, 9,090,008, and 7,570,686.[6]

---

[6] Plaintiff's Conditional Motion for a New Trial on Additional Damages is based on its motions for JMOL and its motion for a new trial on validity of the 835 Patent. CommScope incorporates its response to each of TQ Delta's motions as set forth fully herein. As CommScope explained in its Response to these respective motions, TQ Delta's motions should be denied, and thus no new trial on additional damages should be held.

Dated this 15th day of June, 2023          Respectfully submitted,

By: */s/ Ross R. Barton*
Ross R. Barton (NC Bar No. 37179)
M. Scott Stevens (NC Bar No. 37828)
Kirk T. Bradley (NC Bar No. 26490)
Stephen R. Lareau (NC Bar No. 42992)
Karlee N. Wroblewski (NC Bar No. 55043)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
Mary I. Riolo (NC Bar No. 59644)
ALSTON & BIRD LLP
1120 S. Tryon Street, Suite 300
Charlotte, NC 28283-6818
Email: ross.barton@alston.com
          scott.stevens@alston.com
          kirk.bradley@alston.com
          stephen.lareau@alston.com
          karlee.wroblewski@alston.com
          nic.marais@alston.com
          erin.beaton@alston.com
          mary.riolo@alston.com
Telephone: 704-444-1000
Facsimile: 704-444-1111

Michael C. Deane (GA Bar No. 498195)
Katherine M. Donald (GA Bar No. 753449)
ALSTON & BIRD LLP
1201 West Peachtree St. Suite 4900
Atlanta, GA 30309
Email: michael.deane@alston.com
katie.donald@alston.com
Telephone: 404-881-7000
Facsimile: 404-881-7777

Katherine G. Rubschlager (Cal. Bar No. 328100)
ALSTON & BIRD LLP
560 Mission Street, Suite 2100
San Francisco, CA 94105
Email: katherine.rubschlager@alston.com
Telephone: 650-838-2004
Facsimile: 650-838-2001

Darlena Subashi (NY Bar No. 5780747)

16

ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444

Deron R. Dacus (TX Bar No. 00790553)
THE DACUS FIRM
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543 (fax)
E-Mail: ddacus@dacusfirm.com

Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
102 N. College Ave, Ste. 900
Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Lana S. Shiferman
Christie Larochelle
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
P: (617) 570-1000
F: (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com
clarochelle@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P: (415) 733-6000
F: (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Attorneys for Defendants
CommScope Holding Company, Inc,
CommScope Inc., ARRIS US Holdings, Inc.,
ARRIS Solutions, Inc., ARRIS Technology,
Inc., and ARRIS Enterprises, LLC

*Counsel for Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel on June 15, 2023.

/s/ *Ross R. Barton*
Ross R. Barton