# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TQ DELTA, LLC,<br><br>      *Plaintiff*,<br><br>v.<br><br>COMMSCOPE HOLDING COMPANY, INC., COMMSCOPE, INC., ARRIS US HOLDINGS, INC., ARRIS SOLUTIONS, INC., ARRIS TECHNOLOGY, INC., and ARRIS ENTERPRISES, LLC,<br><br>      *Defendants*. | Civil Action No.: 2:21-cv-310 |

## COMMSCOPE'S RESPONSE TO TQ DELTA'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON NONINFRINGEMENT OF CLAIM 14 OF THE '008 PATENT, AND ALTERNATIVE MOTION FOR A NEW TRIAL (DKT. 539)

## **TABLE OF CONTENTS**

                                                                                                                                   **Page**

I. INTRODUCTION ...........................................................................................................................1

II. LEGAL STANDARD.....................................................................................................................1

III. ARGUMENT..................................................................................................................................2

        A. The Jury Properly Found That CommScope Does Not Infringe Claim 14 of the '008 Patent ..................................................................................................2

                1. Dr. Madisetti Failed to Prove That the VDSL2 Standard Computed a Phase Shift for Each Carrier Signal ............................................................3

                2. TQ Delta Failed to Show That the Phase Shift Computed for Each Respective Carrier Signal Was Combined with the Phase Characteristic of That Carrier Signal ............................................................6

                3. TQ Delta Failed to Meet Its Burden of Persuasion....................................7

        B. CommScope Always Maintained That the Question of Infringement Was a Jury Decision .................................................................................................8

                1. CommScope Consistently Argued That the '008 Patent Was Not Infringed......................................................................................................8

                2. TQ Delta Ignores the Context of the Court's Instruction ..........................10

        C. TQ Delta's Motion Is Full of New Attorney Arguments.......................................10

        D. Because the Jury Properly Found That the Accused Products Do Not Infringe the Asserted Claim of the '008 patent, the Court Should Deny TQ Delta's Motion for a New Trial on Infringement..................................................11

IV. CONCLUSION.............................................................................................................................12

███████████████████████████

## **TABLE OF EXHIBITS**

| Exhibit No. | Description |
|:---:|---|
| A | Email from Mr. Wilson to Mr. Clark, Mr. Huguenard, and Ms. Jackson, dated March 22, 2023 |
| B | Email and attachment from Mr. Wilson to Mr. Clark, Mr. Huguenard, and Ms. Jackson, dated March 22, 2023 |
| C | Email and attachment from Mr. Wilson to Mr. Clark, Mr. Huguenard, and Ms. Jackson, dated March 23, 2023 |
| D | Dr. Vijay K. Madisetti Demonstratives (PDX.Madisetti) |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Alpha Chi Omega*,
  708 F.3d 614 (5th Cir. 2013) ...................................................................................................1

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018)................................................................................................2

*Finisar Corp. v. DirecTV Grp., Inc.*,
  523 F.3d 1323 (Fed. Cir. 2008)................................................................................................2

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010)............................................................................................2, 3

*Godo Kaisha IP Bridge 1 v. TCL Commun. Tech. Holdings Ltd.*,
  967 F.3d 1380 (Fed. Cir. 2020)................................................................................................8

*Jurgens v. McKasy*,
  927 F.2d 1552 (Fed. Cir. 1991)................................................................................................2

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
  688 F.3d 1342 (Fed. Cir. 2012)............................................................................................1, 2

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
  134 S. Ct. 843 (2014)...............................................................................................................7

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020)................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 50(b) ....................................................................................................................11

## I. INTRODUCTION

TQ Delta's Motion for Judgment as a Matter of Law or in the Alternative a Motion for a New Trial (Dkt. 539) ("Motion") boils down to three arguments: (1) "CommScope's only rebuttal was directed to an aspect of the VDSL2 standard that is irrelevant to any element of claim 14" (*id.* at 1); (2) CommScope's expert, Dr. Cimini, "confirmed Dr. Madisetti's analysis" (*id.* at 3-4); and (3) the Court's jury instructions said that the parties stipulated to the essentiality of the '008 patent (*id.* at 4). The jury saw through TQ Delta's arguments, and the Court should too.

