# Exhibit C

| | |
|---|---|
| **From:** | Ty Wilson <twilson@davisfirm.com> |
| **Sent:** | Thursday, March 23, 2023 4:08 PM |
| **To:** | Patrick Clark; Harris Huguenard; Jackson, Dallas |
| **Cc:** | tqd; TQD-MHM-TX@mcandrews-ip.com; Comm Scope; Dacus, Deron |
| **Subject:** | TQ Delta v. CommScope - Final Jury Instructions |
| **Attachments:** | 2023-03.22 Joint Proposed Final Jury Instructions.docx |

**EXTERNAL SENDER – Proceed with caution**

Mr. Clark, Mr. Huguenard, and Ms. Jackson,

The parties have continued to meet and confer about the Final Jury Instructions.  The attached is the most current copy of the Joint Final Jury Instructions.

Respectfully,

Ty Wilson
Attorney for Plaintiff TQ Delta, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQ Delta, LLC,<br>　　　*Plaintiff*,<br><br>v.<br><br>CommScope Holding Company, Inc., *et al.*,<br>　　　*Defendants*. | Civil Action No.: 2:21-CV-00310-JRG<br><br>JURY TRIAL DEMANDED<br><br>█████████ |

## [PROPOSED] FINAL JURY INSTRUCTIONS

1

regardless of the type of damages you choose to award, you must be careful to ensure that the award is no more and no less than the value of the patented invention.<sup>35<ins>43</ins></sup>]

The law requires that any damages awarded to TQ Delta correspond to the value of the alleged inventions within the accused products as distinct from other unpatented features of the accused product or other factors, such as marketing or advertising or CommScope's size or market position. This is particularly true where the accused product has multiple features and multiple components not covered by the patent or where the accused product works in conjunction with other non-patented items.

The amount you find as damages must be based on the value attributable to the patented technology as distinct from other unpatented features of the accused product. If the unpatented features contribute to an accused product, you must apportion that value to exclude any value attributable to unpatented features. You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

TQ Delta bears the burden to establish the amounts attributable to the patented features.

[A reasonable royalty, if any, may be calculated as a one-time, lump sum payment. A lump sum royalty is when the infringer pays a single price for a license covering both past and future infringing use of the patents. A lump sum should reflect the total amount necessary to compensate TQ Delta for the Defendants' past and future infringement.[44]]

Further, TQ Delta committed to the DSL standards of the International Telecommunication Union, sometimes called the ITU, to license patents essential to the Standards on a non-

---

[35][43] **Authority**: *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 52:21-2 (E.D. Tex. Aug. 28, 2018); The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.5.1 (May 2020).

[44] **Authority**: *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 895:8-896:3 (E.D Tex. March 8, 2021).

discriminatory basis and reasonable terms and conditions. These terms and conditions are sometimes referred to as RAND, R-A-N-D, commitments. As this Court has previously instructed, RAND and FRAND have been used interchangeably throughout this trial.

Because of this RAND commitment, I'll refer in my instructions at times to standard essential patents. By referring to standard essential patents, the Court is not instructing you that the asserted patents are actually essential to any standard. I have already determined that the 048 and 411 Patents are not standard essential.[36̶45] For the remaining patents, it's up to you, the jury, to decide whether or not TQ Delta has proven that the patents are standard essential and infringed.

TQ Delta and Aware, the entity from which TQ Delta purchased the Patents-in-Suit from, submitted written commitments to the ITU covering the '881, '686, '008, '835, and '354 patents, in which they agreed to grant a license on a non-discriminatory basis and on reasonable, or RAND, terms and conditions.

[You must make sure that any reasonable royalty determination takes into account TQ Delta's RAND obligations as the Court has just explained to you. A reasonable royalty in this case for patents that you, the jury, determine are essential cannot exceed the amount permitted under TQ Delta's RAND obligations.[46]

---

[36̶45] The Court has already determined this. *See* 03-01-2023 Pre-Trial Tr. at 263-64.
[46] TQ Delta's Position: This is not the law. TQ Delta's RAND obligation is "to be prepared to license on RAND … terms and conditions" (see ITU policy). For _damages_, the jury is not bound by that policy.
For CS's _counterclaim_, the jury must take into account TQ Delta's RAND obligation in evaluating its _offer_ to CS and related conduct, including its actual licenses. That is the only relevance of the RAND commitment. No US court case has held that damages are limited by a RAND commitment.
The legal authority for a "reasonable" royalty is 35 USC 284. That authority does NOT derive from the ITU "contract," which does not concern damages and requires that offers demonstrate "reasonable and non-discriminatory terms and conditions." CS is confusing 2 legally unrelated requirements and trying to bind the jury under TQD's contract.

36

==In determining what amount is a RAND royalty, you may consider any evidence of patent hold-up and royalty stacking.[47][48]]==

The '048 and '411 patents have not been declared essential to any DSL standard, and, therefore, a reasonable royalty determination regarding these patents need not take into account any RAND obligations.

I'll provide you with additional instructions on how a RAND commitment for the asserted patent affects your determination of a reasonably royalty.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are as follows:

1. the royalties received by the patentee for licensing of the patents-in-suit proving or tending to prove an established royalty;

---

[47] *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 54:15-22 (E.D. Tex. Aug. 28, 2018).

[48] **TQ Delta's Position**: There has been no evidence of royalty stacking because there will be no evidence that CS pays royalties for any other DSL SEPs. The reference to royalty stacking should be stricken.

There is also no evidence of patent hold-up by TQ Delta. Becker is the only expert who discusses this. His references are at paras. 366 (which only references holdup in the telecommunications industry generally) and 384 (where he erroneously refers to "holdup" instead of "holdout". There is no competent evidence of holdup in this case.

Therefore, the court should not instruct the jury on either royalty stacking or holdup:

In deciding whether to instruct the jury on patent hold-up and royalty stacking, again, we emphasize that the district court must consider the evidence on the record before it. The district court need not instruct the jury on hold-up or stacking unless the accused infringer presents actual evidence of hold-up or stacking. Certainly something more than a general argument that these phenomena are possibilities is necessary. Indeed, "a court should not instruct on a proposition of law about which there is no competent evidence." See Nestier Corp. v. Menasha Corp.–Lewisystems Div.,739 F.2d 1576, 1579–80 (Fed.Cir.1984); see also Br. of Amici Curiae Nokia Corp., et al. ("Nokia Br.") 9–12.

Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1234 (Fed. Cir. 2014)