# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| TQ DELTA, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00310-JRG |
| | § | |
| COMMSCOPE HOLDING COMPANY, | § | |
| INC., COMMSCOPE INC., ARRIS | § | |
| INTERNATIONAL LIMITED, ARRIS | § | ███████████████████ |
| GLOBAL LTD., ARRIS US HOLDINGS, | § | |
| INC., ARRIS SOLUTIONS, INC., and | § | |
| ARRIS ENTERPRISES, LLC, | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff TQ Delta, LLC's ("TQ Delta") Motions for a New Trial on

Damages and the Validity of U.S. Patent No. 8,462,835, and Conditional Motion for a New Trial

on Additional Damages for Infringement of U.S. Patent Nos. 8,462,835, 8,090,008, and 7,570,686

(the "Motion"). (Dkt. No. 538.) Having considered the Motion and the related briefing, and for the

reasons that follow, the Court finds that the Motion should be and hereby is **DENIED**.[1]

## I. BACKGROUND

On August 13, 2021, TQ Delta filed the above-captioned case against CommScope

Holding Company, Inc., CommScope Inc., Arris International Limited, Arris Global Ltd., Arris

US Holdings, Inc., Arris Solutions, Inc., and Arris Enterprises, LLC (collectively, "CommScope"),

asserting infringement of thirteen patents. (*See* Dkt. No. 1.) CommScope answered the Complaint

on October 22, 2021, asserting the defenses of invalidity and noninfringement. (*See* Dkt. No. 17.)

---

[1] The Court notes that TQ Delta failed to follow Local Rule CV-7(a) by including multiple motions in a single document. Since the Court denies each matter contained within Dkt. No. 538, it rules on the Motion as a whole. However, had the Court agreed with any of the individual requests for relief contained therein, TQ Delta would have been ordered to refile the Motion as separate motions.

By the time of trial, TQ Delta had narrowed its case, and trial commenced with TQ Delta asserting infringement of claim 36 of U.S. Patent No. 7,570,686 (the "'686 Patent"), claim 17 of U.S. Patent No. 7,453,881 (the "'881 Patent"), claim 5 of U.S. Patent No. 8,276,048 (the "'048 Patent"), claim 14 of U.S. Patent No. 8,090,008 (the "'008 Patent"), claim 10 of U.S. Patent No. 8,462,835 (the "'835 Patent"), claim 18 of U.S. Patent No. 8,468,411 (the "'411 Patent"), and claim 10 of U.S. Patent No. 9,154,354 (the "'354 Patent") (collectively, the "Asserted Claims"). (Dkt. No. 495 at 1.) CommScope similarly narrowed its invalidity theories to target only claim 36 of the '686 Patent, claim 5 of the '048 Patent, claim 14 of the '008 Patent, and claim 10 of the '835 Patent. (Dkt. No. 497.) CommScope asserted that claim 36 of the '686 Patent and claim 5 of the '048 Patent were invalid as obvious, and that claim 14 of the '008 Patent and claim 10 of the '835 Patent were invalid as either anticipated or if not, obvious. (*Id.* at 2.)

On March 17, 2023, a jury trial commenced in this case. After the close of evidence on March 23, 2023, the Court took up matters from both sides under Federal Rule of Civil Procedure 50(a), where TQ Delta moved that claim 36 of the '686 Patent, claim 5 of the '048 Patent, claim 14 of the '008 Patent, and claim 10 of the '835 Patent were not proven to be invalid during trial. (*See* Dkt. No. 533 at 228:5-229:14, 229:15-230:24, 232:15-22.) TQ Delta's Rule 50(a) Motions as to the '686, '048, '008, and '835 Patents were denied.

On the morning of March 24, 2023, the Court held a formal charge conference where it took up challenges to the jury instructions. (*See* Dkt. No. 534.) In relevant part, the jury instructions included the following:

> TQ Delta, the Plaintiff, has proposed a cost-savings model of calculating reasonable royalty damages that values the Accused Products that CommScope, the Defendant, provides to its customers. This approach relies upon estimated costs, if any, that CommScope saved from making, using, or selling the Accused Products. In considering the amount of reasonable royalty damages under the cost-savings model, you should focus on whether CommScope's make, use, or sale of the patented technology allowed it to avoid taking a

different, more costly course of action, and if so, how much CommScope saved by using the Accused Products instead of taking the more costly course of action.

(Dkt. No. 538-1 at 25.) When asked if there were any objections to this provision of the jury instructions, TQ Delta objected as follows:

> **THE COURT**: Let's turn next to page 25. Are there objections here?
>
> **MR. FINK**: Yes, Your Honor. From the Plaintiff, for the first paragraph and the second sentence that begins, This approach relies upon the estimated costs, Plaintiff objects to the language in the sentence and the following sentence and would propose that the language be changed in the second sentence to, This approach relies upon estimated costs, if any, that the making, using, or selling of the accused products save.
>
> And the following sentence, Plaintiff would change the language to, In considering the amount of reasonable royalty damages under the cost savings model, you should focus on whether CommScope's making, using, or selling of the patented technology avoided taking a different, more costly course of action. And the rest of the sentence would stay the same. So essentially that's for the second sentence striking the 'allowed it to' language and changing 'avoid' to 'avoided'.

(Dkt. No. 534 at 10:14–11:6.) TQ Delta's objection was overruled. (*Id.* at 11:12.)

That afternoon, the Jury returned its verdict. (*See* Dkt. No. 508.) In pertinent part, the Jury found that CommScope infringed claim 17 of the '881 Patent, claim 36 of the '686 Patent, claim 5 of the '048 Patent, claim 10 of the '835 Patent, claim 18 of the '411 Patent, and claim 10 of the '354 Patent.[2] (*Id.* at 4.) The Jury also found that CommScope's infringement was willful. (*Id.* at 6.) However, the Jury also found the claim 36 of the '686 Patent and claim 10 of the '835 Patent were invalid. (*Id.* at 5.) The Jury assessed damages against CommScope in the amount of $11,125,000. (*Id.* at 7.)