As discussed below, (1) CommScope successfully rebutted an important aspect of claim elements 14[b] and 14[c], (2) TQ Delta misconstrues Dr. Cimini's testimony and ignores the fact that his trial testimony had occurred a week before trial (to accommodate a medical condition), and (3) the "stipulation" in the Court's jury instructions addressed which patents were RAND-encumbered by virtue of TQ Delta's and Aware's representations; it was not a stipulation of infringement as TQ Delta now argues. Accordingly, the Court should deny TQ Delta's Motion.

## II. LEGAL STANDARD

Judgment as a matter of law ("JMOL") "may be granted by the trial court only if 'the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict . . . . On the other hand, if there is substantial evidence opposed to the [grant of JMOL] . . . [it] should be denied.'" *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1356 (Fed. Cir. 2012) (quoting *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 624 (5th Cir. 2008)). "Judgment as a matter of law is proper when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)). Consideration is given to "all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to

1

the non-moving party." *Kinetic Concepts,* 688 F.3d at 1356 (quoting *Brown v. Bryan County*, 219 F.3d 450, 456 (5th Cir. 2000)).

### III.     ARGUMENT

####     A.     The Jury Properly Found That CommScope Does Not Infringe Claim 14 of the '008 Patent

In a jury trial, the "judge decides issues of law and issues committed to his discretion, and the jury decides issues of fact that are material to the case and in genuine dispute." *Jurgens v. McKasy*, 927 F.2d 1552, 1557 (Fed. Cir. 1991). "Literal infringement is a question of fact, reviewed for substantial evidence when tried to a jury." *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). In evaluating the merits of a case, the jury is "not required 'to give full credit and acceptance to the testimony of [an expert]'" in the case. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2018).

As TQ Delta acknowledges, it must point to facts and inferences that "***so strongly and overwhelmingly***" point in its favor that the Court may set aside the jury's verdict. Br. at 2, 7, 14.[1] TQ Delta's first argument is that the jury was presented with "overwhelming evidence and testimony that each accused product 'operates in accordance with' the VDSL2 standard." *Id.* at 4-5. But TQ Delta relied on a variety of documents that, at a high level, merely state that the accused products supported the VDSL2 standard. *Id.* at 5-6. None of these documents addressed how the accused products actually worked. "[O]nly in the situation where a patent covers every possible implementation of a standard will it be enough to prove infringement by showing standard compliance." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010). Relying primarily on *Fujitsu*, TQ Delta ignores the fact that *Fujitsu* explicitly acknowledges that the "industry standard [may] not provide the level of specificity required to establish that practicing that standard

---

[1] All emphasis added unless otherwise noted.

2

would always result in infringement." *Id.* Here, Dr. Madisetti failed to prove that claim elements 14[b] and 14[c] correspond with either the VDSL2 standard (specifically with regard to Section 12.3.6.2 and Table 12-70 of the standard) or CommScope's products.

### 1. Dr. Madisetti Failed to Prove That the VDSL2 Standard Computed a Phase Shift for Each Carrier Signal

For element 14[b], the Court construed "phase characteristic(s)" as "one or more values that represent the language aspect of a constellation point." Dkt. 169 (Claim Construction Order) at 63. Dr. Madisetti's testimony acknowledged this Court's construction. Dkt. 530 (Trial Tr. Vol. 3) at 120:23-121:6. As shown below in Dr. Madisetti's demonstrative slide 49, each constellation point (i.e., "SOC Message bits") has a phase characteristic that is represented by an X, Y coordinate:



Ex. D at 49 (PDX.Madisetti.49); *see also* Dkt. 530 (Trial Tr. Vol. 3) at 118:19-119:3. And, as the Court's claim construction order points out, TQ Delta has always argued that the phase characteristics "referred to [] an '(X, Y) pair.'" Dkt. 169 (Claim Construction Order) at 61. This argument was accepted by the Court.