Accordingly, on May 3, 3023, the Court entered final judgment on the verdict, ordering and entering judgment that CommScope infringed claim 17 of the '881 Patent, claim 36 of the '686 Patent, claim 5 of the '048 Patent, claim 10 of the '835 Patent, claim 18 of the '411 Patent,

---

[2] The Jury further found that claim 14 of the '008 Patent was not infringed and not invalid. (Dkt. No. 508 at 4–5.) The Court rendered final judgment on the verdict. (*See* Dkt. No. 513 at 2.)

and claim 10 of the '354 Patent. (Dkt. No. 513 at 2.) It further ordered that claim 10 of the '835 Patent and claim 36 of the '686 Patent were invalid. (*Id.*) The Court observed in footnote 1 of its judgment that:

> Though the verdict indicates the Jury found these claims to be infringed, their related finding of invalidity is a defense to such infringement and the Court does not consider the infringement of these claims to be operable or compensable. The Court clearly instructed the Jury that invalidity is a defense to infringement, and the Court finds their verdict is consistent with the Court's instructions.

(*Id.* at 1 n.1.) The Court awarded damages to TQ Delta in the amount of $11,125,000. (*Id.* at 2.)

TQ Delta now seeks a new trial on damages due to alleged error relating to the jury instructions and admission of evidence. (Dkt. No. 538 at 1.) It also seeks a new trial on the validity of the '835 Patent. (*Id.*) Further, TQ Delta conditionally moves for a new trial on additional damages to the extent that the Court grants one or more of TQ Delta's motions for JMOL of infringement of the '008 Patent (Dkt. No. 539), no invalidity of the '686 Patent (Dkt. No. 538), or no invalidity of the '835 patent (*id.*), or TQ Delta's motion for a new trial on validity of the '835 Patent. (Dkt. No. 538 at 15.)

## II.    LEGAL STANDARD

"[C]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Metaswitch Networks Ltd. v. Genband US LLC*, 2017 U.S. Dist. LEXIS 137926, at *8 (E.D. Tex. Aug. 28, 2017). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co*., 773 F.2d 610, 612–13 (5th Cir. 1985); *see also Laxton v. Gap Inc*., 333 F.3d 572, 586 (5th Cir. 2003). Furthermore, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting

4

a new trial. . . .[T]he court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61.

## III. DISCUSSION

TQ Delta moves for a new trial on damages and a new trial on the validity of the '835 Patent. TQ Delta first alleges that the Court committed prejudicial error in its jury instruction on TQ Delta's damages model, warranting a new trial on damages. (Dkt. No. 538 at 6.) Next, TQ Delta argues that the Court erred in permitting CommScope's expert, Dr. Becker, to testify that TQ Delta's royalty should be based on the price of only the DSL chip, independently necessitating a new trial on damages. (*Id.* at 10.) Third, TQ Delta moves that there should be a new trial on the validity of the '835 Patent due to the Court's alleged error in striking paragraphs 69–72 of TQ Delta expert Dr. Madisetti's rebuttal report. (*Id.* at 13.) Lastly, TQ Delta conditionally moves for a new trial on additional damages to the extent that its various other motions are granted. (*Id.* at 15.) CommScope opposes all aspects of the Motion. (*See generally* Dkt. No. 548.) The Court now turns to the substance of the Motion.

### A. Motion for New Trial on Damages

#### i. Jury Instruction on Damages

A party seeking a new trial based on erroneous jury instructions must establish that (1) it made a proper and timely objection to the jury instructions, (2) those instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) it requested alternative instructions that would have remedied the error. *Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1281 (Fed. Cir. 2000). "Prejudicial error exists when it 'appears to the court [that the error is] inconsistent with substantial justice.'" *Id.* at 1283 (quoting Fed. R. Civ. P. 61). However, if a party failed to properly preserve its objection, Rule 51(d)(2) provides that a "court may consider a plain

error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects

substantial rights." In order to prevail under the plain error standard, the moving party must show:

"(1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain

error must affect substantial rights; and (4) not correcting the error would 'seriously affect the

fairness, integrity, or public reputation of judicial proceedings." *Russell v. Plano Bank & Trust*,

130 F.3d 715, 719 (5th Cir. 1997) (internal citations omitted).

At trial, TQ Delta put forth damages evidence based on a cost-savings damages model used

by TQ Delta's damages expert, Dr. Putnam. (Dkt. No. 538 at 1.) TQ Delta asserted infringement

of both standard essential patents ("SEPs") and non-SEPs. (*Id.*) Dr. Putnam testified that he used

a cost-savings model to calculate TQ Delta's reasonable royalty damages for infringement of the

SEPs that relied on the cost savings that AT&T, CommScope's customer, realized by using

standardized DSL technology in the accused products instead of Fiber to the Premises ("FTTP")

technology. (*Id.* at 1–2, citing Dkt. No. 532 at 14:1–22:15; 102:20–105:16.) He relied on the same

model for non-SEPs based on cost savings realized by CommScope's chipmaker. (*Id.* at 2, citing

Dkt. No. 532 at 40:2–20; 48:19–23.) TQ  Delta now argues that it is entitled to a new trial on

damages because the Court committed prejudicial error by instructing the Jury that TQ Delta's

damages model relied on CommScope's cost-savings, rather than AT&T's or the chipmaker's.

(Dkt. No. 538 at 6.)

### a. Propriety of Objection to Cost-Saving Instruction

TQ Delta asserts that it preserved error in compliance with Fed. R. Civ. P. 51(c)(1) by

timely objecting and asking the Court to modify the erroneous instruction by genericizing who

benefits from the cost savings. (*See id.* at 3, citing Dkt. No. 534 at 10:14–11:11.) It urges that its

objection and proposed modifications to portions of the instruction clearly indicated the basis for

the objection. (Dkt. No. 555 at 1.) Further, it notes that this issue was "raised <u>repeatedly</u> with the Court right up to the charge conference in motions (*Daubert* and Rule 50(a)), testimony, and even an email CommScope sent to the Court the night before the conference proposing an instruction genericizing the beneficiary of cost savings." (*Id.*, emphasis in original.)[3] TQ Delta concludes that given this context, its objection stated distinctly the matter objected to and the grounds for the objection. (*Id.*, citing Fed. R. Civ. P. 51(c).) Further, TQ Delta notes that CommScope objected to the same instruction, and that CommScope had "previously proposed an instruction that genericized who realized the cost savings benefits." (*Id.* at 7, citing Dkt. No. 534 at 11:13-15; Dkt. No. 538-2 at 5.)