The Court also construed "computing a phase shift for each carrier signal" to mean "computing the amount by which a phase *is adjusted* for each carrier signal." *Id.* at 77. Thus, TQ Delta had to show for element 14[b] that each carrier signal is adjusted. For element 14[b],

3

Dr. Madisetti relied on Table 12-70 of the VDSL2 standard, which says that each "constellation point" or "phase characteristic" (i.e., the "X, Y" pair) "of each subcarrier shall be pseudo-randomly rotated by 0, π/2, π, or 3 π/2 depending on the value of a 2-bit pseudo-random number":[2]



Ex. D at 60 (PDX.Madisetti.60); *see also* Tr. Ex. 34 at TQD_TX00153996. Dr. Madisetti testified that the "first column represents the value shown in green, and you are computing based on that value an angle of rotation which is 0[,] 90, 180, or 270, shown in yellow." Dkt. 530 (Trial Tr. Vol. 3) at 126:3-15. The plain language of Section 12.3.6.2 of the VDSL2 standard states that "coordinates of the constellation point as shown in Table 12-70, where X and Y are the coordinates before scrambling." Tr. Ex. 34 at TQD_TX00153996. This means that the first row, which has a final coordinate of X, Y, has no "phase shift" computed. On cross-examination, Dr. Madisetti admitted that when a zero is added to any number, "the value is still the same, but you have done the addition, it doesn't change." Dkt. 530 (Trial Tr. Vol. 3) at 164:20-165:3. Claim element 14[b],

---

[2] TQ Delta apparently takes issue with CommScope's closing argument. *See* Br. at 13 n.2. But TQ Delta failed to object during closing and thus "forfeited a challenge by failing to object contemporaneously." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020) (discussing failure to object to a party's closing argument).

█████████████████████████████████████

in contrast, requires more than adding a zero angle of rotation and having the "exact same value"; claim 14[b] requires an adjustment in the final coordinates (i.e., phase characteristics).

Dr. Madisetti further relied on a "case statement" to "show" the source code, even though it was not the actual source code. *Id.* at 126:23-127:10; *see* Tr. Ex. 122 at BRCM_Code_0000374. The jury was entitled to discount that testimony. Regardless, the case statement below shows that █████████████████████████████████████████████████████████████████████████████████████████



Ex. D at 61 (PDX.Madisetti.61). Thus, even the case statement relied on by TQ Delta and Dr. Madisetti fails to show that the accused products meet claim element 14[b] because ██████ █████████████████████████████████████████

Dr. Madisetti also testified that the accused products worked in the same way that Table 12-70 describes:



5

Dkt. 530 (Trial Tr. Vol. 3) at 127:2-8. Dr. Madisetti addressed only that the input and output values for the carrier having the bit value ▇▇▇▇▇, which fails to show there was a computed phase shift. Dr. Madisetti also testified that ▇▇▇▇▇ ▇▇▇▇▇ *Id.* at 127:17-24. Dr. Madisetti's reliance on that confirmation supports the jury's finding of non-infringement, since element 14[b] requires computing a phase shift (i.e., an adjustment) for each carrier and since Section 12.3.6.2 does ***not*** compute a phase shift for the carrier having the bit value of 0, 0.

The jury was free to assess the credibility of Dr. Madisetti's arguments in light of the evidence TQ Delta presented. Despite having access to perform tests, neither TQ Delta nor Dr. Madisetti relied on any testing to demonstrate how the Accused Products "comput[e] a phase shift for each carrier signal based on the value associated with that carrier signal." Instead, TQ Delta just pointed to the VDSL2 standard (via Exhibits 34 and 122) and Dr. Madisetti's conclusory testimony. The jury was free to weigh the evidence—or the lack thereof—and find that claim 14 did not practice the VDSL2 standard, including Section 12.3.6.2 and Table 12-70.

Thus, because element 14[b] does not practice Section 12.3.6.2 and Table 12-70 as described, the jury correctly found that the accused products do not infringe claim 14.

> **2. TQ Delta Failed to Show That the Phase Shift Computed for Each Respective Carrier Signal Was Combined with the Phase Characteristic of That Carrier Signal**

Claim element 14[c] requires "***combining the phase shift computed for each carrier signal*** with the phase characteristic of that carrier signal." Dr. Madisetti, on cross-examination, testified that a sub-carrier with index 0 DC shall not be rotated:

> **Q.** Now, Doctor Madisetti, just check me and make sure I'm reading right. Does it state, quote, the sub-carrier with index 0 DC shall not be rotated? Did I read that correctly, sir?

6

> **A.** Yes.
>
> **Q.** And during your testimony, your direct testimony, I heard you to say shall is an absolute requirement. Is that right?
>
> **A.** Yes, in the context of standards, yes.
>
> **Q.** Okay. So what this tells us is that the sub-carrier with index 0 shall *not* be rotated. Is that what it says, sir?
>
> **A.** Yes, that's what it says.