CommScope, on the other hand, contends that TQ Delta failed to properly object to the cost-savings instruction (the "CSI") such that review of the jury instruction is limited by the exacting "plain error" standard. (Dkt. No. 548 at 2, 4, citing *Russell*, 130 F.3d at 721.) According to the Fifth Circuit, Fed. R. Civ. P. 51(c)(1) is satisfied when a party "specifically object[s] to an instruction prior to the jury's deliberation and stat[es] the reason for its objection." *Advanced Display*, 212 F.3d at 1282 (applying 5th Circuit law). CommScope urges that TQ Delta's objection did not constitute a distinct statement of the grounds for its objection, but instead simply proposed an alternative instruction. (*Id.* at 3, citing *Russell*, 130 F.3d at 719 ("A party does not satisfy [Rule 51(c)] merely by submitting to the court a proposed instruction that differs from the instruction ultimately given to the jury.").)

CommScope asserts that TQ Delta's contention that its proposed modifications "clearly indicated the basis for the objection" and its citation to evidence outside the objection (Dkt. No.

---

[3] For support, TQ Delta cites the following: Dkt. No. 531 at 14:1-22:15, 102:20-105:16; Dkt. No. 346 at 3; 3/1/23 Tr. at 72:1-11, 96:7-17, 97:22-99:25; Dkt. No. 496 at 5; 3/23/23 Tr. at 74:9-23, 98:5-99:20, 243:17-245:9, 249:6-11; Dkt. No. 542-2.

555 at 1) demonstrates the insufficiency of its objection—TQ Delta was required to *state* the reason for its objection. (*See* Dkt. No. 562 at 2–3.) Furthermore, it argues that a party must make a formal objection during the charge conference even if "it has already made its position clear to the district court." (*Id.*, citing *Jimenez v. Wood County*, 660 F.3d 841, 846 n.7 (5th Cir. 2011).) Since TQ Delta only proposed alterations to the CSI, CommScope insists that review is limited by the plain error standard, which it asserts TQ Delta has not proved is met. (Dkt. No. 548 at 4–5.)

The Court is of the opinion that TQ Delta's objection to the instruction was not sufficiently specific because it did not set forth a distinct statement of the grounds for the objection. TQ Delta's objection simply proposed an alternative instruction. It did not state any reason or rationale for its objection. It did not urge the Court in its formal objection, as it does now, that its damages model was premised on cost savings to non-parties rather than to CommScope. The "context" in which the objection was made does not control the analysis—the jury instructions were twenty-five pages long, and there were a multitude of disputed issues throughout the case. It is not the Court's responsibility to know or recall the "context" for any objection. This is why an objection must specifically set forth the grounds for such objection. The objection here failed to do so. However, because the Court is of the opinion that the Motion fails based on the lower standard premised on legal error and prejudice, it analyzes TQ Delta's argument as set forth below and notes that the failure to satisfy the lower standard necessarily results in a failure to satisfy the higher plain error standard.[4]

### b. Legal Error

TQ Delta argues not only that the CSI was inconsistent with Dr. Putnam's testimony, but that it was legally erroneous. (Dkt. No. 538 at 6.) TQ Delta notes that it is "well accepted" that a

---

[4] TQ Delta cursorily acknowledged the possibility of plain error review in its Motion and recited the elements in a footnote, asserting that the CSI constitutes plain error. (Dkt. No. 538 at 10 n.4; Dkt. No. 555 at 2.)

patentee may base reasonable royalty damages on a cost-savings model. (*Id.* at 7, citing *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1081–82 (Fed. Cir. 1983).) Further, TQ Delta claims (without citing authority) that "there is no requirement that a cost-savings model be based on the cost-savings of the defendant and to the exclusion of the defendant's customer for the infringing product." (*Id.*)

To support its argument, TQ Delta contends that the lack of a requirement that the model be based on the defendant's savings is logical because in many cases, it is the accused infringer's customer that realizes the benefit of use of patented technology. (*Id.* at 7–8.) TQ Delta notes that it is limited to one recovery by the law, unable to recover damages for successive infringers of the same product in the supply chain. (*Id.* at 8, citing *Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 994 (Fed. Cir. 2022).) Since it chose to sue the manufacturer, TQ Delta argues, it can base its damages on the cost-savings of the end-user customers and chip supplier to ensure its recovery adequately compensates it for the value of its patents. (*Id.* at 8, citing *Stickle v. Heublein Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983) ("the quantum of [the patent owner's] recovery for an infringing [product] does not depend on whether [the user] or [the maker/seller] is the defendant.").) Lastly, TQ Delta boldly claims that "the Court has already found that [TQ Delta's] cost savings theory is sufficiently reliable and rooted in law" because it denied CommScope's motion to exclude Dr. Putnam's damages testimony as "inconsistent with legal precedent." (*Id.* at 9, citing Dkt. No. 496 at 5.)

CommScope responds that the Court's instruction was not legally erroneous because the Court, consistent with long-standing legal precedent, instructed the Jury that the cost-savings model focuses on savings to the defendant. (*Id.* at 5–6.) Indeed, CommScope contends that TQ Delta's assertion that there is no requirement that cost-savings must be based on savings to the

defendant "flies in the face of Federal Circuit precedent." (*Id.* at 6.) It contends that such precedent makes clear that a cost-savings model is based on the savings to the defendant acting as a willing licensee in a hypothetical negotiation.[5] (*Id.*) Further, CommScope points out that TQ Delta failed to cite a single case establishing that the cost savings to a third party to the hypothetical negotiation may form the basis of a reasonable royalty calculation,[6] or that the Court was required to instruct the Jury about the factual nuances of TQ Delta's cost-savings approach. (*Id.* at 7.)