Dkt. 530 (Trial Tr. Vol. 3) at 165:13-23 (referring to Tr. Ex. 34 at Section 12.3.6.2). As Dr. Madisetti admits, subcarrier with index 0 (DC) shall not be rotated, and therefore Section 12.3.6.2 fails to combine the phase shift computed for each respective carrier signal.

And, as discussed above, Table 12-70 does not combine the phase shift computed for the carrier having the bit value of 0, 0 with the phase characteristic for that bit value because the original coordinate (X, Y) is the same as the final coordinate (X, Y). TQ Delta never testified that the carrier having the bit value of 0, 0 was excluded from the plurality of carriers. To testify to the contrary would contradict Dr. Madisetti's infringement theory, which relies on Table 12-70. *See* Dkt. 530 (Trial Tr. Vol. 3) at 126:3-15. Thus, TQ Delta failed to show that the accused products practice element 14[c] because element 14[c] expressly requires "each" carrier signal with the phase characteristic to be combined with the phase shift.

### 3. TQ Delta Failed to Meet Its Burden of Persuasion

A patentee bears the burden of proving infringement. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 846 (2014). CommScope was not required to present a rebuttal expert, especially in light of the fact that the VDSL2 standard is clear on its face that it does not meet elements 14[b] and 14[c]. With the time constraints of trial, and the fact that CommScope's expert, Dr. Cimini, had to testify by video deposition a week before trial started, CommScope made a strategic decision to develop its non-infringement position on cross-examination. And the jury is free, based on that cross examination or many other factors, to find that Dr. Madisetti's

7

testimony was inaccurate and/or not credible. TQ Delta now tries to use CommScope's approach against it even though CommScope's cross-examination was consistent with its non-infringement arguments presented in Dr. Cimini's report.

Further, TQ Delta's Motion argues that "CommScope's expert, Dr. Cimini, confirmed Dr. Madisetti's analysis by admitting that the functionality claimed by claim 14 of the '008 Patent was defined in the VDSL2 or G.993.2 standard." Br. at 3. That is inaccurate. Dr. Cimini was merely asked whether the functionality that TQ Delta *accused* CommScope of infringing was in the standard:

> **Q.** Now, Doctor Cimini, for the '686 Patent and the '008 Patent, the functionality of the TQ Delta *accused* of infringement is defined in the standard called G.993.2. Is that right?
>
> **A.** Yes.
>
> **Q.** And that's the VDSL2 standard?
>
> **A.** Yes.

Dkt. 532 (Trial Tr. Vol. 4) at 183:8-14. This general statement about TQ Delta's accusations does not confirm any of Dr. Madisetti's analysis, and in fact, Dr. Cimini's non-infringement report discussed his opinion that claim 14 of the '008 patent was *not* standard-essential. Cimini Rpt. at ¶¶ 58-63. Thus, Dr. Cimini's testimony did not prove TQ Delta's case, nor did his medical-based absence mean that CommScope conceded infringement.

### B. CommScope Always Maintained That the Question of Infringement Was a Jury Decision

#### 1. CommScope Consistently Argued That the '008 Patent Was Not Infringed

CommScope did not "stipulate" that the '008 patent was infringed. CommScope always maintained that the '008 patent was not infringed, "but *in the event that the jury finds* any of those patents to be infringed, then the patent must, by definition, be essential and subject to TQ Delta's RAND commitment." Ex. A; *see also Godo Kaisha IP Bridge 1 v. TCL Commun. Tech. Holdings*

8

*Ltd.*, 967 F.3d 1380 (Fed. Cir. 2020) ("Where, as here, there are material disputes of fact regarding whether asserted claims are in fact essential to all implementations of an industry standard, the question of essentiality must be resolved by the trier of fact in the context of an infringement trial.").

As cited extensively above, CommScope argued throughout trial that the accused products did not meet claim elements 14[b] and 14[c] of the '008 patent because Section 12.3.6.2 and Table 12-70 of the VDSL2 standard did not work in the same way as claim 14. And during the jury instructions process, the parties' own submitted jury instructions are telling that CommScope maintained essentiality as a jury issue:

> Because of this RAND commitment, I'll refer in my instructions at times to standard essential patents. By referring to standard essential patents, ***the Court is not instructing you that the asserted patents are actually essential to any standard***. I have already determined that the 048 and 411 Patents are not standard essential. ***For the remaining patents, it's up to you, the jury, to decide whether or not TQ Delta has proven that the patents are standard essential and infringed.***

Ex. B at 32-33, and Ex. C at 36 (footnote omitted).