CommScope asserts that basing the cost-savings model on the savings to the defendant simply makes sense, in addition to being consistent with legal precedent. (*Id.* at 6.) It points to 35 U.S.C. § 284, which requires that a damages award be no less than a reasonable royalty for use made of the invention by the *infringer*. (*Id.*) CommScope additionally contends that TQ Delta's argument regarding the law of exhaustion lacks merit; TQ Delta chose to sue CommScope, not AT&T (the customer) or Broadcom (the chip supplier). (*Id.*) CommScope argues that *Stickle* does not say that damages may be based on cost savings to an accused infringer's downstream customers. (*Id.* at 7.) Instead, in *Stickle*, the cost-savings approach was based on the savings to an accused user, rather than a third-party downstream user. (*Id.* at 7, citing 716 F.2d at 1562.) Lastly, CommScope argues that the Court's denial-in-part of CommScope's motion to exclude Dr. Putnam's expert testimony was not a previous ruling on whether Dr. Putnam's cost savings approach was "rooted in law." (*Id.* at 6 n.3.)

---

[5] CommScope cites the following cases in support of its proposition that the cost-savings approach properly focuses on the cost savings to the defendant and willing licensee: *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1080–81 (Fed. Cir. 1983); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1375–76 (Fed. Cir. 2017); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240–41 (Fed. Cir. 2011); *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 771–72 (Fed. Cir. 2014); *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 175050, at *8–9 (E.D. Tex., Sept. 27, 2022).
[6] CommScope notes that *Hanson*, the "sole case TQ Delta cites in support" of its model, focused on the cost savings to the defendant acting as a willing licensee. (*Id.* at 6 n.4, citing *Hanson*, 718 F.2d at 1079.)

As an initial matter, the Court did not find that Dr. Putnam's damages model was "rooted in law" as TQ Delta contends; as CommScope points out, the Court's role as gatekeeper is to ensure that a proposed expert's testimony is sufficiently reliable and relevant to the issues at hand to be submitted to the Jury. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms*., 509 U.S. 579 (1993). The Court's denial-in-part of CommScope's motion to exclude Dr. Putnam's testimony did not predetermine the jury instructions in this case. Importantly, none of the express bases for CommScope's *Daubert* challenge were that the cost savings model was not based on a third party's savings.[7] The Court's order in its Order on Pretrial Motions (Dkt. No. 496) was that Dr. Putnam's opinions were not so flawed as to require exclusion. Such a ruling was a far cry from an affirmative ruling that TQ Delta's damages theory was "rooted in law" as related to a non-party user's savings being the basis for a cost-saving approach.

Further, the Court is unpersuaded that the jury instruction as given constituted legal error. While CommScope has pointed to no precedent affirmatively holding that the cost-savings approach is limited to the cost savings of the defendant, TQ Delta has not pointed to any case in which the cost-savings approach was premised upon savings to a non-party end user (such as AT&T here). Rather, the cases cited by CommScope demonstrate that cost-savings approach properly focuses on the cost savings to the defendant and willing licensee. (*See* footnote 6, *supra*.) In contrast, TQ Delta first cites the *Hanson* case, stating that it did not limit cost savings to a defendant (Dkt. No. 555 at 2)—yet, that case itself focuses on the cost savings to the defendant acting as willing licensee. *Hanson*, 718 F.2d at 1079. TQ Delta's reliance on *Stickle* fares no better.

---

[7] The motion to exclude contained five grounds for exclusion: (1) Dr. Putnam's methodology failed to limit damages to the incremental value of the asserted patents (Dkt. No. 346 at 5); (2) Dr. Putnam improperly rejected the SSPPU Rule of the Federal Circuit (*id.* at 8); (3) Dr. Putnam improperly relied on the Nash Bargaining Theory (*id.* at 10); (4) Dr. Putnam used an incorrect date for the hypothetical negotiation (*id.* at 11); and (5) Dr. Putnam's methodology produces unreliable damages numbers (*id.*). (*See also* Dkt. No. 496 at 5.)

As CommScope correctly points out, the Federal Circuit in *Stickle* rejected a use-based royalty based off the user's (and accused infringer's) use of the accused products because there was no evidence in the record that a willing licensor could have reasonably expected to secure a use royalty from either the maker or the user. *See Stickle*, 716 F.2d at 1562. The Court does not find that *Stickle* stands for the general proposition that the cost-savings approach may be based on the cost savings to a third-party downstream user like AT&T here. This Court is persuaded that the CSI was grounded in Federal Circuit precedent and legally accurate. *See, e.g., Hanson*, 718 F.2d at 1081 (referencing the determination of the *defendant's* cost savings based on use).

In sum, the Court instructed the Jury that TQ Delta utilized a cost savings approach; it instructed the Jury that such an approach relies upon on cost savings to CommScope (the defendant), consistent with legal precedent, and that the Jury should focus on such savings. Nothing in the charge instructed the Jury to disregard the evidence it heard from Dr. Putnam regarding AT&T or Broadcom's cost savings. As discussed below, even if the CSI was legally erroneous and (it was not), the error was not prejudicial and a new trial is not warranted.

### c. Prejudice

TQ Delta asserts that the CSI necessarily confused and misled the Jury, effectively telling the Jury to disregard Dr. Putnam's damages model by erroneously describing it as relying on CommScope's cost savings, which Dr. Putnam presented no evidence on. (Dkt. No. 538 at 8.) TQ Delta claims that the instruction "gutted [TQ Delta's] damages case and unfairly cast doubt on the sufficiency of [its] damages evidence and the credibility of Dr. Putnam and his model." (*Id.*) According to TQ Delta, the Jury could only have concluded that Dr. Putnam's damages model had

no supporting evidence and was forced instead to rely on CommScope's damages model.[8] (*Id.* at 8–9.) Accordingly, argues TQ Delta, there should be a new trial on damages where the Jury is properly instructed on TQ Delta's damages model. (*Id.* at 9.)