Moreover, the Court—mere hours before the informal charge conference—denied TQ Delta's Rule 50(a) motion that the '008 patent was infringed, where TQ Delta argued (and CommScope rebutted) that Dr. Madisetti had mapped the claim to the standard. Dkt. 533 (Trial Tr. Vol. 5) at 215:10-25 & 205:12-23.

After denying TQ Delta's Rule 50(a) motion, the Court then accepted the proposed jury instructions, which left infringement of the '008 patent as a question for the jury to decide. At all points prior to receiving the jury's verdict, the Court, the parties, and the jury understood that infringement of the '008 patent was a disputed issue for the jury to resolve.

### 2. TQ Delta Ignores the Context of the Court's Instruction

During the informal charge conference, the Court asked the parties which patents—if infringed—were covered by TQ Delta's FRAND commitment. In response to that request, the parties submitted Exhibit A, where CommScope maintained that "***in the event that the jury finds [the '008 patent] to be infringed***, then the patent must, by definition, be essential and subject to TQ Delta's RAND commitment." Ex. A.

This is the context of the so-called "stipulation" that TQ Delta now refers to, and the Court's instruction makes that context clear. The Court's instruction states that, ***in the context of the FRAND commitment***, the parties agreed that, if damages were incurred for the '008 patent, those damages are limited by FRAND:

> ***In light of this FRAND commitment***, ladies and gentlemen, I have referred at times in these instructions to SEPs, standard essential patents. The parties have stipulated that the '686 Patent, the '881 Patent, the '008 Patent, and the '835 Patent, and the '354 Patent are standard essential patents or SEPs.
>
> . . .
>
> ***You must make sure that any reasonable royalty determination takes into account TQ Delta's FRAND obligations***, as the Court has just explained it to you. And a reasonable royalty on the standard essential patents that the parties have stipulated to, i.e., the '686, the '881, the '008, the '835, and the '354 Patents, ***cannot exceed the amount permitted under TQ Delta's FRAND obligations***.

Dkt. 534 (Trial Tr. Vol. 6) at 66:23-68:3.

Thus, there was no "about face" by any party or the Court; TQ Delta is simply unhappy with the jury's verdict and trying to turn a statement about damages into something it was not. The jury correctly and permissibly found that the '008 patent was not infringed.

### C. TQ Delta's Motion Is Full of New Attorney Arguments

TQ Delta's Motion improperly relies on new attorney arguments in challenging the jury's verdict, evidenced by the lack of citations in the Motion. Despite what TQ Delta says in its Motion,

10

Dr. Madisetti never opined on the "first column of Table 12-68" and the fact that "subcarrier index 0 is not modulated at all." Br. at 10. He also never opined on "antecedent basis in the 'plurality of carrier signals' recited in the preamble, 14[Pre]." *Id.* at 11. Dr. Madisetti also never testified that "subcarrier index 0 specified in the VDSL2 standard is not one of the 'plurality of carrier signals for modulation a bit stream' and has no 'phase characteristic.'" *Id.* On re-direct, Dr. Madisetti said only that he did not "rely" on subcarrier index 0 (DC); he never went as far as stating it was not modulated or that it failed to have a "phase characteristic":

> **Q.** Counsel asked you some questions regarding the numbering of some carrier signals. Do you recall that?
>
> **A.** Yes. He was referring to DC 0 as not being rotated at all.
>
> **Q.** What is the plurality of carrier signals that you're relying on for your infringement opinions?
>
> **A.** My theory of infringement does not rely on carrier DC carrier 0. The plurality of carrier signals I rely upon are 1, 11, 21, and others shown in blue.
>
> **Q**. So even if -- so if carrier 0 is not rotated, does that change your infringement opinion?
>
> **A.** It does not because I have shown a plurality that satisfies the claim.

Dkt. 530 (Trial Tr. Vol. 3) at 168:8-20. The Court should deny TQ Delta's alternative request for a new trial because TQ Delta failed to show where these arguments are rooted in the evidence presented at trial. JMOL is not an opportunity to trot out new arguments after the ones presented at trial have failed.