In contrast, CommScope asserts that the CSI had no prejudicial effect on TQ Delta. (Dkt. No. 548 at 7.) It contests TQ Delta's assertion that the CSI told the Jury to disregard Dr. Putnam's damages model; instead, the Court accurately recited the applicable law and expressly told the jury that it "may use either [party's] method." (*Id.*, citing Dkt. No. 532 at 59:14–60:11.) Further, CommScope asserts that TQ Delta's ability to present its arguments was not hampered by the instruction. (*Id.* at 8, citing *Delaronde v. Legend Classic Homes, Ltd.*, 716 Fed. Appx. 322, 327 (5th Cir. 2018) ("When a jury is properly instructed regarding the controlling law and counsel is able to present the jury with inferences it was permitted to make from the evidence, this court cannot conclude a party was seriously impaired in presenting its claim.").) Lastly, CommScope points out that the Jury awarded TQ Delta over $11 million in damages, a number between TQ Delta's and CommScope's proposed damages numbers. (*Id.*) The Jury heard evidence regarding two methods and the controlling law, and it was free to make its own findings based on the credibility of the methodologies. (*Id.*)

TQ Delta responds that the Court misstated TQ Delta's cost-savings model, the law, and the jury's required focus. (Dkt. No. 555 at 3.) Further, it contends that because TQ Delta had already closed its evidentiary presentation proving cost savings to AT&T and Broadcom, it was prevented from presenting arguments addressing cost savings to CommScope as the CSI required. (*Id.*) Since the Jury was required to faithfully follow the instructions, TQ Delta urges that it could

---

[8] Dr. Becker's highest potential damages number, as presented to the Jury, was $5.7 million. (*See* Dkt. No. 534 at 114:23–25.) Given that the Jury awarded $11,125,000.00, it is hard to see how the Jury could have been forced to rely on CommScope's damages model.

not have considered any cost savings other than CommScope's. (*Id.*) Without any compelling logic, it urges that the resulting damages award between TQ Delta's and CommScope's proposed numbers does not disprove this. (*See id.*) CommScope answers that the Court never told the Jury that it could not base damages on the cost-savings to AT&T or that TQ Delta's damages model could not be considered. (Dkt. No. 562 at 3.) CommScope asserts that the Court did not misstate TQ Delta's damages model (a cost savings approach), the law, or the jury's focus. (*Id.*)

Even taking as true TQ Delta's arguments that the CSI was legally erroneous (and as discussed *supra*, the Court found no legal error), the Court is unpersuaded that the jury instruction as given materially prejudiced TQ Delta. The instruction did not preclude the Jury from considering Dr. Putnam's testimony regarding cost-savings to AT&T and Broadcom; indeed, nothing in the jury instructions barred consideration of those savings as attributable to CommScope. TQ Delta urges that the only damages model the Jury could have considered while faithfully adhering to the instructions was CommScope's model. However, the resultant damages number awarded directly contradicts this argument—the Jury arrived at a total award between both TQ Delta and CommScope's proposals. TQ Delta proposed $89 million as a reasonable royalty. (Dkt. No. 534 at 85:20–23.) CommScope proposed $5.7 million, should the jury found infringement of all seven patents. (*Id.* at 114:23–25.) After ultimately finding that the infringement of four out of seven patents was compensable,[9] the Jury arrived at a total award of $11,125,000. (Dkt. No. 508 at 7.) Clearly, the Jury did not take only CommScope's damages model into account, nor was it instructed to. Prejudicial error exists where it appears to the Court that the error is inconsistent with substantial justice. *Advanced Display*, 212 F.3d at 1283 (quoting Fed. R. Civ. P.

---

[9] Although the Jury found that six out of the seven Asserted Patents were infringed, it found that two of the infringed patents were invalid. (*See* Dkt. No. 508 at 4–5.) The Jury was instructed that "[i]nvalidity is a defense to infringement" (Dkt. No. 538-1 at 9), and therefore did not take those two patents into account (nor the patent that was not found to be infringed) in the calculation of damages.

61). As the complained of prejudice is contradicted by the Jury's own verdict, the Court finds no prejudice that justifies overturning that verdict—certainly not an error inconsistent with "substantial justice."

### d. Alternative Instruction

TQ Delta asserts that the Court committed error by failing to modify the CSI, noting that CommScope itself agreed with TQ Delta's proposed modifications. (Dkt. No. 555 at 3–4, citing Dkt. No. 542-2; Dkt. No. 534 at 11:12.) It again argues that its proposed instruction was a correct statement of the law and was not covered in the charge as a whole because "nowhere else was the jury told that damages could be based on cost savings other than CommScope's[.]" TQ Delta again argues that the proposed instruction was necessary to avoid impairing TQ Delta's ability to prove its damages case under the legal standards dictated by the Court. (*Id.*)

CommScope contends that the Court did not err by declining to "genericize" who benefits from the cost savings. (Dkt. No. 548 at 8, citing Dkt. No. 538 at 3.) Relying on its argument regarding the lack of legal error in the given CSI, CommScope urges that the proposal could not be a "substantially correct statement of law" because the cost-savings approach must be based on the use made by CommScope as the accused infringer and hypothetical willing licensee. (*Id.* at 9.) Moreover, it argues, the charge as a whole covered TQ Delta's damages model such that the charge did not "seriously impair" TQ Delta's ability to present its damages claim. (*Id.*) Lastly, CommScope clarifies that its objection and subsequent proposed alternation to the CSI made clear that the cost-savings approach is only appropriate when other approaches would be difficult to apply, *Hanson*, 718 F.2d at 1081; and CommScope says it did not agree with TQ Delta's proposed modifications as TQ Delta argues. (Dkt. No. 562, citing Dkt. No. 555 at 2–3.)

The Court has already rejected TQ Delta's legal error argument. It now rejects this argument as well. The Court has "substantial latitude in crafting jury instructions." *Kanida v. Gulf Coast Medical Personnel LP*, 363 F.3d 568, 578 (5th Cir. 2004) (internal citations omitted). It was not error to decline to genericize the beneficiary of cost savings because the Court applied legal precedent in determining that the relevant cost savings were those to CommScope as the defendant and accused infringer. As already noted, the Court instructed the Jury that TQ Delta's damages model employed a cost-savings approach, and that it was free to apply TQ Delta's methodology. TQ Delta's damages model was therefore covered in the charge as a whole, and the charge did not materially impair TQ Delta's ability to present its damages claim.