> **D.     Because the Jury Properly Found That the Accused Products Do Not Infringe the Asserted Claim of the '008 patent, the Court Should Deny TQ Delta's Motion for a New Trial on Infringement**

As explained above, the jury had a legally sufficient evidentiary basis to find that the Accused Products do not infringe claim elements 14[b] and 14[c] of the '008 patent. Because TQ

11

Delta's motion regarding the infringement of claim 14 of the '008 patent should be denied, TQ Delta's motion for a new trial on infringement should similarly be denied.

## IV. CONCLUSION

For all of the reasons described above, CommScope respectfully requests that the Court deny TQ Delta's motion for judgment as a matter of law under Rule 50(b) regarding the jury verdict of noninfringement of claim 14 of the '008 patent. CommScope further respectfully requests that the Court deny TQ Delta's motion for a new trial on infringement as to claim 14 of the '008 patent.

|  |  |
|---|---|
| Dated this 15th day of June, 2023 | Respectfully submitted,<br><br>By: */s/ Ross R. Barton*<br>Ross R. Barton (NC Bar No. 37179)<br>M. Scott Stevens (NC Bar No. 37828)<br>Kirk T. Bradley (NC Bar No. 26490)<br>Stephen R. Lareau (NC Bar No. 42992)<br>Karlee N. Wroblewski (NC Bar No. 55043)<br>Nicholas C. Marais (NC Bar No. 53533)<br>Erin Beaton (NC Bar No. 59594)<br>Mary I. Riolo (NC Bar No. 59644)<br>**ALSTON & BIRD LLP**<br>1120 S. Tryon Street, Suite 300<br>Charlotte, NC 28283-6818<br>Email: ross.barton@alston.com<br>  scott.stevens@alston.com<br>  kirk.bradley@alston.com<br>  stephen.lareau@alston.com<br>  karlee.wroblewski@alston.com<br>  nic.marais@alston.com<br>  erin.beaton@alston.com<br>  mary.riolo@alston.com<br>Telephone: 704-444-1000<br>Facsimile: 704-444-1111<br><br>Michael C. Deane (GA Bar No. 498195)<br>Katherine M. Donald (GA Bar No. 753449)<br>**ALSTON & BIRD LLP**<br>1201 West Peachtree St. Suite 4900 |

Atlanta, GA 30309
Email: michael.deane@alston.com
katie.donald@alston.com
Telephone: 404-881-7000
Facsimile: 404-881-7777

Katherine G. Rubschlager (Cal. Bar No. 328100)
**ALSTON & BIRD LLP**
560 Mission Street, Suite 2100
San Francisco, CA 94105
Email: katherine.rubschlager@alston.com
Telephone: 650-838-2004
Facsimile: 650-838-2001

Darlena Subashi (NY Bar No. 5780747)
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444

Deron R. Dacus (TX Bar No. 00790553)
**THE DACUS FIRM**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543 (fax)
E-Mail: ddacus@dacusfirm.com

Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
**FINDLAY CRAFT, P.C.**
102 N. College Ave, Ste. 900
Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Douglas J. Kline
Lana S. Shiferman
Christie Larochelle
**GOODWIN PROCTER LLP**
100 Northern Avenue

13

Boston, MA 02210
P: (617) 570-1000
F: (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com
clarochelle@goodwinlaw.com

Brett Schuman
Rachel M. Walsh
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
P: (415) 733-6000
F: (415) 677-9041
bschuman@goodwinlaw.com
rwalsh@goodwinlaw.com

Andrew Ong
**GOODWIN PROCTER LLP**
601 Marshall St.
Redwood City, CA 94063
P: (650) 752-3100
F: (650) 853-1038
aong@goodwinlaw.com

Attorneys for Defendants
CommScope Holding Company, Inc,
CommScope Inc., ARRIS US Holdings, Inc.,
ARRIS Solutions, Inc., ARRIS Technology,
Inc., and ARRIS Enterprises, LLC

***Counsel for Defendants CommScope Holding Company, Inc., CommScope Inc., ARRIS US Holdings, Inc., ARRIS Solutions, Inc., ARRIS Technology, Inc., and ARRIS Enterprises, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel on June 15, 2023.

/s/ *Ross R. Barton*
Ross R. Barton