### ii. Dr. Becker's Testimony

The Court may grant a new trial based on an erroneous evidentiary ruling when the error prejudiced a substantial right of the moving party. *Network-1 Techs. v. Hewlett-Packard Co.*, No. 6:13-CV-00072-RWS, at *10 (E.D. Tex. May 7, 2021); *Munn v. Algee*, 924 F.2d 568, 571 (5th Cir. 1991); Fed. R. Civ. P. 61. Before trial, TQ Delta moved to strike the opinion of CommScope's damages expert, Dr. Becker, that the DSL chip included in the accused customer premises equipment ("CPE") products is the smallest saleable patent practicing unit ("SSPPU") because that opinion was not supported by any testimony or opinions of a technical expert. (*See* Dkt. Nos. 345, 382, 427.) This motion to strike was denied. (Dkt. No. 496 at 5.) TQ Delta argues that the Court committed further legal error by allowing Dr. Becker's opinion to be presented to the Jury. TQ Delta says this prejudiced it such that it is entitled to a new trial. (Dkt. No. 538 at 4, 11–13.) The Court disagrees for the reasons set forth below.

At trial, Dr. Becker opined that the SSPPU is the DSL chip and that damages should be a running royalty of 1.57% to 2.91% of the selling price of the DSL chip itself, rather than the full

DSL chipset. (Dkt. No. 538 at 4, citing Dkt. No. 533 at 73:19-24; 96:13-97:5; 131:25-132:3; 141:14-143:15.) Further, Dr. Becker "confirmed he based his damages opinion on his understanding that all the infringement of the accused products occurred only in the DSL chip." (*Id.*, at 11, citing Dkt. No. 533 at 131:25-132:3.) TQ Delta asserts (as it did in its pretrial motion) that Dr. Becker's SSPPU opinion was not properly premised on purported discussions Dr. Becker had with CommScope's technical experts, as none of these technical experts disclosed any opinion in their reports that would support Dr. Becker's position. (*Id.* at 11–12.) At trial, Dr. Becker admitted that he did not have the ability to make the SSPPU analysis on his own, and he acknowledged that CommScope's technical experts did not testify that the DSL chip is the SSPPU or that they had any discussions with Dr. Becker about the SSPPU. (*Id.* at 11, citing Dkt. No. 533 at 142:14-25; 143:1-15.)

TQ Delta acknowledges that it is permissible for Dr. Becker to rely on the opinions of CommScope's experts; however, it argues that "he cannot rely on a 'black box' of undisclosed and unexplained opinions." (*Id.* at 11–12, citing, *e.g.*, *Finalrod IP, LLC v. Endurance Lift Sols., Inc.*, No. 2:20-cv-00189, at *8 (E.D. Tex. Oct. 20, 2021) (precluding plaintiff's damages expert from making statements about plaintiff's technical expert's opinion regarding non-infringing alternatives provided on a phone call because the technical expert "never disclosed that opinion or disclosed any analysis to properly support that opinion".) TQ Delta argues that because CommScope's technical experts presented no opinions about SSPPU to the Jury, TQ Delta had no opportunity to cross-examine them on such opinions; therefore, the SSPPU opinion and following conclusion that the DSL chip should be the base for the royalty was prejudicial. (*Id.* at 12.) TQ Delta also contends that this prejudice was compounded because Dr. Becker's unsupported testimony allowed the Jury to undervalue TQ Delta's damages by starting with a smaller royalty

base. (*Id.*) In TQ Delta's view, it is entitled to a new trial on damages "at which CommScope is not allowed to base its royalty damages theory on just the DSL chip." (*Id.* at 13, internal citations omitted.)

In response, CommScope contends that Dr. Becker's complained of conclusion—that the royalty should be based on the price of only the DSL chip—was not premised on the DSL chipset being the SSPPU. (Dkt. No. 548 at 9.) Rather, Dr. Becker based his damages analysis on the license agreements Aware executed around the time of the hypothetical negotiation date, establishing that Aware had a practice of licensing on a chipset basis and explaining the impact of those agreements on the hypothetical negotiation.[10] (*Id.* at 9–10.) Dr. Becker testified that he relied on Dr. Ransom for technical comparability, who concluded that the ███ chips were technically comparable to the accused Broadcom chipset. (*Id.*, citing Dkt. No. 533 at 87:10–88:8.) CommScope argues that this comparable license analysis was the basis for the conclusion that TQ Delta complains about, and Dr. Becker made clear at trial that he did not need to rely on the SSPPU to conclude that the Aware license agreements were comparable. (Dkt. No. 562 at 4, citing Dkt. No. 533 at 143:16–144:5 ("I don't need the smallest saleable patent-practicing unit conclusion to reach the conclusion that the Aware licenses are relevant. And so there was no need to spend time with that in my testimony because it's not indicative or determinative of the conclusions I reach"); 144:15–23.)

As to the arguments addressing the SSPPU opinions themselves, CommScope argues these are just "repackaged *Daubert* arguments[.]" (*Id.* at 10, citing Dkt. No. 493 at 141:27–142:8 ("I am going to deny the Plaintiff's Motion. I think there's enough in the record to make it clear that [the

---

[10] CommScope explains that at trial, Dr. Becker presented a comparable license approach based on Aware's licenses ████████████ which were the closest agreements in time to the hypothetical negotiation date. (Dkt. No. 548 at 10, citing Dkt. No. 533 at 81:16–83:2, 86:7–11, 87:10–88:8, 92:25–93:13.) Dr. Becker testified that these licenses covered DSL chipsets, and the agreements contemplated that those chipsets would be integrated in customer premises equipment. (*Id.*, citing Dkt. No. 533 at 89:17–24, 91:9–92:3, 93:7–11.)

DSL chipset] is probably what is the SSPPU.").) It urges that it is improper to use a motion for new trial as a renewed *Daubert* challenge, and that TQ Delta's arguments related to the reliability of Dr. Becker's opinions regarding the SSPPU should be rejected on the same grounds. (*Id.* at 11, citing *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013).)

CommScope goes on to argue that even if the Court were to reconsider TQ Delta's arguments about the SSPPU opinions, they are still without merit. (*Id.*) It challenges TQ Delta's allegation that the Jury heard no testimony or evidence that supports Dr. Becker's analysis; indeed, it points to testimony by Dr. Cimini and Dr. Ransom that TQ Delta's own technical experts pointed solely to functionality found within the Broadcom chipset in connection with infringement. (*Id.*, citing Dkt. 532 at 154:7–155:4, 155:5–20, 233:22–234:20.) CommScope also argues that its technical experts testified at trial about the information which Dr. Becker subsequently explained he had confirmed with these same experts during expert discovery. (*Id.*, citing Dkt. 533 at 142:14–25; Dkt. 382 at 5.) Further, CommScope notes that Dr. Becker testified that he specifically discussed with the technical experts the inventive elements of what TQ Delta practices and that they were found within the Broadcom chipset. (*Id.* at 12, citing Dkt. 533 at 142:14–25.) Since these opinions were in the technical experts' reports, argues CommScope, Dr. Becker was entitled to rely on that information in forming his SSPPU opinion. (*See id.* at 12 n.5.)

CommScope is correct that the Court has already ruled before trial began on the admissibility of Dr. Becker's SSPPU opinion. The Court found that there was enough in the record to support the position that the chipset was the SSPPU. This was in response to the very same arguments now renewed by TQ Delta. (Dkt. No. 493 at 141:27–142:8.) The Court finds no compelling reason in TQ Delta's briefing to alter that ruling now. Further, CommScope has pointed to testimony where Dr. Becker testified as to the content of those conversations with the

technical experts.[11] CommScope's technical experts were present at trial and subject to cross-examination by TQ Delta. The SSPPU opinion was not "unsupported" as TQ Delta claims, much less so devoid of support so as to justify a new trial on damages.

Further, TQ Delta takes issue with Dr. Becker's conclusion that the royalty should be based on the DSL chipset, and it attacks the SSPPU opinion as a basis for that conclusion. However, Dr. Becker made clear to the jury that his SSPPU opinion did not affect his conclusions.[12] (*See* Dkt. No. 533 at 144:15–23 ("Q. … Whether or not the chip, the semiconductor chip, is the smallest saleable patent-practicing unit, does that affect your conclusions and analysis in this case in any way or change what you've told the jury? A. No.").)

In sum, Dr. Becker fully explained his comparable license approach and resulting conclusion that the DSL chipset should be the royalty base, and he further explained the independence of this analysis from the SSPPU opinion. There is enough in this record, even if the Court finds that the SSPPU opinion was unsupported (which it does not), to independently support Dr. Becker's conclusion that the DSL chipset should be the royalty base. Since Dr. Becker's conclusion regarding the royalty base did not hinge on the SSPPU opinion, there is no prejudice; much less sufficient prejudice to warrant a new damages trial.

### B. Motion for New Trial on Validity of '835 Patent

TQ Delta next contends that the Court improperly struck four paragraphs from Dr. Madisetti's rebuttal report on invalidity concerning the '835 Patent, resulting in material prejudice

---

[11] For example, Dr. Becker testified that "they told me that all of the sort of inventive aspects of the patents that were being accused by TQ Delta's experts were found in the Broadcom chip." (Dkt. No. 562 at 4, citing Dkt. 533 at 142:14-23.)

[12] TQ Delta points out that Dr. Becker testified to the contrary. (Dkt. No. 555 at 4, citing Dkt. 533 at 131:25-132:3 ("Q. You believe, don't you sir, it's your testimony, and it's the basis for your opinion that the [SSPPU] in this case is the DSL chip, don't you? A. I do.") The Court notes that this testimony came before he clarified that his SSPPU opinion does not affect his conclusions in the case, and it was in response to a compound and potentially confusing question. In any case, it is left to Jury to weigh reliability of testimony.

which would support a new trial. (Dkt. No. 538 at 13.) Specifically, the stricken paragraphs in Dr. Madisetti's rebuttal report expressed his opinion that prior art reference G.992.1's DRA_Swap_Request and DRA_Swap_Reply messages do not meet the "flag signal" requirement of claim 10 of the '835 Patent because they do not "indicate" when the updated FIP setting is to be used but instead *set forth* the change in time in the message itself. (Dkt. No. 538 at 13, emphasis in original.) The Court struck these paragraphs because they conflicted with the Court's claim construction for "flag signal"; which is: a "signal used to indicate when an updated FIP setting is to be used (the signal does not include the FEC codeword counter value upon which the updated FIP setting is to be used)." (*See* Dkt. No. 496 at 4; Dkt. No. 169 at 91.)

TQ Delta urges that Dr. Madisetti's opinions were in fact consistent with the positive portion of the Court's construction of "flag signal" requiring a "signal used to *indicate* when an updated FIP setting is to be used." (Dkt. No. 538 at 14, quoting Dkt. No. 169 at 91 (emphasis added).) The stricken opinions explained Dr. Madisetti's position that the prior art reference's DRA_Swap_Request and DRA_Swap_Reply messages cannot meet the Court's construction because they themselves include information that sets forth, rather than indicates, when the updated FIP setting is to be used. (*Id.* at 14, 14 n.5, citing Dkt. No. 342-3 (Madisetti Report).) TQ Delta asserts that this is reasonable because the use of "flag signal" in the '835 Patent specification and related claim language showing that the switching time is "predefined," rather than specified in a message during operation.[13] (*Id.* at 14, citing Tr. Ex. 6 ('835 Patent), at 19:14-30 and at claim 8.)

---

[13] TQ Delta argues that the Court recognized this same distinction: "This usage of 'pre-defined' and 'following' demonstrates that a 'flag signal' does not itself set forth a change time but rather is merely an indication that the updated FIP setting / interleaver parameter value should be used at some juncture that is pre-defined in relation to when the flag signal is received." (Dkt. No. 538 at 14, quoting Dkt. No. 169 at 90.)

Further, TQ Delta alleges that this "erroneous" exclusion was materially prejudicial because it prevented Dr. Madisetti from presenting conclusive evidence to the Jury that G.992.1 did not disclose a "flag signal" because those messages "set forth a change time" as opposed to "flag signal" as construed, requiring an indication instead. (*Id.* at 14–15.) Had these paragraphs not been excluded, TQ Delta surmises that the Jury "would not have had substantial evidence upon which it could have reasonably found that G.992.1 anticipates claim 10 of the '835 Patent." (*Id.* at 15.)

In response, CommScope contends that this portion of the Motion is yet another attempt by TQ Delta to inappropriately re-argue *Daubert* arguments, and the request for new trial on the invalidity of the '835 Patent should be denied on this reason alone. (Dkt. No. 548 at 14.) However, should the Court consider the merits of the argument, CommScope argues that the same ruling should result because Dr. Madisetti improperly provided his own construction for the term "flag signal." (*Id.*) In particular, Dr. Madisetti stated that it was his opinion "that a flag signal is required to be a flag signal that has no information." (*Id.*, citing Dkt. 342 at 1 (quoting Dkt. 342-3 at ¶ 71).) CommScope asserts that this opinion tracked TQ Delta's rejected proposed construction for the term "flag signal," and that he used his own claim construction as a basis to distinguish the prior art. (*Id.* ("*Compare* Dkt. 169 at 87, 90 *with* [Dkt. No. 342-3 at ¶ 72]"); citing Dkt. No. 342-3 at ¶ 72.)

Moreover, CommScope argues, the exclusion of these four paragraphs of a report is not prejudicial, and does not warrant a new trial. Indeed, Dr. Madisetti offered a different opinion at trial that the "flag signal" limitation as construed was not med by the prior art. (*Id.*, citing Dkt. No. 533 at 168:8–19.) As CommScope points out, TQ Delta was able to cross-examine Mr. McNair on his opinions regarding invalidity, though it chose not to address the "flag signal" limitation

22

during that cross-examination. (*Id.* at 15, citing *Cardsoft, Inc. v. Verifone Holdings, Inc.*, No. 2:08-cv-98-RSP (E.D. Tex. Sept. 30, 2013) ("[Defendant] did not cross-examine him on the basis for his opinion, and therefore the jury was free to accept or reject this opinion evidence.").) Finally, CommScope argues that Mr. McNair also opined that the flag signal was found in a second reference, the Texas Instruments contribution (SC-060, Tr. Ex. 57).[14] (*Id.*, citing Dkt. 532 at 311:18–22, 327:10–14.) Since Dr. Madisetti's excluded opinions did not address this second reference, CommScope argues that exclusion did not prejudice TQ Delta.

The Court is unpersuaded by TQ Delta's argument that the exclusion of the specified four paragraphs of Dr. Madisetti's rebuttal report have caused a level of prejudice necessitating a new trial. As noted above, these arguments are properly made at the *Daubert* stage. *See Versata Software*, 717 F.3d at 1264. (post-trial briefing is not the appropriate context for renewing *Daubert* arguments). Even so, the Court previously ruled that Dr. Madisetti construed the term "flag signal" in a manner contrary to the Court's construction. The Court finds no reason which demands a result contrary to that holding. (See Dkt. No. 169 at 91.) Further, as CommScope points out, there was another basis upon which the Jury could determine that prior art (the Texas Instruments contribution) met the term "flag signal" as construed. Therefore, there was no prejudicial error warranting a new trial regarding the validity of the '835 Patent.

---

[14] In TQ Delta's Reply, it makes a new argument that was not included in its Motion; i.e., that Dr. McNair provided no motivation to combine G.992.1 and SC-060 such that his obviousness theory could not serve as a basis for the verdict. (Dkt. No. 555 at 5.) As CommScope points out, TQ Delta is precluded from asserting a new argument in its Motion. (Dkt. No. 562 at 5, citing *Wantou v. Wal-Mart Stores Tex.*, 2020 U.S. Dist. LEXIS 147595, at *47 (E.D. Tex. Mar. 12, 2020) ("It is black-letter law that arguments raised for the first time in a reply brief are waived 'as a matter of litigation fairness and procedure.'") The Court also notes that TQ Delta separately filed a motion for JMOL of validity of the '686 and '835 Patents, and while it argued that there was no motivation to combine prior art references for the '686 Patent, it made no such argument for the '835 Patent. To be clear, the Court does not consider this argument. Even if it had considered it, the bare assertion that there was no motivation to combine is insufficient by itself and is not supported by evidence.

### C. Conditional Motion for New Trial on Additional Damages

Lastly, TQ Delta argues that to the extent the Court grants one or more of TQ Delta's motions for JMOL of infringement of the '008 Patent (Dkt. No. 539), no invalidity of the '686 Patent or no invalidity of the '835 patent (Dkt. No. 537), or TQD's motion for a new trial on validity of the '835 Patent, the Court should also grant a new trial to determine the additional damages that would be due for CommScope's infringement of the additional patent(s). (Dkt. No. 538 at 15.) It argues that a new trial on such damages would be warranted because the jury's verdict did not compensate TQD for CommScope's infringement of any of those patents. (*Id.*)

Regarding the JMOLs of no invalidity of the '686 Patent and the '835 Patents, the Court has already denied that motion. (*See* Dkt. No. 566.) As such, this request is moot. As a part of this Order, the Court denies TQ Delta's motion for new trial on the validity of the '835 Patent, so that request is denied herein. As to the JMOL of infringement of the '008 Patent, that request for relief is requested in that separate motion (Dkt. No. 539), and shall be considered when the Court addresses that Motion.

## IV. CONCLUSION

Having considered the parties' briefing and the entire record, the Court is persuaded that CommScope introduced substantial evidence which is adequate to support the Jury's verdict such that no new trial on damages or invalidity of the '835 Patent is warranted. Accordingly, of TQ Delta's Motion (Dkt. No. 539) is **DENIED** in its entirety. The parties are directed to jointly prepare a redacted version of this Order for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within five (5) business days of this Order.

So ORDERED and SIGNED this 6th day of September, 2023.


RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE